## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEO-GROUP COMMUNICATIONS, INC., | Index No. 15-cv-01756 |
| Plaintiff, | |
| against | **SECOND AMENDED** |
| | **VERIFIED COMPLAINT** |
| JOSEPH P. GOLDBERG; HODGSON RUSS LLP; RAVI CHOPRA; MAHENDRA SHAH; VIPIN SHAH; 728 MELVILLE PETRO LLC; KEDIS ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC TELECOMMUNICATIONS CORP.; and SHALU SURI, | |
| Defendants. | |

Plaintiff GEO-GROUP COMMUNICATIONS, INC., for its complaint against Defendants, alleges as follows:

### THE NATURE OF THE PRESENT ACTION

1.     Plaintiff ("GCI") was the prevailing party in an arbitration against JAINA SYSTEMS NETWORK, INC. ("Jaina"), brought pursuant to an agreement annexed as Exhibit 1 (the "Agreement") relating to the sale of telephone minutes that GCI, acting as a wholesale supplier, had provided to Jaina over a period of several years, netting Jaina substantial profits.

2.     The Agreement contains a somewhat unusual arbitration clause which permitted confirmation proceedings relating to an arbitration to be brought in any New York court but provided [¶ 21(a)] that controverted collection proceedings were to be brought in the United States District Court for the Southern District of New York.

3.     The present complaint is being filed here because collection of the arbitration award is now being frivolously challenged on any and every available ground, by defendants Joseph P. Goldberg, Esq and his firm, Hodgson, Russ, LLP (herein jointly "New Counsel") who were brought in for the purpose of opposing and delaying confirmation of the award after it was handed down by the arbitrator.  Their purported grounds included claims of bias and improper conduct of the arbitration by the arbitrator, incompetence on the part of Jaina's longtime lawyer, Edward J. Troy in conducting it, misconduct on the part of GCI's counsel, and purported errors of New York County Supreme Court Justice Schweitzer in his decision confirming the award.

4.     GCI's demand for arbitration was filed on May 30, 2013 but the arbitration award was not handed down until July 10, 2014 after GCI's present counsel had obtained the arbitrator's consent to its making a motion for summary judgment.  The relief initially requested in that motion had been for "payment not only of the undisputed $1,507,992.96 invoice, but also the $200,000 erroneously omitted from it, as well as $300,000 for the six nodes supplied to Respondent which it has retained and continues to use…"  However, prior to the extensive argument finally entertained by the arbitrator GCI had converted the motion into one for partial summary judgment.

5.     As indicated in affidavits of Govind W. Vanjani, the president and founder of GCI, and their present counsel in support of the motion for partial summary judgment (annexed as Exhibits 2 and 3) the motion was now only asking for $1,249,654, a reduced amount which Surajit Bose, Jaina's founder and CEO, had bargained for in return for his repeated written agreement and oral promises to pay it.  The partial summary judgment motion went on to request that the further amounts due be the subject of subsequent proceedings.

6.     Prior to extensive argument that the arbitrator entertained on the partial summary judgment motion Jaina's long-time lawyer, Edward J. Troy, who represented it throughout the arbitration, had asked for "discovery" accompanied by a request for an extension of time to specify what he wanted which, despite the prior delays, the arbitrator granted.  However, in connection with a request for documents Mr. Troy finally served on the last day of the granted extension he wrote GCI's counsel that he did not expect a response "until your motion is decided."

7.     During the argument and prior to granting the award the arbitrator asked Mr. Troy several times if Jaina disputed the accuracy of the $1,249,654 amount repeatedly promised to be paid, orally and in writing.  Mr. Troy answered "no" but nevertheless defended vigorously against GCI's reduced claim on various technicalities primarily related to authorization to do business in New York.  The nature of the decision/award (annexed as Exhibit 4) makes it clear that it mooted the need for the requested documents.

8.     In his decision and award of the reduced amount the arbitrator, to GCI's dismay, specified that unless that agreed amount was accepted without further proceedings the award would be put on hold.  Despite this apparent showing of bias (towards rather than against Jaina), GCI chose to accept this condition in order to get what it expected would be a timely payment.  However, that expectation was turned upside down when, after the arbitration award was rendered, Jaina retained New Counsel with the assignment of contesting and/or delaying the award while also bargaining for a substantial reduction of it.

