UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GEO-GROUP COMMUNICATIONS, INC.,

                        Plaintiff,                    Index No. 15-cv-01756
                                              (KPF)

-v.-

JOSEPH P. GOLDBERG; HODGSON RUSS LLP;
RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC;
NYC TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GCI'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

LOREE & LOREE
Philip J. Loree Jr. (PL-2213)
7 Bayview Terrace
Manhasset, New York 11030
(516) 627-1720
PJL1@LoreeLawFirm.com

*Attorneys for Plaintiff Geo-*
*Group Communications, Inc.*

The Solovay Practice
Norman Solvay, Esq.
260 Madison Avenue
15th Floor
New York, NY 10016
(646)-278-4295
(212)-488-0066 (fax)
nsolovay@solovaypractice.com
*Attorneys for Plaintiff*

# Table of Contents

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

   A.  Introduction ............................................................................................ 2

   B.  Background ............................................................................................. 2

   C.  The Defendants ..................................................................................... 3

       1.  The Individual Insiders ..................................................................... 4

       2.  The Entity Insiders ........................................................................... 5

       3.  Connections Between and Among the Individual Insiders and the Entity Insiders ................................................................................... 5

       4.  The Fraudulent Transfers ................................................................. 7

BASIS FOR SUBJECT MATTER JURISDICTION ........................................... 12

ARGUMENT ................................................................................................... 12

Point I ............................................................................................................. 12

GCI HAS STATED CLAIMS ON WHICH RELIEF MAY BE GRANTED UNDER THE FRAUDULENT CONVEYANCE PROVISIONS OF NEW YORK'S DEBTOR CREDITOR LAW ............................................................................................. 12

   A.  Standard of Review ............................................................................. 13

   B.  New York Debtor Creditor Law's Fraudulent Conveyance Scheme ........ 14

   C.  Count I States a Claim for Constructive Fraudulent Conveyance under Section 273-a, because the Transfers were Made to or for the Benefit of Insiders or Insider Entities ...................................................................... 15

       1.  GCI Has Alleged Facts Indicating that the Transfers were Made without Fair Consideration within the Meaning of the Debtor and Creditor Law ... 16

       2.  GCI has Alleged Facts that Demonstrate that the Transfers were Made during a Period when Jaina was a Defendant in an Action for Money Damages ............................................................................................ 19

       3.  GCI has Alleged that Jaina has not Satisfied the Judgment ............. 21

   D.  GCI Has Stated a Claim for Fraudulent Conveyance under New York Debtor Creditor Law Section 274 Because the Transfers Left Jaina with an Unreasonably Small Amount of Operating Capital ...................................... 21

   E.  GCI Has Stated a Claim for Fraudulent Conveyance under NYDCL Section 273 because the Transfers have Rendered Jaina Insolvent ............. 21

F.   GCI Has Stated a Claim for Fraudulent Conveyance under New York Debtor Creditor Law Section 276 Based on the Defendants' Actual Intent to Defraud ...................................................................................... 24

G.   Rule 9(b)'s Pleading with Particularity Requirement Does not Apply to GCI's Claims under New York Debtor-Creditor Law Sections 273-a, 274 or 273, and in any event GCI has Satisfied Section 9(b)'s Particularity Requirements .......................................................................... 26

H.   In any Event, Should the Court Conclude that GCI has not Adequately Plead any of its Fraudulent Conveyance Claims, then GCI Respectfully Requests the Court to Grant it Relief to Plead them with Even Greater Particularity................................................................................ 27

Point II................................................................................. 28

THE MOTIONS DISMISS FILED BY MR. GOLDBERG AND HODGSON RUSS LLP ARE MOOT BECAUSE GCI IS WITHDRAWING ITS CLAIMS AGAINST THOSE DEFENDANTS ................................................................ 28

Point III................................................................................ 29

Conclusion.............................................................................. 29

# Table of Authorities

**Cases**

*Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014) ...................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................... 17, 18

*Atlanta Shipping Corporation, Inc. v. Chemical Bank*, 818 F.2d 240, 248-49 (2d Cir. 1987) ............................................................................................. 21

*Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570 (2007) ........................ 17, 18

*Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 935 (S.D.N.Y. 1995) (Haight, J.) ................................................................................................. 19, 20, 24

*Federal Deposit Insurance Corporation v. Porco*................................................ 21

*First Keystone Consultants v. Schlesinger Elec.*, 871 F. Supp.2d 103, 118 (E.D.N.Y. 2012) ................................................................................... 20, 24

*Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC*, ___ F.3d ___, No. 13-1476-cv, slip op. at 14, 17 (2d Cir. July 24, 2015) ................... 17

*Neshewat v. Salem*, 365 F. Supp.2d 508, 518-19 (S.D.N.Y. 2005) .................. 20

*Sharp Int'l Corp. v. State St. Bank & Trust*, 403 F.3d 43, 53-56 (2d Cir. 2005)  19

