USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 1, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                    :

GEO-GROUP COMMUNICATIONS, INC.,  :
                                      :

                      Plaintiff,  :       15 Civ. 1756 (KPF)
                                      :

                   v.          :      OPINION AND ORDER
                                      :

RAVI CHOPRA, *et al.*,  :
                                      :

                      Defendants. :
                                      :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      In its Second Amended Complaint (or "SAC"), Plaintiff Geo-Group Communications, Inc. ("GCI") alleged, in painstaking detail, how an attorney and his law firm conspired to frustrate, if not prevent, GCI's ability to collect on an arbitration award against a former customer. Thereafter, GCI elected not to proceed against the attorney and his firm, and voluntarily dismissed the case as to each. In the same SAC — in considerably less detail — GCI alleged that Defendants Ravi Chopra, Mahendra Shah, Vipin Shah, and Shalu Suri (together, the "Individual Defendants"), as well as Defendants 728 Melville Petro LLC ("Melville"), Kedis Enterprises LLC ("Kedis"), JMVD Hillside LLC ("JMVD"), and NYC Telecommunications Corp. ("NYCT") (together, the "Entity Defendants," and with the Individual Defendants, "Defendants") harmed GCI by participating in fraudulent conveyances under New York State law. Defendants have filed a total of five motions to dismiss GCI's allegations, each under Federal Rule of Civil Procedure 12(b)(6). Their respective motions raise

largely the same arguments to address largely identical allegations; consequently, the Court considers them together.  For the reasons set forth in the remainder of this Opinion, the motion to dismiss Count I of the SAC against Defendant Chopra is denied.  The respective motions to dismiss Count I of the SAC against the remaining Defendants are granted, albeit with leave to replead.

## BACKGROUND[1]

### A.    Factual Background[2]

This case arises out of an ongoing attempt by GCI, a telecommunications company, to collect on a debt owed to it by another telecommunications company, Jaina Systems Network, Inc. ("Jaina").  An arbitration award (the "Award") handed down on July 10, 2014, found Jaina liable to GCI in the amount of $1,249,654, pursuant to a sales contract governing Jaina's purchase of telephone minutes from GCI.  (SAC ¶¶ 1, 4, 5, 8).  The Award was confirmed by the New York State Supreme Court in or around December 2014.

---

[1]     As is necessary on a motion to dismiss, the facts set forth in the operative Complaint — here, the SAC — are accepted as true.  Citations to the SAC's exhibits are made in the form "SAC Ex."  Five separate opening briefs have been filed by Defendants, and are referred to in the following manner: (i) joint brief of Ravi Chopra and NYCT ("Chopra Br."), (ii) brief of Vipin Shah ("V. Shah Br."), (iii) brief of Mahendra Shah ("M. Shah Br."), (iv) brief of Shalu Suri ("Suri Br."), and (v) joint brief of Melville, Kedis, and JMVD ("LLC Br.").  GCI's opposition is referred to as "Pl. Opp.," and the defendants' respective replies are referred to using the same designation as given for their opening briefs, in the format "[Designation] Reply."

[2]     The SAC contains a substantial amount of information that, for reasons discussed below, is not relevant to the instant motions.  The Court here sets forth only the facts pertaining to the pending motions to dismiss.

(SAC ¶ 9, Ex. 6 ¶ 25).  To date, however, GCI has not collected on the Award. (*See id.* at ¶¶ 43, 49, 51).

GCI contends that Jaina has been unable to pay the money due under the Award because Jaina no longer has any assets.  To this end, the lion's share of the SAC is devoted to a recitation of the history of the arbitration with Jaina and the purportedly unethical, if not illegal, conduct undertaken by Jaina's counsel, Joseph P. Goldberg, and his law firm, Hodgson Russ LLP, in connection therewith.  (*See, e.g.*, SAC ¶¶ 1-11, 23, 26-40).  From time to time, however, the SAC makes reference to Defendants.  (*See, e.g.*, *id.* at ¶¶ 24, 25, 28, 31, 34, 36-38).  Each of the Individual Defendants is alleged to have some purported connection to Jaina:  Chopra "had extensive financial dealings with Jaina and was about to become a shareholder prior to the confirmation of the arbitration award"; Mahendra Shah is both Jaina's President and a shareholder; Vipin Shah is brother to Jaina's President, Mahendra Shah, and is married to a "major Jaina shareholder"; and Shalu Suri is married to Ravi Chopra and the CEO of STI Phone Card Warehouse, a company with offices at the same location as NYCT.  (*Id.* at ¶¶ 14-16, 20, 21).  GCI alleges that these individuals, as well as the Entity Defendants, received fraudulent transfers of Jaina's assets, leaving "insufficient assets … remaining in Jaina's possession to satisfy [the Award]."  (*Id.* at ¶¶ 42, 43).  GCI additionally contends that the "siphon[ing] off" of funds by Defendants has effectively "shut down Jaina's operations," leaving Jaina "unable to function."  (*Id.* at ¶¶ 11, 23, 24).

