**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GEO-GROUP COMMUNICATIONS, INC., | : | |
| Plaintiff, | : : : | **Civil Action No.:** |
| -against- | : : | **15-cv-01756 (KPF)** |
| RAVI CHOPRA; MAHENDRA SHAH; VIPIN SHAH; 728 MELVILLE PETRO LLC; KEDIS ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC TELECOMMUNICATIONS CORP.; and SHALU SURI, | : : : : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**728 MELVILLE PETRO LLC, KEDIS ENTERPRISES LLC, AND JMVD HILLSIDE'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*On the Brief:*

Andrew I. Hamelsky, Esq.
Samuel V. Eichner, Esq.

16787371v.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

LEGAL STANDARD ........................................................................................................2

    I.     Federal Rule 12(b)(6) Motions ..............................................................2

    II.    Well-Pled Claims Under the NYDCL ...................................................3

ARGUMENT ...................................................................................................................5

    I.     GCI Has Again Failed to Plead Fraudulent Conveyance Under the NYDCL ........5

    II.    The Transfers to the Corporate Defendants Satisfied Antecedent Debts..............12

    III.   GCI Cannot Use the DCL To Avoid Preferences .................................15

    IV.   GCI Has Not Pled Constructive Fraudulent Conveyance Under NYDCL §§ 273, 274 ...17

    V.    GCI Has Not Pled Badges of Fraud And Thus its § 276 Claim Fails..................19

    VI.   GCI Had No Lien or Entitlement to Jaina Funds At the Time of the Conveyances ...20

CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adler v. Greenfield,*
    83 F.2d 955 (2d Cir.1936) ...................................................................................22

*Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York,*
    107 F. Supp. 3d 323, 327 (S.D.N.Y. 2015) ...................................................2, 3

*Art-Camera-Pix, Inc. v. Cinecom Corporation,*
    315 N.Y.S.2d 991 (S.Ct.N.Y.Co. 1970)...........................................................22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................2

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ...........................................................................2, 8

*Corrigan v. United States Fire Insurance Company,*
    427 F.Supp. 940 (S.D.N.Y. 1977).....................................................................22

*Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.,*
    375 F. Supp. 186 (S.D.N.Y. 1974)....................................................................21

*Dussault v. Republic of Argentina,*
    616 F. App'x 26 (2d Cir. 2015)..........................................................................15

*Fed. Deposit Ins. Co. v. Malin,*
    802 F.2d 12 (2d Cir. 1986) ..................................................................20, 21, 22

*Geo-Grp. Commc'ns, Inc. v. Chopra,*
    2016 WL 390089 (S.D.N.Y. Feb. 1, 2016)..........................................................2

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.,*
    288 F. Supp. 2d 473 (S.D.N.Y. 2003)...............................................................16

*HBE Leasing Corp. v. Frank,*
    48 F.3d 623 (2d Cir. 1995) .............................................................................3, 20

*In re Actrade Fin. Techs. Ltd.,*
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ............................................................3, 11

*In re Bernard L. Madoff Inv. Sec., LLC,*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .................................................................2

*In re Cosmopolitan Aviation Corp.,*
    34 BR 592 (Bankr. E.D.N.Y. 1983)...................................................................22

*In re Donald J. Trump Casino Sec. Litig.*,
   7 F.3d 357 (3d Cir. 1993) ...................................................................................2

*In re Dreier LLP*,
   453 B.R. 499 (Bankr. S.D.N.Y. 2011) ...................................................... 2, 10, 15

*In re E.D.B. Constr. Corp.*,
   2013 WL 6183849 (Bankr. E.D.N.Y. Nov. 26, 2013) .......................................19

*In re Kaiser*,
   722 F.2d 1574 (2d Cir. 1983)...............................................................................19

*In re Khan*,
   2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014) ...................................................3

*In re Lucasa International, Ltd.*,
   13 B.R. 596 (Bankr S.D.N.Y. 1981) ...................................................................22

*In re Norstan Apparel Shops, Inc.*,
   367 B.R. 68 (Bankr. E.D.N.Y. 2007) ...................................................................3

*In re Operations NY LLC.*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013) ............................................................ 16, 18

*In re Rite Way Elec., Inc.*,
   510 B.R. 471 (Bankr. E.D. Pa. 2014) ..................................................................19

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ................................................ 3, 4, 7, 11, 13, 14, 15, 16

*In re Trinsium*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) ...........................................4, 6, 16, 17, 18

*In re Vivaro Corp.*,
   524 B.R. 536 (Bankr. S.D.N.Y. 2015) ................................3, 4, 6, 9, 13, 16, 17, 18

*Knapp v. McFarland*,
   462 F.2d 935 (2d Cir. 1972) ...............................................................................22

*McNellis v. Raymond*,
   287 F. Supp. 232 (N.D.N.Y. 1968) *aff'd in part, rev'd in part*, 420 F.2d 51 (2d
   Cir. 1970)........................................................................................................ 4, 13

*Meyerhardt v. Heinzelman*,
   71 N.Y.S.2d 692 (S.Ct.N.Y.Co.1947)..................................................................22

*Orr v. Kinderhill Corp.*,
   991 F.2d 31 (2d Cir.1993) ...................................................................................13

*Parnes v. Gateway 2000, Inc.,*
    122 F.3d 539 (8th Cir.1997) ................................................................................................2

*Rubin v. Hanvor Trust Co.*
    661 F.2d 979 (2d Cir. 1981) ........................................................................................4, 13

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.,*
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................................................19

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.,*
    191 A.D.2d 86, 599 N.Y.S.2d 816 (1993) .......................................................................15

*United States v. McCombs,*
    30 F.3d 310 (2d Cir.1994) ..........................................................................................3, 11

*United States v. Nassar,*
    2014 WL 5822677 (S.D.N.Y. Nov. 10, 2014) ..................................................................19

**STATUTES & RULES**

CPLR 5202(b) ..............................................................................................................21, 22

F.R.C.P. 8 ...............................................................................................................10, 15, 19

F.R.C.P. 9 .........................................................................................................................19

F.R.C.P. 11 ........................................................................................................................11

F.R.C.P. 12(b)(6) ................................................................................................................2

N.Y. Debt. & Cred. L. § 271 ...............................................................................................3

N.Y. Debt. & Cred. L. § 272 ..........................................................................................6, 11

N.Y. Debt. & Cred. L. § 273 ........................................................................3, 17, 18, 19

N.Y. Debt. & Cred. L. § 273-a ............................................................................................3

N.Y. Debt. & Cred. L. § 274 ........................................................................3, 17, 18, 19

