## COMMERCIAL LOAN AGREEMENT

THIS COMMERCIAL LOAN AGREEMENT (this "Agreement") is made as of the 16th day of January, 2013 between NEMINATH INC. a New York a New York Corporation with its principal office located at 235 Hillside Avenue, Williston Park, New York 11596 (the "Borrower") and KEDIS ENTERPRISES LLC with offices at 1414 Hillside Avenue, New Hyde Park, NY 11040 ("Lender").

### WITNESSETH

WHEREAS, Lender and the Borrower, desire to enter into an agreement setting forth the terms of a commercial loan to be provided by Lender to the Borrower.

NOW THEREFORE, the parties hereto (the "Parties") agree as follows:

1. The Loan.

1.1 Purpose: Lender agrees to make loans to the Borrower in the amount US$600,000.00 (the " Loan") to be used for improvement and expansion of Neminath, Inc. and/or the business of its Affiliates. The Loan shall be referred to hereunder as the "Loan ".

The term "Affiliate" means, with respect to any Person, any (i) officer or (ii) director thereof or (iii) any Person that is, directly or indirectly, the legal or beneficial owner of or otherwise Controls more than 50% of any class of shares or other equity security of such Person, or (iv) any Person that directly or indirectly Controls or is Controlled By or is Under Common Control With such Person. "Control" of a Person (including the correlative meanings of "Controls", "Controlled By" and "Under Common Control With") means effective power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

The term "Person" means any individual, corporation, company, voluntary association, partnership, joint venture, trust, unincorporated organization or government (or any agency, instrumentality or political subdivision thereof)

Subject to the terms and conditions hereof, the Borrower may borrow on a non-revolving basis under this section 1.1. Notwithstanding anything to the contrary set forth herein, the Facility available to the Borrower hereunder and all obligations of Lender hereunder shall terminate on April 19, 2014 (the "Maturity Date"), and the Borrower shall on the Maturity Date repay to Lender the full amount of principal and interest owing by the Borrower hereunder, together with any fees and all other amounts owing by the Borrower to Lender.

1.2 Promissory Note.

1

A promissory note for the Loan (the " Loan Note") shall be executed by the Borrower in form and substance satisfactory to Lender.  The   Loan Note shall be payable in a lump sum.   The Loan Note shall sometimes be referred to herein as the "Note".

1.3 Notice and Manner of Borrowing. The proceeds of the loans under the Loan shall be paid by Checks.

1.4 Interest. Interest shall accrue on all obligations at an interest rate (the "Interest Rate") of fifteen (15%) percent per annum.

1.5 Default Interest. Notwithstanding anything to the contrary contained herein, if the Borrower fails to repay any loan or to pay any other amount when due hereunder, then the Borrower shall, to the extent permitted by law, pay interest on such unpaid amount from such due date to the date of payment in full at the maximum interest rate allowed by applicable law.

1.6 Payments.

(a)      Borrower shall make payments of, all principal, interest and other amounts owing hereunder shall be due and payable on the Maturity Date.

(b)      All sums payable to Lender under this Agreement shall be paid in U.S. dollars in immediately available funds without any deductions or setoff not later than 3:00P.M. New York time on the day in question to Lender at its address set forth in the Note.

(c) All payments made to Lender shall be applied against amounts then due and payable under this Agreement in the following order: first, to any fees or other charges owing to the Lender hereunder or; second, to accrued and unpaid interest; and third, to the outstanding principal balance hereof.  Notwithstanding the foregoing, after the occurrence of an Event of Default, the Lender may apply payments received hereunder to the obligations evidenced by the Note in such manner as the Lender shall determine in its sole and absolute discretion.

1.7 Payment Date Adjustments. Whenever any payment hereunder shall be stated to be due on a Saturday, Sunday, or other day on which banks are not open for business in New York City (any other day being a "Banking Day"), such payment shall be due on the next succeeding day which is a Banking Day.

1.8 Use of Loan. The Loan is to be used for the Borrower's improvement and expansion of its business including but not limited to Affiliate's improvement of the business.

