UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:

GEO-GROUP COMMUNICATIONS, INC.,   :
:
Plaintiff,   :
:
v.   :
:
RAVI CHOPRA, *et al.*,   :
:
Defendants.  :
:
------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: July 27, 2016

15 Civ. 1756 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

The instant complaint represents the fourth attempt by Plaintiff Geo-Group Communications, Inc. ("Geo-Group") to state a claim against moving Defendants 728 Melville Petro LLC ("Melville"), Kedis Enterprises LLC ("Kedis"), JMVD Hillside LLC ("JMVD," and together with Melville and Kedis, the "LLC Defendants"), Mahendra Shah ("M. Shah"), and Vipin Shah ("V. Shah," and together with M. Shah, the "Shah Defendants"). As set forth in the remainder of this Opinion, Plaintiff only partially succeeds. Consequently, the motion to dismiss filed by the LLC Defendants is granted, and the motion to dismiss filed by the Shah Defendants is denied.

## BACKGROUND[1]

### A.   Factual Background

On May 30, 2013, Plaintiff Geo-Group commenced arbitration proceedings to recover a debt owed to it by Jaina Systems Network, Inc.

---

[1]      The facts contained in this Opinion are drawn from the Third Amended Complaint ("TAC," Dkt. #105). For convenience, the LLC Defendants' moving brief is referred to as

("Jaina").  (TAC ¶¶ 1-2).  The arbitrator handed down an award (the "Award") in favor of Geo-Group, in the amount of $1,249,654.00, on July 10, 2014.  (*Id.* at ¶ 2).  A justice of the New York State Supreme Court, New York County, entered an order (the "Judgment") confirming the Award, along with interest and costs, on April 3, 2015.  (*Id.* at ¶¶ 4-5).  As of the filing of the Third Amended Complaint (or "TAC"), Jaina had failed to satisfy the judgment.

M. Shah was, at the time relevant to this litigation, president of Jaina, and held a 25% interest in the corporation.  (TAC ¶ 17).  V. Shah is M. Shah's brother; V. Shah's wife holds a 25% interest in Jaina.  (*Id.* at ¶ 18).  The LLC Defendants are each independent limited liability corporations, as to which Plaintiff has alleged neither a relationship to Jaina nor an involvement in the telecommunications industry.  (*Id.* at ¶¶ 20-22).

Geo-Group alleges that from February 2, 2014, to October 1, 2014, Jaina made monthly payments to the law firm Robinson-Brog Leninard Green & Genovese, P.C., ranging from $90,000 to $250,000, for a total amount of $1,350,000.  (TAC ¶ 23).  These transfers are alleged to have been made with M. Shah's knowledge and consent at the direction of Defendant Ravi Chopra, and to have been made solely to satisfy Chopra's personal debt to the law firm. (*Id.* at ¶¶ 23-24).  Similarly, from December 11, 2013, to December 1, 2014, Jaina is alleged to have made a series of payments to various Chopra-owned

---

"LLC Br." (Dkt. #122); and the Shahs' respective opening briefs (Dkt. #112, 118) as "[Name] Br."  Plaintiff's brief in opposition is referred to as "Pl. Opp." (Dkt. #125).  The LLC Defendants' reply (Dkt. #126) is referred to as "LLC Reply," and the Shah Defendants' joint reply (Dkt. #132) as "Shah Reply."

entities, at Chopra's direction and for his sole benefit, totaling $546,000.  (*Id.* at ¶¶ 27-36).

Geo-Group alleges another series of Chopra-directed transfers to the LLC Defendants, each made with M. Shah's knowledge and consent.  (TAC ¶¶ 37, 44, 51-52).  Specifically, the TAC alleges that Jaina transferred a total of $460,000 to Melville in October 2014 (*id.* at ¶ 37); $200,000 to Kedis in January 2014 (*id.* at ¶¶ 51-52); and $200,000 to JMVD on August 13, 2014 (*id.* at ¶ 44).  According to the TAC, none of the LLCs is a vendor, supplier, or customer of Jaina, and "there is no evidence" that the sums paid to the respective LLC Defendants represent "fair value exchange[s] for any goods, services, property or property rights," or that they "were made to discharge any legitimate antecedent loan or other debt Jaina" may have owed.  (*Id.* at ¶¶ 39, 42-43, 46, 49-50, 54, 55, 58).

