H7PJGEOC                    Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    GEO-GROUP COMMUNICATIONS, INC.,

4                    Plaintiff,

5            v.                              15 Civ. 1756 KPF

6    RAVI CHOPRA, et al.,

7                    Defendants.

8    ------------------------------x

9                                           July 25, 2017
                                            3:40 p.m.
10

11

12   Before:

13                   HON. KATHERINE POLK FAILLA,

14                                           District Judge

15

16                          APPEARANCES

17   LOREE & LOREE
          Attorneys for plaintiff
18   BY:  PHILIP J. LOREE, JR., Esq.
                    Of counsel
19

20   LAW OFFICES OF ZAFAR SIDDIQI
          Attorneys for defendant Chopra
21   BY:  HUMAYAN ZAFAR SIDDIQI, Esq.
                    Of counsel

22   LAW OFFICE OF ANIL K. ARORA
     (and of counsel to Louis B. Chap)
23        Attorneys for Mahendra Shah & Vipin Shah
     BY:  ANIL KUMAR ARORA, Esq.
24                  Of counsel

25

H7PJGEOC                          Conference

1            (In open court)

2            THE COURT:  Thank you for your patience and please be

3    seated.  We are here for a pretrial conference in the matter of

4    Geo-Group Communications versus Chopra and others.  Let me

5    begin by getting the appearances of the parties beginning with

6    counsel for the plaintiff.

7            (Case called)

8            THE COURT:  Thank you very much.

9            Let me begin by explaining the delay that has just

10   taken place.  I have received several communications from Mr.

11   Loree and from Mr. Arora, and the issue for me was trying to

12   get to the bottom of the attorney-client dispute in the case.

13   I share Mr. Loree's concern about how that would impact

14   discovery were I to take this case off of the suspense

15   calendar, put it back into the active calendar and to set up a

16   schedule for the completion of discovery.

17           The timing for me personally was a little bit curious,

18   but I have now had very in-depth discussion with Mr. Arora and

19   with each of the Messrs. Shah, and I am comfortable that there

20   are bases to permit Mr. Arora to withdraw, and I am going to

21   allow him to withdraw from this case after today.

22           The issue -- and this is really directed to Mr. Loree

23   and Mr. Siddiqi -- is how best to coordinate discovery given

24   that there will be two pro se litigants.  So let me just tell

25   you what I can tell each of you from the conference we had in

1    the robing room, and that is that I think Mr. Shah and Mr. Shah

2    have some sense of what a deposition is and how they can be

3    taken, and I have suggested, but we can talk about this perhaps

4    jointly, that for each of them, if they wish to depose someone,

5    it might make more sense to do so by way of written questions

6    rather than an actual deposition, just given the fact they

7    haven't taken many depositions in the past.

8         There was a request or discussion about the

9    possibility of telephonic depositions.  I am a little bit

10   reluctant to have those go forward because I think there can be

11   merit in being in someone's presence, but that is what we were

12   talking about.

13        Another thing we were talking about was the question

14   of what discovery remains.  Mr. Loree, if I can talk with you,

15   sir, have you received all of the documents that you have

16   requested in this case?

17        MR. LOREE:  We don't think that we have.

18        There have been responses to all of our requests of

19   the parties, and with respect to the Shahs, for example, there

20   is very little material there, but what we wanted to do was

21   take their depositions and find out, resolve some special

22   issues that would allow us to figure out exactly what they

23   haven't given us.  They haven't given us, for example, any

24   records of Jaina.

25        Rather than make a big fight about that, we have

1   decided to subpoena them from Jaina.  Now, that raises an issue

2   because we have all these pro se defendants, then you have

3   Jaina, and how is Jaina going to respond to a subpoena without

4   the lawyer?

5           THE COURT:  I don't know how they could.

6           MR. LOREE:  I don't think they can in this circuit.

7           THE COURT:  No, no, I don't think they can.  I want to

8   make sure I understand what you're saying.  You believe you

9   haven't received all of the documents that are responsive to

10  your requests?

11          MR. LOREE:  Yes.

12          THE COURT:  And, for example, one of your prime

13  examples is the absence of records regarding Jaina, and so your

14  thought was in the deposition process, you would be able to

15  explore with each deponent, whoever that deponent might be,

16  what documents they have and they should have produced to you?

17          MR. LOREE:  That's correct.

18          THE COURT:  Is that correct?

19          MR. LOREE:  That's correct.

20          THE COURT:  Stay there.

21          Mr. Arora, at the moment at least for this conference

22  at least you continue to represent Mr. Shah and Mr. Shah.  Do

23  you believe, sir, that you have discussed with them fully the

24  types of documents that would be responsive to the requests

25  that have been propounded so far?

MR. ARORA:  Your Honor, yes, I've had several

conversations and meetings with the clients regarding both Mr.

Loree's requests and actually Mr. Siddiqi's requests as well.

I don't want to split hairs with Mr. Loree.  I believe

we have given quite a bit of records.  I don't know

specifically what records he is referring to, but I do know

from recollection, certainly I don't have the entire file in

front of me, we have given all the canceled checks and all the

different accounts over a large number of years for Jaina, all

the bank account statements, I believe tax returns, things of

that nature.  I believe we already gave all of that, so I am

not specifically sure what records he's referring to.

