UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

GEO-GROUP COMMUNICATIONS, INC.

                        Plaintiff,

        v.

RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC
TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                        Defendants.

Case No. 15-cv-01756 (KPF)


**RAVI CHOPRA'S AND NYC TELECOMMUNICATION CORP.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**


Humayun Siddiqi, Esq.
11 Broadway, Suite 853
New York, NY 10004
(646) 688-3553
*Attorney for Defendants Ravi Chopra and
NYC Telecommunications Corp.*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF MATERIAL FACTS .................................................................................. 3
   A. Third Party Jaina Network Systems, Inc. ............................................................................ 3
   B. The Robinson Brog Transfers ............................................................................................ 3
   C. The LLC Transfers ............................................................................................................. 5
     i. Repayments Pursuant to the January, 2013 Loan Agreement .............................................. 6
     ii. Repayment of the Loans Extended in December, 2013 ....................................................... 6
   D. The NYC Telecommunications Transfers ........................................................................... 7
   E. The STI Transfers ............................................................................................................... 9
   E. The Analysis Performed by GCI ......................................................................................... 9

ARGUMENT ........................................................................................................................... 10

I. NONE OF THE TRANSFERS WAS CONSTRUCTIVELY FRAUDULENT ....................... 10
   A. All of the Transfers Were Made For Fair Consideration ....................................................... 11
     i. The Robinson Brog Transfers ........................................................................................... 12
     ii. The STI Transfers ........................................................................................................... 12
     iii. The NYC Telecommunications Transfers ......................................................................... 13
     iv. The LLC Transfers .......................................................................................................... 13
   B. GCI Has Failed to Plead Insolvency and the Record Reveals Jaina Was Solvent at the Time
   of the Transfers .................................................................................................................... 14
   C. GCI Has Failed to Plead that the Transfers Left Jaina With Unreasonably Small Capital and
   the Record Reveals that Jaina Disposed of Sufficient Capital to Continue its Operations ........ 15

II. NONE OF THE TRANSFERS WAS MADE IN AN ATTEMPT TO DELAY, HINDER OR
DEFRAUD .............................................................................................................................. 16
   A. The Robinson Brog and LLC Transfers .............................................................................. 17
   B. The STI and NYC Telecommunications Transfers ............................................................... 18

III. NO LIABILITY CAN BE IMPUTED TO CHOPRA AS HE WAS NEVER A
TRANSFEREE OR BENEFICIARY OF ANY OF THE TRANSFERS ..................................... 19
   A. The Robinson Brog Transfers ............................................................................................ 20
   B. The LLC Transfers ............................................................................................................. 21
   C. The NYC Telecommunications Transfers and the STI Transfers ........................................... 21

IV. GCI'S CLAIM WITH RESPECT TO THE STI TRANSFERS FAILS AS A MATTER OF
LAW ....................................................................................................................................... 25

CONCLUSION ........................................................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*American Lecithin Company v. Rebmann*, 2017 WL 4402535 (S.D.N.Y. 2017)................... 23, 24

*Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152  412 N.E.2d 934, 432 N.Y.S.2d 879
  (1980)................................................................................................................... 22

*Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F.Supp.2d 177 (
  E.D.N.Y. 2009) ..................................................................................................... 22

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13 (2d Cir.1996) ...................... 23

*Daelim Trading Co., Ltd. v. Giagni Enterprises, LLC*, 2014 WL 6646233 ........................... 11, 19

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) ........... 22

*Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*, 552 Fed.Appx. 13 (2d Cir. 2014)22

*Fundacion Presidente Allende v. Banco de Chile*, 2006 WL 2796793 (S.D.N.Y. 2006)............ 20

*Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728 (S.D.N.Y. 1993) .................................. 20

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 638 (2d Cir. 1995) ....................................... 11, 12,17

*In re Bergman, 293 B.R.* 580 (Bankr. W.D.N.Y. 2003) ................................................... 15

*In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 365 (S.D.N.Y. 2003)............... 22

*In Re Kovler*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000) ..................................................... 16

*In re Norstan Apparel Shops, Inc.*, 367 B.R. 68 (Bankr. E.D.N.Y. 2007).............................. 15

*In re Operations NY LLC.*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013) ..................................... 16

*In re Sharp Intern. Corp.*, 403 F.3d 43 (2d Cir. 2005) ................................................. 11, 19, 20

*In re Trinsum Group, Inc., 460 B.R. 379* (Bankr. S.D.N.Y. 2011)................................... 14

*J.B.I. Industries, Inc. v. Suchde,* F.Supp.2d (S.D.N.Y. 2000)........................................... 24

*McCarthy v. Estate of McCarthy*, 145 F.Supp.3d 278 (S.D.N.Y. 2015) .............................. 14, 15

*Morris v State Dept. of Taxation and Finance*, 82 NY2d 135, NYS2d 807, 623. NE2d 1157 .... 25

*Novak v. Scarborough Alliance Corp.*, 481 F.Supp.2d 289 (S.D.N.Y. 2007) ........................... 24

*Popowich v. Korman*, 73 A.D.3d 515 (1st Dep't, 2010) ................................................. 25

*Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327 N.E.2d 983 (1976)
  ........................................................................................................................... 24

*Roselink Investors, LLC v. Shenkman*, 386 F.Supp.2d 209 (S.D.N.Y. 2004)........................... 20

*Skyline Potato Co., Inc v. Hi-Land Potato Co., Inc.*, 909 F.Supp.2d 1225 (D. New Mexico 2012)
  ........................................................................................................................... 19

*Stewart Tenants Corp. v. Square Indus.*, 269 A.D.2d 246, 703 N.Y.S.2d 453 (1st Dep't, 2000) 25

*Sysco Food Service of Metro New York, LLC v. Jekyll & Hyde, Inc.*, 2009 WL 4042758
  (S.D.N.Y. 2009)..................................................................................................... 22

*Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95 (1997 2d Circuit)................... 22

*U.S. v. McCombs*, 30 F.3d 310 (2d Cir. 1994)............................................................. 17

*William Wrigley Jr. Co. v. Waters*, 890 F.2d 594 (2d Cir. 1989) .................................... 22

*Zinaman v. USTS New York, Inc.*, 798 F.Supp. 128 (S.D.N.Y 1992)........................................ 24

**Statutes**

NYDCL § 271...................................................................................................... 14

NYDCL § 272...................................................................................................... 11

NYDCL § 273...................................................................................................... 1, 10, 14

NYDCL § 273-a..................................................................................................... 1

NYDCL § 274.................................................................................................................. 1, 10, 15
NYDCL § 275.......................................................................................................................... 11
NYDCL § 276.................................................................................................................... 1, 16
**Rules**

Fed.R.Civ.P. Rule 56 ............................................................................................................... 2

Defendants NYC Telecommunications Corp. ("NYC Telecommunications") and Ravi Chopra ("Chopra") hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Fed.R.Civ.P. Rule 56 dismissing the claims asserted against them by Geo-Group Communications, Inc. ("GCI"). The facts underlying this motion are fully set forth in Defendants' Rule 56.1 Statement of Undisputed Material Facts ("SUMF").

