UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEO-GROUP COMMUNICATIONS.<br><br>                            Plaintiff,<br><br>       v.<br><br>RAVI CHOPRA; MAHENDRA SHAH; VIPIN SHAH; 728 MELVILLE PETRO LLC; KEDIS ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC TELECOMMUNICATIONS CORP.; and SHALU SURI,<br><br>                            Defendant. | Case No. 15-cv-01756 (KPF)<br><br> |

## Affidavit of Mahendra Shah

1. Jaina systems network Inc. (JSN) was founded on May 2002. It had four shareholders:
   1. Surajit Bose (Bose): 25% Partner/ Shareholder, Founder, all in charge and in effect CEO and Mahendra Shah's boss
   2. Mahendra Shah (M. Shah): 25% Partner/shareholder and (President on paper).
   3. Nayana Shah: partner/shareholder (25%).
   4. Frank Vella: partner/shareholder (25%). **(Exhibit 201)**
2. JSN's main business was to buy minutes from suppliers at wholesale pricing and selling it to retailers for approximately a premium of one tenth to one thirtieth of a penny per minute. JSN had a 30/60 credit arrangement from various suppliers, for example JSN would have 60 days to pay back its suppliers for the wholesale minutes the suppliers provided. When JSN received payments from its customers, JSN paid off its suppliers. JSN this way functioned very well from 2002 to 2010.
3. In about 2008 two of JSN's customers (Skynet and TNE) **(Exhibit 202)** went bankrupt and defaulted on their payments to JSN. The default was in amount of about $ 1,350,000. JSN had no reserves to repay the suppliers and the suppliers in turn stopped the 30/60-day credit to JSN. From then on JSN had to pre-pay to its suppliers.
4. This caused severe cash crunch and forced JSN to borrow money from various lenders. JSN could not get fast funding from established lenders as it had no collateral to offer.
5. In desperation M. Shah took home-equity line and took money from his personal savings and retirement accounts to meet JSN's short-term financial obligations. (This ultimately led to M. Shah having to file personal bankruptcy.)
6. The cash crunch continued, and this forced JSN to go to secondary and tertiary market to get funding for its short-term financial obligations. The List of Lenders was exhaustive and included the following.
   - Vision Impex.
   - T D Time
   - STI Consulting
   - NYC Telecom
   - Ravi Chopra
   - 728 Melville: Petro LLC.
   - JMVD Hillside.
   - Kedis Corporation.
   - Vipin Shah.
   - Govind Vanjani.
   - Many others.
7. The problem with secondary and tertiary markets is that there are usually no written agreements and interest rates are very very high. This started the downward spiral for JSN and ultimately JSN was unable to pay various lenders and suppliers. One such supplier was Mr. Govind Vanjani (Geo Group). This downward spiral ultimately led to the demise of JSN.
8. During the peak crisis in mid and late 2014, when JSN started to spiral down. Bose started negotiating with Mr. Govind Vanjani (Geo Group). Mr. Govind Vanjani (Geo Group) wanted all JSN partners to provide personal guaranty. **(Exhibit 203).**

1

9. When the Partners refused to sign personal guarantee. Bose started negotiating individually Mr. Govind Vanjani (Geo Group) to see if he could get financing and partnership with Mr. Govind Vanjani (Geo Group) and eliminate M. Shah, Ms. Nayana Shah, Frank Vella. (Frank Vella resigned as an officer of Jaina in 2011, but still holds his 25% share in Jaina). **(Exhibit 204)** somewhere about this time Bose sent sensitive company documents to Mr. Vanjani **(Exhibit 205 para 12, line 2)** to help Vanjani file the present complaint against everybody except Mr. Bose. **(Exhibit 206 para 11, line 7,8,9.)** This led to a second Forbearance agreement and stipulation of settlement between Geo Group and Bose individually dated January 2015—drafted by Mr. Govind Vanjani's attorney. **(Exhibit 207).**

10. Bose subsequently left the country in May 2015. Bose resigned as CEO of JSN on 10/29/2015. **(Exhibit 208)** letting M. Shah, partners of Jaina and all suppliers, lenders, partners including M. Shah holding the bag. Bose returned in about May 2016 asking if he could take some computer hardware, so he could start a business with some other partner. He was upset when M. Shah refused to hand over the requested computer hardware.

