UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

GEO-GROUP COMMUNICATIONS.

                              Plaintiff,

            v.

RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC
TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                              Defendant.

Case No. 15-cv-01756 (KPF)



g) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 200,000 to Kedis Enterprise **(Exhibit 213, 306, 307)** These funds, M. Shah now knows were to satisfy loans taken by Jaina from Kedis Enterprise. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

h) At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 685, 603 to Mr. Vipin Shah. These funds, M. Shah now knows were to satisfy loans and interest payments taken by Jaina from Vipin Shah. Mr. Vipin Shah was never a shareholder, officer or insider of Jaina. He was a lender and advisor to Jaina.  **(Exhibit 301, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

### Explanation of Count # 3

1. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina made all the above transfers to discharge antecedent loans of Jaina. **(Affidavit of Mahendra Shah @ paragraph 21.)**

2. Jaina did not transfer these funds for the benefit of Mr. Ravi Chopra, Mr. Vipin Shah, shareholder Nayana Shah or M. Shah. **(Affidavit of Mahendra Shah @ paragraph 22.)**

3. Jaina made these transfers in good faith and did this at the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra. M. Shah did not do this to deplete the assets of Jaina. **(Affidavit of Mahendra Shah @ paragraph 23.)**

4. Jaina again says that these transfers of funds were to pay a legitimate loan/debt Jaina had to various entities. **(Affidavit of Mahendra Shah @ paragraph 24.)**

5. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra M. Shah made these transfers to above entities as a president of Jaina, to satisfy loans of Jaina and not fraudulent transfers. M. SHAH DID NOT MAKE ANY TRANSFERS TO HIMSELF PERSONALLY OR TO HIS FAMILY OR TO ANY BUSINESS ENTITIES OWNED BY HIM. Therefore, M. SHAH should not be personally liable. **(Affidavit of Mahendra Shah @ paragraph 25.)**

6. Jaina essentially ceased its operations in early to mid-2015 as Jaina stopped receiving any revenues from its customers and not due to above transfers. **(Affidavit of Mahendra Shah @ paragraph 26.)**

### Explanation of Count # 4

7. At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred the above funds to pay antecedent loans of Jaina and had no intention to hinder, delay or defraud any of Jaina's creditors, including Geo- Group. **(Affidavit of Mahendra Shah @ paragraph 27.)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-14-17

## Statement of Material Facts

a)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra, Jaina transferred funds to various entities as a part of routine business transaction i.e. Interest payments and return of antecedent loan that Jaina took from various lenders including family members as listed below: **(Affidavit of Mahendra Shah @ paragraph 20, a-g.)** M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

b)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina) and NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 1,350,000 to New York City Law Firm, Robinson Brog et all. These funds were to satisfy antecedent loans taken by Jaina from two companies i.e. Vison Impex and T D Time. **(Exhibit 214, 216, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

c)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 134,000 to STI. These funds were to satisfy antecedent loans taken by Jaina. **(Exhibit Chopra Transcript, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

d)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 412,000 to NYC Telecom. M. Shah now knows that these funds were to satisfy antecedent loans taken by Jaina. **(Exhibit Chopra Transcript, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

e)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 460,000 to 728 Melville: Petro LLC. These funds, M. Shah now knows were to satisfy loans taken by Neminath from Kedis for the benefit of Jaina. **(Exhibit 213, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

f)  At the direction of Mr. Surajit Bose (Founder and CEO of Jaina). And NOT Mr. Ravi Chopra, Jaina transferred funds, totaling $ 200,000 to Hillside. These funds, M. Shah now knows were to satisfy loans taken by Neminath from Kedis for the benefit of Jaina. **(Exhibit 213, 306, 307)**. M. Shah was a transferor not a transferee or beneficiary nor did M. Shah benefit personally from that transfer. The Plaintiff's complaint itself says that M. Shah was a transferor.

8. The transfers were a part of usual course of business of Jaina. **(Affidavit of Mahendra Shah @ paragraph 28.)**

9. M. Shah was never unwilling to pay award and the judgement to a vendor (Geo Group), but he had the duty to pay the lenders first. **(Affidavit of Mahendra Shah @ paragraph 29.)**

10. Mahendra Shah, is and was never an Owner, Partner, Director, Shareholder, Officer or Employee of the below listed companies or individuals. Similarly, none of the below listed companies and their principals were Owner, Partner, Director, Shareholder, Officer or Employee of Jaina. **(Affidavit of Mahendra Shah @ paragraph 37.)**
    a) Robinson–Brog Leninard Green & Genovese, P.C. (now known as Robinson–Brog Leninard Green & Genovese and Gluck, P.C.
    b) STI Consulting, STI Phone Card or another entity owned directly or indirectly by Mr. Chopra.
    c) Mr. Ravi Chopra.
    d) NYC Telecom.
    e) 728 Melville: Petro LLC.
    f) JMVD Hillside.
    g) Kedis Enterprise.
    h) Vipin Shah.

11. <u>Jaina transferred funds to the above-named entities and individuals as a payment of legitimate antecedent loans and not to defraud Geo Group.</u> There was no intent to defraud Geo Group. **(Affidavit of Mahendra Shah @ paragraph 38.)**

12. <u>I am neither a transferee nor a beneficiary of any of the transfers Jaina made to the above listed companies and individuals, as disclosed in the complaint (TAC).</u> **(Affidavit of Mahendra Shah @ paragraph 39.)**

13. M. Shah, did not directly or indirectly fraudulently transfer any money to himself or business entities owned or controlled by him. **(Affidavit of Mahendra Shah @ paragraph 40.)**

14. Jaina and M. Shah, personally have never refused to satisfy the judgment Geo Group had against Jaina. **(Affidavit of Mahendra Shah @ paragraph 41.)**

15. As you can see that M. Shah was a glorified clerk with the title of President, as he was a U.S Citizen and Bose was not a US Citizen or green card holder. **(Affidavit of Mahendra Shah @ paragraph 42.)**

16. At no point in the entire business lifespan of JSN was there any money fraudulently transferred to any of the insiders i.e. Bose, M. Shah, Ms. Nayana Shah or Frank Vella. **(Affidavit of Mahendra Shah @ paragraph 43.)**

17. At no point in the entire business lifespan of JSN was there any money fraudulently transferred to any of the outsiders like V. Shah or Ravi Chopra or Robinson Brog or LLC defendants. **(Affidavit of Mahendra Shah @ paragraph 44.)**

18. JSN and M. Shah personally never committed any actual or constructive fraud and had no intention to commit any fraud. **(Affidavit of Mahendra Shah @ paragraph 45.)**

19. As I represent myself as a Pro Se with no knowledge of intricacies of the law, I would request This Honorable Court to consider the papers submitted by the other attorneys for other defendants.

20. Jaina had extensive dealings with Mr. Govind Vanjani (Geo Group) and in December 2010, Jaina borrowed $ 150,000 from Mr. Vanjani. This loan Jaina repaid (transferred) in mid-2011. **(Exhibit 218 Govind Vanjani's affidavit dated 2/17/2014 para 9 and 10.)**—This is exactly like the loans Jaina took from Vision Impex, T D Time, STI Consultants, NYC Telecom, Kedis and Vipin Shah.
**The thing that is difficult to understand is why does Mr. Vanjani (Geo Group) consider repayment of loans to other defendants a fraudulent transfer to insiders and the loans repayment to him as routine business transfer.**

**Mahendra Shah**
**12/7/2017**

4

# Exhibit 201

# HOLDING STRUCTURE



Mr. Mahindra Shah

Mr. Surajit Bose

Jaina Systems Network

Mrs. Naina Shah

Mr. Frank Vella

Page

)) Systems Network

# From CEO's DIARY

Foundation

Vision & Mission

History & Milestones

Management & Holding Structure

Financial Strength

Philanthrophy

Careers

Message from CEO

Global Presence

## Message from CEO :

At Jaina Systems Network we are proud of what we do and of what we have accomplished in the past seven years. Though 2008 was one of the most challenging years in recent memory, Jaina delivered solid results. Continuing with the same vigor, in 2009, we were able to close at 1.65 billion minutes. This reflected the capabilities of our team. We have had many opportunities to stretch and learn while competing on a rapidly changing global scenario. In future, we expect many challenges. The more we are tested, the more determined and astute we become. In this spirit, we've created a plan that integrates best business practices. In our workforce, we've implemented programs that help us recruit the best and brightest from a broad range of cultures and that help our employees live up to their full potential while helping our customers be more successful. In our leadership, we have committed ourselves to ensuring diverse representation at all strata of our company, all the way to the top. We look forward to working with you. Mutual benefit without your cooperation, trust and satisfaction, is unthinkable. We are successful only when you are.

