–

Philip J. Loree Jr. (PL-2213)
Loree & Loree
830 Third Avenue, 5th Floor
New York, New York 10022
(646) 253-0560
(516) 627-1720 (alt.)
(516) 941-6094 (mobile)


*Counsel for Plaintiff Geo-Group
Communications, Inc.*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GEO-GROUP COMMUNICATIONS, INC.,

                  Plaintiff,             Index No. 15-cv-01756
                                           (KPF)

-v.-

RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC;
NYC TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### GEO-GROUP'S RESPONSE TO DEFENDANTS CHOPRA'S AND NYC TELECOM'S RULE 56.1 STATEMENT

       Pursuant to Federal Rule of Civil Procedure 56(c), Rule 56.1 of the Local

Civil Rules of United States District Courts for the Southern and Eastern

Districts of New York, and Rule 5.C of  this Court's Individual Rules of Practice

in Civil Cases, Plaintiff Geo-Group Communications, Inc. ("Geo-Group")

respectfully submit in opposition to the summary judgment motions of

Defendants Ravi Chopra ("Chopra" or "R. Chopra"), NYC Telecmmunications Corp ("NYC Telecom"), Mahendra Shah ("M. Shah"), and Vipin Shah ("V. Shah")) (collectively, the "Movants" or the "Defendants")) this Combined Response and Counterstatement to the Rule 56.1 Statement Chopra and NYC Telecom have filed in support of their motions.

<u>RESPONSE TO R. CHOPRA/NYC TELECOM'S RULE 51.6 STATEMENT</u>

1.  **R. Chopra/NYC Telecom ¶ 1:** Jaina Network Systems [sic] is a New York Corporation. Siddiqi Dec. Ex. D.

**Geo-Group Response:** Admit.

2.  **R. Chopra/NYC Telecom ¶ 2:** Ravi Chopra is not and has never been a shareholder of Jaina. Chopra Dec. ¶ 6.

**Geo-Group Response: Deny.** While Chopra denies he ever became a shareholder in Jaina, circumstances suggest otherwise. First, Surajit Bose explained in an email that Frank Vella, one of Jaina's former shareholders, left the company in 2011 and Jaina never paid him any "compensation or returns." (See Certification of Govind Vanjani, executed on January 24, 2018 (the "Vanjani Cert."), ¶ 50 & Ex. H, S. Bose 12/28/2014 email to G. Vanjani at NYC CHOPRA 000325). That raises a question concerning what became of Mr. Vella's shares, and none of the defendants has provided a satisfactory answer, other than to insist that F. Vella never left the company in 2011. (Vanjani Cert., ¶ 50; M. Shah Tr. at 249.) Jaina's assertions that Jaina always had four

shareholders (including Mr. Vella), each with a 25% interest in the company, is supported by 2011 and 2012 tax returns, but cannot be reconciled with its 2013, 2014, and 2015 tax returns. Internal Revenue Service ("IRS") Form 1120, Schedule K, line 4.b queries whether "any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote?" and states "If 'Yes,' complete Part II of Schedule G Form 1120[,]" which requires the taxpayer to identify each "individual or estate" that holds such ownership and voting interests in the company. Jaina answered this query "yes" in 2011 and 2012, and provided the required disclosure of its shareholders and their respective interests in Part II of Schedule G of those returns. But in 2013, 2014, and 2015, Jaina answered the query "no," and provided no disclosure. (Vanjani Cert. ¶¶ 54-56 & Ex. I, Jaina's 2011 Tax Return, Form 1120, Schedule K., line 4.b at NYC-CHOPRA 000031; Ex. I, Jaina's 2011 Tax Return, Form 1120, Schedule G, Part II, at NYC-CHOPRA 000035; Ex. J, Jaina's 2012 Tax Return, Form 1120, Schedule K., line 4.b at NYC-CHOPRA 000047; Ex. J, Jaina's 2012 Tax Return, Form 1120, Schedule G, Part II, at NYC-CHOPRA 000051; and Exs. K, L, and M.)  Unless Jaina is lying to the Federal Government, it must have added shareholders to the company beginning in 2013, a time that corresponds with that during which Mr. Chopra was taking an active role in Jaina's affairs, and investing heavily in the company via alleged "loans" made by companies he owns and controls, including NYC Telecom. (Vanjani Cert. ¶ 57) Mr. Chopra had a motive to become a shareholder because of his

substantial financial investment in the company and his experience in the
telecom business, and his other actions demonstrate that he behaved more like
a shareholder than Jaina's other shareholders (with the possible exception of
Mr. Bose). (See Vanjani Cert., ¶¶ 44 -53) Mr. Chopra also admits that in 2013
or 2014 he met with Jaina to discuss possibly becoming a shareholder of
Jaina, even though he contends he never became one. (Deposition of Transcript
of August 29, 2017 Deposition of Defendants R. Chopra and NYC
Telecommunications, Inc. ("Chopra Vol I Tr.") at 49-51. Chopra's deposition
testimony demonstrates that he was very impressed with Jaina, and
understood that if he was able to procure a $3-4 million business line of credit
for Jaina, he stood to make about $200,000, and achieve other economic
benefits. (Chopra Vol I Tr. at 145-48; Chopra Vol. II Tr. at 225-28)

3.   **R. Chopra/NYC Telecom ¶ 3:** Ravi Chopra is not and has never
been a director of Jaina. Chopra Dec. ¶ 6.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of
Chopra having been a director of Jaina. .

4.   **R. Chopra/NYC Telecom ¶ 4:** Ravi Chopra is not and has never
been an officer of Jaina. Chopra Dec. ¶ 6.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of
Chopra having been an officer of Jaina.

5.   **R. Chopra/NYC Telecom ¶ 5:** Ravi Chopra has never held any
signing authority with respect to any bank accounts held in the name of

Jaina. Chopra Dec. ¶ 8.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of Chopra having such signing authority. .

