

Ibj9geoc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   GEO-GROUP COMMUNICATIONS,
     INC.,
 4
                   Plaintiff,
 5
              v.                              15 CV 1756 (KPF)
 6
     VIPIN SHAH ,
 7
                   Defendant.
 8
     ------------------------------x
 9                                    New York, N.Y.
                                      November 19, 2018
10                                    4:06 p.m.

11   Before:

12
                      HON. KATHERINE POLK FAILLA
13

14                                            District Judge

15                          APPEARANCES

16   LOREE & LOREE
           Attorney for Plaintiff
17   BY:  PHILIP J. LOREE , JR.

18   VIPIN SHAH
           Pro Se Defendant
19

20

21

22

23

24

25
```

Ibj9geoc

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. LOREE:  Philip J. Loree, Jr. |
| 3 | Counsel for plaintiff.  Loree & Loree. |
| 4 | MR. VANJANI:  Giovind Vanjani, President Geo-Group |
| 5 | Communication. |
| 6 | THE COURT:  Good afternoon to both of you.  You're |
| 7 | welcome to be seated. |
| 8 | MR. VIPIN SHAH:  Vipin Shah. |
| 9 | MR. VISHAL SHAH:  I am Vishal Shah, his son. |
| 10 | THE COURT:  Thank you very much. |
| 11 | The younger Mr. Shah you are here, sir, to aid your |
| 12 | father if he needs help in communicating with me this |
| 13 | afternoon? |
| 14 | MR. VISHAL SHAH:  Yes. |
| 15 | THE COURT:  I understand.  I just want to make sure |
| 16 | you're very near a microphone so that we can hear you. |
| 17 | MR. VISHAL SHAH:  Sure.  Is this better? |
| 18 | THE COURT:  It is, sir.  Thank you. |
| 19 | Mr. Loree, let me begin with you, sir.  I received a |
| 20 | and docketed very recently a letter from Mr. Shah.  Did you |
| 21 | receive that letter as well, sir? |
| 22 | MR. LOREE:  From Mr. Shah recently? |
| 23 | THE COURT:  Yes, sir. |
| 24 | MR. LOREE:  I don't believe I have received it.  It's |
| 25 | possible if it came in over the weekend, may it be in my |

Ibj9geoc

1    e-mail?

2              THE COURT:  I saw it this morning so let me do this,

3    please, just so that we all can have it.  It's only about a

4    page long.  So I am going to bring it up and just print it to

5    my deputy's computer.

6              MR. LOREE:  Thank you, your Honor.

7              THE COURT:  Of course.

8              And Mr. Vipin Shah you have seen the letter that you

9    sent to me on the 13th of November, yes, sir?

10             You recall the letter that you sent to me?

11             MR. VIPIN SHAH:  Yes.

12             THE COURT:  Thank you.

13             Mr. Loree I'll let you have a moment to read that.

14             MR. LOREE:  Thank you, your Honor.

15             THE COURT:  And then you'll just tell me when you're

16   ready.

17             MR. LOREE:  OK.

18             (Pause)

19             MR. LOREE:  Thank you, your Honor.  I've had a chance

20   to review this.  Would you like me to respond point by point?

21             THE COURT:  I don't think it's necessary.  I think

22   that your responses will be incorporated in your responses to

23   the questions I'll be asking you.  So thank you.

24             As I understand it, sir, there are two parts to your

25   application and the first involves setting up a schedule for a

Ibj9geoc

1    motion to either bring new claims or to resurrect older claims

2    and then the second part of your application is to serve

3    certain document subpoenas.

4              Am I correct?

5              MR. LOREE:  That's correct, your Honor.

6              I would say that probably the first part of the

7    application was the document subpoenas and the second was the

8    motion to reopen.  We did make the application for the

9    additional limited discovery on the 9th.

10             THE COURT:  Yes.

11             MR. LOREE:  And were planning to make the other motion

12   this past week but then we heard of the conference and we

13   didn't want to presume to file it without having discussed it

14   with you.

15             THE COURT:  That's precisely correct, sir.

16             The ordering that I got was from your letter to me of

17   November 2.

18             MR. LOREE:  OK.

19             THE COURT:  Where it began with the motion and then

20   proceeded to the document subpoenas.

21             For me it is easier, sir, to talk about them in that

22   order.

23             MR. LOREE:  Sure.

24             THE COURT:  So let me -- I know who Mahendra Shah is.

25             MR. LOREE:  Yes.

Ibj9geoc

1            THE COURT:  I do know who Sanjiv Chand is.

2            What do you consider to be the Chand LLC entities?

3            MR. LOREE:  The Chand LLC entities are Kedis

4   Enterprises LLC.

5            THE COURT:  Yes.

6            MR. LOREE:  JMVD Hillside and 728 Melville Petro LLC.

7   So all three of those.

8            All three were original defendants in the case.

9            THE COURT:  Well that's what we're going to review

10  right now, sir.

11           MR. LOREE:  Exactly.

12           THE COURT:  So, Mr. Chand was not named in any

13  complaint in this case.

14           Am I correct?

15           MR. LOREE:  We did not make a claim against Mr. Chand

16  because at the time that we filed the complaint we had no idea

17  that he was going to submit an affidavit that was going to be

18  contradicted by the tax returns of Neminath and other evidence.

19           THE COURT:  Sir, the question was so much easier than

20  that.  Yes or no.

21           No, it was not included.

22           And in the first complaint none of those entities were

23  named.

24           In the first amended complaint which was the second

25  complaint in this case in March of 2015, also not named.

Ibj9geoc

1              In the second amended complaint filed May 5 of 2015,

2     728 Kedis, JMVD Hillside are named.

3              There is thereafter a motion to dismiss.

4              Actually before that there is a third amended

5     complaint -- oh, no.  There's a motion to dismiss.  That's

6     correct.  But it's granted with leave to replead.

7              MR. LOREE:  That's correct.  That's when I became -- I

8     became involved in this case just before -- just when the

9     motion to dismiss the second amended complaint was ongoing and

10    we did ask for leave to file a third amended complaint and we

11    did so.  And then there was a motion to dismiss.

12             THE COURT:  Yes.

13             MR. LOREE:  And as respects the LLC entities.  That

14    motion was granted.

15             THE COURT:  Yes, it was.

16             MR. LOREE:  And in support of that motion Mr. Chand

17    submitted his third affidavit which contains -- at the time we

18    couldn't have known this, but as it turns out his statement

19    that the $660,000 paid to I think two of the three LLC entities

20    was not in, as he said, discharge of an antecedent debt because

21    that very antecedent debt was not discharged until about two

22    years later.  And that's supported by Mahendra Shah's tax

23    returns.

24             THE COURT:  Sir, you are wandering very, very far

25    afield.

Ibj9geoc

1          MR. LOREE:  I apologize.

2          THE COURT:  I want to orient everyone in this room to

3    the concerns that I have.

4          MR. LOREE:  OK.

5          THE COURT:  With respect to Mr. Chand, Mr. Chand has

6    been named in no prior complaint.  And, therefore, we are

7    talking about Rule 15, Rule 16, and Rule 21.

8          I don't at the moment have an understanding about why

9    everyone waited so long -- why you waited so long to include

10   him.  And it's not clear to me because I think -- the thing

11   that I think that the folks at the front table are failing to

12   perceive with sufficient alacrity is that we are two months

13   away from trial with Mr. Shah at the back table and I don't see

14   how we can have a very quick motion to basically resurrect the

