```
J6QTGEOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GEO-GROUP COMMUNICATIONS,
INC.,

               Plaintiff,

          v.                            15 CV 1756 (KPF)

VIPIN SHAH, et al.,

               Defendants.

------------------------------x
                                        New York, N.Y.
                                        June 26, 2019
                                        11:05 a.m.

Before:

               HON. KATHERINE P. FAILLA,

                                        District Judge

               APPEARANCES (Telephonic)

LOREE & LOREE
     Attorneys for Plaintiff
BY:  PHILIP LOREE, JR.

VIPIN SHAH, PRO SE


ALSO PRESENT:  GIOVIND VANJANI
               NISHANT SHAH
```

1           (Case called)
2           DEPUTY CLERK:  Your Honor, this is in the matter of
3    Geo-Group Communications, Inc. versus Chopra, et al.
4           THE COURT:  Thank you very much, and good morning to
5    everyone.
6           I have Mr. Loree on the line?
7           MR. LOREE:  Good morning, Judge Failla, this is Philip
8    Loree, Jr.  I didn't hear the last bit of your question.
9           THE COURT:  Sir, I was just taking attendance.  I
10   wanted to make sure you are there, and you are.
11          And Mr. Vanjani is with you, is that correct?
12          MR. LOREE:  That is correct.
13          MR. VANJANI:  Good morning, Judge Failla.
14          THE COURT:  Good morning.
15          And I have as well Vipin Shah on the line?
16          MR. VIPIN SHAH:  Yes, good morning, Judge Failla.
17          THE COURT:  Good morning.  And I have Nishant Shah as
18   well assisting?
19          MR. NISHANT SHAH:  That is correct.  Good morning,
20   Judge.
21          THE COURT: Good morning, and thank you.  I appreciate
22   everyone's indulgence.  This has been a year for me of trial
23   after trial after trial, but I wanted to make some headway with
24   some lingering issues we had in this case.  And I'm going begin
25   by just starting off recapping some of the more recent

procedural history in this case.

There was motions to dismiss, there was discovery, there were motions for summary judgment. I did set a trial schedule for the remaining defendant in the case, who is Mr. Vipin Shah. We then had an attempt, an unsuccessful attempt at settlement, and then in November I received some indications from plaintiff's counsel that there was a hope or perhaps a movement to reopen the case as to certain of the defendants, and that would be certain of the LLC defendants and Mahendra Shah and Sanjiv Chand. And as a result of that, I adjourned the trial that had been set for January and then proceeded to have a bunch of other trials, but I have some outstanding motions to resolve and I want to direct my questions in the first instance to Mr. Loree.

Mr. Loree, I received a letter from Mr. Vipin Shah that is dated June 21st of this year. Did you get a copy of that letter as well, sir?

MR. LOREE: I did, your Honor.

THE COURT: Thank you. I am now turning to your letter to me of November 9, which is the letter that requests certain document subpoenas to be issued. And what I would like you to do -- and if you need to take a moment to refresh your recollection, that's absolutely fine, but there are document subpoenas that, to my mind, were designed to bring in or to bring out information that might be used against individuals

other than Vipin Shah, and there were subpoenas that I think were designed more to obtain materials for use at a trial where Vipin Shah was the only defendant.

So do you have, sir, or can you get a copy of your letter of November 9?

MR. LOREE: I do have it here, your Honor, I'm just pulling it up.

Yes, November 9, I have it right here.

THE COURT: As you see, you were very helpful to me in breaking out the categories of document subpoenas that you wanted.

With respect to your first category, which pertains to documents to be served on Jaina and Neminath CPAs, is this information that you would be using at the trial of Vipin Shah or is this information that you would be using in the hopes of reopening the case as to certain of the defendants as to whom the case was dismissed?

MR. LOREE: Thank you, your Honor. That information in category one could relate to Vipin's trial, but if there's an overlap, I think if we are going to have other defendants in the case then that information would also pertain to those defendants.

THE COURT: All right. And Mr. Loree, perhaps I could short circuit the process. With respect to the other categories of document subpoenas that are outlined in your

letter, the second category involving banks and the third category involving NRM Holdings, is it also your position, sir, that the information obtained from these document subpoenas would be used at a trial of Vipin Shah alone and it would be used at a trial of Vipin Shah and other defendants if I were to reopen the case as to those defendants?

MR. LOREE:  I think in terms of the NRM Holdings, there was probably -- it would be used principally for the other defendants.  However, we would want to establish also for purposes of Vipin's trial that Vipin was copied on the correspondence concerning the letter of credit and that basically the existence of this letter of credit would show that Jaina didn't have all these cash flow problems that it claims to have had.  And that I think goes somewhat to motive or Vipin's -- for the fraudulent transfers that were made to Vipin.  It would certainly relate to other defendants, actually it may be that it relates more to Vipin and Mahendra than it would necessarily to the LLC defendant.

