UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GEO-GROUP COMMUNICATIONS, INC.,

                      Plaintiff,                         Index No. 15-cv-01756 (KPF)

-v.-

RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC;
NYC TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GEO-GROUP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REOPEN
CASE AGAINST CERTAIN DEFENDANTS**


Philip J. Loree Jr. (PL-2213)
LOREE & LOREE
800 Third Avenue, 28th Floor
New York, New York 10022
(646) 253-0560
(516) 627-1720 (alt. phone)
(516) 941-6094 (mobile)
PJL1@LoreeLawFirm.com

*Attorneys for Plaintiff Geo-Group
Communications, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

I.   GEO-GROUP HAS CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS
AGAINST THE LLC DEFENDANTS ........................................................................ 13

    A.   Legal Standards: Article 10 of New York's Debtor and Creditor Law ......................... 13

    B.   Geo-Group has Valid Constructive Fraudulent Conveyance Claims Against the LLC
Defendants under NYDCL §§ 273, 273-a & 274.................................................................. 13

II.   GEO-GROUP HAS ACTUAL FRAUDULENT TRANSFER CLAIMS AGAINST THE
LLC DEFENDANTS, SANJIV CHAND, AND MAHENDRA SHAH ..................................... 16

    A.   Legal Standards ..................................................................................................... 16

    B.   The Direct and Circumstantial Evidence Establishes that the $660,000 in Transfers were
Actually Fraudulent within the Meaning of NYDCL § 276 ......................................... 17

    C.   The LLC Defendants are Liable to Geo-Group under Section 276 .............................. 20

    D.   Sanjiv Chand and Mahendra Shah are Liable to Geo-Group under Section 276........... 20

    E.   The Doctrine of Tax Estoppel Bars Mahendra Shah from Taking any Positions in this
Litigation that are Contradicted by Neminath's or Jaina's Tax Returns................................ 21

    F.   The LLC Defendants, Sanjiv Chand, and Mahendra have Perpetrated a Fraud on Geo-
Group and the Court ..................................................................................................... 21

III.   THE COURT SHOULD REOPEN THE CASE AGAINST THE LLC DEFENDANTS
AND MAHENDRA SHAH PURSUANT TO FED. R. CIV. P. 54(b) ....................................... 22

    A.   The Courts Orders Dismissing and Terminating the LLC Defendants and Mahendra
Shah did not End this Case as to those Defendants and Claims ............................................. 22

    B.   The Court's Orders Dismissing the LLC Defendants and Mahendra Shah are Subject to
Revision....................................................................................................................... 22

    C.   The Decisions Dismissing the LLC Defendants should be Revised because of the
Availability of New Evidence ......................................................................................... 23

IV.   THE COURT SHOULD GRANT GEO-GROUP LEAVE TO JOIN SANJIV CHAND,
AND TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT AGAINST THE LLC
DEFENDANTS, MAHENDRA SHAH AND SANJIV CHAND .......................................... 23

V.   THE STATUTE OF LIMITATIONS PRESENTS NO BAR TO THE RELIEF
REQUESTED BY GEO-GROUP.................................................................................... 23

CONCLUSION...................................................................................................................... 26

i

TABLE OF AUTHORITIES

# CASES

*2138747 Ontario, Inc. v. Samsung C&T Corp.*, 31 N.Y.3d 372, 378 (2018) .............................. 25

*Adams v. Bell*, 5 Cal. 2d 697, 702-03 (Cal. 1936) ........................................................ 25

*American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F.Supp.2d 177, 193-94
 (E.D.N.Y. 2010) ............................................................................................ 21

Atlanta Shipping Corp., Inc. v. Chem. Bank ................................................................ 16

*CDR Creances S.A.S. v. Cohen*, 23 N.Y.3d 307, 320 (2014) ............................................ 22

*Colvin v. Keen*, 900 F.3d 63, 71 (2d Cir. 2018) ........................................................... 23

*Cortez v. Vogt*, 52 Cal. App. 4th 917 (Cal. Ct. App. 4th Dist. 1997) .................................. 25

*Estate of Myers*, 139 Cal. App. 4th 434, 440 (Cal. Ct. App. 4th Dist. 2006) ......................... 25

*Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842 (1990) (Mem) .............................. 14

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.* .............................. 14

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 631-32 (2d Cir. 1995) .................................... 22

*In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983) ....................................................... 17

In re Sharp, 403 F.3d 43, 53 (2d Cir. 2005) ......................................................... 16, 17

*L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998) .................................... 22

*Mahoney-Buntzman v. Buntzman,* 12 N.Y.3d 415, 422 (2009) ........................................ 21

*Midland Bank v. Russo*, 50 N.Y.2d 31, 44 (1980) ..................................................... 20

*Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
 LLP,* 322 F.3d 147, 167 (2d Cir. 2003) ................................................................. 23

*Petroholding Dominicana, Ltd. v. Gordon*, No. 18 Civ. 1497 (KPF), slip op. at 13-14 (S.D.N.Y.
 June 3, 2019) ............................................................................................... 24

*Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46, 55 (2001) ......................................... 20

*Setters v. AI Props. & Devs. (USA) Corp.*, 32 N.Y.S.3d 87, 88 (1st Dep't 2016) ..................... 24

*Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2005) .................................... 17

*Tanges v. Heidelberg North America, Inc.*, 93 N.Y.2d 48, 54-56, 58 (1999) .............................. 25

# STATUTES

Cal. Civ. Code § 3439.09 ......................................................................................... 25

Cal. Civ. Proc. Code § 338(d) ............................................................................. 25, 26

New York Civ. Prac. L. & R. § 202 ........................................................................... 24

New York Civ. Prac. L. & R. 205 .............................................................................. 24

New York Debtor & Creditor Law ("NYDCL") §§ 273, 273-a, & 274 ...................... 13

NYDCL § 273 ...................................................................................................... 14, 15

NYDCL § 273-a ......................................................................................................... 14

NYDCL § 274 ............................................................................................................ 15

NYDCL § 276 ................................................................................................. 13, 16, 17

# RULES

Fed. R. Civ. P.  21 ...................................................................................................... 1

Fed. R. Civ. P. 15(a) & (c) ........................................................................................ 23

Fed. R. Civ. P. 15(a), (c), & (d) ................................................................................. 1

Fed. R. Civ. P. 15(c)(1)(B) ....................................................................................... 23

Fed. R. Civ. P. 20(a)(2) .......................................................................................... 1, 23

Fed. R. Civ. P. 20(a)(2) & (3) .................................................................................... 1

Fed. R. Civ. P. 54(b) ......................................................................................... passim

