

18 Civ. 1497 (KPF)
UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

# Petroholding Dominicana, Ltd. v. Gordon

Decided Jun 3, 2019

KATHERINE POLK FAILLA, District Judge

**OPINION AND ORDER** :

Plaintiff Petroholding Dominicana, Ltd. ("Petroholding" or "Plaintiff"), a Dominican company that is the successor-in-interest to Antonveneta Holdings, Ltd. ("Antonveneta"), a Cypriot company, has brought suit against Michael Gordon ("Defendant"), a resident of California, for an alleged fraud. Plaintiff alleges that Defendant exploited his language skills and a shared Russian heritage to trick Plaintiff into believing that a Chinese oil conglomerate wished to invest in Plaintiff's Dominican real estate project. While this web of international intrigue spanning across corporations and continents provides a complex factual background, the motion before the Court requires analysis of a far more limited question: Does the Dominican or the Cypriot statute of limitations control? Defendant argues for the application of the Dominican statute, which would render Plaintiff's allegations time-barred, while Plaintiff argues for the Cypriot statute, which would allow the case to move forward. For the reasons set forth below, the Court finds that the Dominican statute of limitations controls and, therefore, grants Defendant's motion to dismiss in full. *2

2 The Court is aware that this result can seem troubling in light of the serious allegations in the Amended Complaint. However, while the outcome may be discomforting, the Court finds no legal basis for applying any other statute of limitations that would allow the case to move forward.

## BACKGROUND [1]

[1] The facts in this section are drawn principally from the allegations in the Amended Complaint ("Am. Compl." (Dkt. #23)) and the attached Declaration of Michael Gordon (Am. Compl., Ex A. ("Gordon Decl.") (Dkt. #23-1)). The Court also relies on certain exhibits attached to the Declaration of Professor Keith S. Rosenn in Support of Defendant's Motion to Dismiss ("Rosenn Decl." (Dkt. #31)), and the Declaration of Scott S. Humphreys in Support of the Motion to Dismiss ("Humphreys Decl." (Dkt. #71)).

For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #29); to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #32); and to Defendant's Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #33).

### A. Factual Background

#### 1. The Parties

Plaintiff is a corporation, with its headquarters and principal place of business in the Dominican Republic. (Am. Compl. ¶ 2). Plaintiff is a developer of real estate in the Dominican Republic. (*Id*. at ¶ 6). Antonveneta is a Cypriot company, with its headquarters and principal place of business in the Dominican Republic. (*See* Def. Br. 4-5).[2] Michael Gordon is a resident of California and a United States citizen. (Am. 3 Compl. ¶ 4). *3

2 Defendant notes that in both the initial Complaint (Compl. ¶ 2) and in Plaintiff's counsel's representations to the Court (Dkt. #22 (Transcript of June 22, 2018 Hearing) at 11:7-9), Plaintiff acknowledged this fact. While Plaintiff's Amended Complaint does not restate these facts, and states merely that "[Antonveneta] is an investment fund registered in Cyprus, and maintains its bank accounts, domicile, and financial center in Cyprus" (Am. Compl. ¶ 3), Plaintiff does not attempt to deny or walk back counsel's statement that Antonveneta is headquartered in the Dominican Republic and maintains its principal place of business there. The Court agrees that it may take judicial notice of the prior Complaint and the prior hearing in ruling on the motion to dismiss. *See Castagna* v. *Luceno*, No. 09 Civ. 9332 (CS), 2011 WL 1584593, at *5 (S.D.N.Y. Apr. 26, 2011).

Defendant points to numerous Dominican government records to establish that Antonveneta maintains its principal place of business in the Dominican Republic. (See Def. Br. 5). The Court does not consider it necessary to review these records, as Plaintiff does not object to Defendant's characterization of Antonveneta as having its headquarters and principal place of business in the Dominican Republic. Plaintiff states: "Antonveneta is a company registered in Cyprus. It maintains its independent bank accounts and financial center in Cyprus." (Pl. Opp. 4). The Court has considered the wellpleaded allegations of the Amended Complaint, Defendant's arguments and Plaintiff's lack of response to them, as well as Plaintiff's prior submissions and Plaintiff's counsel's incourt statements, of which the Court takes judicial notice. Based on this review, the Court determines that Antonveneta is a Cypriot company, with a headquarters and principal place of business in the Dominican Republic that maintains its bank accounts in Cyprus.

