**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

GEO-GROUP COMMUNICATIONS, INC. :

                        :     Case No. 1:15-cv-01756 (KPF)

            Plaintiff,     :

                        :

    v.                    :

                        :

RAVI CHOPRA; MAHENDRA SHAH;   :
VIPIN SHAH; 728 MELVILLE PETRO   :
LLC; KEDIS ENTERPRISES LLC;   :
JMVD HILSIDE LLC; NYC          :
TELECOMMUNICATIONS CORP.;    :
and SHALU SURI              :

                        :

           Defendant.    :
_____:

_____

**728 MELVILLE PETRO LLC, KEDIS ENTERPRISES LLC, JMVD HILLSIDE LLC, AND SANJIV CHAND'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE AGAINST CERTAIN DEFENDANTS**
_____

**WHITE AND WILLIAMS, LLP**
***Attorneys for LLC Defendants and Sanjiv Chand***
Andrew Hamelsky
Eric Porter
Sabina Yevdayeva
7 Times Square, Suite 2900
New York, NY 10036
Phone: (212) 631-4406

23816443v.1

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    A.    Relevant Procedural History. ............................................................... 3

    B.    Relevant Factual Background. .............................................................. 6

ARGUMENT ................................................................................................................ 9

          POINT I

          PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER ........................... 9

    A.    Plaintiff's Motion Pursuant to Fed. R. Civ. P. 54(b) Fails Because Plaintiff Failed to Diligently Pursue Both its Motion and the Purportedly Relevant Evidence..................................................................................................... 10

    B.    Plaintiff is Bound by the Prior Representations of its Counsel ........................... 14

    C.    The Court Should Strike the Vanjani Affidavit in its Entirety ............................. 16

          POINT II

          THE RECORD DOES NOT SUPPORT PLAINTIFF'S PURPORTED CLAIMS AGAINST THE LLC DEFENDANTS OR CHAND ........................ 17

    A.    The Alleged "New Evidence" Would Not Have Changed the Prior Ruling and Does Not Support a Claim Under the NYDCL ..................................................... 17

          1. Plaintiff's First Proposition – Ownership of the Property ............................... 18

          2. Plaintiff's Second Proposition – Sale Price of the Property ............................ 20

    B.    Plaintiff's Claims Against Chand for "Fraud on the Court" Fail as a Matter of Law ........................................................................................................... 22

    C.    Plaintiff's Claims Against Chand Make No Sense ............................................... 25

CONCLUSION ........................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Affiliated FM Insurance v. Liberty Mechanical Contractors,
　12 Civ. 5160, 2013 U.S. Dist. LEXIS 122030 (S.D.N.Y. Aug. 27, 2013) ..............................16

Colvin v. Keen,
　900 F.3d 63 (2d Cir. 2018)..............................................................................................................10

Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.,
　887 F. Supp. 2d 459 (E.D.N.Y. 2012) .....................................................................................16

Doe v. New York City Dep't of Social Services,
　709 F.2d 782 (2d Cir. 1982).............................................................................................................10

Green v. Beer,
　06 Civ. 4156, 2009 U.S. Dist. LEXIS 98285 (S.D.N.Y. Oct. 22, 2009) ................................10

Hollander v. American Cyanamid Co.,
　172 F.3d 192 (2d Cir. 1999).............................................................................................................16

In re Rezulin Products Liability Litigation,
　224 F.R.D. 346 (S.D.N.Y. 2004) ................................................................................................11, 13

Intellivision v. Microsoft Corp.,
　484 Fed. Appx. 616 (2d Cir. 2012)..............................................................................................14

Leber-Krebs v. Capitol Records,
　779 F.2d 895 (2d Cir. 1985).............................................................................................................24

Merrill Lynch v. Young,
　91 Civ. 2923, 1997 U.S. Dist. LEXIS 4131 (S.D.N.Y. Apr. 4, 1997)....................................13

New Hampshire v. Maine,
　532 U.S. 742 (2001).........................................................................................................................14

Official Committee of the Unsecured Creditors of Color Tile v. Coopers &
Lybrand,
　322 F.3d 147 (2d Cir. 2003)..............................................................................................10, 13, 15

Soo Line R.R. v. St. Louis S.W. Ry.,
　125 F.3d 481 (7th Cir. 1997) .....................................................................................................15

Tese-Milner v. TPAC, LLC,
　313 B.R. 46 (Bankr. S.D.N.Y. 2004)...........................................................................................24

Tri-Star Pictures v. Leisure Time Productions,
    88 Civ. 9127, 1992 U.S. Dist. LEXIS 15232 (S.D.N.Y. Oct. 6, 1992) ...................................10

United States v. International Brotherhood of Teamsters,
    247 F.3d 370 (2d Cir. 2001)...................................................................................................11

Vicuna v. O.P. Schuman,
    298 F. Supp. 3d 419 (E.D.N.Y. 2017) ..............................................................................11, 17


## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 54 ............................................................................................1, 10, 11, 17

N.Y. Debtor Creditor Law § 273 ...............................................................................4, 17

N.Y. Debtor Creditor Law § 273-a ............................................................................4, 17

N.Y. Debtor Creditor Law § 274 ...............................................................................4, 17

N.Y. Debtor Creditor Law § 276 ...............................................................................4, 17

23816145v.1

## <u>PRELIMINARY STATEMENT</u>

The instant motion reeks of desperation and seeks to deceive this Court that it is for a legitimate purpose. Left with no recourse, Plaintiff Geo-Group Communications Inc. ("Geo-Group" or "Plaintiff") asks this Court to re-visit a prior ruling that was and remains sound, and previously went unchallenged for more than three years.  Geo-Group's justification to upend this ruling is premised on arguments contradicted by facts that are, to this day, not disputed. That is, an antecedent debt was repaid.  Despite its dilatory tactics, Plaintiff argues that this more than three year old decision should be overturned without a valid proffer as to why it delayed in making this motion and without a shred of legitimate evidence. Rather, Plaintiff relies upon supposition and hopeful speculation. The Court should deny Plaintiff's motion.

 Previously dismissed Defendants 728 Melville Petro LLC ("728 Melville"), Kedis Enterprises LLC ("Kedis"), and JMVD Hillside LLC ("Hillside") (collectively, the "LLC Defendants"), along with non-party Sanjiv Chand ("Chand"), respectfully submit this memorandum of law in opposition to the motion filed by Geo-Group on or around October 4, 2019. By this motion, Geo-Group seeks, *inter alia*, to "reopen . . . the case against the" dismissed LLC Defendants pursuant to Fed. R. Civ. P. 54(b), and the Court's leave to file a fourth amended complaint asserting claims against both the LLC Defendants and Chand.

