UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEO-GROUP COMMUNICATIONS, INC.,

                              Plaintiff,

                    -v.-

VIPIN SHAH,

                              Defendant.

15 Civ. 1756 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

On October 4, 2019, after more than four and a half years of litigation, Plaintiff Geo-Group Communications, Inc. ("Geo-Group") moved to reopen its case against previously-dismissed Defendants 728 Melville Petro LLC ("Melville"), Kedis Enterprises LLC ("Kedis"), JMVD Hillside LLC ("JMVD," and together with Melville and Kedis, the "LLC Defendants"), and Mahendra Shah ("M. Shah"); to join non-party Sanjiv Chand ("Chand," and together with the LLC Defendants and M. Shah, "Respondents"); and to file a fourth amended complaint. Specifically, Plaintiff seeks:

> i. Reconsideration of the Court's prior orders dismissing the LLC Defendants and granting summary judgment in favor of M. Shah, pursuant to Fed. R. Civ. P. 54(b);
>
> ii. Leave to file a fourth amended complaint, pursuant to Fed. R. Civ. P. 15(a)(2), to assert claims (i) against the LLC Defendants for fraudulent conveyance under New York Debtor and Creditor Law ("NYDCL") §§ 273, 274, 276, and (ii) against M. Shah for fraud on the Court and fraudulent conveyance under NYDCL § 276; and

> iii.    Addition of Chand as a defendant in this action,
> pursuant to Fed. R. Civ. P. 15(a), 15(d), 20(a)(2),
> and 21, in order to assert against him claims for
> fraud on the Court and fraudulent conveyance
> under NYDCL § 276.

As made clear by its docket number, this case has been pending for years, and the underlying allegations and factual disputes raised in the instant motions have been addressed by this Court in two previous Opinions. *See Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2018 WL 3632498, at *4 (S.D.N.Y. July 30, 2018) ("*Geo-Group III*"); *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2016 WL 4098552, at *5-7 (S.D.N.Y. July 27, 2016) ("*Geo-Group II*"). Undaunted by this procedural history, Plaintiff argues that new evidence outlined herein gives these allegations renewed life. However, for the reasons set forth in this Opinion, the Court finds that the interests of finality, coupled with Plaintiff's unreasonable delay in seeking this relief after years of litigation, compel the Court to deny Plaintiff's motions.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties and the Instant Litigation

This case arises out of an attempt by Plaintiff to enforce an arbitration award against Jaina Systems Network, Inc. ("Jaina"). Plaintiff Geo-Group is a

---

[1]    The facts recounted herein are drawn in the first instance from the parties' submissions in connection with the instant motion. The exhibits attached to Govind Vanjani's Declaration in Support of Plaintiff's Motion to Reopen are referred to as "Vanjani Decl., Ex. [ ]" (Dkt. #273), and the exhibits attached to Govind Vanjani's Reply Declaration in Support of Plaintiff's Motion to Reopen are referred to as "Vanjani Reply Decl., Ex. [ ]" (Dkt. #289). Plaintiff's moving brief is referred to as "Pl. Br." (Dkt. #274); Respondents Chand and the LLC Defendants' joint brief in opposition is referred to as "LLC Opp." (Dkt. #283); Respondent M. Shah's brief in opposition is referred to as "M. Shah Opp." (Dkt. #284); and Plaintiff's reply is referred to as "Pl. Reply" (Dkt. #288). The transcript

telecommunications company that was in the business of buying minutes from carriers and reselling those minutes to an array of customers. (Vanjani MSJ Decl. ¶ 6). Non-party Jaina was a customer of Geo-Group. (*Id.* at ¶ 7). Former Defendant M. Shah was, during the relevant time period, president of Jaina and a 25% shareholder. (M. Shah MSJ Aff. ¶¶ 1, 11(b)). Plaintiff alleges that non-party Chand owns and controls the LLC Defendants (Vanjani Decl. ¶ 5), and, further, that Chand and the LLC Defendants were involved in a series of fraudulent transactions with Jaina in 2014 (*id.* at ¶¶ 6-7). Vipin Shah ("V. Shah") is the last remaining Defendant in the instant litigation; he is also M. Shah's brother. (V. Shah MSJ Aff. ¶ 3).

The arbitration against Jaina commenced on May 30, 2013; Plaintiff prevailed in that proceeding on July 10, 2014; and the award was confirmed by the New York State Supreme Court, New York County, which issued judgment on April 3, 2015, in the amount of $2,712,175.51. (Chopra 56.1 ¶¶ 8-10). On March 9, 2015, after Jaina failed to satisfy that judgment and settlement

---

of the deposition of M. Shah is referred to as "M. Shah Dep." (Vanjani Decl., Ex. 7); the transcript of the deposition of V. Shah is referred to as "V. Shah Dep." (Vanjani Decl., Ex. 32); and the transcript of the Deposition of Ravi Chopra is referred to as "Chopra Dep." (Dkt. #221, Ex. F-G). The transcript of the July 25, 2017 conference is referred to as "July 25, 2017 Tr." (Dkt. #172); the transcript of the November 19, 2018 conference is referred to as "Nov. 19, 2018 Tr." (Dkt. #253, Ex. A); and the transcript of the June 26, 2019 conference is referred to as "June 26, 2019 Tr." (Dkt. #264).

The Court has also considered materials submitted by the parties in connection with the prior motions for summary judgment; references to those materials are made using the citing conventions identified in *Geo-Group III*, *See* 2018 WL 3632498, at *1 n.2. Finally, the Court has considered submissions made in connection with non-party Williston Park Realty LLC's ("Williston Park") earlier motion to quash Plaintiff's subpoena. The motion itself is referred to as "Motion to Quash" (Dkt. #174); the exhibits attached to Joseph Vogel's Declaration in Support of the Motion to Quash are referred to as "Vogel Decl., Ex. [ ]" (Dkt. #175); and Philip J. Loree, Jr.'s Declaration in Opposition to the Motion to Quash is referred to as "Loree Quash Decl." (Dkt. #180).

negotiations failed, Plaintiff initiated the instant suit. (Dkt. #1). After nearly a year of extensive motion practice and litigation, on February 22, 2016, Plaintiff filed its Third Amended Complaint (or "TAC"), alleging that the LLC Defendants, M. Shah, and V. Shah, *inter alia*, were the recipients or beneficiaries of a series of fraudulent conveyances from Jaina. (*See generally* Dkt. #105 (TAC)). A key point of contention concerns whether certain transfers from Jaina's accounts to various third parties were made to satisfy antecedent loan debts, as Respondents argue, or whether they constituted actual or constructive fraudulent transfers, as Plaintiff contends.

### 2. The Neminath Transactions

The instant motions focus on one particular series of transfers and one specific putative antecedent debt. By way of a January 18, 2013 Commercial Loan Agreement (the "CLA"), one of the LLC Defendants, Kedis, loaned non-party Neminath, Inc. ("Neminath") $600,000. (Vanjani Decl., Ex. 4). The loan was secured by a building that Neminath owned, located at 235 Hillside Avenue, Williston Park, New York (the "Building"), and the mortgage was recorded with the Nassau County Clerk. (*Id.* at Ex. 4-5). Pursuant to the CLA, Neminath was to pay Kedis 15% annual interest on the loan. (*Id.* at Ex. 4). Chand signed the CLA on behalf of Kedis, and M. Shah signed on behalf of Neminath. (*Id.*). The loan was personally guaranteed by M. Shah, V. Shah, and their spouses. (*Id.*).[2] A wire transfer receipt shows that on January 22,

---

[2]    At the time that Neminath and Kedis executed the CLA, M. Shah owned 5% of Neminath, his spouse Pooja Shah owned 45%, V. Shah owned 5%, and his spouse Nayana Shah owned 45%. (V. Shah Dep. 27, 29). Plaintiff alleges that as of April 1,

2013, Kedis transferred $600,000 to Neminath.  (Siddiqi Decl., Ex. C-18; *see also* Vanjani Decl., Ex. 6 (Neminath bank statement)).

Respondents maintain that the money Kedis loaned to Neminath was intended to be used — and was in fact used — for Jaina's benefit.  (LLC Opp. 7; M. Shah Opp. 11).  To that end, it is claimed, Neminath transferred a portion of the $600,000 to Jaina between January 22, 2013, and February 6, 2013. (Vanjani Decl., Ex. 6).[3]  Respondents further state that (i) all parties involved in this series of transactions (the "Neminath Transactions") understood that Jaina, rather than Neminath, would repay this loan, and (ii) Chand subsequently assigned Kedis's right to collect on the loan to two other LLC Defendants, Melville and JMVD.  (LLC Opp. 7; M. Shah Opp. 11).