9.     New Counsel succeeded, probably well beyond Jaina's expectation, in its mission of delay through the elaborate but absurd attacks described above.  They began with a motion to reargue the award, which eventually produced a carefully-considered decision from the arbitrator

(annexed as Exhibit 5) after a motion to disqualify him was denied.   They simultaneously included attenuated and deceptive proceedings before Justice Schweitzer in the New York Supreme Court confirmation hearings before he finally rendered a decision affirming the award which is now the subject of a frivolous appeal noticed by Mr. Goldberg without the knowledge and against the wishes of Jaina's CEO and founder, Surajit Bose.

10.      One continuing legalistic centerpiece of these still ongoing attacks by New Counsel is a repeated strident complaint in support of their claim of bias and improper conduct by the arbitrator that he failed to afford Jaina discovery prior to the decision.   The absurdity of that attack has been referred to above.   However, there are other more serious and more frivolous continuing attacks which are the subject of a motion (the "Pending Sanction Motion") now before Justice Singh in the New York Supreme Court (previously filed in this Court as Docket Nos. 23-02 through 23-05) to disqualify and sanction New Counsel.   The primary but by no means only focus was that affidavits Mr. Goldberg drafted and filed contain absurd claims that he and those signing them had to have known perfectly well were false.

11.      Proof of this blatant and knowing subornation of perjury has been set forth at length in the GCI counsel's affirmation (annexed as Exhibit 6) in support of the Pending Sanction Motion and will be identified herein again to confirm the need to deal with this issue in both courts and the need to include New Counsel in the present complaint. For, as charged in the Pending Sanction Motion, Mr. Goldberg, at the expense of his supposed client, Jaina, has turned into an aider and abettor of the parties now named as defendants in this collection proceeding (the "New Defendants") and is continuing through frivolous and dishonest dilatory practices to buy time for them in their actively ongoing attempts to unlawfully siphon off and conceal Jaina's funds in order to render it judgment proof.

## THE PARTIES

12.     Plaintiff Geo-Group Communications, Inc. is a corporation organized under the laws of the State of Delaware and now registered to do business in the State of New York under, for reasons discussed hereinafter, the name GCI Enterprises, with offices at 6315 Bandini Boulevard, Commerce, California 90040.

13.     Defendants Joseph P. Goldberg and his law firm, Hodgson Russ LLP, maintain offices at 1540 Broadway, 24th Floor, New York, New York 10036.

14.     Defendant Ravi Chopra, with a place of business at STI Consultants, 43-15 Main Street, Flushing, New York 11355 and a residence there, had extensive financial dealings with Jaina and was about to become a shareholder prior to the confirmation of the arbitration award herein.

15.     Defendant Mahendra Shah, Jaina's President and a shareholder, resides at 39 Capitol Avenue, Williston Park, New York 11596.

16.     Defendant Vipin Shah, the husband of a major Jaina shareholder and the brother of its President, Mahendra Shah, resides at 35 Smith Place, Williston Park, New York 11596.

17.     Defendant 728 Melville Petro LLC, a New York limited liability company (previously named as "JOHN DOE 1"), with offices at 1414 Hillside Avenue, New Hyde Park, New York 11040.

18.     Defendant Kedis Enterprises LLC, a New York limited liability company (previously named as "JOHN DOE 2"), with offices at 1414 Hillside Avenue, New Hyde Park, New York 11040.

19.     Defendant JMVD Hillside LLC, a New York limited liability company (previously named as "JOHN DOE 3"), with offices at 1414 Hillside Avenue, New Hyde Park, New York 11040.

20.     Defendant NYC Telecommunications Corp., a New York company (previously named as "JOHN DOE 4"), with offices at c/o STI Phone Card Warehouse, with offices at 43-15 Main Street, Flushing, New York 11355.