**Statutes**

NYDCL § 272 ................................................................................................. 20

NYDCL § 273 ................................................................................................. 18

NYDCL § 273-a ........................................................................................ 18, 19

NYDCL § 274 ........................................................................................... 19, 25

NYDCL § 275 ................................................................................................. 19

NYDCL §§ 273, 273-a, 274 & 275................................................................. 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GEO-GROUP COMMUNICATIONS, INC.,

                              Plaintiff,                Index No. 15-cv-01756
                                                        (KPF)

-v.-

JOSEPH P. GOLDBERG; HODGSON RUSS LLP;
RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC;
NYC TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GCI'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

### INTRODUCTION

Plaintiff Geo-Group Communications, Inc. ("GCI") respectfully submits

this Memorandum of Law in Opposition to Defendants' Motions to Dismiss. For

the reasons set forth below, GCI respectfully requests that the Court: (a) deny

as moot the motions to dismiss of defendants Joseph P. Goldberg and Hodgson

Russ LLP (Point II); (b) deny as moot the remaining defendants' motions to

dismiss to the extent that they relate to dismissal of Counts II, III, IV or V of the

Amended Complaint (Point III); and (c) deny the remaining defendants' motions

1

to dismiss to the extent they seek to dismiss GCI's fraudulent transfer claims set forth in Count I of the Complaint (Point I).

**STATEMENT OF FACTS**

**A.    Introduction**

Plaintiff Geo-Group Communications, Inc. a telecommunications company incorporated under the laws of Delaware with its principal place of business in California, seeks to recover from defendants money that judgment debtor Jaina Systems Network, Inc. transferred to them, their family members or business entities owned or controlled by them in violation of Sections 273, 273-a, 274 and 276 of New York's Debtor and Creditor Law (the "NYDCL").

Until recently GCI was also seeking relief from the Judgment debtor's attorneys, Mr. Goldberg and Hodgson Russ (the "Goldberg Defendants"), on various causes of action, including New York Judiciary Law Section 487, which imposes treble damage liability on attorneys who are guilty of deceit or collusion. *See* New York Judiciary Law § 487. In an effort to streamline this case, to save time and reduce expense, GCI is withdrawing its claims against these two defendants. (See Point II.)

**B.    Background**

This action arose out of two, related prior proceedings: (a) an arbitration proceeding, which GCI commenced on May 30, 2013 to recover amounts due under its contract with Jaina; and (b) a special proceeding GCI on July 20, 2014 commenced in New York Supreme Court, New York County to confirm,

2

under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., and Article 75 of the New York Civil Practice Law and Rules (the "CPLR"), the resulting arbitration award, which the arbitrator, a respected JAMS arbitrator and former judge, made on July 10, 2014 (the "Award"). (Amended Complaint, Dkt 24, ¶¶ 1,3,9,12)

The Award requires Jaina to pay GCI the sum of $1,249,654, plus interest at the rate of one-percent (1%) per month, compounded monthly from October 8, 2008, the date of Jaina's breach of contract. (A copy of the Award is attached as Ex. 4 to the Amended Complaint (Dkt 24-4). The Award sets forth the Arbitrator's reasoning at some length, and evidence's the Arbitrators' interpretation and application of the contract and the governing law.

While Jaina asserted a number of defenses to confirmation, none was meritorious, and on December 8, 2015, all were summarily—and properly—rejected by the state court judge, who ordered that the award be confirmed. The state court entered judgment on the award on April 3, 2015 in the amount of $2,712,175.51, which represents: (a) the $1,249,654 principal sum; plus (b) pre-judgment interest in the amount of $1,461,986.51; plus (c) $535.00 in costs and disbursements. Jaina has failed and refused to satisfy this judgment.

### C.    The Defendants

The defendants (other than Mr. Goldberg and Hodgson Russ LLP, against whom GCI is withdrawing its claims) can be divided into two groups: (a) officers, directors or shareholders of Jaina, or family members of the Individual

3

Insiders (collectively the "Individual Insiders"); and (b) business entities that are owned or controlled by Insiders (the "Entity Insiders").

### 1. The Individual Insiders

The Individual Insiders are: (a) Mahendra Shah; (b) Vipin Shah; (c) Ravi Chopra; and (d) Shalu Suri:

1. **Mahendra Shah** was (and may still be) Jaina's President and a Jaina shareholder. (Dkt 24, ¶ 15)

2. **Vipin Shah** is Mahendra Shah's brother and the spouse of a major Jaina shareholder. (Dkt 24, ¶ 16)

3. **Ravi Chopra** has had extensive financial dealings with Jaina and was about to become of a shareholder of the Jaina prior to the confirmation of the Award. He, with the knowledge and consent of Jaina's President, Mahendra Shah, held himself out to GCI as authorized to negotiate a settlement of Jaina's liability under the arbitration award during the confirmation proceedings.  (See Dkt 24, ¶ 14; Dkt 24-8, ¶¶ 20-23)

4. **Shalu Suri** is Ravi Chopra's spouse and was (and may still be) the CEO of STI Phone Card Warehouse. (Dkt 21) Mr. Chopra is reputed to be a wealthy businessman whose, among other things, owns the STI Group of Companies, including STI Phone Card Warehouse, and STI Consulting LLC.