**B.    Procedural Background**

GCI filed its initial Complaint in this matter on March 9, 2015.  (Dkt. #1).
It named as Defendants (i) attorney Goldberg, (ii) Hodgson Russ LLP,
(iii) Chopra, (iv) Mahendra Shah, (v) Vipin Shah, and (vi) five John Does.  The
initial Complaint included counts for attorney misconduct in violation of New
York Judiciary Law § 487; breach of contract; fraudulent transfer in violation of
the New York Debtor and Creditor Law (the "NYDCL") §§ 273, 273-1, 274, and
276; violation of the Bulk Transfer law under Article 6 of the Uniform
Commercial Code; common law fraud; conspiracy to violate the NYDCL; alter
ego liability; and quantum meruit.  It sought damages of $8,065,974.03 (a
figure representing treble damages on the confirmed Award, to which GCI
contended it was entitled under New York Judiciary Law § 487) and attorneys'
fees.  (Dkt #1 ¶¶ 21-54).

GCI filed its First Amended Complaint on March 31, 2015, dropping the
allegation of attorney misconduct, but otherwise leaving its pleading
unchanged.  (Dkt. #8).  On April 16, 2015, GCI submitted a letter to the Court
requesting leave to file the SAC, in which it intended to name the previously
unidentified "John Doe" defendants.  (Dkt. #16).  The Court granted GCI's
request (Dkt. #21), and on May 5, 2015, GCI filed its SAC naming (i) Goldberg,
(ii) Hodgson Russ, (iii) Ravi Chopra, (iv) Mahendra Shah, (v) Vipin Shah,
(vi) Shalu Suri, (vii) Melville, (viii) Kedis, (ix) JMVD, and (x) NYCT as
Defendants.  (Dkt. #24).

Goldberg and Hodgson Russ filed a motion to dismiss the SAC on July 9, 2015.  (Dkt. #50).  Entity Defendants Kedis, Melville, and JMVD (together, the "LLC Defendants") filed their motion to dismiss shortly thereafter, on July 16, 2015.  (Dkt. #56).  Defendants Ravi Chopra and NYCT filed their joint motion to dismiss on July 20, 2015 (Dkt. #59), and Shalu Suri filed her motion to dismiss on the same day (Dkt. #64).  Finally, Mahendra and Vipin Shah, proceeding *pro se*, filed their respective motions to dismiss on July 21, 2015.  (Dkt. #68, 71).

On August 13, 2015, GCI's counsel informed the Court that new counsel would be brought in to represent GCI and requested an extension of GCI's time to respond to Defendants' motions.  (Dkt. #80).  The Court granted GCI's request (Dkt. #81), as well as a second extension request made on September 9, 2015 (Dkt. #83, 85).  GCI then submitted a single brief in opposition to Defendants' motions, pursuant to the Court's direction, on September 18, 2015.  (Dkt. #86).  In its opposition brief, GCI stated its intention to drop all counts against Goldberg and Hodgson Russ, and to drop all claims, save its claim for fraudulent transfer under §§ 273, 273-a, 274, and 276 of the NYCDL, against the remaining defendants.  Shortly thereafter, on September 22, 2015, GCI voluntarily dismissed with prejudice all claims against Goldberg and Hodgson Russ.  (Dkt. #87).

On October 2, 2015, separate reply briefs were filed by Chopra and NYCT; Vipin Shah; Mahendra Shah; and the LLC Defendants.  (Dkt #93, 94, 95, 96).  Shalu Suri filed her reply on October 6, 2015, thereby concluding the

briefing on the instant motions.  (Dkt. #97).  On January 6, 2016, the parties filed a stipulation dismissing with prejudice all claims against Defendants, save GCI's allegation of fraudulent transfer.  (Dkt. #101).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's

6

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2.    Fraudulent Conveyances Under Article 10 of the NYDCL

Article 10 of the NYDCL provides a "set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by transfer of a debtor's property." *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 634 (2d Cir. 1995). As relevant to the instant matter, §§ 273, 273-a, and 274 outline circumstances in which a conveyance constitutes constructive fraud, while § 276 applies to instances of actual fraud.