N.Y. Debt. & Cred. L. § 276 .........................................................................................19, 20

N.Y. Debt. & Cred. L. § 278 .................................................................4, 20, 21, 22, 23

**OTHER AUTHORITIES**

1 Garrard Glenn, Fraudulent Conveyances and Preferences § 289, at 488 (rev. ed.
    1940).................................................................................................................................15

16787371v.1

Emil A. Kleinhaus and Alexander B. Lees, Debt Repayments as Fraudulent
    Transfers, 88 AM. BANKR. L. J. 307 (2014) ....................................................................15

Vern Countryman, The Concept of a Voidable Preference in Bankruptcy, 38
    VAND. L. REV. 713, 714 (1985) ........................................................................................15

## PRELIMINARY STATEMENT

728 Melville Petro, LLC ("Melville"), Kedis Enterprises, LLC ("Kedis"), and JMVD Hillside, LLC ("JMVD") (collectively referred to as the "Corporate Defendants") now move to dismiss Geo-Group Communications, Inc.'s ("GCI") Third Amended Complaint ("TAC"). This is GCI's *fourth attempt* to state a claim against the Corporate Defendants. As this Court noted in dismissing GCI's Second Amended Complaint, "[t]his fact alone might tend to suggest that amendment cannot cure" GCI's complaint. The TAC merely confirms this Court's suspicion.

GCI's amendments include transfer dates, amounts and threadbare assertions that the transfers to Corporate Defendants were not supported by fair consideration. Yet without factual allegations supporting the absence of equivalent value and good faith GCI's claims must fail. That is because the law of New York is clear: a mere preference between creditors is not actionable under New York's Debtor and Creditor Law ("NYDCL"). The Corporate Defendants received transfers in exchange for fair consideration that satisfy antecedent debts.

At their core, GCI's claims against the Corporate Defendants are nothing but an attempt to collect on a judgment against a company that has suffered financial setbacks but has not crossed the line into bankruptcy or even insolvency. GCI may have an enforceable judgment, but it has not actually taken the steps necessary to enforce it by executing on the judgement and delivering it to the sheriff. Instead, it has improperly pursued legitimate creditors of Jaina including the Corporate Defendants.

In short, GCI's fourth attempt to state a claim against the Corporate Defendants shows its flawed theory is simply not curable. No manner of artful pleading can save a DCL claim against a legitimate, good faith creditor. GCI has a judgment against Jaina, but that is irrelevant here. The Corporate Defendants request that GCI's TAC be dismissed with prejudice, and that the Court grant any additional relief that it deems appropriate.

## LEGAL STANDARD

### I.    Federal Rule 12(b)(6) Motions

When considering a 12(b)(6) motion the court should draw inferences in the plaintiff's favor only if they are reasonable, assume factual allegations only if they are well-pled, and determine whether the entitlement to relief claimed is truly plausible.  *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2016 WL 390089, at \*3-4 (S.D.N.Y. Feb. 1, 2016) (hereinafter "Opinion" or "Op."). A complaint must contain "enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  Op. at 6.  A complaint with factual allegations "merely consistent with a defendant's liability" is defective and must be dismissed.  *Id*; *see also In re Dreier LLP*, 453 B.R. 499, 507 (Bankr. S.D.N.Y. 2011) ("sheer possibility of wrongdoing" does not suffice).

On a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 254 (Bankr. S.D.N.Y. 2010).  Thus, plausible claims are required such that a plaintiff's complaint must contain "more than labels and conclusions."  *Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 327 (S.D.N.Y. 2015) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

On a motion to dismiss the court generally considers "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *See* Op. at 7.  However, a court may also consider a document "that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (*quoting Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 n. 9 (8th Cir.1997)); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993); *see also* Op. at 7.

## II.    **Well-Pled Claims Under the NYDCL**

Proper pleading of NYDCL §§ 273, 273-a, and 274 claims must include allegations of a lack of fair consideration provided in exchange for the transfers to be set aside.  *See* NYDCL § 271 *et seq*.  In addition to a lack of fair consideration, plaintiff under NYDCL § 273 must plead insolvency, *see* NYDCL § 273, and plaintiff under NYDCL § 274 must plead the transfers left the debtor with unreasonably small capital.  *See id.* § 274.  While the NYDCL does not expressly define "unreasonably small capital," courts have found it to be "a financial condition short of equitable insolvency," i.e. where the transferor "is technically solvent but doomed to fail."  *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007).

"Under New York law, the party seeking to have the transfer set aside has the burden of proof on the element of fair consideration and, since it is essential to a finding of fair consideration, good faith."  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 802 (Bankr. S.D.N.Y. 2005) (*citing United States v. McCombs*, 30 F.3d 310, 326 (2d Cir.1994)).  Thus, plaintiff must properly allege the absence of at least one of the elements of fair consideration; failure to do so warrants dismissal.  *In re Sharp Int'l Corp.*, 403 F.3d 43, 48 (2d Cir. 2005) (affirming dismissal of constructive fraudulent conveyance claim for failing to allege lack of good faith).  Pleading the absence of fair consideration requires more than "labels and conclusions."  *Alexander*, 107 F. Supp. 3d at 327.  Allegations merely consistent with fair consideration do not suffice.  Op. at 6.

Where on a motion to dismiss a court is presented with a Note held by defendant-transferee, and documentary evidence shows an antecedent debt owed the transferee by the transferor, the court will presume payments therefrom are on account of that antecedent debt.  *In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015).  Plaintiff must then rebut this presumption.  *Id*; *see also In re Khan*, 2014 WL 10474969, at *9 (E.D.N.Y. Dec. 24, 2014) (citing *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 636 (2d Cir.1995)) ("Where a transferee has

-3-

given equivalent value in exchange for the debtor's property, the Second Circuit has concluded that the statutory requirement of good faith is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme."); *see also* NYDCL § 278(1).

Thus, even on a motion to dismiss, plaintiff must rebut the presumption of fair consideration raised by unequivocal documentary evidence.  *In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (conclusory allegations do not rebut the presumption of consideration raised by documentary evidence of an antecedent debt).  A Note obligation evidenced by a written agreement "is an antecedent debt, and any payments made on account of that Note obligation are payments made on account of that antecedent debt and are presumed [to be] made 'for value.'"  *In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (*citing In re Trinsium*, 460 B.R. 379, 388-89 (Bankr. S.D.N.Y. 2011)).