1.9 The Borrower shall not, directly or indirectly, use any part of such proceeds of to extend credit to any person.

2

2. Representations and Warranties. The Borrower hereby represents and warrants to Lender as follows:

2.1 Formation and Qualification. The Borrower is duly formed, validly existing, and in good standing under the laws of the State of New York. The Borrower is qualified or registered to do business in every jurisdiction where such qualification or registration is necessary.

2.2 Power and Authority. The Borrower has full legal right, power, and authority to carry on its present business, to own its property and assets, and to perform its obligations hereunder.

2.3 Authorization of Borrowing. The Borrower has taken all appropriate and necessary corporate action to authorize the execution, delivery, and performance of this Agreement and the other Collateral Documents to which the Borrower is a party.

2.4 Agreement Binding. This Agreement and the other Collateral Documents each constitute the legal, valid, and binding obligations of the Borrower or the Guarantor (as defined herein), as the case may be, enforceable in accordance with their terms. The execution, delivery, and performance of this Agreement and the other Collateral Documents do not violate any law or governmental regulation nor conflict with or result in the breach of any provisions of any agreement to which the Borrower or the Guarantor is a party or by which any of them or any of their properties or assets are bound, nor constitute a default or an event that with the giving of notice or the passing of time, or both, would constitute a default under any such agreements.

2.5 Subsidiaries and Ownership of Stock. Set forth in Exhibit "1" attached hereto is a complete and accurate list of the corporations, partnerships and other entities in which the Borrower has an interest exceeding five percent (5%) of the total equity interests therein (the "Subsidiaries"), showing the jurisdiction of incorporation or organization and the percentage of the Borrower's ownership thereof. In the case of Subsidiaries that are corporations, all of the outstanding capital stock of each such Subsidiary has been validly issued, is fully paid and non-assessable, and is owned by the Borrower free and clear of all liens and encumbrances.

2.6 Financial Statements. The consolidated balance sheet of the Borrower and its respective Subsidiaries as at                               , and the related consolidated statements of income and retained earnings of the Borrower and its Subsidiaries for the fiscal year then ended, and the accompanying footnotes, copies of which have been furnished to Lender, are complete and correct and fairly present the financial condition of the Borrower and its Subsidiaries as at such dates and the results of the operations of the Borrower and its Subsidiaries for the periods covered by such statements, all in accordance with generally accepted accounting principles consistently applied (subject to year-end adjustments in the case of interim financial statements). Since                         , there has been no material adverse change in the condition
------------------------

(Financial or otherwise), business, or operations of the Borrower or any Subsidiary. There are no liabilities of the Borrower or any Subsidiary, fixed or contingent, which are material but are not reflected in the financial statements or in the notes thereto, other than liabilities arising in the ordinary course of business since                    . No information, exhibit, or report furnished by the Borrower or the Guarantor to Lender in connection with the negotiation of this Agreement contained any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained therein not materially misleading.

2.7 ERISA. The Borrower and its Subsidiaries are in compliance in all material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended. Neither a Reportable Event (as defined in ERISA) nor a Prohibited Transaction (as defined in ERISA) has occurred and is continuing with respect to any pension plan which is covered by Title IV of ERISA and in respect of which the Borrower or any Commonly Controlled Entity (as defined in ERISA) is an "employer" as defined in Section 3(5) of ERISA (a "Plan"); no notice of intent to terminate a Plan has been filed, nor has any Plan been terminated; no circumstances exist which constitute grounds entitling the Pension Benefit Guaranty Corporation or any entity succeeding to any or all of its functions under ERISA (the "PBGC") to institute proceedings to terminate, or appoint a trustee to administer, a Plan, nor has the PBGC instituted any such proceedings; neither the Borrower nor any Commonly Controlled Entity has completely or partially withdrawn from a Multiemployer Plan (as defined in ERISA); the Borrower and each Commonly Controlled Entity have met each minimum funding requirements under ERISA with respect to all of their Plans, and the present value of all vested benefits under each Plan exceeds the fair market value of all Plan assets allocable to such benefits, as determined on the most recent valuation date of the Plan and in accordance with the provisions of ERISA; and neither the Borrower nor any Commonly Controlled Entity has incurred any liability to the PBGC under ERISA.