Finally, Geo-Group alleges an extensive series of transfers from Jaina to V. Shah, made with the knowledge and consent of M. Shah, from June 5, 2013, to December 26, 2014, for a total amount of $760,603.  (TAC ¶ 59).  It is alleged that V. Shah is "not a vendor, supplier or customer of Jaina," and "[t]here is no evidence that any of the payments made to V. Shah were made to discharge any legitimate antecedent loan or other debt" that Jaina owed to V. Shah.  (*Id.* at ¶¶ 61-62).  Geo-Group alleges that as a result of the various transfers made to Chopra-owned entities, the LLC Defendants, and V. Shah, Jaina had "effectively ceased its operations" by January 2015, and now "has no

liquid assets and no longer maintains bank accounts in New York." (*Id.* at ¶ 70).

### B.    Procedural Background

The Court assumes familiarity with the procedural background for this matter, which is set forth in detail in the Court's February 1, 2016 Opinion and Order on Defendants' previous motions to dismiss.  (Dkt. #102).  That Opinion denied in part the motion to dismiss filed by Chopra, and granted the respective motions filed by M. Shah, V. Shah, and the LLC Defendants in their entirety; but the Opinion also afforded Geo-Group a fourth attempt at pleading. (*Id.*).[2]

Geo-Group submitted its TAC on February 22, 2016.  (Dkt. #105).  The LLC Defendants jointly filed a motion to dismiss on March 30, 2016 (Dkt. #114), as did M. Shah, acting *pro se* (Dkt. #112).  V. Shah, also acting *pro se*, filed his motion to dismiss on March 31, 2016.  (Dkt. #118).  Geo-Group filed a single brief in opposition on May 9, 2016.  (Dkt. #125).  The LLC Defendants jointly filed their reply brief on May 13, 2016.  (Dkt. #126).  The Shah Defendants, however, determined that they required attorney assistance to proceed effectively in this matter (*see* Dkt. #130); accordingly, their reply was filed by their newly-retained counsel on July 1, 2016 (Dkt. #132).[3]

---

[2]    The February 1 Opinion additionally granted motions to dismiss filed by Defendants Shalu Suri and NYC Telecommunications Corp. ("NYCT").  Shalu Suri has not been named as a defendant in the TAC; and NYCT filed an answer to the TAC jointly with Defendant Ravi Chopra on March 30, 2016.  (Dkt. #113).

[3]    Understandably, in light of the Shah Defendants' *pro se* status at the time that they filed their opening briefs, the Shah Defendants raise a number of arguments for the first time in their joint reply.  The Court has determined that an equitable balance is struck by declining to afford the Shah Defendants' moving briefs the broad reading

## DISCUSSION

**A.     Applicable Law**

**1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's

---

typically afforded to *pro se* filings, but by permitting them to assert new arguments in their counseled reply. Additionally, because the Court finds any newly raised arguments to be unsuccessful, Plaintiff is not prejudiced by the Court's accommodation in this manner. Finally, given their eventual retention of an attorney and submission of a joint reply, the Court will refer to the Shah Defendants' motion to dismiss in the singular, though it began as two motions.

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2.    Fraudulent Conveyances Under Article 10 of the NYDCL

Article 10 of the New York Debtor and Creditor Law (the "NYDCL"), which comprises sections 270 to 281 of the statute, provides a "set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by transfer of a debtor's property." *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 634 (2d Cir. 1995). As relevant to the instant matter, §§ 273, 273-a, and 274 outline circumstances in which a conveyance constitutes constructive fraud, while § 276 applies to instances of actual fraud.

Section 273 of the NYDCL governs transfers of assets by insolvent debtors, and provides that "[e]very conveyance made … by a person who is or

will be thereby rendered insolvent is fraudulent as to creditors without regard
to his actual intent if the conveyance is made or the obligation is incurred
without a fair consideration."  Relatedly, § 273-a pertains to asset transfers
made by a defendant in an action for money damages, and states that

> [e]very conveyance made without fair consideration
> when the person making it is a defendant in an action
> for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the
> plaintiff in that action without regard to the actual
> intent of the defendant if, after final judgment for the
> plaintiff, the defendant fails to satisfy the judgment.