But, yes, to go back to your original question, yes, I

discussed Mr. Loree's requests and Mr. Siddiqi's requests at

length with the Shahs.

THE COURT:  And you believe, sir, that you have

obtained from them all relevant documents that they would have

that might be responsive to those requests?

Sir, why I am asking, and there is no mystery here,

your clients are going to be deposed, and they're going to be

asked a number of questions about documents they have.  If it

turns out that you, for example, have a cache of documents at

your office that you're still reviewing for relevance, or your

clients, and you may have had diverging views as to their

relevance, I just want to know because I don't want there to be

1    wasted time at this deposition if you know that there are

2    documents that are out there that are potentially responsive

3    and haven't been produced.

4            MR. ARORA:  Your Honor, I am sure I have seen or been

5    provided, I should say, by the clients that are documents above

6    and beyond what Mr. Loree may have requested.  Perhaps a

7    different range or something of that sort in terms of a date

8    range.  I have no doubt I have seen some documents or may even

9    still have possession of some documents that were beyond what

10   Mr. Loree -- that would be beyond, would be responsive to his

11   request.  I don't think they're relevant in that sense.

12           THE COURT:  Yes.

13           MR. ARORA:  I do believe I have given everything

14   relevant to his request I have seen and that I believe my

15   clients have in their possession from everything I have been

16   presented up to this point.

17           THE COURT:  I understand.  Thank you.  You may be

18   seated.  Mr. Loree, other than those -- you have just heard

19   from Mr. Arora, and he believes that what is relevant has been

20   produced, and the deposition will either prove him correct or

21   prove him incorrect.

22           MR. LOREE:  Could I comment, your Honor, on what --

23           THE COURT:  Yes.

24           MR. LOREE:  -- what Mr. Arora said, is that okay?

25           THE COURT:  Yes.

H7PJGEOC                    Conference

1          MR. LOREE:  For example, I know we had one letter out

2     to Mr. Arora about missing pages of tax returns, and we never

3     got them.  That is the sort of thing that I think we need to

4     make sure we cover because these happen to be very important

5     pages.

6          Another thing is they've produced bank statements, but

7     we had bank statements before.  They haven't produced any

8     evidence of the wire transfers, they haven't produced anything

9     about any of the transferees.  There is a 300 or maybe 400 or

10    500, 350 pages of documents, and that is very broad document

11    request.

12          THE COURT:  Do you agree with Mr. Arora, sir, that to

13    the extent that there are documents outside of the date range

14    you specified, those are, in fact, not responsive?

15          MR. LOREE:  If they're outside the date range, yes.

16          I have a feeling maybe there are some more finer

17    relevance determinations going on.  So I think it is important,

18    obviously, that those documents are preserved because in case

19    it turns out that they're ordered to produce documents that he

20    just happened to have in his possession.

21          THE COURT:  Okay.

22          MR. LOREE:  Also an objection was made that there was

23    no possession, custody or control over of Jaina's documents.

24    We have one of the Shahs, the CEO of -- more the president, but

25    he is the person with the most, he has the principal

1    responsibility over at Jaina.

2           I know Mr. Shah is also an officer and investor in the

3    company, and we want to make sure we get all those documents.

4    If not, we will subpoena them.  I have concern as to who is

5    going to respond to that subpoena.

6           THE COURT:  Yes, I understand.  Mr. Arora, if I could

7    bring you back into this discussion.

8           Is it your client's position that, or do you know, are

9    there Jaina documents that are not in the possession, custody

10   or control of either of Mr. Shah?

11          MR. ARORA:  Other documents that exist that are in

12   their possession?

13          THE COURT:  Yes.

14          MR. ARORA:  I believe so, your Honor, yes.

15          THE COURT:  How would Mr. Loree be able to get those

16   documents because Jaina has no attorney.  Is that correct?

17          MR. ARORA:  No.  I believe Jaina, at one point Jaina

18   did.  When I first came into the case last year, in 2016, I

19   believe there was a concurrent appeal going on on a separate

20   matter with Jaina.

21          In fact, I learned more of about it from Mr. Loree

22   during one of our many conversations, but they did, Jaina did

23   have counsel.  I don't know if that is still going on.  I don't

24   know if Jaina still has that counsel or if Jaina has a

25   different counsel.  Certainly one existed last year when I

1    first got in the case.

2          THE COURT:  Are you suggesting, sir, that even though

3    one of your clients is the president of Jaina, that there are

4    documents that are simply not in his possession, custody or

5    control because you have already conceded or acknowledged, I

6    don't want to suggest anything bad about my voice of verbs, you

7    have already acknowledged there are documents that are Jaina

8    documents?  Are you saying your client, as president, wouldn't

9    have access to these documents?

10          MR. ARORA:  I am not saying that one way or another,

11   your Honor.  What I was thinking of documents that are

12   Jaina-related documents but not in my client's possession.

13          THE COURT:  Yes.

14          MR. ARORA:  I was actually thinking of a different

15   potential document in the sense that Mr. Shah was listed I

16   believe as -- forgive me if I am getting this mixed up, I don't

17   believe I am -- but I believe Mr. Mahendra Shah was listed as

18   the president, and there was another individual, Mr. Bose,

19   listed as the CEO.  Mr. Mahendra Shah is nodding.  I believe I

20   got that correct in terms of how it was listed somewhere.  I

21   believe Mr. Bose, as the CEO, has Jaina information and

22   documentation and records.