<u>PRELIMINARY STATEMENT</u>

GCI alleges violations by Chopra and NYC Telecommunications of Sections §§ 273, 273-a, 274 and 276 of New York Debtor and Creditor Law ("NYDCL") arising from the transfer of funds from non-party judgment debtor Jaina Network Services, Inc. to NYC Telecommunications, STI Consultants, Robinson Brog Leninard Green & Genovese & Gluck, P.C., 728 Melville Petro LLC, Kedis Enterprises LLC and JMVD Hillside LLC.

GCI imputes liability to NYC Telecommunications for transfers made to the same on the basis that no fair consideration was provided.

GCI imputes liability to Chopra on the basis that Chopra directed that various transfers be made, that he was the direct beneficiary of at least one transfer and, finally, that as the owner of two corporate transferees he benefited from the transfers.

None of GCI's claims is viable.

First, Defendants have extensively and conclusively documented that all of the complained of transactions were for fair consideration arising from a series of loans made by Defendants, third-parties on behalf of Defendants or directly by third-parties. Further, GCI has failed to sufficiently plead the insolvency and small capital requirements under the NYDCL and,

in any case, the record reveals that Jaina Network Systems, Inc. was both solvent at the time of the transfers and disposed of sufficient capital to continue its operations.

Second, all of GCI's claims against Chopra with respect to directing such transfers fail as they are based upon a misapprehension of the NYDCL that underpins GCI's entire complaint. The scope of the NYDCL is narrowly focused on allowing a claimant to recover from the actual transferee or beneficiary. GCI's express contention that the NYDLC gives rise to a cause of action sounding in conspiracy or aiding and abetting has no basis in law and has been explicitly rejected.

Third, GCI's claims with respect to transfers to Robinson Brog and the various LLC's fail as neither Chopra nor NYC Telecommunications was a beneficiary of the transfers or directly or indirectly the actual transferee of the funds. Defendants have utterly discredited GCI's allegations and identified the genuine transferees.

Fourth, GCI's attempts to assert alter ego liability against Chopra on the basis of his ownership of NYC Telecommunications and STI Consultants are legally insufficient as GCI's virtually inexistent allegations with respect to alter ego liability fail to even minimally satisfy the criteria established for veil piercing.

Fifth, with respect to the transfers made to one entity, STI Consultants, GCI cannot assert alter ego liability against Chopra as the owner of STI Consultants as GCI has failed to join STI Consultants to this action and New York does not recognize a separate standalone cause of action to pierce the corporate veil.

STATEMENT OF MATERIAL FACTS

A.    Third Party Debtor Jaina Network System, Inc.

Jaina Network Systems, Inc. ("Jaina") is a New York corporation.  SUMF, ¶ 1. Chopra is not and has never been a director of Jaina or an officer of Jaina or had any signing authority with respect to any bank accounts held by Jaina *Id.*, ¶¶ 3-5. Chopra is not and has never been a shareholder of Jaina.  *Id.*, ¶ 2 Neither Chopra nor NYC Telecommunication have ever undertaken any negotiations to become shareholders of Jaina. *Id.*, ¶ 6. Chopra is not related by blood or marriage to any of the shareholders, officers or directors of Jaina. *Id.*, ¶ 7.

On May 13, 2013 GCI commenced an arbitration proceeding against Jaina which terminated on July 10, 2014 with the arbitrator making an award in favor of GCI in the amount of $1,249,654.00. *Id.*, ¶ 8. Thereafter GCI commenced a special proceeding in the New York Supreme Court, County of New York which confirmed the award and awarded a judgment to GCI in the amount of $2,712,175.51. *Id.*, ¶¶ 9-10. GCI now seeks recovery against Chopra and NYC Telecom for certain transfers (collectively "The Transfers").

B.    The Robinson Brog Transfers

GCI seeks to recover from Chopra $1,350,000.00 arising from a series of transfers made to the law firm Robinson-Brog ("Robinson Brog Transfers") between February 26, 2014 and October 1, 2014.  Third Amended Complaint ("TAC") ¶ 23. GCI has never contacted or attempted to contact Robinson Brog to ascertain why funds were transferred to the same nor has GCI subpoenaed Robinson Brog.  SUMF, ¶ 107. Notwithstanding GCI's allegation to the effect that the transfers were made to satisfy the indebtedness of Chopra to Robinson Brog, the record reveals that the transfers were actually made to the escrow account of Robinson Brog and in

satisfaction of antecedent debt arising from funds loaned to Jaina by TD Time, LLC ("TD Time") and Vision Impex, Ltd.  ("Vision Impex").

TD Time is a New York City based business entity whose owner is Surjeet Singh. *Id.*, ¶¶ 22-23.  Chopra has no ownership interest in TD Time and has never had an ownership interest in TD Time. *Id.*, ¶ 25. TD Time is primarily involved in real estate and the bulk purchase and sale of cell phones. *Id.*, ¶ 24. Surjeet Singh only recalls having met Chopra at a social gathering sometime in 2017. *Id.*, ¶ 27.

Vision Impex is a now inactive trading company whose owner is Dalip Kumar. *Id.*, ¶ 28. Chopra has no ownership interest and has never had an ownership interest in Vision Impex.  *Id.*, ¶ 28. In 2014 Vision Impex was principally a trading company. *Id.*  Mr. Kumar's last business relationship with Chopra dates back to the early 1990's at which time Mr. Kumar owned an Indian grocery store and Chopra sold him produce. *Id.*, ¶ 31.