### About Jaina Partners and Shareholders.

11. <u>Surajit Bose (Bose):</u>

a) Founder, all in charge CEO of Jaina. Jaina Systems Network Inc. was the brainchild of Bose. Bose founded and ran all the operations of the entire company on a day-to-day basis from its inception until 10/29/2015. He introduced and dealt with all the vendors, lenders and customers on a day to day basis. He brought all the equipment and set up the entire company. Bose was in effect Mahendra Shah's boss. **(Exhibit 209)** page 4, para 9 lines 8-12 "Mr. Bose, Jaina's founder and top officer (CEO) was and is clearly still M. Shah's boss." and para 10 lines 3-6, "I can personally attest to the fact that Mr. Bose was a very hands on knowledgeable follower of the amounts being owed and paid to all Jaina's suppliers. Indeed, it was he during the period of GCI's dealings with Jaina who personally wired the money due to all carriers from his blackberry." page 6, para 17, line 2 "Two years and two months after that invoice, Jaina's founder and CEO---")

b) Bose is a citizen of India and does not have US citizenship or green card, Bose told M. Shah that he did not have legal papers to own Jaina, therefore he nominated M. Shah as President of Jaina to sign all checks, wire funds and sign contracts and tax returns for JSN.

c) Bose had a company of his own in India called Jaina Systems Network India Ltd that provided all logistics, accounting from approximately 2009 to 2015 for JSN. None of the other shareholders/partners were involved in Bose's India company. Bose managed all JSN employees. At one-time JSN had 38 employees in India and 2 in USA. **(Exhibit 204)**. Bose and his company in India did all the bookkeeping for JSN until March 2015 **(Exhibit 210)**. Bose dealt with and provided financial information to various CPAs to file taxes for JSN. Bose's India Company charged Jaina about $1,500,000 for these services during this period.

d) Bose introduced Geo group (Mr. Vanjani) to JSN and developed close business relationship with Mr. Govind Vanjani (Geo Group). He had extensive day to day dealings with Mr. Govind Vanjani (Geo Group) and overtime they developed a close personal (father-Son type) relationship.

2

e) Bose had extensive business dealings with all the lenders. Whenever JSN needed finances for meeting its short-term financial obligations, Bose would go to these lenders and get loans for JSN and when Jaina had enough finances he would ask M. Shah to write a check or wire funds to repay loans of various lenders/entities.

f) It is interesting to note that even though all the dealings between JSN and Geo Group were essentially conducted by Bose and Vanjani. Mr. Bose is not named in the current lawsuit (TAC).

g) <u>From 2002 to 2015 Bose's primary business was Jaina.</u>

12. <u>M. Shah:</u> (President) Please see Mahendra Shah Statement at the bottom of this document.

13. <u>Ms. Nayana Shah:</u> She was just a 25% partner/shareholder in the company and never got involved in day to day operations of JSN. She on few occasions wrote checks and transferred funds from the joint account she held with her husband, Vipin Shah, as a loan to Jaina to help meet JSN's short-term financial obligations. This she did at the direction of V. Shah.

14. <u>Frank Vella:</u> He was just a 25% partner/ shareholder in the company and never got involved in the day to day operations of JSN. He left the company in 2011. He continues to hold 25% shares in JSN.

15. <u>Vipin Shah</u> (V. Shah):

a) V. Shah was lender / funder **(Exhibit 209** paragraph 11, page 5 line 2 "his purpose in copying the e mail to Vipin Shah, an important Jaina funder" [please note that Govind Vanjani did not use the word INSIDER]) to JSN. Whenever JSN needed short-term loans, Bose would first go to V. Shah. Then V. Shah either loaned the money to JSN personally or through his wife Ms. Nayana Shah or he personally obtained loans from his contacts, relatives and friends and gave loan to JSN. He even borrowed money from his home equity line at a lower interest rate and turned around and loaned the money to JSN at a higher interest rate of 9%.

b) V. Shah is M. Shah's brother and husband of Ms. Nayana Shah. V. Shah himself was never a partner, shareholder or insider of JSN. V. Shah did not share shareholders, directors, officers or members with Jaina. His only involvement with JSN was when JSN needed loans, Bose would ask V. Shah for loan and V. Shah would loan money to JSN. V. Shah also had some knowledge of Telecom industry and provided his opinion when asked. <u>Whether one considers V. Shah as an insider or outsider, the truth is that he loaned Jaina $1,990,200 and was repaid only $ 685,603 of antecedent loan. He was not a beneficiary, He was a maleficiary / giver.</u>