**Surajit Bose**
CEO, Jaina Systems Network, Inc.

Copyright © 2014 Jaina Systems Network

9/8/2014

# MINUTES OF BOARD OF DIRECTORS MEETING

## OF

## JAINA SYSTEMS NETWORK, INC.

The undersigned, being the directors of the above named corporation, in accordance with corporate law and the bylaw of this Corporation, do hereby consent to the adoption of the following recitals and resolutions:

An annual meeting of the board of directors of the corporation was held at: 235 HILLSIDE AVENUE, SUITE B, WILLISTON PARK, NY, 11596 on October 25, 2007 at 11:00 a.m.

All directors signed waiver of notice, and the waiver was made a part of and precede the minutes of this meeting. The President and Secretary of the Corporation acted respectively, as Chairman and Secretary of the meeting.

There were present, representing a quorum of the board:

| | |
|---|---|
| Chief Executive Officer: | Surajit Bose |
| Chief Financial Officer: | Andrew K. Piccinini |
| Secretary: | Nayana Shah |
| Director: | Mahendia Shah |

## RATIFICATION AND APPROVAL OF ACTIONS

The President of the corporation acted as chairperson, and the Secretary of the corporation acted as secretary of the meeting.

WHEREAS, the Board of Directors and Officers of the Corporation have taken action between the last meeting and this meeting;

WHEREAS, it would be in the best interests of the Corporation to ratify and approve the actions of Directors and Officers of the Corporation occurring between the last meeting and this meeting;

RESOLVED, the Directors ratify and approve the actions of Directors and Officers of the Corporation occurring between the last meeting and this year's meeting.

There being no further business to come before the meeting, it was adjourned on motion duly made and carried.

_____
DATE

_____
SECRETARY

(5) The Secretary of State is designated as agent of the Corporation upon whom process against it may be served. The post office address to which the Secretary of State shall mail a copy of any process against the Corporation served upon him is:

## JAINA SYSTEMS NETWORK INC.

Mahendra Shah
39 Capitol Avenue
Williston Park, NY 11596

The undersigned incorporator is of the age of eighteen years or older.

IN WITNESS WHEREOF, this certificate has been subscribed this 28th day of June, 2002 by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

_____          77 East John Street, Hicksville, NY 11801

Bruce B. Hubbard, Incorporator            _____

                                          Address

## CERTIFICATE OF INCORPORATION

### OF

# JAINA SYSTEMS NETWORK INC.

Under Section 402 of the Business Corporation Law

IT IS HEREBY CERTIFIED THAT:

(1) The name of the Corporation is:

# JAINA SYSTEMS NETWORK INC.

(2) The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized pursuant to the Business Corporation Law of the State of New York. The Corporation is not to engage in any act or activity required any consents of approvals by law without such consent or approval first being obtained.

For the accomplishment of the aforesaid purposes, and in furtherance thereof, the Corporation shall have, and may exercise, all of the powers conferred by the Business Corporation Law upon corporations formed thereunder, subject to any limitations contained in Article 2 of said law or in accordance with the provisions of any other statute of the State of New York.

(3) The number of shares which the Corporation shall have the authority to issue is  **200** Shares at no par value.

(4) The corporation is to be located in the County of **Nassau,** State of New York.

STATEMENT OF INCORPORATOR  IN LIEU OF ORGANIZATION MEETING

OF

# JAINA SYSTEMS NETWORK INC.

The certificate of incorporation of the above-named corporation having been filed in the Office of the Secretary of State of the State of New York, the undersigned, being the incorporator named in said certificate, does hereby state that the following actions were taken on this day for the purpose of organizing this corporation:

1.    By-Laws for the regulation of the affairs of the corporation were adopted by the undersigned incorporator and were ordered inserted in the minute book immediately following the copy of the certificate of incorporation and before this instrument.

2.    The undersigned hereby resigns as incorporator of the corporation as of the date set forth below.

The following are hereby elected as the director(s) of the corporation to hold office until the first annual meeting of the corporation or until their successors are elected and qualified:

## Mahendra Shah

Dated: Upon filing date

Bruce B. Hubbard
Incorporator

# MINUTES OF THE ANNUAL SHAREHOLDERS' MEETING
## OF

## JAINA SYSTEMS NETWORK, INC.

An annual meeting of shareholders was held at: 235 HILLSIDE AVENUE, SUITE B, WILLISTON PARK, NY, 11596 on October 25, 2007 at 11:00 a.m. for the purpose of electing the directors of the corporation and transacting all other proper business. All shareholders waived notice, and the waiver was made a part of and precedes the minutes of this meeting. The President acted as chairperson, and the Secretary acted as secretary.

The call of the list of shareholders and inspection of proxies showed that there were represented at the meeting, in person or by proxy, holders of shares constituting a quorum. The proxies, if any, were filed with the secretary and were included with the minutes of the meeting.

Those present were the following, constituting all of the shareholders of the corporation entitled to vote:

| | | |
|---|---|---|
| Shareholder: | Mahendia Shah | # Shares: 25% |
| Shareholder: | Frank Vella | # Shares: 25% |
| Shareholder: | Nayana Shah | # Shares: 25% |
| Shareholder: | Surajit Bose | # Shares: 25% |

After completion of nominations from the floor, the chairperson closed the nominations and the voice votes represented at the meeting were taken.

After a count of votes and examination of the proxies, the chairperson declared that the following were duly elected as directors to serve for the coming year, and until their successors are elected and qualified, by the affirmative vote of a majority of shares represented at the meeting.

| | |
|---|---|
| Director: | Mahendia Shah |

There being no other business to come before the meeting, it was adjourned on motion duly made and carried.

_____          _____
DATE                                       SECRETARY

# Exhibit 202

Cogent Equities, Inc.

1569 Sherman Avenue
Suite 202 B
Evanston, IL 60201
847.733.8700
847.733.8711 fax

July 25, 2008

To All Known Creditors of

Skynet Communications, Inc.
400 West Erie St.
Suite 403
Chicago, IL 60610

Dear Creditor:

Please be advised that on July 16, 2008 the director and shareholder of Skynet Communications, Inc., an Illinois corporation with its principal place of business at 400 West Erie Street, Suite 403, Chicago, Illinois 60610 initiated an Assignment for the Benefit of Creditors (the "Assignment") by executing a Trust Agreement and Assignment. Pursuant to the Trust Agreement and Assignment, all of the known assets of Skynet were conveyed to the Assignee for the specific purpose of liquidating these assets for the highest and best possible price and distributing the proceeds, less the costs of administration, to the creditors of Skynet, in accordance with the priorities as determined under the laws of the State of Illinois.

The deterioration of the prepaid calling card industry due to entry into the market of many competitors over the past few years created a low margin environment. Skynet did not have the capital to compete against better capitalized competitors and fell behind in paying its vendors.

To preserve the going concern value of Skynet, the undersigned, not individually but as Assignee, entered into a contract and operating agreement with Global Teleconnects Corporation to continue the operations of Skynet subject to advertising the sale of Skynet's assets seeking a higher and better price. Global Teleconnects Corporation has agreed to pay $1,002,495, inclusive of a $20,000 break-up fee for substantially all of the assets of Skynet.