6. **R. Chopra/NYC Telecom ¶ 6:** Prior to the confirmation of GCI's award no negotiations were being undertaken by Ravi Chopra and Jaina whereby Ravi Chopra would become a shareholder. Chopra Dec. ¶ 7.

**Geo-Group Response:** Deny. For the reasons, and based on the evidence, cited in Geo-Group's paragraph 2, above, response, a jury would not have to credit R. Chopra's self-serving denial of the existence of negotiations about Chopra becoming a shareholder. In addition, Mr. Chopra admits that in 2013 or 2014 he had discussed with Jaina the possiblity, but that he decided against it. (Chopra Vol I Tr. at 49-51.) That meeting had to have taken place prior to the confirmation of the arbitration award (the "Award") because Chopra testified that it was his business associate, Mr. Jagdish Alwani, who suggested that he should meet with Jaina to discuss that matter, and in or about Valentines Day, February 2014, Mr. Alwani went into a coma, and passed a way without ever having woken from the coma. (Chopra Vol I. Tr at 49-51; Transcript of Surjeet Singh September 15, 2017 Deposition ("Singh Tr.") at 18, 41-42.) The Award was confirmed as a result of a Court Order dated December 2, 2014, and no judgment was entered on it until April 2015. (Vanjani Cert., at ¶¶ 88-89 & Exs. V, W)

7. **R. Chopra/NYC Telecom ¶ 7:** Ravi Chopra is not related by

consanguinity or marriage to Mahendra Shah, Vipin Shah, Nayana Shah, Surajit Bose or Frank Vela. Chopra Dec. ¶ 10.

**Geo-Group Response:** Admit.

8.   **R. Chopra/NYC Telecom ¶ 8:** On May 30, 2013 GCI commenced an arbitration proceeding against Jaina which terminated on July 10, 2014 with the arbitrator making an award to GCI in the amount of $1,249,654.00. Complaint ¶ 2.

**Geo-Group Response:** Admit, except the "arbitration proceeding" did not "terminate" until the arbitrator (the "Arbitrator") and JAMS resolved the two motions for reconsideration Jaina made on July 24 and August 8, 2014 (which were denied by the Arbitrator on August 18, 2014; and the motion to disqualify the Arbitrator for purported evident partiality (which Jaina made on September 2, 2014, and denied by JAMS on September 24, 2014).  (See Vanjani Cert., ¶ 86 & Exs. R, S, & T.)

9.   **R. Chopra/NYC Telecom ¶ 9:** On July 20, 2014 GCI commenced a special proceeding before the Supreme Court of the State of New York, County of New York to confirm its award. Complaint ¶ 2.

**Geo-Group Response:** Admit.

10.   **R. Chopra/NYC Telecom ¶ 10:** On April 3, the Supreme Court of the State of New York entered a judgment in favor of GCI in the amount of $2,712,175.51. Complaint ¶ 3-4.

**Geo-Group Response:** Admit.

11. **R. Chopra/NYC Telecom ¶ 11:** NYC Telecommunications Corp d/b/a STI Phone Card Warehouse ("NYC Telecommunications") is a New York Corporation. Chopra Dec. ¶¶ 1-2.

**Geo-Group Response:** Admit. .

12. **R. Chopra/NYC Telecom ¶ 12:** Ravi Chopra is the sole shareholder, director and officer of NYC Telecommunications. Chopra Dec. ¶ 2.

**Geo-Group Response:** Admit.

13. **R. Chopra/NYC Telecom ¶ 13:** NYC Telecommunications is primarily in the business of selling phone cards and phone card SIMs. Chopra Dec.¶ 3.

**Geo-Group Response:** Admit.

14. **R. Chopra/NYC Telecom ¶ 14:** New York Main Street Consultants is a New York Corporation. Chopra Dec. ¶ 4.

**Geo-Group Response:** Admit.

15. **R. Chopra/NYC Telecom ¶ 15:** Ravi Chopra is the sole shareholder, director and officer of New York Main Street Consultants. Chopra Dec.¶ 4.

**Geo-Group Response:** Admit.

16. **R. Chopra/NYC Telecom ¶ 16:** STI Consultants is primarily engaged in the business of brokering and making commercial and residential

loans. Chopra Dec. ¶ 5.

**Geo-Group Response:** Admit that STI Consultants is primarily engaged in the business of brokering and making commercial and residential real estate loans. (Chopra Tr. at 43-44, 83)

*The Robinson Brog Transfers*

17. **R. Chopra/NYC Telecom ¶ 17:** Robinson Brog Leinwand Greene Genovese & Gluck, P.C. ("Robinson Brog") is a law firm with offices in New York City. Affidavit of Mitchell Greene ("Greene Aff.") ¶ 1.

**Geo-Group Response:** Admit.

18. **R. Chopra/NYC Telecom ¶ 18:** Ravi Chopra is not and has never been a client of Robinson Brog. Greene Aff ¶ 5; Chopra Dec. ¶ 12.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such an attorney client relationship.

19. **R. Chopra/NYC Telecom ¶ 19:** NYC Telecommunications is not and has never been client of Robinson Brog. Greene Aff ¶ 5; Chopra Dec. ¶ 14.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such an attorney client relationship.

20. **R. Chopra/NYC Telecom ¶ 20:** Ravi Chopra is not and has never been indebted to Robinson Brog. Greene Aff; Chopra Dec. ¶ 11.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of

8

such indebtedness.

21. **R. Chopra/NYC Telecom ¶ 21:** NYC Telecommunications is not and has never been indebted to Robinson Brog. Greene Aff ¶ 5; Chopra Dec. ¶ 13.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such indebtedness.