15   case as to half the folks against whom it's been dismissed.

16         So I'm trying to understand several things and I want

17   you to be very clear as you're speaking to me.

18         MR. LOREE:  Sure.

19         THE COURT:  I want to understand why this is happening

20   now rather than, for example, at the time of my initial motion

21   to dismiss opinion in July of 2016 or the several opinions

22   thereafter.  I want to understand how this can happen

23   consistent with the trial schedule that has been set.  I want

24   to understand the procedural vehicles that you think that I

25   need to use in order to do this and the bases that would permit

Ibj9geoc

1    me to do this and then, then we'll talk about the subpoenas.

2           So with respect to Mr. Chand, it's Rule 15 which is

3    leave to amend should be granted, as justice so requires, but

4    then there's 16 which says -- which requires good cause because

5    it's beyond many deadlines in this case.  And I don't know how

6    it is that it's being brought up now.

7           MR. LOREE:  May I explain?

8           THE COURT:  Start with that, please.  Yes.

9           MR. LOREE:  Yes.  OK.

10          First of all, we had no idea of -- that the statements

11   in Mr. Chand's affidavit were contradicted by Mahendra's

12   testimony and by the tax returns that Mr. Mahendra -- Neminath

13   subsequently produced.

14          THE COURT:  Stop there.  Mr. Mahendra Shah's testimony

15   was when?

16          MR. LOREE:  That was in August 2017, your Honor.

17          THE COURT:  So you've known since August of 2017.

18          MR. LOREE:  Yes.  Also, when this first came up in a

19   motion I said in that motion, I said it's too late probably to

20   bring all these other claims.  We struggled with procedurally

21   how to protect our rights against the LLC defendants and

22   against Mr. Chand and what we had concluded was -- and this I

23   believe mentioned at the October 10 settlement conference --

24   what I concluded was that if we would make such a motion it

25   should be -- it could be that we just, when the judgment, the

Ibj9geoc

1  final judgment is entered against the LLC defendants it should

2  be without prejudice.  That way if we want to -- if we sue the

3  LLC defendants in state court we won't -- the res judicata

4  argument should not be there.

5       I was concerned about that way back when we responded

6  to the subpoena, the motion to quash the subpoena that we

7  served on --

8       THE COURT:  Williston Park.

9       MR. LOREE:  Williston Park, correct.

10      That's what I said in the affidavit -- well I said in

11  the affidavit it was too late to bring them in but at least

12  this is relevant to -- it is relevant to Mahendra Shah and

13  perhaps others here because, for example, on the summary

14  judgment -- am I going too far afield?

15      THE COURT:  No, you're fine.

16      MR. LOREE:  OK.  For example, in the summary judgment

17  motion with Mahendra Shah we had pointed all this out with

18  respect to the affidavit, with respect to how he should be

19  bound by tax estoppel and also the fact that he in the summary

20  judgment application said that -- attempted to explain away

21  this kind of glaring inconsistency between what Neminath says

22  in his tax returns and what he testified to in his deposition

23  and what Mr. Chand testified to way back in the third

24  affidavit.  We think that that provides a basis also to create

25  at least a question of fact as to whether Mr. Chand --

Ibj9geoc

1    Mr. Mahendra, I should say, got any benefit out of this

2    660,000-dollar transfer.

3            THE COURT:  OK.  Let me understand.  There is evidence

4    that you want me to consider in that regard.  Part of it is

5    Mahendra Shah's deposition testimony from August of 2017.  Part

6    of it is Mr. Chand's third affidavit which was submitted in

7    connection with the motion to dismiss practice in 2016.

8            MR. LOREE:  Well that was summary judgment.

9            THE COURT:  It was summary judgment.

10           MR. LOREE:  Yeah.

11           THE COURT:  So also 2017.

12           MR. LOREE:  2017, yes.

13           THE COURT:  And the tax returns were produced in

14    discovery.

15           MR. LOREE:  They were produced at the very end of

16    discovery which would have been -- it would have been before

17    our response -- it was shortly before we responded to the

18    motion to quash the subpoena.

19           THE COURT:  Motion to quash -- sir, the motion to

20    quash the subpoena was September to October of 2017.

21           MR. LOREE:  That's correct.

22           THE COURT:  So that's when you received what?  That's

23    when you received the Chand affidavit and the tax returns?

24           MR. LOREE:  No, no, no.  That's when we received the

25    tax returns and then in the tax returns really crystallized

Ibj9geoc

1    things for us then because, again, it's not just that the tax

2    returns show that the property was really sold for a little

3    over a million dollars, six hundred thousand dollars of which

4    was the debt that Mr. Chand claimed was discharged two years

5    previously.  It also showed that Neminath paid interest on this

6    debt for those years.

7            I think, as we pointed out in our November 2

8    submission, that Mr. Chand or his LLC entities or both received

9    about $1.5 million in consideration, ultimately in exchange for

10   a 600,000-dollar debt.  And that's clearly a fraudulent

11   transfer.

12           THE COURT:  But, sir, you have this information in or

13   about 2017.  Does it make its way into your opposition

14   materials filed in January of 2018?

15           MR. LOREE:  Absolutely.

16           THE COURT:  All right.  But then when I decide the

17   motion in July of 2018 there is no motion for reconsideration

18   on your part.

19           MR. LOREE:  That's right.  It was because -- again, at

20   that time we were struggling, how do we deal with this.  I

21   don't always like -- we could have made the motion for

22   reconsideration, yes, but the court also has inherent power

23   under Rule 54(b) to reconsider a decision.  And here with

24   respect to Mahendra, the main thing was -- would be bringing

25   him back in because he did receive or it's a question of fact

Ibj9geoc

that he must have received some benefit with respect to the

660,000.  As respects the LLC defendants, however, that 14-day

deadline under the local rules had long since elapsed without

us having any idea that Mr. Chand's affidavit was in our,

according to the evidence as we look at it anyway, it would be

false.

THE COURT:  But at no point during the summary

judgment -- at no point prior to your letter to me or to these

discussions about settlement when we had this settlement

conference did you suggest that the chart that Mr. Vanjani

prepared or the discussions about how things were reflected in

the tax returns were reasons to bring back in the LLC

defendants.

My concern, sir, is to the extent that there is an

application under Rule 59 or Rule 60, part of the analysis is

when did you have the information.  And it looks like you had

the information in 2017.

So you're asking me a year plus after you've had it to

bring back these other entities into the case.  Yes?

MR. LOREE:  The answer to that is yes.  But up until

the settlement meeting of October 10 our intention had been to

ask you to simply make any final judgment without prejudice to

the 660,000-dollar issue as respects the LLC defendants.  Now

that wouldn't involve Sanjiv Chand at all.  It involves the LLC

defendants.  That would be how -- were we to sue him somewhere

Ibj9geoc

1   else we would -- he might say I was privy, you know, for

2   purposes of res judicata.  So we -- this is where we were

3   thinking it was only after the discussion, really, we were

4   thinking about actually bringing him back in.  There seemed to

5   be --