THE COURT:  Okay.  And we're speaking, sir, about the NRM Holdings subpoena.

MR. LOREE:  Exactly, in terms of that category.

THE COURT:  Yes, sir.  And with respect to the banks?

MR. LOREE:  The banks would be information that would pertain to Vipin's trial, but clearly also could pertain if the other defendants are -- if the LLC defendants and Mahendra were

1    brought back into the case.

2              THE COURT:  Okay.  Sir, I want to turn back to
3    Mr. Vipin Shah's letter of June 21.  And let me explain.  There
4    is merit to a lot of what is said in this letter, and though it
5    is in this call that I will decide the issues finally, his
6    point is that there was a period of discovery that ended in
7    2017 and he does not understand why the materials sought in
8    these document subpoenas are being presented to me only now in
9    late 2018 for resolution in 2019, when in 2017 or in 2016 this
10   exact information could have been sought.  What was it, if
11   anything, that prevented Geo-Group from seeking this
12   information at some point earlier than November 9 of 2018?

13             MR. LOREE:  Well, I think one of the problems that we
14   were having at the time was that Mr. Shah was -- we were trying
15   to get a whole lot of information from Mr. Shah, and he
16   produced virtually nothing.  We took his deposition.  He said
17   he didn't have anything, didn't give me documents, anything
18   like that.  And we were having the same issues with Mahendra
19   and to a certain extent with Mr. Chopra.

20             In terms of this specific information, at first it
21   seemed like a futile exercise to try to get that information
22   from Vipin, but since then -- and this is evidenced by the very
23   letter he sent you, if you notice, there are a bunch of text
24   messages that were attached to that letter that Vipin now
25   claims are pertinent to his trial.  He did, when preparing for

trial, again this was after November 2018, also produced a few text messages, and it's very -- and our position on that was well, we're not going to object to them, but we could use them for whatever purpose we get them.

And one of the purposes here is that he is basically he telling us that all the times he told you that he can't get documents or told me under oath that he can't get -- doesn't have the documents, it's just not true, because all the sudden he's producing little bits and pieces of documents from his text messages.  He claims he couldn't get the text -- he couldn't get documents from his text messages.  And really it's a classic case of cherry picking and not being truthful with you.  And I think that really makes it -- and of course now he really doesn't want any of this other information to come in because he said that and he doesn't want us to find out and discover this other information because presumably because it's bad for him, otherwise he shouldn't care.

Another thing is, too, we had -- a lot of these documents we would have gotten from Citibank, but it was the very end of discovery, we -- if they sent us any documents they were lost in the mail.  And yes, we could have tried to get them earlier, but we were at that point thinking it was kind of late and we would like to see if we can get by without them. But in light of all this, the text messages and everything else, it goes to show that we really should have this

1  discovery, whether we get it from the third parties, the banks,
2  Citibank, again we tried with Citibank, and/or from the
3  accountants.
4      THE COURT: I think I understand that. But if I'm
5  recalling correctly, the case management plan in this case was
6  entered into -- and the docket confirms it was entered into in
7  September of 2016. There were some bumps in the road or some
8  unusual features of this discovery period because of the
9  bankruptcy filing of the Shahs during the pendency of
10  discovery, but I guess a concern that I have is that I don't
11  think I knew, I don't think you told me, Mr. Loree, until after
12  the decision on the summary judgment motion that there were
13  these gaps in discovery.
14      And I'm trying to figure out why I did not know, why I
15  was not told prior to then of the problems in discovery. And
16  it may be, sir, that you did not know at the time that the
17  summary judgment motion was filed, but that's really what I'm
18  trying to figure out.
19      MR. LOREE: In terms of gaps in discovery, there was
20  discussion of that at a conference that was held after there
21  was a delay in the bankruptcy, and we indicated there that we
22  thought we would get to the bottom of it with depositions, and
23  so that went forward. And meanwhile, during the deposition
24  phase, that's when we first discovered this business about
25  Mr. Chand and what we believe is misrepresentations about the

1  nature of the transcripts that were made to the LLC defendants.
2  That came up on August 2017, so basically from there we went
3  into summary judgment.  And it wasn't that we the thought that
4  we didn't have discovery necessarily to defeat summary
5  judgment, because then we wouldn't have made a Rule 56(e), I
6  think it is, application, at that point.
7           But this but this has been something of great concern
8  and we've been trying to get documents, and it seems there's
9  been some delay and the like, but at the end of the day we
10 think the question really is who is -- is anybody really being
11 prejudiced by that?  Is Mr. Shah prejudiced by the fact that we
12 don't get the discovery but meanwhile he gets to put in this
13 text message and that text message and not produce all sorts of
14 other text messages which presumably exist.  If you look at
15 what he sent, there are a lot of date gaps in there, and it's
16 hard to believe those were the only texts that he received that
17 had anything to do with this case.
18          THE COURT:  Although Mr. Loree, I suppose we could
19 look at this from the other perspective.  We could go to trial
20 with the evidence we have and I could preclude Mr. Shah from
21 introducing any text messages that he has only recently shown
22 to the Court or to you.  Is it your position, sir, that that
23 doesn't help your client?
24          MR. LOREE:  Well, I don't think it would help our
25 client much, because looking at these text messages, a lot