Philip J. Loree Jr. (PL-2213)
Loree & Loree
800 Third Avenue, 28th Floor
New York, New York 10022
(646) 253-0560
(516) 627-1720 (alt.)
(516) 941-6094 (mobile)

*Counsel for Plaintiff Geo-Group*
*Communications, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEO-GROUP COMMUNICATIONS, INC.,

                      Plaintiff,                      Index No. 15-cv-01756 (KPF)

-v.-

RAVI CHOPRA; MAHENDRA SHAH; VIPIN
SHAH; 728 MELVILLE PETRO LLC; KEDIS
ENTERPRISES LLC; JMVD HILLSIDE LLC;
NYC TELECOMMUNICATIONS CORP.; and
SHALU SURI,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GEO-GROUP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REOPEN CASE AGAINST CERTAIN DEFENDANTS

### INTRODUCTION

Plaintiff Geo-Group Communications, Inc.'s ("Geo-Group") respectfully submits this

Memorandum of Law in Support of Motion to Reopen Case against Certain Defendants. Geo-

Group respectfully requests that the Court make and enter an order pursuant to Fed. R. Civ. P.

15(a), (c), & (d); Fed. R. Civ. P. 20(a)(2) & (3); Fed. R. Civ. P.  21; Fed. R. Civ. P. 54(b); and

the Court's inherent power:

1.     Reopening pursuant to Fed. R. Civ. P. 54(b) the case against dismissed defendants 728 Melville Petro LLC ("728 Melville"), Kedis Enterprises LLC ("Kedis"), JMVD Hillside LLC ("Hillside"), and Mahendra Shah ("M. Shah");

2.     Granting Geo-Group leave to join Sanjiv Chand to this action, and assert against him claims for actual fraudulent conveyance, and fraud on the court arising from false statements made in paragraphs 10, 11, and 13 of Mr Chand's Third Affidavit (Dk. 115-1) (the "False Statements");

3.     Granting Geo-Group leave to file and serve an amended and supplemental complaint asserting against dismissed defendants Hillside, Kedis, and 728 Melville claims for actual and constructive fraudulent conveyance;

4.     Granting Geo-Group leave to file and serve an amended and supplemental complaint asserting against dismissed defendant Mahendra Shah claims for actual fraudulent conveyance arising out of the $660,000 in transfers (the "Transfers") Jaina made to, or for the benefit of, Hillside, Kedis, Sanjiv Chand, and 728 Melville, and also for his own benefit;

5.     Granting Geo-Group leave to file and serve an amended and supplemental complaint asserting against Sanjiv Chand claims for actual fraudulent transfers arising out of the Transfers, and for fraud on the Court and Geo-Group arising out of the False Statements; and

6.     For any other appropriate relief that the Court may deem warranted.

## STATEMENT OF FACTS

The facts are set out in detail in the Declaration of Govind Vanjani, executed on October 4, 2019 (the "Vanjani Dec.").

The motion seeks to reopen the case against the LLC Defendants—Kedis, Hillside, and 728 Melville—and Mahendra Shah. It arises out of false statements under oath that Sanjiv Chand, the person who directly or indirectly owns or controls the LLC Defendants (and numerous other LLCs and other business entities that do business in New York City and Long Island), made to this Court in what turned out to be a successful bid to dismiss the case.

Those false statements portrayed as payment of an antecedent debt a total of $660,000 in payments Jaina Systems Network, Inc. ("Jaina'") made to 728 Melville and Kedis in August and October 2014, after Geo-Group obtained a $1,249,654 arbitration award  (plus interest) against Jaina and Geo-Group had commenced proceedings in New York State Supreme Court to confirm the award. (Vanani Dec. at ¶¶ 19-29)

Mahendra Shah, President of Jaina and the Shah family business, Neminath, and a shareholder of both companies, approved $360,000 of these payments and Vipin Shah's spouse Nayana Shah, who was an officer and Shareholder of Jaina, and a shareholder of Neminath (and since April 1, 2017 has been a 50% owner of Neminath, together with her spouse, Vipin Shah), approved the other $300,000 of the payments. (Vanjani Dec., ¶¶ 25 & 28)

The alleged "antecedent" debt was a $600,000 loan Kedis had made to Neminath, Inc. ("Neminath") at 15% interest per annum pursuant to a Commercial Loan Agreement. (Vanjani Dec. at ¶¶ 30-43 & 44) According to Mr. Chand, Kedis loaned $600,000 to Neminath, which, at the time was owned and controlled by its President, Mahendra Shah, Mahendra Shah's spouse, Pooja Shah, Defendant Vipin Shah, and, his spouse, Nayana Shah. (Vanani Dec. at ¶¶ 30-43 & 44) Kedis paid $600,000 to Neminath pursuant to the Commercial Loan Agreement. (Vanani Dec. at ¶ 44) Shortly thereafter Neminath tranferred Neminath transferred $530,000 to Jaina (Chand claims it was $570,000, but Jaina's and Neminath's bank statements do not bear that

assertion out). (Vanani Dec. at ¶ 44.h)

In support of the LLC Defendants' motion to dismiss the Third Amended Complaint, Mr. Chand submitted an affidavit that made the following three material, false statements:

1. Paragraph 10 of Sanjiv Chand's Third Affidavit: "All of the transfers from Jaina to JMVD, and all of the transfers from Jaina to Melville that are referenced in paragraphs 37 to 50 of [Geo-Group's] Third Amended Complaint ("TAC") were carried out in order to satisfy Jaina's debt to Kedis." (Vanjani Dec. ¶¶ 8.a, 46.a., & Ex. 1 at ¶ 10)

2. Paragraph 11 of Sanjiv Chand's Third Affidavit: "As the president and owner of Kedis, I assigned Kedis' right to receive the payments referenced in paragraphs 37 and 44 of the TAC, which were repayments toward the $600,000 loan made under the [Commercial Loan] Agreement, to JMVD and Melville." (emphasis added) (Vanjani Dec.8.b, 46.b, & Ex. 1 at ¶ 11) )

3. Paragraph 13 of Sanjiv Chand's Third Affidavit: "Jaina's payments to JMVD and Melville as described in paragraphs 37 and 44 of the TAC were made in satisfaction of an antecedent debt, which Jaina paid in order to satisfy the debt to Kedis under the [Commercial Loan] Agreement." (Vanjani Dec.8.c, 46.c., & Ex. 1 at ¶ 13)