### 2. Defendant's Business Relationship with Plaintiff

This case arises from Plaintiff's development of a building in Juan Dolio in the Dominican Republic, called the Mariposa (the "Mariposa Development"). (Am. Compl. ¶ 8). Antonveneta provided funding for Plaintiff to build the site, and Plaintiff sought further funds to complete the development or to sell it. (*Id.*). In 2010, Defendant and Plaintiff's president, Vladimir Bulavin, met, and Defendant allegedly represented to Mr. Bulavin that he was affiliated with Glickman Capital ("Glickman"), a private equity firm headquartered in California. (*Id.* at ¶¶ 10-11).

Defendant, purporting to act on behalf of Glickman, negotiated an agreement whereby Plaintiff would pay Glickman $45,000 per month for a period of four months, from September 2010 through December 2010, in exchange for Glickman's assistance with financial restructuring and fundraising. (Am. Compl. ¶¶ 12-15). This agreement specified that it would be governed by New York law, with disputes resolved in New York courts. (*Id.* at ¶ 16). Plaintiff paid $180,000 to what it believed to be Glickman, and also paid Defendant's travel expenses, on the belief that Defendant and Glickman were *4 performing the work specified in the agreement. (*Id.* at ¶ 17). Defendant represented that he was negotiating with investors, and he convinced Plaintiff to pay an additional $45,000 per month. (*Id.* at ¶ 20). This second agreement was also governed by New York law, with disputes to be adjudicated in New York courts. (*Id.* at ¶ 21). In total, "Plaintiff paid, purportedly to Glickman Capital, a total of $495,000 in monthly fees of $45,000 each, as well as expense payments of more than $80,000, for a total of approximately $575,000." (*Id.* at ¶ 22). The funds for these payments originated in Antonveneta's accounts in Cyprus. (*Id.*).

In April 2011, Defendant informed Plaintiff that the Chinese oil conglomerate Sinopec was interested in purchasing the Mariposa

Development for $67,500,000. (Am. Compl. ¶ 23). Defendant informed Plaintiff that, to complete the transaction, Plaintiff needed to create a Delaware holding company, which Defendant offered to establish. (*Id*. at ¶¶ 25-27). On April 21, 2011, Defendant set up a Delaware holding company, and named it Petroholding International, LLC ("Petroholding International"). (*Id*.). Defendant allegedly appointed himself Petroholding International's sole manager, and designated Glickman and Antonveneta as members, purporting to sign the paperwork on Antonveneta's behalf. (*Id*. at ¶ 28).

On October 27, 2011, Defendant presented Plaintiff a purported purchase agreement, by which Sinopec agreed to pay $67,500,000 for the Mariposa Development. (Am. Compl. ¶ 30). As part of the agreement, Sinopec would make a deposit of $6,750,000 into Petroholding International's account *5 on November 1, 2011. (*Id*. at ¶ 31). To complete the agreement, Petroholding International would make a deposit of $675,000, plus up to an additional $250,000 to protect Sinopec against potential losses. (*Id*. at ¶ 32). On November 2, 2011, Defendant provided Plaintiff a wire transfer report, showing that Sinopec had made the $6,750,000 deposit. (*Id*. at ¶ 33). Based on this representation, Antonveneta wired $925,000 for the deposit to the Petroholding International account on November 16, 2011. (*Id*. at ¶ 34). Thereafter, Antonveneta requested a report from Glickman on the progress of sales negotiations, but its letter to Glickman was returned as undeliverable. (*Id*. at ¶¶ 35-36).