Over four and a half years after Geo-Group filed this case in March of 2015, well over three years after the Court dismissed all of Plaintiff's claims against the LLC Defendants on July 27, 2016, and shortly before trial against the sole remaining Defendant, Vipin Shah, was scheduled to begin, Geo-Group sought for the first time to reopen its case against the LLC Defendants via what would constitute a fifth version of its Complaint, and to bring new charges against non-party Chand, whom Plaintiff alleges owns and controls these LLCs. Geo-Group seeks this extraordinary relief despite the Court's prior express determination that Plaintiff's Third Amended Complaint

"represents Plaintiff's fourth attempt at pleading; the Court will not offer it a fifth." (Opinion and Order dated July 27, 2016, Dkt. No. 134, at 23.) And Plaintiff does so despite the fact that its own counsel previously represented to the Court – in a sworn declaration submitted <u>after</u> the date on which Plaintiff obtained the purportedly "new evidence" upon which its current motion is premised – that it "is too late" "to ask the Court [to] reopen the case against the LLC Entities or to name Sanjiv Chand as a defendant" because "the discovery cut-off has passed and this case is moving forward to trial." (Loree Declaration of September 22, 2017, Dkt. No. 180, at ¶ 6.)

Plaintiff's motion is entirely without merit and should be denied.

Procedurally, Plaintiff cannot demonstrate that it diligently pursued either the evidence relevant to this motion or this motion itself, as it is required to do in order to succeed on what is essentially a motion seeking reconsideration of the Court's July 27, 2016 Order. To the contrary, much of the information upon which this motion is premised is and has been publicly available for years, and Plaintiff has never once in the entire history of this litigation sought records or testimony from Chand or any of the LLC Defendants.

Moreover, Plaintiff did not advise the Court of its intention to reassert claims against the LLC Defendants and pursue Chand until <u>fifteen months</u> after Plaintiff admits it first obtained the information upon which this motion is principally based. Indeed, Plaintiff's repeated representations to the Court, made both in the Declaration cited above and during telephone conferences with the Court, reveal that Plaintiff simply made a strategic decision not to pursue the LLC Defendants and Chand in order to instead focus on its claims against the other remaining Defendants. That strategy apparently changed in the months after the Court, on July 30, 2018 (Dkt. No. 236), granted motions for summary judgment filed by many of these remaining Defendants, leaving Plaintiff without a "deep pocketed" defendant through which it could potentially recover.

But, having made such a strategic decision and thereby allowed over fifteen months to elapse, Plaintiff cannot now seek to rope the LLCs and Chand into this dispute at the eleventh hour.

Plaintiff's motion fails substantively as well. The "evidence" on which Plaintiff relies constitutes nothing more than speculation and innuendo, and the conclusions Plaintiff draws are directly contradicted by the actual documentation and testimony in the record. Simply put, the $660,000 that Jaina transferred to the LLC Defendants in 2014 constituted repayment of a pre-existing, antecedent debt, namely the $600,000 loan that Kedis made to Neminath for Jaina's benefit in 2013. The records of this repayment are clear and not in dispute. And non-party Neminath's subsequent sale of the property located at 235 Hillside Avenue, Williston Park, New York (the "Property") to Williston Park Realty LLC is irrelevant here both because Williston Park Realty LLC is not owned or controlled by any of the LLC Defendants or Chand, and because non-party Neminath sold the property for a price, $425,000.00, reflecting its actual market value.

In short, and for the reasons discussed below, Geo-Group's motion is wholly without merit.

## STATEMENT OF RELEVANT FACTS

### A. Relevant Procedural History

Geo-Group filed its initial Complaint in this matter on March 9, 2015. (Dkt. No. 1). That Complaint named as defendants: (i) attorney Joseph Goldberg; (ii) Hodgson Russ LLP; (iii) Ravi Chopra; (iv) Mahendra Shah ("M. Shah"); (v) Vipin Shah ("V. Shah"); and (vi) John Does 1-5. (Id.) Geo-Group's initial Complaint purported to assert causes of action for attorney misconduct, breach of contract, fraudulent transfer under the New York Debtor and Creditor Law (the "NYDCL"), Bulk Transfer Law claims under Article 6 of the Uniform Commercial Code, common law fraud, conspiracy to violate NYDCL, alter ego liability, and quantum meruit.

On March 30, 2015, Geo-Group requested leave to file an Amended Complaint, and stated that, "if granted, [such amendment was] likely to significantly shorten the proceedings." (Dkt. No.

6.) The Court granted Geo-Group's request, and Geo-Group filed its First Amended Complaint ("FAC") on March 31, 2015. (Dkt. No. 8.) Geo-Group's FAC remained largely unchanged from its initial pleading, except that it dropped its prior allegations of attorney misconduct. (Id.).

On April 16, 2015, Geo-Group submitted another letter to the Court requesting leave to file a Second Amended Complaint ("SAC") in which it would name the previously unnamed "John Doe" defendants. The Court again granted Geo-Group's request (Dkt. No. 21), and on May 5, 2015, Geo-Group filed its SAC. By this third pleading, Geo-Group added as defendants Shalu Suri, the LLC Defendants, and NYC Telecommunications Corp. ("NYCT"). (Dkt. No. 24.)

Between July 9, 2015 and July 21, 2015, each of the Defendants filed motions to dismiss the SAC. (Dkt. Nos. 50, 56, 59, 64, 68, 71). In response, Geo-Group informed the Court that it intended to drop all counts against Goldberg and Hodgson Russ, and to drop all of the claims against the remaining Defendants, except for its claims for fraudulent transfer under §§ 273, 273-a, 274, and 276 of the NYCDL. (Dkt. No. 86.) On September 22, 2015, Geo-Group voluntarily dismissed all claims against Goldberg and Hodsgon Russ with prejudice (Dkt. #87), and on January 6, 2016, the parties filed a stipulation dismissing the claims against the remaining Defendants with prejudice, except for the fraudulent transfer claims. (Dkt. #101.)

On October 1, 2016, the Court denied Chopra's motion in part, and granted the motions by M. Shah, V. Shah, Shalu Suri, and the LLC Defendants in their entirety. (Dkt. No. 102). The Court found that the SAC was "devoid of any facts that would make [Geo-Group's] allegations against … the Entity Defendants plausible…" (Id. at 13). While the Court did afford Geo-Group a fourth attempt at pleading (id. at 2, 22), it cautioned Plaintiff's counsel "to think carefully before mounting claims as to any Defendant other than Chopra," and "that there [would] be consequences if there [was] again motion practice so one-sided in this matter." (Id. at 22, n.5).

Geo-Group filed its Third Amended Complaint ("TAC") on February 22, 2016. (Dkt. No. 105). Despite the Court's warning, Geo-Group again asserted claims against the LLC Defendants.