Ravi Chopra, a previous Defendant in this action, corroborated the assertion that the Neminath Transactions were made for Jaina's benefit: Chopra testified at his deposition that he was approached by Jagdish Alwani, Jaina's accountant, who was looking for financing for Neminath to use for the benefit of Jaina.  (Chopra Dep. 45:19-52:23).  Chopra testified that Jaina needed money quickly and that it was chronically short on cash.  (*Id.*).  Chopra understood that because Neminath had a building to put up as collateral,

---

2017, M. Shah "transferred complete ownership and Corporate Stock share ownership of Neminath Inc." to V. Shah and Nayana Shah, each with a 50% ownership interest. (Vanjani Decl., Ex. 33).

[3]     Plaintiff alleges that Neminath transferred only $530,000 to Jaina (*see* Pl. Br. 3; *but see* Pl. Chopra 56.1 Opp. ¶ 81 (admitting that Neminath transferred $570,000 to Jaina)), while Respondents have set the amount transferred by Neminath to Jaina at $570,000 (*see* M. Shah Opp. 11).  For purposes of resolving this motion, the precise amount Neminath transferred to Jaina is immaterial.

Alwani and Jaina's CEO, Surajit Bose ("S. Bose"), decided to seek funding using Neminath that they could then transfer to Jaina. (*Id.*). Chopra testified that he received a broker's fee for helping to arrange the loan with Chand. (*Id.* at 62:4-15, 77:21-24). For its part, Plaintiff strongly disputes the assertion that Kedis assigned its right to collect to the LLC Entities. (Pl. Br. 4). Plaintiff also disputes that the loan between Kedis and Neminath was done for Jaina's benefit, even though Plaintiff previously admitted this fact on summary judgment, *see Geo-Group III*, 2018 WL 3632498, at *4 (citing Pl. Chopra 56.1 Opp. ¶¶ 80-81)[4]; the Court understands Plaintiff's change of heart to be prompted by new evidence from non-party NRM Holdings, Inc. ("NRM"), which evidence suggests to Plaintiff that Jaina was not as short on cash as Respondents claim (*see* Pl. Br. 11-12).

### 3. Jaina's Transfers to the LLC Entities

On August 13, 2014, Jaina transferred $200,000 to JMVD; and in October 2014, Jaina made a series of transfers totaling $460,000 to Melville. (Vanjani MSJ Decl., Ex. Z). Respondents maintain that, pursuant to the assignment agreement discussed above, Chand asked Jaina to send the loan repayments directly to Melville and JMVD (together, the "LLC Transferees"). (LLC Opp. 7; M. Shah Opp. 11). Thus, Respondents state, the $660,000 in payments from Jaina to the LLC Transferees was made in satisfaction of the

---

[4]   Because of a typographical error in Plaintiff's opposition to Chopra's Local Rule 56.1 Statement, the numbers after Paragraph 79 of Plaintiff's submission are off by one number. The Court endeavors to correct this problem when citing to Plaintiff's opposition, and will use the number of the corresponding paragraph in Chopra's statement.

debt incurred under the CLA and were done for fair consideration.  (LLC Opp. 8; M. Shah Opp. 11).

Plaintiff disagrees.  In the TAC, Plaintiff alleged that Jaina's transfer of this $660,000 to the LLC Transferees was done without fair consideration and was therefore actually or constructively fraudulent.  (TAC ¶¶ 37-58).  In support, Plaintiff points to Neminath's 2014, 2015, and 2016 tax returns, which appear to show an outstanding $600,000 loan receivable due and owing from Jaina even after these transfers were made.  (*See* Vanjani Decl. ¶¶ 44.n, 52).  Plaintiff also construes Neminath's tax returns and bank statements to suggest that Neminath continued to pay interest to Kedis on the loan, even after Jaina supposedly discharged the debt.  (*Id.* at ¶ 44.k-m; *see also id.* at Ex. 6, 8-12 (Neminath bank statements and tax returns)).  Plaintiff raised essentially this same argument in opposition to Defendants' motions for summary judgment (*see* Pl. MSJ Opp. 20-21), and much of the evidence just cited has been submitted to the Court in support of previous motions (*see, e.g.*, Pl. Chopra 56.1 Opp. ¶ 83 (citing Loree Quash Decl. ¶¶ 7-38); Loree Quash Decl., Ex. A-E).  However, Plaintiff proffers new evidence in the form of a statement and some documents from Neminath's accountant, Andrew Bose ("A. Bose"), that Plaintiff contends supports its interpretation of Neminath's financial activity from 2013 until 2016.  (Vanjani Decl. ¶¶ 68-74; *see also id.* at Ex. 13-14; Vanjani Reply Decl., Ex. F).  Specifically, in an email to Plaintiff's counsel, A. Bose stated that he understood that Neminath continued to pay interest to Kedis and to carry the outstanding loan to Kedis on its books up

until early 2016.  (Vanjani Decl., Ex. 13).  A. Bose sourced this knowledge to information given to him by the Shah brothers.  (*Id.*).  Working backwards from Bose's statement, Plaintiff now interprets Neminath's ledgers and bank statements to show regular interest payments to Kedis through March 2015. (Vanjani Reply Decl., Ex. E-G).

### 4.    Neminath's Sale of the Building

On January 14, 2016, Neminath sold the Building to non-party Williston Park Realty, LLC ("Williston Park").  (Vanjani Decl., Ex. 22).  Respondents assert that Neminath sold this property to Williston Park in an arm's-length transaction for $425,000.  (Chand Opp. 20-22).  Plaintiff, however, alleges that Williston Park is secretly controlled by Chand, and that Neminath actually sold the Building for $1,025,000, comprising $425,000 in cash plus a $600,000 discount to Williston Park for the purpose of discharging its debt to Kedis.  (Pl. Br. 4-5).  Thus, argues Plaintiff, if the sale of the Building to Williston Park discharged Neminath's debt to Kedis, then Jaina's payments to the LLC Transferees were *not* made in satisfaction of an antecedent loan debt incurred via the Neminath Transactions.  (*Id.* at 5-6; *see also* Pl. Chopra 56.1 Opp. ¶ 83).

Here, too, Plaintiff cites evidence previously submitted to the Court, including the deposition testimony of M. Shah and Neminath's tax returns (*see* Pl. MSJ Opp. 19-21; Pl. Chopra 56.1 Opp. ¶ 83; Loree Quash Decl., Ex. A-E); publicly available information, such as the CLA filed with the Nassau County Clerk's Office (*see, e.g.*, Loree Quash Decl., Ex. F; Vanjani Decl., Ex. 4, 5); and

evidence obtained from a subpoena of Williston Park that Plaintiff has possessed since 2017 (*see, e.g.*, Vanjani Decl., Ex. 22-26, 29, 31, 34).  And with this evidence, Plaintiff advances essentially the same arguments previously made in opposition to various motions for summary judgment.  (Pl. MSJ Opp. 21).  But Plaintiff also cites new evidence obtained from accountant A. Bose — this time, a handwritten note that Plaintiff interprets to support its allegation that the Building was sold for $1,025,000 and not $425,000. (Vanjani Decl. ¶¶ 69-74; *see also id.* at Ex. 14).  A. Bose states that the note refers to the sale of the Building and that the information in the note came from the Shah brothers.  (*Id.* at ¶¶ 70, 73-74).

## B.   Procedural History

This case has an especially complicated procedural history that is discussed at length in several prior opinions, all of which are incorporated herein by reference.  *See Geo-Group III*, 2018 WL 3632498, at *1 (granting motion for summary judgment in favor of prior Defendants M. Shah, Ravi Chopra, and NYC Telecommunications Corp., but denying V. Shah's motion for summary judgment); *Geo-Group II*, 2016 WL 4098552, at *1 (granting LLC Defendants' motion to dismiss); *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2016 WL 390089, at *1 (S.D.N.Y. Feb. 1, 2016) ("*Geo-Group I*") (granting motion to dismiss as to LLC Defendants, M. Shah, V. Shah, and others, but allowing Plaintiff to file a third amended complaint).  The Court focuses in this Opinion on the facts and procedural history undergirding

Plaintiff's motions to join Chand as a defendant and to reopen as to M. Shah and the LLC Defendants.