21.     Defendant Shalu Suri, an individual (previously named as "JOHN DOE 5"), who is CEO of STI Phone Card Warehouse, with offices at 43-15 Main Street, Flushing, New York 11355 and who is the wife of defendant Ravi Chopra.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action and venue is proper in this District by virtue of the following:

a.     The Agreement (¶ 21) provides that "This Agreement will be governed by, enforced and construed in accordance with, the laws of the State of New York" and "Each Party submits to the jurisdiction of the Unites States District Court for the Southern District of New York for enforcement of any arbitration award;"

b.     In connection with the acts alleged in this complaint, Defendants operated primarily out of the State of New York and directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephone communications; and

c.     Venue is proper in this District since most of the acts alleged herein occurred in or emanated from this District and the Agreement relating to the dispute provides for its resolution in New York City pursuant to New York law.

## FURTHER FACTUAL ALLEGATIONS

23.     New Counsel violated its ethical obligations to Jaina by favoring the now hostile interests of the New Defendants who have shut Jaina down by unlawfully withdrawing, with, on information and belief, the help and assistance of New Counsel, millions of dollars of its funds rightfully belonging to Plaintiff.  Those thefts have left Jaina unable to function or to continue to

pay New Counsel's ongoing legal fees which GCI believes are being paid, directly or indirectly, by one or more of the New Defendants, in all likelihood, out of the stolen funds.

24.     New Defendant Chopra has withdrawn what is probably the largest amount of the foregoing sums from Jaina and has conspired with other New Defendants and with New Counsel to shut down Jaina's operations to facilitate their concealment and unlawful retention, of those funds.

25.     Prior to confirmation of the arbitration award Mr. Chopra had pretended to be negotiating a settlement of it with Mr. Vanjani while at the same time secretly, through his wife, Shalu Suri, now added as a New Defendant, delaying its confirmation, upon information and belief with the assistance of New Counsel, by furtively forming a New York corporation utilizing Plaintiff's name.

26.     While still purporting to represent Jaina, and its founder and CEO, Mr. Bose, Mr. Goldberg filed a frivolous notice of appeal against his wishes at a time and in a way that disrupted the settlement discussions that Mr. Bose had prevailed on Mr. Vanjani to conduct when he realized that Jaina would otherwise be shut down.  Mr. Bose at first had urged that those negotiations be only between him and Mr. Vanjani, without counsel and they had actually produced a tentative agreement prior to that disruption.  Thereafter, in seeking to continue settlement discussions, Mr. Bose advised Mr. Vanjani that he had retained new counsel of his own, Akhilesh Krishna, Esq., and made it clear he did not want to be involved with or represented by Mr. Goldberg whom he described as having previously required him to submit an affidavit that they both knew was false.

27.     Mr. Bose thereafter reached a new tentative agreement with Mr. Vanjani in further discussions between the two of them, initially again without counsel.  However, at the

insistence of GCI's counsel (who has never to date met nor spoken with Mr. Bose), Mr. Vanjani urged Mr. Bose to bring Mr. Krishna to a meeting to review the agreement with GCI and its counsel in advance of signing it.  When Mr. Bose thereafter declined in order to avoid incurring the "unnecessary" expense of a meeting of lawyers, Mr. Vanjani insisted that a draft of the proposed agreement be submitted to Mr. Krishna, who received and retained it leaving Mr. Vanjani and GCI's counsel convinced that he was advising Mr. Bose in regard to it.

28.     However prior to signing the agreement, Mr. Bose informed Mr. Vanjani that he was going to discuss it with one or more of the New Defendants, one of whom, Mahendra Shah, owns the building in which Jaina is located.  Mr. Bose thereafter reluctantly advised Mr. Vanjani that he could not sign the new agreement because it had been made clear that the building's power would be shut off if he did not repudiate the agreement and sign a new untruthful affidavit prepared by Mr. Goldberg, which he did.

29.     When that happened GCI determined to bring on before Justice Schweitzer the Pending Sanction Motion, now recently re-assigned to Justice Singh.   However, when Mr. Goldberg received the motion he sent a threatening letter (annexed as Exhibit 7) detailing cross claims he intended to bring based on "five independent reasons" if it were not withdrawn. The so-called "cross claims" were for the most part factually absurd and an affidavit of Mr. Vanjani and an accompanying affirmation of counsel, dated, respectively, February 12, 2015 and February 20, 2015 both demonstrating this, were drafted as proposed rebuttal responses. (Copies of both, jointly referred to herein as "Intended Replies to Counterclaims," are annexed as Exhibit 8 and 9.)