4

### 2.    The Entity Insiders

The Entity Insiders are: (a) 728 Melville Petro LLC, a New York limited liability company with offices at 1414 Hillside Avenue, New Hyde Park, New York; (b) Kedis Enterprises LLC ("Kedis"), a New York limited liability company, which also has offices at 1414 Hillside Avenue, New Hyde Park, New York; (c) JMVD Hillside LLC, a New York limited liability company, also with offices at 1414 Hillside Avenue, New Hyde Park, New York; and (d) NYC Telecommunications Corp., a New York company, with offices at "c/o STI Phone Card Warehouse," at 43-15 Main Street, Flushing, New York 11355. (Dkt 24, ¶¶ 17-20; Gupta Aff., Dkt 57-2, ¶¶ 6-9; Chand Aff., Dkt 57-1, 1-4, 6-10)

### 3.    Connections Between and Among the Individual Insiders and the Entity Insiders

The New York State Department of State does not maintain and share with the public information on the indentities of LLC or closed-business corporation directors, officers or members, but GCI believes that the three LLC Insider Entities are owned or controlled by one, more or all of the Individual Insiders. The plausibility of that belief is demonstrated by, among other things, the following: :

- None of the Insider Business Entities are vendors of Jaina, and neither Jaina nor any of its defendants contends that they are vendors, suppliers or customers.

5

- All three LLC Insider Entities are involved in businesses that are unrelated to the telecommunications business in which Jaina is or was engaged. According to Sanjiv Chand, the Managing Director of both Kedis and JMVD, Kedis "operates Yum Brand restaurants," and "JMVD  is a single-purpose real estate entity that owns property located in New York City." (Chand Aff., Dkt 57-1, ¶¶ 5-6.) According to Jessie Gupta, 728 Melville is a domestic limited liability company incorporated in New York, with a principal place of business at 1414 Hillside Avenue, New Hyde Park, New York, 11040[,] and "is a single-purpose entity formed to own and operate gas and convenience stores." (Gupta Aff. Dkt 57-2, ¶¶ 5-6)

- In the Entity Insiders' motions to dismiss, they forcefully deny having *any* relationship to or connection to Jaina. (Dkt 57-1, 57-2)

- There is however, no explanation why these defendants, according to Jaina's bank statements, received large sums of money from Jaina while the arbitration and confirmation proceedings were pending.

- In addition to their being no explanation why these transfers were made at all, and in particular why they were made to the

6

Individual Insiders and to entities whose business purposes are unknown and unexplained, each of the LLC Individual Insiders has the same 1414 Hillside Avenue, New Hyde Park address, and is represented by the same law firm, White & Williams, a Philadelphia-based national law firm with offices in New York City and elsewhere. Two of the Individual Insiders have a New Hyde Park address and the other two live in nearby Williston Park, New York.

There are also close connections between and among Individual Insiders Ravi Chopra, Salu Shuri and NYC Telecommunications Corp. Those two Individual Insiders are spouses, Salu is the chief executive officer of STI Card Warehouse, Inc., Ravi is the reputed owner of the STI Group of companies, including STI Card Warehouse, Inc., and NYC Telecommunications Corp. lists its business address as "STI Card Warehouse, Inc., 43-15 Main Street, Flushing, New York 11355."

### 4.   The Fraudulent Transfers

The Amended Complaint alleges that Jaina "transferred all or substantially all of its assets (the "Transfer") to defendants Defendants Ravi Chopra, Vipin Shah, Mahendra Shah, 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, NYC Telecommunications Corp. and Shalu Suri who.  .  .  have been secreting and attempting to conceal the funds." (Dkt 24 at 14, ¶ 42) These defendants, the Amended Complaint alleges, "were

7

the vehicles for carrying out the fraudulent conveyances set forth herein." (Dkt 24 at 14, ¶ 44)

The Complaint also alleges in its body, or in materials attached and made part of it, that:

- The Defendants are involved in "active[][,] ongoing attempts to unlawfully siphon off and conceal Jaina's funds to render it judgment proof." (Dkt 24 at 4, ¶ 11)

- The Defendants "have shut Jaina down by unlawfully withdrawing. . . millions of dollars of its funds rightfully belonging to Plaintiff[,]" who has a judgment against Jaina. (Dkt 24 at 6, ¶ 23)

- "Those thefts have left Jaina unable to function. . . ." (Dkt 24 at 6, ¶ 23)

- Individual Insider Ravi Chopra, "has withdrawn what is probably the largest amount of the foregoing sums from Jaina and has conspired with [the] other. . .Defendants. . . to shut down Jaina's operations to facilitate their concealment and unlawful retention, of those funds." (Dkt 24 at 7, ¶ 24)

- Surajit Bose, Jaina's founder and Chief Executive Officer, "confirm[ed]" in his December 28, 2014 email to the Amended Complaint (Amended Complaint, Ex. 11, Dkt 24-11) that "Jaina's

8

current" "financial situation" was "precarious" "in view of the masive 'withdrawals' of its funds by its shareholders. . . ." (Dkt 24 at 9)

- Even before the arbitration was commenced, "[A] number of persons important and connected to Jaina. . . their spouses and others. . . used Jaina as a cash cow, draining it of funds regularly for their personal use." (Dkt 24-6 at 7 of 12, ¶ 19) For example, in 2008 and 2009 "Jaina' s various shareholder "partners," and their spouses and children who were on Jaina's payroll despite not working at all, were paid approximately $2,000,000 in so-called "salaries. . .out of profits largely earned by [Jaina's] dealings with [GCI]." (Dkt 24-6 at 7 of 12, ¶ 19)

- "[R]ecently, however, there has been a dramatic increase of such misappropriations of Jaina's funds, particularly by Mr. Chopra, which have now, to all intents and purposes, shut down [Jaina's] operations."