Section 273 of the NYDCL governs transfers of assets by insolvent debtors, and provides that "[e]very conveyance made … by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard

to his actual intent if the conveyance is made or the obligation is incurred

without a fair consideration."  Relatedly, § 273-a pertains to asset transfers

made by a defendant in an action for money damages, and states that

> [e]very conveyance made without fair consideration
> when the person making it is a defendant in an action
> for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the
> plaintiff in that action without regard to the actual
> intent of the defendant if, after final judgment for the
> plaintiff, the defendant fails to satisfy the judgment.

Both sections require that the transfer lack "fair consideration" in order for a

violation to occur.  The NYDCL defines fair consideration as existing in relevant

part when the transferor, (i) in good faith, (ii) receives "fair equivalent" property

or a similarly equivalent antecedent debt is discharged.  N.Y. Debt. & Cred. L.

§ 272(a); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) ("The

fair consideration test is profitably analyzed as follows: [i] the recipient of the

debtor's property must either (a) convey property in exchange or (b) discharge

an antecedent debt in exchange; and [ii] such exchange must be a fair

equivalent of the property received; and [iii] such exchange must be in good

faith." (citation and internal quotation marks omitted)).

A plaintiff seeking to set aside a conveyance due to a lack of good faith

must prove one of the following factors: (i) a lack of honest belief in the

propriety of the transfer in question; (ii) intent to take unconscionable

advantage of others; or (iii) intent to, or knowledge of the fact that the activities

in question will, hinder, delay, or defraud others.  *Staudinger+Franke GMBH* v.

*Casey*, No. 13 Civ. 6124 (JGK), 2015 WL 3561409, at *10 (S.D.N.Y. June 8,

2015) (quoting *Southern Indus.* v. *Jeremias*, 411 N.Y.S.2d 945, 949 (2d Dep't 1978)).  As the Second Circuit has observed, good faith "is hard to locate ... in a statute in which 'the issue of intent is irrelevant.'"  *In re Sharp*, 403 F.3d at 54 (quoting *United States* v. *McCombs*, 30 F.3d 310, 326 n.1 (2d Cir. 1994)).  Furthermore, apparent bad faith will generally not negate the existence of fair consideration when a transfer satisfies a preexisting debt.  *Pashaian* v. *Eccelston Props.*, 88 F.3d 77, 85 (2d Cir. 1996).

An exception exists, however to the debt-satisfaction rule: "Under New York law, 'transfers from an insolvent corporation to an officer, director or major shareholder of that corporation are *per se* violative of the good faith requirement.'"  *Daelim Trading Co.* v. *Giagni Enters., LLC*, No. 10 Civ. 2944 (VLB), 2014 WL 6646233, at *8 (S.D.N.Y. Nov. 12, 2014) (quoting *In Re Centennial Textiles, Inc.*, 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998)); *see also Atlanta Shipping Corp.* v. *Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("[R]epayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor.").

Section 274 of the NYCDL applies when a transferor "is engaged or is about to engage in a business or transaction" for which the transferor's remaining assets after a conveyance constitute "unreasonably small capital." Such a conveyance, if made without fair consideration, "is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to [the transferor's] actual intent."  N.Y. Debt. & Cred. L. § 274.  The same standard for fair consideration

applicable to §§ 273 and 273-a applies to transfers alleged to be fraudulent under § 274.  However, the allegedly fraudulent conveyance need not render the transferor insolvent, so long as the transferor is left with "unreasonably small capital" for its then-current or immediately pending business.

Finally, while the constructive fraud sections of Article 10 require a lack of fair consideration but disregard intent, § 276, which applies to instances of actual fraud, has no provision regarding consideration but requires that a conveyance was made "with intent to defraud."  Specifically, § 276 states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  Due to the difficulty of proving actual intent, such intent may be inferred from circumstantial "badges of fraud," including

> [i] a close relationship between the parties to the transaction, [ii] a secret and hasty transfer not in the usual course of business, [iii] inadequacy of consideration, [iv] the transferor's knowledge of the creditor's claim and his or her inability to pay it, [v] the use of dummies or fictitious parties, and [vi] retention of control of the property by the transferor after the conveyance.

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 431 (S.D.N.Y. 2014) (quoting *Amusement Indus., Inc.* v. *Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 530 (S.D.N.Y. 2011); *see also In re Sharp*, 403 F.3d at 56 ("Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case,

*i.e.,* circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." (citation omitted)).