That the debtor indirectly receives the fair value given in exchange for the allegedly fraudulent transfer is of no moment.  *See In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) (the Court "will not turn a blind eye to the reality that" two conveyances "constituted a single, integrated transaction."); *see also Rubin v. Hanvor Trust Co.* 661 F.2d 979 (2d Cir. 1981) ("the fact that the consideration initially goes to third parties may be disregarded to the extent that the debtor indirectly receives a benefit from the entire transaction.");  *In re Vivaro Corp.*, 524 B.R. 536, 557 (Bankr. S.D.N.Y. 2015) ("a debtor may sometimes receive 'fair' consideration even though the consideration given for his property or obligation goes initially to a third person.")  Courts have found this to be so where there is an "identity of interest" between the intermediary and the recipient of the consideration that supports the later conveyance.  *McNellis v. Raymond*, 287 F. Supp. 232, 238 (N.D.N.Y. 1968) *aff'd in part, rev'd in part*, 420 F.2d 51 (2d Cir. 1970).

**ARGUMENT**

**I.     GCI Has Again Failed to Plead Fraudulent Conveyance Under the NYDCL**

In its Third Amended Complaint, as to each transfer to each Corporate Defendant, GCI

makes the following, conclusory allegations (hereinafter "Chart of Allegations"):

| Melville | JMVD | Kedis |
|---|---|---|
| "There is no legitimate business reason for Jaina, a telecommunications company, to have transferred $460,000.00 to a single purpose LLC formed to own and operate gas and convenience stores."  TAC ¶ 40. | "There is no legitimate business reason for Jaina to have transferred $200,000.00 to a single purpose LLC formed to own property in New York City."  TAC ¶ 47. | "There is no legitimate business reason for Jaina to have transferred $200,000.00 to an entity like Kedis Enterprises, which is in the restaurant business, not the telecommunications business."  TAC ¶ 56. |
| "There is no legitimate business reason for Jaina to have made those transfers at the direction or request of Mr. Chopra."  TAC ¶ 41. | "There is no legitimate business reason for Jaina to have made that transfer at the direction or request of Defendant Chopra."  TAC ¶ 48. | "There is no legitimate business reason for Jaina to have made that transfer at the direction or request of Mr. Chopra."  TAC ¶ 57. |
| "There is no evidence that the $460,000.00 was a fair value exchange for any goods, services, property or property rights 728 Melville allegedly provided to Jaina or promised to provide to Jaina."  TAC ¶ 42. | "There is no evidence that the $200,000.00 was a fair value exchange for any goods, services, property or property rights Hillside allegedly provided or promised to provide to Jaina."  TAC ¶ 49. | "There is no evidence that the $200,000.00 was a fair value exchange for any goods, services or any other property or property rights Hillside allegedly provided or promised to provide to Jaina."  TAC ¶ 58. |
| There is no evidence that any of the payments were made to discharge any legitimate antecedent loan or other debt Jaina allegedly incurred to 728 Melville."  TAC ¶ 43. | "There is no evidence that any of the payments were made to discharge any legitimate antecedent loan or other debt Jaina allegedly incurred to Hillside."  TAC ¶ 50. | "There is no evidence that any of the payments were made to discharge any legitimate antecedent loan or other debt Jaina allegedly incurred to Kedis Enterprises."  TAC ¶ 55. |

GCI's various iterations and permutations of factual allegations against the three

Corporate Defendants boil down to conclusory statements.  The first – that "[t]here is no

legitimate business reason for Jaina to have transferred" the funds it transferred to each

Corporate Defendant is simply baseless.  When one company transfers money to another,

without a single factual allegation to raise a suspicion of fraudulent activity, the presumption is

not that fraud is taking place but that business is taking place. *See In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (*citing In re Trinsium*, 460 B.R. 379, 388-89 (Bankr. S.D.N.Y. 2011)). Absent allegations as to the "manner of the transfer" and the specific activity of each separate defendant, plaintiff simply fails to raise the inference that anything other than a business transaction in the ordinary course took place. *See* Op. at 15.

This Court has found that specific allegations as to the manner of transfer and the facts surrounding the transfer are necessary to the survival of a NYDCL claim. *See* Op. at 17. Specifically, in denying Ravi Chopra's motion to dismiss the Second Amended Complaint, and distinguishing it from the other motions before it, this Court held as follows:

> As discussed supra, fair consideration within the meaning of the NYDCL has two required components: an exchange for fairly equivalent value and good faith. *See* N.Y. Debt. & Cred. L. § 272. GCI points to the text of the SAC — specifically, the paragraph stating "The Transfer was without consideration" — to argue that a lack of fair consideration has been adequately pleaded. (SAC ¶ 45; Pl. Opp. 11). Alone, this assertion clearly fails to meet the pleading standard, as it does not even make clear what "transfer" is being referenced. ***However, the SAC also states that Chopra "had extensive financial dealings with Jaina and was about to become a shareholder prior to the confirmation of the arbitration award" (SAC ¶ 14); that he acted with the apparent authority to negotiate Jaina's obligations on its behalf (id. at ¶ 25); that he formed a New York corporation in GCI's name to attempt to delay confirmation of the Award (id. at ¶ 25); and that he directed that $1,260,000 be transferred from Jaina to his attorneys after the arbitration decision, but prior to the Award's confirmation, in an effort to render Jaina judgment-proof (id. at ¶ 11, Ex. 6 ¶ 24).*** Considering these facts together and taking them as true, as the Court must on a motion to dismiss, GCI has sufficiently alleged Chopra's lack of good faith.

Op. at 17 (emphasis added).

In short, this Court found sufficient GCI's factually specific allegations that Ravi Chopra did not make the transfers in question in good faith. Unlike GCI's allegations as to Ravi Chopra,

GCI does not allege a single factual allegation with any level of specificity whatsoever against the Corporate Defendants. *See supra*, Chart of Allegations, at 5. In fact, GCI's allegations actually preclude any allegation of bad faith against the Corporate Defendants because GCI alleges that Ravi Chopra "directed or requested Jaina to make those transfers," and says nothing about any actions taken by the Corporate Defendants to facilitate the transfers. *See* TAC ¶ 74.