2.8 Filings and Recordings. To ensure the legality, validity, and enforceability of this Agreement, the other Collateral Documents, and the grant and perfection of the security interests provided for in the Security Agreement, it is not necessary that any document or instrument be filed or recorded with any office or that any other action be taken, except for the due filing of UCC-1 financing statements with the Secretary of State of New York and the recordation of the Negative Pledge Agreement (as defined herein).

2.9 Litigation. There are no pending or threatened legal actions or arbitrations or other proceedings involving the Borrower, any Subsidiary, or the Guarantor, except as set forth on Exhibit "2" attached hereto and incorporated by reference.

2.10 Title to Properties and Assets. The Borrower has good and marketable title to all the properties and assets, ownership of which is reflected in its most recent financial statements, except for properties or assets that have been disposed of in the ordinary

4

course of business. All such properties and assets are free and clear of all mortgages, liens, charges, and other encumbrances (each a "Lien") except as noted in the lien status report provided by Borrower to Lender, a copy of which is attached as Exhibit "3" hereto and is incorporated by reference. All such properties and assets are insured against such risks and in such amounts as are customary for businesses of a like nature.

2.11 Compliance with Law. The Borrower is conducting its business and operations in compliance with all applicable laws and directives of governmental authorities having the force of law, and is in compliance with all applicable government guidelines and policy statements whether or not having the force of law. The Borrower has paid all taxes due with respect to the ownership of its assets and the conduct of its operations, except to the extent that the payment of such taxes is being contested in good faith by the Borrower. The Borrower shall set aside adequate reserves for the payment of the foregoing taxes in the event that the aforementioned contest is unsuccessful in its entirety.

2.12 Other Obligations. The Borrower is not in default in the performance, observance, or fulfillment of any obligation, covenant, or condition in any material agreement or instrument to which it is a party or by which it is bound.

3. Covenants.

Until such time as that all Loans and other sums payable by the Borrower hereunder have been paid in full and Lender has no further obligations hereunder, the Borrower covenants as follows:

3.1 Financial Statements; Other Reports.

(a) The Borrower shall maintain an accounting system in accordance with United States generally accepted accounting principles consistently applied.

(b)     Within 30 days of filing annual tax return filing, a copy of the Borrower's certified public accountant prepared fully executed and dated income tax return including all schedules and K-1s or certified public accountant compiled fully executed and dated financial statement.

(c)     Within 30 days of filing, a copy of each Guarantor's fully executed and dated income tax return including all schedules and K-1s.

(d) On an annual basis the updated and executed personal financial statement of Each Guarantor.

(e)     The Borrower shall make available such further information or documents concerning its business and affairs as Bank may from time to time reasonably request.

3.2 Other Obligations. The Borrower shall pay all its indebtedness and promptly perform all contractual obligations pursuant to agreements to which it is a party or by which it is bound at any time during the term of this Agreement.

3.3 Taxes. The Borrower shall pay and discharge all taxes and governmental charges upon it or against any of its properties or assets prior to the date after which penalties attach for failure to pay, except to the extent that the Borrower shall be contesting in good faith its obligation to pay such taxes or charges. The Borrower shall set aside adequate reserves for the payment of the foregoing taxes and/or charges in the event that the aforementioned contest is unsuccessful in its entirety. The Borrower shall make timely filings of all tax returns and governmental reports required to be filed or submitted under any applicable laws or regulations.

3.4 Maintenance of Business; Insurance; Inspection. The Borrower shall maintain its corporate existence in good standing. The Borrower shall operate its business and assets in compliance with all applicable laws and regulations and shall maintain the present character of its business. The Barrower shall maintain or cause to be maintained (a) business insurance covering product liabilities, casualties, loss of income and other liabilities in amounts of coverage approved by Lender, (b) insurance (including Builder's Risk insurance) on all its properties and assets and insurance against operational risks and liabilities with coverage and in amounts as are customary for businesses of a like nature. Lender shall be named as an "additional insured" and as "loss payee" on all such policies. Upon request by Lender, the Borrower shall provide Lender with Certificates reflecting the foregoing. In the event that the Borrower fails to continue the required insurance in force when any of the insurance policies fall due, Lender may purchase such insurance that provides limited protection against physical damage to the Borrower's assets at the Borrower's expense, up to the balance of all of the Borrower's indebtedness to Lender. The cost of any such insurance, at the option of Lender, shall be payable by the Borrower on demand or shall be added to the indebtedness of the Borrower to Lender. The Borrower shall permit Lender and its representatives at all reasonable times to inspect the Borrower's facilities, activities, books of account, and records, and shall cause the Borrower's representatives, employees, and• accountants to give their full cooperation and assistance in connection with any visits by, or financial conferences with, Lender or Lender's representatives or agents.