Both sections require that the transfer lack "fair consideration" in order for a
violation to occur.  The NYDCL defines fair consideration as existing in relevant
part when the transferor, (i) in good faith, (ii) receives "fair equivalent" property
or a similarly equivalent antecedent debt is discharged.  N.Y. Debt. & Cred. L.
§ 272(a); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 53-54 (2d Cir. 2005)
("The fair consideration test is profitably analyzed as follows: [i] the recipient of
the debtor's property must either (a) convey property in exchange or
(b) discharge an antecedent debt in exchange; and [ii] such exchange must be a
fair equivalent of the property received; and [iii] such exchange must be in good
faith." (citation and internal quotation marks omitted)).

   A plaintiff seeking to set aside a conveyance due to a lack of good faith
must prove one of the following factors: (i) a lack of honest belief in the
propriety of the transfer in question; (ii) an intent to take unconscionable
advantage of others; or (iii) an intent to, or knowledge of the fact that the
activities in question will, hinder, delay, or defraud others.  *Staudinger+Franke*

7

*GMBH* v. *Casey*, No. 13 Civ. 6124 (JGK), 2015 WL 3561409, at *10 (S.D.N.Y. June 8, 2015) (quoting *Southern Indus.* v. *Jeremias*, 411 N.Y.S.2d 945, 949 (2d Dep't 1978)).  As the Second Circuit has observed, good faith "is hard to locate … in a statute in which 'the issue of intent is irrelevant.'" *In re Sharp*, 403 F.3d at 54 (quoting *United States* v. *McCombs*, 30 F.3d 310, 326 n.1 (2d Cir. 1994)).  Furthermore, apparent bad faith will generally not negate the existence of fair consideration when a transfer satisfies a preexisting debt. *Pashaian* v. *Eccelston Props.*, 88 F.3d 77, 85-86 (2d Cir. 1996).

An exception exists, however to the debt-satisfaction rule: "Under New York law, 'transfers from an insolvent corporation to an officer, director or major shareholder of that corporation are *per se* violative of the good faith requirement.'" *Daelim Trading Co.* v. *Giagni Enters., LLC*, No. 10 Civ. 2944 (VB), 2014 WL 6646233, at *8 (S.D.N.Y. Nov. 12, 2014) (quoting *In Re Centennial Textiles, Inc.*, 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998)); *see also Atlanta Shipping Corp.* v. *Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("[R]epayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor.").

Section 274 of the NYDCL applies when a transferor "is engaged or is about to engage in a business or transaction" for which the transferor's remaining assets after a conveyance constitute "unreasonably small capital." Such a conveyance, if made without fair consideration, "is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to [the transferor's] actual

intent." N.Y. Debt. & Cred. L. § 274.  The same standard for fair consideration applicable to §§ 273 and 273-a applies to transfers alleged to be fraudulent under § 274.  However, the allegedly fraudulent conveyance need not render the transferor insolvent, so long as the transferor is left with "unreasonably small capital" for its then-current or immediately pending business.  Finally, as this Court has previously explained, "the weight of the case law suggests that while the heightened pleading standard of Rule 9(b) applies to claims of actual fraud under § 276, it does not govern claims for constructive fraudulent transfer under §§ 273, 273-a, or 274."  *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2016 WL 390089, at *5 (S.D.N.Y. Feb. 1, 2016) (collecting cases).

In contrast to the constructive fraud sections of Article 10, which require a lack of fair consideration but disregard intent, the actual fraud provision embodied in § 276 has no requirement regarding consideration, but requires that a conveyance be made "with intent to defraud."  Specifically, § 276 states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  Due to the difficulty of proving actual intent, such intent may be inferred from circumstantial "badges of fraud," including

> [i] a close relationship between the parties to the transaction, [ii] a secret and hasty transfer not in the usual course of business, [iii] inadequacy of consideration, [iv] the transferor's knowledge of the creditor's claim and his or her inability to pay it, [v] the use of dummies or fictitious parties, and [vi] retention

of control of the property by the transferor after the conveyance.

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 431 (S.D.N.Y. 2014) (quoting *Amusement Indus., Inc.* v. *Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 530 (S.D.N.Y. 2011); *see also In re Sharp*, 403 F.3d at 56 ("Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, *i.e.,* circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." (citation omitted)).