23          THE COURT:  That your client does not have access to?

24          MR. ARORA:  That is what I have been told because Mr.

25   Bose is no longer in this country.

H7PJGEOC                    Conference

1          THE COURT:  And he spirited away with these documents?

2          I am sounding incredulous, and I mean to.  You're

3     saying he left with documents, and your client has no way of

4     getting these documents, and never had an electronic version or

5     some other version in his possession of those documents?

6          MR. ARORA:  Your Honor, I am speaking so I know we are

7     clear, talking about the same thing, I am not referring to any

8     specific documents.  I presume Mr. Bose has information and

9     documents and records, I presume he does.  I don't know for a

10    fact that he has.  I presume he does.

11         As to the representations beyond that that I am

12    making, your Honor, I am not trying to be difficult, but I

13    don't believe I can make any representations beyond that.

14         THE COURT:  Why don't I ask the question a little bit

15    differently, sir.  A few questions ago you acknowledged that

16    there may well be Jaina documents that have not been produced

17    by your clients.  We are in agreement, yes?

18         MR. ARORA:  Yes.

19         THE COURT:  And are you saying to me that the reason

20    your client hasn't produced these documents is because he does

21    not have physical custody or the ability to access these

22    documents?

23         MR. ARORA:  To the extent they exist, yes, your Honor,

24    yes.

25         THE COURT:  Yes?  And the reason why he doesn't have

1    physical custody of these documents or the ability to access

2    them is because his counterpart, the CEO, left the country with

3    these documents?

4              MR. ARORA:  That is my understanding, yes, your Honor.

5              THE COURT:  And there is no way for anyone to get

6    these documents?

7              MR. ARORA:  They haven't been produced up to this

8    point, your Honor.

9              THE COURT:  They have not?  Okay.

10             MR. ARORA:  I am not trying to be flippant.  That is

11   the only answer I can give at this point.  I don't want to be

12   absolute because I don't know, I don't know enough to be

13   absolute in terms of whether or not there is a way.  I know

14   what I know.  I don't know everything.

15             THE COURT:  What am I to do with the subpoena Mr.

16   Loree wishes to serve on Jaina?  Who is going to accept this

17   subpoena?

18             MR. ARORA:  I don't know.  When Mr. Mahendra Shah,

19   when there was any discovery requests propounded upon him, it

20   was upon him individually, and then obviously to whatever

21   extent he was a member of Jaina, but it wasn't on Jaina, it was

22   on him.

23             THE COURT:  I understand.

24             MR. ARORA:  I produced everything that was relevant

25   that he gave me and he said in his possession or control.  I

1    honestly don't, I don't know what to do with a subpoena on

2    Jaina.  Mr. Loree, I would imagine, I believe he has spoken

3    dozens of times, he can tell you better, but I am sure he has

4    spoken to Jaina, the counsel I referenced previously a few

5    minutes ago, I know he has spoken to him before because he is

6    the one that told me about him.  I didn't know he existed.

7              THE COURT:  Mr. Loree, why don't you fill in or pick

8    up the narrative.

9              MR. LOREE:  Right.  There is one important point of

10   clarification.  This business with the CEO, Mr. Shah has

11   repeatedly held himself out as the president, but what he has

12   also done, he has filed, he signed these filings with the

13   Department of State, where he has represented that he is the

14   CEO, i.e., the person with principal responsibility for Jaina.

15             THE COURT:  Yes.

16             MR. LOREE:  There is nothing, no documents, they

17   haven't produced any documents that indicate that Mr. Bose ever

18   had an executive level position, I don't believe, but Mr. Bose

19   is not the CEO.  He is the CEO.  So this is a game that has

20   been going on for a while.

21             THE COURT:  Certainly, sir, you have the ability to

22   file a subpoena on Jaina through whomever you deem to be its

23   representative, yes?

24             MR. LOREE:  Yes, and he would be the representative

25   because he is an officer.

1          THE COURT:  If there was a failure to produce

2     documents, you could apply to me for any number of sanctions

3     that I have, including contempt, including adverse inferences,

4     including monetary penalties, including the allowance or

5     disallowance of defenses and claims, correct?

6          MR. LOREE:  That is correct.

7          THE COURT:  Okay, that may be where you are, sir,

8     because Mr. Arora has explained to me the lay of the land as he

9     knows it, and that is why I have asked him repeatedly whether

10    there might be other documents that someone might want to

11    produce.  If it turns out none have been produced and yet they

12    exist, we'll have to do something about that, okay?

13         MR. LOREE:  Yes, your Honor.

14         THE COURT:  Mr. Arora, I will ask you to be seated.

15         Mr. Loree, we have talked about Jaina documents.  What

16    other documents do you believe you have asked for and have not

17    received?

18         MR. LOREE:  The communications, for example, between

19    Vipin Shah, Mahendra Shah, concerning Ravi Chopra, the

20    communications between those two involving Mr. Bose.  We used a

21    very, very broad document request and -- used?  I created.

22         THE COURT:  Of course.

23         MR. LOREE:  And we didn't get very many documents in

24    return.  As I said before, before all this happened, our

25    going-forward plan was much like what you're describing now, we

1    depose, and if it turns out the documents can't be obtained by

2    subpoena or otherwise, they exist even though people are saying

3    they don't exist, then we have remedies.