Jaina's external accountant, Jagdish Alwani, solicited short-term loans from TD Time. *Id.*, ¶ 32. Based in part on Vision Impex's guaranty of such loans, TD Time made certain wire transfers to Jaina. *Id.*, ¶¶ 33-38. Vision Impex also requested that TD Time make additional transfers to Jaina, as loans on the part of Vision Impex to Jaina, and in satisfaction of debt due and owing to Vision Impex by TD Time and arising from TD Time's bulk purchase of cell phones from Vision Impex. *Id.*, ¶ 39. Thereafter Vision Impex directly made multiple loans to Jaina. *Id.*, ¶¶ 40-47. A summary of the various transfers appears in Table 1.

Table 1. Transfers to Jaina

| Date | Amount | Sender | Reference in Statement of Undisputed Material Facts |
|---|---|---|---|
| 10/23/2013 | $60,000.00 | TD Time | ¶ 34 |
| 10/24/2013 | $41,000.00 | TD Time | ¶ 35 |
| 12/04/2013 | $50,150.00 | TD Time | ¶ 36 |
| 12/13/2013 | $100,250.00 | TD Time | ¶ 37 |
| 01/22/2014 | $102,500.00 | TD Time | ¶ 38 |
| 01/29/2014 | $211,500.00 | TD Time | ¶ 39 |
| 04/25/2014 | $249,100.00 | Vision Impex | ¶ 40 |
| 05/09/2014 | $201,450.00 | Vision Impex | ¶ 41 |
| 05/22/2014 | $198,500.00 | Vision Impex | ¶ 42 |
| 08/13/2014 | $50,000.00 | Vision Impex | ¶ 43 |
| 08/22/2014 | $49,220.00 | Vision Impex | ¶ 44 |
| 09/23/2014 | $190,200.00 | Vision Impex | ¶ 45 |
| 10/16/2014 | $102,500.00 | Vision Impex | ¶ 46 |
| 11/03/2014 | $105,600.00 | Vision Impex | ¶ 47 |
| **Total** | **$1,711,970.00** | | |

Vision Impex requested that the periodic loan repayments be made to the escrow account of Vision Impex's attorneys, Robinson Brog, a law firm with offices in New York City. SUMF, ¶¶ 17, 50. Vision Impex provided the wiring instructions to Jaina's then external accountant Jagdish Alwani. *Id.*, ¶ 51. Neither Chopra nor NYC Telecommunications are or have ever been clients of Robinson Brog nor are they or have they ever been indebted to Robinson Brog. *Id.*, ¶¶ 18-21. Neither Chopra nor NYC Telecommunications have ever received any funds from Robinson Brog, TD Time or Vision Impex. *Id.*, ¶¶ 52-54.

C.     The LLC Transfers

GCI seeks to recover from Chopra $860,000.00 which amount is comprised of a transfer to 728 Melville Petro, LLC ("728 Melville"), in the amount of $460,000.00, a transfer in the amount of $200,000 to JMVD Hillside, LLC "JMVD", and two transfers totaling $200,000.00 to Kedis, LLC ("Kedis")(the transfers being collectively referred to as the "LLC Transfers"). TAC

¶¶ 37, 44, 51-51. 728 Melville, JMVD and Kedis were dismissed from this action by the Court.
Docket 134, Opinion and Order.

The transfers arose out of two sets of loans.

i.    Repayments Pursuant to the January, 2013 Loan Agreement

Kedis is a New York LLC owned by Sanjiv Chand. SUMF, ¶ 78. Neminath, Inc.
("Neminath") is a New York Corporation owned by Mahendra Shah and Vipin Shah. *Id.*, ¶ 79
Neither NYC Telecommunications nor Chopra have any interest in Kedis.  *Id.*, ¶ 87-88. On or
about January 18, 2016 Kedis, LLC executed a commercial loan agreement with Neminath
whereby Kedis agreed to lend Neminath $600,000.  *Id.*, ¶ 80. Neminath granted Kedis a security
interest in a certain premises it owned at 235 Hillside Avenue, New York, NY.  *Id.*, ¶ 80. It was
understood by Mr. Chand that the loan funds would be transferred Jaina and that Jaina would be
responsible for repaying the loan. *Id.*, ¶ 81.

On January 22, 2013 Kedis transferred $600,000 to Neminath. *Id.*, ¶ 80 After loan costs
totaling $30,000 were deducted, the balance of $570,000 was transferred to Jaina in a series of
transfers effected between January 22, 2013 and February 6, 2013. *Id.*, ¶ 82. Kedis thereafter
directed that the loan repayments, including interest, in the amount of $660,000.00 be made to
two entities: JMVD Hillside ("JMVD") and 728 Melville ("Melville"). *Id.*, ¶ 83. Chand is the
president of JMVD Hillside and 728 Melville is a family owned business managed by Chand's
sister-in-law.  *Id*. Neither Chopra nor NYC Telecommunications have any interest in Kedis,
JMVD or Melville. *Id.*, ¶¶ 85-90.

ii.    Repayment of the Loans Extended in December, 2013

On or about December 16, 2013 Kedis made a $200,000 short-term loan to Jaina. *Id.*, ¶ 84. Less than one month later, on January 9, 2014 and January 15, 2014, Jaina made two individual payments each in the amount of $100,000 to Kedis in satisfaction of the aforementioned loan. *Id.*, ¶ 84

D.    The NYC Telecommunications Transfers

GCI seeks to recover from NYC Telecommunications and Chopra $412,000 arising from a series of transfers made to NYC Telecommunications by Jaina between December 11, 2013 and December 1, 2014. TAC ¶31. One of the transfers referenced by GCI, a transfer in the amount of $6,000.00 and alleged to have occurred on December 11, 2013 does not appear in Jaina's bank records. SUMF, ¶ 64.

NYC Telecommunications Corp. d/b/a "STI Phone Card Warehouse" is a New York corporation of which Ravi Chopra is the sole shareholder, director and officer. *Id.,* ¶¶ 11-12. NYC Telecommunications is involved in the bulk sale of phone cards and phone card SIMs. *Id.,* ¶13. NYC Telecommunications is not a vendor, supplier or client of Jaina. *Id.*, ¶ 65.

Through 2013 and 2014 NYC Telecommunications made a series of direct loans and directed a third-party, Tricom International, LLC, ("Tricom") to transfer funds to Jaina on NYC Telecommunications' behalf and in satisfaction of Tricom's debt to NYC Telecommunications. *Id.*, ¶¶ 73-76.