17. <u>Ravi Chopra (Chopra)</u>: Chopra was a lender, a finance broker and a negotiator for JSN. Whenever JSN needed funding to meet its short-term financial obligations (bridge loans), Bose would approach Ravi Chopra and Ravi Chopra either loaned money personally, through his various companies or to other individuals from his contact list. Ravi Chopra loaned money to JSN based on guarantee and personal relationship of V. Shah. Ravi Chopra or his companies did not share shareholders, directors, officers or members with Jaina. Ravi Chopra was never an insider or shareholder or partner **(Exhibit 211)**. When Bose wanted to return the loan back to Chopra, at that time Chopra would direct Bose who to write

3

check to and then Bose would tell M. Shah who to write that check or wire that fund to pay the antecedent loan. There never were any business talks between Mr. Chopra and M. Shah. <u>Mr. Chopra never directed M. Shah to transfer any money to anyone PERIOD</u>.

18. **Robinson Brog:** Robinson Brog was the attorney/ law firm for Vision Impacts (CEO: Dalip Kumar). In 2013 -2014, when Bose needed funding to meet short-term financial obligations of JSN, Bose obtained these loans from Vision Impacts and its business associate TD time. And when the time came to satisfy the loans Bose was told by Vision Impacts to satisfy the loans by transferring funds to their attorney Robinson Brog. Robinson Brog did not share shareholders, directors, officers or members with Jaina and was never an insider, partner, shareholder of JSN. Robinson Brog does not know Ravi Chopra and has no business or personal relationships with Ravi Chopra. Ravi Chopra never asked Bose or M. Shah to send funds to Robinson Brog. **(Exhibit 212)**

19. **LLC Defendants:**
    a) Jaina borrowed in December 2013. $ 200,000 from Kedis Enterprises which is owned by Sanjiv Chand Jaina then repaid that loan to Kedis a month later in January 2014.
    b) The second time on January 2013 when Jaina needed $ 600,000 I had Neminath borrow that money from Kedis Enterprises (Sanjiv Chand) giving Neminath's real estate as collateral. Neminath then turned around and gave that money ($570,000) to Jaina within a month.
    c) Jaina then satisfied its loan obligation to Neminath Inc. by paying $660,000 which included interest, directly to JMVD Hillside and 728 Melville Petro LLC as per instructions from Kedis. Again, Jaina transferred funds as per instructions from Bose to satisfy antecedent loans taken on behalf of Jaina. **(Exhibit 213)**
    d) When Jaina repaid loan and interest of $ 460,000 to 728 Melville Petro in October 2014 and $ 200,000 to JMVD Hillside in July 2014, I, M. Shah, did not know that these entities belonged to Sanjiv Chand. I was always under the impression that Jaina still owed $600,000 to Neminath and in turn Neminath still owed (Kedis Enterprises) Sanjiv Chand $ 600,000.
    e) So, when I sold the building to Williston Park LLC, I thought that I sold the building for $1,025,000 of which $ 600,000 was towards the loan that Neminath took for Jaina but never repaid to Kedis (that is the reason why Neminath's tax return shows a loss of $ 600,000—loan not received from Jaina) and $ 425,000 was taken from Williston Park LLC for additional funds needed to satisfy other loans of Jaina and Neminath.
    f) I was under the impression that Williston Park realty belonged to Sanjiv Chand and Marianna Ramirez was an agent of Sanjiv Chand, only when I saw the affidavit of Sanjiv Chand and Marianna Ramirez that I realized that I had sold the building to Marianna Ramirez of Williston Park LLC and not to Sanjiv Chand.
    g) I was handed the sale documents of Neminath building at the time of closing and not before and I made the grave mistake of signing the sale document of Neminath building without reading.
    h) I now realize what a grave mistake I did. I, in effect, sold the Building of Neminath for $ 425,000. **(Exhibits 213, 215, 306, 307)**
    i) <u>However, this loss was of Neminath and not of Jaina. This agreement and sale was between Williston Park realty LLC. and Neminath both of which are not parties in the current lawsuit.</u>

4

## Explanations of Transfers as alleged in TAC

20. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra, Jaina transferred funds to various entities as a part of routine business transaction i.e. Interest payments and return of antecedent loan that Jaina took from various lenders including family members as listed below.