As Assignee, I advertised the assets for sale in the Chicago Tribune on July 20th and July 23rd, 2008. I anticipate that this transaction will not provide a cash dividend to unsecured creditors unless a higher offer is received by July 30, 2008.

Enclosed with this letter is a claim form that should be completed and returned to the undersigned. I will send all creditors an additional and perhaps final report in approximately ninety days.

In the event you require additional information, please contact me the undersigned at phil@cogentequities.com.

Very truly yours,

Philip M. Firrek, not individually, but solely as
Assignee of the Skynet Creditor Trust

AFFIDAVIT OF CLAIM

Re:   Skynet Communications, Inc.
      400 West Erie Street
      Suite 403
      Chicago, IL 60610

We the undersigned do hereby file our claim in the amount of $ 1,096,966.47
(insert dollar amount of claim, principal only.)

Name of Claimant: JAINA SYSTEMS NETWORK, INC.

Address: 235 HILLSIDE AVE, SUITE B.

City: WILLISTON PARK.

State: NY - 11596.

By: _Robert R. Obel_
                        (Signature of Officer)

Dated: 7/31/08

Mail or Fax to:

Philip M. Firrek, Assignee
1569 Sherman Avenue
Suite 202 B
Evanston, IL 60201
847.733.8700
847.733.8711 fax
phil@cogentequities.com

# Exhibit 203

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GEO-GROUP COMMUNICATIONS, INC.,

                        Petitioner,

    against

JAINA SYSTEMS NETWORK, INC.,

                     Respondent.

Index Number 652219/2014
(Hon. Melvin L. Schweitzer, J)

**FORBEARANCE AGREEMENT
AND STIPULATION OF
SETTLEMENT**

This Forbearance Agreement and Stipulation of Settlement ("Agreement") is entered into by and between Geo-Group Communications, Inc. ("Petitioner"), on the one hand and Jaina Systems Network, Inc. ("Jaina") and Surajit Bose, an individual ("Bose" and with Jaina collectively, "Respondents") on the other, with respect to the following facts:

WHEREAS, Respondents acknowledge the entry of a Decision & Order ("Order") in the above-referenced Court on December 2, 2014 granting the application for judgment in favor of the Petitioner and against Jaina and directing the Clerk to enter judgment in the sum of $1,249,654 plus costs and interest; and

WHEREAS, Respondents acknowledge that, pursuant to the Order, Petitioner has submitted to the New York County Clerk, Judgment Desk ("Clerk") via the New York State Court Electronic Filing System (NYSCEF) a proposed judgment ("Judgment") in the amount of $1,249,654 plus costs of $600 and interest in the sum of $1,386,026.83 as of January 8, 2015, totaling $2,636,280.83 through January 8, 2015; and

WHEREAS, Respondents acknowledge that the proposed judgment as submitted to the Clerk is true and correct in all material respects, and that upon entry thereof Jaina has no valid

Forbearance Agreement 2015-01-05.FINAL

NYC TELECOMMUNICATIONS000326

defense, objection, or basis to appeal the Judgment and is and shall be liable to Petitioner for the full amount thereof without any offset whatsoever, plus additional interest as it shall accrue after entry from day to day; and

WHEREAS, Bose acknowledges that as of the date hereof Petitioner was in process of preparing a motion for which it had a reasonable basis to hold him personally responsible, together with Jaina, for the foregoing debt as well as for additional sums, including legal fees now due from Jaina; and

WHEREAS, Bose expressly acknowledges and represents that, by virtue of his position as Jaina's CEO, he is authorized to and does herewith confirm that it and he are both appearing herein, consent to the jurisdiction of the Court over each of them, admit their joint and several liability for the Judgment and the payment obligations hereunder now including an additional amount of $300,000 partially representing the amount of legal fees and related costs incurred on Petitioner's behalf after the award now totaling $2,936,280.83; and

WHEREAS, in the event Petitioner shall waive any default of either Respondent under this Agreement it shall not constitute a waiver of Petitioner's rights hereunder or under the Judgment; and

WHEREAS, Jaina is currently an operating business engaging profitably in the ordinary course of its business and financial affairs; and

WHEREAS, Respondents wish to discharge their obligations under the Judgment and this Agreement upon the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual representations and covenants contained herein, the parties agree as follows:

2

NYC TELECOMMUNICATIONS000327

1.     The recitals contained in this Agreement are true and correct in all material respects and are hereby incorporated and restated as if set forth in full herein.

2.     The covenants, undertakings and other obligations of this Agreement shall be binding upon the Respondents jointly and severally and upon any successor, assign or subsidiary of Jaina.

3.     Respondents hereby acknowledge and agree to pay, and Petitioner agrees to accept in full settlement of the Judgment and additional legal fees now due the sum of $2,636,369.83 providing it is timely paid pursuant to the annexed PAYMENT SCHEDULE APPENDIX by wire transfer to Petitioner's attorney pursuant to the following wire transfer instructions:

| | |
|---|---|
| ABA Routing No.: | 021000089 |
| Account No.: | 4977133745 |
| Account Name: | Norman Solovay Attorney Account |
| Bank: | Citibank, N.A. |
| | 330 Madison Avenue |
| | New York, New York 10017 |

4.     So long as all payments are timely made Petitioner shall withhold enforcement of the Judgment, provided, however, that Petitioner may record transcripts thereof to be utilized in the event of a default in payment.  If there shall be a default in any payment required under this Agreement Petitioner shall be entitled to take any and all permissible steps to enforce the Judgment, Order and Agreement, including, without limitation,   instituting the previously contemplated additional proceedings hereinabove referred to collect unpaid amounts due under this Agreement as well as such other amounts, including unpaid prior post award legal fees and related costs as the Court may see fit to award based on previously complained of actions on the part of Jaina and its officers and representatives.

NYC TELECOMMUNICATIONS000328

5.      Respondents and their officers, agents, servants, employees, assigns, subsidiaries, and attorneys, hereby agree that until all payment obligations of Respondents under this Agreement have been paid in good funds the Respondents shall not sell, assign, transfer, dissipate, disburse, liquidate, hypothecate or encumber a material part of their real and personal property, provided, however, that Jaina may continue operating its business in accordance with its normal and customary business practices to the extent not inconsistent with this Agreement. For the avoidance of doubt, the use of the term "material part" in the prior sentence shall, during the term of this Agreement, mean any sale, assignment, transfer, dissipation, disbursement, liquidation, hypothecation or encumbrance by Jaina or with respect to assets or property of Jaina which when taken together in the aggregate with respect to any property or asset comprise a value greater than $100,000.

6.      Respondents agree that until full satisfaction of Respondents' obligations under this Agreement they have not engaged and shall not engage in any fraudulent conveyances within the meaning of Article 10 of New York Debtor and Creditor Law, §§ 270 - 281, nor any fraudulent transfers within the meaning of section 548 of Title 11 of the United States Code; and that in the event of any sale, assignment, transfer, dissipation, disbursement, liquidation, hypothecation or encumbrance by Jaina with respect to assets or property of Jaina which when taken together in the aggregate with respect to any property or asset comprise a value greater than $100,000, Petitioner shall have a first lien on all remaining property in any subsequent proceedings instituted by it or any other person or entity. Moreover, Petitioner shall, upon request, be entitled to inspect Respondents' financial records to confirm that it remains in compliance with this requirement.