22. **R. Chopra/NYC Telecom ¶ 22:** TD Time[1], Inc. ("TD Time") is a New York City based business. Siddiqi Dec. Ex. A (Transcript of Deposition of Surjeet Singh conducted in this case on September 15, 2017 ("S. Singh Tr."), at 12).).

**Geo-Group Response:** Admit.

23. **R. Chopra/NYC Telecom ¶ 23:** The owner of TD Time is Surjeet Singh. Siddiqi Dec. Ex. A (S. Singh Tr. 11).

**Geo-Group Response:** Admit.

24. **R. Chopra/NYC Telecom ¶ 24:** TD Time is engaged in the business of real estate and the wholesale of cell phones. Siddiqi Dec. Ex. A (S. Singh Tr. 11).

**Geo-Group Response:** Admit.

25. **R. Chopra/NYC Telecom ¶ 25:** Ravi Chopra does not and has

---

[1] TD Time has also been transcribed at various times as TD Timing.

never had an ownership interest in TD Time. Chopra Dec. ¶ 17.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of Chopra having such an ownership interest.

26. **R. Chopra/NYC Telecom ¶ 26:** NYC Telecommunications does not and has never had an ownership interest in TD Time. Chopra Dec. ¶ 18.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of NYC Telecom having such an ownership interest..

27. **R. Chopra/NYC Telecom ¶ 27:** Mr. Singh initially only met Ravi Chopra  in 2017  and at a social event. Siddiqi Dec. Ex. A (S. Singh Tr. 10).

**Geo-Group Response:** Admit.

28. **R. Chopra/NYC Telecom ¶ 28:** Vision Impex[2], Ltd ("Vision Impex") is a no longer active trading company that was run by Dalip Kumar. Siddiqi Dec. Ex. B (Transcript of Deposition of Dalip Kumar conducted in this case on September 15, 2017 ("D. Kumar Tr."), at 13)

**Geo-Group Response:** Admit.

29.  **R. Chopra/NYC Telecom ¶ 29:** Ravi Chopra does not have and has never had an ownership interest in Vision Impex. Chopra Dec.¶ 15.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of Chopra having such an ownership interest. .

---

[2] Vision Impex has also been transcribed at various times as Vision Impacts

30. **R. Chopra/NYC Telecom ¶ 30:** NYC Telecommunications does not have and has never had an ownership interest in Vision Impex. Chopra Dec. ¶ 16.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of NYC Telecom having such an ownership interest.

31. **R. Chopra/NYC Telecom ¶ 31:** Dalip Kumar's last business association with Chopra dates back to the 1990s at which time Mr. Kumar owned a grocery store and Chopra sold him produce. Siddiqi Dec. Ex. B (D. Kumar Tr. 8-11)

**Geo-Group Response:** Deny. Kumar testified that he knew Chopra for "a long time back, it's like 20 years[]" (Transcript of the September 15, 2017 deposition of Dalip Kumar ("Kumar Tr.") at 7), and that Chopra was the only person he had communications with concerning any payment transactions between Vision Impex and Jaina, including payment of money to Robinson Brog. (Kumar Tr. at 32-35.)

32. **R. Chopra/NYC Telecom ¶ 32:** At a certain point in time Jagdish Alwani, Jaina's external accountant, solicited certain loans from TD Time on behalf of Jaina. Siddiqi Dec. Ex. A (S. Singh Tr. 14).

**Geo-Group Response:** Admit.

33. **R. Chopra/NYC Telecom ¶ 33:** Vision Impex undertook to guaranty the loans that TD Time was making to Jaina. Siddiqi Dec. Ex. A (S. Singh Tr. 16-17).

**Geo-Group Response:** Deny. The cited testimony does not establish that this fact is undisputed. Vision Impex and TD Time did not enter into a written contract of guaranty under which Vision Impex undertook to answer to TD Time for the debt or default of Jaina. *See* New York Gen. Oblig. Law § 5-701(2) (statute of frauds). (Singh Tr. at 61-62)  The referenced "loans" are not evidenced by any written agreement;  Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's tax returns, even though Singh testified that none of the  "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15.)

34.  **R. Chopra/NYC Telecom ¶ 34:** On or about October 23, 2013 TD Time wired as a loan to Jaina $60,000.00 directly to Jaina's bank account.

Siddiqi Dec. Ex. A (S. Singh Tr. 35-36).

**Geo-Group Response:** Admit only that "On or about October 23, 2013
TD Time wired" $60,000.00 directly to Jaina's bank account. The cited
testimony does not establish as an undisputed fact that the $60,000.00
payment was a "loan." The referenced "loan" is not evidenced by any written
agreement, Mr. Singh concedes that there is no written agreement evidencing
this "loan" or any other "loan" between TD Time and Jaina; neither this "loan,"
nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or
on any of Jaina's other tax returns, even though Singh testified that none of
the  "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62;
Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in
those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M.
Shah filed in the Eastern District of New York, each of the Shahs claims to be
liable for have "guaranteed" Jaina's debts, and each is claiming to be
personally liable for more than $13,000.000.00 of debt incurred by Jaina.  The
detailed schedules M. Shah, V. Shah, and N. Shah submitted to the
Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus
the Shahs owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's
current company, LLC Innovations, even though Singh claims Jaina owes him
or his company $250,000.00, and Kumar claims Jaina owes him or his
business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

35.  On or about October 24, 2013 TD Time wired $41,000.00 directly
to Jaina's bank account as a loan to Jaina.  Siddiqi Dec. Ex. A (S. Singh Tr.

30-31).

**Geo-Group Response:** Admit only that "On or about October 24, 2013 TD Time wired" $41,000.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs). In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

36.  On or about December 4, 2013 TD Time wired $50,150.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. A (S. Singh Tr.

35).