6          THE COURT:  But, sir, you want to bring them back in

7   for this trial, do you not.

8          MR. LOREE:  It would be for a trial.  It wouldn't

9   necessarily have to be this trial.  We're willing to --

10          THE COURT:  I'll let you two have this discussion.

11          (Counsel and plaintiff confer)

12          MR. LOREE:  I think Mr. Vanjani's perspective that's

13   what he would like.  I would think from a procedural

14   perspective it would make more sense to -- to put the trial of

15   Mr. Vipin Shah off until we can try them both or just go ahead

16   with his trial and do it at another time.

17          THE COURT:  Let's stop for a moment.  I'm not trying

18   to be gruff here.  I'm trying to understand something.  Because

19   many curve balls have been thrown my way in your recent

20   submissions.

21          I've been preparing for a trial against a single

22   defendant.  So has he.  You're now saying I should put it off

23   so that he can sit at a table with a bunch of other people,

24   including his brother, and to do this again.  But you're

25   telling me this several months after the summary judgment

Ibj9geoc

1    decision has issued.

2            I also wonder why you could not have told me at any

3    point prior to the fall of 2018 that my prior decisions in 2016

4    and 2017 should have been without prejudice because the

5    orders -- the decisions themselves would seem to suggest that

6    the dismissals of the LLC defendants were with prejudice; is

7    that not correct?

8            MR. LOREE:  That is correct.

9            However, when there is a final judgment you have the

10   right to say well they are now without prejudice because under

11   54(b) for purposes -- I mean the judgment really -- actually,

12   you know, technically res judicata, at least in New York,

13   applies to judgments, not orders.  So once the thing is in a

14   judgment, which it will be at some point.

15           THE COURT:  Yes.

16           MR. LOREE:  Then that part of the judgment, the

17   660,000 could be without prejudice to the LLC defendants.  And

18   that would certainly solve any procedural problem of having --

19   to have either the defendants brought in very quickly and

20   forced to go to trial in January or it would certainly solve

21   that problem.  It would certainly -- and it would certainly --

22   it would certainly allow the trial to go forward because it's

23   really -- this is something that need be done only at the final

24   judgment stage.

25           That was how, frankly, I was looking at it up until

Ibj9geoc

1      the conference.  But in the conference -- and I know these

2      things are not -- obviously --

3                THE COURT:  They were settlement discussions.

4                MR. LOREE:  Exactly.  And it seemed to us to be

5      some -- it seemed to us that that was something that you would

6      want to give serious consideration to.  But if it's not because

7      of the delays and everything what we're saying is that what we

8      had envisioned would be making the judgment without prejudice.

9                THE COURT:  But if I make the judgment without

10     prejudice what does that mean?  Does that mean you're bringing

11     a lawsuit in state court against these entities?  Does that

12     mean you're bringing another lawsuit here against these

13     entities?  And if so, how are you not in serious -- is there

14     not a statute of limitations issue?  Because if I dismiss

15     without prejudice I don't think there's any tolling for the

16     three years this litigation has been going on.  So would not

17     those transfers be --

18                MR. LOREE:  There's a six-year statute of limitations,

19     your Honor.  So we would have the -- the transfers occurred in

20     2014.  I think it was the first part of the year.  So we'd have

21     until 2020, that's the six-year New York statute of limitations

22     that applies to a fraudulent transfer.

23                THE COURT:  All right.  I'm not saying I agree.  I'm

24     coming to a point of pivoting.

25                Please understand that what I wish to do in this job

Ibj9geoc

1   and with respect to this case is to get it right.  I wish not

2   to make improper decisions.  I wish not to make the wrong

3   decision.  Like any other judge worth his or her salt you don't

4   wish to get reversed.

5          But I've addressed this precise issue in the summary

6   judgment.  And you never came back and said that I had

7   misperceived the evidence.  And so I am -- and I hope this is

8   coming across.  I am concerned about the amount of time that

9   has passed.

10          It's not clear to me that Rule 54 is the panacea that

11  you believe it to be.  Because I've got 59 and 60, at least --

12  well, one of which has specific time deadlines and one of which

13  says -- uses the date of discovery of the information as a very

14  important factor.

15          So I'm just not -- I don't have the -- I don't believe

16  that I have the ability to do what you want me to do.

17          And I also am concerned that certainly you want to

18  have time to think about how evidence, what it means and how it

19  is -- how it fits into a greater, broader framework.

20          But I feel as though you've kind of kept these things

21  in your pocket for the last year plus as we've been resolving

22  other issues and to have them brought out now is something that

23  causes me concern.

24          You're saying to me, sir, that at the very time of the

25  motion to quash Williston Park you let me know that there was

Ibj9geoc

1    going to be an application at some later date to make this

2    without prejudice?

3              MR. LOREE:  No.  But what I did say, it was too late

4    to bring him in.

5              THE COURT:  Right.

6              MR. LOREE:  That was what I said.

7              THE COURT:  And I don't know how it's any less late to

8    bring him in now.

9              MR. LOREE:  As we said, the only reason that we would

10   bring -- we had a shift in the way we dealt with this was

11   because of the settlement conference.  Otherwise -- we've been

12   struggling otherwise trying to come up with how can we do this

13   so we don't get into an unfair result with respect to res

14   judicata.  And it seemed to us, initially when the summary

15   judgment opinion came out, we were thinking I guess we could

16   appeal this.  Again, this is --

17             (Counsel and plaintiff confer).

18             I was talking about the -- at the time of the summary

19   judgment opinion.

20             THE COURT:  Yes.

21             MR. LOREE:  So what we need -- what we had decided

22   subsequent to that was well maybe to avoid a situation where,

23   as you said the court wants to get it right.  I mean I didn't

24   want to even bring a motion to actually reopen because of the

25   timing until it seemed like there perhaps might be some -- you

Ibj9geoc

1  know the court might have some sympathy to that.  That's not

2  binding at all.

3          THE COURT:  You don't mean to use the word sympathy

4  because I don't make decisions based on sympathy.

5          MR. LOREE:  That's right, your Honor.

6          THE COURT:  What is the evidence that you would

7  suggest -- let me finish -- for a basis or bases for allowing

8  these people in?

9          You're going to say look at Chand's affidavit, look at

10  Mahendra Shah's testimony and look at the tax returns.  And

11  putting those three things together somebody must be lying,

12  correct?

13          MR. LOREE:  Well, I think if you look at all the

14  evidence it's that -- yeah, there's a question of fact as to --

15  in other words, the prior decision has taken the view that this

16  $660,000 transfer was for antecedent debt.

17          THE COURT:  Yes.

18          MR. LOREE:  But based on what was before the court in