1    include something that is either irrelevant or not likely to
2    advance his case very much.  And you start precluding evidence
3    and that's the sort of thing you get into issues, and I have
4    always been of the mind if the parties could identify their
5    exhibits and there could be some agreement between the two to
6    avoid those kind of objections and the like, that's a
7    preferable course.  I don't see how Mr. Shah is prejudiced by
8    it the truth coming out.
9              THE COURT:  I think what he's saying is the case has
10   been going on for a period of years and there has to be some
11   finality, and to reopen discovery two years after the deadline
12   for discovery had closed would, in his mind, prejudice him,
13   because it forces him to keep litigating a case past the
14   deadlines that were set for the orderly litigation of the case.
15             MR. LOREE:  Yes, and right now those deadlines -- that
16   deadline has been adjourned.  And we're not talking about just
17   reopening discovery, we're talking about some specific
18   subpoenas and some specific documents.  We narrowed it way, way
19   down, because obviously we weren't asking to effectively reopen
20   discovery.  He's not going to be affected by -- the only way
21   he's affected by this would be if there's -- we could get these
22   out pretty quickly and presumably the responses would come out
23   pretty quickly and there would be a little more delay, not much
24   more.  And again, it's hard to see that as prejudicial to him
25   in this case, particularly when you look at the other side of

it, we think that it's going to improve -- I think we have a good case, but I think it could be improved if we get this discovery.

And I think it is a matter of procedure, and we shouldn't be the ones that are bearing the brunt of the nonsense that's been going on with discovery. And again, it's not just -- it's a matter of people just saying, oh, we don't have it, we don't have it, and then turning around and finding out later they did have some of it. And it's not just the text messages, it happened a few times. You can look in the correspondence, or I could follow up with you the specific correspondence, but I know this happened, this isn't the first time.

THE COURT: Mr. Loree, let me ask you, as a more practical matter, the subpoenas that you wish to issue are pursuant to Rule 45, correct, of the Federal Rules of Civil Procedure?

MR. LOREE: They would be Rule 45, yes.

THE COURT: Is it your belief -- I'm asking this question without making a decision -- couldn't you issue these irrespective of what I did? Are these not things that you could just get from the clerk's office, or do I need to sign or approve these particular subpoenas for a particular reason?

MR. LOREE: No, you wouldn't have to sign it. We just wanted your leave to serve them.

1	THE COURT:  I see.  That makes more sense.

2	MR. LOREE:  In light of Rule 16 and the like.  I mean
3	as you pointed out, there was a period for third-party
4	discovery.  It could be looked at as trial subpoenas, too, but
5	before we did that, we wanted to get your okay.

6	THE COURT:  You've raised a great point.  Is it your
7	position, sir, that these subpoenas would be in the vain of
8	pretrial discovery or trial subpoenas or both or neither?

9	MR. LOREE:  I think they could be -- I think they
10	could be looked at in both ways, but again, it's a matter of --
11	in some respects, that's probably somewhat a matter of form
12	because we would, if there's going to be a trial scheduled in
13	the near future, they would probably best be dealt with as
14	trial subpoenas.

15	THE COURT:  Understood.  All right.

16	Let me please turn to Mr. Shah, Vipin Shah.  Let me
17	ask, is Nishant Shah -- is it his decision or wish to speak on
18	behalf of his father today?

19	MR. NISHANT SHAH:  It is not.  As I understood, if
20	there's something that he didn't understand, I would be able to
21	clarify.

22	THE COURT:  Okay.  This question is directed to Vipin
23	Shah, and the question is this:  I have received and I have in
24	front of me Mr. Vipin Shah's letter of June 21st, 2009, and I
25	understand that the stated purpose of this letter is to present

1  to me in the way that he thinks is best and most easily

2  understood his arguments in opposition to Geo-Group's motion.

3  So Mr. Vipin Shah, do I understand your letter

4  correctly?

5  MR. VIPIN SHAH: Yes.

6  THE COURT: And Mr. Vipin Shah, do you wish to add

7  anything to your written submission in light of the

8  conversation that I have been having with Mr. Loree in this

9  phone call?

10  MR. VIPIN SHAH: I provide whatever I had it, I cannot

11  produce any more.