But Jaina's payment of $660,000 did not discharge Neminath's debt to Kedis, and did not discharge any debt Jaina owed to Neminath. Rather: (a) in July and August 2014 Jaina transferred $660,000 to or for the benefit of Mr. Chand and/or the LLC Defendants in exchange for no consideration whatsoever, let alone any thing of fair, equivalent value; (b) on January 14, 2016, Neminath sold its largest asset, the 235 Hillside Avenue, Williston Park, New York property for $1,025,000, $600,000 of which represented a reduction in the $1,025,000 sale price in exchange for Neminath's release from its outstanding obligations to Kedis under the

Commercial Loan Agreement; and (c) during the period January 2013 through January 2016, Neminath paid a total of $285,000 in interest to or for the benefit of Kedis. (Vanjani Dec. at ¶¶ 44-74)

Thus, in exchange for Kedis's loan of $600,000 to Neminath at 15% interest per annum for a period of three years, the LLC entities and/or Mr. Chand received consideration in the total amount of $1,545,000:

| Period (From-To) | | Amount paid by Jaina Systems Network, Inc. | Principal Paid by Neminath, Inc. | Interest Paid by Neminath, Inc. | Total |
|---|---|---|---|---|---|
| 8/13/2014 | 10/29/2014 | $ 660,000.00 | | | |
| 1/14/2016 | 1/14/2016 | | $ 600,000.00 | | |
| 1/18/2013 | 1/31/2016 | | | $ 285,000.00 | |
| | | | | Total Payments by Jaina and Neminath to LLC Entities/S. Chand | $ 1,545,000.00 |

Figure 1: Payments Made to or for the Benefit of LLC Entities and Mr. Chand

The Vanjani Dec. details the transactions and demonstrates how they are confirmed by Mahendra Shah's testimony, Mr. Chand's Third Affidavit, Jaina's Bank Statements, Neminath's Bank Statements, Neminath's tax returns, CPA Mr. Andrew Boses' notes, and other documents. It demonstrates that Neminath CPA Andrew Bose has confirmed in writing that Neminath paid $885,000 to or for the benefit of Kedis to satisfy its obligation under the Commercial Loan Agreement, and that Mahendra Shah and Vipin Shah confirmed to him the accuracy of this information. (Vanjani Dec., ¶¶ 44.o, 57, 68-74)

The evidence establishes in a clear and convincing fashion that the $660,000 Jaina paid was both an actual and constructive fraudulent transfer. Contrary to Mr. Chand's sworn statements, Jaina's transfer of $660,000 to or for the benefit of the LLC Defendants was *not* a

discharge of an antecedent debt—the $660,000 transfer did not discharge Neminath's debt to Kedis and did not discharge Jaina's debt to Neminath.

The only consideration to which Kedis and the other LLC Defendants were entitled to under the Commercial Loan Agreement was $600,000 in principal and three-years of interest at 15% per annum, that is, $270,000 ($90,000 per year multiplied by three years). But Kedis received from Neminath the benefit of $885,000—$15,000 more than it was entitled to the Commercial Loan Agreement. And, on top of all that, the LLC Entities received an additional $660,000 from Jaina for which Jaina received no benefit whatsoever, let alone any fair value exchange.

Two hundred thousand of the $660,000 was transferred on August 13, 2014, one month and three days after Geo-Group obtained on July 10, 2014 its arbitration award against Jaina, and a few weeks after Geo-Group commenced proceedings to confirm the award in Supreme Court, New York County. (Vanjani Dec. ¶ 22) The other $460,000 was transferred in October 2014, a few months after the award was made and around one-and-one-half months after Geo-Group commenced the confirmation proceedings. (Vanjani Dec. ¶ 26) The banking records we obtained from Citibank show that Mahendra Shah approved $360,000 of the transfers, and that Nayana Shah, Mahendra Shah's sister-in-law, and Vipin Shah's spouse, approved the other $300,000. (Vanjani Dec. ¶ 25 & 28)

There is a considerable body of both direct and circumstantial evidence showing that the transfers were both constructively and actually fraudulent. For example:

1.      Hillside, the entity to whom $200,000 was transferred on August 13, 2014, was formed on August 6, 2014, only five days before that transfer. (Vanjani Dec., ¶ 23 & Ex. 21)

2.      728 Melville, the entity to whom $460,000 was transferred during the period

6

October 16, 2014 through October 29, 2014, was formed on October 1, 2014, two weeks and a few days prior to the date on which those transfers commenced. (Vanjani Dec., ¶¶ 26-27, 29)

3.      On May 5, 2015, Geo-Group filed its Second Amended Complaint naming for the first time 728 Melville, Kedis, and Hillside as defendants. But on May 18, 2015, 13 days after Geo-Group filed that Second Amended Complaint, Ms. Gupta and/or Mr. Chand formed a new LLC with the exact same name of the entity formed on October 1, 2014: 728 Melville Petro, LLC. (Vanjani Dec. ¶¶ 146-55)

4.      At some point thereafter, Ms. Gupta and/or Mr. Chand rendered the 728 Melville Petro entity "inactive," making the "new" 728 Melville, formed on May 18, 2015, the only active business entity named 728 Melville Petro. (Vanjani Dec., ¶¶ 151-55)

5.      On February 22, 2016 Geo-Group filed its Third Amended Complaint (the "TAC"), which attempted to plead fraudulent transfer claims against Kedis, 728 Melville, and Hillside. Those three LLC Defendants moved to dismiss the TAC and filed the Chand's Third Affidavit on March 31, 2016. (Vanjani Dec., ¶¶ 135, 153) The Court granted the motion. While the Court did not rely on the affidavit for purposes of the motion to dismiss, the Court addressed and credited it in its opinion on summary judgment. (Dk. 235 at 7-10)

6.      The Chand Third Affidavit contained at least three material, false statements, each of which falsely portrayed the transfers as the payment of an antecedent debt, all for the purpose of deceiving the Court and Geo-Group into believing that the $660,000 transfers were made by Jaina to extinguish Neminath's debt to Kedis, and Jaina's debt to Neminath. (Vanjani Dec. ¶ 46)

7.      That Affidavit not only affirmatively misrepresented the true nature of the

fraudulent transfers but concealed that, just over two months before the affidavit was filed, Mr. Chand orchestrated a real estate transaction with Neminath, pursuant to which Kedis discharged Neminath from its $600,000 Commercial Loan Agreement in exchange for Neminath giving a $600,000 discount on the $1,025,000 sale price of the 235 Hillside Avenue, Williston Park, New York premises. (Vanjani Dec., ¶¶ 75-106)

8.      The affidavit also did not disclose that the Commercial Loan Agreement had been filed with the Nassau County Clerk's Office for purposes of creating a security interest in Neminath's 235 Hillside Avenue, Williston Park, New York property. (See Vanjani Dec., ¶¶ 44.a.-h.) It did not disclose that Kedis and Neminath had entered into a mortgage agreement, by which Neminath granted to Kedis, for purposes of securing its debt to Kedis, a $600,000 mortgage in the 235 Hillside Avenue, Williston Park, New York property.