### 3. The Discovery of the Alleged Fraud

The sale to Sinopec was supposed to close on March 1, 2012, and Plaintiff sought information from Defendant and Glickman, unsuccessfully, in the weeks and months prior to that date. (Am. Compl. ¶ 37). Having failed to obtain information, on April 15, 2012, Plaintiff reached out directly to Sinopec, which informed Plaintiff that it had no business in the Dominican Republic; that it knew nothing about the Mariposa Development; and that the individual who reportedly signed an agreement on Sinopec's behalf did not exist. (*Id*. at ¶ 38). Plaintiff alleges that Defendant, who had control of the Petroholding International account, had merely stolen the $925,000 deposit from Antonveneta, along with the $575,000 in monthly payments and expense reimbursements. (*Id*. at ¶¶ 39-41). *6

In March 2013, Mr. Bulavin was able to contact Defendant, who refused to return the money and — richly, as later events would suggest — blamed Plaintiff for the failure of the alleged Sinopec deal. (Am. Compl. ¶ 43). Plaintiff states that Petroholding International had been dissolved and had no active bank accounts. (*Id*. at ¶ 44).

Several years later, in April 2016, Plaintiff alerted Glickman to the entire sequence of events. (Am. Compl. ¶ 45). Glickman then informed Plaintiff that Defendant held no position with the company and had no authority to bind the company — and, indeed, that Glickman had no prior knowledge of any of Defendant's conduct. (*Id*.). Plaintiff states that it did not learn of the extent of Defendant's fraud until it reviewed a signed declaration by Defendant that Defendant had submitted to Glickman, in which Defendant acknowledged that he had misrepresented his relationship with Glickman and falsely presented himself to Plaintiff as Glickman's representative. (*Id*.; *see also* Gordon Decl.).

### B. Procedural Background

On March 10, 2017, Plaintiff brought a complaint against Defendant in this District concerning the above-described events. *See* Complaint, No. 17 Civ. 1799 (WHP), *Petroholding Dominicana* v. *Gordon* (S.D.N.Y. Mar. 10, 2017). On September 12, 2017, United States District Judge William H. Pauley III dismissed the case without prejudice, as Plaintiff had failed to serve the summons and complaint. *See* Order, No. 17 Civ. 1799 (WHP), *Petroholding Dominicana* v. *Gordon* (S.D.N.Y.

7   Sept. 12, 2017). Plaintiff states that Defendant *7 intentionally misled a process server to avoid service in this initial case. (Am. Compl. ¶ 47).

Plaintiff filed the initial complaint in this case on February 20, 2018. (Dkt. #1). On May 18, 2018, Defendant filed a letter motion requesting leave to file a motion to dismiss. (Dkt. #18). On June 22, 2018, the Court held a pre-motion conference and set a schedule for Plaintiff to file an amended complaint. (*See* Dkt. #24 (transcript of conference)). On July 30, 2018, Plaintiff filed the Amended Complaint. (Dkt. #23). The complaint states four causes of action, for fraud, money had and received, breach of contract, and breach of fiduciary duty. (*See* Am. Compl. ¶¶ 50-86).

On September 14, 2018, Defendant filed a motion to dismiss the complaint as time-barred by the Dominican statute of limitations, which is applicable through New York's borrowing statute. (Dkt. #28-31). On October 5, 2018, Plaintiff filed its opposition to the motion to dismiss (Dkt. #32), and on October 19, 2018, Defendant filed a reply (Dkt. #33).

## DISCUSSION

### A. Applicable Law

**1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

The limitations arguments advanced by Defendant speak to Plaintiff's ability to state a claim, and are therefore governed by Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be

8   true, and determine whether they *8 plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court is not limited to the face of the complaint. Rather, the court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the [relevant government agencies], and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)); *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

9   Documents fairly considered in *9 the instant matter include Defendant's declaration, which Plaintiff has attached to the Amended Complaint (Gordon Decl.), and the Delaware Secretary of State's records showing the date on which Petroholding International ceased operating (Humphreys Decl., Ex. 3). *See Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