On March 30, 2016, the LLC Defendants and M. Shah each filed motions to dismiss. (Dkt. Nos. 114, 112). On March 31, 2016, V. Shah also filed a motion to dismiss. (Dkt. No. 118).

On July 27, 2016, the Court denied the Shah Defendants' motions, but, once again, granted the LLC Defendants' motion and dismissed all claims against the LLC Defendants. (Dkt. No. 134). In doing so the Court found that Geo-Group had yet again failed to plausibly state a claim for constructive or actual fraudulent conveyance against the LLC Defendants. (*Id.*). The Court expressly noted that the "TAC represents Plaintiff's fourth attempt at pleading; the Court will not offer it a fifth, as the Court finds that any further attempt to replead the claims against the dismissed Defendants would be futile." (Id. at 23) (emphasis added).

Geo-Group thereafter continued to prosecute the litigation against the sole remaining Defendants, Ravi Chopra, NYC Telecom, M. Shah, and V. Shah. The Court-Ordered fact discovery deadline expired on January 31, 2017. (Dkt. No. 139.)

On July 30, 2018, the Court granted summary judgment to Ravi Chopra, NYC Telecom, and M. Shah, leaving V. Shah the sole remaining Defendant in the case. (Dkt. No. 236). The Court then ordered Geo-Group and V. Shah to attend a settlement conference. (Dkt. No. 239.)

On October 25, 2018, the Court determined that Geo-Group and V. Shah had been unable to reach a settlement, and directed them to advise the Court by November 2, 2018 of their respective availability for trial in December of 2018 or January of 2019. (Dkt. 245.)

On November 2, 2018, nearly two years after the fact discovery deadline had expired, well over two years after the Court had dismissed all of Geo-Group's claims against the LLC Defendants, and via correspondence in which it was merely supposed to be advising the Court of

its availability for trial within the next two months, Geo-Group for the first time requested leave to reassert claims against the dismissed LLC Defendants and M. Shah, and to assert wholly new claims against non-party Sanjiv Chand. (Dkt. Nos. 139, 248). The Court thereafter denied Geo-Group's application without prejudice on June 26, 2019. (Dkt. No. 263).

On September 9, 2019, Geo-Group once again submitted a letter to the Court seeking leave to submit a motion to reopen the case as to these entities and individuals. (Dkt. No. 268). The Court granted Geo-Group's application on September 10, 2019, and set a briefing schedule. (Dkt. No. 269). On October 4, 2019, Geo-Group then filed the present motion seeking, *inter alia*: (i) to reopen the case against the dismissed LLC Defendants and M. Shah pursuant to Fed. R. Civ. 54(b); (ii) leave to join non-party Chand to the action and assert claims against him of fraudulent conveyance and fraud on the Court; and (iii) leave to file and serve yet another amended complaint against the dismissed LLC Defendants, M. Shah, and Chand. (Dkt. No. 274).

### B. Relevant Factual Background

This case arises from an ongoing attempt by Geo-Group to collect on a debt owed to it by Jaina. On July 10, 2014, an arbitrator issued an award (the "Award") in favor of Geo-Group, and on April 3, 2015 Geo-Group obtained a judgment in New York State Supreme Court, New York County confirming the Award in the amount of $2,712,175.51. (Order on Summary Judgment, Dkt. No. 236, at 1.) Upon information and belief, Jaina has not satisfied that judgment.

In its TAC, Geo-Group alleged that Jaina's transfer of certain funds to the LLC Defendants in 2014 violated the NYDCL because they were purportedly done without fair consideration and did not discharge a legitimate antecedent debt. (TAC at ¶¶ 39, 42-43, 46, 49-50, 54, 55, 58).

The Court rejected these claims in its July 27, 2016 Order, holding that Geo-Group did not state a claim for constructive or actual fraudulent transfer against the LLC Defendants. (Dkt. No. 134 at 11-17). The Court found that Geo-Group had failed to: (i) "plead anything in support of the

LLC Defendants' bad faith[;]" (ii) "allege any relationship between any one of the LLC Defendants and either Chopra or M. Shah[;]" and (iii) failed to demonstrate any involvement by the LLC Defendants in the arbitration proceedings to suggest that they would be aware of the Award or that they "should have been 'on notice' of any fraudulent activity.'" (Id. at 12-13).

Geo-Group's current attempt to reassert fraudulent transfer claims against the LLC Defendants, and to assert claims against non-party Chand for the first time, hinges on payments totaling $660,000.00 that Jaina made to Hillside and Melville in 2014.

Geo-Group concedes that there existed an antecedent debt between Kedis and Neminath stemming from a $600,000 loan Kedis made to Neminath for Jaina's benefit in 2013. (The "Commercial Loan Agreement," Dkt. No. 115-3.) Geo-Group also concedes that Jaina transferred $660,000 to Hillside and Melville in 2014. Chand, who owns Kedis and Hillside, and whose family owns Melville, previously informed the Court via sworn Affidavit that Jaina's payments to Hillside and Melville were to satisfy Jaina's antecedent debt to Kedis, and that he had caused Kedis to assign its right to recover Jaina's debt to Hillside and Melville. (Dkt. No. 119 at ¶¶ 10-12.)

Citing what it describes as "new evidence," Geo-Group contends that the $660,000 Jaina paid to Hillside and Melville in 2014 was not to discharge the antecedent debt, but was instead a fraudulent transfer made without consideration. (Geo-Group's Memo of Law ("MOL") at 4, 27.) Plaintiff argues that the debt was actually satisfied years later in connection with Neminath's sale of the Property located at 1414 Hillside Avenue, New Hyde Park to an entity called Williston Park Realty LLC ("Williston Park LLC"). Geo-Group claims that Chand owns and controls Williston Park LLC, and that Neminath sold the Property for $1,025,000, of which only $425,000 was paid while $600,000 of the purchase price was credited to Chand "in exchange for Neminath's release from its outstanding obligations to Kedis under the Commercial Loan Agreement." (Id. at 4-5.)

The purportedly "new evidence" to which Geo-Group cites in support of this theory principally stems from testimony offered by M. Shah during his deposition on August 11, 2017, wherein M. Shah testified that he believed Chand owned Williston Park LLC. (Geo-Group MOL at 8.) But M. Shah subsequently filed a sworn affidavit with the Court on December 14, 2017 wherein he recanted that testimony. (Dkt. No. 208.) Indeed, M. Shah made clear in his affidavit that Jaina's payment of $660,000 to Hillside and Melville was in satisfaction of its pre-existing debt to Kedis, that the Property was sold for $425,000, not $1,025,000, and that Marianna Ramirez, not Chand, owns Williston Park LLC. (M. Shah Aff. (Dkt. No. 208) at ¶ 19.)