In the TAC, Plaintiff alleged that Jaina's transfer of $660,000 to the LLC Defendants in 2014 violated the NYDCL because "there is no evidence" that the sums paid to the respective LLC Defendants represented "fair value exchange[s] for any goods, services, property or property rights," or that they "were made to discharge any legitimate antecedent loan or other debt Jaina" may have owed. (TAC ¶¶ 37, 42-44, 49-50, 54-55, 58).  Holding that Plaintiff had not adequately alleged either the LLC Defendants' bad faith or the lack of a fair-value exchange, the Court dismissed Geo-Group's claims against the LLC Defendants by Order dated July 27, 2016.  *Geo-Group II*, 2016 WL 4098552, at *5-7.  The Court explicitly considered allowing Plaintiff to file a fourth amended complaint naming the LLC Defendants, but concluded that "[t]he TAC represents Plaintiff's fourth attempt at pleading; the Court will not offer it a fifth, as the Court finds that any further attempt to replead the claims against the dismissed [LLC Defendants] would be futile." *Id.* at *10.  The Court held that Plaintiff had sufficiently pleaded claims against M. Shah, V. Shah, Ravi Chopra, and NYC Telecommunications Corp. ("NYC Telecom"), a company controlled by Chopra. *Id.*

On September 14, 2016, the remaining parties entered into a case management plan that explicitly stated that "[a]mended pleadings may not be filed and additional parties may not be joined except with leave of the Court. Any motion to amend or to join additional parties shall be filed within 16 days

from the date of this Order." (Dkt. #139).  The case management plan set January 31, 2017, as the fact discovery deadline, and the parties commenced discovery on September 14, 2016.  (*Id.*).  Discovery was then stayed, due to the automatic stay occasioned by the Shah brothers' bankruptcy filings, from January 27, 2017, until July 25, 2017, when the Court lifted the stay at a conference.  (*See* Dkt. #158; *see generally* July 25, 2017 Tr.).  Upon lifting the stay, the Court declined to enter a new scheduling order, and ordered only that the close of fact discovery be extended to September 15, 2017.  (July 25, 2017 Tr. 25:10-11).  The Court cautioned the parties to "[u]se your time wisely and please plan on the front-end perhaps to have these depositions [of the Shah brothers] in the month of August *so that you will have enough time to ask your follow-up document production requests* and [so] that you will be able to tell me if there are discovery disputes."  (*Id.* at 25:11-15 (emphasis added)).

On August 11, 2017, Plaintiff deposed M. Shah and first learned the facts underlying its current allegations regarding the Neminath Transactions and the sale of the Building to Williston Park.  (Pl. Br. 8).  At his deposition, M. Shah testified that Neminath sold the Building "[b]ecause we wanted to pa[y] off Jaina's debt, some of the lenders, you know, so that's the reason that we sold it[,]" and explained how Neminath received $425,000 in cash for the sale of the Building, which was distributed by escrow.  (M. Shah Dep. 33:4-39:7).  M. Shah further testified that he understood that the Building was sold to Chand or an entity owned or controlled by Chand.  (*Id.* at 31:12-32:6).

M. Shah also informed Plaintiff that A. Bose, an accountant, prepared Neminath's tax returns.  (*Id.* at 165:23-166:3-6).

To follow up on this information, Plaintiff served a subpoena on Neminath on August 27, 2017, pursuant to Fed. R. Civ. P. 45, seeking Neminath's tax returns for tax years 2013-2016 and all of its bank statements. ((Dkt. #). #280, Ex. D (Neminath Subpoena)).  That same day, Plaintiff also served a subpoena pursuant to Fed. R. Civ. P. 30(b)(6) on Williston Park. (Vogel Decl., Ex. 1-2).  Specifically, Plaintiff sought documents and information — including deposition testimony — from Williston Park related to, *inter alia*: (i) its purchase of the Building from Neminath, and (ii) the identity and ownership interests of Williston Park's members and managers.  (*Id.*, Ex. 1).  On September 11, 2017, Williston Park filed a motion to quash Plaintiff's subpoena.  (Dkt. #174-178).  Fact discovery closed on September 15, 2017.  (July 25, 2017 Tr. 25:10-15).  A week later, on September 22, 2017, Plaintiff filed its opposition to the motion to quash, wherein Plaintiff averred that its "goal in subpoenaing Williston Park Realty LLC," was "not to ask the Court [to] reopen the case against the LLC [Defendants] or to name Sanjiv Chand as a defendant[,]" because "[i]t is too late for that, as the discovery cut-off has passed and this case is moving forward to trial."  (Loree Quash Decl. ¶ 6).  Williston Park filed its reply on September 29, 2017 (Dkt. #183), and the Court denied Williston Park's motion to quash on October 16, 2017 (Dkt. #187).

Shortly thereafter, on October 20, 2017, the Court set a briefing schedule for summary judgment practice.  (Dkt. #190).  Meanwhile, Plaintiff took the Rule 30(b)(6) deposition of Mariana Ramirez, Williston Park's representative, over the course of two hours on November 1, 2017.  (Loree MSJ Decl., Ex. 12). Chopra and NYC Telecom filed a joint motion for summary judgment on December 8, 2017 (Dkt. #193-199); V. Shah filed his motion for summary judgment on December 11, 2017 (Dkt. #200-202); and M. Shah filed his motion for summary judgment on December 14, 2017 (Dkt. #207-209).  Plaintiff filed a consolidated response on January 30, 2018 (Dkt. #218-222), which response included evidence obtained through the Williston Park subpoena (*see, e.g.,* Loree MSJ Decl., Ex. 12), as well as extensive argument about the Neminath Transactions and Neminath's sale of the Building (Pl. MSJ Opp. 19-21; *see also* Pl. Chopra 56.1 Opp. ¶ 83).  Chopra and NYC Telecom filed reply papers on February 28, 2018 (Dkt. #230-232); V. Shah filed a reply brief on March 14, 2018 (Dkt. #234-235); and M. Shah filed a reply brief on March 15, 2018 (Dkt. #233).  On July 30, 2018, the Court granted M. Shah's, Chopra's, and NYC Telecom's motions for summary judgment, but denied V. Shah's motion for summary judgment.  *Geo-Group III*, 2018 WL 3632498, at *15.

On September 7, 2018, Plaintiff and V. Shah filed a joint letter requesting a settlement conference (Dkt. #238), and the Court facilitated said conference on October 10, 2018 (Minute Entry for October 10, 2018).  On October 19, 2018, more than a year after the close of fact discovery and more than two years after the LLC Defendants had been dismissed from the case,

Plaintiff first announced its intention to "reopen the case against the [LLC Defendants] and to make Mr. Chand a defendant" in a letter to the Court describing its efforts to enlist V. Shah's cooperation in exchange for settlement. (Dkt. #240). Attached to Plaintiff's letter was a 20-page document detailing the extensive discovery requests that Plaintiff had elected not to pursue during the fact discovery period in this case, but that Plaintiff now sought from V. Shah. (*Id.* at Ex. B 44-64).

In a letter dated October 24, 2018, Plaintiff described additional efforts to settle the case with V. Shah, noting that V. Shah had taken the position that he could not provide the extensive discovery Plaintiff sought. (Dkt. #243). By endorsement dated October 25, 2018, the Court acknowledged that the parties remaining in the case had been unable to settle. (Dkt. #245). Of potential significance to the instant motion, the Court rejected Plaintiff's request to enter a second or supplemental case management plan, and instead directed the parties to provide their availability for trial. (*Id.*). With V. Shah's cooperation off the table, Plaintiff formally turned its attention to reconsideration of the Court's prior orders: In a November 2, 2018 letter to the Court — nominally submitted to schedule the trial with V. Shah — Plaintiff requested that the Court grant permission to pursue additional third-party discovery with the goal of reopening the case as to M. Shah and the LLC Defendants and adding Chand. (Dkt. #248).

On November 5, 2018, the Court set a pre-trial schedule and a trial date to resolve Plaintiff's remaining claims against V. Shah. (Dkt. #249). In

response, in a letter to the Court, Plaintiff again raised its request to seek third-party discovery with the goals of: (i) reopening the case against M. Shah and the LLC Defendants, (ii) adding Chand, and (iii) seeking additional information relevant to V. Shah's claims in preparation for the upcoming trial. (Dkt. #250). Plaintiff specified that it sought discovery from "the following two banks and three Jaina or Neminath Certified Public Accountants: Citibank, Capital One Bank, CPA Harvinder Dhody, CPA Aqueel Khan, and CPA Andrew Bose," as well as from NRM Holdings, Inc., a company that Plaintiff alleged extended a $2,500,000 letter of credit to Jaina. (*Id.*). The Court scheduled a conference for November 19, 2018, to address Plaintiff's requests. (Dkt. #251).

At the November 19, 2018 conference, the Court voiced its concern that Plaintiff was "failing to perceive with sufficient alacrity ... that we are two months away from trial" and noted that Plaintiff's anticipated motion was "to basically resurrect the case as to half the folks against whom it's been dismissed." (Nov. 19, 2018 Tr. 7). The Court asked Plaintiff to explain why it waited so long to request this relief, given that the LLC Defendants had been dismissed from the case in 2016 and that Plaintiff had filed four complaints without once naming Chand. (*Id.*).