30.     The far-fetched nature of Mr. Goldberg's "five independent reasons" are illustrated by the emphatic insistence in his threatening letter that "your allegations asserting a

purported conflict among the shareholders of Jaina… are false.  No such conflict exists and your allegations are entirely without factual basis."  At this point Mr. Goldberg had presumably not yet learned of the prior approach to Mr. Vanjani for a settlement discussion subsequently reflected in a December 28, 2014 e-mail from Mr. Bose.  As described in the Intended Replies to Counterclaims, Mr. Bose's e-mail, after discussing and confirming Jaina's current precarious financial situation in view of the massive "withdrawals" of its funds by its shareholders, went on to say, "All except me want to quit the association, allowing me to run the company."

31.     Mr. Goldberg's five independent cross claims altered dramatically when he learned of Mr. Bose's letter and of his strong desire to settle the obligation.  At that point Mr. Goldberg began to play games with GCI's wish and belief that the Pending Sanction Motion, which initially purported to add and include the New Defendants, would be heard by Justice Schweitzer because of his familiarity with the prior proceedings.  GCI had assumed this because the <u>New York Law Journal</u> article describing Justice Schweitzer's "retirement" had indicated his intent to continue dealing with ongoing matters.  However, Mr. Goldberg, after an <u>ex parte</u> call to Justice Schweitzer's chambers, informed GCI counsel that a signed stipulation from both parties would be required before that could happen.

32.     Mr. Goldberg initially insisted on various concessions as a condition of his signing such a stipulation, making it clear that the most important to him was that GCI withdraw the Intended Replies to Counterclaims.  GCI understood that these replies demolished most of his purported cross claims and accordingly, although it acceded to other of Mr. Goldberg's "conditions," refused to withdraw the Intended Replies to Counterclaims.  Mr. Goldberg, as a result, at first purported to be unwilling to sign the stipulation.  However, finally, after going back and forth for another month, Mr. Goldberg did agree, but only after the matter had been

called at the Motion Support Part and he had obtained a substantial adjournment of its return date.

33.     When Mr. Goldberg finally submitted his much altered cross claims to Justice Schweitzer (a copy of which is annexed as Exhibit 10), their main emphasis was on punishing GCI for its supposedly unlawfully by-passing him in conducting of settlement negotiations with Mr. Goldberg's purported client, Mr. Bose and for alleged improper reference to confidential settlement information supplied by Mr. Bose to Mr. Vanjani in connection with those negotiations.

34.     Mr. Bose's December 28, 2014 e-mail had included financial information describing the thefts of funds from Jaina by the New Defendants.  While it included a notice that it was for settlement purposes, as Mr. Vanjani's Intended Reply to Counterclaims Affidavit (Exhibit 8, supra) made clear, he had specifically previously advised in an e-mail to Mr. Bose that he did not need or want that information and that Mr. Bose had insisted on including it in order to demonstrate to Mr. Vanjani what Jaina could and could not afford to pay by way of settlement.   Moreover, he had also expressly stated—as subsequently confirmed by Mr. Goldberg—that such financial information would obviously have to be made public and utilized if their negotiations did not produce a settlement.

35.     The Bose December 28, 2014 e-mail was thereafter e-filed in the Pending Sanction Motion in response to Mr. Goldberg's complaints and a copy is now annexed for convenient reference as Exhibit 11.  Even without the express disclaimer and qualification that e-mail would now be available for various reasons, including but not limited to the "crime/fraud exception" that would flow from the showing that Mr. Goldberg had to have known and did know that he was advancing false defenses in affidavits he was drafting and filing and was

passing off a series of lies in his successful delay first of confirmation of the award and now of its collection.

36.     A surprising recent revelation—Mr. Goldberg's disclosure for the first time, in opposing the Pending Sanction Motion, of a prior involvement with the New Defendants—provides some interesting confirmation that Mr. Goldberg knew and knows that they are liars. In that involvement, shortly before taking on the defense of the New Defendants against confirmation of the award, he had successfully concluded suing them as well as Jaina and Mr. Bose in a litigation entitled Broadband Telecom, Inc., v. Jaina Systems Network, Inc., et al. for their refusing, with no justification, to pay what they owed on a promissory note for Jaina that they had personally signed and guaranteed.