- The "misappropriation" of funds by the Individual Insiders has "substantially" increased in "size to the point where Jaina is completely nonfuctional." (Dkt 24-6 at 9 of 12, ¶ 24)

- During the period "between the date of the [Award] and November 2014 (the last date for which we presently have figures) more

9

than $3,000,000 was unlawfully withdrawn by the" Individual Insiders "and others connected with Jaina." (Dkt 24-6 at 9 of 12, ¶ 24)

- "Those withdrawals included funds taken by both Vipin Shah and Mahendra Shah, as well as $850,000 directed to 'shareholders' friends.'" (Dkt 24-6 at 9 of 12, ¶ 24)

- They also included "$1,260,000 which Mr. Chopra directed Jaina to send to his lawyers, Robinson Brog Leinwand Greene Genovese & Gluck, P.C." (Dkt 24-6 at 9 of 12, ¶ 24)

- "A chart.  .  . reflecting the Jaina traffic totals for telephone minutes sold by it between May 1, 2014 and January 8, 2015" confirms that the defendants' withdrawals have shut down Jaina." (Dkt 24-6 at 9 of 12, ¶ 25)

- The chart shows that, "[b]etween May 1, 2014 and much of December 2014 Jaina's business continued except for one major stoppage[,]" which "occurred for a short time when the arbitration award was handed down.  .  .  ." But, "after December 2014, when the" state court confirmed the award, and after the "sums referenced above were withdrawn from Jaina. . . ," Jaina's "business was essentially frozen as of January 8, 2015 and will presumably continue that way without Court intervention." (Dkt

24-6 at 9 of 12, ¶ 25(a)-(c))

- The transfers of Jaina's assets were made to the defendants without consideration (Dkt. 24, ¶ 45), and thus, were not made in discharge of antecedent debt or, for that matter, in exchange for anything of fair value.

- "As a result of the [transfers], there are insufficient assets, if any, remaining in Jaina's possession to satisfy a judgment." (Dkt. 24, ¶ 43)

- "The [transfers were] made at a time when Jaina had incurred debts beyond its ability to pay as they matured." (Dkt. 24, ¶ 47)

- "The [transfers] occurred at a time when Jaina was engaged or about to engage in a business or transaction for which the property remaining in its account after conveyance was an unreasonably small capital." (Dkt. 24, ¶ 48)

- "By virtue of the Transfer Plaintiff has lost access to assets which could be applied to enforce the Award." (Dkt. 24, ¶ 49)

## BASIS FOR SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because: (a) Plaintiff Geo-Group Communications, Inc. is a Delaware corporation with its principal place of business in California; (b) each of individual defendants is a citizen of the State of New York; (c) Insider Entity New York Telecommunications Corp., Inc. is a New York Corporation with its principal place of business in New York; (d) each of the other entity defendants is a New York Limited Liability Company ,with its principal place of business in New York, and whose members are, upon information and belief, citizens of New York or of states other than California or Delaware; and (e) the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

## ARGUMENT

### Point I

### GCI HAS STATED CLAIMS ON WHICH RELIEF MAY BE GRANTED UNDER THE FRAUDULENT CONVEYANCE PROVISIONS OF NEW YORK'S DEBTOR CREDITOR LAW

Count I of the Amended Complaint is denominated simply as "fraud" but is one for relief under New York Debtor Creditor Law Article 10, which provides creditors with remedies against persons who are the beneficiaries, makers or both of fraudulent conveyances of property, including money. (See Dkt 24 at 13-15, ¶¶ 41-51.) The Individual Insiders and Entity Insiders seek to dismiss

12

Count I on two grounds: (a) Count I allegedly was not pleaded with particularity under Fed. R. Civ. P. 9(b); and (b) the Entity Insiders allegedly are allegedly unrelated to Jaina and have no relationship with Jaina and thus cannot be guilty of having received money from Jaina in violation of New York's Debtor and Creditor law (the "NYDCL"). None of these arguments has any merit and the defendants' motion to dismiss Count I should be denied.

### A.  Standard of Review

On this 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court deems true all the factual allegations—but not legal conclusions—in the Amended Complaint to be true, and draws "all reasonable inferences in Plaintiff[]'s favor." *Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC*, ___ F.3d ___, No. 13-1476-cv, slip op. at 14, 17 (2d Cir. July 24, 2015)[1]; *Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014). To withstand 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

This "plausibility standard is not akin to a 'probability' requirement,' but

---

[1] Slip opinion available online at http://www.ca2.uscourts.gov/decisions/isysquery/33f233d4-e228-454c-9f9f-f675ac17b8f9/1/doc/13-1476_opn.pdf#xml=http://www.ca2.uscourts.gov/decisions/isysquery/33f233d4-e228-454c-9f9f-f675ac17b8f9/1/hilite/.