**B.      Analysis**

**1.      The Requisite Specificity for Pleading Constructive Fraudulent Conveyance Under the NYCDL**

As a threshold matter, while the initial Complaint explicitly listed separate counts for violations of Article 10 of the NYDCL and for common law fraud, the SAC titles the sole claim left in this matter simply as "fraud." (SAC 13).  It is thus understandable that Defendants' respective moving briefs premise their arguments for dismissal primarily on GCI's failure to plead its claim with the specificity required for claims sounding in fraud pursuant to Federal Rule of Civil Procedure 9(b).  (*See* Chopra Br. 3-6; M. Shah Br. 3; V. Shah Br. 2; Suri Br. 3; LLC Br. 4-6).  However, the weight of the case law suggests that while the heightened pleading standard of Rule 9(b) applies to claims of actual fraud under § 276, it does not govern claims for constructive fraudulent transfer under §§ 273, 273-a, or 274.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 110-11 (Bankr. S.D.N.Y. 2011) (stating that "[u]nder both the [Bankruptcy Code and the NYDCL], courts consistently hold that 'claims of constructive fraud do not need to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)'" (quoting *Bank of Commc'ns* v. *Ocean Dev. Am., Inc.*, No. 07 Civ. 4628 (TPG), 2010 WL 768881, at *6 (S.D.N.Y. Mar. 8, 2010))), *leave to appeal denied sub nom. Picard* v. *Estate of Madoff*, 464 B.R. 578 (S.D.N.Y. 2011); *see also Friedman* v. *Wahrsager*, 848 F. Supp. 2d 278, 292 (E.D.N.Y. 2012) (holding that when a claim sounds in "constructive fraud,

as opposed to fraudulent intent, the heightened pleading standard embodied in Rule 9(b) does not apply"); *Greystone Bank* v. *Neuberg*, No. 10 Civ. 5225 (JS), 2011 WL 3841542, at *2 (E.D.N.Y. Aug. 25, 2011) (citing cases) (finding "that Rule 8, not Rule 9, sets the pleading standard for constructive fraudulent transfers"); *Eclaire Advisor Ltd.* v. *Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005).  *But see Marketxt Holdings Corp.* v. *Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 397 n.75 (S.D.N.Y. 2010) (noting that there is some disagreement in the Second Circuit over whether Rule 9(b) applies to claims of constructive fraud and comparing cases); *Cargo Partner AG* v. *Albatrans Inc.*, 207 F. Supp. 2d 86, 115-16 (S.D.N.Y. 2002) ("The particularity requirements of Rule 9(b) apply to claims asserted under Sections 273 and 276 of the Debtor and Creditor Law."), *aff'd*, 352 F.3d 41 (2d Cir. 2003).  Rather, most courts have found — and this Court agrees — that the pleading standard for claims of constructive fraud is provided by Rule 8(a) and the plausibility requirement set forth in *Twombly* and *Iqbal*.[3]  That said, while claims for constructive fraudulent transfer "do not require the intent to defraud as an element, [and therefore] are not held to the heightened pleading requirements of Fed. R. Civ. P. 9(b)[,] [they] still cannot survive a motion to dismiss on conclusory

---

[3]     The heightened pleading standard under Rule 9(b) serves three purposes: "[i] enabling a defendant to identify the allegedly fraudulent behavior in order to mount a defense with regard to those actions; [ii] protecting defendant by prohibiting a complainant from making character-damaging allegations that have no basis in provable fact; and [iii] reducing the number of strike suits."  *Sullivan* v. *Kodsi*, 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005) (citing *DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).  However, because claims for fraudulent conveyance under §§ 273, 273-a, and 274 require neither intent to defraud nor "any of the traditional elements of fraud," the motivating concerns of Rule 9(b) apply with less force, making Rule 8(a) the appropriate pleading rule for such causes of action.  *See id.* at 307.

allegations alone." *Paradigm BioDevices., Inc.* v. *Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012).