GCI's misunderstanding of the NYDCL is well-illustrated by the TAC:

| Melville | JMVD | Kedis |
|---|---|---|
| "728 Melville is liable for those transfers because the transfers were made to it, and it retained them with knowledge that they had no business purpose, were unrelated to 728 Melville's own business, were not made for fair consideration." TAC ¶ 76. | "Hillside is liable for the transfers it received because it accepted them with knowledge that they had no legitimate business purpose, were unrelated to Hillside's own business, and were not made in exchange for fair consideration. Hillside is liable to pay Geo-Group for the transfers that Hillside received from Jaina." TAC ¶ 77. | "Kedis is liable for the transfers it received because it accepted them with knowledge that they had no legitimate business purpose, were unrelated to Hillside's own business, and were not made in exchange for fair consideration. Hillside is liable to pay Geo-Group for the transfers that Jaina made to it. Kedis Enterprises is liable to pay Geo-Group for the transfers that Kedis Enterprises received from Jaina." TAC ¶ 78. |

This Court dismissed the Second Amended Complaint to the extent its claims were premised on threadbare and conclusory statements that "The Transfer was without consideration." Op. at 17. Yet GCI simply does it again; they claim each Corporate Defendant is liable because each knew "the transfers… were not made for fair consideration." *See* TAC ¶¶ 76-78. Nothing further is offered in support of those conclusory assertions.

Regardless, as GCI has only alleged the Corporate Defendants' knowledge of the transfers at best, its allegations are woefully insufficient to plead bad faith. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 54-55 (2d Cir. 2005) ("mere preference between creditors does not constitute bad faith… [t]o find a lack of 'good faith' where the transferee does not participate in, but only knows that the debtor created the other debt through some form of [ ] dishonesty is to void the

transaction because it amounts to a kind of 'preference'.")  GCI's allegations as to the Corporate Defendants' knowledge – whatever it was – are thus entirely irrelevant.  *See* TAC ¶¶ 76-78.

As to the other prong of fair consideration – equivalent value – clear documentary evidence and affidavits under oath support the notion that such value was given in consideration of the transfers to the Corporate Defendants at issue in this case.  Mahendra Shah and Vipin Shah have stated under oath that the Corporate Defendants received transfers in satisfaction of prior loan obligation *that they themselves brokered*.  *See* Doc. No. 95, Aff. of Vipin Shah, at ¶¶ 10, 15, 16, 17; *see also* Doc. No. 96, Aff. of Mahendra Shah, at ¶¶ 8, 12, 13; *see also* Third Affidavit of Sanjiv Chand ("Third Chand Aff.") ¶¶ 9-14.  Clear documentary evidence also shows the existence of an antecedent debt.  *See* Jaina Bank Record, at Exhibit A, at 2, 6 (showing payment of $200,000 loan to Jaina and repayment of loan by Jaina to Kedis in two (2) $100,000 transfers alleged to be "fraudulent" by GCI); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (court may consider a "document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

Yet even leaving aside the documentary evidence showing the existence of an antecedent debt covering all of the transactions relating to the Corporate Defendants, the TAC does not contain a single allegation supporting a lack of equivalent value.  GCI does not allege, as it attempted to do in prior complaints, a relationship between any of the Corporate Defendants and Jaina, thereby failing to raise any presumption of self-dealing relating to the transactions. Instead, GCI merely alleges that each entity "claims to have or have had no relationship whatsoever with Jaina."  TAC ¶¶ 20-22.  Restating the Corporate Defendants position – regardless of the accuracy of that restatement – does not support a fraudulent conveyance claim.

Similarly, absent an allegation that Ravi Chopra possesses a stake in one or more of the Corporate Defendants – and there is none – GCI's allegation that "[t]here is no legitimate business reason for Jaina to have made those transfers at the direction or request of Mr. Chopra" is irrelevant. Not only is it conclusory and legally insufficient, but this allegation exposes the frivolity and baselessness of GCI's allegations against the Corporate Defendants when juxtaposed with Kedis' Agreement with Mahendra Shah on behalf of Neminath, Inc. ("Neminath"). The Agreement between Kedis and Neminath shows a straightforward transaction involving Mahendra Shah and Vipin Shah, not Chopra. *See* Exhibit B. From the Agreement, one thing remains clear; all transfers the Corporate Defendants received from Jaina were loan repayments, not fraudulent transfers personally benefiting Chopra. *See* Chand Aff. ¶ 15. Moreover, GCI does not even allege Chopra benefitted, it merely implies that he may have.

With GCI's coin toss exposed, it is clear that its allegations emanate from a last-ditch attempt to connect the Corporate Defendants to Ravi Chopra, the most culpable defendant in the case in light of this Court's denial of his motion to dismiss the Second Amended Complaint.

Ultimately, GCI has failed to allege any basis for its belief that the Corporate Defendants were not simply being repaid. *In re Vivaro Corp.*, 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015) ("For example, the Complaint alleges that no consideration was received in exchange for the STi Transfers, but *fails to allege "the factual basis for the belief that these transfers were made without fair consideration*.") (emphasis added). Even less support exists for a fraudulent scheme involving the Corporate Defendants and Ravi Chopra; Kedis lent to Mahendra Shah on behalf of Neminath for Jaina's benefit, not to Chopra. *See* Doc. No. 95, Aff. of Vipin Shah, at ¶¶ 10, 15, 16, 17; *see also* Doc. No. 96, Aff. of Mahendra Shah, at ¶¶ 8, 12, 13; *see also* Third Chand Aff. ¶ 15; *see also* Exhibit B, at 1, 19, 24 (showing Neminath as borrower for Jaina).

What remains of GCI's allegations are carefully-worded attempts to avoid groundless factual allegations while somehow surviving a motion to dismiss. GCI states that there "*is no evidence*" of a fair value exchange or an antecedent debt. GCI never actually alleges – as it must for its DCL claims to survive – that there was *actually no fair value exchange* and no antecedent debt for these particular transactions. Instead, it pleads that there is no evidence. TAC ¶¶ 42, 43, 49, 50, 55, 58. At this stage of litigation the absence of evidence one way or the other is a mere truism. GCI simply asks this Court to presume too much from mere transfers.

GCI goes on – following past missteps from its earlier, now-dismissed complaints in this matter – to group together all the defendants in the case and allege that all of the transfers in question were neither for fair value nor to satisfy antecedent debts. *See* TAC ¶¶ 67-68 ("[n]one of the transfers" was a fair value exchange or was payment for a legitimate antecedent loan made to Jaina or legitimate antecedent debt Jaina owed to another.) GCI fails to heed this Court's clear admonition that reliance on allegations grouping the defendants together is misplaced. Op. at 15.

Again, leaving aside their inaccuracy,[1] GCI's allegations simply do not support its claims. GCI must plead facts that support – "beyond a sheer possibility" – the claim that nothing of equivalent value was exchanged for these transfers. *In re Dreier LLP*, 453 B.R. 499, 507 (Bankr. S.D.N.Y. 2011). Not only does GCI fail to plead facts supporting this, *it does not actually allege that Jaina did not receive these transfers in exchange for fair value.* When juxtaposing GCI's failure to raise a plausible inference or even plead an unfair exchange with the Affidavits of Mahendra Shah, Vipin Shah, Sanjiv Chand, and Jessie Gupta, as well as clear documentary evidence, GCI's claims fall far below the level of plausibility that Rule 8 requires.