3.5 Notice. The Borrower shall promptly give notice to Lender of the occurrence of any Event of Default or an event that, with the giving of notice or the passing of time or both would constitute an Event of Default.

3.6 Financial Covenants and Miscellaneous.

(a)     There shall be no change of ownership of the Borrower, management of the Borrower without the prior written consent of the Lender, which consent shall be in Lender's sole and absolute discretion.

6

(b)     The Borrower shall not pay any dividend or repurchase membership interests without the prior written consent of the Lender, which consent shall be in the Lender's sole and absolute discretion.

(c)     The Lender reserves the right, in its reasonable discretion, to order updated appraisal(s) conformed to the FIRREA and USPAP on the premises located at 235 Hillside Avenue, Williston Park, New York (the "Borrower Financed Premises") to be conducted by the Lender's designated appraiser.   All appraisal fees are to be borne by the Borrower. The ratio  of the maximum principal balance  available  hereunder  to the then appraised  value  of  the  Borrower Financed  Premises  must not exceed 50% throughout the duration of the Facility.

4. Negative Covenants.

Until such time as all Loans and other sums payable by the Borrower hereunder have been paid and Lender has no further obligations hereunder, the Borrower will not:

4.1 Liens. Create, incur, assume, or suffer to exist, or permit any Subsidiary to create, incur, assume, or suffer to exist,  any Lien upon  or with respect  to any of their  assets, now  owned  or hereafter acquired, except:

(a) Liens in favor of Lender;

(b) Liens for taxes or assessments or other government charges or levies not yet due and payable or, if due  and  payable,  they  are  being  contested  in  good  faith  by appropriate proceedings and for which appropriate reserves are maintained by the Borrower;

(c) Liens imposed by law, such as mechanics', material men's, landlords', warehousemen's, and carriers' Liens, and other similar Liens, securing obligations incurred in the ordinary course of business which are not past due for more than sixty (60) days or which are being contested in good faith by appropriate proceedings and for which appropriate reserves have been established by the Borrower;

(d) Liens under workers' compensation, unemployment insurance, Social Security, or similar legislation;

(e) Liens, deposits, or pledges to secure the performance of bids, tenders, contracts (other than  contracts  for  the  payment  of  money),  leases  (permitted  under  the  terms  of this Agreement), public or statutory  obligations, surety, stay, appeal, indemnity, performance,  or other  similar  bonds,  or  other  similar  obligations  arising  in connection  with  or  in• furtherance  of  the Borrower's business;

(f) Judgment  and other similar Liens arising in connection with  court proceedings, provided that the execution or other enforcement of such Liens is effectively  stayed and

the claims secured thereby are being actively contested in good faith and by appropriate proceedings; and

(g) Easements, rights-of-way, restrictions, and other similar encumbrances which, in the aggregate, do not (i) materially interfere with the occupation, use, and enjoyment by the Borrower of the property or assets encumbered thereby in the normal course of its business or (ii) materially impair the value of the property subject thereto.

4.2 Mergers, etc. Wind up, liquidate or dissolve itself, reorganize, merge or consolidate with or into, or convey, sell, assign, transfer, lease, or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to any person or entity, or acquire all or substantially all of the assets or the business of any person or entity, or permit any Subsidiary to do so, except that (1) any Subsidiary may merge into or transfer assets to the Borrower and (2) any Subsidiary may merge into or consolidate with or transfer assets to any other Subsidiary.

4.3 Dividends. (a) Declare or pay any dividends; (b) purchase, redeem, retire, or otherwise acquire for value any of its membership interests now or hereafter outstanding; (c) make any distribution of assets to its members as such whether in cash, assets, or obligations of the Borrower; (d) allocate or otherwise set apart any sum for the payment of any dividend or distribution on, or for the purchase, redemption, or retirement of any shares of its member ship interests; (e) make any other distribution by reduction of capital or otherwise in respect of any of its membership interests; (f) make any withdrawals of dividend, payout or advances to any member; or (g) permit any Subsidiary to purchase of otherwise acquire for value any interest of the Borrower or another Subsidiary. Notwithstanding the foregoing, the Borrower may take the actions specified in Section 6.3(a) with Lender's written consent, which consent shall not be unreasonably withheld.