## B.   Analysis

### 1.   The Court May Not Consider the Exhibits Submitted by Defendants in Support of Their Motions to Dismiss

As a threshold matter, the Court notes that both the LLC Defendants and the Shah Defendants have relied upon documents from outside the pleadings in support of their respective motions to dismiss, including bank statements, a loan agreement, scans of checks, and affidavits.  (*See* LLC Br. 12-16; M. Shah Br. ¶ 12; V. Shah Br. ¶¶ 15-17; Shah Reply 8; *see also* Dkt. #118, 119, 122-1 to 122-5).  The LLC Defendants argue that these documents may be fairly considered by the Court because they "completely undermine [Plaintiff's] case" as alleged in the TAC (LLC Reply 5 & n.1); but that is not the standard for considering materials beyond the pleadings on a Rule 12(b)(6) motion.  Rather, a court may only consider a document outside the pleadings "where the complaint relies heavily upon its terms and effect."  *Chambers*, 282 F.3d at 153

(internal quotation marks omitted).  As the Second Circuit has recently explained, "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotations' from the document is not enough."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

The LLC Defendants point to *In re Vivaro Corp.*, 524 B.R. 536 (Bankr. S.D.N.Y. 2015), for the proposition that "even on a motion to dismiss, plaintiff must rebut the presumption of fair consideration raised by unequivocal documentary evidence." (LLC Br. 4).  The LLC Defendants overlook, however, the quite significant fact that in *In re Vivaro*, the documentary evidence in question was explicitly discussed in the operative complaint.  *See In re Vivaro*, 524 B.R. at 555-56.  In the present instance, the TAC neither mentions, nor quotes, nor even implies the existence of the documents that the LLC Defendants seek to have considered at this stage in the litigation.  Absent conversion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) — an action which the LLC Defendants make clear they do not request (*see* LLC Reply 5), and which, in any event, the Court could not undertake without first providing Plaintiff an opportunity to provide its own additional evidence — the Court may not consider the financial papers or affidavits relied upon by Defendants in adjudicating their motions.  Accordingly, those outside materials play no role in the Court's Opinion.

## 2. The TAC Fails to State a Claim for Constructive Fraud Against the LLC Defendants

The LLC Defendants assert that the TAC alleges only conclusory statements against them, with no factual basis, and consequently fails to state

a claim.  In particular, the LLC Defendants argue that Plaintiff has failed to plead anything in support of the LLC Defendants' bad faith, and has alleged only general statements in regard to whether the LLC Defendants received a fair-value exchange for transfers from Jaina.  (LLC Br. 5-11).  Thus, they claim, Plaintiff has failed to establish a lack of fair consideration — a necessary element of claims for constructive fraudulent conveyance under §§ 273, 273-a, and 274.  Plaintiff argues very little in response to the LLC Defendants' motion, stating only that the LLC Defendants "should have [been] … on notice that whatever transaction Chopra and M. Shah might have proposed could be imbued with actual fraud," and that this supports "a plausible inference that the LLC Defendants, at a minimum, lacked the requisite good faith required to establish fair consideration."  (Pl. Opp. 24).

It is unclear how Plaintiff believes the TAC establishes that the LLC Defendants "should have [been] … on notice" of any fraudulent activity by Chopra or M. Shah.  The TAC does not allege any relationship between any one of the LLC Defendants and either Chopra or M. Shah, and affirmatively suggests that no such relationship exists.  (*See* TAC ¶¶ 20-22).  The only mention of the LLC Defendants' good or bad faith is Plaintiff's statement that each retained transfers from Jaina with the knowledge that such transfers served "no legitimate business purpose," and that

> [t]he nature and extent of Chopra's relationship with the [LLC Defendants] will be the subject of discovery in this case, but the amounts involved in the transfers, their timing — and the lack of any explanation for why the transfers were made — strongly suggests improper

motives on the part of all involved, including the LLCs themselves and whoever owns them.

(*Id.* at ¶¶ 76-78, 86).  In short, Plaintiff alleges no information or belief that any of the LLCs has a connection to M. Shah, Chopra, or Jaina; no involvement on the part of the LLC Defendants in the arbitration proceedings such that they would be aware of the Award; and no additional facts that would suggest the LLC Defendants should have been "on notice" of any fraudulent activity.

This leaves the Court to address the minimal facts Plaintiff does allege: (i) the "amounts involved in the transfers," (ii) "their timing," and (iii) "the lack of any explanation for why the transfers were made."  These factors, whether considered individually or taken together, fail to establish a lack of fair consideration for the transfers to the LLC Defendants.