4              THE COURT:  I guess, sir, a problem I am thinking

5    about in the future is how to prove the negative.  If you get

6    no documents, how do I know there were documents?  I suppose

7    there were some things like incorporation papers, somebody must

8    have had them at some point?

9              MR. LOREE:  For sure.  It is rather interesting we

10   have no corporate records of Jaina, so how do we challenge who

11   is the president and who is the CEO, although we do have the

12   admissions at state.

13             THE COURT:  You heard Mr. Arora speak about counsel

14   for Jaina in a related matter.  Was there, in fact, an attorney

15   representing the company perhaps in the arbitration?

16             MR. LOREE:  I was in connection with the arbitration

17   and the attack on arbitration award, but apart from that, I

18   doubt he is playing any kind of corporate counsel role in this

19   matter, and I haven't heard from him in an awful long time.

20             THE COURT:  I would ask you, nonetheless, to reach out

21   to him and let him know we are interested in finding someone on

22   whom a subpoena can be served.  If he tells you he is not that

23   person, you can ask him if he has any documents from the

24   company given the issues we have been raising.  Are those the

25   document-related issues that remain in this case?  I am

1    distinguishing that from depositions.

2           MR. LOREE:  Another document issue is with respect to

3    Mr. Chopra's production, which again if we take his deposition,

4    we'll be able to deal with whatever shortcomings there may be,

5    but I want to know that we don't think he has produced

6    everything as well.

7           THE COURT:  On the issue of depositions, I am assuming

8    that you wish to speak to Mahendra Shah and Vipin Shah and

9    Mr. Chopra.  How many other depositions were you contemplating,

10   sir?

11          MR. LOREE:  We had each of the parties.  In fact,

12   those have been noticed, I believe.

13          THE COURT:  Yes.

14          MR. LOREE:  They were scheduled.  Then in terms of

15   non-parties, Jaina and Ravi Chopra's spouse, and the Shahs,

16   that is who that was.  Most likely we're going to subpoena

17   Citibank first for wire information and --

18          THE COURT:  You don't need to depose them?

19          MR. LOREE:  We don't need to depose them.  That is a

20   dubious statement.  Mahendra Shah will be deposed.

21          THE COURT:  Sorry, which?

22          MR. LOREE:  Mahendra Shah, she is an officer of Jaina.

23          THE COURT:  Is this Mahendra's wife or someone's?

24          MR. LOREE:  Vipin Shah's wife.

25          THE COURT:  Thank you.

H7PJGEOC                    Conference

1          MR. LOREE:  Possibly Sanchief Chand, but we --

2          THE COURT:  Would you please spell his last name.

3          MR. LOREE:  C H A N D.  That is probably -- maybe

4     there is one or two that I've left out, but I think that would

5     be the universe of depositions.

6          THE COURT:  You're planning on getting all of these

7     done in 30 days, sir?

8          MR. LOREE:  That was our original plan, yes.

9          THE COURT:  I understand.

10         MR. LOREE:  We probably are going to require some more

11    time in terms of we have two pro se defendants.

12         THE COURT:  Is there other discovery you contemplate,

13    sir, when the stay is lifted?

14         MR. LOREE:  I mentioned Citibank.  I think that is

15    pretty much it.  My colleague wants to --

16         (Off-the-record discussion)

17         MR. LOREE:  We may also be subpoenaing Telesnet for

18    documents.  They're a company that has had some relations with

19    Jaina, and we think that --

20         THE COURT:  Would you spell the name of the company.

21         MR. LOREE:  T E L E S N E T.

22         We believe actually they're using switches that Jaina

23    had and effectively letting -- effectively Jaina is doing

24    business without -- pretending it is not, but doing it through

25    Telesnet.

H7PJGEOC                    Conference

1          THE COURT:  Anything else, sir?

2          MR. LOREE:  No.

3          THE COURT:  Mr. Siddiqi if I could speak with you,

4     sir.  What depositions, what discovery do you contemplate

5     taking place once the stay is lifted?

6          MR. SIDDIQI:  We plan on deposing the plaintiff,

7     representative of the plaintiff, Geo Communications, and

8     potentially Mahendra Shah and Vipin Shah.

9          There is one other thing I would like to speak to the

10    court.  Our office represents NYC Telecommunications and

11    Mahendra Shah.  Essentially NYC is owned by Mr. Chopra.  My

12    understanding is the plaintiff intends to notice the

13    depositions for Mr. Chopra, and Mr. Chopra in his capacity as

14    representative of NYC Telecommunications.  This would expose

15    him potentially to two days of depositions, and we think that

16    is excessive, onerous and unwarranted and unnecessary.

17         THE COURT:  I am not sure I agree.  What do you think

18    it can be done in seven hours?

19         MR. SIDDIQI:  We reached out to plaintiff's attorney

20    and we offered to do 10 hours.

21         THE COURT:  As opposed to 14?

22         MR. SIDDIQI:  That's correct, your Honor.

23         THE COURT:  Mr. Loree, that is probably enough.  Let

24    me just note this, Mr. Siddiqi.  The complicating factor is if

25    anyone, in addition to Mr. Loree, is questioning your client,

1    so it may be that Mr. Loree has 10 hours of questions for your

2    client, but what if other people want to join in?