With respect to the direct loans, in 2013 NYC Telecommunications made three loans to Jaina summarized in Table 2.

The indirect loans originated from Tricom International, LLC ("Tricom"). Charang Narang is the manager of Tricom. *Id*., ¶ 66. Tricom is involved in the sale and distribution of telecommunication products and services, including telephones and phone cards. *Id*. Tricom has never been a client of Jaina. *Id*. ¶ 67. Neither Chopra nor NYC Telecommunications have ever had an ownership interest in Tricom. *Id*. ¶¶ 68- 69. On or about September 24, 2014 Tricom purchased SIMS and prepaid phone services amounting to $182,500.00 from New York Telecommunications.  *Id*. ¶ 73. On or about October 2, 2014, Tricom purchased SIMS and prepaid phone services amounting to $148,500.00 from New York Telecommunications. *Id.,* ¶ 75.  In or about the middle of October, 2014 Tricom was directed by NYC Telecommunications to forward payment for the invoices dated September 24, 2014 and October 2, 2014 to Jaina. *Id., * ¶¶ 74, 76. It was understood that such transfers would discharge Tricom's debts to NYC Telecommunications and that the funds transferred to Jaina would be loans to Jaina owed to NYC Telecommunications. *Id*.

A summary of the funds sent by Tricom to Jaina on NYC Telecommunications' behalf appears in Table 2.

Table 2. Transfers from NYC Telecommunications to Jaina

| Date | Amount | Sender | Reference in Statement of Undisputed Material Facts |
|---|---|---|---|
| 01/04/2013 | $25,000.00 | NYC Telecommunications | ¶ 70 |
| 11/13/2015 | $100,000.00 | NYC Telecommunications | ¶ 71 |
| 11/15/2013 | $45,088.00 | NYC Telecommunications | ¶ 72 |
| 10/23/2014 | $182,500.00 | Tricom on behalf of NYC Telecommunications | ¶ 73, ¶ 74 |
| 01/22/2014 | $148,500.00 | Tricom on behalf of NYC Telecommunications | ¶ 75, ¶ 76 |
| **Total:** | **$501,088.00** | | |

E.      The STI Transfers

GCI seeks to recover from Chopra $134,000 arising from a series of transfers made to STI Consultants by Jaina between January, 2014 and October, 2014. TAC ¶ 27.  One of the transfers referenced by GCI, a transfer in the amount of $25,000.00 alleged to have occurred on September 18, 2014, was reversed.  SUMF ¶ 57.  Jaina transferred $109,000 to STI Consultants.

New York Main Street Consulting d/b/a STI Consultants is a New York company of which Ravi Chopra is the sole shareholder, director and officer.  Id. ¶ 56. STI Consultants is not a party to this action.  See TAC. STI Consultants is engaged primarily in the business of loan brokering and lending. SUMF ¶ 16. STI Consultants has never been a client of Jaina or been indebted to Jaina *Id.*, ¶¶ 61-62. Between January, 2013 and January 8, 2014 STI Consultants made three loans, summarized in the table below, to Jaina totaling $129,500.00.

Table 3. Transfers from STI to Jaina

| Date | Amount | Sender | Reference in Statement of Undisputed Material Facts |
|------|--------|--------|------------------------------------------------------|
| 01/04/2013 | $20,000.00 | STI | ¶ 58 |
| 01/10/2013 | $9,500.00 | STI | ¶ 59 |
| 01/08/2014 | $100,000.00 | STI | ¶ 60 |
| **Total** | **$129,500.00** | | |

F.      The Analysis Performed By GCI

Mr. Govind Vanjani is the president of GCI, a Delaware corporation, that generates income from collecting on its outstanding accounts receivable. *Id.,* ¶ 93. Mr. Vanjani compiled the list of transactions that form the basis of Geo-Group's complaint.  *Id.,* ¶ 94. Mr. Vanjani's educational background includes an engineering degree obtained in 1968 but no certifications in finance, accounting or forensic accounting. *Id.,* ¶¶ 95-96. Mr. Vanjani compiled the transfers contained in the complaint without the benefit of consulting an accountant, forensic accountant

or a bookkeeper. *Id.,* ¶ 97. The source material he consulted to was limited to Jaina's bank statements and tax returns. *Id.,* ¶ 98. Mr. Vanjani testified that he did not consult any of the following: Jaina's accounts payable, Jaina's accounts receivable, any listing of Jaina customers or any listing of Jaina's lenders. *Id.*, ¶¶ 99.  Jaina was never made a party to this action nor was it ever served with a subpoena to produce documents.  See TAC.

During his review of Jaina's financial statements Mr. Vanjani did not recall seeing any deposits into Jaina's bank account that could be attributed to either NYC Telecommunications or STI Consultants. SUMF, ¶ 100. Relative to such deposits by NYC Telecommunications and STI Consultants he conceded that Jaina, NYC Telecommunications and STI Consultants would be best placed to state the nature of the transactions that resulted in deposits. *Id.*, ¶¶ 101- 102.

With respect to the Robinson Brog Transfer, Mr. Vanjani stated that he never undertook to contact Robinson Brog and that there exists no documentation evidencing any indebtedness on the part of Chopra to Robinson Brog. *Id.*, ¶¶ 103, 107.


With respect to his financial analysis of Jaina, Mr. Vanjani concluded that Jaina did not become insolvent until the end of December, 2014. ¶ 105. Mr. Vanjan also acknowledged that Jaina was generating sufficient income to fund its operations until December 8, 2014. Id. ¶ 106

<u>ARGUMENT</u>

## I.    **NONE OF THE TRANSFERS WAS CONSTRUCTIVELY FRAUDULENT**

The First Count of GCI's Complaint seeks to avoid the Transfers on the basis that they are constructively fraudulent. To successfully challenge a transfer of a debtor's property as being constructively fraudulent it must be shown that the transfer was made without fair consideration and (1) the debtor was insolvent or was rendered insolvent by the transfer, NYDCL § 273 (2) the

debtor was left with unreasonably small capital, *Id.*, § 274 or (3) the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured. *Id.*, § 275; See also *In re Sharp Intern. Corp*, 403 F.3d 43, 53 (2d Cir. 2005).  GCI has only pleaded claims under only NYDCL §273 and NYDCL §274. Accordingly, a determination that the Transfers were for fair consideration would be entirely fatal with respect to GCI's claim for constructive fraud and a determination that, even if the transfers were not for fair consideration, that Jaina was either solvent or disposed of sufficient capital would necessarily preclude a finding under, respectively, NYDCL §273 and NYDCL §274 that the transfers were constructively fraudulent.