   a) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 1,350,000 to New York City Law Firm, Robinson Brog et all. These funds were to satisfy antecedent loans taken by Jaina from two companies i.e. Vison Impex and T D Time. **(Exhibit 214, 216, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

   b) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina made transferred funds, totaling $ 134,000 to STI. These funds were to satisfy antecedent loans taken by Jaina. **(Exhibit Chopra Transcript, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

   c) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 412,000 to NYC Telecom. M. Shah now knows that these funds were to satisfy antecedent loans taken by Jaina. **(Exhibit Chopra Transcript, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

   d) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 460,000 to 728 Melville: Petro LLC. These funds, M. Shah now knows were to satisfy loans taken by Neminath from Kedis for the benefit of Jaina. **(Exhibit 213, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

   e) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 200,000 to Hillside. These funds, M. Shah now knows were to satisfy loans taken by Neminath from Kedis for the benefit of Jaina. **(Exhibit 213, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

   f) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 200,000 to Kedis Enterprise **(Exhibit 213, 306, 307)** These funds, M. Shah now knows were to satisfy loans taken by Jaina from Kedis Enterprise. M. Shah was a

5

transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

g) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 685, 603 to Mr. Vipin Shah. These funds, M. Shah now knows were to satisfy loans and interest payments taken by Jaina from Vipin Shah. Mr. Vipin Shah was never a shareholder, officer or insider of Jaina. He was a lender and advisor to Jaina. **(Exhibit 301, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

### Explanation of Count # 3

21. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina made all the above transfers to discharge antecedent loans of Jaina.

22. Jaina did not transfer these funds for the benefit of Mr. Ravi Chopra, Mr. Vipin Shah, shareholder Nayana Shah or M. Shah.

23. Jaina made these transfers in good faith and did this at the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra. M. Shah did not do this to deplete the assets of Jaina.

24. Jaina again says that these transfers of funds were to pay a legitimate loan/debt Jaina had to various entities.

25. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra M. Shah made these transfers to above entities as a president of Jaina, to satisfy loans of Jaina and not fraudulent transfers. M. SHAH DID NOT MAKE ANY TRANSFERS TO HIMSELF PERSONALLY OR TO HIS FAMILY OR TO ANY BUSINESS ENTITIES OWNED BY HIM. Therefore, M. SHAH should not be personally liable.

26. Jaina essentially ceased its operations in early to mid-2015 as Jaina stopped receiving any revenues from its customers and not due to above transfers.

### Explanation of Count # 4

27. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred the above funds to pay antecedent loans of Jaina and had no intention to hinder, delay or defraud any of Jaina's creditors, including Geo- Group.

28. The transfers were a part of usual course of business of Jaina.

29. M. Shah was never unwilling to pay award and the judgement to a vendor (Geo Group), but he had the duty to pay the lenders first.

6

## Mahendra Shah Statement

30. I, Mahendra Shah, am an US citizen hence, I was made the signatory of all Jaina documents. I finished college in India and worked mostly in Deli and convenience stores. I had very little knowledge of computers and almost no knowledge of telecommunications industry and its hardware and software. My main job was to sign Checks, Contracts and wire funds which Bose negotiated. I did not get involved in the day to day handling of JSN. I did question Bose, when funds were short or if the agreements or contracts did not make sense to me. I did not know all the vendors, suppliers or customers. My role was also to sign the final tax documents prepared by CPAs based on information provided by Bose's India company.

31. I did not know most of the parties that did business with Jaina as Mr. Bose dealt with all of them.

32. <u>From 1996 to 2016, my primary business was Deli and Convenience store</u>.

33. I met Mr. Govind Vanjani (Geo Group), when Mr. Vanjani came to my Deli to eat sandwiches, but most Jaina's business talks happened between Mr. Bose and Mr. Vanjani.

34. I occasionally met Ravi Chopra and never talked Jaina's business with Mr. Ravi Chopra. I never wrote any checks or wire funds to anyone or any entity on the direction of Ravi Chopra.

35. I occasionally met Sanjiv Chand, but he never spoke Jaina's business with Sanjiv Chand, not even on the day of closing of Neminath real estate with Williston park realty.

36. I am now a resident of Florida.

37. <u>I, Mahendra Shah, is and was never an Owner, Partner, Director, Shareholder, Officer or Employee of the below listed companies or individuals. Similarly, none of the below listed companies and their principals were Owner, Partner, Director, Shareholder, Officer or Employee of Jaina.</u>

   a) Robinson–Brog Leninard Green & Genovese, P.C. (now known as Robinson–Brog Leninard Green & Genovese and Gluck, P.C.
   b) STI Consulting, STI Phone Card or another entity owned directly or indirectly by Mr. Chopra.
   c) Mr. Ravi Chopra.
   d) NYC Telecom.
   e) 728 Melville: Petro LLC.
   f) JMVD Hillside.
   g) Kedis Enterprise.
   h) Vipin Shah.