4

7.     Upon execution of this Agreement, Respondents hereby release and discharge Petitioner, and any of its successors, assigns, or attorneys, from all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, in law or equity, which Respondents, and each of their respective subsidiary corporations, divisions, predecessors and successors and all related or affiliated legal or business entities, and each of their or his, as the case may be, present and former stockholders, officers, directors, agents, employees and attorneys of any of the foregoing ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing relating to any act or omission of Petitioner (hereinafter, such released and discharged persons and entities are referred to collectively and individually as the "Respondents Released Persons"), on or before the date and time the parties entered into this Agreement, provided, however, that the foregoing release shall not release any Respondents Released Persons of any obligations arising under this Agreement.  Subject to the foregoing, this release covers and includes all unknown or contingent claims or causes of action, as well as those now accrued or known to exist, and all unknown or contingent damages, costs, liabilities, expenses and attorneys' fees, and the consequences thereof, as well as those now accrued or known to exist.

8.     Upon payment in full of Respondents obligations pursuant to this Agreement a satisfaction of judgment with respect to the Judgment will be issued and filed by Petitioner with the Court and Respondents will be provided with a copy reflecting such filing.

9.     This Agreement records the complete understanding of the parties regarding the agreement memorialized herein and supersedes any and all prior or contemporaneous statements

NYC TELECOMMUNICATIONS000330

or communications regarding this matter, whether written or oral, all of which are merged into and survived solely by this Agreement.

10.     If any term or terms of this Agreement is held to be inoperative, invalid or void, the remainder shall be effective as if such term had not been contained herein.

11.     Each party signing this Agreement hereby covenants and warrants to the other party that he is fully authorized to sign the Agreement on behalf of himself or the entity on whose behalf and any successors, assigns or subsidiaries, he is signing, as the case may be, and is fully authorized to bind the party to all of the terms of this Agreement.  This Agreement may not be modified or amended except by a writing signed by each of the parties.

12.     The parties have jointly participated in the drafting of this Agreement and accordingly the Agreement shall not be construed against any party as draftsperson.

13.     All parties hereto have had the opportunity to consult with an attorney of their choice regarding the advisability of entering into this Agreement, and have so consulted or have knowingly and voluntarily waived the opportunity to so consult with an attorney.

14.     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their legal representatives, successors, and assigns.

15.     This Agreement shall be governed by the law of the State of New York without reference to its conflict of laws, provisions, and jurisdiction and venue of any disputes arising out of this Agreement shall be in the state or federal courts located in New York, New York.

16.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same agreement. Facsimile copies of this Agreement shall be deemed the same as originals for all purposes.

NYC TELECOMMUNICATIONS000331

17.   **WAIVER OF TRIAL BY JURY, JURISDICTION AND VENUE.**

IN ANY PROCEEDING TO ENFORCE THIS AGREEMENT RESPONDENTS IRREVOCABLY AND ABSOLUTELY WAIVE THE RIGHT TO TRIAL BY JURY, IF ANY, RESPONDENTS MAY HAVE AND ACKNOWLEDGE SUCH WAIVER IS MADE TO INDUCE PETITIONER TO ACCEPT THIS AGREEMENT AND TO DELIVER THE CONSIDERATION THEREFORE.  RESPONDENTS REPRESENT AND WARRANT THAT THE FOREGOING WAIVER IS VOLUNTARY AND THAT RESPONDENTS HAVE EITHER CONSULTED WITH COUNSEL CONCERNING THE EFFECT OF SUCH WAIVER, OR HAVE KNOWINGLY AND VOLUNTARILY WAIVED THE RIGHT TO SUCH CONSULTATION.

**AGREED:**

GEO-GROUP COMMUNICATIONS, INC.,

By: _____
    Govind Vanjani
    President

JAINA SYSTEMS NETWORK, INC.

By: _____
    Surajit Bose
    Founder & CEO

       and

_____
    Surajit Bose, Individually

Sworn to before me this
____ day of January, 2015

_____

7

**APPROVED AS TO FORM:**

THE SOLOVAY PRACTICE
*Attorneys for Petitioner Geo-Group*
*Communications, Inc.*

By: _____
     Norman Solovay, Esq.
     260 Madison Avenue, 15th Floor
     New York, New York  10016
     Tel.: 646-278-4295
     Fax: 212-448-0066
     Email: nsolovay@solovaypractice.com

        and

STARR & STARR, PLLC
*Attorneys for Petitioner Geo-Group*
*Communications, Inc.*

By: _____
     Stephen Z. Starr, Esq.
     260 Madison Avenue, 17th Floor
     New York, New York  10016
     Tel.: 212-867-8165
     Fax: 212-867-8139
     Email: sstarr@starrandstarr.com

NYC TELECOMMUNICATIONS000333

### PAYMENT SCHEDULE APPENDIX

Surajit Bose, being duly sworn, deposes and says:

I am executing this Payment Schedule Appendix to confirm both the accuracy of the facts stated in the annexed Agreement and the following schedule pursuant to which I personally and the other named Respondent, JAINA SYSTEMS NETWORK, INC. ("Jaina") have committed to make the settlement payments totaling $2,936,280.83 provided for therein:

1. A first payment of $200,000.00 is to be made on or before January 31, 2015.

2. A second payment of $500,000.00 is to be made on or before February 28, 2015.

3. A third payment of $500,000.00 is to be made on or before March 31, 2015.

4. A fourth payment of $300,000.00 is to be made on or before April 30, 2015.

5. After the first four payments have been made, the principal balance will be $1,436,280.83, which will be paid within thirty-six (36) months after the due date of the fourth payment, to wit: April 30, 2018.

6. An interest payment of $16,000.00 per month on the principal balance will be made on or before the last day of each month until the principal balance has been paid in full.

7. If and when any partial payments of the principal balance have been made, the monthly interest payment will be reduced proportionately.

8. All the payments described above will be made by wire transfer to:

| | |
|---|---|
| ABA Routing No.: | 021000089 |
| Account No.: | 4977133745 |
| Account Name: | Norman Solovay Attorney Account |
| Bank: | Citibank, N.A. |
| | 330 Madison Avenue |
| | New York, New York 10017 |

As CEO and founder of Jaina I confirm on my own individual behalf and on behalf of Jaina and all its subsidiaries my authority to enter in the Agreement and this Appendix to it. This

9

Agreement and its annexed Payment Schedule Appendix is intended to and shall constitute a special promise to answer for the debt of another within the meaning of section 5-701(a)(2) of the New York General Obligations Law.

_____<br>Surajit Bose

Sworn to before me this
_____ day of January, 2015

_____
Notary Public

10

NYC TELECOMMUNICATIONS000335

# Exhibit 204

*See Doc 24-5/24-6/B/B/10 ALSO =*

# PROPOSAL FOR SETTLEMENT ( STRICTLY CONFIDENTIAL )

**Surajit Bose [s.bose@jainasystems.com]**
**Sent:** Sunday, December 28, 2014 10:41 AM
**To:** gvanjani@comcast.net
**Cc:** Subrota Batabyal [s.batabyal@jainasystems.com]

<u>FOR SETTLEMENT PURPOSE ONLY</u>

-
<u>WITHOUT PREJUDISE</u>

-
Dear Govind Sir,

Thank you for being such a kind heart, for giving us an opportunity to submit a proposal.  My intensions are clear, to recompense your every penny. And I believe, I can make it happen only with your support.  I would like to mention few points, which in turn would help me to make my points more clear.

- Share holders
  - Mahendra Shah
  - Nayana Shah
  - Frank Vella – Left in 2011, without any compensation and returns.
  - Surajit Bose
      All, except me want to quit the association, allowing me to run the company.

- Financial Status – Jaina is bearing a liability of 8 Million USD, as of today ( Even though the amount need not to settle immediately as it is in rotation with the carriers ) . Due to India and BD market plunge, Jaina has incurred huge loss since 2011. Currently, the business is at stake. Working capital being the major problem. Our 1 Million dollar loan from Citi Bank, was used to pay our debts to continue in business. Our major hit was Skynet filling Chapter 7, not paying more than 1.3 million Dollars in 2008.