**Geo-Group Response:** Admit only that "On or about December 4, 2013 TD Time wired" $50,150.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the  payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the  "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

37.  On or about December 30, 2013 TD Time wired $100,250.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. A (S.

Singh Tr. 34).

**Geo-Group Response:** Admit only that "On or about December 30, 2013 TD Time wired" $100,250..00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the  payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the  "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

38.  On or about January 22, 2014 TD Time wired $102,500.00 directly to Jaina's bank account . Siddiqi Dec. Ex. A (S. Singh Tr. 40).

**Geo-Group Response:** Admit only that "On or about January 22, 2014 TD Time wired" $102,500.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the  payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the  "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00.

39.  On or about January 29, 2014 TD Time wired $211,500.00 directly to Jaina's bank. The funds were transferred on the instruction of Vision Impex,  in satisfaction of debt owed to Vision Impex and were intended to be a

loan by Vision Impex to Jaina. Siddiqi Dec. Ex. A (S. Singh Tr. 32).

**Geo-Group Response:** Admit only that "On or about January 29, 2014 TD Time wired" $211,500.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs). In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

40.  On or about April 25, 2014 Vision Impex wired $249,100.00 directly to Jaina's bank account as a loan to Jaina.  Siddiqi Dec. Ex. B (D.

Kumar Tr. 37-38).

**Geo-Group Response:** Admit only that "On or about April 25, 2014 Vision Impex wired" $249,100.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Singh concedes that there is no written agreement evidencing this "loan" or any other "loan" between TD Time and Jaina; neither this "loan," nor any other "loans" from TD Time are reported on Jaina's 2013 tax return, or on any of Jaina's other tax returns, even though Singh testified that none of the "loans" TD Time made to Singh were ever repaid. (Singh Tr. at 34, 61-62; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15) (

41.  On or about May 9, 2014 Vision Impex wired $201,450.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. B (D. Kumar Tr.

19

47).

**Geo-Group Response:** Admit only that "On or about May 9, 2014 Vision Impex wired "201,450.00" directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" between Vision Impex and Jaina; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns, even though Kumar testified that Jaina still owes him money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

42.  On or about May 22, 2014 Vision Impex wired $198,500.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. B (D.

Kumar Tr. 47-48).

**Geo-Group Response:** Admit only that "On or about May 22, 2014
Vision Impex wired 198,500.00 directly to Jaina's bank account. The cited
testimony does not establish as an undisputed fact that the  payment was a
"loan." The referenced "loan" is not evidenced by any written agreement, Mr.
Kumar concedes that there is no written agreement evidencing this "loan" or
any other "loan" between Vision Impex and Jaina; neither this "loan," nor any
other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any
of its other tax returns, even though Kumar testified that Jaina still owes him
money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited
portions of the exhibits cited in those paragraphs).  In the bankruptcy
proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New
York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts,
and each is claiming to be personally liable for more than $13,000.000.00 of
debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah
submitted to the Bankruptcy Court under penalty of perjury do not claim that
Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision
Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even
though Singh claims Jaina owes him or his company $250,000.00, and Kumar
claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at
18; Kumar Tr. at 15)

43.  On or about August 22, 2014 Vision Impex wired $49,220.00
directly to Jaina's bank account as a loan to Jaina.  Siddiqi Dec. Ex. B (D.

Kumar Tr. 42).

**Geo-Group Response:** Admit only that "On or about August 22, 2014 Vision Impex wired $49,220.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" between Vision Impex and Jaina; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns, even though Kumar testified that Jaina still owes him money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

44.   On or about September 23, 2014, Vision Impex wired $190,200.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. B (D. Kumar Tr. 46).

**Geo-Group Response:** Admit only that "On or about September 23, 2014, Vision Impex wired $190,200.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" between Vision Impex and Jaina; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns, even though Kumar testified that Jaina still owes him money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at

23

18; Kumar Tr. at 15)

45.   On or about October 16, 2014 Vision Impex wired $102,500.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. B (D. Kumar Tr. 43).

**Geo-Group Response:** Admit only that "On or about October 16, 2014, Vision Impex wired $102,500.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" between Vision Impex and Jaina; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns, even though Kumar testified that Jaina still owes him money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even

though Singh claims Jaina owes him or his company $250,000.00, and Kumar claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at 18; Kumar Tr. at 15)

46.   On or about November 3, 2014 Vision Impex wired $105,600.00 directly to Jaina's bank account as a loan to Jaina. Siddiqi Dec. Ex. B (D. Kumar Tr. 44).

**Geo-Group Response:** Admit only that "On or about November 23, 2014, Vision Impex wired $105,600.00 directly to Jaina's bank account. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" between Vision Impex and Jaina; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns, even though Kumar testified that Jaina still owes him money. (Kumar Tr. at 15; Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).  In the bankruptcy proceedings V. Shah, N. Shah, and M. Shah filed in the Eastern District of New York, each of the Shahs claims to be liable for have "guaranteed" Jaina's debts, and each is claiming to be personally liable for more than $13,000.000.00 of debt incurred by Jaina. The detailed schedules M. Shah, V. Shah, and N. Shah submitted to the Bankruptcy Court under penalty of perjury do not claim that

Jaina, and thus the Shahs (as guarantors), owed any debt to TD Time, Vision

Impex, Singh, Kumar, or Kumar's current company, LLC Innovations, even

though Singh claims Jaina owes him or his company $250,000.00, and Kumar

claims Jaina owes him or his business more than $200,000.00. (Singh Tr. at

18; Kumar Tr. at 15)

47.   Robinson Brog is a law firm that was retained by Vision Impex.

Siddiqi Dec. Ex. B (D. Kumar Tr. 16-17); Greene Aff. ¶ 3.

**Geo-Group Response:** Admit.

48.   With respect to loan repayments Vision Impex dealt with Jagdish

Singh and Surjeet Bose. Siddiqi Dec. Ex. B (D. Kumar Tr. 28-29).