19  summary judgment, we think that there was a question of fact.

20  We also think that -- if it's true that our version of the

21  facts is correct, that it was Mr. Chand who lied to the Court,

22  then -- and there's a lot of evidence I would suggest that that

23  is.

24          THE COURT:  Sir, at most what you have is some

25  evidence suggesting that as to that six hundred thousand dollar

Ibj9geoc

1    transfer, that the bases proffered by Mr. Chand to Mr. Shah,

2    Mahendra Shah, were false.

3         But I don't see you -- or at least I don't see that

4    there's a basis to challenge, for example, the Robinson Brog

5    transfers.  We're not redoing those.

6         MR. LOREE:  No.  It's only the 660,000.

7         THE COURT:  That's it.

8         MR. LOREE:  As respects Mahendra and as respects the

9    LLC defendants, yes.

10         THE COURT:  Wait.  What else are you thinking about

11    bringing back into the case?

12         For example, are there other Chand transfers that you

13    believe -- it's just the 600,000 that --

14         MR. LOREE:  It was just the 660,000-dollar transfer.

15         THE COURT:  All right.  I'm not -- all right.  I'm

16    saying all right to note understanding.

17         MR. LOREE:  We understand.

18         THE COURT:  So STI, NYC telecom, you're not fighting

19    those in this motion?

20         MR. LOREE:  Not in this motion, your Honor.

21         THE COURT:  That's subject for later appeal.

22         And then is that Mahendra Shah, you're saying he

23    should be in -- because this is the problem.  I guess the

24    evidence that you have, your best argument, is not that

25    Mahendra Shah himself got money, it's that Neminath got money.

Ibj9geoc

1            MR. LOREE:  No, your Honor.  Because what

2     Mahendra Shah did, he did in his capacity, ostensibly in his

3     capacity as the CEO of Jaina.  He made these transfers.  And if

4     you look at his tax returns, his testimony, all of this, except

5     for when he finally tried to back away from it later at summary

6     judgment by saying he didn't know that he actually sold the

7     property for four hundred thousand and change rather than a

8     million and change, which is -- sounds kind of unplausible.

9     But all of that evidence, it shows that he made this transfer

10    for no consideration.  It was money he took out in change

11    because he knew that there was a judgment pending against Jaina

12    and we think parked it with Chand's LLC entities.  And even in

13    Chand's affidavit he says that it was Mahendra Shah who made

14    the transfers.  There is no question about that.

15            Then the question is OK well there has to be some

16    benefit under New York law.  That was something that we

17    briefed.  You had also, quite correctly, pointed out in your

18    opinion.

19            This is the sort of thing where there must have been a

20    benefit because why would he take $660,000 out of Jaina and

21    transfer it to somebody else for no consideration?

22            THE COURT:  But this is the argument we were talking

23    about because how I responded to that was by saying that it was

24    also illogical by saying that someone who was a shareholder of

25    Jaina would want Jaina to fail.

Ibj9geoc

1          MR. LOREE:  If you look at the facts as a whole, Jaina

2     was faced with this debt and some other debts but certainly

3     this debt.  And I think that these -- we think that these --

4     Mahendra Shah and Mr. Vipin Shah and others ran off, stole not

5     only that money but quite a bit more.

6          THE COURT:  But you have no evidence of it.

7          MR. LOREE:  We have lots of evidence.  We can get even

8     more evidence that, from our cash flow analyses and also more

9     recently Mr. Vanjani did a whole analysis.

10          THE COURT:  None of which was given to me in

11    connection with the summary judgment motion.  None of which was

12    given to me in connection with the summary judgment motion.

13          MR. LOREE:  Not of the most recent thing.  But we did

14    give you and you did -- you mentioned it too, was the -- was

15    Mr. Vanjani's analysis of cash flow showed about $6 million

16    that was unaccounted for.  We have evidence that buttresses

17    that, that makes that original evidence more powerful and more

18    persuasive, we think, although even with that evidence -- so

19    what benefit does he get as a shareholder?  He gets a benefit

20    if he could take as much money from the company and appropriate

21    it to his own account.  And he has a bunch of other -- there

22    are a bunch of other Jaina-related entities that we've referred

23    to from time to time.  And there's evidence that even -- back

24    in 2012 that some $4.6 million was transferred to them.  And

25    we've asked for the bank statements for these entities in

Ibj9geoc

1    discovery and we haven't received them at least.

2            So I think with some help with the subpoenas I think

3    we might be able to make that showing.

4            THE COURT:  Well that's another issue that we'll talk

5    about momentarily.

6            Right now the most that you can hope to obtain from me

7    today on this issue is permission to file your motion.  The

8    real issue is were you to file that motion it is not clear to

9    me that Mr. Vipin Shah has, to use the colloquialism, a horse

10   in that race.  I don't know that it matters.  You're not

11   speaking specifically about him.  You're speaking about

12   individuals who would -- who should themselves have an

13   opportunity to speak.

14           I'm not saying I'm going to permit this, but were I to

15   it would be really more on the order of an order to show cause

16   directed to Mahendra Shah and to the representatives for the

17   corporate entities of Mr. Chand indicating why I got it right

18   the first time and why these things should not be reopened.

19           But I'm not sure that Vipin Shah is in the best

20   position to speak to whether it should be reopened as to these

21   individuals or not.

22           Mr. Vipin Shah has, I imagine, concerns about the

23   delay of his trial date and about the resolution of that and

24   the evidence at that trial.  But I'm not sure that he would

25   have something to say about this.

Ibj9geoc

1          I'll ask you to sit down for a moment, Mr. -- perhaps

2     both Mr. Shahs can stand.

3          Mr. Vipin Shah, have you been able to follow the

4     discussions that I've been having with Mr. Loree this

5     afternoon?

6          MR. VISHAL SHAH:  So he understood most of it but

7     there's still some questions he had.  Would you be able to just

8     maybe summarize it in a couple sentences, if possible?

9          THE COURT:  Yes.  I've been reviewing with Mr. Loree

10    the procedural history of this case, the complaints that were

11    filed and the parties that were named.

12         I've also been discussing with him the opinions that

13    I've issued on two prior motions to dismiss and a motion for

14    summary judgment.

15         What I've been asking him was how, under the Federal

16    Rules of Civil Procedure, the rules that govern what I do, how

17    these entities that he wishes to be brought into the case can,

18    in fact, be brought into the case.

19         It is not as though I have -- I can waive my gavel and

20    someone comes immediately, gets on the caption of the case.

21    There are rules that govern the circumstances under which

22    someone could be brought back into the case.  And that's what

23    he and I have been discussing.

24         Now, the most recent -- so are you following me, what

25    I've just said so far?

Ibj9geoc

1          MR. VISHAL SHAH:  Sorry.

2          THE COURT:  Sit down for a moment and talk to him and

3    then talk to me about what he does not understand.  I cannot