12  THE COURT: Okay, I understand. All right. Let me

13  please do this, I'm going to put the parties on a brief hold.

14  I will get back to you momentarily with a resolution of this

15  motion. Thank you very much.

16  (Pause)

17  THE COURT: Gentlemen, thank you very much for your

18  patience. I am going to resolve the pending motion, and I want

19  to begin by noting that there is much merit in what Mr. Vipin

20  Shah has said to me about the amount of time that has passed

21  and about the progress of discovery in this case. But

22  ultimately, Mr. Shah, with his attachments of his letter of

23  June 21 -- I'm sure he did this without meaning to -- has

24  proven the point that Mr. Loree has been making to me in this

25  conversation which is there was an expectation that the rules

of discovery were abided by, and that requests for documents were responded to with responsive documents. And yet here is Mr. Vipin Shah producing texts that absolutely should have been produced earlier in this case. And so I am granting the application to allow the issuance of document subpoenas to Jaina and Neminath CPAs, to the banks, and to NRM Holdings Incorporated.

We have had some discussions in this call about whether those subpoenas would be trial subpoenas or something else. I don't want them to be trial subpoenas simply because any date that I set for a trial would be, I think by necessity, artificial. So Mr. Loree, if you need me to sign subpoenas for these entities, you will send them my way for signature. If they can be issued without, I am authorizing you to issue them.

I want to make clear that I am saying nothing about reopening this case as to the LLC defendants or Mahendra Shah or anyone else who has been terminated from the case. I don't have a basis on this record to do that. What I have been asked to do and what I am doing is permitting the reopening of discovery because of my concerns that the plaintiff did not receive all of the discovery to which plaintiff was entitled.

Mr. Loree, do you understand my decision?

MR. LOREE: Thank you, your Honor, I believe I do. There's one question I have, and you said you're not -- I think what you said is you're not at this point saying anything one

1 way or the other about our motion for permission to move to

2 bring the LLC defendants and Mr. Chand and Mahendra Shah back

3 into the case. I think -- at least as I heard it, I think that

4 means that you are going to proceed to rule on that motion.

5      THE COURT: Let me --

6      MR. LOREE: Or you said --

7      THE COURT: Fair enough. Mr. Loree let me stop you

8 for a moment.

9      On the record that I have before me, which focuses

10 principally on some tax documents and discussion of a $660,000

11 transfer from Mahendra Shah to the LLC defendants and a

12 $600,000 loan to Neminath and whether that means something

13 other than how it's been documented, I am telling you on the

14 record that I have before me, I do not see a basis for

15 reopening the case as to the defendants that I have previously

16 dismissed. So I am denying without prejudice your application

17 to reopen the case as to any of these defendants.

18      I am telling you that I do believe ultimately you will

19 have a tough row to hoe in convincing me that I should do it,

20 but I think the last piece of the information that I need to

21 make my decision is the documentation that you are seeking by

22 these document subpoenas.

23      So that the record is clear, I will deny the

24 application to reopen the case as to these parties without

25 prejudice to its possible renewal, although I already told you

1  a little skepticism that I have, and I am granting your
2  application for the reopening of discovery for the issuance of
3  these document subpoenas.
4              With that clarification, Mr. Loree, do you understand
5  what I have decided?
6              MR. LOREE:  Thank you, your Honor, I do.  Thank you
7  very much for your consideration.
8              THE COURT:  Of course, sir.  I want to be clear, I
9  haven't let the parties down, but my own schedule has resulted
10 in delays.  I don't mean to sound hypocritical, but it would be
11 my hope that you could prepare and get ready these subpoenas
12 promptly, and that we could get back the documents promptly,
13 and I would like to hear from you 60 days from today with
14 respect to the results of these subpoenas.
15             Can you do that, sir?
16             MR. LOREE:  Absolutely, your Honor.
17             THE COURT:  Okay.  Thank you very much.
18             Mr. Loree, do you and I have any open issues to
19 discuss?
20             MR. LOREE:  No, your Honor.
21             THE COURT:  Thank you very much.
22             MR. LOREE:  Thank you very much.
23             THE COURT:  Mr. Vipin Shah, do you understand my
24 decision?
25             MR. VIPIN SHAH:  Yes, your Honor.  Thank you so much.

1    THE COURT:  Thank you so much.
2    Mr. Loree, I will ask you, as always, to get a
3    transcript of this conference in the ordinary course.  Please
4    send a copy to Mr. Vipin Shah when you receive it.  I get a
5    copy automatically.  Understood, sir?
6    MR. LOREE:  Yes.  We'll do that right away, your
7    Honor.
8    THE COURT:  Thank you all for participating in the
9    conference.  Good afternoon to all of you.  We're adjourned.
10   (Adjourned)