9.      As a result of Mr. Chand's, and the LLC Defendants' false statements, and their efforts to conceal  the true nature of the transactions, and the relationship between that transaction and the sale of the 235 Hillside Avenue property, Geo-Group did not until Mahendra Shah's August 11, 2017 deposition discover that neither Jaina nor Neminath paid Neminath's Commercial Loan Agreement debt until Neminath sold its 235 Hillside Avenue property in January 2016. (Vanjani Dec., ¶ 134) Even then, it wasn't until after Geo-Group obtained Neminath's tax returns and bank statements by subpoena, and until after it had on November 1, 2017 an opportunity to depose Ms. Ramirez of Williston Park Realty, LLC that Geo-Group obtained a more fulsome understanding of the transaction.  (See Vanjani Dec. ¶¶ 47-67; 77-106)

10.     Mr. Chand also deliberately obfuscated the true nature of the real estate transaction by which Neminath sold the 235 Hillside Avenue, Williston Park, New York

property for $1,025,000, consisting of Kedis' discharge of the $600,000 loan, plus a $425,000 payment to Williston Park Realty, LLC. (Vanjani Dec., ¶¶ 75-106)

11.     Mr. Shah, who was involved in the negotiations, testified that the property was sold to an entity owned or controlled by Mr. Chand. (Vanjani Dec. ¶¶ 62, 65, 76) According to the Contract of Sale, the property was sold to Williston Park Realty, LLC, a company having the same address as the Chand owned-and-controlled LLC Defendants: 1414 Hillside Avenue, New Hyde Park. (Vanjani Dec., ¶ 78, Ex. 22 at WPR000085) The bargain and sale deed executed as part of the sales transaction also lists Williston Park Realty as having an address at 1414 Hillside Avenue, New Hyde Park, New York. (Vanjani Dec., ¶ 77)

12.     Williston Park Realty, LLC's 30(b)(6) witness, Ms. Ramirez testified that, despite all of her close ties with Mr. Chand, and Mr. Chand's sister-in-law, she is the sole owner of Williston Park Realty. (Vanjani Dec., ¶ 82) But that assertion is contradicted by, among other things, the New York State Combined Transfer Tax document she signed, which indicates that Williston Park Realty, LLC is not a single-member LLC. (Vanjani Dec., ¶¶ 100-105) That in turn suggests that Mr. Chand, who negotiated the transaction, and gave Neminath a discharge of its $600,000 loan, has a financial interest in the transaction that he is trying to obscure through the use of a "dummy" or surrogate entity, Williston Park Realty, LLC.

13.     Even if Mr. Chand has no direct financial interest in Williston Park Realty, LLC, he still exercises control over the property that is now in Williston Park Realty LLC's name. For even though Neminath, as part of the $1,025,000 sale of its property, received a discharge of its obligation to pay the $600,000 loan to Kedis, Mr. Chand did not, even though he easily could have, filed a discharge of the $600,000 mortgage on the 235 Hillside Avenue property. (Vanjani

Dec. ¶¶ 80, 96-99)

14.     That means that even if Mr. Chand has no financial interest in Williston Park

Realty, LLC, Mr. Chand still exercises control over the property. If Ms. Ramirez should decide

to sell the property, she'll need either to obtain Mr. Chand's consent or spend a good deal of time

and money in litigation in an effort to clear the defect in title. The title insurance that Mr.

Chand's attorney, Edward Troy—who also acted as her attorney and apparently Neminath's

attorney—obtained for her expressly excludes the defect in title created by Kedis not filing a

discharge of mortgage. (Vanjani Dec., ¶¶ 96-99; Vanjani Dec., Ex. 25 at WPR 000140 & Ex. 26

at WPR 000136)

15.     The way the transaction documented evidences an attempt to conceal its true

nature and to conceal the true sale price of the property for purposes of evading property taxes.

The evidence establishes conclusively that the property was sold for $1,025,000, $600,000 of

which represents a discharge of Neminath's obligation to pay the $600,000 loan pursuant to the

Commercial Loan Agreement, and $425,000 of which represented a cash payment to Neminath.

16.     But both the Contract of Sale and the New York State Combined Transfer Tax

return Neminath and Williston Park Realty, LLC signed falsely state that the sale price of the

property was $425,000, not $1,025,000, as the documents and testimony demonstrate it was.

(Vanjani Dec., ¶ 144)

17.     Mahendra Shah, like Mr. Chand, has misrepresented facts to the Court pertinent

to the $660,000 fraudulently transferred to Jaina and pertinent generally to the several million

dollars of other funds that have inexplicably disappeared from Jaina's bank accounts. (Vanjani

Dec., ¶¶ 107-145, 156-200) As respects the $660,000 in fraudulently transferred funds, Mr. Shah

swore in his affidavit in support of his summary judgment motion that the deal Mahendra Shah negotiated with Mr. Chand outside of Ms. Ramirez's presence was all a big "mistake," and that Mr. Chand somehow duped Mahendra Shah into paying Neminath's $600,000 loan not once, but *twice*.  But Mr. Vanjani's declaration exposes that claim as false. (Vanjani Dec., ¶¶ 107-145)

18.     But Mahendra Shah has lied not only about the $660,000 in transfers but about a key aspect of Jaina's business that is material to whether Mahendra Shah has diverted millions of dollars of cash out of Jaina's coffers in a scheme designed to leave Jaina owing millions of dollars to its suppliers, while Mahendra Shah, Vipin Shah, and Nayana Shah are able to conceal and retain for their own benefit the millions of dollars that they've misappropriated.

19.     To that end, Mahendra Shah swore under oath to this Court that since 2008, Jaina has allegedly had to *prepay* its suppliers. But as Mr. Vanjani's Declaration explains, documents Geo-Group recently obtained from NRM Holdings conclusively show that statement to be false.