**2. New York's Borrowing Statute**

Defendant's sole argument for dismissal concerns the timeliness of Plaintiff's claims. Resolution of this motion thus requires a determination of the applicable statute of limitations. "Under New York's 'borrowing statute,' a case filed by a non-resident plaintiff requires application of the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued." *Cantor Fitzgerald Inc*. v. *Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (citation omitted) (citing N.Y. C.P.L.R. § 202); *Antone* v. *Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 26 (1984)).[3] "New York follows 'the traditional definition of accrual — a cause of action accrues at the time and in the place of the injury.'" *10 *Cantor Fitzgerald Inc.*, 313 F.3d at 710 (quoting *Global Fin. Corp.* v. *Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)); *see also Commerzbank AG* v. *Deutsche Bank Nat'l Tr. Co.* (hereinafter "CB/DB"), No. 15 Civ. 10031 (JGK), 2017 WL 564089, at *5 (S.D.N.Y. Feb. 10, 2017) (citing *Portfolio Recovery Assocs., LLC* v. *King*, 14 N.Y.3d 410, 416 (2010). And "[w]here, as here, the 'injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.'" *Cantor Fitzgerald Inc.*, 313 F.3d at 710 (quoting *Global Fin. Corp.*, 93 N.Y.2d at 529); *see also Norex Petroleum Ltd.* v. *Blavatnik*, 23 N.Y.3d 665, 671 (2014) ("As a resident of Alberta, Canada, alleging purely economic injuries, [plaintiff's] injuries accrued in Alberta.").

---

[3] New York Civil Practice Law and Rules Section 202 provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

For purposes of the borrowing statute, the residency of a corporate plaintiff is typically the principal place of business. *See, e.g., CB/DB*, 2017 WL 564089, at *5; *IKB Deutsche Industriebank AG* v. *McGraw Hill Fin., Inc.*, No. 14 Civ. 3443 (JSR), 2015 WL 1516631, at *3 (S.D.N.Y. Mar. 26, 2015) (finding that corporate plaintiff resided in Germany because it was incorporated and had its principal place of business in Germany), *aff'd*, 634 F. App'x 19 (2d Cir. 2015) (summary order).

### 3. The Competing Statutes of Limitations

The parties dispute the controlling limitations period. New York provides that, for actions based on fraud, "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Neither *11 party disputes that the action is timely under New York's statute of limitations. However, since the borrowing statute requires the Court to apply the shorter statute of limitations between New York and the foreign state, *see Cantor Fitzgerald*, 313 F.3d at 710, Defendant claims the Dominican statute of limitations is the controlling one here.

To provide the Court with relevant expertise on Dominican law, Defendant provides the Declaration of Professor Keith S. Rosenn. (Dkt. #31).[4] Professor Rosenn provides two principal

conclusions. *First*, the analogous statutes of limitations under Dominican law apply to Plaintiff's various causes of actions as follows:

> 4 As this Court has previously held:
>
>> Rule 44.1 of the Federal Rules of Civil Procedure permits the Court to consider, "in determining foreign law ... any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. The Rule further provides that "the court's determination must be treated as a ruling on a question of law." *Id*. "Accordingly, foreign law should be argued and briefed like domestic law. As with domestic law, judges may rely on both their own research and the evidence submitted by the parties to determine foreign law." *Commerzbank AG* v. *Deutsche Bank Nat'l Tr. Co*., No. 15 Civ. 10031 (JGK), 234 F. Supp. 3d 462, 472, 2017 WL 564089, at *7 (S.D.N.Y. Feb. 10, 2017) (citation omitted) (quoting *Sealord Marine Co*. v. *Am. Bureau of Shipping*, 220 F. Supp. 2d 260, 271 (S.D.N.Y. 2002)).

(1) one year on the first cause of action for fraud; (2) six months or one year on the second cause of action for money had and received; (3) two years on the third cause of action for breach of contract; and (4) one year on the fourth cause of action for breach of fiduciary duty if the claim sounds in tort, or two years if the claim is for breach of contract.

*12 (Rosenn Decl. ¶ 32). *Second*, Professor Rosenn states that the statute of limitations "would start to run on the date that the Plaintiff knew of its alleged injuries and was legally and factually able to assert its claims against the Defendant." (*Id*. at ¶ 33). Professor Rosenn's affidavit also provides detailed analysis of the Dominican Republic's civil code and case law substantiating his conclusions. (*See generally* Rosenn Decl.).