As additional "new evidence," Geo-Group alleges that Neminath's 2015 federal tax return can be read to suggest that the Property was sold for $1,025,000. (Geo-Group's MOL at 5, 8, 21). Even assuming that Neminath listed this purchase price in its tax returns, however, neither the LLC Defendants nor Chand are responsible for Neminath's internal bookkeeping, and the overwhelming body of evidence in the record demonstrates that the purchase price was in fact $425,000.00. Indeed, Geo-Group itself concedes that "both the Contract of Sale and the New York State Combined Transfer Tax return" signed by Neminath and Williston Park LLC "state[s] that the sale price of the property was $425,000, not $1,025,000." (Id. at 10). Ms. Ramirez, the sole owner of Williston Park LLC, testified that she paid $425,000.00 for the Property. (Dkt. No. 178 at ¶ 5.)  M. Shah confirmed in his affidavit that the Property was sold for $425,000.00. And an assessment of the property conducted by the Nassau County Department of Assessment provides that the value of the Property in 2015, 2016, and 2017 was either $300,500.00 or $321,000.00, substantially less than what Ms. Ramirez agreed to pay. (Dkt. No. 178-2.)

The only other "new evidence" on which Geo-Group purports to rely concerns its wholly baseless claim that Chand, not Ramirez, owns or controls Williston Park LLC. In purported support

Plaintiff points to: (1) the fact that the "Single Member LLC" box was not checked on Williston Park LLC's Combined Real Estate Transfer Tax Form, (2) Chand's involvement in negotiating the purchase price of the Property, and (3) that the address originally listed by Williston Park LLC on the deed was also used by certain entities owned by Chand.  (Geo-Group MOL at 9.)

Again, this evidence is contradicted by the record. Ramirez testified that Williston Park LLC "is a single member LLC" that she alone owns and manages, and that she paid for the Property with her own money. (Dkt. No. 273-24 at 48:3-18, 65:19-66:21, 87:2-24.) The record includes copies of checks written by Ramirez from her personal bank account documenting the $425,000 she paid for the Property. (Dkt. No. 273-31.) Ramirez testified that Chand was involved in the sale of the Property because he brokered the deal and serves as her business advisor, not because he paid for the Property, owns the Property, or has any role with respect to Williston Park LLC. (Dkt. No. 273-24 at 29:9-18, 48:3-18.) And she made clear, and the documentation reflects, that the address originally listed for Williston Park LLC was an error, soon thereafter corrected, made by her attorney, Edward Troy, who also handles certain affairs for several of Chand's entities and appears to have simply listed that address by mistake. (Id. at 71:8-72: 12).

## ARGUMENT

## POINT I - PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER

Plaintiff's motion fails for a variety of procedural reasons. First, Plaintiff has not demonstrated and cannot demonstrate that it has diligently pursued either this motion or the purported "new evidence" upon which its motion is premised. Second, Plaintiff is bound by representations it made to the Court in the past that it was "too late" to either reopen the case against the LLC Defendants or to name Chand as a Defendant. Third, Plaintiff's supporting affidavit, executed by its President Govind Vanjani, is wholly improper, represents a transparent attempt to circumvent the Court's page limit rules, and should not be considered by the Court.

A. **Plaintiff's Motion Pursuant to Fed. R. Civ. P 54(b) Fails Because Plaintiff Failed to Diligently Pursue Both its Motion and the Purportedly Relevant Evidence**

Plaintiff seeks to reopen its claims against the LLC Defendants that were previously dismissed by the Court's Order of July 27, 2016. Plaintiff moves pursuant to Fed. R. Civ. P. 54(b), which authorizes a court to "revise" a judgment that does not fully decide all of the claims asserted against all of the parties to the case. Id. A motion seeking a revision pursuant to Fed. R. Civ. P. 54(b) is properly brought via a motion for reconsideration. See, e.g., Green v. Beer, 06 Civ. 4156, 2009 U.S. Dist. LEXIS 98285, *5 (S.D.N.Y. Oct. 22, 2009) ("A party may request such revision [pursuant to Fed. R. Civ. P. 54(b)] by filing a motion for reconsideration.")

"[I]nterests of finality" apply to decisions adjudicating claims, such as the Court's prior Order at issue here, even if those decisions do not fully resolve all claims against all parties. Colvin v. Keen, 900 F.3d 63, 71 (2d Cir. 2018). The Second Circuit has therefore "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Official Committee of the Unsecured Creditors of Color Tile v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) (internal citations omitted). "Thus, those decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Id. Courts will therefore consider revising earlier orders only when presented with "cogent or compelling reasons" for doing so. Tri-Star Pictures v. Leisure Time Productions, 88 Civ. 9127, 1992 U.S. Dist. LEXIS 15232, *8 (S.D.N.Y. Oct. 6, 1992) (citing Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir. 1982).

"For new evidence to justify reconsideration, the evidence must be 'of such importance

that it probably would have changed the outcome' of the prior ruling." <u>Vicuna v. O.P. Schuman</u>, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017) (quoting <u>United States v. International Brotherhood of Teamsters</u>, 247 F.3d 370, 392 (2d Cir. 2001). Moreover, "[w]hen newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." <u>In re Rezulin Products Liability Litigation</u>, 224 F.R.D. 346, 350 (S.D.N.Y. 2004). As a result, the movant "must show that (1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision." <u>Id</u>.

This "due diligence" element applies not only to the movant's efforts to secure the alleged "new evidence," but also to the efforts (or lack thereof) that the movant makes to bring its motion for reconsideration once the purported "new evidence" is obtained. <u>See</u>, <u>e.g.</u>, <u>Vicuna</u>, 298 F. Supp. 3d at 434 (assessing amount of time movant took to file its motion for reconsideration following discovery of new evidence, and concluding that movant exhibited the necessary diligence where it only took approximately one month to evaluate newly produced documents "before taking the extreme measure of filing a motion for reconsideration.") Indeed, while Local Rule 6.3 – which requires that a motion for reconsideration be brought within fourteen days of entry of the original order – may not be rigidly imposed in circumstances citing "new evidence," that Rule, along with the required "diligence" analysis and the Court's inherent interests in finality and efficiency, together dictate that a party cannot sit on purportedly "new evidence" for a lengthy period of time and only later make a motion for reconsideration once its other strategic options have dried up.

Here, Plaintiff's motion pursuant to Fed. R. Civ. P. 54(b) fails for a variety of substantive reasons discussed in Point II below. But it fails first and foremost for procedural reasons, as

Plaintiff cannot show that it diligently pursued both its motion and the purported new evidence.