Plaintiff conceded that it had known the facts motivating the instant motion since at least August 2017, yet declined to raise the issue with the Court until well after the Court's July 2018 summary judgment decision:

> THE COURT: But at no point during the summary judgment — at no point prior to your letter to me or to these discussions about settlement when we had this settlement conference did you suggest that the chart

15

> that [Plaintiff] prepared or the discussions about how
> things were reflected in the [Neminath] tax returns were
> reasons to bring back in the LLC defendants.
>
> My concern, sir, is to the extent that there is an
> application under Rule 59 or Rule 60, part of the
> analysis is when did you have the information. And it
> looks like you had the information in 2017. So you're
> asking me a year plus after you've had it to bring back
> these other entities into the case. Yes?
>
> MR. LOREE: The answer to that is yes.

(Nov. 19, 2018 Tr. 12). Plaintiff also acknowledged that nothing had prevented
it from seeking before the fact discovery deadline any of the discovery it now
sought (*id.* at 28), specifically admitting that it could have subpoenaed NRM,
the banks, and/or the Jaina and Neminath accountants prior to the discovery
cutoff, but chose not to due to time constraints (*id.* at 30-33, 35, 38).[5]
Additionally, Plaintiff noted that it had been aware of missing documents from
Citibank at the close of fact discovery, but decided not to pursue those until
late 2018, after the Court's decision on the motions for summary judgment.
(*Id.* at 38).

Plaintiff further conceded that its decision to delay raising these issues
was a strategic one, and that up until the abortive settlement discussions with
V. Shah, Plaintiff intended neither to move for reconsideration of the Court's
prior decisions as to M. Shah and the LLC Defendants, nor to bring Chand into

---

[5]    At the November 19, 2018 conference, Plaintiff's counsel speculated that he was not
aware of the identity of Andrew Bose, Neminath's CPA, until he received Neminath's tax
returns after the close of fact discovery. (Nov. 19. 2018 Tr. 33). However, the transcript
of M. Shah's deposition demonstrates that Plaintiff was aware of A. Bose's identity, and
of the fact that A. Bose prepared Neminath's tax returns, as early as August 11, 2017.
(M. Shah Dep. 165:23-166:3-6).

the case, and instead planned to bring a separate suit against Chand and the

LLC Defendants after final judgment in the instant case.  (Nov. 19, 2018 Tr. 12-

13).

> THE COURT:  ... But I feel as though you've kind of kept these things in your pocket for the last year plus as we've been resolving other issues and to have them brought out now is something that causes me concern.
>
> You're saying to me, sir, that at the very time of the motion to quash [the] Williston Park [subpoena] you let me know that there was going to be an application at some later date to make this without prejudice?
>
> MR. LOREE:  No.  But what I did say, it was too late to bring [Chand] in.
>
> * * *
>
> THE COURT:  And I don't know how it's any less late to bring him in now.
>
> MR. LOREE:  As we said, the only reason that we would bring — we had a shift in the way we dealt with this was because of the settlement conference.

(*Id.* at 16-17).  Yet the 2016 dismissal of the LLC Defendants was with

prejudice, and despite purportedly planning to pursue a separate case against

them for the preceding two years, Plaintiff had never mentioned or moved for

reconsideration in order to have the dismissal be one without prejudice.  (*Id.*).

Plaintiff also equivocated about whether it was asking the Court to

reopen discovery.  Plaintiff framed its request as for subpoenas *duces tecum* for

production in V. Shah's trial, but refused to foreswear the use of that

information against Chand, M. Shah, or the LLC Defendants.  (Nov. 19, 2018

Tr. 28-29, 34).  On December 18, 2018, the Court issued a scheduling order

adjourning the trial *sine die* in light of Plaintiff's request to serve a series of subpoenas well after the close of fact discovery.  (Dkt. #255).

At a June 26, 2019 telephonic conference to discuss Plaintiff's outstanding motions, Plaintiff clarified that although some of the discovery sought would be used for trial against V. Shah, much of the discovery sought would be used for an anticipated motion to reopen the case against M. Shah and the LLC Defendants, and for a motion to join Chand.  (June 26, 2019 Tr. 4-6).  Plaintiff also explained that it was aware of the missing discovery at the close of fact discovery, and that although "we could have tried to get them earlier, ... we were at that point thinking it was kind of late and *we would like to see if we can get by without them.*"  (*Id.* at 7 (emphasis added)).  Plaintiff stated that it failed to pursue this discovery because Plaintiff felt it had sufficient evidence to survive summary judgment:

> THE COURT:  I think I understand that.  But if I'm recalling correctly, the case management plan in this case was entered into — and the docket confirms it was entered into in September of 2016.  There were some bumps in the road or some unusual features of this discovery period because of the bankruptcy filing of the Shahs during the pendency of discovery, but I guess a concern that I have is that I don't think I knew, I don't think you told me, Mr. Loree, until after the decision on the summary judgment motion that there were these gaps in discovery.
>
> And I'm trying to figure out why I did not know, why I was not told prior to then of the problems in discovery.  And it may be, sir, that you did not know at the time that the summary judgment motion was filed, but that's really what I'm trying to figure out.
>
> MR. LOREE:  In terms of gaps in discovery, there was discussion of that at [the June 25, 2017 conference],

> and we indicated there that we thought we would get to
> the bottom of it with depositions, and so that went
> forward. And meanwhile, during the deposition phase,
> that's when we first discovered this business about Mr.
> Chand and what we believe is misrepresentations about
> the nature of the transcripts that were made to the LLC
> defendants. That came up [i]n August 2017, so
> basically from there we went into summary judgment.
> And it wasn't that we ... thought that we didn't have
> discovery necessarily to defeat summary judgment,
> because then we wouldn't have made a Rule 56(e), I
> think it is, application, at that point.[6]

(*Id.* at 8-9). Citing V. Shah's untimely production of text messages and emails

that should have been produced during discovery (*id.* at 13-14), the Court

granted Plaintiff's request to reopen discovery and denied its motion to reopen

the case against LLC Defendants and M. Shah without prejudice (*id.* at 15-16;

*see also* Dkt. #263 (memorializing oral decision)).

---

[6]     Plaintiff never submitted a Rule 56(e) application in connection with the motions for
summary judgment; to the contrary, in its pre-motion letter, Plaintiff detailed why it
believed it had sufficient evidence to establish a disputed issue of material fact as to the
purportedly fraudulent transfers from Jaina to the LLC Entities. (Dkt. #185). Indeed,
Plaintiff continued to assert, even after the Court granted summary judgment in favor of
M. Shah, that it had submitted sufficient evidence in its opposition to summary
judgment to raise a disputed issue of material fact as to the Neminath Transactions and
Neminath's sale of the Building:

> THE COURT: What is the evidence that you would suggest ... for
> a basis or bases for allowing these people in? You're going to say
> look at Chand's affidavit, look at Mahendra Shah's testimony and
> look at the [Neminath] tax returns. And putting those three things
> together somebody must be lying, correct?

> MR. LOREE: Well, I think if you look at all the evidence it's that —
> yeah, there's a question of fact as to — in other words, the prior
> decision has taken the view that this $660,000 transfer was for
> antecedent debt.

> THE COURT: Yes.

> MR. LOREE: But based on what was before the court in summary
> judgment, we think that there was a question of fact.

(Nov. 19, 2018 Tr. 18).

On August 26, 2019, Plaintiff filed a letter on the status of its subpoenas, including a short summary of evidence gleaned from records produced by Neminath's accountant, Andrew Bose.  (Dkt. #266).  In its letter, Plaintiff stated its belief that the information obtained from A. Bose confirmed that Neminath had continued to pay interest to Kedis even after Jaina wired money to the LLC Entities in 2014, and also that Neminath had recorded the sale price of the Building as $1,025,000, not $425,000.  (*Id.*).  In a subsequent status update, filed on September 9, 2019, Plaintiff included excerpts from an email exchange with A. Bose wherein the latter confirmed his understanding that Neminath continued to pay interest to Kedis through tax year 2015.  (Dkt. #268).

The next day, the Court set a briefing schedule on Plaintiff's motions to: (i) reopen the case as to the LLC Defendants and M. Shah; (ii) add Chand as a Defendant; and (iii) file a fourth amended complaint.  (Dkt. #269).  Plaintiff filed its moving papers on October 4, 2019 (Dkt. #272-274); Chand and the LLC Defendants submitted a joint opposition on December 2, 2019 (Dkt. #283); M. Shah submitted his opposition on December 3, 2019 (Dkt. #284); and Plaintiff filed its consolidated reply on December 20, 2019 (Dkt. #288-290).[7]

---

[7]     Chand and the LLC Defendants object to Plaintiff's inclusion of two supplemental declarations and numerous exhibits along with its reply brief.  (Dkt. #293).  Plaintiff responds that the supplemental exhibits do not prejudice Respondents.  (Dkt. #294). Because consideration of these exhibits does not impact the Court's analysis that Plaintiff has not met the standard required for reconsideration or to file an amended complaint, the Court accepts Plaintiff's supplemental declarations.