37.     The disclosure is of interest because in indicates Mr. Goldberg's prior dealings in the Broadband case suing his present clients necessarily made him familiar with their propensity for lying in order to avoid payment of otherwise undisputable debts. In his winning Reply Memorandum dated February 24, 2014 in support of his motion for summary judgment against them (the first five pages of which are annexed as Exhibit 12), its principal target was Jaina's president, Mahendra Shah, as to whom Mr. Goldberg noted:

> As such, all defendants are in default. In his affidavit in opposition, Jaina System's President, Mahendra B. Shah ("Shah"), concedes the existence of liability under the Note ("[i]t is not argued that a balance is not owed to Broadband from Jaina") and nowhere do the defendant guarantors dispute the meaning and effect of the Guaranty or their liability thereunder. See Affidavit of Mahendra B. Shah ("Shah Aff."), ¶ 5.

> *  *  *

> Recognizing that they have no valid defense, defendants attempt to conjure nonexistent issues of fact. Most egregiously, Shah contends that three (3) separate payments totaling $500,000.00 have been made against the Note balance.

11

* * *

> Defendants' failure to include in their opposition evidence to corroborate their alleged partial payment on the Note is not surprising because the claim is fraudulent and asserted solely as a means to frustrate Broadband's ability timely and fully to recover the debt.

38.     While those comments about Mahendra Shah's dishonesty mirror those now being made about him by GCI in these proceeding, Mr. Goldberg has purportedly come to regard and utilize Mr. Shah as his principal and most reliable witness.  But even without this added confirmation that his key witness was, and presumably still is, an unreliable liar there have been multiple admissions and submissions making it clear that Mr. Goldberg had to have known that the affidavits he was drafting and submitting in these proceedings were clearly perjury in at least two important respects:   the first is his bizarre and almost humorous claims in affidavits he drafted and submitted that Jaina was owed money by GCI rather than owing it; and the second, his insistence that Jaina did not know the correct amounts of its minutes it had been purchasing.

39.     Mr. Goldberg's continuing to advance these claims in the face of clear contrary evidence obviates any defense that he may have once been relying on to the effect that he had believed what his clients told him in drafting and submitting the lying affidavits.  That contrary evidence includes an admission by Mr. Bose cited in Mr. Vanjani's various affidavits as well as many contrary facts in other submissions. (See, e.g., in addition to the Intended Replies to Counterclaims, Exhibits 8 and 9, supra, two of many additional affidavits submitted by Mr. Vanjani and counsel annexed as Exhibits 13 and 14.)

40.     Moreover the Second Claim that Jaina, as opposed to GCI, was unable to keep track of its purchases of minutes, is equally ludicrous.  Mr. Goldberg's False Affidavits to the contrary notwithstanding, Mr. Vanjani's description to the arbitrator (Exhibit 2, supra, at pp. 2-3) of how Jaina had necessarily been fully aware of and in control of amounts it was paying and

how it had made out very well at Petitioner's expense in their dealings is set forth below and has never been and cannot be meaningfully rebutted:

> Jaina, like Simple, connected directly to Qwest through its own link but was billed through GCI, which paid Qwest. However, GCI had no way of checking the accuracy of Qwest's billings or of the payments made by Jaina. So although the invoices for that usage were sent by Qwest to GCI for payment, Jaina was the sender and original source of that usage record and had the correct record of their actual purchases.

> The Qwest billing, over an extended period, unfortunately varied from Jaina's actual use record. As one might guess, this was more often than not—though not always—in favor of Qwest. Knowing the correct usage, however, Jaina regularly ignored and didn't pay overcharges. It also ignored the instances where Qwest undercharged without making any attempt to correct those mistakes. The invoices attached to my initial moving affidavit as Exhibits 3 and 4 reflect total unpaid overcharges to Jaina prior to our termination of dealings with Qwest of $229,865.02 and some $26,788 of undercharges which Jaina did not bother to mention to Qwest while withholding overcharges.