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It simply requires the plaintiff to "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting 550 U.S. at 557).

### B. New York Debtor Creditor Law's Fraudulent Conveyance Scheme

In addition to providing relief in cases where a transfer from a debtor to another person is made with "actual intent. . . to hinder, delay, or defraud either present or future creditors," NYDCL § 276, the NYDCL provides four avenues of relief for creditors to recover assets a debtor transfers to a third party based on constructive fraud, that is under circumstances suggestive of fraud or other improper or inequitable conduct. *See* NYDCL §§ 273, 273-a, 274 & 275. It deems a debtor's conveyance constructively fraudulent where it is made without fair consideration and if: (1) the conveyor is insolvent or will be rendered insolvent by the conveyance, NYDCL § 273; (2) the debtor conveying the money or property is a defendant in "an action for money damages or a judgment in such an action has been docketed against" the conveyor, which the conveyor fails to satisfy, NYDCL § 273-a; (3) when the conveyor "is engaged or is about to engage in a business or transaction for which the property

14

remaining in [its] hands after the conveyance is an unreasonably small capital.
. . . ,"; NYDCL § 274; or (4) the conveyor "intends or believes that [it] will incur
debts beyond its ability to pay as they mature[.]  . . . ," NYDCL § 275. *See,
generally, Sharp Int'l Corp. v. State St. Bank & Trust*, 403 F.3d 43, 53-56 (2d
Cir. 2005). The facts alleged in the Amended Complaint support claims for at
least four of these five statutory grounds for obtaining relief from the transfers
made to or for the benefit of the Individual Insiders or the Entity Insiders.

### C.    Count I States a Claim for Constructive Fraudulent Conveyance under Section 273-a, because the Transfers were Made to or for the Benefit of Insiders or Insider Entities

Section 273-a of the NYDCL provides:

> Conveyances by defendants. Every conveyance made without fair
> consideration when the person making it is a defendant in an
> action for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the plaintiff in that
> action without regard to the actual intent of the defendant if, after
> final judgment for the plaintiff, the defendant fails to satisfy the
> judgment.

NYDCL § 273-a.

The elements of a Section 273-a claim are: "(1) the conveyance was made
without fair consideration; (2) the conveyor is a defendant in an action for
money damages or a judgment in such action has been docketed against him;
and (3) the defendant has failed to satisfy the judgment." *Dixie Yarns, Inc. v.
Forman*, 906 F. Supp. 929, 935 (S.D.N.Y. 1995) (Haight, J.); *First Keystone
Consultants v. Schlesinger Elec.*, 871 F. Supp.2d 103, 118 (E.D.N.Y. 2012);
*Neshewat v. Salem*, 365 F. Supp.2d 508, 518-19 (S.D.N.Y. 2005).

15

1. **GCI Has Alleged Facts Indicating that the Transfers were Made without Fair Consideration within the Meaning of the Debtor and Creditor Law**

Section 272 of the Debtor and Creditor Law provides that "[f]air consideration is given for property, or obligation[:]"

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

NYDCL § 272.

Section 272 imposes two, independent requirements for a transfer to be made for fair consideration: (a) good faith; and (b) fair equivalent value. The absence of either renders the transaction voidable if it otherwise falls within Section 273-a. *See, e.g., Dixie Yarns*, 906 F. Supp. at 936.

Thus, assuming the transfer was made during the pedency of a legal proceeding for money damages, and the transferor has failed to satisfy a judgment, then Section 273-a gives judgment creditors two alternative ways to establish a fraudulent transfer: (a) "they may void any transfer made without fair consideration regardless of the intent of the parties[;]" or (b) they may void a transfer made in exchange for fair consideration if the transferee cannot "prove that the consideration was taken in good faith." *Dixie Yarns*, 906 F. Supp. at 936.

16

Section 278's "good faith" requirement makes it difficult, if not impossible, for insider transferees – officers, directors, shareholders, members or principals of the debtor-transferee—to establish fair consideration for a transaction within the scope of the NYDCL. While repayment of an antecedent debt is ordinarily considered "fair consideration," repayment to an officer, director or shareholder of a corporation is presumed *not* to constitute such consideration, because it gives corporate insiders a preference over ordinary creditors that the law deems impermissible. *See, e.g.*, *Atlanta Shipping Corporation, Inc. v. Chemical Bank*, 818 F.2d 240, 248-49 (2d Cir. 1987);

That per se rule may be applied to deem transfers to entities owned or controlled by a corporate insider or the family members of such persons. *See, generally, U.S. v. McCoombs*, 30 F.3d 310, 324 (2d Cir. 2004)*; cf. Federal Deposit Insurance Corporation v. Porco*, 75 N.Y.2d 840, 842 (1990) (NYDCL fraudulent transfer provisions do not create right to obtain damages from persons who "are not alleged to have dominion or control over those [transferred] assets or to have benefited in any way from the conveyance."). As this Court recently explained, were "the law. . . otherwise, corporate insiders could avoid the per se rule merely by funneling transactions to third companies also controlled by such insiders alongside their family members[,]" "a ruling [that] would defeat the purpose of § 273-a." *See Lyman Commerce Solutions, Inc v Lung*, No.12-civ-4398, slip op. at 20 (S.D.N.Y. April 20, 2015) (Grisea, J.), *appeal from Rule 54(b) Judgment filed* August 7, 2015 (copy attached as Ex. A).