## 2.    GCI Fails to State a Claim Against Shalu Suri or the Entity Defendants

Even under the less onerous standard of Rule 8(a), GCI fails to plead constructive fraud — let alone actual fraud — against Shalu Suri or the Entity Defendants for the simple reason that the SAC offers nothing but conclusory assertions of NYDCL violations with no factual support.  The SAC identifies Suri as "an individual ... who is CEO of STI Phone Card Warehouse, with offices at 43-15 Main Street, Flushing, New York 11355 and who is the wife of defendant Ravi Chopra." (SAC ¶ 21).  The only other fact presented regarding Suri is an allegation that Chopra, through Suri, attempted to delay the confirmation of the Award against Jaina by forming a corporation using GCI's name, which conduct is not a conveyance at all, actual or constructive, fraudulent or otherwise.  (*Id.* at ¶ 25).  As for the Entity Defendants, the SAC identifies each as a corporate entity, and then makes no further mention of them until their inclusion, with Suri, in the laundry list of defendants to whom Jaina allegedly "transferred all or substantially all of its assets." (*Id.* at ¶¶ 17-20, 42).

Put simply, the SAC is devoid of any facts that would make GCI's allegations against Suri or the Entity Defendants plausible; a claim for fraudulent conveyance cannot possibly stand against defendants to whom no specific conveyance is stated as having been made.  The SAC's broad assertions that "Defendants" have "withdraw[n] ... funds" (*id.* at ¶ 23), with no mention of

timing, amount, or even which particular defendants are being referenced, falls far short of the plausibility standard under *Iqbal* and *Twombly*.  Because the SAC contains no more than a bare recitation of the elements of fraudulent transfer against Suri and the Entity Defendants, the claims against these defendants must be dismissed.

### 3.  GCI Fails to State a Claim Against Vipin Shah and Mahendra Shah

Defendants Vipin and Mahendra Shah argue that no claim can stand against them, as the only transfers alleged in the SAC involving them occurred in 2008 and 2009 — well before the arbitration award was handed down, years before Jaina is alleged to have become insolvent.  (*See* V. Shah Reply ¶¶ 6-7, 20; M. Shah Reply ¶¶ 14, 19).  Indeed, Defendants Vipin and Mahendra Shah are correct insofar as the SAC on its face fails to state "a date, amount or to who and how [any allegedly fraudulent] transfer was made" to either Shah. (V. Shah Reply ¶ 6).  Exhibit 6 to the SAC, however, provides a further morsel of information.  Specifically, it states that

> between the date of the award and November 2014 ... more than $3,000,000 was unlawfully withdrawn by [Chopra, Vipin Shah, and Mahendra Shah] and others connected to Jaina.  Those withdrawals included funds taken by both Vipin Shah and Mahendra Shah, as well as $850,000 directed to "shareholders' friends." Capping them off, moreover, was $1,260,000 which Mr. Chopra directed Jaina to send to his lawyers[.]

(SAC Ex. 6 ¶ 24).  In other words, the Shahs are alleged to have withdrawn not insubstantial sums from Jaina at some time between July and November 2014.

While the claims against the Shahs come closer to meeting the plausibility threshold, the information provided in the SAC and the attendant exhibits still fails to provide these Defendants with the fair notice required under Rule 8(a). *See, e.g., In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 264 (Bankr. S.D.N.Y. 2010) (stating that courts evaluating a claim for constructive fraudulent transfer must consider "whether, consistent with the requirements of Rule 8(a), the complaint gives the defendant sufficient notice to prepare an answer, frame discovery and defend against the charges" (internal citation omitted)). While GCI points to the $3,000,000 figure as providing some measure of factual support (*see* Pl. Opp. 9-10), the pleadings still fail to provide any particular information about the amount allegedly transferred to each defendant, or the manner of the transfer. Consequently GCI's claims for fraudulent transfer against Vipin and Mahendra Shah must be dismissed. *See Holmes* v. *Allstate Corp.*, No. 11 Civ. 1543 (LTS) (DCF), 2012 WL 627238, at *25 (S.D.N.Y. Jan. 27, 2012) (finding Plaintiff's allegations of fraudulent transfer against Defendants as a group, without specifying what conduct was attributable to each, failed to satisfy the pleading standard under Rule 8(a)), *report and recommendation adopted,* No. 11 Civ. 1543 (LTS) (DCF), 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).

### 4.   GCI States a Claim for Constructive Fraudulent Conveyance Against Ravi Chopra Under §§ 273, 273-a, and 274

Chopra is the only Defendant as to whom the SAC alleges a specific transfer, *viz.*, the "$1,260,000 which Mr. Chopra directed Jaina to send his lawyers." (SAC Ex. 6 ¶ 24). Identifying an allegedly fraudulent transfer,

however, is only one element of a valid claim under the NYCDL: §§ 273 and 273-a require GCI to plead Jaina's insolvency; § 274 requires pleading of "unreasonably small capital"; and all three provisions require pleading of a lack of "fair consideration."