---

[1] *See infra* at Part II for discussion of the Agreement between Kedis and Neminath, to which Jaina is a contractual "Affiliate." The Agreement shows a $600,000 loan from Kedis to Neminath on behalf of Jaina under contractual terms qualifying Jaina as a proper recipient of the loan.

*See* Doc. No. 95, Affidavit of Vipin Shah, at ¶¶ 10, 15, 16, 17; *see also* Doc. No. 96, Affidavit of

Mahendra Shah, at ¶¶ 8, 12, 13; *see also* Third Chand Aff., *passim*; *see also* Exhibit A at 2, 6.

Nor does GCI actually allege the absence of good faith.  Thus, despite the disjunctive

manner in which N.Y. DCL § 272 is worded, GCI cannot carry its burden to show the absence of

fair consideration because it has properly alleged neither the absence of exchange for fair value

nor the absence of good faith.  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 802 (Bankr.

S.D.N.Y. 2005) (*citing United States v. McCombs*, 30 F.3d 310, 326 (2d Cir.1994)).  Plaintiff's

failure to plead properly in this fourth attempt to sue the Corporate Defendants warrants

dismissal with prejudice.  *In re Sharp Int'l Corp.*, 403 F.3d 43, 48 (2d Cir. 2005) (affirming

dismissal of NYDCL claim for failure to allege bad faith); *see also* Op. at 22 n. 5.

In short, while Mahendra Shah, Vipin Shah, Sanjiv Chand, and Jessie Gupta have all

sworn – under penalty of perjury – that the Corporate Entities are owned by Sanjiv Chand, a *de

facto* Jaina lender, GCI cannot even allege a single fact supporting fraud.  GCI alleges there is no

"evidence" of an antecedent debt, which is insufficiently pled not to mention inaccurate.

*Compare* Exhibit A, at 2 *with id* at 6; *compare* Exhibit B, at 1, *with* Exhibit E, at 2; *see* Exhibit

C.  GCI alleges each Corporate Defendant "claims to have or have had no relationship

whatsoever with Jaina," rather than alleging they are related to Jaina, again showing the issue is

insufficiency of pleading rather than the veracity of GCI's allegations.  TAC ¶¶ 20-22.  GCI,

floundering as it is, refuses to allege what is necessary under the scrutiny of Federal Rule 11.

When one company transfers money to another it is not presumptively fraudulent; if that

were the law it would permit every frustrated creditor to attack every transfer by a judgment

debtor that is still operating, turning this court into a bankruptcy court.  That cannot be the law.

## II.    The Transfers to the Corporate Defendants Satisfied Antecedent Debts

On December 16, 2013, Kedis loaned $200,000 directly to Jaina.  *See* Exhibit A, at 2.  On January 9, 2014, Jaina repaid half of this loan in the amount of $100,000.  *Id* at 6.  On January 15, 2014, Jaina repaid the remaining $100,000 of this loan.  *Id*.[2]  This exceedingly simple transaction serves to illustrate the "relationship" GCI would seek to discover between the Corporate Defendants and Jaina.  Yet there is no relationship between Kedis, JMVD, or Petro on the one hand and Jaina on the other.  The operative relationship is between Sanjiv Chand, who lent money through Kedis, a company he controls, and Mahendra Shah, who borrowed money through Neminath, a company he controls, for the benefit of Jaina, another company Mahendra Shah controls.  *See* TAC ¶ 17; *see also* Third Chand Aff., *passim*.

More specifically, on January 18, 2013, Sanjiv Chand (on behalf of Kedis) and Mahendra Shah (on behalf of Neminath) executed a Loan Agreement in the amount of $600,000 for the benefit of Jaina.  *See* Exhibit B.  That the loan was for Jaina's benefit is reflected in the expansive scope of the term "Affiliate," which is defined to include "(iv) any Person[3] that… is Under Common Control," where "Under Common Control" defined as "means effective power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise."  This is corroborated by the parties to the Agreement.  *See* Doc. No. 95, Affidavit of Vipin Shah, at ¶¶ 10, 15, 16, 17; *see also* Doc. No. 96, Affidavit of Mahendra Shah, at ¶¶ 8, 12, 13; *see also* Third Chand Aff. ¶ 7.  Neminath's bank statement

---

[2] The January 9, 2014 and January 15, 2014 transactions constitute the entirety of GCI's allegations against Kedis, and Jaina's bank records establish unequivocally that Jaina entered into these allegedly "fraudulent" transactions in order to satisfy antecedent debts.  Consequently, GCI's allegations that Kedis did not receive these payments to discharge an antecedent debt are plainly false.  *See* TAC ¶ 55. Thus, the Corporate Defendants submit that even if this Court denies the Corporate Defendants' motion to dismiss the TAC in its entirety as against them, the Court can easily pare down the issues for discovery by excluding from the case this simple transfer for valuable consideration.
[3] The Loan Agreement defines "Person" to include "any… corporation, company… joint venture."

shows a $600,000 deposit from Kedis on January 22, 2013, just days after Neminath received Kedis' loan. *See* Exhibit E, at 2. Repayment was due in April 2014. *See* Exhibit B, at 1.

Mahendra Shah brokered this loan using one company he controls for the benefit of another he controls. That the first loan initially went to Neminath is of no moment. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) (*citing Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (this Court "will not turn a blind eye to the reality that" two conveyances "constituted a single, integrated transaction"); *see also Rubin v. Hanvor Trust Co.* 661 F.2d 979 (2d Cir. 1981) ("the fact that the consideration initially goes to third parties may be disregarded to the extent that the debtor indirectly receives a benefit from the entire transaction."); *see also In re Vivaro Corp.*, 524 B.R. 536, 557 (Bankr. S.D.N.Y. 2015) ("For example, fair consideration has been found for an individual debtor's repayment of loans made to a corporation, where the corporation had served merely as a conduit for transferring the loan proceeds to him.")

Because there is an "identity of interest" between Neminath – the intermediary – and Jaina – the ultimate recipient – the Court must view loans from Kedis to Neminath *for Jaina's benefit* as consideration that supports the later conveyances remitted to the Corporate Defendants at Kedis' direction. *McNellis v. Raymond*, 287 F. Supp. 232, 238 (N.D.N.Y. 1968) *aff'd in part, rev'd in part*, 420 F.2d 51 (2d Cir. 1970).