4.4 Sale of Assets. Sell, lease, assign, transfer, or otherwise dispose of, or permit any Subsidiary to sell, lease, assign, transfer, or otherwise dispose of, any of their now owned or hereafter acquired assets (including, without limitation, shares of stock and indebtedness of Subsidiaries, receivables, and leasehold interests), except: (a) inventory disposed of in the ordinary course of business; (b) the sale or other disposition of assets no longer used or useful in the conduct of its business; and (c) that any Subsidiary of the Borrower may sell, lease, assign, or otherwise transfer its assets to the Borrower.

4.5 Investments. (a) Make, or permit any Subsidiary to make, any loan or advance to any person, or (b) purchase or otherwise acquire, or permit any Subsidiary to purchase or otherwise acquire, any capital stock, or other securities of, make any capital contribution to, or otherwise invest in or acquire any interest in any person, or participate as a partner or joint venture with any other person.

4.6 Guaranties, Etc. Assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable for, or permit any Subsidiary to assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable for, obligations of any person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

4.7 Transactions with Affiliates. Enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate, or permit any Subsidiary to enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate, except in the ordinary course of and pursuant to the reasonable requirements of the Borrower's or such Subsidiary's business and upon fair and reasonable terms no less favorable to the Borrower or such

Subsidiary than would obtain in a comparable arm's-length transaction with a person not an Affiliate.

4.8    Other Borrowings. Borrow any funds from any Person or incur any debt from any other bank or financial institution without Lender's prior written consent, which consent shall be in Lender's sole and absolute discretion.

5. Conditions to Loans.

5.1 Condition to Initial Loan. Lender shall advance the Loan hereunder only upon the fulfillment, as determined by Lender in its sole discretion, of the following conditions precedent:

(a) Authorizations. Lender shall have received, in form and substance satisfactory to it in its sole discretion: certificates of good standing for the Borrower from each jurisdiction in which the Borrower does business.

(b) Security. Lender shall have received (i) a security agreement duly executed by the Borrower granting a security interest in the Collateral (as defined therein) (the "Security Agreement"), (ii) unconditional guaranties from Vipin Shah residing at 35 Smith Place, Williston Park, NY 11596, Nayana V. Shah residing at 35 Smith Place, Williston Park, NY 11596, Mehendra Shah residing at 39 Capitol Avenue, Williston Park, NY 11596 and Pooja M. Shah residing at Park, NY 11596, (collectively, the "Guaranty") in favor of Lender jointly and severally guarantying the payment when due of all amounts due hereunder, (iii) The Security Agreement, Guaranty, Loan Assignment and Negative Pledge Agreement together with any documents, notes or instruments relating to any of the foregoing are sometimes collectively referred to herein as the "Collateral Documents".

(c) Financing Statements. UCC-1 financing statements describing the Collateral subject to the Security Agreement (the "Collateral") and naming the Borrower as debtor and Lender as secured party and otherwise in form and substance satisfactory to Lender

shall have been authorized and delivered by the Borrower and filed in such offices as Lender shall deem necessary or desirable, and Lender shall have received evidence satisfactory to it in its sole discretion that it has a perfected, first priority security interest in the Collateral.

(d) Insurance Policies and/or Certificates.   Lender shall have received insurance policies and/or certificates with terms and conditions satisfactory to Lender at its sole discretion.

(e) Other Documents.  Lender shall have received evidence satisfactory to it that no liens, security interests, options or other charges or encumbrances exist on the property subject to any of the Collateral Documents (except such as are acceptable to Lender).

 (f) Lender reserves the right, at the Borrower's expense, to hire an engineer to make on-site inspections and to examine the improvements, documents and records related to the improvements on the premises located at 235 Hillside Avenue, Williston  Park, New York,

(g) Other Documents. Lender shall have received such other documents as it may reasonably request.