The TAC states that arbitration proceedings began on May 30, 2013; the Award was handed down on July 10, 2014; confirmation proceedings began on July 20, 2014; and the Award was confirmed on April 3, 2015.  (TAC ¶¶ 2, 4). Plaintiff alleges that $200,000 was transferred to Kedis in January 2014, during the arbitration proceeding but prior to the Award; $200,000 to JMVD in August 2014, following the Award but prior to its confirmation; and $460,000 to Melville in October 2014, which was also between the Award and the Award's confirmation.  (*Id.* at ¶¶ 37, 44, 51-52).  In other words, all of the transfers occurred at times when Jaina and Jaina's officers either knew or should have known that Jaina was potentially liable to Plaintiff for some amount of money.  Plaintiff does not explain how the timing or amount of these transfers supports a finding of the LLC Defendants' bad faith.  Presumably,

13

Plaintiff would like the Court to infer that any transfer of funds following the initiation of arbitration necessarily suggests a desire to evade judgment; but even if the Court accepts the temporal proximity of the transfers to the arbitration proceedings as suggesting an improper motive, the TAC provides no indication that the LLC Defendants were or should have been aware of those proceedings and the ensuing Award.  Absent some knowledge of those events, the amounts and times of the transfers at most suggest that the transferor was acting improperly; they have no bearing on the good faith of the uninformed transferees.

The whole of Plaintiff's constructive fraudulent transfer claims against the LLC Defendants rests on the final element identified in Plaintiff's summary of the facts pertaining to the LLC Defendants, i.e., the "lack of any explanation for why the transfers were made."  (TAC ¶ 86).  Plaintiff implies that because the LLC Defendants are not suppliers, vendors, or service providers of Jaina, any transfer made to them must be construed as fraudulent absent proof to the contrary.  Plaintiff misapprehends the allocation of burden at the pleading stage: The TAC repeatedly states that "there is no evidence" for the validity of the transfers to the LLC Defendants.  (TAC ¶¶ 42, 43, 49, 50, 55, 58).  However, it is not the case that transactions are illegitimate until proven otherwise.  Rather, Plaintiff bears the burden of pleading facts raising a plausible inference that the LLC Defendants engaged in these transfers without fair consideration.  The LLC Defendants' failure to proactively provide evidence

14

supporting the legitimacy of their transactions cannot be the basis for haling them into court.

The Court appreciates the difficulty of proving a negative — as relevant here, that no antecedent debt existed between the parties to the transfer — and therefore acknowledges that a plaintiff may plead that absence through other facts casting suspicion on the transaction.  *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005) ("To determine whether a fair economic exchange has occurred, courts look to the circumstances surrounding the transfer."); *Am. Tissue Inc.* v. *Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 105-06 (S.D.N.Y. 2004) (same).  The TAC is entirely devoid of any such facts.  The sole basis for Plaintiff's claim that "no legitimate business reason" exists for Jaina to have transferred funds to the LLC Defendants is that none of the LLC Defendants is a vendor, supplier, or service provider of Jaina, nor is any of them in the telecommunications industry.  This, standing alone, does not raise any inference against the LLC Defendants having previously loaned money to Jaina; to the contrary, one would not expect a vendor, supplier, or direct competitor to also serve as lender.

In short, Plaintiff's allegations against the LLC Defendants are, at most, "consistent with" the latter's liability, insofar as they establish that no evidence disproves them; but they fall far "short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Because Plaintiff has not adequately alleged either the LLC

Defendants' bad faith or the lack of a fair-value exchange in regard to the transfers from Jaina to those Defendants, Plaintiff has not established the absence of fair consideration, as is required for constructive fraudulent transfer claims under §§ 273, 273-a, and 274.  The LLC Defendants' motion to dismiss Plaintiff's claims for constructive fraudulent transfer is accordingly granted.[4]

### 3.   The TAC Fails to State a Claim for Actual Fraud Against the LLC Defendants

As discussed *supra*, claims for actual fraud under § 276 do not require a plaintiff to plead a lack of fair consideration, but instead require a plaintiff to plead "intent to defraud" — a requirement typically satisfied through indirect evidence in the form of certain "badges of fraud."  *Amusement Indus., Inc.*, 820 F. Supp. 2d at 530; *see also In re Sharp*, 403 F.3d at 56; *Lippe* v. *Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003) (citations omitted), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (summary order).  Despite this difference in claim elements, Plaintiff's claim for actual fraud fails for substantially the same reason as its claims under §§ 273, 273-a, and 274: Plaintiff has not pleaded any facts that suggest, even indirectly, that the LLC Defendants acted with "intent to defraud."  As the Court explained in regard to Plaintiff's claims for constructive fraudulent transfer, the only affirmative fact pleaded in the TAC pertaining to the LLC Defendants' intent is that the transfers were not payment for goods or