3         MR. SIDDIQI:  Again we are unsure what the plans are

4    of Mr. Shah.

5         THE COURT:  Yes.

6         MR. SIDDIQI:  Essentially, we would like to limit the

7    deposition of Mr. Chopra and NYC Telecommunication by the

8    plaintiff to 10 hours.

9         THE COURT:  Mr. Loree?

10        MR. LOREE:  First of all, we are dealing with two

11   separate parties, and it may well be -- and I have discussed

12   this with Mr. Counsel for Mr. Chopra -- that basically we are

13   moving very efficiently and there is no need to go the whole

14   two days.

15        That is what I told him, but I think when you have two

16   separate parties and they're not all necessarily -- here we

17   have separate transfers going to New York City Telecom, we have

18   a whole bit with New York City Telecom where there was a sale

19   of switches, which is now the subject of another adversary

20   proceeding brought by another creditor in the bankruptcy, where

21   the obligation is that when the finance company asked for the

22   switches back during the bankruptcy, the Shahs gave the

23   switches back and they had different serial numbers on them,

24   that sort of thing.

25        I want to make sure we get at least our two days of

1     depositions for two parties and we act in good faith.  We won't

2     keep them there for no good reason.  If we can do it in less

3     than two days, it is great.

4             THE COURT:  Mr. Siddiqi, is there anything else you

5     want to bring to my attention regarding discovery?  Has your

6     client propounded requests for documents?

7             MR. SIDDIQI:  Yes.  We have and we received over three

8     and a half thousand pages from plaintiff.  The bulk is

9     duplicative, producing the same documents, three or four copies

10    of it in there.  I am not sure why they're doing this.

11            THE COURT:  What do you think is missing from

12    plaintiff's production?

13            MR. SIDDIQI:  As of now, we are satisfied with the

14    requests.  Once we continue the depositions with the

15    representative of Geo-Group, we will be in a better position to

16    determine what other documents we need.

17            THE COURT:  Did you propound discovery requests on the

18    Shahs, either Shah?

19            MR. SIDDIQI:  I believe we did, and we did receive a

20    response.

21            THE COURT:  Were there any problems with the response

22    that you received?

23            MR. SIDDIQI:  No.

24            THE COURT:  Are there other individuals on whom you

25    propounded either document requests or subpoenas for documents,

H7PJGEOC                        Conference

1    sir?

2              MR. SIDDIQI:  As of this date, no.

3              THE COURT:  Going forward, your plans are to have the

4    depositions that you've just mentioned to me, the Shahs, the

5    Geo-Group representative.  Anyone else?

6              If I lifted the stay together, what would you be doing

7    for whatever period of time I allotted for discovery?  Mostly

8    those depositions?

9              MR. SIDDIQI:  That's correct.

10             THE COURT:  And possibly follow-up document requests

11   as a consequence of what you learned in those depositions?

12             MR. SIDDIQI:  That's correct.

13             THE COURT:  You don't have lingering discovery issues?

14             MR. SIDDIQI:  No.

15             THE COURT:  Thank you for letting me know.

16             MR. ARORA:  Your Honor, I wanted to add, in case it

17   was an oversight on either counsels' part in terms of which

18   parties or which third parties may be subpoenaed or deposed,

19   only because we have spoken about it, I have spoken about it

20   with each counsel during my time in the case and also we spoke

21   about it on the record when we were before your Honor back in

22   September of last year, there was a law firm mentioned in the

23   pleadings that was alleged to have received well over a million

24   dollars worth of funds from Jaina's accounts that were not

25   supposed -- that the firm, according to the plaintiff's own

1      allegations, the law firm did no legal work for.

2              THE COURT:  Was this the Robinson Brog firm, sir?

3              MR. ARORA:  No.

4              (Multiple voices)

5              MR. ARORA:  Your Honor, again to the extent I just

6      want to make sure the record was clear in case there was an

7      oversight, the allegation was made by the plaintiff, and it

8      relates to both Mr. Mahendra Shah at least and Mr. Chopra,

9      according to the complaint, that there may be a potential party

10     both for depositions and for subpoenas.

11             THE COURT:  The name again, please?

12             MR. LOREE:  Robinson Brog.

13             THE COURT:  Mr. Loree, I can't see you there.

14             MR. LOREE:  From our perspective, what we have been

15     concerned with is finding a way we can get some very, very

16     simple yes or no answers from Robinson Brog, whether Jaina was

17     their client because if the president of Jaina apparently

18     either doesn't know or I think is denying --

19             THE COURT:  No, no don't ask him in the middle of the

20     conference.  You can ask him that offline.

21             MR. LOREE:  Yes, that is true.  It is important.

22             When law firms get subpoenas, particularly big law

23     firms, they get real big and defensive.  We are not saying

24     Robinson Brog did anything wrong, but it sure looks to us when

25     $1.5 million has transferred, and that is not just an

1    allegation, we have documentary evidence and bank statements,

2    that can't be refuted.

3           They got the money from Jaina for some reason, and

4    whether it was payments for debts of others or whatnot, we

5    believe it alleges in the complaint that it is connected to

6    either Chopra and both of the defendants, or all of them.