In the instant matter, all the transfers were made for fair consideration.  Further, GCI has failed to sufficiently plead Jaina's insolvency and failed to sufficiently plead that Jaina was left with unreasonably small capital as a result of the transfers. To the extent that such pleading is deemed sufficient, the record reveals that Jaina was solvent and disposed of sufficient capital after the transfers.

A.    All of the Transfers Were Made For Fair Consideration

A recipient of a debtor's property provides fair consideration by either conveying property or discharging antecedent debt, provided that such exchange is a "fair equivalent" of the property received or discharged.  NYDCL § 272; See also *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 638 (2d Cir. 1995) ("value is present if the debtor receives a fair equivalent in exchange for its property or obligation"). A conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another. *Daelim Trading Co., Ltd. v. Giagni Enterprises, LLC*, 2014 WL 6646233 *7 citing *Ultramar Energy v. Chase Manhattan Bank*, 191 A.D .2d 86, 90–91 (1st Dep't 1993); See also *In re Sharp Intern. Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) "a mere preference between

creditors does not constitute bad faith"; See also *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995) "even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because '[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them'"

The record is irrefutable, each of the Transfers was made for fair consideration.

i.      The Robinson Brog Transfers

GCI alleges that $1,350,000 was transferred by Jaina to the law firm of Robinson Brog without fair consideration and in satisfaction of Chopra's debt to Robinson Brog. TAC ¶ 23. Implicit in GCI's averment is that the Robinson Brog was the actual recipient of the funds. However, the record reveals that funds were periodically transferred to Robinson Brog's escrow account for the benefit of Vision Impex and in partial satisfaction of intermittent loans totaling $1,711,970.0 that had been loaned to Jaina directly by TD Time, Vision Impex and, on Vision Impex's instructions, by TD Time. SUMF, ¶¶ 34-47. The loans were originated by Jaina's external accountant and are evidenced by documentary evidence in the form of wire transfers and notations in the bank account of Jaina. *Id.*

ii.     The STI Transfers

GCI alleges that $134,000.00 was transferred to STI Consultants, an entity owned by Chopra, without consideration or evidence of any antecedent loan or other debt incurred by Jaina.  TAC, ¶ 27. GCI's analysis of Jaina's bank statements with respect to the STI Transfers is flawed as a transfer alleged to have occurred on September 18, 2013 was reversed and the actual cumulative amount transferred to STI was $109,000.00.  SUMF, ¶ 57.

STI Consultants is not and has never been a client of Jaina and has never been indebted to Jaina. *Id.*, ¶¶ 61-62. The uncontradicted record establishes that STI Consultants loaned $129,500.00 between January, 2013 and January, 2014.  *Id.*, ¶ 58-60. Payments made to STI Consultants were made in partial satisfaction of Jaina's antecedent debt owing to STI Consultants. *Id.*, ¶ 63.

iii.    The NYC Telecommunications Transfers

GCI alleges that $412,000.00 was transferred to NYC Telecommunications without fair consideration. Again, GCI's accounting is faulty as there is no evidence as to a transfer in the amount of $6,000.00 referenced in GCI's complaint as having been made by Jaina on December 11, 2013. *Id.*, ¶ 64.

Relative to the purpose of the transfers, they were made partial satisfaction of loans made to Jaina totaling $501,088.00. *Id.*, ¶¶ 70-76. Defendants have shown by way of deposition testimony, affidavit and documentary evidence that $170,088.00 of the funds originated directly from NYC Telecommunications and that $331,000.00 was sent by Tricom to Jaina on behalf of NYC Telecomm. *Id.* Neither NYC Telecom nor Tricom are or have ever been clients of Jaina. *Id.*, ¶¶ 65, 67.

iv.    The LLC Transfers

The LLC Transfers arise out of two transactions. The first transaction relates to debt incurred on behalf of Jaina by Neminath. Neminath, an affiliated company of Jaina, pledged certain real property it owned and contracted a loan in the amount of $600,000 from Kedis. The proceeds, less the loan costs, were forwarded to Jaina. *Id.*, ¶¶ 80-82. Thereafter Kedis directed that the loan repayments, totaling $660,000.00, be made to JMVD and Hillside. *Id.*, ¶¶ Id. 83.

The second transaction relates to repayment of direct loans made to Jaina.  On December 16, 2013 Kedis made a direct loan to Jaina in the amount of $200,000 which was repaid through the two wire transfers each in the amount of $100,000 that occurred on January 9, 2014 and January 15, 2014. *Id.*, ¶¶ 84.

B.      GCI Has Failed to Plead Insolvency and the Record Reveals Jaina Was Solvent at the Time of the Transfers

NYDCL §273 provides that a conveyance is constructively fraudulent if the debtor is either solvent or rendered insolvent by the disputed transfers. The NYDCL provides that a person is insolvent "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NYDCL § 271(1; *McCarthy v. Estate of McCarthy*, 145 F.Supp.3d 278, 285 (S.D.N.Y. 2015). The 'operative reference point for determining insolvency is the time at which the transfer took place' " and " 'insolvency of the transferor... cannot be presumed from subsequent insolvency at a later point in time.' *McCarthy* at 287 (citation omitted). In *In re Trinsum Group, Inc., 460 B.R. 379* (Bankr. S.D.N.Y. 2011) the Court stated that "for the purpose of New York constructive fraudulent conveyance law, insolvency is analogous to the Bankruptcy Code's definition, which requires some sort of 'balance sheet' test or information provided that the Court can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place".  *In re Trinsum* at 392. To do so "there should be information as to the level of liquidity of the transferor's assets and often there is valuation provided of a company's assets or probable liabilities when trying to prove the element". *Id.* at 39,( citations omitted).