38. <u>Jaina transferred funds to the above-named entities and individuals as a payment of legitimate antecedent loans and not to defraud Geo Group.</u> There was no intent to defraud Geo Group.

39. <u>I am neither a transferee nor a beneficiary of any of the transfers Jaina made to the above listed companies and individuals, as disclosed in the complaint (TAC).</u>

40. I did not directly or indirectly fraudulently transfer any money to myself or business entities owned or controlled by me.

41.     Jaina and I, personally have never refused to satisfy the judgment Geo Group had against Jaina.

42.     As you can see that I was a glorified clerk with the title of President as he was a U.S Citizen and Bose was not a US Citizen or green card holder.

43.     At no point in the entire business lifespan of JSN was there any money fraudulently transferred to any of the insiders i.e. Bose, M. Shah, Ms. Nayana Shah or Frank Vella.

44.     At no point in the entire business lifespan of JSN was there any money fraudulently transferred to any of the outsiders like V. Shah or Ravi Chopra or Robinson Brog or LLC defendants.

45.     JSN and I, M. Shah personally never committed any actual or constructive fraud and had no intention to commit any fraud.

46. Jaina had extensive dealings with Mr. Govind Vanjani (Geo Group) and in December 2010, Jaina borrowed $ 150,000 from Mr. Vanjani. This loan Jaina repaid (transferred) in mid-2011. **(Exhibit 217 Govind Vanjani's affidavit dated 2/17/2014 para 9 and 10.)**—This is exactly like the loans Jaina took from Vision Impex, T D Time, STI Consultants, NYC Telecom, Kedis and Vipin Shah.

**The thing I do not understand is why does Mr. Vanjani (Geo Group) consider repayment of loans to other defendants a fraudulent transfer to insiders and the loans repayment to him as routine business transfer.**

_Mahendra Shah_

**Signed in front of a notary.**

**12/7/2017**

SIGNED BEFORE ME THIS
7th DAY OF December, 2017
BY mahendra Shah WHO
PRODUCED Drivers License
AS IDENTIFICATION

ANTHONY NICHOLAS
Notary Public - State of Florida
Commission # FF 237616
My Comm. Expires Jun 4, 2019
Bonded through National Notary Assn.

8

USPS Priority Mail Express label

U.S. POSTAGE PAID
ALBERTSON, NY
11507
DEC 19 17
AMOUNT
$23.75
R2304M114647-05

Label: EL 492 827 27 US
1007 / 10007

**PRIORITY MAIL EXPRESS™**
UNITED STATES POSTAL SERVICE®

ORIGIN (POSTAL SERVICE USE ONLY)
- ☒ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO
- PO ZIP Code
- Date Accepted (MM/DD/YY)
- Scheduled Delivery Date
- Scheduled Delivery Time: ☐ 10:30 AM ☐ 3:00 PM ☒ 12 NOON
- Postage $
- Time Accepted ☐ AM ☐ PM
- 10:30 AM Delivery Fee $
- Insurance Fee $
- Return Receipt Fee $
- Special Handling/Fragile $
- Sunday/Holiday Premium Fee $
- Live Animal Transportation Fee $
- Weight: lbs / ozs ☐ Flat Rate
- Acceptance Employee Initials
- Total Postage & Fees $

DELIVERY (POSTAL SERVICE USE ONLY)
- Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature
- Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature

LABEL 11-B, OCTOBER 2016      PSN 7690-02-000-9996      3-ADDRESSEE COPY

SIGNATURE INCLUDED UPON REQUEST

CUSTOMER USE ONLY
FROM: (PLEASE PRINT)
Gazi Marino Shah
PHONE ( ) 516-916-9684
80 Liberty Way Apt +8
Glen Hoves, Floridia - 34654

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)
☒ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required
☐ 10:30 AM Delivery Required

TO: (PLEASE PRINT) PHONE ( )
U.S Dist Court of the Southern
Dist of New York
co Se Intake Unit
Hon Katherine Polk Failla
U.S ADDRESSES ONLY
500 Pearl St
Room 360 Add York, NY 10007

ZIP + 4®

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

OUR FASTEST SERVICE IN THE U.S.

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.





US DIST
SDNY