- Strengths
  - Launching Retail with sip dialer was always our goal.  Our last hope is retail, which we have already launched. Unfortunately it happened in wrong time, though observing positive prospects.
  - Connectivity towards India – We have the Interconnects( Including BSNL) in place to cater larger volume, maintaining quality.
  - Employees – A total of 40 persons ( 38 in India and 2 in USA ). All are dedicated to the company though experiencing irregularities in salary since 2011 and currently there are still pending salaries.
  - Interconnect – A total of 135 carriers are interconnected with us.

And Finally, The Proposal – As most of the shareholders has lost interest in the company, except myself and my team. They have sacrificed their daily lives and struggling everyday only to keep the company the company live.

I am  running the company along with Subrota and Suraj's help Currently. Keeping the above views and our limitations in mind and discussing even with the current employees we would like to propose the following three options for GCI settlement purpose:

- You along with other members of GCI come in the board and under the New Board of Director's advice and directions we run the company and whatever profits we earn or even from Cash flow whatever can be managed,  we keep paying our Labiality towards GCI which will have priority over other debts besides Citibank. Citibank installment is only 22K a month which will continue for another 3 Yrs. Our Books of

NYC TELECOMMUNICATIONS000501

accounts will be open for your review 24/7 x 365 days in real time.

- We will pay $ 1.5 Million as proposed in your settlement upfront and can work out a monthly installments for the balance agreed amounts over an agreed time which will cover all your legal expenses and interest costs. But be little reasonable as you know our current financial conditions . We request you to give us at least 4-5 months to arrange the initial funds.

- We agree on the total amounts of $ 2.25 Million plus your legal Expenses over a period of 5 Yrs. ( Upon Reviewing if cash flow and Margin Supports Bigger Payment , we can even make bigger amounts ) in equated monthly installments of USD 30K a month Starting from March 2015 and a balloon payment of USD 100K a year till the entire amount is settled including your legal Charges as mentioned in your email. Our Book will be open audit and review any time.

With your expertise and guidance we can use our strength to achieve newer goals if you allow us. I foresee this could be a solution which would benefit both. It will be very much possible  for us to move forward, with your kind cooperation. I request you to review the current situation and help us to decide the road map and allow the company to run its operation. One thing  I want to assure that our intention is very clear that we will Pay  every penny of the debt.

I look forward towards a positive decision and valuable suggestion, keeping in mind all the families related to Jaina, here in India and US.


**Thanks & Best Regards,**


**Surajit Bose**

 Jaina

USA: O: +1 516 2483870 ext 210    I    C: +1 516 5038811   I  India Mob: +91 9748736445
www.jainasystems.com
For Trouble Tickets and 24X7 Customer Support: + 1516 248 3870 Ext 220

Jaina Disclaimer:

This e-mail is private and confidential. It may also be legally privileged. If you are not the addressee then you may not copy, forward, disclose or use any part of it. If you have received this message in error, please delete all copies from your system and notify the sender immediately by a return e-mail. This message has been checked for all known viruses by Jaina System's Virus Control Center and has been found safe. Jaina Systems Network, however, uses third-party virus program by Symantec Corp. and is not responsible for any virus attacks through this email. All rights reserved by Jaina Systems Network, Inc.


"SAVE PAPER - THINK BEFORE YOU PRINT!"

Exhibit 205

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

| | |
|---|---|
| SURAJIT BOSE, individually and as an Officer of JAINA SYSTEMS NETWORK, INC., and JAINA SYSTEMS NETWORK, INC., | Index Number 602874/2015 |
| Plaintiffs, | **AFFIDAVIT OF** |
| against | **GOVIND W. VANJANI** |
| NORMAN SOLOVAY, THE SOLOVAY PRACTICE and MICHAEL SHANKER, | |
| Defendants. | |

STATE OF NEW YORK       )
                                                :ss:
COUNTY OF NEW YORK   )

**GOVIND W. VANJANI,** being duly sworn, deposes and says:

1.      As the President and founder of Geo-Group Communications, Inc. ("GCI"), I make this affidavit in support of the cross motion by GCI's counsel, Norman Solovay, to set aside plaintiffs' order to show cause and to transfer and consolidate the present action with the pending action in New York County Supreme Court entitled *Geo-Group Communications, Inc. v. Jaina Systems Network, Inc.*, Index No. 652219/2014. I can and do confirm the accuracy of the facts set forth in Mr. Solovay's moving affirmation and am setting forth additional ones relating to my involvement which make it clear that the cross motion should be granted.

2.      The complaint alleges that Mr. Solovay violated Disciplinary Rules of the New York Code of Professional Responsibility in a number of ways, primarily involving his having purportedly improperly obtained and used supposedly confidential information. I can and

Affidavit Vanjani 2015-05-17

will demonstrate that these allegations are among the astonishing number of lies being promulgated by Jaina and its present two opposing sets of counsel, Edward Troy and Joseph Goldberg. Moreover in addition to that showing, I can also confirm the accuracy of the facts described in Mr. Solovay's affirmation as well as those he references as alleged in the pending New York County Supreme Court action and the related United States District Court action in which the plaintiffs in this action and its officers and shareholders are defendants.

3.      However, before pointing to the specifics of the dishonest charges I want to identify the two helpful statements I have found in the present complaint. For one thing it correctly notes that in GCI's action pending in the U.S. District Court it used the records to show that "these persons and entities [*i.e.*, the Jaina officers and shareholders referred to in the affirmation as the "New Defendants"] were engaged in a conspiracy to defraud GCI." I can attest to the fact that this conspiracy, which is the subject of that federal action, is real and is still in full operation. So even had there been a breach of confidentiality—which my affidavit will show did not take place—its use would have been justified and permissible for a number of reasons described herein and in Mr. Solovay's affirmation.

4.      In addition, the complaint (par. 61), although attempting to dispute it, sets forth the following quote from GCI's verified complaint in the pending U.S. District Court action:

> Mr. Bose's December 28, 2014 e-mail had included financial information describing the thefts of funds from Jaina by the New Defendants. While it included a notice that it was for settlement purposes, as Mr. Vanjani's . . . Affidavit made clear, he had specifically previously advised in an e-mail to Mr. Bose that he did not need or want that information and that Mr. Bose had insisted on including it in order to demonstrate to Mr. Vanjani what Jaina could and could not afford to pay by way of settlement. Moreover, he had also expressly stated . . that such financial information would obviously have to be made public and utilized if their negotiations did not produce a settlement.

2

That quote accurately describes how I came into possession of the now challenged information and the specific and express disclaimer of confidentiality I made to Mr. Bose in advance of receiving it in the event we did not arrive at the settlement he was seeking. The quote does not, however, include the reasons Mr. Bose was desperately seeking to come to an agreement with me, nor why, after we finally arrived at one, he was forced to repudiate it.

5.      Those reasons are briefly and accurately set forth in Mr. Solovay's affirmation in which he correctly notes that he has never seen, spoken to or otherwise communicated with Mr. Bose. I was the one Mr. Bose urgently approached and dealt with throughout. His urgency had been a function of the fact that by the time of his call to me Jaina had essentially ceased to operate because the New Defendants, with the assistance of Mr. Goldberg, had essentially shut down its operations and drained off its cash.

6.      Mr. Bose believed that the agreement he was seeking would permit him to bring in new investors and continue to operate Jaina (see Exhibit 1), and he and I had two essentially separate and distinct negotiations. In the first, on behalf of Jaina, while I was still under the impression that he, could, as he claimed, speak for it we reached an agreement that he essentially dictated and that was quite favorable to him and Jaina. At his insistence it was without lawyers, although I had sent a draft consisting primarily of his wishes to Mr. Solovay's office to be typed. However, just before it was signed it was disrupted by the news, surprising to both of us that Mr. Goldberg had just, without his authority and against his wishes, filed an appeal from the order confirming the arbitration award.