**Geo-Group Response:** Deny. Vision Impex dealt only with Ravi Chopra

once Jagdish went into a coma in February 2014. (Kumar Tr. 30-31, 33, 50)

49.   Vision Impex directed Jaina to transfer loan repayments to the

escrow account of Robinson Brog. Siddiqi Dec. Ex. B (D. Kumar Tr. 16-17,

31-32); Greene Aff. ¶ 3.

**Geo-Group Response:** Deny. Vision Impex dealt only with Ravi Chopra

once Jagdish went into a coma in February 2014. He only met Bose once.

(Kumar Tr. 30-31, 33, 50)

50.   Jagdish Singh was provided with the wiring instructions to

Robinson Brog (page 54). Siddiqi Dec. Ex. B (D. Kumar Tr. 54).

51.   **Geo-Group Response:** Admit that Jagdish was provided with wire

instructions, but that after Jagdish went into a coma in February 2014, Vision Impex dealt only with Ravi Chopra concerning the transfers.. (Kumar Tr. 30-31, 33, 50)

52.   Ravi Chopra has never received any funds from Robinson Brog. Chopra Dec. ¶ 21.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge that such funds were received. .

53.   NYC Telecommunications has never received any funds from Robinson Brog. Chopra Dec. ¶ 22.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge that such funds were received. .

54.   Neither Ravi Chopra nor NYC Telecommunications have ever received any funds from TD Time or Vision Impex. Chopra Dec. ¶¶ 19-20.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge that such funds were received. .

*The STI Transfers*

55.  New York Mainstreet Consulting, Inc. d/b/a STI Consultants ("STI Consultants") is a New York corporation. Chopra Dec. ¶ 4.

**Geo-Group Response:** Admit.

56.  Ravi Chopra is the sole shareholder, director and officer of STI Consultants. Chopra Dec. ¶ 4.

**Geo-Group Response:** Admit.

57.  The transfer to STI Consultants listed in paragraph 27 in the amount of $25,000 and on September 18, 2014 was reversed and was never received by STI Consultants. Chopra Dec.¶ 26.

**Geo-Group Response:** Admit.

58.  On or about January 4, 2013 STI Consultants loaned Jaina $20,000.00. Chopra Dec. ¶ 23.

**Geo-Group Response:** Admit only that "On or about January 4, 2013 STI Consultants wired or sent funds to Jaina. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement, Mr. Kumar concedes that there is no written agreement evidencing this "loan" or any other "loan" from STI Consultants ; neither this "loan," nor any other "loans" from Vision Impex are reported on Jaina's 2014 tax return, or any of its other tax returns. (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs).

59.  On or about January 10, 2013 STI Consultants loaned Jaina $9,500.00. Chopra Dec. ¶ 24.

**Geo-Group Response:** Admit only that "On or about January 10, 2013 STI Consultants wired or sent funds to Jaina. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement;  and neither this "loan," nor

any other "loans" from STI Consultants are reported on Jaina's 2014 tax return, or any of its other tax returns. (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs)).

60.   On or about January 8, 2014 STI Consultants loaned Jaina $100,000.00. Chopra Dec. ¶ 25.

**Geo-Group Response:** Admit only that "On or about January 8, 2013 STI Consultants wired or sent funds to Jaina. The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement;  and neither this "loan," nor any other "loans" from STI Consultants are reported on Jaina's 2014 tax return, or any of its other tax returns. (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs)).

61.   STI Consultants is not and has never been a client of Jaina. Chopra Dec. ¶ 29.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of STI having a past or present client relationship.

62.  STI Consultants is not and has never been indebted to Jaina. Chopra Dec. ¶ 25.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of STI Consultants being or having been indebted to Jaina.

63.  The transfers made to STI Consultants were made to satisfy Jaina's antecedent debt to New York Main Street Consulting. Chopra Dec. ¶

28.

The cited testimony does not establish as an undisputed fact that the payment was a "loan." The referenced "loan" is not evidenced by any written agreement;  and neither this "loan," nor any other "loans" from STI Consultants or New York Main Street Consulting are reported on Jaina's 2014 tax return, or any of its other tax returns. (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs)).

*The NYC Telecommunications Transfers*

64.  The transfer to NYC Telecommunications listed in paragraph 31of the Complaint as being in the amount of $6,000 and as having occurred on December 11, 2013 does not appear on Jaina's bank statement. Chopra Dec.¶ 26.

**Geo-Group Response:** Admit.

65.  NYC Telecommunications is not a vendor, supplier or customer of Jaina. Complaint ¶

**Geo-Group Response:** Deny. Chopra has testified that NYC provides services to Jaina. (Chopra Vol. 1 Tr. at 145-48;  Chopra Vol. II Tr. at 225-28).

66.  Tricom is a New York limited liability company, managed by Charang Narang, which is involved in the sale and distribution of telecommunication products. Declaration of Charang Narang "Narang Dec.) ¶¶ 1, 4.

Geo-Group Response: Admit.

67.  Tricom is not and has never been a client of Jaina Networks, Inc. and has never been indebted to Jaina. Narang Dec. ¶¶ 5-6, 12.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such a client relationship.

68.  Ravi Chopra does not own and has never had an ownership interest in Tricom. Narang Dec. ¶ 2.

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such ownership interest,

69.  NYC Telecommunications does not own and has never had an ownership interest in Tricom. Narang Dec. ¶ 3.

**Geo-Group Response:** Admit.

70.  On or about January 4, 2013 NYC Telecommunications loaned $25,000.00 to Jaina. Chopra Dec. ¶ 33.

**Geo-Group Response:** Admit only that "On or about January 4, 2013 NYC Telecommunications" paid $25,000.00 to Jaina. The referenced "loan" is not evidenced by any written agreement, there is no written agreement evidencing this "loan" or any other "loan" between NYC Telecom and Jaina; and neither this "loan," nor any other "loans" from NYC Telecom are reported on Jaina's tax returns (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs))

71.  On or about November 15, 2013 NYC Telecommunications loaned

31

$45,088.00 to Jaina. Chopra Dec. ¶ 34.