4    provide him legal advice but I can make sure what I'm saying to

5    him is at a level he can understand.

6          (Vipin Shah and Vishal Shah confer).

7          THE COURT:  Mr. Shah, have you finished?

8          MR. VISHAL SHAH:  Yes.  He understood that part that

9    we just talked about.

10         THE COURT:  OK.  Thank you.

11         So let me continue.

12         The issue that I was raising most recently with

13   Mr. Loree was whether, if Mr. Loree and his client were

14   permitted the opportunity to move to add in these other parties

15   who would oppose the motion?  Someone might -- there should be

16   someone speaking for the individuals in question.  So your

17   father, Mr. Vipin Shah, may feel -- may object -- and I'd

18   certainly hear from him on the grounds that it would cause

19   delay or on the grounds that -- for some other reason that he

20   might think about.  I don't want to give him reasons, of

21   course.  But I don't think Mr. Vipin Shah could speak

22   meaningfully to reasons why Mahendra Shah might not want to be

23   brought into the litigation again or why Mr. Chand might not

24   want to be brought into the litigation in the first instance.

25         So what I was saying was, if I were to permit this,

Ibj9geoc

1    and that is the question that we were discussing, I would think

2    that the fairest thing would be to allow the individuals who

3    are proposed to be brought back in to have an opportunity to

4    speak, additional to your father.

5             Do you understand -- does he understand that?  And do

6    you want to check with him?

7             MR. VISHAL SHAH:  Let me just --

8             THE COURT:  Please do.

9             (Vipin Shah and Vishal Shah confer)

10            MR. VISHAL SHAH:  Would I be able to stand outside to

11   talk about it or would it be --

12            THE COURT:  I'll allow a break for five minutes and

13   then we'll come back.

14            (Recess)

15            THE COURT:  May I hear from the folks at the back

16   table?  Have you had a chance to discuss things?

17            MR. VISHAL SHAH:  Yes.  Thank you for the opportunity.

18            THE COURT:  Of course.  And what would your father

19   like me to know, sir?

20            MR. VISHAL SHAH:  Regarding the -- is this regarding

21   the motion that he would like to file?

22            THE COURT:  Yes.  I thought where I left you was that

23   we were talking about the fact that if the plaintiff was able

24   to file a motion I'm questioning who would be the appropriate

25   group of people to answer the motion and that while your father

Ibj9geoc

1    may have things that he might want to say others might want to

2    be heard as well.

3              Did you understand that, sir?

4              MR. VISHAL SHAH:  Yes.  I explained that to him.

5              THE COURT:  And does your father agree with the

6    argument that I am making?

7              MR. VISHAL SHAH:  Yes.

8              THE COURT:  Are there other things that he would like

9    me to know and is asking you to tell me?

10             MR. VISHAL SHAH:  For the most part he's kind of said

11   everything that he wanted to say in that letter that he sent

12   you.  And I think he just wants to reiterate that fact that

13   it's just -- this trial has been going on for a really long

14   time.

15             THE COURT:  This case has been going on for a long

16   time.  Haven't had a trial yet.

17             MR. VISHAL SHAH:  This case has been going on for a

18   really long time.

19             THE COURT:  Sir, just to push back, a large chunk of

20   that delay was occasioned by his bankruptcy and the need to

21   resolve that before the case could be reopened again.  So I

22   don't fault the gentlemen at the front table for that delay.

23   Other delays were occasioned by the motions that he filed and

24   my need to have time to resolve them.  So I don't think it's

25   been a waisted effort.  It has been going on for a while but in

Ibj9geoc

 1    part because of his own conduct.

 2              MR. VISHAL SHAH:  I'm not saying that it's anyone's

 3    fault.

 4              THE COURT:  There is no fault.

 5              MR. VISHAL SHAH:  It's just been a long, I guess,

 6    case.  And that's just kind of what he wanted to reiterate.

 7    And he's ready to get this over with and we're just awaiting a

 8    trial.  So any new evidence we'd have to, for us it would be a

 9    larger I guess effort to kind of understand it and prepare for

10    it.  Which I think the manpower is just me, my brother, and my

11    dad.  So just for us it would just be a monumental effort to

12    understand it and even if there were brought in -- I don't know

13    what we would do with that information or how to prepare for

14    that case or a trial.

15              THE COURT:  One moment, please, sir.

16              Mr. Vipin Shah you were able to hear your son speak to

17    me?

18              MR. VIPIN SHAH:  Yes.

19              THE COURT:  And, sir, your son has communicated to me

20    what you wanted to say to me?

21              (Vipin Shah and Vishal Shah confer).

22              THE COURT:  Is that correct, sir?

23              MR. VIPIN SHAH:  Yes.

24              THE COURT:  Thank you very much.  You can both be

25    seated.

Ibj9geoc

1        Mr. Loree, let's turn to the second part of your

2   application, sir, which is the request for additional document

3   subpoenas.  Are these all on entities who have not been brought

4   into this case at any point in time?  They're all --

5        MR. LOREE:  They're all on nonparties, yes.

6        THE COURT:  There was a discovery schedule in this

7   case, was there not, sir?

8        MR. LOREE:  There was, your Honor.  That's correct.

9        THE COURT:  And was there anything that prevented you

10  from serving document subpoenas or deposition notices on any of

11  these nonparties during the period the discovery was open?

12        MR. LOREE:  No, your Honor.

13        THE COURT:  Why then should we be reopening discovery

14  now, sir?

15        MR. LOREE:  Well we're not really asking to reopen

16  discovery.  All we --

17        THE COURT:  Are you committing to me that the

18  information that you obtain from these subpoenas will not be

19  used against Vipin Shah in any way?

20        MR. LOREE:  No, no, no.  That's not what I'm saying.

21        THE COURT:  Then I'm reopening discovery.

22        MR. LOREE:  You could have a situation where somebody

23  submits a subpoena duces tecum for production at trial.  We're

24  making very specific requests here and we've made them because

25  we've been stonewalled by the defendants in a very big way,

Ibj9geoc

1    including what you just recently heard back in terms of the

2    proposal that was being vetted.  We wanted additional

3    information.

4            THE COURT:  And Mr. Vipin Shah said he had no

5    additional information to give you.

6            MR. LOREE:  Yeah, except that -- what he's saying

7    doesn't make much sense when you look at the documents, a lot

8    of which were cited in our discovery motion and in the

9    correspondence which preceded it.

10           He says I'm not an officer or director of the company.

11   But why then is he receiving these e-mails about -- that have

12   to do with Jaina's operations and particularly when Jaina's

13   involved in -- Jaina's involvement in this very dispute even.

14   He's constantly.  He's all over the place there.  It's just

15   unbelievable.

16           THE COURT:  Sir, with respect to the entities, the

17   nonparties with whom you wish to seek discovery.

18           MR. LOREE:  Yes.

19           THE COURT:  When did you learn of the identities of

20   those parties?

21           MR. LOREE:  Well we would have learned the identity of

22   the accounts and discovery --

23           THE COURT:  Let me try it a different way, sir.

24           At the time that the complaint was filed did you know