20.     Mahendra Shah's false statement about prepayment terms is material because Mahendra used it to support his equally false assertion that Jaina was perennially short on cash, and the corollary assertion that he could not have been guilty of appropriating to his own benefit funds from Jaina, because Jaina allegedly did not have those funds. (See Vanjani Dec. at ¶¶ 156-200)

21.     The evidence, including the documents produced by NRM Holdings demonstrate that Neminath had since 2008, and continued to have through 2014 and 2015, very favorable 15/15 credit terms with its largest supplier, Aircel/Dishnet Wireless Ltd., which, when combined with the even more favorable terms Jaina had with its customers, ensured that Jaina was fully capable of funding, through its own customers' payments, the payments Jaina was supposed to

pay its suppliers. (See Vanjani Dec. at ¶¶ 156-200)

22.     But Jaina did not pay its suppliers even though it should have had the funds. And Mr. Vanjani's analysis of Jaina's 2014 tax returns and bank accounts shows that millions of dollars of cash that should have been deposited into Jaina's bank accounts has disappeared. (Vanjani Dec. at ¶¶ 177-93)

23.     Mahendra Shah had and exercised control over Jaina's finances. It was he that has sought to cover up the disappearance of cash from Jaina and lied about Jaina's business operation.

24.     Mahendra Shah has also made other false statements under oath in this action about Jaina's operations. At his deposition he claimed to know nothing about the Jaina-affiliated entities, including Ipsita Telecom Services, Inc. ("Ipsita"). But the facts show that Mahendra Shah—as Jaina's President, and in light of his family ties to Vipin Shah, and Vipin's spouse, Nayana Shah—had to know that Ipsita was an entity into which Jaina was transferring millions of dollars. (Vanjani Dec. ¶¶ 194-200)

25.     Citibank banking records we obtained through the subpoenas the Court authorized show that Ipsita had an account at Citibank, and the address Ipsita used for that account was, until March 19, 2012, the same as Jaina's: 235 Hillside Avenue, Williston Park, New York 11596. (See Vanjani Dec., ¶¶ 194-200) Effective March 20, 2012 Ipsita changed its address from the Jaina 235 Hillside Avenue address to Vipin Shah's and Nayana Shah's address: 35 Smith Place, Williston Park, New York 11596. (See Vanjani Dec., Ex. 55 at Citibank – 003805.)

26.     Almost immediately after changing Ipsita's address to Vipin's and Nayana Shah's

12

home address, Jaina, in a series of transactions beginning in April 2012, and continuing through September 2012, transferred a net balance of $4,125,400.00 to Ipsita. Those transfers were made through Jaina's Capital One Bank account, the signatories to which were Mahendra Shah, Pooja Shah, Nayana Shah, and Vipin Shah. (Vanjani Dec., ¶ 198 & Ex. 56)

27.    Mahendra Shah also falsely swore in his affidavit in support of summary judgment—in capital letters, no less— that "M. SHAH DID NOT MAKE ANY TRANSFERS TO HIMSELF PERSONALLY OR TO HIS FAMILY OR TO ANY BUSINESS ENTITIES OWNED BY HIM." (See Vanjani Dec. at ¶ 207 & Ex. 38 (emphasis in original).) But banking records Geo-Group obtained from Citibank and Capital One Bank pursuant to the subpoenas revealed that subsequent to Geo-Group's commencement of the arbitration against Jaina, Jaina transferred $85,000 to Mahendra Shah, $22,000 to his spouse, Nayana Shah, and $11,800 to Neminath. (Vanjani Dec. ¶¶ 201-206)

## ARGUMENT

## I.    GEO-GROUP HAS CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS AGAINST THE LLC DEFENDANTS

### A.    Legal Standards: Article 10 of New York's Debtor and Creditor Law

The Court has discussed at length in its February 1, 2016 and July 27, 2016 opinions on the motions to dismiss (Dk. 102 at 6-11 of 24; Dk. 134 at 6-9 of 24), and in its opinion on the summary judgment motions (Dk. 238), the standards for establishing constructive fraudulent conveyance claims under New York Debtor & Creditor Law ("NYDCL") §§ 273, 273-a, & 274, and NYDCL § 276.

### B.    Geo-Group has Valid Constructive Fraudulent Conveyance Claims Against the LLC Defendants under NYDCL §§ 273, 273-a & 274

The Vanjani Dec., and accompanying exhibits, demonstrate that in August and October 2014, shortly after Geo-Group obtained the arbitration award against Jaina on July 10, 2014, and

commenced proceedings to confirm the award in New York State Supreme Court on July 20,

2014, Jaina, with the knowledge and consent of Mahendra Shah, transferred a total of $660,000

to LLC Defendants. The facts show that the transfer was not made in discharge of an antecedent

debt, and conclusively refute Mr. Chand's sworn statement contending that the payment was

made to discharge Neminath's $600,000 debt to Kedis pursuant to the Commercial Loan

Agreement.

Kedis, Hillside and 728 Melville are liable to Geo-Group under NYDCL Section 273-a,

which provides:

> [e]very conveyance made without fair consideration when the person making it is
> a defendant in an action for money damages or a judgment in such an action has
> been docketed against him is fraudulent as to the plaintiff in that action without
> regard to the actual intent of the defendant if, after final judgment for the plaintiff,
> the defendant fails to satisfy the judgment.

NYDCL § 273-a.

It is undisputed that Jaina, who made the fraudulent transfer, was a defendant in both an

arbitration and a confirmation proceedings at the time the transfers were made. *See, e.g.,*

February 1, 2016 Opinion & Order, Dk. at 18 of 24; *First Keystone Consultants, Inc. v.*

*Schlesinger Elec. Contractors, Inc*., 871 F. Supp.2d 103, 118 (E.D.N.Y. 2012). Final judgment

has been entered in that confirmation proceeding, and it is undisputed that the judgment has not

been satisfied. And Mr. Chand's sworn testimony that the transfer was made in discharge of an

antecedent debt has been conclusively refuted.

Kedis, Hillside, and 728 Melville are either transferees or beneficiaries of the

fraudulently transferred funds. The NYDCL fraudulent conveyance remedies are available

against not only transferees of assets, but also persons who participated in and benefited from a

transfer. *See Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842 (1990) (Mem). Having

"dominion or control over [the transferred] assets or. . . benefitt[ing] in any way from the

conveyance[]" satisfies this requirement for imposing liability on nontransferees who participated in the transfer. *Id.*

The funds were transferred directly to Hillside and 728 Melville, which means they are transferees for purposes of the NYDCL, and thus fall within the ambit of the statute.

Kedis participated in and benefited from the transfers even though funds were not sent directly to it. Mr. Chand stated in his Third Affidavit that "[o]n behalf of Kedis, I asked" the funds to "be transferred to [Hillside] and [728 Melville] instead of Kedis." (Vanjani Dec., Ex. 1 at ¶ 12) Mr. Chand said that "he did so because Kedis intended to make transfers in these amounts to [Hillside] and [728 Melville] regardless." (Id.) "By having Jaina transfer the funds in this manner," swore Chand, "it saved me the trouble of transferring funds from Jaina to Kedis and then from Kedis to either [Hillside] or [728 Melville]." (Id.)