As Defendant notes in reply, Plaintiff voices no objection to Professor Rosenn's analysis of Dominican law or the Dominican statute of limitations. (*See* Def. Reply 7 ("Nor does Plaintiff offer any challenge to the expert declaration of Professor Rosenn[.]")). Indeed, Plaintiff tacitly accepts that Defendant's recitation of Dominican law is correct. (*See* Pl. Opp. 7 (citing to Defendant's brief for a description of the Dominican statute of limitations)). From the Court's review, Professor Rosenn's declaration accurately describes the consensus of experts on Dominican statute of limitations periods. *See*, *e.g*., *Jones* v. *FC USA*, *Inc*., No. CV 17-1126, 2017 WL 5453497, at *3 (E.D. Pa. Nov. 14, 2017) ("Dr. Herrera-Beato states ... the [Dominican] statute of limitations for contract disputes is two years."); *Grp. CG Builders & Contractors* v. *Cahaba Disaster Recovery*, *L.L.C*., No. CA 11-00729-KD-C, 2012 WL 3245972, at *3 (S.D. Ala. July 5, 2012) ("Mr. Fiallo provides that ... 'that the applicable statute of limitations is two years from the alleged breach of the contract.'"), *report and recommendation adopted sub nom*. *Grp. CG Builders & Contractors* v. *Cahaba Disaster Recovery*, *LLC*, No. CIV.A. 11-00729-KD-C, 2012 WL 3206671 (S.D. Ala. Aug. 7, 2012), *aff'd*, 534 F. App'x 826 (11th Cir. *13 2013) (per curiam). Based on Professor Rosenn's declaration, the Court's review of the relevant law, and Plaintiff's lack of objection, the Court finds that the relevant statutes of limitations under Dominican law are accurately described in the Rosenn Declaration.

Significantly, however, Plaintiff argues that the Cypriot statute of limitations is the controlling one. Plaintiff states that the Cypriot statute of limitations is ten years or six years, providing support in the form of citations to versions of the

Cypriot legal code available on commercial search engines. (Pl. Opp. 6 n.2). Defendant does not contest that the action would not be time-barred under Cypriot law. The Court accepts that, for the purposes of this motion, Cypriot statutes of limitations would permit the suit to go forward, but the Court ultimately does not consider Cypriot law controlling in the case.

## B. Analysis

### 1. The Dominican Statute of Limitations Applies in This Case

Both parties acknowledge that New York's general rule is that a foreign plaintiff's cause of action for economic damages accrues "where the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp.*, 93 N.Y.2d at 529. "Courts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business." *Woori Bank* v. *Merrill Lynch*, 923 F. Supp. 2d 491, 494 (S.D.N.Y.), *aff'd*, 542 F. App'x 81 (2d Cir. 2013) (summary order).[5] As both Antonveneta and Plaintiff *14 have their principal places of business in the Dominican Republic, Defendant argues that the analysis clearly points to the Dominican statute of limitations governing the case. (*See* Def. Br. 10-12; Def. Reply 1). The Court agrees that both Antonveneta and Plaintiff have their principal places of business in the Dominican Republic.

---

[5] In *Luv N' Care Ltd.* v. *Goldberg Cohen, LLP*, a sister court in this District provided an extensive list of holdings reflecting this rule:

*Guzman* v. *Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *10 (S.D.N.Y. Mar. 29, 2010) ("A corporation's principal place of business, rather than its state of incorporation, determines its residence." (internal quotation marks omitted)); *Pereira* v. *Cogan*, No. 00 Civ. 619 (RWS), 2001 WL 243537, at *18 (S.D.N.Y. Mar. 8, 2001) ("District courts in this circuit applying New York law have held that the residence of a corporation for purposes of New York's borrowing statute is the corporation's principal place of business."), *rev'd on other grounds sub nom. Pereira* v. *Farace*, 413 F.3d 330 (2d Cir. 2005); *Investigative Grp., Inc.* v. *Brooke Grp. Ltd.*, No. 95 Civ. 3919 (CSH), 1997 WL 727484, at *3 (S.D.N.Y. Nov. 21, 1997) ("For purposes of the borrowing statute ... a corporation's residence is its principal place of business."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Forman 635 Joint Venture*, No. 94 Civ. 1312 (LLS), 1996 WL 507317, at *4 (S.D.N.Y. Sept. 6, 1996); *McMahan & Co.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F. Supp. 833, 834 (S.D.N.Y. 1989).