Plaintiff admits in its moving papers that it learned what it claims to be the key "fact" underscoring this motion – that the debt to Kedis was allegedly discharged only upon the January 2016 sale of the Property – on August 11, 2017. (Geo-Group's MOL at 8.) Putting aside for the moment that this purported "fact" is in reality directly contradicted by the evidence in the record, Plaintiff's admission means that it waited approximately <u>fifteen months</u>, until November 2, 2018 (Dkt. No. 248), to even first advise the Court of its intention to pursue this motion, and then only did so after the majority of the other Defendants remaining in the case had been dismissed by the Court's July 30, 2018 Order on summary judgment (Dkt. No. 236) and after its efforts to settle with the lone remaining Defendant, V. Shah, had fallen through. (Dkt. No. 245)

Moreover, representations Plaintiff made to the Court on multiple occasions after its discovery of the allegedly key information in August of 2017 reflect that its decision not to pursue a Rule 54(b) motion within a reasonable time and to instead focus on its remaining claims against the then-remaining Defendants was a strategic one. In his September 22, 2017 sworn Declaration, for instance, submitted in connection a motion arising from Plaintiff's subpoena to Williston Park LLC, Plaintiff's counsel Mr. Loree represented to the Court that Geo-Group "is not [asking] the Court [to] reopen the case against the LLC Entities or to name Sanjiv Chand as a defendant. It is too late for that, as the discovery cut-off has passed and this case is moving forward to trial." (Dkt. No. 180 at ¶ 6.) During a June 26, 2019 telephone conference with the Court, Mr. Loree stated, regarding other documents Plaintiff claims to be relevant to this motion, that "we could have tried to get them earlier, but we were at that point thinking it was kind of late and we would like to see if we can get by without them." (Dkt. No. 264 at 7:21.) And Mr. Loree further stated during this same conference that the information at issue in the instant motion "came up [in] August of 2017"

but that Plaintiff "basically from there [ ] went into summary judgment." (Id. at 8:23 – 9:6.)

Simply put, Plaintiff's decision to not make a Rule 54(b) motion for fifteen months was an informed one, made pursuant to strategic considerations regarding how best to litigate its remaining claims against the remaining parties. That that strategic choice failed to bear fruit following the Court's decision on summary judgment does not warrant granting Plaintiff a <u>fifth</u> bite at the apply against the LLC Defendants, and cannot support a finding that Plaintiff somehow diligently pursued this motion. <u>See</u>, <u>e.g.</u>, <u>Official Committee</u>, 322 F.3d at 168 (holding that movant's "decision not to file the Rule 54(b) motion until after summary judgment was entered against it in [related matter] was a strategic one. Denying [movant] yet another bite at the apple because this strategy ultimately failed certainly cannot be characterized as manifestly unjust . . .").

Plaintiff similarly cannot demonstrate that the purportedly "newly discovered evidence" was "not available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." <u>In re Rezulin</u>, 224 F.R.D. at 350. To the contrary, the January 16, 2013 Commercial Loan Agreement pursuant to which Kedis loaned $600,000 to Neminath for the benefit of Jaina and secured an interest in the Property as collateral was, by Plaintiff's own admission, filed with the Nassau County Clerk and publicly available for years before the Court's Order of July 27, 2016. (Geo-Group's MOL at ¶ 8.) And the Deed reflecting the sale of the Property from Neminath to Williston Park LLC for $425,000.00 was recorded with the Nassau County Clerk on February 23, 2016, well in advance of the Court's Order. These documents were thus available to Plaintiff, or otherwise discoverable by due diligence, before the Court's July 27, 2016 Order was issued. <u>See</u>, <u>e.g.</u>, <u>Merrill Lynch v. Young</u>, 91 Civ. 2923, 1997 U.S. Dist. LEXIS 4131, *2 (S.D.N.Y. Apr. 4, 1997) (publicly available documents not considered "newly discovered evidence.")

Moreover, Plaintiff has clearly not diligently pursued the evidence it now claims to be

-13-

relevant. The fact discovery deadline in this matter expired on January 31, 2017 (Dkt. No. 139), seven months before Plaintiff took the deposition it now claims revealed the relevant piece of information. Plaintiff did not seek to subpoena the additional records it also claims to rely on until late 2018. (Dkt. No. 250.) And at no time in the nearly five year history of this matter has Plaintiff ever sought documents or testimony from the LLC Defendants or Chand.

**B.  Plaintiff is Bound by the Prior Representations of its Counsel**

As discussed above, Plaintiff's counsel represented to the Court in a declaration that Geo-Group "is not [asking] the Court [to] reopen the case against the LLC Entities or to name Sanjiv Chand as a defendant. It is too late for that, as the discovery cut-off has passed and this case is moving forward to trial." (Dkt. No. 180, at ¶ 6.) Mr. Loree made this representation on September 22, 2017, over one month after Plaintiff obtained the purportedly key "new evidence" during M. Shah's deposition. Plaintiff is bound by this sworn representation pursuant to judicial estoppel.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another one." New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

"Courts have uniformly recognized that the purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Intellivision v. Microsoft Corp., 484 Fed. Appx. 616, 619 (2d Cir. 2012). While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle . . . courts generally look for the existence of three factors: (1) that a party's new position is clearly inconsistent with

its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id.

Judicial estoppel bars Plaintiff's current position here. First, Plaintiff previously took the exact opposite position it takes now, and it did so after it had already obtained the purportedly key piece of "new evidence" upon which its current motion relies. Plaintiff took that position not in some passing, informal comment or offhand remark, but within the formal, considered vehicle of a sworn attorney declaration submitted under penalty of perjury. See, e.g., Official Committee, 322 F.3d at 167 ("judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible.") (quoting Soo Line R.R. v. St. Louis S.W. Ry., 125 F.3d 481, 483 (7th Cir. 1997).

Second, Plaintiff's counsel made this sworn statement in connection with its effort to oppose a motion to quash a subpoena by non-party Williston Park LLC. The Court credited Plaintiff's argument and denied Williston Park LLC's motion. (Dkt. No. 187.)

Third, Plaintiff would clearly derive an unfair advantage or impose an unfair detriment on the LLC Defendants and Chand if not estopped. Allowing Plaintiff to proceed would allow it to take contradictory positions depending upon its interests in any given moment, and would allow Plaintiff to potentially bring the LLC Defendants and Chand into a proceeding in which they have not been involved in over three years – and which, based on Mr. Loree's prior sworn representation, they reasonably assumed they would not thereafter become involved –  based on allegedly "new evidence" of which Plaintiff has in fact been in possession for two years.

Having taken the opposite position to the one Plaintiff now assumes here, and having benefited from taking that prior position, judicial estoppel bars Plaintiff's motion.