**DISCUSSION**

**A.     The Court Denies Plaintiff's Motion for Reconsideration**

    **1.     Applicable Law**

        **a.     Motions to Reconsider Under Federal Rule of Civil Procedure 54(b)**

Under Rule 54(b), interlocutory decisions "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, "the interests of finality" serve to "severely restrict [the] circumstances" in which courts may revise judgments that "adjudicate a claim or determine the rights and liabilities of the parties." *Colvin* v. *Keen*, 900 F.3d 63, 71-72 (2d Cir. 2018) (explaining that a higher standard applies to reconsideration under Rule 54(b) of a decision that would be an "immediately appealable final judgment if no other claims remained to be adjudicated," than to reconsideration of a non-interlocutory decision).

The law of the case doctrine governs Rule 54(b) motions for reconsideration of decisions that "adjudicate a claim or determine the rights and liabilities of the parties." *Colvin*, 900 F.3d at 72; *see also Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("*Color Tile*") ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case[.]"). "According to this doctrine, a district court may reconsider prior adjudications where to do so would not be inconsistent with the objectives of efficiency and finality." *Vicuna* v. *O.P. Schuman & Sons, Inc.*,

298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017) (citing *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Tri-Star Pictures, Inc.* v. *Leisure Time Prod., B.V.*, No. 88 Civ. 9127 (DNE), 1992 WL 296314, at *2 (S.D.N.Y. Oct. 6, 1992).

Under the law of the case doctrine, "'[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson* v. *Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States* v. *Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).  This is because generally "where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted to battle for it again." *Zdanok* v. *Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

To be sure, the law of the case doctrine does not "'rigidly bind a court to its former decisions, but is only addressed to its good sense.'" *Colvin*, 900 F.3d at 68 (quoting *Zdanok*, 327 F.2d at 952-53).  Even so, courts generally will not depart from an interlocutory decision pursuant to Rule 54(b) unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Color Tile*, 322 F.3d at 167 (internal quotation marks and citation omitted); *accord Colvin*, 900 F.3d at 71-72.  Nor is a motion for reconsideration "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys,*

*Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.*
v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Motions for reconsideration in civil cases in this District are governed by
Local Civil Rule 6.3.  *See Ricatto* v. *M3 Innovations Unlimited, Inc.*, No. 18 Civ.
8404 (KPF), 2020 WL 2306480, at *1 (S.D.N.Y. May 8, 2020); *JP Morgan Chase
Bank, N.A.* v. *Reifler*, No. 11 Civ. 4016 (DAB), 2013 WL 12177061, at *3
(S.D.N.Y. Sept. 20, 2013).  Local Civil Rule 6.3 generally requires a party to
submit a motion for reconsideration within 14 days of the court's
determination of the original motion.  *Ricatto*, 2020 WL 2306480, at *2.
However, "[a] Rule 54(b) motion is not untimely under Local Rule 6.3" where,
as here, "the evidence upon which the motion is based is newly-discovered."
*Sys. Mgmt. Arts Inc.* v. *Avesta Techs., Inc.*, 160 F. Supp. 2d 580, 583 (S.D.N.Y.
2001); *see also JP Morgan Chase Bank, N.A.*, 2013 WL 12177061, at *3.

**b.    Newly Discovered Evidence Under the Law of the Case
Doctrine**

In order to establish that reconsideration is warranted under Rule 54(b)
due to newly discovered evidence, "a movant must demonstrate that [i] the
proffered evidence was unavailable despite the exercise of due diligence and
[ii] manifest injustice will result if a court does not reconsider its earlier
decision."  *JP Morgan Chase Bank, N.A.*, 2013 WL 12177061, at *3 (citing
*Rockland Exposition, Inc.* v. *All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d
288, 339 (S.D.N.Y. 2012); *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350
(S.D.N.Y. 2004)).  To demonstrate that the evidence was "unavailable despite
due diligence," a movant "must demonstrate that the evidence it seeks to admit

is in fact new, meaning he did not possess it at the time of the earlier decision and could not have obtained it despite his efforts to procure it." *Id.* And to establish manifest injustice, "a movant must demonstrate that the new evidence is 'of such importance that it probably would have changed the outcome' of the prior ruling." *Id.* (quoting *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 4501325, at *9 (S.D.N.Y. Sept. 29, 2011), *aff'd in part, vacated in part on other grounds, remanded sub nom. Vincent* v. *The Money Store*, 736 F.3d 88 (2d Cir. 2013)).

In determining whether reconsideration is warranted, "the Court may also consider [i] the timeliness of the motion, [ii] a tardy movant's explanation for not presenting the evidence earlier, and [iii] the potential prejudice to the opposing party which may result from granting the motion." *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 339. Furthermore, a motion for reconsideration pursuant to Rule 54(b) should be denied "if the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver." *Id.* at 340 (citing *In re Rezulin*, 224 F.R.D. at 352 ("Rule 54(b) motions may be denied where relief is sought on a basis which a party inadvertently failed to raise earlier or the interests of justice otherwise so require." (internal quotation marks and citation omitted))).

### 2.    Analysis

Plaintiff requests that the Court "reopen" the case against M. Shah and the LLC Defendants.  (Pl. Br. 1-2).  The LLC Defendants were dismissed from

this case by Opinion and Order dated July 27, 2016 (Dkt. #134), while

M. Shah's motion for summary judgment was granted by Opinion and Order

dated July 30, 2018 (Dkt. #236); by necessity, Plaintiff asks the Court for

reconsideration of these decisions.  Because the Court's 2016 Opinion

dismissing the LLC Defendants and the 2018 Opinion granting summary

judgment to M. Shah both "adjudicate[] some but not all of the claims at issue

in the suit," Plaintiff's motion to reopen "is governed by Rule 54(b)." *Rockland

Exposition, Inc.*, 894 F. Supp. 2d at 339 n.47.

As noted, courts usually will not grant a motion for reconsideration

unless there is "[i] an intervening change of controlling law, [ii] the availability

of new evidence, or [iii] the need to correct a clear error or prevent manifest

injustice." *Color Tile*, 322 F.3d at 167 (internal quotation marks and citation

omitted).  Plaintiff does not argue that there has been an intervening change of

controlling law, nor that reconsideration is needed to correct a clear error or

prevent manifest injustice.  (*See generally* Pl. Br.; Pl. Reply).  Instead, Plaintiff

argues that the "evidence adduced since the dismissal of the LLC Defendants

and the Court's grant of summary judgment to Mahendra Shah constitutes

ample grounds for reopening the case against those defendants under

Rule 54(b)." (Pl. Br. 23).  Aside from this single conclusory sentence, Plaintiff

advances no further arguments to explain why it meets the strict standard for

reconsideration of an interlocutory decision under Rule 54(b); instead, Plaintiff

focuses on establishing the elements of the claims it seeks to assert if its

motion is granted.  (*See generally* Pl. Br.; Pl. Reply).

25

### a.   Plaintiff's Purportedly "New" Evidence Is Not New

The Court begins by noting that it has already addressed the very transactions that Plaintiff now puts before it on summary judgment.  (*See* Nov. 19, 2018 Tr. 16 ("THE COURT:  But I've addressed this precise issue in the summary judgment.  And you never came back and said that I had misperceived the evidence.")).  Plaintiff does not specifically enumerate the evidence that it believes is newly discovered and justifies reconsideration under Rule 54(b).  (*See generally* Pl. Br.; Pl. Reply).  Instead, the Court has reviewed the record and determined that Plaintiff relies on the following evidence to assert that Jaina's 2014 transfers to the LLC Entities were not made to discharge an antecedent debt incurred via the Neminath Transactions:

i.   The deposition of M. Shah (*see, e.g.*, Pl. Br. 8; Vanjani Decl., Ex. 7);

ii.   Neminath's tax returns (*see, e.g.*, Pl. Br. 8; Vanjani Decl., Ex. 8-12);

iii.   Neminath's bank statements (*see, e.g.*, Pl. Br. 8; Vanjani Decl., Ex. 6);

iv.   Documents and deposition testimony obtained from Williston Park (*see, e.g.*, Pl. Br. 8-10; Vanjani Decl., Ex. 22-26, 29, 31, 34);

v.   The CLA, corresponding mortgage agreement, and other publicly available documents regarding the sale (*see, e.g.*, Pl. Br. 8-10; Vanjani Decl., Ex. 4-5);

vi.   Jaina's bank statements and other banking documents (*see, e.g.*, Pl. Br. 11-13; Vanjani Decl., Ex. 2-3, 16-17, 35, 43-44, 53, 55, 57);

vii.   Public records relating to the LLC Entities (*see, e.g.*, Pl. Br. 6-7; Vanjani Decl., Ex. 15, 19-21; Vanjani Reply Decl., Ex. A-D);

viii.      An unsworn statement made by, and documents produced by, A. Bose, Neminath's account (*see, e.g.*, Pl. Br. 5; Vanjani Decl., Ex. 13, 14; Vanjani Reply Decl., Ex. F); and

ix.      Documents obtained from NRM (*see, e.g.*, Pl. Br. 10-12; Vanjani Decl., Ex. 40, 46-50).[8]

Of the evidence just listed, everything — except for the information from Andrew Bose, documents from NRM, and certain of Jaina's bank records — was available at the time of Plaintiff's opposition to the summary judgment motions, and indeed much of it was put before the Court at that time. (*See* Pl. MSJ Opp. 19-21 (citing Neminath's tax returns, Jaina's bank statements, M. Shah's deposition transcript, and evidence obtained from Williston Park); Nov. 19, 2018 Tr. 17-18). *See also LaSalle Bank Nat'l Ass'n* v. *Capco Am. Securitization Corp.*, No. 02 Civ. 9916 (RLC), 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006) (explaining that publicly available documents are not considered new evidence because they are "discoverable through the exercise of reasonable diligence").