(As an interesting aside, the <u>Broadband</u> litigation was defended by Akhilesh Krishna, the lawyer retained by Mr. Bose in his second round of negotiations with Mr. Vanjani. After what were apparently long-running prior dealings with Mr. Goldberg as an adversary in the <u>Broadband</u> case both seemingly ended up on friendly terms and Mr. Krishna signed an implausible affidavit drafted by and favoring Mr. Goldberg in the Pending Sanction Motion suggesting that Mr. Bose did not have access to counsel in his negotiation with Mr. Vanjani.)

## COUNT I
### (Fraud)

41.     Plaintiff repeats, reiterates and re-alleges each and every allegation of the complaint numbered "1" through "40" thereof, as though each were fully set forth herein at length.

42.     Upon information and belief, Jaina, upon the insistence of Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD

Hillside LLC, NYC Telecommunications Corp. and Shalu Suri, assisted and aided and abetted, upon information and belief, by Defendants Joseph P. Goldberg and Hodgson Russ LLP, transferred all or substantially all of its assets (the "Transfer") to defendants Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri who, except for sums in all likelihood paid by them out of those funds to New Counsel, have been secreting and attempting to conceal the funds.

43.     As a result of the Transfer, there are insufficient assets, if any, remaining in Jaina's possession to satisfy the Judgment.

44.     Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri, assisted and aided and abetted, upon information and belief, by Defendants Joseph P. Goldberg and Hodgson Russ LLP, were the vehicles for carrying out the fraudulent conveyances set forth herein.

45.     The Transfer was without consideration.

46.     The Transfer was made and received with the intent to hinder, delay, or defraud Plaintiff as a creditor of Jaina.

47.     The Transfer was made at a time when Jaina had incurred debts beyond its ability to pay as they matured.

48.     The Transfer occurred at a time when Jaina was engaged or about to engage in a business or transaction for which the property remaining in its account after conveyance was an unreasonably small capital.

49.     By virtue of the Transfer Plaintiff has lost access to assets which could be applied to enforce the Award.

50.     Plaintiff is entitled to have the Transfer deemed fraudulent and void.

51.     As a result of the foregoing, Defendants Joseph P. Goldberg, Hodgson Russ LLP, Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri, individually, jointly and severally, owe plaintiff the amount the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

## COUNT II
### (Conspiracy)

52.     Plaintiff repeats, reiterates and re-alleges each and every allegation of the complaint numbered "1" through "51" thereof, inclusive as though each were fully set forth herein at length.

53.     Upon information and belief, Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri are or will shortly be Jaina's successors in interest, yet all, aided and abetted by Defendants Joseph P. Goldberg and Hodgson Russ LLP, have conspired to act in such a manner as to make it seem to the public as though Jaina were a continuing business.  In so doing, the aforesaid have violated New York Debtor and Creditor Law and are liable to plaintiff for the amount of the Award in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

## COUNT III
### (Violation of Bulk Transfer Law)

54.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "53" inclusive, with the same force and effect as if more fully set forth at length herein.

55.     Upon information and belief Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri are in violation of the Bulk Transfer Law under Article 6 of the Uniform Commercial Code, in that the aforesaid Defendants have taken over as owner, operator of the business from Jaina, and, aided and abetted by Defendants Joseph P. Goldberg and Hodgson Russ LLP, have given no notice of and have actually conceded said bulk transfer to Plaintiff, no notice to creditors, and no schedule of property to be transferred and otherwise failed to comply with Article 6 of the Uniform Commercial Code and or other laws/statutes, thereby making the transfer ineffective.

56.     In light of the ineffective transfer, the aforesaid Defendants are individually, jointly, and severally liable to Plaintiff in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

## COUNT IV
### (Alter Egos)

57.     Plaintiff repeats, reiterates and re-alleges each and every allegation of the complaint numbered "1" through "56" thereof, inclusive as though each were fully set forth herein at length.

58.     Under the Alter Ego doctrine, upon information and belief, Jaina and Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC,

JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri are alter egos of one another in that they now own and operate the same or a similar derivative business and cater to the same clientele and as such they are liable to Plaintiff for the amount of the Award in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

**COUNT V**
**(Quantum Meruit)**

59.     Plaintiff repeats, reiterates and re-alleges each and every allegation of the complaint numbered "1" through "58" thereof, inclusive as though each were fully set forth herein at length.