17

Even where a transfer satisfies the "good faith" requirement, it must still be of fair comparable value. The purpose of this rule is that a transfer for fair value is far less likely to prejudice a creditor, whereas a transfer for less than fair value will result in a net reduction of capital, which might otherwise have been applied to the judgment debt.

GCI has alleged facts which, if proved, make the lack of fair consideration for the transfer not simply "plausible," but very likely. As explained in the Statement of Facts, GCI has alleged that the transfers are in the millions of dollars, that no explanation has been advanced for them by any of the defendants, that the transfers have forced Jaina to cease its operations, that none of the Insider Business Entities are vendors or customers of Jaina, and that the Entity Insiders disclaim any relationship whatsover with Jaina, despite having received hundreds of thousands of dollars of unexplained transfers for no apparent reason; and that, in any event, the Entity Insiders are involved in the restaurant and gas station business, businesses having no relation to Jaina's telecommunications business.

GCI has also alleged that transfers have been made to Insider Business Entities three of whom appear to be commonly owned, most likely by Mr. Chopra, and if not, then by one or more of the other Individual Defendants or all or some of them (with or without Mr. Chopra having an ownerhip stake). The other Insider Entity appears to be owned by Mr. Chopra and/or his spouse, Shalu Suri.

18

The Individual Insiders include Jaina's President, who is also a major shareholder; his brother who also happens to be married to another major Jaina shareholder; a wealthy business-person who has held himself out as authorized to negotiate a settlement on Jaina's behalf and who was about to become a Jaina shareholder before Jaina ceased operations as a result of the cash drained from it; and the wealthy business person's wife, who is also CEO of the wealthy businessman's company, STI Card Warehouse, Inc. .

Treating GCI's pleading as true, and resolving any doubts in its favor, the only plausible conclusion that can be drawn is that the transfers were not made for fair consideration because they were not made in good faith and for legitimate business purposes. And even if on these alleged facts one could plausibly conclude that they were made in good faith, then there is still no basis for concluding that anything—let alone anything approaching fair value—was received by Jaina in return for the looted funds.

### 2. GCI has Alleged Facts that Demonstrate that the Transfers were Made during a Period when Jaina was a Defendant in an Action for Money Damages

The second element of a Section 273-a claim is that the transferor was a defendant in "an action for money damages" during the period when transfers were made. The Arbitration was commenced in May 2013, the Award was made on July 10, 2014, the confirmation proceedings were commenced on July 21, 2014, the Award was confirmed in December 2014 and the judgment confirming the award was entered in April 2015.

19

For purposes of Section 273-a, the courts have uniformly concluded that a private arbitration proceeding is "an action for money damages." *Dixie Yarns,* 906 F. Supp. at 935-36; *First Keystone,* 871 F. Supp.2d at 118 (citing cases);*Sardis v. Frankel,* 113 A.D.3d 135, 141 (1st Dept 2014). That interpretation of the statute tends to promote arbitration as a viable alternative to litigation because it ensures that people who agree to arbitrate, and have thus already agreed to assume a lot of dispute resolution risk that they might not have to assume if they opted for court litigation, do not have to also sacrifice Section 273-a's potent remedy against the age-old and ever-too-common asset protection strategy of transfer the money and run. *See, generally, AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740, 1749 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration").

GCI has alleged that transfers during the period after the commencement of the arbitration, and increased in volume when GCI obtained the favorable award, commenced the confirmation proceedings and obtained an order confirming the award. While GCI's data on concerning the transfers is limited to Jaina bank statements through December 2014 and early January 2015, more comprehensive date will be obtained in discovery, which, if anything, will likely show that yet more funds were transferred during the period up to, and possibly even after, GCI obtained the judgment in the confirmation proceedings.

### 3. GCI has Alleged that Jaina has not Satisfied the Judgment

We doubt that defendants will dispute that Jaina has not satisfied the judgment, but GCI has alleged that it has not received a dime from Jaina in satisfaction of the judgment.

There is accordingly no question that GCI has alleged a very plausible claim for relief under Section 231-a.

### D. GCI Has Stated a Claim for Fraudulent Conveyance under New York Debtor Creditor Law Section 274 Because the Transfers Left Jaina with an Unreasonably Small Amount of Operating Capital

As an alternative, constructive-fraud-based claim for relief under the NYDCL, GCI has alleged that the transfers must be deemed fraudulent because the transfers left it with an unreasonably small amount of operating capital. Section 274 states:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

NYDCL § 274.