Chopra argues that GCI has failed to plead Jaina's insolvency at the time of any transfer, and that the claim under § 273 must consequently fail. (Chopra Reply 2-4). He points to *In re Vivaro Corp.*, 524 B.R. 536 (Bankr. S.D.N.Y. 2015), for the proposition that when evaluating "the sufficiency of a complaint's insolvency allegations, the court looks for some sort of 'balance sheet' test or information provided that the [c]ourt can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place." (Chopra Reply 3 (quoting *id.* at 551). Here, GCI has provided nothing resembling "balance sheet" information; it has, in fact, provided no information about Jaina's assets at all, beyond the unsupported statement that Jaina lacked the funds to pay its debts. (*See* SAC ¶ 47).

A failure to provide factual support for Jaina's insolvency does not necessarily doom GCI's claim under § 273, however, as courts in this District have repeatedly found that "[w]here a plaintiff meets its burden of showing that the transfer is made without consideration, there exists 'a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction.'" *Amusement Indus., Inc.*, 820 F. Supp. 2d at 527 (quoting *RTC Mortg. Trust 1995–S/N1* v. *Sopher*, 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001)); *see also In re Vivaro,* 524 B.R. at 553 ("The

16

Court's conclusion that [a lack of] fair consideration is sufficiently alleged activates the rebuttable presumption that the insolvency element of the NYDCL section 273 portion of Count I is sufficiently pled." (citing *In re Operations N.Y. LLC*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013))).  Hence the Court must consider whether the SAC alleges a lack of fair consideration such that GCI's failure to support its assertion of insolvency can be excused.

As discussed *supra*, fair consideration within the meaning of the NYDCL has two required components:  an exchange for fairly equivalent value and good faith.  *See* N.Y. Debt. & Cred. L. § 272.  GCI points to the text of the SAC — specifically, the paragraph stating "The Transfer was without consideration" — to argue that a lack of fair consideration has been adequately pleaded.  (SAC ¶ 45; Pl. Opp. 11).  Alone, this assertion clearly fails to meet the pleading standard, as it does not even make clear what "transfer" is being referenced.  However, the SAC also states that Chopra "had extensive financial dealings with Jaina and was about to become a shareholder prior to the confirmation of the arbitration award" (SAC ¶ 14); that he acted with the apparent authority to negotiate Jaina's obligations on its behalf (*id.* at ¶ 25); that he formed a New York corporation in GCI's name to attempt to delay confirmation of the Award (*id.* at ¶ 25); and that he directed that $1,260,000 be transferred from Jaina to his attorneys after the arbitration decision, but prior to the Award's confirmation, in an effort to render Jaina judgment-proof (*id.* at ¶ 11, Ex. 6 ¶ 24).  Considering these facts together and taking them as true, as the Court must on a motion to dismiss, GCI has sufficiently alleged Chopra's

17

lack of good faith.  Therefore GCI has also established a lack of fair consideration, and insolvency can be presumed.  The adequacy of GCI's pleading is tenuous, to be sure, and its survival at this stage does not suggest that it will fare equally well at summary judgment or trial.  Nevertheless, GCI's claim against Chopra for constructive fraudulent transfer under § 273 survives Chopra's motion to dismiss, if not by much.

GCI's claim under § 273-a presents an additional issue:  Chopra argues that the § 273-a claim fails on the independent basis that that section requires the transferor "fail[] to satisfy a judgment," a condition not pleaded here. (Chopra Reply 4).  GCI correctly points out that an arbitration proceeding qualifies as an "action for money damages" within the meaning of the NYDCL, so the fact that funds were allegedly transferred prior to the confirmation of the award does not preclude liability under § 273-a.  (Pl. Opp. 20; *see also First Keystone Consultants, Inc.* v. *Schlesinger Elec. Contractors, Inc.*, 871 F. Supp. 2d 103, 118 (E.D.N.Y. 2012) ("It is well-established that an arbitration for money damages is an 'action for money damages' within the meaning of NYDCL section 273-a." (collecting cases)).  However, that Jaina was involved in "an action for money damages" misses Chopra's point; he argues that nowhere in the SAC does GCI allege that Jaina "fail[ed] to satisfy the judgment" that resulted from that action.  Rather, the SAC centers on the contention that "collection of the arbitration award is now being frivolously challenged on any and every available ground."  (SAC ¶ 3).