The fact that this debt was incurred for Jaina's benefit is demonstrated by documentary evidence showing transfers from Neminath to Jaina, *see* Exhibit E, at 2, and by the course of dealings established from the $200,000 transaction, where money went *directly from Kedis to Jaina* only to go *directly from Jaina back to Kedis* weeks later. *See* Exhibit A, at 2, 6; *see also* Exhibit C. It is further corroborated by the fact that both Jaina and Neminath are managed by Mahendra Shah. *See* Exhibit D (showing New York Secretary of State Print-outs for both

-13-

Neminath and Jaina, listing Mahendra Shah as the principal of both, and listing both entities with the same physical address for service of process.)  From the agreement it is clear that Kedis chose to contract with Neminath, which had collateral to offer Kedis, but ultimately did so to provide a benefit to Neminath's "affiliates" i.e. Jaina.  *See* Exhibit B, at 9 (showing the collateral used to secure the loan).  Finally, the guarantors of the loan – Mahendra Shah and Nayana Shah – own a majority stake in Jaina as per the TAC.  *See* TAC ¶¶ 17-18; *see also* Exhibit B, at 15.

This exceedingly simple explanation rebuts whatever presumption GCI attempts to raise when it points to the type of business in which each Corporate Defendant primarily engages.  *See* TAC ¶¶ 38-40, 45-47, 53-54, 56.  Not only are the Corporate Defendants' respective business operations are altogether irrelevant because only Kedis made the loans – JMVD and Petro were merely third party assignees that were conferred a benefit by Kedis, *see* Chand Aff. at ¶¶ 11-12 – but this argument is entirely nonsensical as lenders rarely operate in the same business as their borrowers.  The fact that JMVD, Petro, and Kedis are in the restaurant business or the real estate business is entirely irrelevant; Sanjiv Chand was well within his rights to direct Kedis to loan funds to Neminath for Jaina's benefit regardless of what Kedis purports to do.

Ultimately, the entirety of the transfers received by the Corporate Defendants and at issue in this case were repayments of loans brokered by the heads of two groups of companies – Sanjiv Chand and Mahendra Shah.  Jaina received a benefit for cash flow purposes, and Jaina returned that benefit.  GCI may have preferred that Jaina pay GCI first, but as the Corporate Defendants have pointed out time and again, "mere preference between creditors does not constitute bad faith."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005).

In short, there is no fraud in the mere loaning of funds between two individuals within a common, informal business network; such activities predate the passage of the NYDCL itself.

III.   **GCI Cannot Use the DCL To Avoid Preferences**

GCI cannot use the DCL to avoid preferences to creditors.  That proposition is supported by a wealth of authority.  *Dussault v. Republic of Argentina*, 616 F. App'x 26, 28 (2d Cir. 2015) ("under New York law, preferring one creditor over another is neither actually nor constructively fraudulent."); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 54-55 (2d Cir. 2005); *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 91 (1993); 1 Garrard Glenn, Fraudulent Conveyances and Preferences § 289, at 488 (rev. ed. 1940); Emil A. Kleinhaus and Alexander B. Lees, Debt Repayments as Fraudulent Transfers, 88 AM. BANKR. L. J. 307 (2014) ("fraudulent transfer law is generally focused on transfers that reduce the value of the debtor's estate and thus the net return to creditors as a group."); Vern Countryman, The Concept of a Voidable Preference in Bankruptcy, 38 VAND. L. REV. 713, 714 (1985).

While GCI has now added transfer amounts and dates, GCI still has not pled facts in the complaint to link the Corporate Defendants to Jaina insiders.  GCI continues to rely on the weakest inferences of foul play, e.g. that because the Corporate Defendants are *not* in the telecommunications business they must not have lent money to Jaina in the ordinary course.  *See* TAC ¶¶ 20-22.  This is exactly the kind of "'sheer possibility' of wrongdoing" that does not pass muster under FRCP 8(a).  *In re Dreier LLP,* 453 B.R. 499, 507 (Bankr. S.D.N.Y. 2011).  The Corporate Defendants gladly stipulate to their lack of affiliation with the telecommunications industry.  Lenders are virtually never involved in the same business as those to whom they lend and so this allegation is entirely irrelevant.  So too is GCI's implication that because the Corporate Defendants deny a connection to Jaina, they must have a connection to Jaina.  *See* TAC ¶¶ 20-22.  As the Corporate Defendants successfully argued in dismissing the prior complaint, such arguments border on frivolity; the Corporate Defendants must be able to deny allegations against them.  While GCI again claims the Corporate Defendants have no explanation

-15-

for the transfers they received, an antecedent debt owed to a creditor is explanation enough. *See supra* at Part II.

GCI's alleges the Corporate Defendants had "improper motives" based on the amounts transferred, dates of transfers and the lack of a justification for transfers. *See* TAC ¶ 86. Yet the first page of the Agreement alone dispels all of this. *See* Exhibit B, at 1 (showing $600,000 owed and 2014 maturity date). Consequently, GCI's assertion that the Corporate Defendants "knew" that Jaina was attempting to defraud creditors goes nowhere. TAC ¶ 80. That the Corporate Defendants knew they were preferred creditors is not actionable. *See e.g. In re Sharp Int'l Corp.*, 403 F.3d 43, 54-55 (2d Cir. 2005) ("It is of no significance that the transferee has knowledge… that the transferor is preferring him to other creditors."); *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (dismissing fraudulent conveyance claims for lack of specificity); *In re Operations NY LLC.*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013) (same).

The Corporate Defendants have shown that the Agreement underlies the entire "relationship" between the Corporate Defendants and Jaina, but really a relationship between Sanjiv Chand and Mahendra Shah. The law is clear on this point; a Note obligation evidenced by a written agreement "is an antecedent debt, and any payments made on account of that Note obligation are payments made on account of that antecedent debt and are presumed [to be] made 'for value.'" *In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (*citing In re Trinsium*, 460 B.R. 379, 388-89 (Bankr. S.D.N.Y. 2011)). The law adopts this presumption to avoid meritless challenges to every transaction a struggling company might enter into by judgement creditors with little-to-no concern for the judgment debtor or other creditors. Jaina preferred the Corporate Defendants in the ordinary course, a fact for which GCI has no recourse.

**IV.   GCI Has Not Pled Constructive Fraudulent Conveyance Under NYDCL §§ 273, 274**

To successfully plead a claim under NYDCL §§ 273 and 274 GCI must plead that Jaina was insolvent, and that Jaina was left with unreasonably small capital, respectively, at the time of each transfer to be set aside.  GCI's own allegations not only fail to do this but directly refute it.