6. Events of Default.

6.1 Events of Default. Each of the following events and occurrences shall constitute an• "Event of Default" under this Agreement:

(a) The Borrower fails to make payment to Lender when due and payable of any amount that the Borrower is obliged to pay under this Agreement or under any Collateral Document.

(b) Any representation or warranty made by the Borrower herein or in any other Collateral Document to which the Borrower is a party, or by the Guarantor in any Collateral Document to which such Guarantor is a party, shall have been incorrect or misleading in any material respect when made or confirmed, or any certificate furnished under this Agreement or any other Collateral Document proves to have been false or misleading as of its date in any material respect.

(c) The Borrower fails to perform or violates any provision of this Agreement or of any Collateral Document to which the Borrower is a party or the Guarantor fails to perform or violates any provision of any Collateral Document to which such Guarantor is a party, and such failure or violation is not remediable or, if remediable, continues for a period of ten (10) days after receipt by such party of notice from Lender.

(d) The Borrower or the Guarantor fails to pay any amount  when due under  any agreement or document evidencing, securing, guarantying, pledging, or otherwise relating to indebtedness  of the Borrower or such Guarantor to any person or entity in excess of $50,000,  or there occurs any other event of default or other event that, with the

giving of notice or the passing of time, or both, would constitute an event of default on the part of the Borrower or such Guarantor under any such agreement or document.

(e) The Borrower or the Guarantor becomes insolvent or unable to pay its debts when due, or the Borrower or the Guarantor commits or permits any act of bankruptcy, which then shall include (i) the filing by the Borrower or by the Guarantor of a petition in any bankruptcy, reorganization, winding-up, or liquidation proceeding, or other proceeding analogous in purpose or effect, (ii) the filing of such a petition by any person or entity against the Borrower or against the Guarantor and the failure of such petition to be discharged within thirty (30) days, (iii) application for or consent to the appointment of a receiver or trustee for the bankruptcy, reorganization, winding-up, or liquidation of the Borrower or the Guarantor, (iv) making an assignment for the benefit of creditors, (v) the admission in writing by the Borrower or by the Guarantor of its inability to pay its debts when due, or (vi) the entry of any court order or judgment confirming the bankruptcy or insolvency of the Borrower or the Guarantor or approving any reorganization, winding-up, or liquidation of the Borrower or the Guarantor or any portion of the assets of the Borrower or of the Guarantor.

(f) Any default or event of default shall occur under (1) any other agreement, document or instrument between Lender and the Borrower or the Guarantor

(g) Any judgment or decree for money damages or for a fine or penalty in excess of $50,000 or its equivalent in any other county is entered against the Borrower or the Guarantor and is not paid or discharged within thirty (30) days.

(h) The Borrower shall issue any membership interests to any party, or any current member of the Borrower shall sell or otherwise transfer any interest of the Borrower to any party without the prior consent of Lender.

(i) Any Guarantor who is a natural person shall die or shall have been adjudicated incompetent by a judicial decree(provided that no Event of Default shall be deemed to have occurred hereunder until ninety (90) days after such death or adjudication of incompetence of such Guarantor, and at the end of such period the Borrower and Lender shall have failed to agree in writing on substitute credit support acceptable to Lender in its sole discretion; and further provided that Lender shall have no obligation to advance Loans during such period), or the Guarantor shall claim that the Guaranty signed by such party or any related agreement is invalid or unenforceable or has been terminated.

(j) Any circumstance occurs affecting the Borrower or the Guarantor, which in the opinion of Lender gives reasonable grounds for Lender's belief that the Borrower or such Guarantor may not be able to perform its obligations hereunder or under such Guarantor's Guaranty or any other document delivered in connection herewith or therewith.

(k) Any adverse change in the financial condition and/or operation of the Borrower or the Guarantor.

6.2 Consequence of Default. If an Event of Default shall occur, Lender may by notice to the Borrower declare all amounts outstanding under the Facility, accrued interest on all loans and any other sum payable hereunder and/or under any of the Collateral Documents to be immediately due and payable, and the same shall thereupon become due and payable without presentment, demand, protest, or notice of any kind, all of which are expressly waived by the Borrower. The Borrower shall also pay to Lender such additional amounts as may be necessary to compensate Lender for any costs and losses resulting from such Event of Default. No waiver of any Event of Default shall constitute a waiver of any other or any succeeding Event of Default or of the continuance of the Event of Default so waived except in accordance with the terms of such waiver.