---

[4]     The LLC Defendants additionally argue that the TAC fails to establish Jaina's insolvency or possession of unreasonably small capital, as required to state a claim under §§ 273 and 274, respectively.  (LLC Br. 17-18).  Because Plaintiff has failed to plead the LLC Defendants' bad faith, the Court need not reach the question of whether it has adequately pleaded Jaina's financial status at the time of the transfers to the LLC Defendants.

services, and thus not within the range of normal business transactions.

Courts will concededly consider "a questionable transfer not in the usual

course of business" as one potential indicator of fraudulent activity, *see In re*

*Sharp*, 403 F.3d at 56; but here, no facts in the TAC provide a basis for casting

doubt on the LLC Defendants' intent.  Absent some reason why the transfer is

otherwise "questionable" — for instance, because it is "secret and hasty," *In re*

*Application*, 60 F. Supp. 3d at 431 (quoting *Amusement Indus.*, 820 F. Supp. 2d

at 530) — the mere fact that the transfer represents an isolated event falls

short of establishing the transferee's fraudulent intent.  Were it otherwise,

businesses could be brought into court and required to justify every novel

activity they undertake absent any other indication that the activity was

fraudulent.

 "Because they are only evidence of the likelihood of fraud, badges of

fraud are not given equal weight; and sometimes the circumstances indicate

they should be given no weight at all."  *In re Khan*, No. 10 Civ. 46901 (ESS),

2014 WL 10474969, at *25 (E.D.N.Y. Dec. 24, 2014) (citation omitted); *see also*

*DLJ Mortgage Capital, Inc.* v. *Kontogiannis*, 594 F. Supp. 2d 308, 322-23

(E.D.N.Y. 2009) (finding Plaintiff failed to sufficiently allege fraudulent intent,

notwithstanding two admitted badges of fraud).  Here, Plaintiff has alleged no

more than isolated transfers for which Plaintiff does not know the explanation.

This fails to establish the LLC Defendants' intent to defraud, particularly given

the heightened pleading standard applicable to claims brought under § 276.

*See Geo-Grp. Commc'ns*, 2016 WL 390089, at *5 (stating that Rule 9(b) applies

to claims of fraudulent transfer under New York law).  The LLC Defendants'
motion to dismiss Plaintiff's claim for § 276 actual fraudulent conveyance is
therefore granted.

### 4. The TAC States a Claim for Constructive Fraud Against the Shah Defendants

#### a. Plaintiff Adequately Pleads the Shah Defendants' Lack of Good Faith

Whereas the timing of the transfers provides no inference of ill intent in
the case of the LLC Defendants, it does provide some support for a finding of
bad faith in the case of the Shah Defendants: Unlike the LLC Defendants, M.
Shah was certainly aware of the arbitration proceedings and the resulting
Award, and V. Shah's close connection to two major Jaina shareholders makes
it highly likely that he too knew of Jaina's debt to Plaintiff.  The transfers to V.
Shah, made with M. Shah's authorization, began the week following the
initiation of arbitration, and continued until Jaina ceased operations and no
longer had any liquid assets.  Given that "knowledge of the fact that the
[transfers] in question will, hinder, delay, or defraud others" may suffice to
establish a lack of good faith, the Shah Defendants' knowledge of the debt owed
to Geo-Group and of the fact that the transfers would necessarily reduce the
amount available to satisfy that debt supports a finding that Plaintiff has
adequately pleaded bad faith.  *Staudinger+Franke GMBH*, 2015 WL 3561409,
at *10 (quoting *Southern Indus.*, 411 N.Y.S.2d at 949); *accord Dixie Yarns, Inc.*
v. *Forman*, 906 F. Supp. 929, 937 (S.D.N.Y. 1995).  This is particularly the case
given the insider status of the relevant parties: The individual overseeing the

transfer, M. Shah, is closely related to the transferee, V. Shah, who is himself also the spouse of one of the transferor's principal shareholders.