7    Again that is for discovery.  As far as we can tell, the

8    president of Jaina is saying that he has no idea who Robinson

9    Brog is, whereas the bank statements are saying $1.5 million

10   went to Robinson Brog.

11          THE COURT:  Mr. Arora, do you know anything about this

12   transfer of funds?

13          MR. ARORA:  Your Honor, I don't have the complaint in

14   front of me, but the allegation was 1.35 million, so the record

15   is clear.  I believe the bank statements support those amounts.

16   I believe it was over a series of five or six transfers.

17          MR. LOREE:  In a month or so, maybe a less than a

18   month.

19          MR. ARORA:  A few transfers, one lump sum, but large

20   transfers that happened five or six times as alleged in the

21   complaint specifically they're alleged.

22          The plaintiff has very specifically alleged that these

23   transfers were done for an improper purpose in the sense they

24   were not done as part of legitimate business purpose for Jaina,

25   and plaintiff's complaint goes on to specifically allege that

they were done for the benefit of Mr. Chopra or one of Mr.

Chopra's --

            THE COURT:  Let me stop you for a moment.  I will be

more specific with my question because I don't want you

reciting the complaint back to me.  Does the Robinson Brog firm

or did the Robinson Brog firm represent either of your clients

in an individual capacity?

            MR. ARORA:  I cannot say yes or no, your Honor.  I

don't believe --

            THE COURT:  Can you ask them?

            MR. ARORA:  I asked them.  They said no.  Only my

clients?

            THE COURT:  I am asking in their individual

capacities?

            MR. ARORA:  Yes, no, the Robinson Brog firm did not

represent them.  That is what I have been told.

            THE COURT:  Do you know, have your clients told you in

a manner that you can tell me, without breaching the

attorney-client privilege, whether Robinson Brog represented

Jaina?  If the answer is you can't tell me --

            MR. ARORA:  No, your Honor it is not that.  I am

trying to remember.

            THE COURT:  Take your time.

            MR. ARORA:  No, they do not believe -- they don't

know.  I shouldn't say they don't believe.  They don't know

1    whether Robinson Brog represented Jaina.  When I say "they,"

2    only because your Honor said "they," but it was Mahendra Shah

3    that was part of Jaina.  Specifically Mr. Mahendra Shah is,

4    your Honor, I don't want to get it wrong --

5              THE COURT:  He is right there.  You can ask him if you

6    want to, if you're comfortable, and I am not interested in

7    invading the privilege.  I am trying to draw a circle around

8    how we can approach the Robinson Brog firm, if at all.

9              MR. ARORA:  I understand your Honor's intention.

10             I believe what we have represented in our discovery

11   answers and what Mr. Mahendra Shah represented to me as a

12   result, or before I represented those answers, is that he has

13   no idea why the transfers were made to Robinson Brog by Jaina.

14   Is that correct,?

15             MR. MAHENDRA SHAH:  I don't know.  It was --

16   (inaudible) -- we approved the money to Robinson Brog.

17             THE COURT:  Thank you.  Mr. Siddiqi, did your client,

18   Mr. Chopra, retain the Robinson Brog firm?

19             MR. SIDDIQI:  No, your Honor, neither Mr. Chopra or

20   NYC Telecommunication.  They did not retain the Robinson Brog

21   firm.

22             THE COURT:  Mr. Loree, did any person who had a

23   business relationship with Ravi Chopra, by any chance, retain

24   Robinson Brog?

25             (Inaudible)

1          THE COURT:  I just wanted to make sure we were asking

2     the right people.  Thank you, Mr. Siddiqi.

3          Mr. Loree, you're welcome to sit down.  Anything else?

4     There is something else you wanted to tell me?

5          MR. LOREE:  No, thanks.

6          THE COURT:  I am advised that the bankruptcy court is

7     comfortable with the stay being lifted for the purposes of

8     letting this litigation continue, and so I will lift the stay

9     imposed in January in this case.

10          I am going to allow the parties until September 15th

11     to complete discovery in this case.  Use your time wisely and

12     please plan on the front-end perhaps to have these depositions

13     in the month of August so that you will have enough time to ask

14     your follow-up document production requests and that you will

15     be able to tell me if there are discovery disputes.

16          Mr. Loree and Mr. Siddiqi, I will ask you to please

17     work with each of Mr. Mahendra Shah and Mr. Vipin Shah to get

18     their contact information because after this proceeding, Mr.

19     Arora will not be representing them, and I want to be sure that

20     they are involved in the process.  I have suggested to them --

21     I will not tell them what to do because I do not provide legal

22     advice -- that perhaps when they are participating in

23     depositions, it might be easier for them to submit written

24     questions.  It may not.  They have a right as a pro se litigant

25     to participate in the depositions, but as a matter of what is

1    easier to do in practice, sometimes it is difficult for folks

2    who are not lawyers to participate in a deposition just because

3    they haven't done it before.

4          I will give at the end of this proceeding to each of

5    Mr. Shahs a leaflet or pamphlet that the Pro Se Office in this

6    district puts out regarding discovery.  I will give them as

7    well a flyer for the pro se clinic in this building that may

8    provide them something akin to legal assistance on this issue.

9          I don't think that I need to explain with any greater

10   level of granularity how I want discovery to be done.  I am

11   expecting that if there are problems, you'll just let me know.