GCI's complaint is wholly silent with regards to the solvency of Jaina and avoids any direct use of the term "solvency", its variants or any accounting equivalent. While GCI may have

initially benefited from a presumption of insolvency based on its assertion that the complained of transfers were for no consideration it can no longer continue to do so as Defendants have shown that fair consideration was provided. GCI details dozens of transfers between June 5, 2013 and December 26, 2014. However, GCI's complaint only states that as a result of the transfers Jaina effectively ceased operations in January, 2015. GCI's complaint is utterly devoid of any of the information detailed in *In re Trinsum* that would allow the Court to make a determination of the state of solvency of Jaina at the time of each transfer or to make a determination as to when, if ever, Jaina actually became insolvent.

While GCI has failed to plead insolvency its representative has offered deposition testimony to the effect that Jaina only became insolvent at the end of December, 2014.  SUMF, ¶ 105. This is in itself should be fatal to GCI's claims under NYDCL 273 with respect to both Chopra and NYC Telecommunications as the last transfer made with respect to them occurred on December 1, 2014. TAC ¶31.

C.     GCI Has Failed to Plead that the Transfers Left Jaina With Unreasonably Small Capital and the Record Reveals that Jaina Disposed of Sufficient Capital to Continue its Operations

Under NYDCL § 274 a plaintiff must plead facts supporting the allegation that at the time of the transfers, the Debtor was engaged in or about to engage in a business or a transaction that would leave it with unreasonably small capital.  To determine whether a debtor disposed of "unreasonably small capital," a "court will consider such factors as company's debt to equity ratio, its historical capital cushion, the need for working capital in specific industry at issue, and whether company's projections were reasonable and prudent when they were made". *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007) (citations omitted). See also *In re Bergman, 293 B.R.* 580, 584 (Bankr. W.D.N.Y. 2003) (citations omitted) the test of

"unreasonably small capital" is "reasonable foreseeability," evaluated by an objective standard anchored in projections of cash flow, sales, profit margins, and net profits and losses, including difficulties that are likely to arise).

As with the issue of insolvency, GCI's complaint makes no overt reference to Jaina ever actually disposing of "unreasonably small capital" and does not provide a tripwire date that would allow the Court to determine when such a financial state arose. GCI only asserts that by January, 2015 Jaina had terminated operations. GCI makes no allegation to the effect that other creditors of Jaina were unpaid. This alone should warrant judgment dismissing GCI's NYDCL §274 claim. See *In re Operations NY LLC.*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013) where the Court dismissed a constructive fraudulent claim to the extent it was based on the 'unreasonably small capital test" where the complaint did not allege that the Debtor failed to pay any other debts or that it lacked the capital to do so and did not allege any facts relating to Debtor's sales, its ability to generate cash or its ability to pay its debts and sustain them.

To the extent that if may be determined that GCI has pleaded "unreasonably small capital" the testimony of GCI's representative contradicts that pleading.  GCI's representative has conceded that Jaina disposed of sufficient capital to continue operations until mid-December, past the date of the last transfer complained of with respect to Chopra and NYC Telecommunications which occurred on December 1, 2014. SUMF, ¶ 106; TAC ¶ 31.

## II.    NONE OF THE TRANSFERS WAS MADE IN AN ATTEMPT TO DELAY, HINDER OR DEFRAUD

To prevail under NYDCL § 276 a party must show an actual intent to delay, hinder, or defraud present or future creditors. Actual intent must be based on fact and cannot rest on mere

suspicion. *In Re Kovler*, 249 B.R. 238, 244 (Bankr. S.D.N.Y. 2000) Such intent must be established by clear and convincing evidence. *U.S. v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994). Such intent may be established by a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; and retention of control of the property by the transferor after the conveyance."   *Id.* at 327.  See also *HBE Leasing*, 48 F.3d at 639 ("Actual fraudulent intent may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction.")

None of the aforementioned badges of fraud are present with respect to any of the transfers.

A.     The Robinson Brog and LLC Transfers

With respect to the Robinson Brog Transfer there is no evidence on the record of any relationship between the transferor, Jaina, and the direct and indirect transferees, Vision Impex and TD Time. Further, the intermittent nature of the transfers to Robinson Brog corresponds to period of time over which funds were loaned to Jaina and the consideration received by Jaina exceeded that which it repaid. TAC ¶ 23, SUMF, ¶¶ 34-47. Finally, there is nothing on the record, or for that matter any allegations in the complaint, that would support the contention that Jaina, or any party related to Jaina, retained any control of the funds that were transferred to Robinson Brog

Similarly, with respect to the LLC transfers, there is no evidence on the record of any relationship between Jaina and either JMVD, Hillside or Melville. The funds transferred represented payment, including interest, of a direct loan to Jaina and a documented loan made to an affiliate of Jaina, Neminath, which thereafter wired the proceeds to Jaina.  SUMF,  ¶¶ 80-84.

As with all the complained of transfers there is no allegation that Jaina or any party controlled by Jaina retained control over any of the funds that were transferred to the LLCs.

B.      The STI Consultants and NYC Telecommunications Transfers

GCI's complaint attempts to manufacture the various badges of fraud with respect to Chopra and includes allegations that he was negotiating to become a shareholder of Jaina, implies that he was authorized to negotiate a binding settlement on behalf of Jaina and that, when he directed or requested that transfers be made, Jaina, including, co-defendant Mahendra Shah, abided by those directions or requests.  TAC ¶¶ 71-72, 74, 81-83.

None of these allegations is supported by the record.

Chopra was not negotiating to become a shareholder with Jaina. SUMF, ¶ 6. GCI's representative has conceded that there is no factual basis for this allegation but rather that it arose as a suspicion on his part because of Chopra's involvement with Jaina. *Id.*, ¶ 108.

GCI attempts to imply that Chopra had the authority to bind Jaina in negotiations. He did not. Final decisions regarding the parameters of an acceptable settlement were to be determined by Jaina. *Id.*, ¶ 109.

GCI also alleges that Chopra directed the various transfers but also concedes that there exists no emails, letters, written communications, voicemails, or electronic messages evidencing that he ever directed a transfer. *Id.*, ¶ 104.