7.      When I pointed out that an agreement with Jaina made no sense under those circumstances Mr. Bose pleaded with me to enter into one with him individually. Before agreeing to negotiate it I urged that he retain a lawyer and after advising me that he was not

3

being represented by Mr. Goldberg, he told me he had retained Akhilesh Krishna, Esq. However, he rejected Mr. Solovay's request made through me to bring Mr. Krishna to a joint meeting of lawyers and clients to review the agreement before signing it based on an unwillingness to incur extra legal expenses in such a meeting and when that happened I insisted that a copy of the agreement be sent to Mr. Krishna before it was signed.

8.      Before signing it however, Mr. Bose told me he was going to discuss it with some of his shareholder/officers. Thereafter, he advised that he wouldn't sign it and subsequently, at a meeting he persuaded me to attend, he privately made a shamefaced explanation of why he was forced to repudiate it. As indicated in prior submissions herein, the reason was a threat from one of the New Defendants, Mahendra Shah, who controlled the building out of which Jaina operated. The threat was to shut down the building's power unless Mr. Bose instead of signing the settlement agreement, signed an affidavit drafted by Mr. Goldberg. There is no need for me to point out which document he chose to sign.

9.      It is apparent from the foregoing that the complaint allegations are essentially fraudulent fabrications. The most egregious of them, followed by a description of the true facts, are listed and, where appropriate, documented below:

**Fabrication A:     Mr. Solovay initiated the contact with Mr. Bose through me unlawfully thereby bypassing his attorney Joseph Goldberg**

10.     This is an easily demonstrable outright lie. Mr. Bose's first e-mail to me of December 22, 2014 (Exhibit 2) proves that it was he who had approached me and desperately wanted to discuss settlement for the reason set forth above. Moreover any ethical problems that were associated with settlement discussions were of Jaina's making and had nothing to do with New York Disciplinary Rules.

4

11.     A major such problem was that all of the New Defendants had approached and conducted purported settlement discussions with me.  None of them nor Mr. Goldberg had informed Mr. Solovay about this, despite their bitter complaint when that happened on their side.  But that didn't bother Mr. Solovay or me.  The real problem was that none of those discussions were conducted in good faith prior to those initiated by Mr. Bose.  In fact, while one of the worst of the New Defendants in terms of amount of funds money essentially stolen from Jaina was purporting to conduct settlement talks with me prior to the confirmation of the award, his wife was secretly (they thought) incorporating a company in New York with GCI's name in order to delay confirmation.

**Fabrication B:     Mr. Solovay drafted my reply dated January 1, 2015 to Mr. Bose's e-mail of December 31 2014**

12.     The e-mails (Exhibit 3) provide their own contradiction of that lie.  Mr. Bose's e-mail starts, "As discussed over the phone, I am sending you the documents you have requested so as to verify that financially we are very weak currently.  That is why I am requesting you to extend 3 to 4 months time."  It was not I, however, who initially requested a single document (see Exhibit 4).  What happened is that Mr. Bose, in that conversation, after initially urging documents on me that I said I didn't want and had no use for, had again volunteered during that phone conversation to give all these documents to convince GCI's Chairman, Mr. Kumar Bhavnani, to grant Mr. Bose's earlier requested extension of time for payment that he at first made and then thought better of.  I might add that Mr. Bhavnani reluctantly did give his approval to that requested extension of time and I forwarded that approval to Mr. Bose by my e-mail of January 6, 2015 (see Exhibit 5).

**Fabrication C:**   **Mr. Solovay drafted the Settlement and Forbearance Agreement and gave it to Mr. Bose without sharing it with his attorney, Mr. Goldberg**

13.     While the agreement wasn't "shared" with Mr. Goldberg there was no need to do so.  Because of the emphasis put on this it is worth repeating what I set forth above: That Prior to drafting it, Mr. Bose had said he was being represented by Akhilesh Krishna.  Then, after designating him in a writing saying he was not taking advice on the agreement from Mr. Goldberg (see Exhibit 6) and Mr. Solovay had pressed him, through me,  to have a joint meeting of clients and lawyers to review the agreement.  He declined because of the unnecessary cost, but at my insistence the agreement was sent to Mr. Krishna to review, after Mr. Bose confirmed that he had retained the services of Mr. Krishna (Exhibit 7).  It subsequently turned out that Mr. Krishna knew Mr. Goldberg well and was in close communication with him.

**Fabrication D:**    **Mr. Michael Shanker's subpoenas have driven Jaina out of business**

14.     This claim may be the most nonsensical of them all.  The complained-of traffic data information provided by Mr. Bose makes it clear that Jaina was essentially nonfunctional since around December 12, 2014 (see Exhibit 8), well before he first called me on December 22, 2014.  By that time virtually all Jaina's funds had been siphoned off by the New Defendants and secreted, which was what led Mr. Bose to call me and desperately seek a settlement that he thought would permit him to obtain new investors to replace the New Defendants and save the company he had founded.  In his December 28, 2014 e-mail (Exhibit 1, *supra*) he had suggested that GCI be one of his new shareholders, although I don't think he was surprised when I politely declined.

<u>CONCLUSION</u>

15.     While I feel some sympathy for the treatment that has been accorded Mr. Bose by his shareholders and funders, and for Mr. Troy, whose apparent probably inappropriate reasons

for bringing this absurd action are described in Mr. Solovay's affirmation, I must conclude by saying that their doing this is nevertheless so inexcusable that Mr. Solovay's cross-motion should be granted with an award of costs and legal fees.

Govind W. Vanjani

Sworn to before me this
17th day of May, 2015

Notary Public

NORMAN SOLOVAY
Notary Public, State of New York
No. 31-4947620
Qualified in New York County
Commission Expires February 27, 20__

Exhibit 206

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

GEO-GROUP COMMUNICATIONS, INC.,

                Petitioner,

    against

JAINA SYSTEMS NETWORK, INC.,

                Respondent.

---

Index Number 652219/2014
(Hon. Melvin L. Schweitzer, J)

**REPLY AFFIDAVIT OF**
**GOVIND W. VANJANI**

STATE OF NEW YORK  )
                    :ss:
COUNTY OF NEW YORK  )

    **GOVIND W. VANJANI,** being duly sworn, deposes and says:

    1.    I make this Affidavit on behalf of my company, petitioner Geo-Group Communications, Inc. ("GCI"), as a response to the February 10, 2015 letter of Joseph P. Goldberg, Esq. (the "Goldberg Letter"), attached as Exhibit 1.

    2.    The Goldberg Letter completely distorts the relevant facts which are accurately set forth in the February 2, 2015 Affirmation and Verified Petition of our lawyer, Norman Solovay, presently before the Court as part of our motion (the "Pending Sanctions Motion") dated February 3, 2015.

    3.    The Pending Sanctions Motion charges Mr. Goldberg with, among other things, subornation of perjury. However, the Goldberg Letter goes several steps beyond this by fabricating non-existent events and attempting to further stall matters so that his real clients who are named in the Pending Sanctions Motion as necessary Supplemental Respondents can secrete Jaina's assets that they have misappropriated while shutting it down.

4.    The Goldberg Letter threatens us with counterclaims for sanctions supposedly based on "five independent reasons" and I will respond to all of them.  However, some of the facts are relevant to more than one.  Accordingly, rather than dealing with them in sequence, I will deal first with his alleged Point Fourth and Point Fifth reasons which charge breaches of confidentiality of settlement negotiations.

5.    While unlike most of his other so-called "independent reasons," these two might seem to be superficially plausible a closer look at them confirms that they are nonsensical. They are based on the claim that I and our lawyer, Mr. Solovay, improperly circumvented Mr. Goldberg, as Mr. Bose's "representative," by failing to "copy" him on a proposed agreement.  However, Mr. Solovay, in a separate Affirmation accompanying mine, has correctly confirmed that he has never had any direct contact with Mr. Bose.  Moreover, Mr. Solovay's February 2, 2015 Affirmation referred to above has also correctly described (at paragraphs 26-29) the nature of my dealings with Mr. Bose which, at his insistence, were between the two of us without counsel.