**Geo-Group Response:** Admit only that "On or about January 4, 2013 NYC Telecommunications" paid $25,000.00 to Jaina. The referenced "loan" is not evidenced by any written agreement, there is no written agreement evidencing this "loan" or any other "loan" between NYC Telecom and Jaina; and neither this "loan," nor any other "loans" from NYC Telecom are reported on Jaina's tax returns (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs))

72.   On or about January 8, 2014 NYC Telecommunications loaned $100,000.00 to Jaina. Chopra Dec. ¶ 35.

**Geo-Group Response:** Admit only that "On or about January 4, 2013 NYC Telecommunications" paid $25,000.00 to Jaina. The referenced "loan" is not evidenced by any written agreement, there is no written agreement evidencing this "loan" or any other "loan" between NYC Telecom and Jaina; and neither this "loan," nor any other "loans" from NYC Telecom are reported on Jaina's tax returns (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs))

73.   On or about October 23, 2014 Tricom wired $182,500.00 to Jaina on behalf of NYC Telecommunications and in satisfaction of its debt to NYC Telecommunications. Chopra Dec. ¶¶ 36, 38, 39; Narang Dec. ¶¶ 7,9,10.

**Geo-Group Response:**,

74.   The funds wired by Tricom to Jaina on October 23, 2014 were sent to Jaina as a loan to Jaina by NYC Telecommunications. Chopra Dec. ¶ 39; Narang Dec. ¶¶ 9-11.

**Geo-Group Response:** Deny. The invoices attached to the Narang Dec. were not previously produced to Geo-Group.. On close examination they raise questions about their bona fides because the first invoice, dated September 24, 2014 shows a total amount to be collected in the amount of $330,000.00, even though that total amount would not be known until the issuance of a second, later invoice, which along with the first, would comprise the $330,000.00 total balance. (Compare Narang Dec. Ex. 1 with Narang Dec. Ex. 2.) In addition, the referenced loan is not evidenced by any written agreement, there is no written agreement evidencing this "loan" or any other "loan" between NYC Telecom and Jaina; and neither this "loan," nor any other "loans" from NYC Telecom are reported on Jaina's tax returns (Vanjani Cert., ¶¶ 116 – 134 (including the cited portions of the exhibits cited in those paragraphs))

75.   On or about October 30, 2014 Tricom wired $148,500.00 to Jaina on behalf of NYC Telecommunications in satisfaction of its debt to NYC Telecommunication. Chopra Dec. ¶¶ 37-39; Narang Dec. ¶¶ 7,9-11.

**Geo-Group Response:** Deny for the same reasons Geo-Group denied paragraph 74, above.

76.   The funds wired by Tricom to Jaina on October 30, 2014 were sent

to Jaina as a loan to Jaina by NYC Telecommunications. Chopra Dec. ¶ 39; Narang Dec.  ¶¶ 8-9, 11.

**Geo-Group Response:** Deny for the same reeasons Geo-Group denied paragaph 74, above.

77.  All transfers made to NYC Telecommunications to Jaina were made in satisfaction of Jaina's debt to NYC Telecommunications. Chopra Dec. ¶ 42.

**Geo-Group Response:** Deny for the same reeasons Geo-Group denied paragaph 74, above.


*The LLC Transfers*

78.  Kedis is a New York limited liability owned by Sanjiv Chand. Siddiqi Dec. Ex. D (Third Affidavit of Sanjiv Chand ("Third Chand Aff."), ¶ 11).).

**Geo-Group Response:** Admit.

79.  Neminath is a New York Corporation owned by Mahendra Shah and Vipin Shah. Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 3, 5).

**Geo-Group Response:** Deny. Neminath is a New York Corporation owned by Mahendra Shah, Vipin Shah, Mahendra Shah's spouse, Pooja Shah, and Vipin Shah's spouse, Nayana Chandra Vipin Shah. M. Shah owns 5% of Neminath, M. Shah's spouse Pooja Shah owns 45%, V. Shah owns 5%, and his spouse, Nayana Shah, owns 45%. (Transcript of the August 8, 2017 Deposition

of Defendant Vipin Shah ("V. Shah Tr.") at 27, 29; a copy of the V. Shah Tr. is attached as Ex. D to the Vanjani Cert.) N. Shah is a major shareholder of Jaina, as well as an officer of the company. (Vanjani Cert., ¶ 24 & Ex. D, V. Shah Tr. at 19-21, 20, 39.)

15. On or about January 18, 2013 Kedis executed a commercial loan agreement whereby Kedis agreed to lend Neminath $600,000.00 and on January 22, 2013 Kedis transferred $600,000.00 to Neminath. The commercial loan agreement provided that certain real property located at 235 Hillside Avenue, New York, NY would be provided as security. Siddiqi Dec. Ex. D (Third Chand Aff. ¶¶ 5, 8).

80.   The understanding of Kedis and Neminath was that the funds, less closing costs, would be transferred to Jaina. Siddiqi Dec. Ex. D (Third Chand Aff. ¶¶ 6-7).

**Geo-Group Response:**  Admit.

81.   Between January 22, 2013 and February 6, 2013 $570,000.00 was transferred by Neminath to Jaina. Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 8).

**Geo-Group Response:**  Admit.

82.   Kedis directed that the loan repayments be made to JMVD Hillside, LLC, a company of which Sanjiv Chand is the president, and 728 Melville, a family owned business managed by his sister-in-law. Siddiqi Dec. Ex. D (Third Chand Aff. ¶¶ 1-2, 11).