25   about the Neminath entity?

Ibj9geoc

MR. LOREE:  At the time the original complaint was filed?

THE COURT:  Yes.

MR. LOREE:  I don't know that.

THE COURT:  By the time of summary judgment, by the time discovery had closed you knew about it?

MR. LOREE:  Oh, absolutely, I knew about the Neminath entity and we subpoenaed the Neminath entity.

THE COURT:  And you knew about the banks?

MR. LOREE:  We did know about the banks and, in fact, we subpoenaed Citibank and there was documents -- apparently documents were lost in the mail.  Citibank has informed me that they would accept service of another subpoena.

Frankly, the subpoena we served then was a lot broader than one we would serve now

THE COURT:  Sir, NRM Holdings, when did you know about that?

MR. LOREE:  May I ask Mr. Vanjani?

(Counsel and plaintiff confer)

THE COURT:  Sir, none of this is on the record you understand?

MR. LOREE:  NRM Holdings, we learned of the existence of an LLC in discovery.  And we asked every single one of the witnesses about it.  And everybody denied any information about what the letter of credit was.

Ibj9geoc

1    We didn't even know where they got it from because it

2    doesn't say that in discovery.

3        What happened was after that point Mr. Vanjani

4    canvassed through all the bank records and was able to find

5    $337,000 of payments made to NRM Holdings.  And then by

6    crosschecking that NRM Holdings, as it turns out, is a company

7    that does finance, including letters of credit, and arranges

8    for letters of credit through banks for companies like Jaina

9    who were having financial difficulties.

10       So it seems pretty clear to us that they issued this

11   letter of credit.

12       What is very frustrating is how Mahendra Shah has

13   claimed he never knew of any LLC even though it's right there

14   in the correspondence, how Mr. --

15       THE COURT:  But, sir, you had it at the time of his

16   deposition, did you not?

17       MR. LOREE:  That correspondence?

18       THE COURT:  You had whatever bank record made

19   reference to NRM Holdings at the time of his deposition?

20       MR. LOREE:  We would have had that, yes, your Honor.

21       THE COURT:  And you never -- please stop talking over

22   me.

23       MR. LOREE:  I am sorry, your Honor.  My apologies.

24       THE COURT:  You never confronted him with this

25   information?

Ibj9geoc

1          You never asked him to explain the inconsistencies

2     between his testimony and what was contained in those records;

3     is that correct?

4          MR. LOREE:  Well we showed them what little evidence

5     we had of this LLC.

6          THE COURT:  Yes.

7          MR. LOREE:  And they denied that such an LLC ever

8     existed.

9          THE COURT:  When Mr. Vanjani found the evidence of the

10    transfers, was he reviewing documents that you had received in

11    discovery?

12         MR. LOREE:  Yes, your Honor.

13         THE COURT:  And they were documents that you had in

14    your possession, custody or control at the time of

15    Mahendra Shah's deposition?

16         MR. LOREE:  Yes, your Honor.

17         THE COURT:  And so you could have, had Mr. Vanjani had

18    the good fortune to look at them a little bit earlier, you

19    could have questioned Mr. Mahendra Shah about them at that

20    time, could you not?

21         MR. LOREE:  I think in theory, yes.  But in the

22    reality of it is, is that we were -- we didn't -- we wanted to

23    know what this -- information about this LLC.  And then they

24    told us they knew nothing, which we think is not true and the

25    only --

Ibj9geoc

1        THE COURT:  There was nothing that prevented you in

2   2016 and -- in 2017 from issuing a subpoena to NRM Holdings,

3   correct?

4        Nothing stopped you?

5        MR. LOREE:  There's nothing that prevented us from

6   doing that, your Honor, no.  It's the kind of thing -- it's the

7   kind of thing that -- very cramped discovery period.

8        THE COURT:  It wasn't that cramped.

9        MR. LOREE:  All right.  But still it was not something

10  that we were able to put together all the -- cross the Ts and

11  dot the Is on.  And we -- everybody was denying the existence

12  of this thing.

13       THE COURT:  I understand that.  But you did not

14  believe them.  So I'm just not sure why you couldn't have done

15  something back then to address it.

16       And the same thing with the accountants.  Did you not

17  know of the accountants' identities in 2017?

18       MR. LOREE:  We did know back in 2017, at least after

19  Mahendra's deposition we would have -- actually that may not be

20  true as respects Bose because I don't think we knew about Bose

21  until we got the Neminath tax returns and by the time I got

22  that, that was after the discovery period.

23       THE COURT:  And you never asked me at any point before

24  now to reopen discovery because of the finding of tax returns

25  that suggested that deposition testimony you had obtained was

Ibj9geoc

1    false?

2              MR. LOREE:  That's correct.

3              THE COURT:  Sir, you know where I'm going with this.

4    I'm finding out months after the summary judgment motion has

5    been decided that you want to issue all of these nonparty

6    subpoenas.  Your expectation, I presume, is for use at any

7    trial we might have.  But that's what I had discovery for.  So

8    it's not clear to me that it is appropriate to reopen

9    discovery.  You're not foreswearing their use against Mr. Vipin

10   Shah.  You're not foreswearing their use against anyone.  And I

11   don't understand why it was that these things weren't found out

12   about, weren't investigated during the course of discovery.

13             I appreciate that there was a stay for a period of

14   time.  And I think the stay was for about five months

15   duration -- six months duration.  But there was time on either

16   side of this stay to address discovery issues.

17             The case management plan was filed on September 14 of

18   2016.  The application for a stay was January of 2017.  So

19   there were a period of months where things could have been

20   done.  And I'm just not sure -- I don't find that an especially

21   compressed time schedule.

22             After the stay was lifted, I believe there was -- I

23   wanted to understand what discovery was left.  So I'm having

24   difficulty understanding why I should reopen discovery.

25             Now, I appreciate there is always the very important

Ibj9geoc

1    ends of justice or you know justice requires it.  But I don't

2    get the sense that you were prevented from obtaining or

3    learning about this information during the course of discovery.

4    So I'm not sure why you're asking for it now.

5            MR. LOREE:  May I just --

6            THE COURT:  You may.

7            (Counsel and plaintiff confer)

8            THE COURT:  Mr. Loree.

9            MR. LOREE:  Could I have the question back, so to

10   speak.

11           (Record read)

12           MR. LOREE:  We're asking for it now because a lot of

13   it is -- is pertinent to Vipin Shah's trial.  What is this

14   whole issue of additional paid in capital which we've asked

15   about.  And, again, we didn't get any answers that were useful

16   in discovery.

17           And, you know, I suppose in a perfect world if we had

18   thought we had time to go straight after the accountants.

19   Maybe that would work; maybe it wouldn't.  But it seems to us

20   that this is -- there aren't going to be any surprises I don't

21   think in any of this discovery that we're asking from, you

22   know, any surprises to Mr. Shah because Mr. Shah, he's -- he

23   claims to not know what the facts are, he says he doesn't have

24   any documents.  So we would find documents that would show that

25   Mr. Shah is not being truthful to the Court or, you know, we're

Ibj9geoc