The LLC Defendants are also liable to Geo-Group under NYDCL Sections 273 and 274. NYDCL Section 273 governs assets transfers by debtors who are insolvent or will become insolvent because of them: "[e]very conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." NYDCL § 273.

NYDCL Section 274 provides for relief when a transferor "is engaged or is about to engage in a business or transaction for which the property remaining in [its] hands after the conveyance is an unreasonably small capital[,]" and deems such a transfer to be "fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or such transaction." NYDCL § 274.

Section 274 does not require a showing that the transfer of assets rendered the debtor insolvent. All that is required is a showing that after the conveyance the debtor was left with an

"unreasonably small capital" "for its then-current or immediately pending business." July 27, 2016 Opinion and Order, Dk. 134 at 9 of 24.

Like Section 273-a, Sections 273 and 274 require that the "conveyance" be "made without fair consideration." See NYDCL §§ 273, 273-a, 274. *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 248 (2d Cir.1987); *In re Sharp*, 403 F.3d 43, 53 (2d Cir. 2005).

The LLC Defendants are also liable to Geo-Group under Sections 273 and 274 because: (a) the Court has already concluded that there are questions of fact concerning whether Geo-Group was insolvent as of August and October 2014 (Dk. 238); (b) the Court has already concluded that there are questions of fact about whether transfers made in October and August 2014 left Jaina with an "unreasonably small capital" (Dk. 238); (c) the transfers to the LLC Defendants were made without any consideration whatsoever, let alone "without fair consideration[;]" and (d) the LLC Defendants were either transferees or participated in and benefited from the transfers.

## II.   GEO-GROUP HAS ACTUAL FRAUDULENT TRANSFER CLAIMS AGAINST THE LLC DEFENDANTS, SANJIV CHAND, AND MAHENDRA SHAH

### A.   Legal Standards

NYDCL Section 276 provides that "[e]very conveyance made  and every obligation incurred with actual intent, as distinguished from intent presumed  in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL § 276.

As the Court explained in its July 30, 2018 decision on summary judgment, "[u]nlike the constructive fraud statutes, section 276's prohibition on actual fraud centers on the transferor's intent and does not have any requirement regarding consideration or insolvency." (Dk. 238 at 19)

Because "proof of intent to defraud is rare," "courts have held that creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent." (Id.) "Factors that are considered

16

'badges of fraud'[,]" explained the Court, "are [i] a close relationship between the parties to the transaction, [ii] a secret and hasty transfer not in the usual course of business, [iii] inadequacy of consideration, [iv] the transferor's knowledge of the creditor's claim and his inability to pay it, [v] the use of dummies or fictitious parties, and [vi] the retention of control of the property by the transferor after the conveyance." (Id.) *See also In re Sharp*, 403 F.3d at 56; *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983); *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2005).

> B.    The Direct and Circumstantial Evidence Establishes that the $660,000 in Transfers were Actually Fraudulent within the Meaning of NYDCL § 276

The actually fraudulent nature of the $660,000 in transfers is supported not only by circumstantial, but direct evidence. The transfers were not in satisfaction of an antecedent debt, which means that Mr. Chand's Third Affidavit contains at least three materially false statements. Mr. Chand, in falsely portraying the transfers as discharge of an antecedent debt, deliberately concealed the real estate transaction he had just entered into with Neminath, did not mention the mortgage agreement entered into in conjunction with the Commercial Loan Agreement, did not disclose that both the mortgage agreement and the Commercial Loan Agreent had been filed with the Nassau County Clerk's office, and deliberately concealed that Jaina received no consideration whatsoever in return for the $660,000 Jaina paid to the LLC Defendants.

Mahendra Shah, like Mr. Chand, has misrepresented facts to the Court in an effort to conceal the actually fraudulent nature of the transfers. He pretended Neminath had simply made a "grave mistake" by giving Mr. Chand and/or Kedis a discount of $600,000 on the sale of the $1,025,000 property in return for a loan discharge that Neminath supposedly did not need. (Vanjani Dec. ¶¶ 115-45) He has misrepresented under oath other aspects of Jaina's business in an effort to rebut Geo-Group's showing that millions of dollars of cash was misappropriated from Jaina in 2014, cash that he had the motive, means, and opportunity to divert from Jaina's

coffers into his own.

Circumstantial badges of fraud evidence also strongly support an inference of fraudulent intent. There was a close relationship between Mahendra Shah and Sanjiv Chand, and thus also between and among Jaina, Neminath, and the LLC Defendants. They, along with Maria Ramirez, share the same attorney, Edward Troy, who has a history of working not only for Jaina, and reporting to Mahendra Shah, but who also has a history of working for Mr. Chand. (Vanjani Dec., ¶¶ 81.f, 90, 91-93)

There is an overwhelming amount of evidence that Jaina did not receive any consideration whatsoever in exchange for the $660,000 that Jaina transferred to the LLC Defendants. There was not only an "inadequacy of consideration," but a complete absence of it.

"Dummies or fictitious" parties appear to be involved. Hillside and 728 Melville were both created a few days before they received huge sums of money from Jaina.  Once Geo-Group filed its Second Amended Complaint, but before it served it, a new LLC with the exact same name as 728 Melville was created, a fact that both Mr. Chand and Jesse Gupta conveniently fail to mention in their own affidavits. (Vanjani Dec. ¶¶ 146-55)

Other evidence regarding the apparent use of "dummies or fictitous" parties involves Willston Park Realty LLC's role in the sale. Based on how the New York State Real Estate Transfer tax form was filled out, Williston Park Realty LLC is either *not* a single member LLC or, if Williston Park Realty LLC *is* such an entity, as Ms. Ramirez claims, then it has not properly disclosed its status as required by the transfer tax form. (Vanjani Dec ¶¶ 100-105)

The issue of single versus multiple member LLC is important because, according to Mahendra Shah's testimony, based on the negotiations he had with Mr. Chand, he sold the property to a business entity owned by Mr. Chand. But Ms. Ramirez swears that she is the only

18

member of Williston Park Realty LLC, and that she, not Mr. Chand, soley owns Williston Park Realty, LLC.

The sale transaction was designed to accomplish two things. First, to conceal that $600,000 of the consideration paid to Neminath for the $1,025,000 property represented Kedis's discharge of Neminath's Commercial Loan Agreement. Second it appears to have been designed to conceal that the total consideration paid for the property was $1,025,000, not the $425,000 sale price reported on the New York State Transfer Tax form.