Perhaps unsurprisingly, given the clarity of the case law regarding residency, Plaintiff does not contest that it resides (insofar as it maintains its principal place of business) in the Dominican Republic, but rather argues that the borrowing statute does not require the Court to borrow the statute of limitations from a party's state of residency when that party maintains a separate "financial base" in a different jurisdiction. (Pl. Opp. 3-5 (citing *Lang* v. *Paine Webber, Jackson &*

*Curtis*, *Inc*., 582 F. Supp. 1421 (S.D.N.Y. 1984)). In *Lang*, the individual plaintiff was a resident of Canada, but he maintained all of *15 the bank accounts that funded the disputed investments in Massachusetts. *Id*. at 1426-27. The court held that, despite Plaintiff's residency, the controlling statute of limitations was Massachusetts's, as "the direct loss from the securities transactions at issue ... was imposed primarily on the balance of funds Lang had remaining in Massachusetts; any such injury was only indirectly felt in Canada. Under these circumstances ... the place of injury in this case was Massachusetts[.]" *Id*. at 1426. Plaintiff argues that this case is analogous, as Antonveneta maintains its bank accounts in Cyprus and is Plaintiff's principal source of capital. (Pl. Opp. 4). Plaintiff suggests that any losses flowed from Cyprus, and any recovery would flow back to Cyprus, and therefore the Court should apply the Cypriot statute of limitations and allow the case to move forward. (*Id*.).

The Court does not find that the decision in *Lang* is applicable in this case and concludes that the site of injury is where Plaintiff maintains its principal place of business, in the Dominican Republic. To begin, while the *Lang* decision is concededly non-precedential, even its continued persuasiveness is questionable. *See Deutsche Zentral-Genossenschaftsbank AG* v. *HSBC N. Am. Holdings*, *Inc*., No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013) ("Plaintiff ... identifies one case in the almost thirty years since *Lang* was decided that has followed the *Lang* or 'financial base' exception."); *Robb Evans & Assocs*. *LLC* v. *Sun Am. Life Ins*., No. 10 Civ. 5999 (GBD), 2013 WL 123727, at *1 (S.D.N.Y. Jan. 8, 2013) ("[Plaintiff] has not identified a case in which a court has applied the limited *Lang* exception to *16 hold that a corporate entity's claims accrued outside of its principal place of business."). What is more, Defendant provides several other cases where courts have questioned whether *Lang* was correctly decided in the aftermath of the New York Court of Appeals' more recent confirmation that a company's claims accrue at its place of residence. (*See* Def. Reply 2-3 (citing *Global Fin*. *Corp*., 93 N.Y.2d at 530)). Indeed, *Appel* v. *Kidder*, *Peabody & Co*., 628 F. Supp. 153, 156 (S.D.N.Y. 1986), which Plaintiff cites in support of the *Lang* standard (Pl. Opp. 4), did not rely on a financial base standard and does not cite to *Lang*.

This Court has previously had occasion to review this issue and agreed with many other judges in this District that only "extremely rare case[s] where the party has offered unusual circumstances" could "justify the Court's employment of the financial-base exception." *Blackrock Allocation Target Shares: Series S. Portfolio* v. *Wells Fargo Bank*, *N.A*., 247 F. Supp. 3d 377, 417-20 (S.D.N.Y. 2017) (citing to *Commerzbank AG v. Deutsche Bank Nat'l Trust*, 234 F. Supp. 3d 462, 469-71 (S.D.N.Y. 2017)). Beyond the citation to *Lang*, Plaintiff does not address the numerous cases that have questioned its authority as precedent and invoked a higher standard for invocation of the financial base exception. *Lang*'s moribund status counsels the Court heavily against applying an exception to New York's general rule that a claim accrues at Plaintiff's principal place of business.