## C.  The Court Should Strike the Vanjani Affidavit in its Entirety

Plaintiff's Memo of Law essentially farms out its Statement of Facts to the Govind Vanjani Declaration, a 60 page document annexing 58 separate exhibits. That Declaration is replete with legal arguments and purportedly factual material clearly not within Vanjani's personal knowledge. And it constitutes an obvious attempt to circumvent the Court's rule limiting memoranda of law to 25 pages. The Vanjani Declaration should be stricken or otherwise not considered.

It is black-letter law that "[p]lacing legal argument in an affidavit is plainly improper." Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc., 887 F. Supp. 2d 459, n.3 (E.D.N.Y. 2012). Moreover, this Court itself has refused to "consider information contained in [ ] affidavits that [do] not appear to be based on personal knowledge." Affiliated FM Insurance v. Liberty Mechanical Contractors, 12 Civ. 5160, 2013 U.S. Dist. LEXIS 122030, n.3 (S.D.N.Y. Aug. 27, 2013) (Failla, J.). Courts are empowered to "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

The Vanjani Declaration goes well beyond merely asserting factual matters within his personal knowledge, instead repeatedly asserting legal arguments and purported facts that he could not possibly know. He argues, for example, that certain transfers were "constructively fraudulent as a matter of law." (Vanjani Decl. at ¶ 14.) He claims that "Chand and Mahendra Shah are guilty. . ." (Id. at 44.) And he accuses Chand of "orchestrating the entire transaction." (Id. at 80.)

The Vanjani Declaration is clearly improper and should be stricken in its entirety. In the alternative, the Court should strike or otherwise disregard the following paragraphs, which improperly assert legal arguments and/or purported facts of which Vanjani could not have personal knowledge:  ¶¶ 5, 6, 8 , 9 10, 12, 13, 14, 15, 44, 45, 46(a), 46(b), 46(c), 58, 75, 80, 81(h), 81(i), 81(j), 92, 93, 113, 119, 123, 125, 126, 129, 130, 131, 132, 133, 136,138, 139, 140, 141, 142, 143,

144, 145, 153, 156, 158, 160, 162, 167, 168, 177, 178, 188, 189, 190, 191, 192, 193, and 195.

### POINT II - THE RECORD DOES NOT SUPPORT PLAINTIFF'S PURPORTED CLAIMS AGAINST THE LLC DEFENDANTS OR CHAND

Aside from the procedural improprieties described above, Plaintiff's arguments all fail on their merits as well. Plaintiff's motion pursuant to Fed. R. Civ. P. 54(b) fails because the purportedly "new evidence" on which the motion is based would not likely have "changed the outcome of the prior ruling."  Plaintiff's motion fails because Plaintiff does not state claims for constructive fraudulent transfer or actual fraudulent transfer against the LLC Defendants or Chand under the NYDCL. Plaintiff's motion fails because it cannot assert a "fraud on the court" claim against Chand as a matter of law. And Plaintiff's motion fails because the behavior of which Geo-Group accuses Chand makes no sense whatsoever and finds no support in the record.

### A.  The Alleged "New Evidence" Would Not Have Changed the Prior Ruling and Does Not Support a Claim Under the NYDCL

As discussed above, "[f]or new evidence to justify reconsideration, the evidence must be 'of such importance that it probably would have changed the outcome' of the prior ruling." Vicuna, 298 F. Supp. 3d at 433 (quoting Teamsters at 247 F.3d at 392). Plaintiff cannot satisfy this exacting burden. Indeed, far from demonstrating that the "new evidence" would "probably" have resulted in a different ruling, the "new evidence" is not even sufficient to state a claim under the NYDCL.

A claim for constructive fraud, whether brought under NYDCL § 273, § 273-a, or § 274, requires that the conveyance at issue have been made "without fair consideration." "The NYDCL defines fair consideration as existing in relevant part when the transferor, (i) in good faith, (ii) receives 'fair equivalent' property or a similarly equivalent antecedent debt is discharged." (Opinion and Order of July 27, 2016 at 7, citing NYDCL § 272(a).)

A claim for actual fraudulent conveyance under NYDCL § 276 requires that a conveyance have been made "with intent to defraud," and such a claim is subject to "the heightened pleading

standard" of Rule 9(b). (Opinion and Order of July 27, 2016 at 9, 17.)

It is undisputed that Neminath entered into the Commercial Loan Agreement with Kedis for the benefit of Jaina in January of 2013, and that Kedis' $600,000 loan to Neminath for that purpose constitutes an antecedent debt. It is also undisputed that Jaina transferred a total of $660,000.00 to Hillside and Melville between August and October of 2014. Chand explains in his Affidavit that Jaina's payments to Hillside and Melville were in satisfaction of the antecedent debt to Kedis, and that Chand had caused Kedis to assign its right to receive payment on that debt to Hillside and Melville. (Chand Affidivat at ¶¶ 10-2.)

Plaintiff's entire argument against the LLC Defendants and Chand rests on its theory that the $660,000 Jaina paid to Hillside and Melville was not done in connection with the antecedent debt, was therefore made "without fair consideration," and that the debt was instead only satisfied when Neminath reduced the sale price of the Property by $600,000.00 in 2016. Plaintiff's NYDCL claims thus rests on two propositions:  (1) that Chand owns the Property and received the benefit of that allegedly $600,000 credit; and (2) that the Property was in fact worth $1,025,000, of which only $425,000 was paid while the remaining $600,000 constituted a credit to Chand to repay Jaina's debt to Kedis.  Neither of these two propositions is supported by the record.

1.  Plaintiff's First Proposition – Ownership of the Property

After nearly five years of litigation and discovery, Geo-Group identifies the following purported "evidence" to support its first proposition:

- M. Shah's Deposition Testimony;
- the fact that the "Single Member LLC" box was not checked on Williston Park LLC's Combined Real Estate Transfer Tax Form;
- Chand's involvement in negotiating the purchase price of the Property; and
- that the address originally listed by Williston Park LLC on the deed was also used by certain entities owned by Chand.

None of this purported "evidence," which in reality constitutes nothing more than

assumption and speculation masquerading as facts, supports Plaintiff's theory that Chand owns

the Property. To the contrary, the record reflects the following facts:

- the Contract of Sale for the Property and Deed both list the buyer as Williston Park LLC, not Chand or any of the LLC Defendants. (Dkt. Nos. 273-18 and 273-22);

- M. Shah specifically recanted the deposition testimony on which Geo-Group relies, and made clear that Neminath sold the Property to "Marianna Ramirez of Williston Park LLC." (Dkt. 208 at ¶ 19);

- Ms. Ramirez provided a sworn affidavit and testified during her deposition that she is the sole owner of Williston Park LLC, that she paid for the Property herself, and that Chand does not own or control any part of Williston Park LLC. (Dkt. Nos. 178 at ¶¶ 3, 5, and 6, and 273-24 at 48:3-18, 65:19-66:21, 87:2-24);

- Copies of checks in the record document Ms. Ramirez paying $425,000.00 for the Property out of her own checking account. (Dkt. No. 273-31);

- Ms. Ramirez testified that Chand was involved in her purchase of the Property merely because he serves as her informal "business advisor" and brought the deal to her as a potential investment, not because he helped pay for the Property or obtained some interest in it. (Dkt. No. 273-24 at 29:9-18, 48:3-18); and

- Ms. Ramirez testified that the address originally listed for Williston Park LLC was an error likely made by her attorney, who also represents Chand in a number of matters, and that this address error was quickly corrected when it later came to her attention. (Id. at 71:8-72: 12).