As to the remaining items of evidence, Plaintiff acknowledged to the Court that it opted not to pursue this evidence until more than a year after first becoming aware of these items (and their significance), and almost six months

---

[8]    Defendants object to Govind Vanjani's declaration in support of the instant motions (*see generally* Vanjani Decl.), arguing that it is an attempt to circumvent the Court's rule imposing a page limit on Plaintiff's brief, and that it contains improper argumentation and conjecture. (LLC Opp. 16; M. Shah Opp. 14-17). The Court declines to strike the Vanjani Declaration in whole or in part, but notes that it did not rely on any portions of the declaration that: "[i] are not based upon the affiant's personal knowledge, [ii] contain inadmissible hearsay[,] or [iii] make generalized and conclusory statements." *Hollander* v. *Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999).

after the Court's summary judgment decision.  (*See* Nov. 19, 2018 Tr. 12, 30-38).  Indeed, as noted above, Plaintiff conceded that it was a strategic choice to move forward with summary judgment rather than to pursue these avenues for further discovery.  (*Id.* at 12-13, 16-18; June 16, 2019 Tr. 7-9).

### b.   The Court Denies Plaintiff's Motion for Reconsideration of Its Dismissal of M. Shah

Turning first to Plaintiff's motion for reconsideration of the July 30, 2018 Opinion and Order granting summary judgment in favor of M. Shah, *see Geo-Group III*, 2018 WL 3632498, at *13-14, the Court finds that Plaintiff has demonstrated neither (i) that "the proffered evidence was unavailable despite the exercise of due diligence," nor (ii) that "manifest injustice will result if a court does not reconsider its earlier decision."  *JP Morgan Chase Bank, N.A.*, 2013 WL 12177061, at *3.

As an initial matter, none of the evidence that Plaintiff actually had at the time of its motion for summary judgment is "newly discovered," and indeed Plaintiff cited much of it in its opposition to summary judgment.  (Pl. MSJ Opp. 19-21).  *Accord Tri-Star Pictures, Inc.*, 1992 WL 296314, at *4 (noting that evidence in movant's possession at time of decision, especially when the same issue "was clearly before the Court," is not "newly discovered").  Conversely, the evidence that Plaintiff did not have in hand at summary judgment was obtainable, if only Plaintiff had exercised "due diligence."  After briefing its opposition to the summary judgment motions, Plaintiff obtained evidence from NRM and Andrew Bose, and acquired certain documents from Jaina's banks.  But, as noted above, Plaintiff knew about, and could have pursued and

28

obtained, all of this evidence before the close of fact discovery.  (*See* Nov. 19, 2018 Tr. 28, 30-38).

As one example, Plaintiff knew of Andrew Bose's identity and his role as Neminath's account and tax-preparer as far back as August 2017.  (M. Shah Dep. 165:23-166:3-6).  And prior to the close of fact discovery, Plaintiff had actually served subpoenas on Citibank, in an attempt to obtain records it had already identified as missing, but Plaintiff failed to follow up when Citibank's response was purportedly lost in the mail.  (Nov. 19, 2018 Tr. 38).  Plaintiff conceded that nothing prevented it from issuing a subpoena to NRM in 2016 or 2017, but instead blamed a "very cramped discovery period" for its failure to do so.  (*Id.* at 33).  Thus, although Plaintiff obtained evidence from NRM, Andrew Bose, and Jaina's banks after submitting its opposition to summary judgment, Plaintiff failed to demonstrate that it "could not have obtained [the evidence] despite [its] efforts to procure it," or that "the proffered evidence was unavailable despite the exercise of due diligence." *JP Morgan Chase Bank, N.A.*, 2013 WL 12177061, at *3.

Plaintiff's lack of diligence in pursuing the newly discovered evidence is sufficient cause in and of itself to deny Plaintiff's motion.  Nevertheless, the Court looks to other factors, such as "[i] the timeliness of the motion, [ii] a tardy movant's explanation for not presenting the evidence earlier, and [iii] the potential prejudice to the opposing party which may result from granting the motion," *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 339, all of which confirm the propriety of denial.

*First*, the timeliness of this motion weighs against Plaintiff, because as discussed above, Plaintiff delayed for more than a year from the date it first learned of the facts that prompted this motion.  *See, e.g.*, *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 341 (finding that a delay of 11 months "independently justifies denying the motion" for reconsideration).  *Second*, Plaintiff has provided no explanation for the delay.  (*See generally* Pl. Br.; Pl. Reply).  *See also Space Hunters, Inc.* v. *United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (summary order) (upholding a denial of reconsideration where the plaintiffs did not "provide a convincing explanation as to why they could not have obtained" the evidence sooner).  Instead, Plaintiff conceded that its decision not to pursue this discovery was a strategic one, grounded in an ultimately mistaken belief that it had obtained sufficient evidence to raise a disputed issue of material fact as to M. Shah at summary judgment.  (Nov. 19, 2018 Tr. 18; June 26, 2019 Tr. 7-9).  *Third*, as to prejudice, the parties have litigated this case for several years, and although this is partly due to M. Shah's own dilatory tactics, the Court cannot say that reopening the case as to M. Shah on a motion filed more than a year after he was dismissed from the case would cause him no prejudice.  (*See* M. Shah Opp. 2).  But although the prejudice as to M. Shah might not be extensive, Plaintiff's lack of diligence and "the interests of finality," *Colvin*, 900 F.3d at 71, weigh strongly against granting reconsideration. Indeed, because Plaintiff's "decision not to file the Rule 54(b) motion until after summary judgment was entered against it … was a strategic one[,] [d]enying [Plaintiff] yet another bite at the apple because this strategy ultimately failed

certainly cannot be characterized as manifestly unjust[.]" *Color Tile*, 322 F.3d at 168.

Finally, the Court notes that Plaintiff has not established that reconsideration is warranted to prevent manifest injustice. The purportedly new evidence offered by Plaintiff is not "'of such importance that it probably would have changed the outcome' of the prior ruling." *Vincent*, 2011 WL 4501325, at *9 (quoting *United States* v. *Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)). In granting summary judgment to M. Shah, the Court noted that (i) it did "not understand the factual record to support a finding that M. Shah personally benefitted from the challenged transfers," and (ii) the NYDCL does "not provide a remedy against the transferor or against one who orchestrates fraudulent transfers without being either a beneficiary or transferee thereof." *Geo-Group III*, 2018 WL 3632498, at *13 (citing *BBCN Bank* v. *12th Ave. Rest. Grp. Inc.*, 55 N.Y.S.3d 225, 226 (2017)). Although Plaintiff's new evidence, if true, adds credence to the claim that M. Shah "aided and abetted" allegedly improper transfers, *id.*, none of the purportedly new evidence alters that Court's conclusion that:

> the record does not reflect that M. Shah was himself the recipient of any funds transferred to ... the LLC Entities, ... or that any funds were subsequently given to him by these transferees. Nor does the record show that any of these transfers was made to satisfy personal debts or expenses that M. Shah owed, thereby affording him an indirect financial benefit.

*Id.*

###    c.    The Court Denies Plaintiff's Motion for Reconsideration
of Its Dismissal of the LLC Defendants

Because the LLC Defendants were dismissed in 2016, before the Court

endorsed any schedule for discovery, *see Geo-Group II*, 2016 WL 4098552, at

\*5-7, all of the evidence discussed above is technically "newly discovered" as to

those entities.   However, other important factors, including "[i] the timeliness of

the motion, [ii] a tardy movant's explanation for not presenting the evidence

earlier, and [iii] the potential prejudice to the opposing party which may result

from granting the motion," *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 339,

all weigh heavily against granting a motion for reconsideration as to the LLC

Defendants.