60.     Under the doctrine of *quantum meruit* plaintiff performed services for the benefit of Defendants with the full expectation of being compensated in the amount of the Award in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) For Count I of Plaintiff's Complaint, judgment against Defendants Joseph P. Goldberg, Hodgson Russ LLP, Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

(b) For Count II of Plaintiff's Complaint, judgment against Defendants Joseph P. Goldberg, Hodgson Russ LLP, Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC

Telecommunications Corp. and Shalu Suri in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

(c) For Count III of Plaintiff's Complaint, judgment against Defendants Joseph P. Goldberg, Hodgson Russ LLP, Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

(d) For Count IV of Plaintiff's Complaint, judgment against Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

(e) For Count V of Plaintiff's Complaint, judgment against Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri in the sum of $8,228,100.12 (representing treble damages on the $2,742,700.04 Judgment as of May 8, 2015), plus further interest and attorneys' fees as the Court may award.

(f) And for such other damages as the Court shall see fit to award.

Dated: New York, New York
       May 5, 2015

Respectfully submitted,

The Solovay Practice
Attorneys for Plaintiff

By: _____
    Norman Solovay
    260 Madison Avenue, 15th Floor
    New York, New York 10016
    Tel. (646) 278-4295

**VERIFICATION**

STATE OF ~~NEW YORK~~ *Connecticut*     )
                                                                :ss:
COUNTY OF ~~NEW YORK~~ *Fairfield*     )

GOVIND W. VANJANI, being duly sworn, says: I am an officer of the petitioner, Geo-Group Communications, Inc, in the within action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Govind W. Vanjani

5.5.2015.

Sworn to before me this
5th day of May, 2015.

Notary Public     *ECP 11/30/16*

YVONNE CHARLERY
Notary Public-State of Connecticut
My Commission Expires 11-30-2016

## List of Exhibits

Exhibit 1:     Agreement dated September 27, 2006 between the parties (Docket No. 23-11)

Exhibit 2:     Reply Affidavit of Vanjani before JAMS sworn to April 5, 2014

Exhibit 3:     Introductory Statement of Solovay before JAMS dated April 7, 2014

Exhibit 4:     JAMS Arbitrator's Award [Memorandum of Decision and Order on Claimant's Motion for Summary Judgment of Cowin] dated July 10, 2014 (S.Ct.N.Y. Co. Docket No. 9)

Exhibit 5:     JAMS Arbitrator's Rejection of Reconsideration [Memorandum of Decision and Order on Respondent's Motion for Reconsideration of Cowin] dated August 18, 2014

Exhibit 6:     Affirmation of Solovay dated February 2, 2015 (Docket No. 23-03)

Exhibit 7:     Letter from Goldberg to Solovay and Starr dated February 10, 2015 (Docket No. 23-07)

Exhibit 8:     Reply Affidavit of Vanjani dated February 12, 2015 (without exhibits) (Docket No. 23-08)

Exhibit 9:     Supplemental Affirmation of Solovay dated February 20, 2015 (without exhibits) (Docket No. 23-09)

Exhibit 10:    Notice of Cross Motion dated March 11, 2015 (S.Ct.N.Y. Co. Docket No. 132) and Affidavit in Opposition of Goldberg dated March 11, 2015 (S.Ct.N.Y. Co. Docket No. 133) (without exhibits)

Exhibit 11:    E-mail from Bose to Vanjani dated December 28, 2014 (S.Ct.N.Y. Co. Docket No. 154)

Exhibit 12:    Plaintiff's Reply Memo of Law dated February 24, 2014 from Broadband v. Jaina, et al., (Docket No. 21) (first 5 pages)

Exhibit 13:    Second Reply Affidavit of Vanjani dated March 16, 2015 (without exhibits) (S.Ct.N.Y. Co. Docket No. 150)

Exhibit 14:    Reply Affirmation of Solovay dated March 16, 2015 (without exhibits) (S.Ct.N.Y. Co. Docket No. 147)