### E. GCI Has Stated a Claim for Fraudulent Conveyance under NYDCL Section 273 because the Transfers have Rendered Jaina Insolvent

NYDCL Section 273 provides that :

21

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

NYDCL § 273.

Like Sections 273-a and 274, Section 273 does not require a showing of "actual intent." Unlike those two sections, it does not require that the conveyance lack "fair consideration." *See id.*

Thus, the only thing that GCI needed to do to plead well a claim for relief under Section 273 was to state facts making plausible the inference that Jaina was or would be "rendered insolvent" as a result of the transfers. And it did that.

> NYDCL Section 271 defines "insolvent" to mean:

> a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

NYDCL § 271.

At this pre-discovery stage GCI has not had access to all of pertinent financial records of Jaina that presumably exist, or the opportunity to depose Mr. Mehendra and others about that information. But GCI has nevertheless pleaded facts which—if true—make it plausible or even reasonably certain that the transfers rendered Jaina "insolvent" within the meaning of Section 271.

For example, as discussed in the Statement of Facts, GCI has alleged:

22

- The Defendants "have shut Jaina down by unlawfully withdrawing. . . millions of dollars of its funds rightfully belonging to Plaintiff[,]" who has a judgment against Jaina. (Dkt 24 at 6, ¶ 23)

- "Those thefts have left Jaina unable to function. . . ." (Dkt 24 at 6, ¶ 23)

- "A chart. . . reflecting the Jaina traffic totals for telephone minutes sold by it between May 1, 2014 and January 8, 2015" confirms that the defendants' withdrawals have shut down Jaina."

- The chart shows that, "[b]etween May 1, 2014 and much of December 2014 Jaina's business continued except for one major stoppage[,]" which "occurred for a short time when the arbitration award was handed down. . . ." But, "after December 2014, when the" state court confirmed the award, and after the "sums referenced above were withdrawn from Jaina. . . ," Jaina's "business was essentially frozen as of January 8, 2015 and will presumably continue that way without Court intervention." (Dkt 24-6 at 9 of 12, ¶ 25(a)-(c))

At the very least, GCI's allegations support a plausible inference that, as a result of the transfers, the "fair salable value of [Jaina's] assets [became] less

23

than the amount that [was or would] be required to pay [Jaina's] probable liability on [its] existing debts as they [became] absolute and matured." *See* NYDCL § 271.

### F. GCI Has Stated a Claim for Fraudulent Conveyance under New York Debtor Creditor Law Section 276 Based on the Defendants' Actual Intent to Defraud

NYDCL Section 276 states:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

NYDCL § 276.

Unlike the constructive fraud provisions of the DCL discussed above, Section 276 does not require that the transfer lack "fair consideration," or that it rendered or will likely render the debtor insolvent. It requires, however, "actual intent. . . . to hinder, delay or defraud either present or future creditors. . . ." *Id.*

Given the inherently surreptitious nature of most attempts to "hinder, delay, or defraud" creditors, and the difficulty associated with proving them, the statute, as construed by the courts, authorizes creditors to satisfy the "actual intent" requirement of the statute by showing what are termed "badges of fraud" evident from the surrounding circumstances. *See Sharp*, 403 F.3d at 56; *Chen v. New Trend Apparel*, 8 F. Supp.3d 406, 438-39 (S.D.N.Y. 2014); *Wall Street Assoc. v. Brodsky*, 257 A.D.2d 526, 528-29 (1ˢᵗ Dep't 1999). These

are circumstances that are commonly associated with fraudulent transfers and thus support an inference of fraudulent intent. *See Brodsky*, 257 A.D.2d at 529.

"Badges of fraud" include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." *Brodsky*, 257 A.D.2d at 529.

As discussed in the Statement of Facts, GCI has plead facts that fall squarely within all but one of the common badges of fraud. It has pleaded in some detail the close relationships between each of the Individual Insiders and Entity Insiders and Jaina, as well as the the interrelationships among those parties. It has pleaded many facts bearing on the complete absence of any consideration for the transfers, as well as the Individual Insiders' actual and presumed knowledge of the Arbitration and Award, and Jaina's inability to pay it.

To paraphrase this Court's observation in an unrelated NYDCL case, the Amended Complaint is "brimming with badges of fraud." *See Chen*, 8 F. Supp.3d at 503. GCI has thus more than adequately pled a Section 276 claim.

**G.    Rule 9(b)'s Pleading with Particularity Requirement Does not Apply to GCI's Claims under New York Debtor-Creditor Law Sections 273-a, 274 or 273, and in any event GCI has Satisfied Section 9(b)'s Particularity Requirements**

The defendants' contentions that Count I of the Amended Complaint was not pled with sufficient particularity is misplaced. Fed. R. Civ. P. 9(b) requires parties "[i]n alleging fraud or mistake," to "state with particularity the circumstances constituting fraud or mistake."

But as explained above, GCI has alleged fraudulent conveyance claims under three of the four NYDCL provisions that do not require that either the tranferor or the transferee have any fraudulent intent. The only intent that is relevent is "good faith," and then only insofar as it relates to the presence or absence of "fair consideration" for purposes of NYDCL §§ 273-a and 274. Section 273 does not impose an absence of "fair consideration" requirement, or any other state of mind requirement as respects transfers that result in debtor insolvency.