Section 273-a requires that a transferor fail to satisfy an award upon which final judgment has been entered.  In the present instance, the New York Supreme Court entered judgment confirming the Award in or around December 2014, thereby rendering GCI a judgment creditor of Jaina.  (SAC ¶ 4, Ex. 6 ¶ 25).  Jaina has appealed that confirmation, and, should it succeed in its challenge to the Award's confirmation, GCI will no longer have a final judgment pursuant to which it may seek relief under § 273-a.  *See Cohan* v. *Misthopoulos*, 499 N.Y.S.2d 157, 158 (2d Dep't 1986) (finding that plaintiff had no claim under § 273-a where the previously entered judgment in its favor had been vacated for retrial); *accord In re Yerushalmi*, 440 B.R. 24, 29 (E.D.N.Y. 2010).  The fact that the judgment is currently being challenged, however, does not stay its applicability in order to permit Chopra to claim that Jaina has not yet "fail[ed] to satisfy" its terms.  In other words, so long as the judgment stands and the Award has not been paid, GCI has a valid claim under § 273-a.

Finally, GCI has sufficiently pleaded that Jaina was left with "unreasonably small capital" following its transfer to Chopra to state a claim under § 274.  The SAC repeatedly asserts that the transfer of funds to Chopra and others has "shut Jaina down" (SAC ¶¶ 23, 24), and particularly alleges that on January 8, 2015, after, *inter alia*, the transfer to Chopra, Jaina's "business was essentially frozen" (*id.* at Ex. 6 ¶ 25).  These facts serve to support GCI's allegation that "the property remaining in [Jaina's] account after conveyance was an unreasonably small capital." (*Id.* at ¶ 48).  Hence, given GCI's pleading of Chopra's bad faith — and therefore of a lack of consideration

as defined by the NYDCL — GCI has stated a claim against Chopra for
constructive fraudulent transfer under § 274.

### 5. GCI Adequately States a Claim Against Chopra for Actual Fraudulent Transfer Under § 276

Chopra contends that the SAC falls short of Rule 9(b)'s heightened
standard, as it fails to "plead[] with particularity an actual intent to defraud."
(Chopra Br. 3-6).  GCI argues, however, that it has sufficiently pleaded
numerous "badges of fraud," which suffice to establish fraudulent intent under
§ 276.  (Pl. Opp. 25).  *See generally In re Sharp*, 403 F.3d at 56 (stating that
due to the difficulty of proving actual intent, fraudulent intent may be inferred
from circumstantial evidence in the form of various "badges of fraud").  As
noted, evidence that courts have treated as "badges of fraud" includes (i) a
close relationship between the parties to the conveyance; (ii) a lack of
consideration; (iii) proximity of the conveyance to the time debt was incurred;
(iv) the use of false entities; (v) retention of control of property by the transferor;
and (vi) that the conveyance rendered the transferor insolvent.  *Camofi Master
LDC* v. *Riptide Worldwide, Inc.*, No. 10 Civ. 4020 (CM), 2011 WL 1197659, at
*11 (S.D.N.Y. Mar. 25, 2011) (citing *Wall St. Assocs.* v. *Brodsky*, 684 N.Y.S.2d
244, 247-48 (1st Dep't 1999)); *see also In re Sharp*, 403 F.3d at 56; *Drenis* v.
*Haligiannis*, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006).

In the present case, GCI has alleged sufficient specific badges of fraud to
withstand Chopra's motion to dismiss.  The SAC sets forth Chopra's alleged
close relationship to Jaina, particularly stating that he purported to engage in
settlement negotiations with GCI's president on Jaina's behalf during the

period between the handing down of the Award and the Award's confirmation. (SAC ¶ 25).  Although the vague allegations of Chopra's "extensive financial dealings with Jaina" and the fact that he "was about to become a shareholder" do not, on their own, provide the requisite specificity of Chopra's connection to Jaina, the additional fact of his role as negotiator suffices to establish Chopra's "close relationship" to Jaina.  Furthermore, as a consequence of his alleged role in settlement negotiations with GCI, Chopra is clearly asserted to have been aware of Jaina's debt to GCI.  As discussed *supra*, GCI has also alleged a lack of fair consideration.  Regarding the timing of any transfer to Chopra, Exhibit 6 to the SAC states that Chopra directed $1,260,000 be directed from Jaina to his attorneys after the arbitration proceedings, but prior to the Award's confirmation.  (*id.* at Ex. 6 ¶ 24).  Taken together, these facts set forth the "badges of fraud" necessary to state a claim under § 276.  Chopra's motion to dismiss GCI's § 276 claim against him must therefore be denied.[4]