GCI's own allegation is that over $100,000 was transferred to Vipin Shah *more than one month after the last transfer to any of the Corporate Defendants*.  *Compare* TAC ¶ 59 (showing over $100,000 in transfers in late November and December of 2014) *with* TAC ¶ 37 (showing the late October 2014 transfers to Melville).  Obviously then, as per GCI's allegations, if Jaina had over $100,000 to spare *after* the last transfer to the last Corporate Defendant at issue in this case it was never left insolvent by any transfer to the Corporate Defendants.  Furthermore, Jaina bank statements show more than $2.4 million going into the Jaina account in October of 2014.  *See* Exhibit A, at 42.  Those statements show more than $1.3 million in credits to that account in November of 2014.  *See id* at 47.  In both cases, credits exceeded debits for the relevant period.

As the Corporate Defendants pointed out in their prior motion, GCI must show that Jaina was insolvent or lacked sufficient capital as a direct result of the transfer or at the time of the transfer.  *See In re Vivaro Corp.*, 524 B.R. 536, 551 (Bankr. S.D.N.Y. 2015) ("insolvency is measured from the point at which the transfers took place and therefore 'cannot be presumed from subsequent insolvency at a later point in time.'"); *see also In re Trinsum Grp., Inc.*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) (same).  GCI has not done so based not only on clear documentary evidence placed directly in issue by GCI's complaint but also because it alleges that substantial funds left the account months after the transfers to the Corporate Defendants.

Again, a plaintiff claiming violations of NYDCL §§ 273 and 274 must plead the transferor is "insolvent" or left with "unreasonably small capital."  In order "[t]o evaluate the

sufficiency of a complaint's insolvency allegations, the court looks for some sort of 'balance sheet' test or information provided that the [c]ourt can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place." *In re Vivaro Corp.*, 524 B.R. 536, 551 (Bankr. S.D.N.Y. 2015).[4]  Even in the TAC GCI still has provided no "balance sheet" materials of any kind to support its insolvency allegations, which renders these claims defective.  *See In re Operations NY LLC.*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013) (dismissing the claim under § 273's higher "insolvency" bar where "the *Complaint* does not allege any facts relating to the Debtor's sales, its ability to generate cash or its ability to pay its debts and sustain itself.")  Far more specific pleadings have failed.  *See e.g. In re Trinsum Grp., Inc.*, 460 B.R. 379, 392-93 (Bankr. S.D.N.Y. 2011) (dismissing complaint including net income, cash flow, annual revenue growth, annual debt levels as these figures "do not rule out the possibility that the Debtors may have had a reserve such that they were not insolvent or rendered insolvent.")

In short, GCI would have this Court find that two (2) $100,000 transfers on January 9, 2014 and January 15, 2014 to Kedis left Jaina insolvent or with unreasonably small capital even though it also alleges Jaina did not cease operations until 2015.  *See* TAC ¶ 70.  It puts forward this theory even though the TAC itself alleges more than $2.3 million in transfers to other defendants *after* these two transfers took place.  *See* TAC ¶¶ 23, 27, 31, 59.

Even GCI's allegations regarding the October 2014 transfers are absurd; Jaina's account reflects between millions in transactions in October and November of 2014.  *See* Exhibit A, at 42 (showing $2.4 million in deposits and credits to Jaina's account from October 8 to November 7 of 2014).  Simply put, GCI's NYDCL §§ 273, 274 are not well-pled and must be dismissed.

---

[4] The Court in *In Re Vivaro* goes on to note that "[t]he 'present fair salable value of [ ] assets' requires there to be an evaluation of the market value of the assets at the time the transfers took place. Additionally, there should be information as to the level of liquidity of the transferor's assets. Often, there is valuation provided of a company's assets or probable liabilities when trying to prove this element." *Id* at 551. There is nothing even approaching this in the TAC. GCI cannot simply shout "insolvency" to support constructive fraudulent conveyance claims.

## V.   GCI Has Not Pled Badges of Fraud And Thus its § 276 Claim Fails

When evaluating claims under NY DCL § 276, courts apply FRCP 9(b) and require specific allegations of fraud.  *United States v. Nassar*, 2014 WL 5822677, at *7 (S.D.N.Y. Nov. 10, 2014). "Courts have developed "badges of fraud" to establish the requisite actual intent to defraud."  *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983).[5]  Simply put, GCI fails to allege a single "badge of fraud" with the requisite degree of specificity.  In this regad, the Corporate Defendants carry forward their arguments in support of dismissing GCI's constructive fraud claims; a cause of action not well-pled under Rule 8 it is certainly not well-pled under Rule 9.

Adding to the frivolity of this cause of action is GCI's insistence on grouping together the Corporate Defendants, three separate companies, and treating them as a single entity.  While the Corporate Defendants are either controlled by Sanjiv Chand or owned and controlled by members of his family, *see* Chand Aff. ¶¶ 1-2, the Agreement critical to dispelling GCI's confused allegations clearly shows that the Corporate Defendants are *not* similarly situated.  *See* Exhibit B, at 1 (showing only Kedis as lender).  Despite this reality, GCI repeats boilerplate allegations three times, once per Corporate Defendant.  *See supra* Chart of Allegations.

Well-pled fraud under Federal Rule 9(b) simply does not work this way.  *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (under FRCP 9(b) plaintiff must "[identify] which defendant is responsible for which act.")  Even if one "badge" were pled properly it would not necessarily state a prima facie claim. *See In re Rite Way Elec., Inc.*, 510 B.R. 471, 483 (Bankr. E.D. Pa. 2014).  The TAC is about every defendant *except* the Corporate Defendants, and absent specific allegations GCI's § 276 claim fails.

---

[5] Badges of fraud include "(1) lack or inadequacy of consideration; (2) family, friendship or close associate relationship between the parties; (3) retention of possession, benefit, or use of the property in question; (4) financial condition of the party sought to be charged both before and after the transaction in question; (5) existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) general chronology of the events and transactions under inquiry.") *In re E.D.B. Constr. Corp.,* 2013 WL 6183849, at *7 (Bankr. E.D.N.Y. Nov. 26, 2013).