If an Event of Default shall occur, Lender shall also have the right to pursue any remedies provided herein, in any and/or all of the Collateral Documents, and/or otherwise available to Lender at law or in equity.

7. Miscellaneous.

7.1 Entire Agreement.

(a) This Agreement may be amended but only by an instrument in writing signed by the Parties. This Agreement and the documents referred to herein constitute the entire obligation of the Parties with respect to the subject matter hereof and shall supersede any prior expressions of intent or understandings with respect to the transactions contemplated hereby (except as referred to and/or as contemplated by this Agreement) and any other documents executed in connection with either of the foregoing).

(b) Notwithstanding the foregoing, nothing set forth in this Agreement or in any Collateral Document or any other document executed in connection herewith or therewith shall diminish or otherwise affect any (i) other obligations of the Borrower or the Guarantor to Lender, (ii) security interest previously granted by the Borrower to Lender, (iii) any guaranty previously executed by the Guarantor of any obligations of the Borrower in favor of Lender or (iv) any security interest previously granted by any such Guarantor with respect to any such guaranty, and all of the foregoing shall remain in full force and effect.

7.2 Waiver. The failure or delay of Lender to require performance by the Borrower of any provision of this Agreement shall not affect Lender's right to require performance of such provision unless and until such performance has been waived by Lender in writing. Each and every right granted to Lender hereunder or under any other document or instrument delivered hereunder or in connection herewith, or allowed at law or in equity, shall be cumulative and may be exercised from time to time.

7.3 Assignment. This Agreement shall be binding upon and shall be enforceable by the Borrower and Lender and their respective successors and assigns, except that the Borrower shall not have the right to assign or transfer its rights or obligations hereunder.

7.4 Governing Law. This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to principles of conflicts of laws.

7.5 Submission to Jurisdiction; Waiver of Jury Trial.

(a) The Borrower hereby irrevocably consents in any legal action or proceedings against it or against any of the Collateral subject to the Security Agreement, or with respect to any of the Collateral Documents or otherwise (i) to the non-exclusive in person jurisdiction of any state or federal court located in the City and State of New York, (ii) agrees to suit being brought in such courts as Lender shall elect, and (iii) the Borrower further irrevocably consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, return receipt required, postage prepaid, to the Borrower at its address set forth in Section 9.7. The foregoing, however, shall not limit the right of Lender to serve process in any other manner permitted by law or to bring any legal action or proceeding or to obtain execution of judgment in any jurisdiction.

(b) Lender and the Borrower irrevocably waive their respective rights to a jury trial in any proceeding pertaining to this Agreement and/or to any of the Collateral Documents.

7.6 Set-Offs. Following an Event of Default, Lender shall have the right, to the extent permitted by law, to apply amounts on deposit or account with it or any of it's branches, subsidiaries, or affiliates in reduction of amounts owed by the Borrower hereunder.

7.7 Notices. Any notice required or permitted to be given hereunder shall be in writing and shall be delivered or sent by registered or certified mail (postage prepaid and return receipt requested) or nationally recognized overnight courier service as follows:

To The Borrower:

Neminath, Inc.
235 Hillside Avenue
Williston Park, New York 11596
Attn: Mehendra Shah

To Lender:
Kedis Enterprises LLC
1414 Hillside Avenue
New Hyde Park, New York 11040
Attention: Sanjiv Chand

All notices and other communications shall be deemed to have been duly given on the date of receipt. Any party may change its address for purposes hereof by notice written to the other parties delivered in accordance herewith.

9.8 Severability. If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be invalid, illegal, or unenforceable in any respect under any applicable law, the remaining provisions contained herein shall not in any way be affected or impaired.

9.9 Counterparts. This Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed, in either case, by both of the parties hereto shall constitute a full and original agreement for all purposes.