The Shah Defendants argue that the transfers to V. Shah were all made to satisfy antecedent debt, and that fair consideration accordingly existed regardless of any possible bad faith.  (M. Shah Br. ¶ 12; V. Shah Br. ¶¶ 13-18; Shah Reply 8-9).  The Shah Defendants rely, however, on the sworn testimony of V. Shah, which the Court may not consider at this stage of the proceedings. *See supra* at 10-11.  As the Court discussed in regard to the LLC Defendants, Plaintiff's conclusory statement that there is "no evidence that any of the payments made" were to discharge legitimate debts does not, on its own, establish a lack of fair consideration.  In the case of the Shah Defendants, however, Plaintiff has additionally alleged a separate basis for finding that the transfers were not made in good faith; the Shah Defendants cannot rebut that finding by asserting evidence from outside the pleadings.[5]

> ### b.   Plaintiff Adequately Pleads Jaina's Financial Condition at the Time of the Transfers to the Shah Defendants

Each of the constructive fraudulent transfer provisions of the NYDCL requires that the transferor meet certain financial conditions: § 273 requires that the transferor be insolvent at the time of the transfer, or that it be thereby rendered insolvent; § 273-a requires that the transferor be the defendant in an action for money damages; and § 274 requires that, as a result of the contested

---

[5]   The Shah Defendants additionally argue that the rule for insiders does not extend to family members (Shah Reply 9); since the Court is not crediting, at this stage, the Shahs' evidence of an antecedent debt, it need not consider whether that debt would obviate the pleading of bad faith.

transfer, the transferor was left with unreasonably small capital.  The Shah Defendants do not contest the fact that Jaina was, at the time of the relevant transfers, the defendant in an action for money damages.  They argue, however, that Plaintiff fails to establish either Jaina's insolvency or its possession of "unreasonably small capital" as a result of the transfers involving the Shahs, and that, consequently, Plaintiff's claims under §§ 273 and 274 must fail.  (Shah Reply 11).

As this Court has previously explained, "where a plaintiff meets its burden of showing that [a] transfer is made without consideration, there exists a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction."  *Geo-Grp. Commc'ns*, 2016 WL 390089, at *7 (quoting *Amusement Indus., Inc.*, 820 F. Supp. 2d at 527).  The TAC pleads the absence of good faith, which in turn satisfies the requirement that a constructively fraudulent transfer be made without consideration.  Accordingly, Plaintiff is entitled to a presumption of the transferor's insolvency.  The LLC Defendants have argued in their moving brief, and the Shah Defendants echo in their reply, that the TAC *itself* rebuts any presumption of insolvency, as it alleges substantial transfers made — and thus assets held by Jaina — after the relevant transfers were made.  (LLC Br. 23-24; Shah Reply 11).  Whatever weight this argument might have in regard to the LLC Defendants, however, it does not hold true for the Shah Defendants.  As Jaina's CEO, M. Shah is alleged to have overseen all of the transfers listed in the TAC, and the transfers to V. Shah allegedly continued until Jaina no longer

20

had any liquid assets.  In other words, there were no subsequent transfers demonstrating Jaina's remaining assets.

The only other response from the Shah Defendants to the presumption of insolvency rests on extrinsic bank statements, which, again, the Court may not now consider.  Plaintiff has thus pleaded Jaina's insolvency sufficiently to withstand the Shah Defendants' motion to dismiss.

As for § 274's requirement that the transferor be left with "unreasonably small capital," the Shah Defendants similarly assert the LLC Defendants' argument that the fact of subsequent transfers means that Jaina must have had substantial capital left.  Once again, however, the Shah Defendants posit an argument that does not align with the facts as pleaded against them.  M. Shah purportedly oversaw every transfer in the TAC, and V. Shah received the final transfer before Jaina ceased operations and had depleted all of its liquid assets.  Plaintiff pleads that Jaina made transfers to V. Shah, approved by M. Shah, through December 26, 2014, and that as of January 2015 Jaina had "effectively ceased its operations," and that it now "has no liquid assets," and that it "no longer maintains bank accounts in New York."  (TAC ¶ 70).  Plaintiff has therefore pleaded Jaina's possession of "unreasonably small capital" to meet its business needs as required for a claim under § 274.