12         Mr. Loree, you tell me -- and I will ask Mr. Siddiqi

13   the same question -- if there is something that you think I

14   need to address in this proceeding regarding how discovery is

15   concluded in this case?

16         MR. LOREE:  No, I don't believe so, your Honor.

17         The only thing I would say sort of in terms of

18   service, if we can get an agreement that the service can be

19   made by email or that there is some other -- or if something

20   has to be served by X date, it can be served by email as long

21   as it is regular mail the next day, it is okay if we had

22   something like that in place for discovery where you didn't

23   have ECF involved in the original order.

24         So I know both Shahs have given their email addresses,

25   and we communicated with them by email before, and I think they

H7PJGEOC                    Conference

1    were included in their notices of appearance.

2              THE COURT:  Mr. Mahendra Shah, are you comfortable

3    allowing service of discovery requests and responses to

4    discovery requests by email?

5              MR. MAHENDRA SHAH:  Yes.

6              THE COURT:  A little louder?

7              MR. MAHENDRA SHAH:  Yes, yes.

8              THE COURT:  Mr. Vipin Shah, the same question.

9              Are you comfortable permitting service of discovery

10   requests on you by email and your submission of responses to

11   those discovery requests also by email?

12             MR. VIPIN SHAH:  Okay.

13             THE COURT:  Okay.  Mr. Loree, does that answer the

14   question?

15             MR. LOREE:  Yes, except I guess if there are later

16   proceedings apart from discovery, then we are back to the same

17   problem would exist, and I was wondering if it is premature to

18   address that?

19             THE COURT:  Let me ask that.

20             MR. LOREE:  Well, in other words, the Shahs, I don't

21   think, are -- they file things on ECF, but it is through the

22   Pro Se Office, I believe.

23             THE COURT:  That's correct.

24             MR. LOREE:  In other words, we're still required or

25   ordinarily if we are going to serve something on ECF, to serve

1    them usually by mail and along with a notice of electronic

2    filing, I believe.  What we would like to do is just have the

3    light right to do that by email, if they're okay with that?

4              THE COURT:  We are speaking here about not only

5    discovery requests but if, for example, there is a dispute that

6    requires my attention, are you talking about how you would

7    serve them with notice of that dispute?

8              MR. LOREE:  Yes, your Honor.  You have letter motions

9    and the like.

10             THE COURT:  All right.  I understand that.

11             Mr. Mahendra Shah, do you understand if there is a

12   problem, and your adversaries are writing to me to resolve the

13   problem, that they would be serving you electronically with the

14   letter outlining what the problem is?

15             MR. MAHENDRA SHAH:  Yes, it should be okay because

16   then they will send me the letter explaining whatever the

17   problem is, yes, that should be okay by email it is going to

18   be.

19             THE COURT:  That is my understanding.

20             MR. LOREE:  Yes, it would be.

21             THE COURT:  Mr. Vipin Shah, the same question, sir.

22             If there is a problem, will you accept service of the

23   letter outlining the problem by email?

24             MR. VIPIN SHAH:  Yes.

25             THE COURT:  Mr. Loree, still if things I need to get

1   filed, I would need to get them from you by ECF.

2              MR. LOREE:  Of course.

3              THE COURT:  Mr. Mahendra Shah and Mr. Vipin Shah, you

4   would be sending them to our Pro Se Office, and they would give

5   them to me, and they would be docketed by our Pro Se Office if

6   there were reasons, all right?

7              MR. MAHENDRA SHAH:  Can we do by email?

8              THE COURT:  I don't accept email service to me.  I

9   want to make sure someone is looking at these things before

10  they make it to the docket.  I prefer not to be the one

11  docketing your letters.  If you send it to the Pro Se Office,

12  they will arrange for the docketing of those issues.

13             MR. MAHENDRA SHAH:  I should mail by physical mail?

14             THE COURT:  Yes, to the Pro Se Office, and we will get

15  your papers.  Mr. Loree, is there anything else?

16             MR. LOREE:  No, your Honor.  Thank you.

17             THE COURT:  Mr. Siddiqi, is there something else

18  regarding the logistics of discovery in this case?

19             MR. SIDDIQI:  Well, I just want to get back to the

20  issue of the deposition of my client, so 10 hours?  I am unsure

21  what the final determination was.

22             THE COURT:  I am not going to limit it.  I am trusting

23  Mr. Loree to abide by his commitment to me to keep it shorter

24  and to have that time, but not use that time.

25             If it turns out that he has violated my trust, I will

1    consider that.  I expect fully that it is not going to take 14

2    hours, but I am not going to limit him because I don't want to

3    place limits that I don't know to be justified.  I don't know

4    enough about what the lines of questions will be to say that 14

5    hours is too long a period of time.  So I am accepting his

6    representation that he will be efficient in the conduct of the

7    deposition.

8              MR. SIDDIQI:  There is one other small issue that

9    might affect one of the defendants.  It is my understanding the

10   court requires a settlement conference be held in person?

11             THE COURT:  Well, are you talking about at close of

12   discovery, sir?

13             MR. SIDDIQI:  Yes.

14             THE COURT:  I see what you're saying.  It would be my

15   preference, but if it can't be done because of financial

16   hardship, I suppose that person could participate by telephone.