While GCI alleges, and Chopra has not denied, that he was aware of the existence of the judgment such knowledge is irrelevant in light of the fact that the two entities he owned, NYC Telecommunications and STI Consultants were creditors of Jaina and monies were transferred to those entities in satisfaction of that debt. In this regard, a review of factual circumstances in *In re Sharp* is merited as it is demonstrative of the extent to which repayment of an antecedent debt is

neither constructively or actively fraudulent. In *In re Sharp* the shareholders of the debtor, Sharp International, falsified numerous financial data. In the course of time one of the noteholders of Sharp, State Street, became aware of the fraud and "demanded and obtained Sharp's agreement to secure new financing from investor's unaware of the fraud, and to use that financing to pay off State Street's line of credit". *In Re Sharp* at 47. The bankruptcy trustee sued for, inter alia, constructive and actual fraud. The lower court dismissed the suit and thereafter the Second Circuit affirmed the lower Court's dismissal noting that the payment to Sharp was at most a preference between creditors and did not hinder, delay, or defraud either present or future creditors. *Id.* at 56. It is of note that even State Street's affirmative actions in demanding that Sharp obtain financing from a third party who, in all probability would suffer irremediable financial injury, was insufficient to maintain an action under NYDCL ¶ 276. See also *Daelim Trading Co., Ltd. v. Giagni Enterprises, LLC*, 2014 WL 6646233 *7 (S.D.N.Y. 2014) reiterating that *In Re Sharp* "the Second Circuit held that repayment of a debt 'was at most a preference between creditors' and did not 'hinder, delay or defraud either present or future creditors'". As has been more pithily stated, "the vigilant creditor is entitled to the advantage secured by his watchfulness and attention to his own interests. *Skyline Potato Co., Inc v. Hi-Land Potato Co., Inc.*, 909 F.Supp.2d 1225, 1247 (D. New Mexico 2012) citing *Blennerhassett v. Sherman*, 105 U.S. 100, 117, 26 L.Ed. 1080 (1881) , 105 U.S. 100, 117, 26 L.Ed. 1080 (1881).

## III.    NO LIABILITY CAN BE IMPUTED TO CHOPRA AS HE WAS NEVER A TRANSFEREE OR BENEFICIARY OF ANY OF THE TRANSFERS

In the manner of some incantation that would impute liability to Chopra, GCI avers with regularity that "the transfers were made at the direction or request of Mr. Chopra".  In doing so, GCI has entirely misapprehended both the scope and purpose of the NYDCL. The creditor's remedy in a fraudulent conveyance action is "limited to reaching the property which would have

been available to satisfy the judgment had there been no conveyance… therefore there can be no action for damages against a party who did not receive any of the property sought by the creditors". *Roselink Investors, LLC v. Shenkman,* 386 F.Supp.2d 209, 227 (S.D.N.Y. 2004) aff'd, 99 F.3d 401, 1995 WL 737512 (2d Cir. 1995). A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance. *Fundacion Presidente Allende v. Banco de Chile*, 2006 WL 2796793, at *3 (S.D.N.Y. 2006) (citations omitted). "An action for fraudulent conveyance does not create an independent remedy of money damages against third parties who aided the debtors transfer at all…The New York Court of Appeals recently explicitly rejected the contention that New York law 'created a creditor's cause of action in conspiracy, assertable against non-transferee or non-beneficiaries solely for assisting in the convey of a debtor's assets". *Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 737 (S.D.N.Y. 1993) (citations omitted). With respect to every transfer alleged, Chopra was neither a recipient nor a beneficiary.

A.     The Robinson Brog Transfers

GCI's keystone and sole averment which implicates Chopra as a direct beneficiary is that the Robinson Brog Transfers were in satisfaction of a debt that Chopra owed to the law firm of Robinson Brog.  TAC ¶ 24. However Vision Impex,  a third party, has testified that Robinson Brog was acting as their attorneys, that Vision Impex was the actual beneficiary and that the funds were transferred in partial satisfaction of Jaina's antecedent debt.  *SUMF*, ¶ 50. Robinson Brog itself has corroborated this, confirming that it held the funds on behalf of Vision Impex. *Id.* Removing any doubt as to actual identity of the beneficiary, Robinson Brog has also stated that neither Ravi Chopra nor NYC Telecommunications have ever been indebted to Robinson Brog

nor have they ever actually been clients of Robinson Brog. *Id.*, ¶¶ 18-21. Highlighting the baselessness of GCI's claim is its own admission that it never attempted to contact Robinson Brog with respect to the transfers and merely presumed that Chopra was indebted to the same. *Id.*, ¶ 107.

B.      The LLC Transfers

GCI avers that Chopra is jointly and severally liable for the LLC transfers because he directed or requested that Jaina make such transfers. However, as per *Geren*, a fraudulent conveyance action only lies with the transferee and GCI's own complaint avers that the transfers were made to 728 Melville, Hillside and Kedis.  TAC ¶¶ 37, 44, 51, 52. In an earlier motion to dismiss, an affidavit was submitted by Sanjiv Chand wherein he acknowledged that Kedis and Hillside were owned by him, that JMVD was owned by a family member and that none of the funds were received by any of the other defendants in this action. Neither Ravi Chopra nor NYC Telecommunications have ever had an interest in any of the LLC transferees. *SUM*, ¶¶ 85-90.

C.      The NYC Telecommunications Transfers and the STI Transfers

While not explicitly asserting alter ego liability GCI's complaint appears to impute such liability to Chopra on the basis of his ownership of STI Consultants and NYC Telecommunications. The relevant allegations from GCI's Third Amended Complaint are reproduced below:

28. The payments were for the benefit of Mr. Chopra, who owns STI Consulting and STI Phone Card. They were the functional equivalent of payments made directly to Chopra and for his sole benefit.

33. The payments were for the benefit of Mr. Chopra, who, directly or indirectly, is NYC Telecom's principal owner.

Neither allegation is sufficient to pierce the respective corporate veils of STI Consultants or NYC Telecommunications and impose liability upon Chopra.  Both entities enjoy a separate legal existence from Chopra and it is "well settled law that the avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form". *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 162, 412 N.E.2d 934, 941, 432 N.Y.S.2d 879, 886 (1980). New York "allows individuals to incorporate for the very purpose of avoiding personal liability". *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989). New York Courts are reluctant to disregard the corporate entity. *Id*. See also *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005) "courts should permit veil piercing only under 'extraordinary circumstances'").