6.    What is true of those dealings is that, for the reasons described in the Pending Sanctions Motion, Mr. Bose wanted no further part of Mr. Goldberg as his supposed lawyer. When I asked Mr. Bose how he could possibly have made those absurd claims in his affidavit about GCI owing Jaina money he responded that he had wanted to admit the money was owed and should be repaid but that his "partners" and lawyers said this was the "only defense we had" and pressed him to sign it.

7.    There were, good reasons, over and above Mr. Goldberg's subornation of perjury, why, by the time Mr. Bose urgently begged me in late December 2014 to discuss settlement with him personally and without lawyers, neither Mr. Bose nor I, nor Mr. Solovay, were willing to

discuss settlement with Mr. Goldberg. The reason is indicated in my e-mail of December 8, 2014 to Vipin Shah (annexed as Exhibit 2) responsive to his having previously pressed me to have what turned out to be unproductive personal settlement discussions. It was that Mr. Solovay had finally conducted a settlement discussion with Mr. Goldberg who had previously first insisted that any such discussion involve a mediator. When Mr. Solovay continued to decline, he urged Mr. Goldberg to make a written settlement proposal instead. Mr. Goldberg in turn insisted that Mr. Solovay make one first and promised that he would thereafter respond with his. However, when Mr. Solovay made what most would think of as a quite reasonable written offer, Mr. Goldberg broke his promise and didn't make any response.

8.   As the Pending Sanctions Motion makes clear I finally did, although with some reluctance, agree to discuss settlement with Mr. Bose. He then sent me an elaborate e-mail dated December 28, 2014 whose entire contents and included data can demolish many of the false arguments being made by Mr. Goldberg. I will not submit it now but will quote its opening sentences which read: "Thank you for being such a kind heart, for giving us an opportunity to submit a proposal. My intensions are clear, to recompense your every penny. And I believe I can make it happen only with your support."

9.   I had not asked for the information supplied in that December 28th e-mail which Mr. Bose insisted on presenting to confirm his claims as to what Jaina could and could not afford. However, I made it very clear in advance of receiving it that, if we did not end up with an agreement I would regard myself as free to have Mr. Solovay use it in our collection proceedings. I did say, as one of the few things Mr. Goldberg accurately quotes, that the banking and other statements would be available in discovery anyway. Moreover, my concessions in the first agreement we had tentatively reached had been based on those supporting documents. So at

some point they obviously should now be made available to the Court—although they have not yet been—as confirmation of the nature and extent of the outright lies being told by Mr. Goldberg and those Jaina shareholders and others who are his real clients.

10.    When, after extensive discussions, we arrived at what I first regarded as a tentative understanding I described it to Mr. Solovay and had him send me a typed draft reflecting it.  At that point, Mr. Solovay suggested that it should be made available to Mr. Bose's lawyer and I urged Mr. Bose to do so.   He however declined and Mr. Solovay's above-referenced February 2, 2015 Affirmation correctly describes how, after a long negotiation in the morning and afternoon of January 5, 2015, I, without having Mr. Bose meet with Mr. Solovay, had the initial agreement revised to reflect the very extensive and real concessions I had made to him.  (A copy of that agreement, which is between Mr. Bose both individually and through him with Jaina, is annexed as Exhibit 3.)

11.    However, when our signing was blown up by what Mr. Bose referred to as Mr. Goldberg's "unauthorized" filing of a notice of appeal from Justice Schweitzer's Order confirming the arbitration award, Mr. Bose advised me by e-mail of January 15, 2015 (annexed as Exhibit 4) that he had retained his own separate lawyer, Akhilesh Krishna, Esq.  It had become clear following and as a result of the blow-up that it made no sense for GCI to sign the agreement with Jaina since, as we learned, it had for all intents and purposes been shut down and would not be able to comply with it.  I then discussed and tentatively agreed with Mr. Bose on entering into that same agreement with him individually leaving GCI free however to pursue Jaina and the individuals whom Mr. Goldberg was clearly by then representing.

12.    Mr. Bose at first agreed and I urged him to meet with Mr. Krishna, me and Mr. Solovay to review and sign that individual agreement.  When he mentioned the unnecessary

and unwanted additional expense entailed in having his lawyer there and declined, I insisted that the agreement be forwarded to Mr. Krishna and my e-mail of January 21, 2015 doing so is annexed as Exhibit 5. Before signing that agreement to which we had both initially agreed, Mr. Bose advised me that he was going to be discussing it with his former shareholder/partners. A copy of that agreement is the one just produced and complained of by Mr. Goldberg in his threatening letter. But speaking of threats, I can vividly picture those made, probably along with some promises, which brought Mr. Bose back into the Jaina fold.

13.    Mr. Goldberg's remaining Point Second "reason" for seeking sanctions against us is that our attack on his repeatedly rejected attempts to vilify a careful, eminently fair and excellent arbitrator is, to use his word, "risible." I would however describe his attacks on our respected arbitrator as highly offensive and perhaps obnoxious.

14.    I would, however, adapt this "risible" description to two of Mr. Goldberg's arguments. The first, Mr. Goldberg's Point Third argument that we are to blame for the delay in confirmation by virtue of having to wait for GCI's re-authorization to do business in New York, would fit quite neatly into his "risible" category. For it ignores the extensive delay caused by Mr. Chopra's wife, Shalu Suri, incorporating a new corporation in New York with GCI's name while her husband, with Mr. Goldberg's help, was busy stealing millions from Jaina and shutting it down in order to make it more difficult to locate and retrieve those funds. The second is Mr. Goldberg's Point First denial of any conflict among Jaina's shareholders. I can guarantee that Mr. Bose's entire December 28th letter would make a mockery of that denial.

## Conclusion

15.    It should be clear enough by referring to the prior denials in my affidavits and those of my counsel that these and other lies represent desperate and frivolous attempts to avoid

payment of a long overdue debt.  I accordingly repeat here my earlier request that Jaina's deceitful lies and dishonesty should not be allowed to go unpunished.

_____

Govind W. Vanjani

Sworn to before me this
_____ day of February, 2015.

_____
Notary Public

NORMAN SOLOVAY
Notary Public, State of New York
No. 31-4947620
Qualified in New York County
Commission Expires February 27, 20__

6

# Exhibit 207

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

GEO-GROUP COMMUNICATIONS, INC.,                    Index Number 652219/2014
                                                   (Hon. Melvin L. Schweitzer, J)
                           Petitioner,

        against
                                                   **FORBEARANCE AGREEMENT**
JAINA SYSTEMS NETWORK, INC.,                        **AND STIPULATION OF**
                                                   **SETTLEMENT**
                           Respondent.