**Geo-Group Response:**  Deny. These were not loan repayments.
Neminath's tax returns through its 2014 Tax Year contradict that assertion.
(Copies of Neminaths 2012 through 2016 tax returns, which Neminath
produced to us in response to a document subpoena are attached as Exhibits
A, B, C, D, & E of the Certification of Philip J. Loree Jr., executed on September
22, 2017 ("Loree September 22 Cert."), Dk. 180.)) (See Loree September 22
Cert. at ¶¶ 7-38.)

Neminath's tax returns show that Neminath carried the $600,000.00
debt to Kedis as a liability (loan payable) and the corresponding $600,000.00
debt Jaina owed it as an asset (loan receivable from Jaina) on its 2012 through
2014 tax returns (each of which reflected Neminath's April 1 – March 31 Fiscal
Year). (See Loree Cert., Ex. A at Neminath Tax Returns – 000011-12; Ex. B at
Neminath Tax Returns – 000018; Ex. C at Neminath Tax Returns – 000029,
000035-36.)

The Chand Affidavit on which Mr. Chopra has relied has been
contradicted by the facts set forth in the Loree September 22 Cert. at ¶¶ 7-38,
including the circumstances surrounding the sale of the 235 Hillside Avenue
premises to Williston Park Realty LLC. .

The real eThese and other reasons why

83.  Kedis made a loan directly to Jaina in the amount of $200,000 on
December 16, 2013 which was repaid through the two wire transfers
described in paragraphs 51 and 52 of the Third Amended Complaint. Siddiqi

Dec. Ex. D (Third Chand Aff. ¶ 14).

**Geo-Group Response:** Deny. See response to paragraph 82, above.

84.   Ravi Chopra does not own any interest in 728 Melville Petro, LLC. Chopra Dec. ¶ 44; Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such interest.

85.   NYC Telecom does not own any interest in 728 Melville Petro, LLC. Chopra Dec. ¶ 45; Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such interest.

86.   Ravi Chopra does not own either directly or indirectly any portion of Kedis Enterprises, LLC. Chopra Dec. ¶ 46; Siddiqi Dec. Ex. D (Third Chand Aff.  ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such interest.

87.   NYC Telecom does not own interest in Kedis Enterprises, LLC. Chopra Dec. ¶ 47; Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such interest.

88.   Ravi Chopra does not own either directly or indirectly any portion

of JMVD Hillside, LLC. Chopra Dec. ¶ 48; Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such interest.

89.   NYC Telecom does not own either directly or indirectly any portion of JMVD Hillside, LLC. Chopra Dec. ¶ 49; Siddiqi Dec. Ex. D (Third Chand Aff. ¶ 15).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of any such ownership interest.

90.   Chopra never directed that Jaina make any of the transfers referenced in the Complaint to Kedis Enterprises, 728 Melville Petro or JMVD Hillside. Chopra Dec. ¶ 43.

91.   Denied. Chopra brokered the loan and lenders would contact him to request payment. (See Chopra Vol. II Tr. at 234, 237, 268-69, 301-304.) Chopra has known Chand for five to ten years. (Chopra Vol I. Tr. at 59) Bose told Mr. Vanjani that Chopra had told Jaina to wire the money. (Vanjani Tr. at 174)

**GCI's Analysis**

92.   Geo-Group Communications, Inc. ("GCI")  is a Delaware Corporation with its principal place of business in California.  Complaint ¶ 7.

**Geo-Group Response:** Admit.

93.   Govind Vanjani is the President of Geo-Group Communications which currently generates its income from collecting on accounts receivable. Siddiqi Dec. Ex. C (Transcript of Deposition of Govind Vanjani conducted in this case on September 15, 2017 ("G.Vanjani Tr."), at 18).

**Geo-Group Response:** Deny. Mischaracterizes his testimony. Geo-Group is launching a new business and any money it recovers from this case will be invested in a charitable cause. Vanjani Tr. at 20-21.

94.   The list of transactions that form the basis of GCI's complaint was compiled by Mr. Vanjani. Siddiqi Dec. Ex. C (G. Vanaji Tr. 35).

**Geo-Group Response:** Admit.

95.   Mr. Vanjani has an undergraduate degree in electrical engineering that he obtained in 1968. Siddiqi Dec. Ex. C (G. Vanaji Tr. 6).

**Geo-Group Response:** Admit.

96.   Mr. Vanjani has no certifications in finance, accounting or forensic accounting. Siddiqi Dec. Ex. C (G. Vanaji Tr. 6-7).

**Geo-Group Response:**  Admit.

97.   The list of transactions that forms the basis of GCI's complaint was compiled without consulting an accountant, forensic accountant or bookkeeper.  Siddiqi Dec. Ex. C (G. Vanjani Tr. 36-37).

**Geo-Group Response**: Admit.

98.   The source material that was consulted in compiling the transfers detailed in the Complaint was limited to tax returns and bank statements. Siddiqi Dec. Ex. C (G. Vanjani Tr. 43).

99.   Mr. Vanjani did not consult Jaina's accounts payable, Jaina's accounts receivable or any listing of Jaina's customers or Jaina's suppliers. Siddiqi Dec. Ex. C (G. Vanjani Tr. 43, 44, 62, 76).

**Geo-Group Response:** Admit with the caveat that Geo-Group did not have access to those materials at the time, and the Defendants have not produced them,  despite our requests.

100. During his review of Jaina's bank statements, Mr. Vanjani did not recall seeing any deposits from NYC Telecommunications or STI Consultants into Jaina's bank account. Siddiqi Dec. Ex. C (G. Vanaji Tr. 55-58).