```
 1    going to find that Mr. Shah is right.

 2              THE COURT:  The point, sir, is -- the surprise is that

 3    I thought we had an understanding of the universe of materials

 4    that were going to be used at the upcoming trial and now what

 5    you're saying to me is you'd like to disturb that understanding

 6    by trying again to find discovery when these things could have

 7    been done during discovery and could have been done prior to

 8    the summary judgment motion.

 9              There is a certain amount of gambling that you did in

10    not seeking this information prior to the summary judgment

11    motion because had I granted it as to Mr. Vipin Shah there

12    would be no trial and I'm not sure what would be said then,

13    unless very quickly thereafter you were suddenly to find this

14    information.

15              So I hear what you are saying, which is that trial

16    subpoenas have existed for a long time and that this is what

17    they are there for.  But I'm just questioning whether it is

18    appropriate to have that discovery so close to the trial date.

19    That is my question.

20              MR. LOREE:  The answer would be that it wouldn't

21    prejudice Mr. Shah.  I mean it's not like -- we're limited with

22    what we want, to specific things which are for the most part --

23    I say for the most part because there's also some of the

24    information that would relate to bringing in the LLC defendants

25    again.
```

Ibj9geoc

1          But we're asking for relatively limited information

2    that everybody but the other defendants just haven't produced

3    those, have sworn that they don't have.  Nobody has it.  And it

4    seems to us that whatever -- a little bit of extra burden it

5    might be placed on Mr. Shah would be outweighed by the Court

6    really having the benefit of knowing what the facts really are

7    in this situation.

8          So that's why we would look at it not so much -- I

9    guess it is, as you say, opening discovery because it is

10   something that we would use at trial if we get information that

11   we can use, but it has been a very frustrating situation for us

12   to deal with witnesses who are denying that -- Mr. Shah denies

13   this he even knows what a receivable is.

14         THE COURT:  Other than Williston Park were there

15   motions to compel during discovery?

16         MR. LOREE:  Well we didn't make motions to compel as I

17   mentioned because you make a motion to compel and you got the

18   other side who has already testified in the deposition that

19   that's all they have, you know, it doesn't give you much for a

20   basis for a motion to compel.  Like you said, it's proving a

21   negative.

22         So, yes, in a perfect world we certainly would have

23   tried to go after the accountants and but not for limited

24   information like the additional paid-in capital which seems to

25   be a very close number to what Mr. Shah is claiming is a loan,

Ibj9geoc

1    is a very potentially critical -- very critical issue.

2              With respect to the banks, with respect to Citibank we

3    did ask for a lot of things.  It was lost in the mail.  And

4    they're willing to produce it if --

5              THE COURT:  When did you know that Citibank -- your

6    requests of Citibank were lost in the mail?

7              MR. LOREE:  It was served on the -- I think the very

8    end of the discovery period and it was supposed to be produced

9    by 14 to -- let's say 30 days after that.

10             THE COURT:  Did you speak with them back then?

11             MR. LOREE:  I didn't speak with them until relatively

12   recently, your Honor.

13             I did speak, trying to track it down and otherwise,

14   but those efforts were unavailing.  We, over a month of having

15   discussions withstanding, at least e-mails back and forth.

16   They've now agreed that they can give us the stuff, just give

17   us another subpoena.  We'll accept service -- serve one of our

18   branches and just e-mail it to me and I'll get it as quickly as

19   possible.  And I think that's a reasonable position for them to

20   take and that's where we are with that.

21             Even if you're not prepared to grant any of the other

22   discovery if you would at least let us get what we intended to

23   provisionally get we would greatly appreciate that.

24             THE COURT:  Something else you want me to know, sir?

25             MR. LOREE:  No, your Honor.

Ibj9geoc

1            THE COURT:  Thank you.

2            Mr. Shah, do you wish to be heard on this issue or do

3    you want to rest on what's in your written letter to me?

4            (Vipin Shah and Vishal Shah confer).

5            MR. VISHAL SHAH:  Sorry.  I have a question if that's

6    OK.

7            THE COURT:  Yes, sir.

8            MR. VISHAL SHAH:  Regarding the receiving all this

9    information, is that going to I guess move the trial date any

10   further than it is now?

11           THE COURT:  There is a possibility that were I to

12   grant their application, either of the applications that

13   they've made to me this afternoon that would have an effect on

14   the trial date.  And I am understanding that the position of

15   the folks at the back table is that you don't want the trial

16   date to move.

17           MR. VISHAL SHAH:  Yes.  That is correct.

18           THE COURT:  Understood.

19           Anything else, sir?

20           MR. VISHAL SHAH:  I think our position is basically we

21   don't want to move the trial date.  That's the reason we're

22   objecting to all the motions and the subpoenas.

23           THE COURT:  OK.  Thank you very much.

24           Mr. Loree, do you want to be heard in reply?

25           MR. LOREE:  Yes.  Thank you, your Honor.

Ibj9geoc

1          It seems to us that if the application is for

2   reopening so to speak is limited to the -- to a judgment and a

3   final judgment without prejudice that shouldn't delay the trial

4   date.  It might delay a little bit the actual decision on the

5   trial.  I don't know.  But I think there's no reason that

6   should delay the trial.

7          So in terms of the discovery I don't see why that