Mahendra Shah knew about Geo-Group had commenced an arbitration against Jaina, and that by the time of the transfers, Mahendra Shah knew that an award had been made against Jaina, and that Geo-Group had commenced confirmation proceedings against Jaina. Mr. Troy was Jaina's counsel for the arbitration, and Mahendra Shah was his principal contact at Jaina. (Vanjani Dec., ¶¶ 91-92) Mr. Troy continued to represent Jaina in the New York State Court confirmation proceedings (which were commenced on July 20, 2014), including on appeal.

Looking at the evidence in its totality, it shows that: (a) Jaina, with the knowledge, consent, and approval of Mahendra Shah, transferred $660,000 to the LLC Defendants in exchange for no consideration whatsoever; (b) the two key participants in this transfer, Mr. Chand and Mahendra Shah have made false statements under oath in an effort to conceal that fact; (c) Mr. Chand and Mahendra Shah further sought to conceal the true nature of those transfers by arranging for the payment of the Kedis loan to Neminath (which had never been discharged) by way of a real estate transaction that seeks to conceal the consideration that was actually paid; and (d) both the $660,000 of the transfers and the property sale are replete with badges of fraud.

The only economic  purpose of such a transaction, evidenced as it is by the kind of direct

and circumstantial evidence as is present in this case, is to remove money from the coffers of the company (here Jaina) and to place them into the hands of other persons (here the LLC Defendants), who in exchange for some consideration (such a share of the wrongfully transferred funds) will ensure that the transferor will, through some carefully concealed mechanism, directly or indirectly, receive at least some of the benefit of the transfer.

C.     The LLC Defendants are Liable to Geo-Group under Section 276

The direct and circumstantial evidence shows that the LLC Defendants are liable to Geo-Group for actual fraudulent conveyance under Section 276. As explained in Section I.B., Kedis, Hillside, and 728 Melville are either transferees or beneficiaries of the fraudulently transferred funds.

D.     Sanjiv Chand and Mahendra Shah are Liable to Geo-Group under Section 276

Under New York law, "[i]n actions for actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." *Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46, 55 (2001); *Midland Bank v. Russo*, 50 N.Y.2d 31, 44 (1980). In the context of fraudulent conveyance cases, an individual, including a corporate officer or director, who participated in the transaction, may be held liable under Section 276 if they either had some "dominion or control over [the transferred] assets or. . . benefitted in [some] way from the conveyance." *Porco*, 75 N.Y.2d at 842.

The transactions themselves and the circumstances surrounding them suggest that the participating transferors, and the transferees intentionally sought to divert hundreds of thousands of dollars of cash out of Jaina, which was facing confirmation of a $1.2 million plus interest arbitration award. The direct and circumstantial evidences strongly suggest that the purposes of transferring $660,000 out of Jaina in exchange for no consideration whatsoever to Jaina was to

enable the transferors to deposit the money with Mr. Chand and the LLC Defendants, who, in exchange for a portion of the money which would hold it for, and later distribute the remaining portion directly or indirectly to Mahendra Shah and any other participating transferors.

Where as here, private transactions are involved, transferrees and participating transferors will do all in their power to cover up their fraud, and direct evidence is rare. In cases like this where the evidence of chicanery is as strong as it is here, where there is direct and circumstantial clear and convincing evidence that huge sums of money were transferred to business entities or persons in exchange for no consideration whatsoever, and where there is strong evidence that persons participating in the transactions, including Mr. Chand and Mahendra Shah have made false statements under oath in an effort to cover up the fraudulent scheme, then the fact finder should be permitted to draw the inference that the persons who participated in the  transaction, either had some "dominion or control over [the transferred] assets or. . . benefitted in [some] way from the conveyance." *Porco*, 75 N.Y.2d at 842.

The Court should permit Geo-Group to bring Section 276 actual fraudulent conveyance claims against Mahendra Shah and Sanjiv Chand.

E.       The Doctrine of Tax Estoppel Bars Mahendra Shah from Taking any Positions in this Litigation that are Contradicted by Neminath's or Jaina's Tax Returns

Mahendra Shah cannot, as a matter of law, make or advance any factual assertions that are contradicted by the tax returns he filed on behalf of Neminath or Jaina. Under New York law, "[a] party to litigation may not take a position contrary to a position taken in an income tax return." *Mahoney-Buntzman v. Buntzman,* 12 N.Y.3d 415, 422 (2009); *see, e.g.*, *American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F.Supp.2d 177, 193-94 (E.D.N.Y. 2010).

F.       The LLC Defendants, Sanjiv Chand, and Mahendra have Perpetrated a Fraud on Geo-Group and the Court

Under New York and federal law, "to demonstrate fraud on the court, the noneffending

party must establish by clear and convincing evidence that the offending party has acted

knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his

advesary's defense of the action." *CDR Creances S.A.S. v. Cohen*, 23 N.Y.3d 307, 320 (2014)

(citations and quotation omitted). Here Mr. Chand's actions and sworn statements constitute a

fraud on the court for which he should be required to pay damages and sanctions.

III.    THE COURT SHOULD REOPEN THE CASE AGAINST THE LLC DEFENDANTS
AND MAHENDRA SHAH PURSUANT TO FED. R. CIV. P. 54(b)

   A.    The Courts Orders Dismissing and Terminating the LLC Defendants and
Mahendra Shah did not End this Case as to those Defendants and Claims

   Geo-Group's motion is governed by Fed. R. Civ. P. 54. Rule 54(b) provides that an order

dimissing some but not all parties from a multi-party suit is *not* a "final judgment," "unless the

Court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b)

(emphasis added).

   Such a certification is the exception, not the rule. It must be "express[]"; it is not enough

that a Court "terminates" a defendant from the docket. *See L.B. Foster Co. v. Am. Piles, Inc.*, 138

F.3d 81, 86 (2d Cir. 1998); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 631-32 (2d Cir. 1995).

   The Court's orders granting the LLC Defendants' motion to dismiss the LLC defendants

and granting summary judgment to Mahendra Shah do not direct entry of final judgment in favor

of any of those defendants or state or suggest that was the Court's intent.

   B.    The Court's Orders Dismissing the LLC Defendants and Mahendra Shah are
Subject to Revision

   Where, as here, the Court has not certified for immediate appeal a decision that dismisses

less than all defendants, Rule 54(b) provides that the decision may be "revised at any time prior

to entry of judgment.":

   Otherwise, any order or other decision, however designated, that adjudicates
   fewer than all the claims or the rights and liabilities of fewer than all the parties
   *does not end the action as to any of the claims or parties and may be revised at*

*any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

Fed. R. Civ. P. 54(b) (emphasis added).