However, even assuming the continued validity of *Lang*, the Court does not find that this case is "on all fours with *Lang*." (*See* Pl. Opp. 4). *Lang* *17 involved an individual plaintiff, and not a corporation. 582 F. Supp. at 1426. As was noted in *Robb Evans*, 2013 WL 123727, at *1, the *Lang* reasoning has never been extended to a foreign corporation. Furthermore, as Defendant notes, *Lang* involved the *plaintiff*'s financial base. (Def. Reply 4). Here, Plaintiff invokes Antonveneta's financial base, even though *Petroholding* is the Plaintiff. Petroholding is the party that seeks recovery for its injuries. As Defendant notes, Plaintiff does not suggest that Petroholding maintained its bank accounts, financial reserves, or financial center, in Cyprus. (*Id*.). Instead,

Plaintiff states that Antonveneta's financial base is in Cyprus, and Antonveneta provided funding to Plaintiff.

Plaintiff asks the Court to consider "who became poorer, and where did they become poorer as a result of the conduct complained of." (Pl. Opp. 4 (citing *Appel*, 628 F. Supp. at 156 (internal citations omitted))). It argues that the answer is clearly Cyprus, as the money all originated in Cyprus, but the relevant question is not the origin of the funds. The relevant question is who became poorer, and the answer is the injured party, Petroholding. Petroholding became poorer by providing money to Defendant as the result of allegedly fraudulent conduct concerning Plaintiff's development project in the Dominican Republic. (Am. Compl. ¶¶ 2-3, 8).

At base, Plaintiff is asking the Court to expand the financial base exception beyond a plaintiff's financial base to a plaintiff's investors' financial base. In so doing, Plaintiff invites the Court not merely to breathe new life into *Lang* as persuasive authority, but to imbue it with a vitality beyond that it *18 originally held. The Court declines to do so and finds that Plaintiff resides in the Dominican Republic and was injured there.

Plaintiff argues that, at a minimum, the Court should permit discovery as to the location of Plaintiff's injury. (Pl. Opp. 4-5). For this argument, Plaintiff relies on *Landesbank Baden-Württemberg* v. *RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 501-03 (S.D.N.Y. 2014). In that case, the defendant argued for the application of *Lang*, stating that the German statute of limitations should apply to claims brought not just by the German-bank plaintiff, but also by certain special purpose vehicles established by that plaintiff in Ireland and the Cayman Islands. *Id.* at 501-02. The district court found that the complaint provided insufficient information regarding the structure and operation of these vehicles to decide whether *Lang* would apply. *Id*. The Court does not find this decision to be relevant to its determination here. The Amended Complaint specifies that Petroholding is a Dominican corporation, had its principal place of business in the Dominican Republic, and attempted to develop property in the Dominican Republic. (Am. Compl. ¶¶ 2, 3, 8). The Gordon Declaration, which is attached to the Amended Complaint, describes the meetings on the Mariposa Development as occurring primarily in the Dominican Republic. (Gordon Decl. ¶¶ 4, 10, 24). None appears to have occurred in Cyprus. In short, the Court does not consider any discovery necessary to conclude that Plaintiff's injury accrued at its residence, principal place of business, and area of economic activity: the Dominican Republic. *19

## 2. The Dominican Statute of Limitations Bars the Claims in This Case

Having determined that the Dominican statute of limitation applies and provides a maximum two-year statute of limitations on Plaintiff's claims (*see* Rosenn Decl. ¶ 32), the Court now addresses when this limitation period began to run. Professor Rosenn states that, under Dominican law, the clock starts "when the damage is suffered after the act was committed, or if the damage is discovered after the act was committed, the period of prescription begins to run on the day that the act caused the prejudice, or from the moment at which the damage is discovered." (*Id*. at ¶ 30 (quoting Dr. Jorge Subero Isa, former president of the Dominican Supreme Court)).