Geo-Group's assumptions and speculation cannot overcome these indisputable facts.

Geo-Group assumes, for instance, that an unchecked box indicating a "Single Member

LLC" on Williston Park LLC's Combined Real Estate Transfer Tax Form somehow means that

Chand is the mysterious other member of the LLC. But there is no evidentiary basis for this

assumption, and Ms. Ramirez testified both that this box should have been checked and that she is

the LLC's sole member. (Dkt. No. 273-24 at 65:19 – 66:9.)

Geo-Group also assumes that Chand somehow "exercises control over the" Property

because Chand allegedly never "filed a discharge of the $600,000 mortgage on the" Property.

(Geo-Group's MOL at 9-10.)  Again, there is no basis whatsoever for this assumption. Geo-Group

concedes that Chand "gave Neminath a discharge of its $600,000.00 loan." (Id. at 9.) It would of

course then be Neminath's responsibility, *not* Chand's, to file that mortgage discharge with the relevant governmental authority. Indeed, Neminath would be the party with the motivation to file such a discharge, not Chand, in order to clear the mortgage. If Neminath failed to do so, that cannot be held against Chand. Nor would Neminath's failure to do so somehow grant Chand "control over the Property," because all Ms. Ramirez (or Neminath before the sale) would need to do to demonstrate ownership would be to provide the discharge document Plaintiff concedes Chand executed, along with the Deed and Contract of Sale.

The record does not support the conclusion that Chand owns the Property.

2.   <u>Plaintiff's Second Proposition – Sale Price of the Property</u>

After nearly five years of litigation and discovery, Geo-Group cites the following to support its second proposition, i.e., that the Property was sold for $1,025,000, not $425,000:

- M. Shah's Deposition Testimony; and
- that Neminath's 2015 federal tax return can be read to suggest that the Property was sold for $1,025,000. (Geo-Group's MOL at 5, 8, and 21).

None of this purported "evidence," which again stems not from fact but from assumption and speculation, supports Plaintiff's theory that Neminath sold the Property for $1,025,000. To the contrary, the record reflects the following facts:

- the Contract of Sale for the Property and Deed both list Williston Park LLC's purchase price as $425,000.000. (Dkt. Nos. 273-18 and 273-22);
- M. Shah specifically recanted the deposition testimony on which Geo-Group relies, and made clear that Neminath sold the Property to Williston Park LLC for $425,000. (Dkt. No. 208 at ¶ 19);
- Ms. Ramirez testified during her deposition and provided a sworn affidavit reflecting that Williston Park LLC paid $425,000 for the Property, and that she paid this money herself. (Dkt. Nos. 178 at ¶¶ 3, 5, and 6, and 273-24 at 48:3-18, 65:19-66:21, 87:2-24);
- Copies of checks in the record made out to Neminath from Ms. Ramirez's personal account reflect the purchase price of $425,000. (Dkt. No. 273-31); and
- An assessment of the property conducted by the Nassau County Department of Assessment provides that the value of the Property in 2015, 2016, and 2017 was

-20-

either $300,500.00 or $321,000.00. (Dkt. No. 178-2.)

Again, Geo-Group's assumptions and speculation cannot overcome these dispositive facts.

Even assuming that Neminath's internal tax returns or bookkeeping can be read to indicate that the Property was sold for $1,025,000, there are many explanations for why Neminath may have done this (for a variety of tax purposes, to avoid booking a loss, etc.) that have nothing whatsoever to do with the reality of the Property's purchase price. Geo-Group simply assumes, without evidence, that these tax materials accurately reflect the purchase price and somehow implicate Chand and the LLC Defendants. But such an assumption runs counter to all of the documentation in the record surrounding the sale. And, of course, neither Chand nor the LLC Defendants have control of or responsibility for Neminath's internal books and tax filings.

Geo-Group also appears to argue that the Property had to be worth more than $425,000, or else Kedis never would have taken it as collateral to secure a $600,000.00 loan. (Vanjani Decl. at ¶¶ 66-7.) But, again, this argument is little more than speculation itself contradicted by the record.

As an initial matter, Geo-Group never sought discovery from Kedis concerning how Kedis valued the Property in connection with securing the loan. What Kedis believed the Property's value to be at the time of the Commercial Loan Agreement is therefore pure speculation.

Regardless, Ravi Chopra, in sworn deposition testimony, already explained why the Property was likely worth more at the time Kedis provided the loan than it was later when Neminath sold the Property to Williston Park LLC:

> Q:  So there was a $1 million line of credit?
>
> A:  We are talking only line of credit because Neminath was no value. Neminath was the property. Maximum they can get four, $500,000 maximum. That was also, because include the business, the strong tenant is Jaina. Otherwise, that building have low value. Maybe they can sell the business for 50,000 to $200,000 because of Jaina was good tenant there, so that – that's the value. That's the value of that building, basically, because strong tenant there.
>
> Q: The strong tenant being Jaina?

A: Jaina, yes.

(Dkt. No. 221-6 at 83:25 – 84:15.)

Simply put, the Property was more valuable when it was anchored by a "strong tenant," Jaina, operating its business in good standing within the Property, as was the case when Kedis made the $600,000 loan to Neminath for Jaina's benefit in 2013. When Neminath sold the Property to Williston Park LLC in 2016, by contrast, Jaina's business was in trouble and a significant arbitration award had already been entered against it. Its value as an anchoring tenant was therefore in jeopardy, and the value of the Property was thus greatly reduced.

Geo-Group's argument that the size of the loan in 2013 offers insight into the true value of the Property in 2016 is therefore without merit and not supported by the record.

In short, neither Geo-Group's purported "new evidence" nor the record as a whole support Plaintiff's claims that Chand controls the Property or that the Property was sold for $1,025,000, not $425,000. As a result, Plaintiff's argument that Jaina's payment of $660,000 somehow constitutes a fraudulent transfer made without fair consideration collapses, and Plaintiff's fraudulent transfer claims against the LLC Defendants fail as a matter of law.