*First*, Plaintiff delayed an unreasonable amount of time in bringing a

motion for reconsideration of the Court's July 2016 dismissal of the LLC

Defendants.   Plaintiff states that it first learned of the key fact that motivates

this motion — that "neither Jaina nor Neminath paid Neminath's [CLA] debt

until Neminath sold its 235 Hillside Avenue property in January 2016" — at

M. Shah's deposition on August 11, 2017.   (Pl. Br. 8).   But Plaintiff waited until

its October 19, 2018 letter regarding a settlement with V. Shah — a delay of

more than 14 months — to even hint at its intention to pursue reopening the

case as to the LLC Defendants.   (*See* Dkt. #240).   And Plaintiff did not formally

request such relief until November 2018.   (Dkt. #248).   What is more, despite

having this ostensibly critical new evidence well before summary judgment

practice began, Plaintiff only notified the Court of its intention to seek

reconsideration after the majority of the other Defendants had been dismissed

from the case (Dkt. #236), and after its efforts to settle with the lone remaining Defendant, V. Shah, had fallen through (Dkt. #245, 250). Courts asked to reconsider dispositive motions after comparable delays have routinely, and appropriately, denied such motions. *See, e.g.*, *Pub. Emps. Ret. Ass'n of N.M.* v. *PricewaterhouseCoopers LLP*, 305 F. App'x 742, 745 (2d Cir. 2009) (summary order) (affirming dismissal of motion for reconsideration brought a year after motion to dismiss granted); *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 341 (finding that where movant "waited eleven months between obtaining the [evidence] and filing the instant motion for reconsideration" the ensuing "delay alone independently justifies denying the motion."); *Aini* v. *Sun Taiyang Co.*, 174 F.R.D. 327, 330 (S.D.N.Y. 1997) (characterizing an eight-month delay as "extraordinary"); *cf. Vicuna*, 298 F. Supp. 3d at 434 (finding delay of one month between discovering new evidence and motion for reconsideration to be reasonable).

*Second*, the lack of a satisfactory explanation for the delay weighs against Plaintiff. In its motion papers, Plaintiff offers no explanation for its delay whatsoever. (*See generally* Pl. Br.; Pl. Reply). In other statements to the Court, Plaintiff's only excuse has been that "up until the settlement meeting of October 10[,] [Plaintiff's] intention had been to ask [the Court] to simply make any final judgment without prejudice to the 660,000-dollar issue as respects the LLC defendants," and to sue both Chand and the LLC Defendants

33

elsewhere.  (Nov. 19, 2018 Tr 12-13; *see also id.* at 14-15).[9]  But a change of strategy after an unsuccessful opposition to summary judgment and an unsuccessful attempt at obtaining cooperation from a putative co-Defendant does not justify reconsideration.  Furthermore, Plaintiff conceded that its decision to forgo a motion to reopen as to the LLC Defendants was strategic one.  (Loree Quash Decl. ¶ 6).  *Accord Color Tile*, 322 F.3d at 168 (denying reconsideration because plaintiff made a strategic decision to wait until after summary judgment to move for reconsideration).

*Third*, the "added weight, if any," of new evidence "is more than outweighed by the prejudice [Respondents] would suffer from having [Plaintiff's] claims reinstated against [them] more than 18 months after they were dismissed with prejudice."  *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007), *aff'd sub nom Pub. Emps. Ret. Ass'n of N.M.*, 305 F. App'x 742 (2d Cir. 2009) (summary order).  This is because, after the LLC Defendants were dismissed, "[they] had no motive to, and did not, participate in the vast

---

[9]     Plaintiff proclaimed that its reason to forgo reopening as to the LLC Defendants was that it planned to bring a separate suit against the LLC Defendants all along.  (*See* Loree Quash Decl. ¶¶ 6-7; Nov. 19, 2018 Tr. 14-15).  To do so, however, Plaintiff would need to have the Court reconsider its July 20, 2016 Opinion dismissing the LLC Defendants with prejudice, and have the Court order dismissal without prejudice. (Nov. 19, 2018 Tr. 14.)  Yet Plaintiff failed even to mention this purported plan until more than two years after the Court's decision, at the November 19, 2018 conference:

> THE COURT: ... I also wonder why you could not have told me at any point prior to the fall of 2018 that my prior decisions in 2016 and 2017 should have been without prejudice because the orders — the decisions themselves would seem to suggest that the dismissals of the LLC defendants were with prejudice; is that not correct?

> MR. LOREE:  That is correct.

(*Id.*).

discovery then undertaken." *Id.* Granting reconsideration to reopen litigation against the LLC Defendants would require a virtual re-do of discovery, essentially bringing this case back to square one.

Additionally, Plaintiff previously disclaimed, in a sworn affidavit submitted to this Court, an intent to reopen the case against the LLC Defendants. Specifically, in Plaintiff's reply to Williston Park's motion to quash, Plaintiff represented that:

> Geo-Group's goal in subpoenaing Williston Park Realty LLC, and opposing the motion to quash, is not to ask [that] the Court reopen the case against the LLC [Defendants] or to name Sanjiv Chand as a defendant. It is too late for that, as the discovery cut-off has passed and this case is moving forward to trial.

(Loree Quash Decl. ¶ 6). Although this representation was not made in a motion adverse to the LLC Defendants, it still demonstrates that Plaintiff "had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver." *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 340. Thus, although the representation did not directly prejudice the LLC Defendants at the time of Williston Park's motion to quash, the Court ultimately relied on Plaintiff's representation in denying the motion to quash. (Dkt. #187). It would not have been unreasonable for the LLC Defendants to rely on a statement Plaintiff's counsel made in a sworn declaration to the Court, especially when Plaintiff sought no discovery from

them while pursuing discovery from other third parties related to the Neminath

Transactions and sale of the Building.[10]

## B.    The Court Denies Plaintiff's Motion to File a Fourth Amended Complaint

### 1.    Applicable Law

Federal Rule of Civil Procedure 15(a)(2) states that a party may amend its

pleadings more than once "only with the opposing party's written consent or

the court's leave."  Although "[l]eave to amend should be freely granted"

pursuant to Rule 15(a)(2), this Court "'has the discretion to deny leave if there

[is] a good reason for it, such as futility, bad faith, undue delay, or undue

prejudice to the opposing party.'"  *In re Arab Bank, PLC Alien Tort Statute Litig.*,

808 F.3d 144, 159 (2d Cir. 2015) (quoting *Jin* v. *Metro. Life Ins. Co.*, 310 F.3d

84, 101 (2d Cir. 2002)), *as amended* (Dec. 17, 2015); *see also Foman* v. *Davis*,

371 U.S. 178, 182 (1962) (analyzing the standard for a post-judgment motion

to amend).

However, where "'a scheduling order governs amendments to the

complaint,' and a plaintiff wishes to amend after the deadline to do so has

passed, the plaintiff must show good cause to modify the deadline under

---

10    The LLC Defendants and Chand ask the Court to find that Plaintiff is bound by the statements made by its counsel in opposition to Williston Park's motion to quash.  (LLC Opp. 14-15).  Because Chand and the LLC Defendants were not directly prejudiced by Plaintiff's representations in its opposition to the Motion to Quash (because they were not actually litigants in the case at that time), the Court will not deny Plaintiff's motion on these grounds.  *See DeRosa* v. *Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) ("[L]imit[ing] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." (internal quotation marks and citation omitted)).  But as noted above, the Court considers this evidence in elucidating Plaintiff's diligence and intentions, and in weighing the prejudice to Chand and the LLC Defendants.

Rule 16." *BPP Illinois, LLC* v. *Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (quoting *Holmes* v. *Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)).[11] "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes*, 568 F.3d at 335 (quoting *Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)).  Indeed, a court "may deny leave to amend for lack of diligence even if amendment would not prejudice the non-movant."  *Suarez* v. *California Nat. Living, Inc.*, No. 17 Civ. 9847 (VB), 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019) (citing *Gullo* v. *City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order)).

### 2.    Analysis

Plaintiff seeks to file a fourth amended complaint in order to add Sanjiv Chand as a Defendant,[12] as well as to add and amend certain claims against M. Shah and the LLC Defendants.[13]  (*See* Pl. Br. 23).  Where Plaintiff's "claims

---

[11]    Fed. R. Civ. P. 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  Under the operative case management plan, the deadline to seek leave to modify was September 30, 2016.  (*See* Dkt. #139).