Because sections 273-a, 274 and 273—unlike Section 276—do not require allegations of fraud or mistake, Rule 9(b)'s heightened pleading requirements—while applicable to GCI's Section 276 claim-- do not apply to GCI's claims under those other provisions. *See, e.g., Techno-Comp v. Arcabascio*, No. 14-cv-5152 (SLT) (VMS), slip op. at 15-16 (E.D.N.Y. Sept. 8, 2015) (fraudulent conveyance claims based on constructive fraud "need not be pleaded with particularity under Rule 9(b), but instead, "the pleading

26

standards of Rule 8 . . . apply, subject, of course, to the 'plausibility' requirements of Iqbal and Twombly); *U.S. v. Nassar*, No. 13 Civ. 8174 (ER), slip op. at 13 (S.D.N.Y. Nov. 10, 2014) ("a claim under NYDCL § 276 must be pled with particularity as required by Rule 9(b) *because it demands proof of actual intent to defraud.*") (citing cases). Defendants' citation to *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987) for a contrary proposition is unvailing because *Atlanta* merely held that a *Section 276* claim needed to be pleaded with particularity.

GCI has satisfied the pleading requirements of Rule 9(b) as respects its Section 276 claims because it has pleaded with particularity the requisite "badges of fraud" for showing actual fraud under Section 276. And even if the pleading with particularity requirements applied to all of GCI's claims, it has met those requirements for the reasons set forth above.

**H.     In any Event, Should the Court Conclude that GCI has not Adequately Plead any of its Fraudulent Conveyance Claims, then GCI Respectfully Requests the Court to Grant it Relief to Plead them with Even Greater Particularity**

Should the Court decide that GCI has not adequately pled its fraudulent conveyance claims against the Individual Insiders and the Entity Insiders, then it should grant GCI leave to replead to correct any deficiencies. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, ___ F.3d ___, No. 13-

1467-cv, slip op. at 52-56 (2d Cir. July 24, 2015)[2]

## Point II

### THE MOTIONS DISMISS FILED BY MR. GOLDBERG AND HODGSON RUSS LLP ARE MOOT BECAUSE GCI IS WITHDRAWING ITS CLAIMS AGAINST THOSE DEFENDANTS

Mr. Solovay of the Solovay Law Practice informed the Court in August 2015 about, among other things, his intent to streamline this case, something that would involve dropping certain claims from the law suit. The Court advised Mr. Solovay that he could do so by stipulation and order, and GCI will do so begininning the week of September 21, 2015. For now GCI is informing the Court and the other parties of the claims it has decided to withdraw. By withdrawing those claims, GCI believes that this matter can be resolved expeditiously and with less effort on the part of the Court, the other parties and GCI.

GCI has decided to withdraw all of its claims against Mr. Goldberg and his law firm, Hodgson Russ. These claims are of a very different nature than the more straightforward ones GCI has against the other defendants under the NYDCL.

---

[2] Available on line: http://www.ca2.uscourts.gov/decisions/isysquery/108b7ace-f0ac-4f60-a45c-9c460728c111/1/doc/13-1476_opn.pdf#xml=http://www.ca2.uscourts.gov/decisions/isysquery/108b7ace-f0ac-4f60-a45c-9c460728c111/1/hilite/

GCI shall send a stipulation to counsel for those defendants for its review and signature, and will file via e-mail through the Orders & Judgments Clerk.

### Point III

Also as part of the streamlining process, GCI has also decided to withdraw the claims for relief set forth in Counts II, III, IV and V of the Amended Complaint.

GCI shall send a stipulation to counsel for those defendants for their review and signature, and will file it via e-mail through the Orders & Judgments Clerk.

### CONCLUSION

For all of the foregoing reasons, GCI respectfully requests that the Court: (a) deny as moot the motions to dismiss of Mr. Goldberg and Hodgson Russ LLC; (b) deny as moot the remaining defendants' motions to dismiss to the extent that they relate to Counts II, III, IV or V of the Amended Complaint; and (c) deny the remaining defendants' motions to the extent that they seek to dismiss GCI's fraudulent transfer claims set forth in Count I of the Complaint.


Dated:   Manhasset, New York
         September 18, 2015

LOREE & LOREE

By: ___/s_____

Philip J. Loree Jr. (PL-2213)
7 Bayview Terrace
Manhasset, New York 11030
(516) 627-1720
PJL1@LoreeLawFirm.com

Attorneys for Plaintiff Geo-
Group Communications,
Inc.

The Solovay Practice
Norman Solvay, Esq.
260 Madison A n
15th Floor
New York, NY 10016
(646)-278-4295
(212)-488-0066 (fax)
nsolovay@solovaypractice.com
Attorneys for Plaintiff Geo-
Group Communications, Inc.

30

To: All Counsel of Record via ECF

Pro Se Parties of Record (Mr. Mahendra Shah and
Mr. Vipin Shah) via First Class Mail