## C.    GCI is Granted Leave to Replead Count I of the SAC

GCI requests in its opposition brief that, in the event that the Court dismisses any of its claims against the various Defendants, GCI be granted leave to replead.  (Pl. Opp. 27).  Federal Rule of Civil Procedure 15, which

---

[4]    To be clear, GCI just barely passes the pleading threshold; the SAC offers numerous vague allegations regarding Chopra's withdrawal of funds, failing to specify the time, mechanism, or amount of any such transfers.  (*See, e.g.*, SAC ¶ 24 (stating that "Chopra has withdrawn what is probably the largest amount" from Jaina at some unspecified time)).  These allegations fall short of the standard under Rule 8(a), let alone Rule 9(b)'s heightened pleading requirements.  *Cf. Sullivan*, 373 F. Supp. 2d at 306 ("[A]llegations of fraud cannot ordinarily be based upon information and belief.  Instead, the complaint must specify the 'particulars' of the alleged fraud — including, for example, the time, place, particular individuals involved, and specific conduct at issue." (citation omitted)).  It is only the additional particulars provided by Exhibit 6 to the SAC that serve to inch GCI's claims against Chopra over the line to survive Chopra's Rule 12(b)(6) motion.

governs amendments prior to trial, requires a court to "freely give leave" to make amendments — beyond those made as of right — "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As the Second Circuit has made clear, the central inquiry for a court in determining whether leave to replead is appropriately granted under Rule 15 is whether such "amendment would be futile."  *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015); *see also Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

In the present case, the defects in the SAC stem largely from a lack of specificity; nearly all claims are alleged against Defendants in the aggregate and fail to provide the information needed to allow the various separate defendants to formulate their respective defenses.  Should Plaintiff plead its claims with greater particularity — as it has requested leave to do — such amendment might not necessarily be futile.  (*See* Pl. Opp. 27).[5]  Accordingly, GCI is given leave to replead Count I of the SAC.[6]

---

[5]    While the Court grants GCI leave to replead, it acknowledges that this will be GCI's fourth attempt at setting forth a complaint.  (*See* Dkt. #1, 8, 24).  This fact alone might tend to suggest that amendment cannot cure the SAC.  However, in recognizing that amendment may not be futile, the Court considers GCI's change of counsel and the resulting change in litigation strategy effected by its new counsel.  In particular, the shift in focus from Goldberg to the Entity and other Individual Defendants — parties who play only minor roles in the allegations, but who have now been made the focus of the case — would foreseeably need to be accompanied by a shift in the facts pleaded.  The Court notes that substantial resources could have been saved had GCI simply requested leave to amend once it determined that Goldberg, the central player in the SAC, would be dropped from the case.  It further expects that new counsel will think carefully before mounting claims as to any Defendant other than Chopra, and it reminds Plaintiff and its counsel that there will be consequences if there is again motion practice so one-sided in this matter.

[6]    Count I of the SAC seeks, *inter alia*, treble damages pursuant to New York Judiciary Law § 487.  (SAC ¶ 51).  However, Plaintiff has voluntarily withdrawn its claims under § 487.  Consequently there remains no basis upon which Plaintiff may seek treble

## CONCLUSION

For the reasons stated in this Opinion, the motions to dismiss all claims against Goldberg and Hodgson Russ, as well as Counts II, III, IV, and V of the SAC as alleged against all remaining Defendants, are DENIED AS MOOT. Defendants' respective motions to dismiss Count I against Mahendra Shah, Vipin Shah, Shalu Suri, Kedis, Melville, JMVD, and NYCT are GRANTED. Chopra's motion to dismiss Count I, as alleged against him, is DENIED.  GCI may file a Third Amended Complaint no later than **February 22, 2016**. Defendants' deadline to answer or otherwise respond to the Third Amended Complaint will be **March 14, 2016**.  An Initial Pretrial Conference in this matter will be scheduled for **March 16, 2016** at **3:00 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

The Clerk of Court is directed to terminate the motions at docket entries number 50, 56, 59, 68, and 71.

SO ORDERED.

Dated:      February 1, 2016
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

---

damages, and to the extent Plaintiff's request to replead Count I might be construed as a request to reassert its claim under § 487, such request is denied.

*A copy of this Order was mailed by Chambers to:*

```
Mahendra Shah
39 Capital Ave.
Williston Park, NY 11596
```

*A copy of this Order was mailed by Chambers to:*

```
Vipin Shah
35 Smith Place
Williston Park, NY 11596
```