**VI.**   **GCI Had No Lien or Entitlement to Jaina Funds At the Time of the Conveyances**

The premise behind GCI's lawsuit against the Corporate Defendants is effectively that GCI believes it has a security interest that takes priority over whatever interest the Corporate Defendants may have in those funds.  Yet GCI has no such priority.  While GCI may point to the NYDCL in support of the argument that these provisions confer such a right upon it, to do so would be to overlook NYDCL § 278, which excludes from the reach of the NYDCL "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995); *see also Fed. Deposit Ins. Co. v. Malin*, 802 F.2d 12, 16 (2d Cir. 1986) ("In order for a transferee to have priority over a judgment creditor by virtue of the exemption under section 278, the conveyance must have occurred prior to the time the judgment creditor obtained a lien on the property.")

GCI alleges that its entitlement to Jaina funds arises from an arbitration proceeding that commenced on May 30, 2013.  *See* TAC ¶ 2.  Yet it is clear that Sanjiv Chand, operating through Kedis, entered into the initial transaction on January 18, 2013, before any of the alleged "fraud" even took place.  Exhibit B, at 1.  GCI has thus failed to allege a single fact that would preclude all three Corporate Defendants from being a "purchaser for fair consideration without knowledge of the fraud at the time of the purchase."  NYDCL § 278(1).  Simply put, GCI has not alleged any specific knowledge that any of the Corporate Defendants – not to mention Sanjiv Chand – might have had that would have put them on notice as to whatever fraud is alleged in the TAC.  *See HBE Leasing Corp.* 48 F.3d at 636.  In fact, there are simply *no allegations whatsoever dating back to January 18, 2013 at all.*  Thus, as a matter of law, the TAC cannot dispel the Corporate Defendants' complete defense under NYDCL § 278.  *In re Dreier LLP*, 462 B.R. 474, 485 n. 11 (Bankr. S.D.N.Y. 2011)

(discussing NYDCL § 278(1) as state law analogue to Section 548(c) of the Bankruptcy Code); see also *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr. S.D.N.Y. 2011) (discussing availability of 548(c) affirmative defense to prevail on motion to dismiss if good faith is "apparent from the face of the Complaint.")

Perhaps if GCI had obtained a judgment against Jaina prior to Kedis' execution of the Agreement GCI would be able to state a claim sufficient to allow discovery to proceed, and perhaps the same result would be appropriate if Kedis conferred a benefit upon Jaina after receiving the transfers at issue.  Yet here it is abundantly clear that Kedis entered into the loan agreement in January of 2013.  *See* Exhibit B, at 1.  It is equally clear that the arbitration proceeding brought by GCI against Jaina did not commence until May 30, 2013.  *See* TAC ¶ 2.  And finally, it is clear that GCI has not pled a single allegation relating to the Corporate Defendants that dates back to January of 2013.

This glaring omission from the TAC aside, the cases reflect that Kedis' loan, and the debt obligation that arose therefrom, has priority over any right GCI as Jaina's judgment creditor may possess.  *Fed. Deposit Ins. Co. v. Malin*, 802 F.2d 12, 16 (2d Cir. 1986) ("In order for a transferee to have priority over a judgment creditor by virtue of the exemption under section 278, the conveyance must have occurred prior to the time the judgment creditor obtained a lien on the property.")  That is because GCI did not obtain a lien on the property at issue here until the judgment was entered in the New York Supreme Court proceeding.  *See* NY CPLR 5202(b) (a lien on personal property only arises where an order is entered directing payment in favor of a judgment creditor); *see also Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.*, 375 F. Supp. 186, 194 (S.D.N.Y. 1974) *reversed on other grounds*,

512 F.2d 605 (2d Cir. 1975) ("a judgment creditor does not obtain a lien merely by obtaining

a judgment, or even by serving restraining notices subsequent to the judgment.")

Judgment was entered in that proceeding on April 3, 2015.  *See* Exhibit F.  Yet the

transfers that GCI seeks to void took place in 2014.  *See* TAC ¶¶ 37, 44, 51-52.  Therefore, it

is clear that GCI obtained a lien on whatever funds Jaina possessed no earlier than April of

2015.  Accordingly all of the conveyances received by all of the Corporate Defendants were

made "prior to the time the judgment creditor obtained a lien on the property."  *Fed. Deposit*

*Ins. Co. v. Malin*, 802 F.2d 12, 16 (2d Cir. 1986).

Absent the operation of CPLR 5202(b) GCI fares no better as a judgment becomes a

lien on *personalty* only when an execution is delivered to the sheriff, which GCI could not

have done until April 2015, and in any event did not even do at that time.  *In re Cosmopolitan*

*Aviation Corp.*, 34 BR 592, 595 (Bankr. E.D.N.Y. 1983) (*citing Knapp v. McFarland*, 462

F.2d 935 (2d Cir.1972)); *Adler v. Greenfield*, 83 F.2d 955 (2d Cir.1936); *Corrigan v. United*

*States Fire Insurance Company*, 427 F.Supp. 940 (S.D.N.Y.1977); *In re Lucasa*

*International, Ltd.*, 13 B.R. 596 (Bankr S.D.N.Y.1981); *Art-Camera-Pix, Inc. v. Cinecom*

*Corporation*, 315 N.Y.S.2d 991 (S.Ct.N.Y.Co.1970); *Meyerhardt v. Heinzelman*, 71 N.Y.S.2d

692 (S.Ct.N.Y.Co.1947).

In short, GCI simply cannot show a priority interest in the funds Jaina possessed in 2014

and transferred to the Corporate Defendants.  Kedis, "a purchaser for fair consideration without

knowledge of the fraud at the time of the purchase," is insulated by NYDCL § 278(1).  Similarly,

Petro and JMVD are also insulated by that provision, which includes under its protection "one

who has derived title immediately or mediately from such a purchaser."  NYDCL § 278.  Kedis'

assignments of the debt it was owed to JMVD and to Petro qualify for protection from the

NYDCL provisions as per the express terms of the statute.  *See* Chand Aff. ¶¶ 11-12.  Thus, even assuming that each and every one of the transfers from Jaina to the Corporate Defendants was, in fact, fraudulent as to GCI, the Corporate Defendants remain insulated by NYDCL § 278(1) as unwitting, prior purchasers without knowledge of whatever fraud GCI has alleged in the TAC.

## **CONCLUSION**

For the foregoing reasons, the Corporate Defendants respectfully request that the complaint be dismissed with prejudice.


Date:  March 30, 2016                    Respectfully submitted,

                                         By: _____
                                             Andrew I. Hamelsky, Esq.
                                             Samuel V. Eichner, Esq.
                                             White and Williams LLP
                                             7 Times Square | Suite 2900
                                             New York, New York  10036
                                             Phone: 212-631-4406
                                             E-mail: hamelskya@whiteandwilliams.com
                                             *Attorneys for Corporate Defendants*

-23-