9.10 Expenses and Fees. The Borrower shall reimburse Lender on demand for all expenses incurred by Lender, including, but not limited to, fees and expenses of counsel, in connection with (a) the preparation, negotiation, execution, delivery, filing, recording, analysis, amending, administration, and/or enforcement of this Agreement, any of the Collateral Documents, and any other documents contemplated herein, (b) in any bankruptcy proceeding, (c) in any dispute or matter concerning the Borrower, this Agreement, any of the Collateral, and/or any of the Collateral Documents and (d) advising Lender as to its rights and responsibilities under this Agreement, under any of the Collateral Documents and/or under any other documents contemplated herein. Any of the foregoing fees and expenses which remain unpaid after 30 days from Lender's demand, shall be added to the principal of the loan and shall bear interest at the rate set forth in Section 1.4.

The Parties have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.


KEDIS ENTERPRISES LLC

By: _____
Name: Sanjeeve Chand
Title: Managing Member



NEMINATH INC

By: _____
Name: Mehendra Shah
Title: President

AGREED TO AND ACCEPTED AS GUARANTOR BY:

------------------------------------------------------------
Vipin Shah

AGREED TO AND ACCEPTED AS GUARANTOR BY:

------------------------------------------------------------
Nayana V. Shah

AGREED TO AND ACCEPTED AS GUARANTOR BY:

------------------------------------------------------------
Mahendra Shah

AGREED TO AND ACCEPTED AS GUARANTOR BY:

------------------------------------------------------------

Pooja M. Shah

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NASSAU        )

On the 18th   day of January in the year 2013 before me, the undersigned, personally
appeared _____ personally known to me on the basis
of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument the individual, or the person on behalf of
which the individual acted, executed the instrument.

```
-------------------------------
```
      Notary Public


STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NASSAU           )

On the 18th    day of January in the year 2013 before me, the undersigned, personally
appeared _____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument the individual, or the person on behalf of
which the individual acted, executed the instrument.


```
-------------------------
```
      Notary Public

Exhibit "1"

NONE

Exhibit "2"

NONE

COUNTY OF NASSAU          )

On the 18th   day of January in the year 2013 before me, the undersigned, personally
appeared _____MAHENDRA SHAH_____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument the individual, or the person on behalf of
which the individual acted, executed the instrument.


--------------------------------
Notary Public

RAKESH AGGARWAL
Notary Public, State of New York
No. 01AG6149186
Qualified in Nassau County
Commission Expires July 03 20 14


STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NASSAU        )

On the 18th   day of January in the year 2013 before me, the undersigned, personally
appeared _____NAYANA V. SHAH_____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument the individual, or the person on behalf of
which the individual acted, executed the instrument.


--------------------------------
Notary Public

RAKESH AGGARWAL
Notary Public, State of New York
No. 01AG6149186
Qualified in Nassau County
Commission Expires July 03 20 14

21

COUNTY OF NASSAU          )

On the 18th   day of January in the year 2013 before me, the undersigned, personally
appeared _____POOJA  M  SHAH_____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument  and acknowledged  to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument  the individual, or the person on behalf of
which the individual acted, executed the instrument.

_____
Notary Public

RAKESH AGGARWAL
Notary Public, State of New York
No. 01AG6149185
Qualified in Nassau County
Commission Expires July 03, 20 14


STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NASSAU           )

On the 18th   day of January in the year 2013 before me, the undersigned, personally
appeared _____VIPIN  SHAH_____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument  and acknowledged  to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument  the individual, or the person on behalf of
which the individual acted, executed the instrument.

_____
Notary Public

RAKESH AGGARWAL
Notary Public, State of New York
No. 01AG6149185
Qualified in Nassau County
Commission Expires July 03, 20 14

21

COUNTY OF NASSAU          )

On the 18th     day of January in the year 2013 before me, the undersigned, personally
appeared _____ SANJIV CHAND. _____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument  and acknowledged  to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument  the individual, or the person on behalf of
which the individual acted, executed the instrument.

_____
Notary Public

RAKESH AGGARWAL
Notary Public, State of New York
No. 01AG6149185
Qualified in Nassau County
Commission Expires July 03, 20.

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NASSAU          )

On the 18th     day of January in the year 2013 before me, the undersigned, personally
appeared _____ personally known to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument  and acknowledged  to me that he/she executed the same in his/her capacity,
and that by his/her signature on the instrument  the individual, or the person on behalf of
which the individual acted, executed the instrument.

_____
Notary Public

21