Because Plaintiff has sufficiently alleged both the Shah Defendants' lack of good faith — and consequently a lack of fair consideration — and Jaina's

financial status, the Shah Defendants' motion to dismiss Plaintiff's claims for constructive fraudulent transfer under §§ 273, 273-a, and 274 is denied.[6]

### 5.     The TAC States a Claim for Actual Fraud Against the Shah Defendants

Finally, the Shah Defendants argue that in regard to Plaintiff's claim for actual fraudulent transfer, the TAC fails to allege sufficient "badges of fraud" to state the requisite fraudulent intent.  The Court finds to the contrary, albeit by a narrow margin.

A close familial relationship between transferor and transferee is a well-recognized indicator of potential fraud.  *See, e.g., In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983); *In re Refco, Inc. Sec. Litig.*, No. 07 MDL 1902 (GEL), 2009 WL 7242548, at *17 (S.D.N.Y. Nov. 13, 2009) (report of special master), *report and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010).  Here, V. Shah is both brother to M. Shah, the transferor corporation's CEO, and husband to a 25%

---

[6]     The Shah Defendants' reply additionally raises an argument premised on Plaintiff's purported failure to exhaust its remedies against Jaina.  The Shah Defendants cite *Rodgers* v. *Logan*, 503 N.Y.S.2d 36, 39 (1st Dep't 1986), for the proposition that under New York law, "[i]n actions by a creditor to satisfy or enforce a corporate liability … a creditor must ordinarily exhaust his remedies at law by obtaining a judgment against the corporation and by the return of an execution unsatisfied," and argue that Plaintiff has failed to execute a judgment against Jaina.  (Shah Reply 13).  This fails for multiple reasons.  First, *Rodgers* addressed a situation in which a corporation had dissolved, and a creditor sought to satisfy a debt owed by the defunct corporation directly against shareholders; here, Plaintiff does not claim that Defendants are responsible for Jaina's debts generally speaking.  Rather, Plaintiff seeks to enforce claims for fraudulent transfer, which claims attach to the specific defendants, not Jaina.

Second, even were *Rodgers* applicable to the instant case — and the Court is confident that it is not — that case provides that "where it is impossible or futile to obtain such judgment, the creditor can maintain an action directly against the directors or shareholders, even though no judgment has been obtained."  *Rodgers*, 503 N.Y.S.2d at 39.  In light of Jaina's alleged lack of assets and cessation of business, Plaintiff has adequately pleaded such futility.

shareholder.  Furthermore, Plaintiff has pleaded the additional fact of the "transferor's knowledge of the creditor's claim and its inability to pay [that claim]," inasmuch as M. Shah was Jaina's CEO and approved all financial transactions, and accordingly was in a position to know of both the debt to Plaintiff and Jaina's financial status.  *In re Application*, 60 F. Supp. 3d at 431 (quoting *Amusement Indus.*, 820 F. Supp. 2d at 530).  As in the case of Plaintiff's claims for constructive fraudulent transfer, the timing of the transfers — beginning immediately after the initiation of arbitration proceedings and continuing until Jaina's insolvency — is relevant to inferring intent for the purpose of asserting a § 276 claim.  Finally, while the fact that the alleged transfers were not in Jaina's regular course of business would not, standing on its own, suffice to show fraudulent intent, taken in conjunction with the additionally pleaded facts, it supports the conclusion that Plaintiff has adequately pleaded "badges of fraud" in regard to the transfers involving the Shah Defendants.

## CONCLUSION

For the reasons stated in this Opinion, the LLC Defendants' motion to dismiss the TAC is GRANTED, and the Shah Defendants' motion to dismiss is DENIED.  The Clerk of Court is directed to terminate the motions at docket entries 112, 114, and 118.  The TAC represents Plaintiff's fourth attempt at pleading; the Court will not offer it a fifth, as the Court finds that any further attempt to replead the claims against the dismissed Defendants would be futile.  *See Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d

160, 191 (2d Cir. 2015) (framing the central inquiry when considering the appropriateness of leave to replead as whether such repleading would be futile).

All parties remaining in this matter are directed to appear for a conference to discuss next steps in this case on **August 17, 2016, at 3:30 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.  The parties are directed to submit a Proposed Case Management Plan as described at docket entry 3.

     SO ORDERED.

Dated:     July 27, 2016
           New York, New York

                                    KATHERINE POLK FAILLA
                             United States District Judge