17             MR. SIDDIQI:  Thank you.

18             THE COURT:  Thank you for reminding me about that.

19             Alright, We'll issue an order.  I was going to have

20   you guys re-send the order because, Mr. Loree, you volunteered

21   to re-send case management order with these new dates.

22             I am not sure it needs to be anything other than an

23   order that will issue setting an outside date for discovery of

24   the 15th of September.  I am not going to set interim

25   deadlines, but know I am not extending this date further, so be

1    thoughtful how you use it.

2           Mr. Loree, do you contemplate expert discovery in this

3    case?

4           MR. LOREE:  No, your Honor.

5           THE COURT:  Mr. Siddiqi, do you contemplate expert

6    discovery?

7           MR. SIDDIQI:  No, your Honor.

8           THE COURT:  Mr. Arora at least at the moment were you

9    contemplating expert discovery?

10          MR. ARORA:  At the outset back in September, we were.

11          To the extent, depending on what records were

12   provided, there may be some question as to veracity of those

13   documents.  Therefore, we may need an expert in terms of that,

14   signatures.

15          THE COURT:  The expert would be a handwriting expert?

16          MR. ARORA:  Potentially that was one of my

17   expectations only because the allegations are so specific in

18   the pleadings.  Up to this point, your Honor, I haven't seen

19   anything that would require an expert.

20          THE COURT:  Mr. Mahendra Shah and Mr. Vipin Shah, what

21   I am contemplating is that fact discovery, by which I mean not

22   experts, but folks who have knowledge about this case, that

23   will conclude September 15.

24          At the moment no one is asking for expert discovery.

25   If on the 15th people feel that there is a need for expert

1    discovery, one of you, or Mr. Loree or Mr. Siddiqi, will write

2    to me and explain why expert discovery is needed, and I'll

3    consider setting a schedule for that.

4              Do you gentlemen understand that?

5              MR. MAHENDRA SHAH:  Yes.

6              MR. VIPIN SHAH:  Yes.

7              THE COURT:  Mr. Loree, you also understand that?

8              MR. LOREE:  Yes, your Honor.

9              THE COURT:  Mr. Siddiqi, the same?

10             MR. SIDDIQI:  Yes, your Honor.  I do have one question

11   regarding motions for summary judgment.

12             THE COURT:  Yes.

13             MR. SIDDIQI:  If I understand correctly, there will be

14   depositions of non-parties and production of documents.  Will

15   we still be required to request by letter for permission from

16   the court to submit motions for summary judgment 30 days of

17   September 15th?

18             THE COURT:  We'll set up a conference to take place

19   probably within a week or two of that date.  At that conference

20   we'll discuss whether anyone feels that they have a dispositive

21   motion they wish to bring.  I can set the schedule for the

22   motion at that time.  Does that make sense?

23             MR. SIDDIQI:  Yes, your Honor.

24             THE COURT:  Thank you for reading my individual rules

25   of practice.  Not everyone does.  I appreciate when they're

H7PJGEOC                              Conference

1    quoted back to me.  Mr. Loree, I will ask you please to get a

2    transcript of this proceeding today in whatever speed you would

3    like.

4            MR. LOREE:  Yes, your Honor.

5            THE COURT:  If you order it, I will get it.

6            Mr. Arora, you are relieved, with the thanks of the

7    Court after this proceeding.

8            MR. ARORA:  Thank your Honor.

9            THE COURT:  Thank you.  Gentlemen, does anyone have

10   anything to bring to my attention this afternoon?

11           MR. LOREE:  No.

12           MR. MAHENDRA SHAH:  I do.

13           THE COURT:  Go ahead.

14           MR. MAHENDRA SHAH:  I am confused about two weeks you

15   said now what is, because I am in Florida.  So I don't know, do

16   I have to come back again or how it is going to be?

17           THE COURT:  We have a couple of issues.  You will have

18   to, first of all, speak to Mr. Loree and Mr. Siddiqi about

19   whether this deposition, where this deposition is taking place.

20           I don't know if the parties can reach agreement.  If

21   you can't reach agreement where your deposition and Mr. Vipin

22   Shah's deposition will take place, you will all write to me,

23   and I will pick somewhere.  I appreciate what you're saying.

24   You're in Florida, and other than this conference, you have no

25   plans to be in the New York area.

1           MR. MAHENDRA SHAH:  Right.

2           THE COURT:  It is my practice at the close of fact

3   discovery to have the parties in for a conference.  Today I

4   don't know that I would allow you to participate by phone.  I

5   will remember what you've said to me.  I will think about it,

6   and you'll renew the request in September.  Normally people

7   appear in person because we're talking about setting a trial

8   and setting motion practice, and those are normally things that

9   I want to see the parties for.

10          If it turns out that as we get closer to that

11  September date, you are in a financial state where it simply

12  cannot be done, I will listen to you at that time.

13          MR. MAHENDRA SHAH:  Thank you so much.

14          THE COURT:  Anything else today?

15          MR. LOREE:  No.

16          THE COURT:  Gentlemen, I will ask Mr. Mahendra Shah

17  and Mr. Vipin Shah to wait for a few moments.  There are

18  written materials I want to give to you.  Please remain here in

19  the courtroom.  Everyone else is welcome to go.  Thank you very

20  much for coming in.

21          (Court adjourned)

22

23

24

25