To pierce the corporate veil it must be shown that the (i) the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that the injured the party seeking to pierce the veil". *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (1997 2d Circuit)(citations omitted). Both of these factors must be satisfied. *Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F.Supp.2d 177, 195 ( E.D.N.Y. 2009)

A party seeking to pierce the corporate veil may not rely on conclusory statements but must allege specific facts. *Sysco Food Service of Metro New York, LLC v. Jekyll & Hyde, Inc.*, 2009 WL 4042758 *3 (S.D.N.Y. 2009). Allegations consisting of "little more than labels and conclusions that reflect formulaic recitations of the elements of a cause of action are insufficient to state an alter ego claim". *Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*, 552 Fed.Appx. 13, 15 (2d Cir. 2014).  See also *In re Currency Conversion Fee Antitrust Litig.*, 265

F.Supp.2d 365, 426 (S.D.N.Y. 2003)  "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard [under Rule 8(a)]."). In the instant matter, Chopra has detailed at length that none of the complained of transfers was actually fraudulent. Further, and obviating the need to make a determination of the nature of the transfers, GCI cannot make the requisite showing of domination.

Both NYC Telecommunication and STI Consultants are stock corporations entirely owned by Chopra. SUMF, ¶¶ 12, 15. Chopra also serves as the sole director and officer of each entity. *Id.* Multifactor alter ego analyses have been advanced for complex arrangements of shareholders, directors and officers. However, when evaluating the issue of domination with respect to individual shareholders, courts have considered: (1) the absence of corporate formalities normally attendant on corporate existence, such as issuance of stock, election of directors, keeping of corporate records, and so forth; (2) inadequate capitalization; (3) the intermingling of corporate and personal finances; and (4) the amount of business discretion displayed by the purported alter ego corporation." *American Lecithin Company v. Rebmann*, 2017 WL 4402535 (S.D.N.Y. 2017) * 8 citing *In re Lyondell Chemical Co.*, No. 09-10023 (REG), 2016 WL 74649, at *14 (Bankr. S.D.N.Y. 2016). The analysis does not occur within a rigid framework as, with respect to small privately held corporations, "the trappings of sophisticated corporate life are rarely present and we must avoid an over-rigid preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history". *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 18 (2d Cir.1996) (citations omitted).  The determinative fact is whether the corporation is a dummy for its individual stockholders who are in reality carrying on the business in their personal capacities for

23

purely personal rather than corporate ends. *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d

652, 656–57, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976). See also *American Lecithin Company v.*

*Rebmann*, 2017 WL 4402535 *8 (S.D.N.Y. 2017) "the critical inquiry i[n] determining whether a

corporation is a 'shell' company is whether it is being used by the alleged dominating entity to

advance its own personal interests as opposed to furthering the corporate ends."

Despite having been afforded the opportunity to amend its Complaint on no fewer than

three occasions GCI's Complaint is devoid of any of the allegations that would support a finding

of domination. GCI only maintains that Chopra is the owner of the entities that received various

transfers and that as the owner those payments accrued to his benefit. TAC ¶¶ 28, 33, 71-72.

GCI's Complaint makes no allegations, of even a conclusory nature, with respect to a failure to

adhere to corporate formalities, inadequate capitalization, intermingling of finances, or the

amount of business discretion exercised by the entities. Where there is an absence of such

allegations dismissal is warranted. See *Zinaman v. USTS New York, Inc.*, 798 F.Supp. 128

(S.D.N.Y 1992) dismissing an alter ego claim that only alleged ownership but failed to make

reference "to the factors typically considered in applying the alter ego theory, such as the

absence of formalities in corporate decision making, and inadequate capitalization". See also

*J.B.I. Industries, Inc. v. Suchde,* F.Supp.2d (S.D.N.Y. 2000) dismissing a complaint on the basis

of a failure to allege veil piercing factors.

Further, with respect to the determinative factor as to whether the corporation was being

used solely for Chopra's personal ends, the complaint is entirely silent. This absence alone merits

dismissal of the claims against Chopra. See *Novak v. Scarborough Alliance Corp.*, 481

F.Supp.2d 289 (S.D.N.Y. 2007) dismissing plaintiff's veil piercing claim as there was no

allegation that the individual defendant "used the corporate defendants to accomplish 'his own and not the corporation's business'".

## IV.    GCI'S CLAIM WITH RESPECT TO THE STI TRANSFERS FAILS AS A MATTER OF LAW

GCI seeks to impose alter ego liability upon Chopra for transfers in the amount of $134,000.00 made to STI Consultants (the STI Transfers). TAC ¶ 27. In *Morris v State Dept. of Taxation and Finance*, 82 NY2d 135, 603 NYS2d 807, 623. NE2d 1157 the Court of Appeals noted that underlying alter ego liability is the assumption "that the corporation itself is liable for the obligation sought to be imposed". *Morris* at 141. The Court further stated that "such liability does not constitute a cause of action independent of that against the corporation; rather it is assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners". *Id.* It is apparent that a party whose veil is to be pierced must be a party to the action.   See *Popowich v. Korman*, 73 A.D.3d 515 (1st Dep't, 2010) finding an individual defendant not liable under alter ego theory where the corporation whose veil was sought to be pierced was not made a party to the action. See also *Stewart Tenants Corp. v. Square Indus.*, 269 A.D.2d 246, 248, 703 N.Y.S.2d 453 (1st Dep't, 2000) "An action to pierce the corporate veil requires that the purported dummy corporations be parties".

In the instant matter, GCI has pleaded that STI Consultants is a separate corporate entity from Chopra and NYC Telecommunications. TAC ¶ 14.  Despite this knowledge, however, GCI has never joined STI Consultants as a party to this action. In light of the determination in *Morris* that alter ego liability is not an independent cause of action and the fact that STI Consultants is not a party to this action, no alter ego liability can be imputed to Chopra for the transfers to STI Consultants.

25

<u>CONCLUSION</u>

For the reasons set forth above, as well as in the Memorandum of Law in Support of

Defendants Vipin Shah's and Mahendra Shah's Motion for Summary Judgment, incorporated

herein by reference, defendants Ravi Chopra and NYC Telecommunications respectfully request

that this Court grant their motion for summary judgment dismissing all claims against Ravi

Chopra and NYC Telecommunications.


Dated: December 8, 2017
      New York, NY                 /s/ Humayun Siddiqi
                                   ---------------------------------
                                   Humayun Siddiqi, Esq.
                                   11 Broadway, Suite 853
                                   New York, NY 10004
                                   Tel. 646-688-3553

                                   *Attorney for Ravi Chopra and NYC*
                                   *Telecommunications Corp.*