This Forbearance Agreement and Stipulation of Settlement ("Agreement") is entered into by and between Geo-Group Communications, Inc. ("Petitioner"), on the one hand and the founder and CEO of Jaina Systems Network, Inc. ("Jaina"), Surajit Bose ("Bose"), on the other, with respect to the following facts:

WHEREAS, Bose acknowledges the entry of a Decision & Order ("Order") in the above-referenced Court on December 2, 2014 granting the application for judgment in favor of the Petitioner and against Jaina and directing the Clerk to enter judgment in the sum of $1,249,654 plus costs and interest; and

WHEREAS, Bose acknowledges that, pursuant to the Order, Petitioner has submitted to the New York County Clerk, Judgment Desk ("Clerk") via the New York State Court Electronic Filing System (NYSCEF) a proposed judgment ("Judgment") in the amount of $1,249,654 plus costs of $600 and interest in the sum of $1,386,026.83 as of January 8, 2015, totaling $2,636,280.83 through January 8, 2015; and

WHEREAS, Bose acknowledges that the proposed judgment as submitted to the Clerk is true and correct in all material respects, and that upon entry thereof Jaina has no valid defense,

Forbearance Agreement 2015-01-21

objection, or basis to appeal the Judgment and is and shall be liable to Petitioner for the full amount thereof without any offset whatsoever, plus additional interest as it shall accrue after entry from day to day; and

WHEREAS, Bose acknowledges that as of the date hereof Petitioner was in process of preparing a motion requesting leave to serve a supplemental complaint pursuant to which it had a reasonable basis to hold him, Mahendra Shah, Ravi Chopra and Vipin Shah, all to be named as "Additional Necessary Defendants" personally responsible together with Jaina for the foregoing debt as well as for additional sums, including legal fees now due from Jaina presently totaling $2,936,280.83 and increasing as time goes by; and

WHEREAS, Jaina is not currently able to engage profitably in the ordinary course of its business and financial affairs by virtue of withdrawals of funds that have been made by and on behalf of shareholders by among others the Additional Necessary Defendants other than Bose; and

WHEREAS, Bose wishes to discharge his personal obligations under the Judgment by this Agreement upon the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual representations and covenants contained herein, the parties agree as follows:

1.      Bose hereby acknowledges and agrees to pay, and Petitioner agrees to accept in full settlement of all sums now or hereinafter otherwise due from him personally the sum of $2,936,280.83 providing it is timely paid pursuant to the annexed PAYMENT SCHEDULE APPENDIX by wire transfer to Petitioner's attorney pursuant to the following wire transfer instructions:

NYC TELECOMMUNICATIONS000489

ABA Routing No.:    021000089
Account No.:    4977133745
Account Name:    Norman Solovay Attorney Account
Bank:    Citibank, N.A.
    330 Madison Avenue
    New York, New York 10017

2.    If any sums are collected by Petitioner's anticipated further proceedings or by settlements with Jaina and/or with additional named defendants, they shall be credited against sums otherwise due from Bose hereunder, and if payment in full of the $2,936,280.83 is made, Bose shall have no further obligation hereunder, and a satisfaction of judgment with respect to the Judgment will be issued and filed by Petitioner with the Court.

3.    This Agreement records the complete understanding of the parties regarding the agreement memorialized herein and supersedes any and all prior or contemporaneous statements or communications regarding this matter, whether written or oral, all of which are merged into and survived solely by this Agreement.

4.    If any term or terms of this Agreement is held to be inoperative, invalid or void, the remainder shall be effective as if such term had not been contained herein.

5.    The parties have jointly participated in the drafting of this Agreement and accordingly the Agreement shall not be construed against any party as draftsperson.

6.    All parties hereto have consulted with an attorney of their choice regarding the advisability of entering into this Agreement.

7.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their legal representatives, successors, and assigns.

8.    This Agreement shall be governed by the law of the State of New York without reference to its conflict of laws, provisions, and jurisdiction and venue of any disputes arising out of this Agreement shall be in the state or federal courts located in New York, New York.

9.       This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same agreement. Facsimile copies of this Agreement shall be deemed the same as originals for all purposes.

**AGREED:**

**GEO-GROUP COMMUNICATIONS, INC.,**

By: _____          _____    _____

 Govind Vanjani
 President


 Surajit Bose          _____    _____

## PAYMENT SCHEDULE APPENDIX

STATE OF NEW YORK        )
                                            :ss:
COUNTY OF _____  )

Surajit Bose, being duly sworn, deposes and says:

I am executing this Payment Schedule Appendix to confirm both the accuracy of the facts stated in the annexed Agreement and the following schedule pursuant to which I personally have committed to make the settlement payments totaling $2,936,280.83 provided for therein:

1.      A first payment of $200,000.00 is to be made on or before January 31, 2015.

2.      A second payment of $500,000.00 is to be made on or before February 28, 2015.

3.      A third payment of $500,000.00 is to be made on or before March 31, 2015.

4.      A fourth payment of $300,000.00 is to be made on or before April 30, 2015.

5.      After the first four payments have been made, the principal balance will be $1,436,280.83, which will continue to accrue interest per confirmed Award and will be paid within thirty-six (36) months after the due date of the fourth payment, to wit: April 30, 2018.

6.      An interest payment of $16,000.00 per month on the principal balance will be made on or before the last day of each month until the principal balance has been paid in full.

7.      If and when any partial payments of the principal balance have been made, the monthly interest payment will be reduced proportionately.

8.      All the payments described above will be made by wire transfer to:

ABA Routing No.:     021000089
Account No.:           4977133745
Account Name:        Norman Solovay Attorney Account
Bank:                      Citibank, N.A.
                             330 Madison Avenue
                             New York, New York 10017

NYC TELECOMMUNICATIONS000492

This Agreement and its annexed Payment Schedule Appendix is intended to and shall constitute a special promise to answer for the debt of another within the meaning of section 5-701(a)(2) of the New York General Obligations Law.

Surajit Bose

Sworn to before me this
_____ day of January, 2015

_____
Notary Public

# Exhibit 208

7/22/2017                                                          (26 unread) - m⁻⁻¹²⁹@yahoo.com - Yahoo Mail

**From:** Surajit Bose
**Sent:** 28 October 2015 22:25
**To:** Vipin Shah (vipin1029@gmail.com) <vipin1029@gmail.com> Mahendra Shah (mi629@yahoo.com) <mi629@yahoo.com>
**Subject:** Resignation

October 28, 2015

Jaina Systems Network, Inc.
235 Hillside Avenue
Williston Park, NY

Attn.: Mehendra Shah
      President

Dear Sir:

Please accept this letter as my resignation of my position as the CEO of Jaina Systems Network, Inc. (Jaina). This resignation is effective as of 12:01a.m. on Thursday, October 29, 2015.

As you know, I am still a shareholder of Jaina, with an ownership interest of  25% of all outstanding shares. As a shareholder, I shall continue to assist Jaina as we move forward to rebuild our customer base and improve our cash-flow in order to start re-payment to our creditors.

I fully recognize my duties as a shareholder to act in a manner consistent with the business objectives of Jaina. I shall be providing the necessary passwords and computer and switch manuals.

Respectfully,

**Surajit Bose**
Jaina

USA: O: +1 516 2483870 ext 210   |   C: +1 516 5038811   |  India Mob: +91 9748736445

Exhibit 209

FILED: NEW YORK COUNTY CLERK 09/26/2014 11:33 AM
NYSCEF DOC. NO. 41

INDEX NO. 652219/2014

RECEIVED NYSCEF: 09/26/2014

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

GEO-GROUP COMMUNICATIONS, INC.,

                              Petitioner,

against

JAINA SYSTEMS NETWORK, INC.,

                            Respondent.

Index Number 652219/2014
(Hon. Melvin L. Schweitzer, J)

**AFFIDAVIT OF GOVIND W.**
**VANJANI**

STATE OF NEW YORK     )
                             :ss:
COUNTY OF NEW YORK  )

    **GOVIND W. VANJANI**, being duly sworn, deposes and says:

    1.    I am the President and founder of Petitioner, Geo-Group Communications, Inc. ("GCI") and make this affidavit for two purposes: First, to explain why the present motion of Respondent Jaina Systems Network, Inc. ("Jaina") to vacate GCI's arbitration award (the "Arbitration Award") (Exhibit 1) is frivolous and second to request that, in addition to denying the present motion and confirming the arbitration award, sanctions should be imposed on the Jaina officers who submitted affidavits supporting the motion because they can be shown to contain deliberately false and fabricated information.

    2.    As indicated in the answering affidavit of GCI's counsel, Norman Solovay, Jaina had never throughout the arbitration contested that its founder and CEO, Surajit Bose, had promised on December 16, 2010 to pay GCI $1,249,654 (Exhibit 2) and many times thereafter, including Jaina's offer of September 26, 2011 to pay $2,250,000 out of a proposed IPO (which never went forward) while again acknowledging the $1,250,000 debt (Exhibit 3). Nor was it