**Geo-Group Response:** Admit.

101. With respect to transfers between STI Consultants and Jaina, STI Consultants and Jaina would be best placed to state the nature of the various transactions that underlie the transfers. Ex. C (G. Vanaji Tr. 58-59)

**Geo-Group Response:** Admit only to the extent that Chopra and NYC Telecom are referring to a general, all else equal, principle that assumes that all parties are acting in good faith.

102. With respect to the transfers between NYC Telecommunications and Jaina, NYC Telecommunications and Jaina would be best placed to know

nature of the transaction that underlies the transfer.  Siddiqi Dec. Ex. C (G. Vanjani Tr. 58).

**Geo-Group Response:** Admit only to the extent that Chopra and NYC Telecom are referring to a general, all else equal, principle that assumes that all parties are acting in good faith.

103. There are no documents evidencing Chopra's indebtedness to Robinson Brog. Siddiqi Dec. Ex. C (G. Vanjani Tr. 196).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such documents.

104. There are no emails, letters, written communications, voicemails, or electronic messages evidencing that Ravi Chopra directed the transfers alleged in the Complaint. Siddiqi Dec. Ex. C (G. Vanjani Tr. 59).

**Geo-Group Response:** Admit only that Geo-Group has no knowledge of such documents.

105. Jaina did not become insolvent until the end of December, 2014. Siddiqi Dec. Ex. C (G. Vanjani Tr. 226).

**Geo-Group Response:** Deny. There is a question of fact as to when in 2014 Jaina became insolvent. Based on the large loss reported in Jaina's 2014 tax returns, evidence that approximately $4 million or more in cash disappeared from Jaina's coffers in 2014, it is quite likely that Jaina was

insolvent prior to the end of 2014. (Vanjani Cert. ¶¶ 137 -154 & Ex. L at NYC-CHOPRA 000375, 379)

106. Jaina was generating sufficient income to fund its operations until December 8, 2014. Siddiqi Dec. Ex. C(G. Vanjani Tr. 224).

**Geo-Group Response:** Deny. The cited testimony is incomplete and does not establish that "Jaina was generating sufficient income to fund its operations until December 8, 2014." (See Vanjani Tr. at 222-29). Vanjani about an analysis he had done of Jaina's financial condition based on documents that S. Bose provided to him in early January 2015. (Vanjani Tr. at 222-23)  He did not have Jania's 2014 tax return because it had not been created yet. (Vanjani Tr. at 222.) He was testifying about his understanding of Jaina's financial condition based on Jaina's 2013 tax return, which S. Bose had provided to him.. Vanjani concluded that: "Based on January 2013 income tax return and receivables, Jaina could not lose." (Vanjani Tr. 225) But he immediately added: "But based on the bank statement, and they had withdrawn all the cash, Jaina became bankrupt." (Vanjani Tr. at 225) Mr. Vanjani testified that, "[b]ased on my opinion, Jaina was insolvent by the end of 2014[,]" and that "[b]ased on the data which I have now, it must be…December 2014. They had withdrawn all the money." (Vanjani Tr. at 227) Asked about whether "Jaina was generating sufficient income to fund its operations" between the date of the July 10, 2014 arbitration award, and the December 8, 2014 entry of the Judgment, the day on which Jaina stopped its telecom traffic, Mr. Vanjani said, "all I can say is that Jaina was doing business

42

and by that time, they had withdrawn all the cash." (Tr. at 227.) He added, "it looks like they were operating, but I didn't do a very detailed analysis of the business they were doing." (Vanjani Tr. 228) He pointed out that "the business in telecom could be you're selling" (Vanjani Tr. 227-28), which would not require the same amount of cash as Jaina's usual business of buying and selling telephone minutes.

107. No effort was made to contact Robinson Brog to inquire as to the nature of the transfers it received from Jaina. Siddiqi Dec. Ex. C (G. Vanjani Tr. 151-152).

**Geo-Group Response:** Admit.

108. Mr. Vanjani was never informed by Ravi Chopra, Vipin Shah, Surajit Bose or Mahendra Shah that Ravi Chopra was a shareholder or that he was negotiating to become a shareholder and his belief that Ravi Chopra was a shareholder was based solely on suspicion. Siddiqi Dec. Ex. C (G. Vanjani Tr. 128-134).

*Ravi Chopra's Negotiations with GCI*

109. Ravi Chopra had no authority to bind Jaina to any settlement agreement and any settlement proposals would have to be approved by Jaina. Chopra Dec. ¶ 9.

**Geo-Group Response:** Deny. R. Chopra held himself and STI Consultants out as having the authority to negotiate on behalf of Jaina, and to settle the matter. R. Chopra made at least three settlement offers on behalf of

Jaina, and it is reasonable to conclude that R. Chopra could have settled the

case had Mr. Vanjain accepted one of his lower settlement offers and agreed to

pay the settlement on an instalment basis. (See Vanjani Cert., ¶¶ 46-49;

Transcript of the August 30, 2017 Deposition of Govand Vanjani ("Vanjani Tr.")

at 28-32.) Jaina has never questioned R. Chopra's authority, and the close

relationship demonstrates that his authority emanated from Jaina, and, in any

event, M. Shah, the President of Jaina, has admitted that one of the multiple

roles Chopra played was that of a "negotiatior." (Affidavit of M. Shah, sworn to

December 7, 2017, ¶ 17, Dk. 208 at 4 of 10.)

Dated:   New York, New York
         January 31, 2018

By:   /s/ Philip J. Loree Jr.
      Philip J. Loree Jr. (PL-2213)
      830 Third Avenue, 5th Floor
      New York, New York 10022
      (646) 253-0560
      (516) 627-1720 (alt.)
      (516) 941-6094 (mobile)
      PJL1@LoreeLawFirm.com

      *Counsel for Plaintiff Geo-*
      *Group Communications, Inc.*

To: All Counsel as Described in the Attached
    Certificate of Service (via ECF) )