8   would necessarily delay the trial either unless everybody --

9   unless we're going to have all these objections to it.

10  Citibank is not going to object to it.  But maybe the

11  accountants would.  We get the documents and get them quickly.

12  We know what we're looking for.  And it's pretty limited as

13  respects -- particularly as respects dealing with, with

14  Mr. Shah, Mr. Vipin Shah.  So there really shouldn't be a delay

15  there.

16          And the other thing is also, and I think -- correct me

17  if I'm wrong but I think you were concerned in terms of our --

18  we'll call it the application to reopen even though -- what I

19  mean by that is it could be the application to have a judgment

20  without prejudice with respect to 660,000.

21          I think you were concerned in terms of how people

22  would I guess have notice of that motion so that they could

23  respond to it.

24          THE COURT:  Yes.

25          MR. LOREE:  And I think even through ECF I mean all

Ibj9geoc

1   these people are still --

2              THE COURT:  Their attorneys are terminated in terms of

3   receiving ECF notices.

4              MR. LOREE:  Really?  Because all the ECF notices I

5   have seen have been sent to all these people, every one of

6   them, and including Mahendra Shah, including -- and if that

7   were -- we could -- we could do personal service on the

8   attorneys or even on the LLC defendants if the Court will grant

9   us the permission to make this motion.

10             And even if we do that I don't think that -- that's

11  going to delay the trial.  Maybe it could be a little bit of

12  delay in terms of the ultimate final judgment but not the

13  trial.  I hope, anyway, your Honor.

14             THE COURT:  I won't commit either way.

15             Mr. Loree, I want you, please, to obtain a transcript

16  of this proceeding.

17             MR. LOREE:  Yes.

18             THE COURT:  With whatever speed you think is

19  appropriate.  I want to read this after today and I will then

20  let the parties know either telephonically or in an order what

21  my decision is on the two motions.

22             And I understand the Shah defendant position that the

23  trial date is something he wishes not to move.

24             I understand as well the options that plaintiff's

25  counsel has offered to me about how to effect the first

Ibj9geoc

1    application that is being made.

2            MR. LOREE:  Thank you.

3            THE COURT:  Other things you'd like me to know, sir?

4            MR. LOREE:  At this point --

5            (Counsel and plaintiff confer)

6            MR. LOREE:  I think we're good, your Honor.

7            THE COURT:  Thank you.

8            MR. LOREE:  At the risk of -- I hope my client is not

9    going to be upset with me.

10           THE COURT:  I'm sure he won't.

11           MR. LOREE:  I think we've covered the list.

12           THE COURT:  Mr. Shah, anything else you'd like me to

13   know?

14           You're welcome to sit down, Mr. Loree.

15           MR. LOREE:  Thank you, your Honor.

16           MR. VISHAL SHAH:  I think for the most part everything

17   we've wanted to say we've said it in a letter we gave to you.

18   I guess you received earlier today.  And my dad just wanted to

19   mention or reiterate that he would like an interpreter for the

20   trial.

21           THE COURT:  He would like what please?

22           MR. VISHAL SHAH:  Interpreter.

23           THE COURT:  An interpreter.  We don't provide --

24   that's actually -- in noncriminal cases that is provided by the

25   parties themselves.  We don't have -- the court does not

Ibj9geoc

1    provide interpreters.

2            MR. VISHAL SHAH:  Got it.  So we'll make a note of

3    that.  Thank you.

4            THE COURT:  Thank you very much.

5            MR. LOREE:  Your Honor, can I just confer with my

6    client on the interpreter issue?

7            THE COURT:  Yes.

8            (Counsel and plaintiff confer)

9            MR. LOREE:  Mr. Van -- in terms of the whole

10   interpreter issue, we do have a concern about how that affects

11   the trial, how long it's going to take.  I've had situations in

12   civil cases and arbitrations with Japanese witnesses.  I've had

13   situations where I've had to prepare them with interpreters

14   because I don't speak Japanese and there's a big delay, number

15   one, in which it's difficult.  I'm sure you're well aware of

16   all of this from personal experience.

17           But in this case Mr. Vanjani has known Mr. Shah for

18   many years and as I understand you -- correct me if I'm wrong,

19   Mr. Vanjani -- that you always had all your dealings with

20   Mr. Shah in English, no?

21           MR. VANJANI:  That's correct.  His kid is having the

22   conversation in English.

23           THE COURT:  I'm not listening to it but I --

24           MR. LOREE:  He's right.  I hear them talking to each

25   other in English.  So I have to question whether there's a

Ibj9geoc

1  necessity for an interpreter and if there has to be an

2  interpreter we certainly don't want to have to, you know, be

3  footing the bill for any part of that.

4  　　　　　THE COURT:  No.  In cases that I have had where

5  interpreters are required either for witnesses or for litigants

6  on the civil side that bill has been paid by the individual who

7  needs the interpreter.  It's in criminal cases where there's an

8  obligation to provide one, not in civil.

9  　　　　　MR. LOREE:  Thank you, your Honor.  That makes a lot

10  of sense.

11  　　　　　But again there's that issue which is not an issue as

12  you pointed out.

13  　　　　　But there's also the issue of whether is this really

14  necessary because if it's not necessary there's going to be a

15  lot -- I think things will proceed more expeditiously or maybe

16  something -- there could be, we could have a middle ground

17  where there's an interpreter present but only use the

18  interpreter if there's really a need for it, for her or him.

19  　　　　　THE COURT:  Understood.

20  　　　　　MR. LOREE:  Thank you, your Honor.

21  　　　　　THE COURT:  All right.  Thank you very much.  We are

22  adjourned.

23  　　　　　(Adjourned)

24

25