C.    The Decisions Dismissing the LLC Defendants should be Revised because of the Availability of New Evidence

In *Colvin v. Keen*, 900 F.3d 63, 71 (2d Cir. 2018), the Second Circuit explained that an

"'intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent a manifest injustice[]'" may justify the revision of a decision under Fed. R.

Civ. P. 54(b). 900 F.3d at 71 (quoting *Official Committee of the Unsecured Creditors of Color*

*Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003)).

The evidence adduced since the dismissal of the LLC Defendants and the Court's grant of

summary judgment to Mahendra Shah constitutes ample grounds for reopening the case against

those defendants under Rule 54(b).

IV.    THE COURT SHOULD GRANT GEO-GROUP LEAVE TO JOIN SANJIV CHAND, AND TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT AGAINST THE LLC DEFENDANTS, MAHENDRA SHAH AND SANJIV CHAND

This Court has the authority to join Mr. Chand to this action under Fed. R. Civ. P.

20(a)(2). The joinder can be accomplished by Geo-Group's service of an amended and

supplemental complaint against Mr. Chand, the LLC Defendants, and Mahendra Shah. See Fed.

R. Civ. P. 15(a) & (c). The amended pleading would set forth constructive and actual fraudulent

transfer claims against the LLC Defendants, actual fraudulent transfer claims against Mr. Chand

and Mahendra Shah, and a claim against Mr. Chand for fraud on the Court and Geo-Group. .

V.    THE STATUTE OF LIMITATIONS PRESENTS NO BAR TO THE RELIEF REQUESTED BY GEO-GROUP

As respects the LLC Defendants and Mahendra Shah, Fed. R. Civ. P. 15(c)(1)(B) would

permit relation back to the date of the original pleading where, as here, the "claim[s] [arise] out

of the conduct, transaction, or occurrence set out—or attempted to be set out---in the original

pleading." Whereas under New York law the "termination of an *action*" may revive the statute of limitations, see New York Civ. Prac. L. & R. 205, under Fed. R. Civ. P. 54(b) dismissal of a case against one defendant in a multiple defendant case does not "end the action as to any of the claims or parties. . . ." Fed. Civ. P. 54(b). Thus, the statute of limitations continues to be tolled against Mr. Shah and the LLC Defendants.

But even were the Court to determine that the dismissal meant the statute of limitations was no longer tolled, the statutes of limitation will not expire until August 11, 2020 at the latest.

A.     California's Statute of Limitations Applies under New York's Borrowing Statute

New York has a six-year statute of limitations for fraudulent conveyance claims. *See, e.g,. Setters v. AI Props. & Devs. (USA) Corp.*, 32 N.Y.S.3d 87, 88 (1st Dep't 2016). It begins to run no earlier than on the date of each successive transfer, which means it would not begin to run on the first $200,000 transfer until August 13, 2020.

Geo-Group is organized under the laws of Delaware and has its principal place of business in Commerce, California. (Vanjani Dec. ¶ 1) New York's borrowing statute provides:

> An action based upon a cause of action accruing without the state  cannot  be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where  the  cause  of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

New York Civ. Prac. L. & R. § 202.

As this Court discussed in a recent opinion, for purposes of the borrowing statute a cause of action "accrues" in favor of a corporate plaintiff at its principal place of business, which is ordinarily also considered its "residence" for purposes of the statute. *Petroholding Dominicana, Ltd. v. Gordon*, No. 18 Civ. 1497 (KPF), slip op. at 13-14 (S.D.N.Y. June 3, 2019) (Copy attached as Ex. A)

Accordingly, the causes of action in this case are deemed to have arisen in California, and

California law governs the limitation period, unless New York's statute of limitation is shorter. As it turns out, California's statute of limitations is shorter than New York's statute of limitation and therefore supplies the limitation period.

California has two time periods that may govern a fraudulent conveyance claim. One is a four-year statute of repose, which is an eligibility requirement for bringing an action under California's Uniform Voidable Transactions Act (the "California Uniform Act"). *See* Cal. Civ. Code § 3439.09. It "extinguishes" both the right and remedy provided for under the California Uniform Act.  Cal. Civ. Code § 3439.09 (c). It ordinarily runs from the date of the conveyance, subject to a one-year discovery extension. *See* Cal. Civ. Code §§ 3439.09 (a) & (b)).

Parties are not required to proceed under the California Uniform Act, because the Act does not displace the common law. When they proceed under the common law, cause of action accrues from the later of the date of judgment on the underlying debt or date of discovery of the fraud.  Cal. Civ. Proc. Code § 338(d); *see, e.g., Cortez v. Vogt*, 52 Cal. App. 4th 917 (Cal. Ct. App. 4th Dist. 1997); *Estate of Myers*, 139 Cal. App. 4th 434, 440 (Cal. Ct. App. 4th Dist. 2006); *Adams v. Bell*, 5 Cal. 2d 697, 702-03 (Cal. 1936).

Under New York law, a statute of repose that operates like the one in California is considered part of the substantive—not procedural—law of another state. *Tanges v. Heidelberg North America, Inc.*, 93 N.Y.2d 48, 54-56, 58 (1999). The borrowing statute is part of New York's procedural, statute of limitations law. *2138747 Ontario, Inc. v. Samsung C&T Corp.*, 31 N.Y.3d 372, 378 (2018). It does not determine what state's *substantive* law applies, only which state's procedural statute of limitations law applies.

Because Geo-Group is not making (and could not make) a fraudulent conveyance claim under California's substantive law, and because the borrowing statute only borrows statutes of

limitation that are procedural in nature, the applicable statute of limitations is Cal. Civ. Proc. Code § 338(d).

Geo-Group discovered the "facts constituting the fraud" no earlier than August 11, 2017, when it took Mahendra Shah's testimony.  (Vanjani Dec. ¶ 134) As demonstrated by the Court's decision dismissing Geo-Group's Third Amended Complaint against the LLC Defendants, Geo-Group did not, prior to that time, have sufficient facts to state a plausible claim against those defendants.

The statute of limitations will therefore not expire until August 11, 2020.

## CONCLUSION

For all of the foregoing reasons, Geo-Group respectfully requests that the Court grant its motion in its entirety.

Dated:   New York, New York
October 4, 2019


By:   /s/ Philip J. Loree Jr.
Philip J. Loree Jr. (PL-2213)
800 Third Avenue, 28th Floor
New York, New York 10022
(646) 253-0560
(516) 627-1720 (alt.)
(516) 941-6094 (mobile)
PJL1@LoreeLawFirm.com

*Counsel for Plaintiff Geo-Group Communications, Inc.*


To:    All Counsel of Record and Pro Se Parties

26