Plaintiff does not contest this interpretation of Dominican law, but asserts that it did not become aware of the fraud until it reviewed the Gordon Declaration on May 22, 2016. (Pl. Opp. 7). Defendant rejoins that Plaintiff learned of the damage when Sinopec stated that it had no business in the Dominican Republic on April 15, 2012. (Def. Br. 17-18 (citing Am. Compl. ¶¶ 36-37)). Defendant argues that, at the latest, Plaintiff learned of the damage when its representative, Mr. Bulavin, spoke with Defendant in March 2013 and learned that Defendant intended to keep Plaintiff's

20 money. (Am. Compl. ¶ 43). Furthermore, Defendant observes that Petroholding International, the alleged sham company established by Defendant to receive Plaintiff's funds, was dissolved as of December 20, 2011. (Humphreys Decl., Ex. 3). Defendant points out that Plaintiff offers no explanation for the four years of inaction *20 between when Plaintiff learned of Sinopec's complete unawareness of Defendant's actions and Plaintiff's outreach to Glickman. (Def. Br. 8-9).

The Court agrees with Defendant that the statute of limitations began to run no later than March 2013. By that date, Plaintiff had learned that the alleged deal with Sinopec did not exist and that Defendant had no intention of returning any of Plaintiff's money. Plaintiff's sole statement in response is that it "was not aware of the massive fraud by Defendant until May 22, 2016 when ... Defendant admitted ... that he had fraudulently misrepresented himself as an officer of Glickman Capital, forged Glickman Capital letterhead and business cards, fabricated the underlying 'transaction' involving Plaintiff, and then fraudulently stolen Plaintiff's funds." (Pl. Opp. 7). While Plaintiff can credibly claim that it did not know every detail of Defendant's alleged fraud until 2016, the Amended Complaint makes clear that Plaintiff *was* aware of the fact of the fraud back in 2013, when Plaintiff learned that Defendant was not returning funds for a purported deal as to which Sinopec had wholly disclaimed involvement. The Court concludes that Plaintiff's causes of action began to run "from the moment at which the damage is discovered" (Rosenn Decl. ¶ 30), and, since the date for each of them was no later than March 2013, Plaintiff's time to bring these claims expired no later than March 2015.

Finally, and relatedly, the Court notes that Plaintiff discusses Defendant's 2017 efforts to evade service in the Amended Complaint. (Am. Compl. ¶47). Even if the Court were to toll the statute of limitations from the date of filing the earlier case before Judge Pauley, Plaintiff did not file that case

21 *21 until March 20, 2017, two years after the statute of limitations had expired. *See* Complaint, No. 17 Civ. 1799 (WHP) (S.D.N.Y. Mar. 10, 2017). Plaintiff does not make an argument for tolling, and the Court can find no grounds to toll the statute of limitations for any period prior to 2017. Plaintiff's claims are untimely, and they must be dismissed.

To review, the Court is aware that the application of the Dominican statute of limitations leads to a harsh result for Plaintiff, which has credibly alleged a sizable fraud. However, this Court cannot shirk its duty to apply the law as written. As the Second Circuit has stated, "[t]he failure to seek ... relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound." *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 887 (2d Cir. 1988)

## CONCLUSION [6]

> [6] As the Court has dismissed the case, it declines to reach the issue of punitive damages or address Defendant's request that it strike the introduction of Plaintiff's opposition. (*See* Def. Br. 18; Reply 1). --------

For the reasons set forth above, Defendant's motion to dismiss the case is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED. Dated: June 3, 2019

New York, New York

/s/_____

KATHERINE POLK FAILLA

United States District Judge

N.Y. C.P.L.R. § 202.

*BlackRock Allocation Target Shares: Series S. Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 419 (S.D.N.Y. 2017).

No. 15 Civ. 9248 (NRB), 2016 WL 4411419, at *5 (S.D.N.Y. Aug. 18, 2016), *aff'd sub nom*. *Luv N' Care, Ltd* v. *Goldberg Cohen, LLP*, 703 F. App'x 26 (2d Cir. 2017) (summary order).

 casetext