For this same reason, Geo-Group comes nowhere near satisfying the standard applicable on a motion pursuant to Fed. R. Civ. P. 54(b), because it cannot demonstrate that consideration of this "new evidence" would "probably" have resulted in a different ruling.

**B.  Plaintiff's Claim Against Chand for "Fraud on the Court" Fails as a Matter of Law**

Plaintiff accuses Chand of perpetrating a "fraud on the Court" in connection with the Third Affidavit Chand filed on March 31, 2016 in support of the LLC Defendants' motion to dismiss. Specifically, Plaintiff claims that in this Affidavit Chand "deliberately concealed the real estate transaction he had just entered into with Neminath" for the Property, did not mention the mortgage agreement executed in connection with the Commercial Loan Agreement whereby Kedis secured

an interest in the Property as collateral on the loan, and "deliberately concealed that Jaina had received no consideration" in exchange for the $660,000 Jaina paid to Hillside and Melville. (Geo-Group's MOL at 17.)  This accusation is completely without merit.

As an initial matter, Plaintiff's "fraud on the Court" claim fails because, as the record reflects, there was nothing inaccurate or improper in Chand's Affidavit.

That Chand did not mention in his Affidavit Neminath's sale of the Property to Williston Park LLC makes complete sense, because the sale of the Property is <u>totally irrelevant</u> to the claims Geo-Group was then asserting against the LLC Defendants. Mariana Ramirez, not Chand, is the sole owner of Williston Park LLC. Chand has no stake in Williston Park LLC, nor does he have any interest in the Property. Ramirez paid her own money for the Property. To the extent M. Shah testified that Chand owned Williston Park LLC, he later explicitly recanted that testimony. And Neminath sold the Property for $425,000.00, significantly above its objectively appraised value.

That Chand did not specifically name check the mortgage agreement in his Affidavit similarly makes sense, both because Kedis' interest in the Property as collateral had already by that point been resolved by Jaina's repayment of the loan, and because a reasonable reading of the Commercial Loan Agreement – which was publicly filed along with the mortgage agreement – itself reflects that Kedis would obtain a security interest in the Property. (Dkt. No. 115-3 at, e.g., Sections 5.1(b) (stating that Kedis will advance the loan only upon receipt of a security agreement duly executed by Neminath granting a security interest in the Collateral) and at 3.6(c) (granting Kedis the right to order "updated appraisals of the premises located at 235 Hillside Avenue, Williston Park, New York (the 'Borrower Financed Premises')").

Finally, that Chand did not inform the Court in his Affidavit that Jaina had received no consideration in exchange for the $660,000 paid to Hillside and Melville also makes sense, because

such a statement would have been manifestly untrue. This $660,000 was to pay off the antecedent debt owed by Neminath to Kedis stemming from the Commercial Loan Agreement.

Regardless of the substantive lack of merit of Plaintiff's assertions, however, its claim fails because Plaintiff cannot satisfy the elements of such a claim as a matter of law.

A "fraud on the court" claim requires that Plaintiff plead four elements:  "(1) the defendant's misrepresentation to the court; (2) the impact on the motion as a consequence of that misrepresentation; (3) the lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendants derived by inducing the erroneous decision." Tese-Milner v. TPAC, LLC, 313 B.R. 46, 64 (Bankr. S.D.N.Y. 2004) (citing Leber-Krebs v. Capitol Records, 779 F.2d 895 (2d Cir. 1985).

Even assuming, *arguendo*, that Chand's Affidavit contains a misrepresentation, which it does not, Plaintiff would still be unable to satisfy the second and fourth elements of a fraud on the court claim. This is because the Court did not consider Chand's Affidavit in connection with the motion for which it was submitted. Indeed, the Court expressly determined that it could not consider Chand's Affidavit, along with a number of other extraneous materials, in deciding the LLC Defendants' motion to dismiss, and made clear that "those outside materials play no role in the Court's Opinion." (Opinion and Order of July 27, 2016, at 10-11.)

There is thus no way for Geo-Group to demonstrate that Chand's Affidavit somehow had an "impact on the motion" or that Chand or the LLC Defendants "derived" a "benefit" by "inducing the erroneous decision." See Tese-Milner, 313 B.R. at 65 (dismissing fraud on the court claim where "the alleged misrepresentation did not substantially impact the Court's ruling…").

That the Court may have considered the Chand Affidavit years later, in connection with ruling on certain other parties' respective motions for summary judgment, is irrelevant. Chand

-24-

submitted his affidavit in support of the LLC Defendants' motion to dismiss. It had no impact, one way or the other, on that motion. And the LLC Defendants had not been parties to the case for years at the time the Court rendered its decision on summary judgment, and they therefore received no benefit in connection with that subsequent decision.

**C.  Plaintiff's Claims Against Chand Make No Sense**

It is worthwhile to take a step back and briefly consider just how ridiculous Geo-Group's claims against Chand in fact are. Indeed, for Geo-Group's claims to be true, Chand would have needed to make several truly irrational decisions.

First, after causing Kedis to loan $600,000 to Jaina, a company with which Plaintiff has alleged Chand has no specific connection, and after learning of the significant arbitration award entered against Jaina (an arbitration to which he had no connection or involvement), Chand would have needed to then decide to help Jaina hide funds from Geo-Group even though Jaina's debt to Kedis pre-existed the arbitration award and thus had priority over it.

Second, Chand would then have needed to cause his LLCs to accept $660,000 from Jaina, but instead of applying such funds to the debt, hide that transfer as part of a scheme to defraud Geo-Group, another entity with which Plaintiff has alleged Chand has no connection.

Third, Chand would have then needed to mastermind a scheme of bringing in Ms. Ramirez as a front to purchase the Property three years after the transfer and after this lawsuit was filed, all to secure a $600,000 credit to cover a debt that he could have resolved by simply keeping the money Jaina had already transferred to him.

There is no reason why Chand would do any of this, effectively piling unnecessary risk on top of unnecessary risk, all for no benefit beyond the loan repayment to which Kedis was already lawfully entitled. Geo-Group's claims against Chand and the LLC Defendants make no sense.

23812222v.1

## <u>CONCLUSION</u>

For the foregoing reasons, the LLC Defendants and Chand respectfully request that Geo-Group's motion be denied in its entirety, and that the LLC Defendants and Chand be awarded such other relief as the Court deems just and proper.


DATED this 2nd day of December, 2019.

**WHITE AND WILLIAMS LLP**


By: _____/s/_____ ____ _____
      Andrew Hamelsky
      Eric Porter
      Sabina Yevdayeva
      Email: hamelskya@whiteandwilliams.com
      7 Times Square, Suite 2900
      New York, NY 10036
      Telephone:  (212) 631-4406
      *Attorneys for the LLC Defendants and Sanjiv Chand*

23812222v.1