[12]    Plaintiff appears to have moved to add Chand under both Rules 20 and 21.  (Pl. Br. 1). "Rule 21, which governs misjoinder and non-joinder of parties, does not apply unless plaintiff is unable to satisfy the prerequisites of permissive joinder under Rule 20(a)." *Cline* v. *1-888-Plumb. Grp., Inc.*, No. 99 Civ. 1401 (RJW), 2000 WL 342689, at *1 (S.D.N.Y. Mar. 30, 2000).  There are two prerequisites to permissive joinder: "First, a right to relief must be asserted against each defendant relating to or arising out of the same transaction or occurrence.  Second, there must exist some question of law or fact common to all the parties that will arise in the litigation."  *Id.*  The parties do not address whether Chand meets the prerequisites for joinder under Rule 20(a).  Because, as noted below, Plaintiff is unable to demonstrate "good cause" to amend, and because Chand would be prejudiced by allowing Plaintiff to amend to add him, the Court need not address whether the prerequisites are met.  However, the Court notes that the fraudulent conveyance claims against Chand arise from the Neminath Transactions and the sale of the Building; thus, permissive joinder with other claims for fraudulent conveyance arising out of those same transactions would appear to meet the standard.

[13]    Under Rule 15(d), a party may "supplement its complaint in order to present facts and claims that arose after the operative complaint was filed."  *Kleeberg* v. *Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).  "[T]he analysis used to determine whether supplementation

against [respondent] were previously dismissed with prejudice," and Plaintiff

"purport[s] to ... request under Fed. R. Civ. P. 15(a)" to amend the complaint

based on "new evidence," the Court may "construe plaintiffs' request as a

motion under Fed. R. Civ. P. 54(b)." *In re Bisys Sec. Litig.*, 496 F. Supp. 2d at

386. As discussed above, Plaintiff failed to meet the standard for

reconsideration under Rule 54(b) as to either M. Shah or the LLC Defendants.

*Accord Pub. Emps. Ret. Ass'n of N.M.*, 305 F. App'x at 744-45 (affirming

rejection of motion for reconsideration styled by movants as a motion to amend

under both Rule 54(b) and Rule 15(a)).

Considering the motion to amend under Rules 15(a) and 16(b)(4), the

Court notes that "[w]hen a party files a motion to amend after the pleading

deadline set forth in the scheduling order," as Plaintiff has done here, "'the

lenient standard under Rule 15(a) ... must be balanced against the requirement

under Rule 16(b) that the Court's scheduling order shall not be modified except

upon a showing of good cause.'" *Scott* v. *Chipotle Mexican Grill, Inc.*, 300 F.R.D.

193, 197 (S.D.N.Y. 2014) (alteration in original) (quoting *Holmes*, 568 F.3d at

334-35). Although Plaintiff does not explain why it believes it has met the

standard to amend under Rules 15 and 16, the Court construes Plaintiff's

argument to be that new evidence provides good cause. (*See* Pl. Br. 23). But,

---

is appropriate under Rule 15(d) is identical to the analysis used to determine whether
amendment is appropriate pursuant to Rule 15(a)." *Id.* Plaintiff seeks to supplement
the complaint to add a claim against M. Shah for fraud on the Court. (Pl. Br. 1).
Because the Court declines to grant Plaintiff's motion for reconsideration as to M. Shah,
the Court need not address Plaintiff's motion to supplement the complaint against
M. Shah, as he is no longer a party to this litigation.

as discussed extensively above, Plaintiff waited 14 months from when it discovered the new evidence to notify the Court of its intent to bring this motion.  *Accord Lowry* v. *Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (summary order) ("Lowry offers no good cause for his delay in filing an amended complaint....  [H]e did not seek to amend his complaint until five months after the new evidence surfaced.  Discovery had closed, and a motion for summary judgment was pending."); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (explaining that courts "ha[ve] discretion to deny leave [to amend] for good reason, including futility, bad faith, *undue delay*, or undue prejudice" (emphasis added)).  Because Plaintiff fails to demonstrate "good cause" for its unreasonable delay, Plaintiff's motion to file a fifth complaint is denied.

Although Plaintiff failed to offer good cause to amend, the Court notes, in the interest of completeness, that allowing Plaintiff to file an amended complaint at this stage in litigation would prejudice Respondents.  In gauging prejudice, courts in this Circuit consider, among other factors, "whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  *Ruotolo* v. *City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Here, when Plaintiff finally requested leave to file the instant motion (Dkt. #248), several motions to dismiss and for summary judgment had been heavily litigated and decided (Dkt. #102, 134, 236), a trial date and trial

schedule had been set, and the trial itself was a scant two months away (Dkt. #249).

　　After five years of litigation, Plaintiff seeks to add a completely new party to the litigation; to add three parties that have not participated in discovery (indeed, that have not been in the litigation for four years); and to assert new fraud-on-the-court claims that arise out of conduct post-dating the initiation of this lawsuit.  The injection of these new parties and claims will require extensive additional discovery, and will prejudice those parties that were not participants in the extensive discovery and litigation that has occurred over the past four years.  *See In re Bisys Sec. Litig.*, 496 F. Supp. at 386 (holding that to grant a motion to amend brought more than a year after dismissal would prejudice respondent because, after dismissal, respondent "did not, participate in the vast discovery then undertaken"); *accord State Teachers Ret. Bd.* v. *Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery").

　　Nor can denial of Plaintiff's motion to amend a fourth time be said to cause manifest injustice.  *See Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. 2020) (explaining that plaintiffs "were afforded and availed themselves of three opportunities — beyond the original complaint — to state a claim" and that therefore the "denial of the post-judgment motion [to

amend]" did not "cause any injustice, manifest or otherwise; four bites at the apple is more than enough."). And as to Chand and the LLC entities, in September 2017, Plaintiff specifically foreswore pursuing claims against them in this case:

> Geo-Group's goal in subpoenaing Williston Park Realty LLC, and opposing the motion to quash, *is not to ask the Court [to] reopen the case against the LLC Entities or to name Sanjiv Chand as a defendant. It is too late for that, as the discovery cut-off has passed and this case is moving forward to trial.* A good deal of the events implicating Mr. Chand occurred after the commencement of this action, and Mr. Chand has actively concealed his involvement in this matter from the beginning and is continuing to attempt to conceal it. If it turns out to be warranted and necessary Geo-Group may commence proceedings against Mr. Chand, and/or entities owned or controlled by him.

(Loree Quash Decl. ¶ 6 (emphasis added)). Plaintiff had ample opportunity to name Chand as a defendant, to seek discovery from Chand and the LLC Defendants before the close of fact discovery, and to litigate the claims against M. Shah on summary judgment (which it did). Given Plaintiff's delay, its failure to pursue new evidence (be it inadvertent or strategic), the potential prejudice to Respondents, Respondents' and the Court's interest in finality, and the Court's interest in judicial economy, Plaintiff's motions for reconsideration, to add a new party, and to file a fourth amended complaint will be denied.[14]

---

[14]     The Court acknowledges that Plaintiff notified the Court that it believed the statute of limitations on Plaintiff's first fraudulent conveyance claim (for the August 13, 2014 $200,000 payment from Jaina) was likely extinguished on August 13, 2020. (Dkt. #276, 277). The Court first notes that if it had the power to toll the statute of limitations, the Court would find that the disruption occasioned by the COVID-19 pandemic would warrant such action. However, the Court also notes that even if the Court tolled the statute of limitations for this claim, Plaintiff would still be barred from pursuing claims against the LLC Defendants and M. Shah because their dismissals

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reopen the case as to 728 Melville Petro LLC, Kedis Enterprises LLC, JMVD Hillside LLC, and Mahendra Shah is DENIED; Plaintiff's motion to join Sanjiv Chand is DENIED; and Plaintiff's motion to file a Fourth Amended Complaint is DENIED. The Clerk of Court is directed to terminate the motions pending at docket entries 272 and 276.

The parties remaining in the case are directed to submit a joint letter to the Court on or before **October 23, 2020**, discussing their availability for trial in the second half of 2021 and, as appropriate, any interest in alternative dispute resolution of this matter.

The Clerk of Court is directed to mail a copy of this Opinion and Order to Defendants Vipin Shah and Mahendra Shah.

SO ORDERED.

Dated:      September 25, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

were on the merits and with prejudice. *See Nemaizer* v. *Baker*, 793 F.2d 58, 60 (2d Cir. 1986). Plaintiff never actually made a motion requesting that the Court reconsider its July 27, 2016 decision dismissing the LLC Defendants in order to make it one without prejudice. But even if it had moved for reconsideration on these grounds back in November 2018 when it first notified the Court of its interest in doing so (*see* Nov. 19, 2018 Tr. 14), Plaintiff still would have delayed an unreasonably long time with no explanation for the delay, meriting denial of its motion. *See, e.g., Rockland Exposition, Inc.* v. *All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 341 (S.D.N.Y. 2012) (finding that delay of 11 months merited denial of motion for reconsideration).