# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made this 1st day of July, 2021 (the "Effective Date"), by and among Vipin Bhogilal Shah ("V. Shah") and Nayana Vipin Chandra Shah ("N. Shah") Geo-Group Communications, Inc. ("GCI") The parties to this agreement may each be referred to as a "Party," and collectively as the "Parties."

**WHEREAS**, GCI filed a lawsuit against various defendants, including V. Shah, in the United States District Court for the Southern District of New York, captioned *Geo-Group Communications, Inc. v. Chopra, et al.* (Case No. 15-cv-1756 (KPF) (the "Action");

**WHEREAS**, the only remaining defendant in the Action is V. Shah;

**WHEREAS**, this Agreement shall not be effective until it has been approved by a final, non-appealable order entered in the bankruptcy case styled: *In Re Nayana Vipin Chandra Shah and Vipin Bhogilal Shah*, No. 17-70293 (REG) (E.D.N.Y. Bankr.) (Chapter 7) (the "V. Shah Bankruptcy") and in the following Adversary Proceedings pending against V. Shah in the same bankruptcy court: Geo-Group Communications, Inc. v. Vipin Bhogilal Shah and Mahendra Shah, No. 17-08129-reg (E.D.N.Y. Bankr.); and Geo-Group Communications, Inc. v. Mahendra B. Shah and Vipin Bhogilal Shah, No. 17-08128-reg (E.D.N.Y. Bankr.);

**WHEREAS**, the Parties desire to avoid further litigation and limit any further costs and expenses relating thereto and have come to a full, final, and complete settlement and satisfaction of the Action and all claims filed and that could have been filed within the Action;

**NOW, THEREFORE**, the Parties hereto agree to resolve their disputes and the Actions in accordance with the following terms and conditions:

1. **SETTLEMENT TERMS.** V. Shah and N. Shah agree to the following settlement terms.

(a) **PAYMENT BY V. SHAH TO GCI**. Within three business days of the Effective Date of this Agreement, V. Shah shall cause fifty-thousand dollars ($50,000.00) (the "Settlement Amount") to be paid to the client trust account of Mandel Bhandari LLP ("MB LLP"). MB shall pay $50,000 to GCI no later than five business days after approval of this Settlement Agreement by the Bankruptcy Court.

(b) **PROVISION OF DOCUMENTS AND INFORMATION.**

   i. V. Shah and N. Shah shall produce all documents and electronically-stored information (collectively, "documents") in the following categories in their possession, custody, or control (including documents in the possession, custody, or control of Neminath Inc. ("Neminath"), 235 Hillside LLC ("235 Hillside"); Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure"), and Ipsita Telecom Services, Inc. ("Ipsita"):

- Documents concerning the 2013 loan of $600,000 from Kedis LLC ("Kedis") to Neminath.
- Documents concerning the sale of 235 Hillside Avenue by Neminath.
- Documents concerning the $1,000,000 Citibank loan, which is reflected in PX 45.
- A list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021.
- Documents concerning the $6,740,198 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2013 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $6,740,198.
- Documents concerning the $2,213,217 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2015 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $2,213,217.
- All invoices concerning the 2014 sales of $39,044,012 shown on Line 1c of Jaina's 2014 tax return (Form 1120).
- A list of all bank accounts (by bank name and last four digits of account number) used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015.
- Documents concerning payables to Jaina's creditors, between 2013 and 2015.
- Fully cooperate with any good faith effort by GCI to obtain tax records (including tax returns and all schedules and any 1099 forms filed by Jaina) for Jaina for tax years 2013 through 2020.; including to the maximum extent allowed by law, signing third-party authorizations allowing GCI to obtain the tax records directly from the IRS.
- A Quickbooks general ledger for Jaina for the periods 2013 through 2015.
- A list of the Names of any individuals or entities that loaned money to Jaina between 2013 and 2015.
- Documents concerning paid-in capital by individuals or entities (additions and withdrawals) as reflected in line item 23 of Schedule L form 1120 for the period between 2011 and 2015.

ii. The production of documents and information pursuant to this Agreement shall be supervised, managed and conducted by Mandel Bhandari LLP, 80 Pine Street, 33rd Floor, New York, New York 10005, counsel for V. Shah and N. Shah. In producing documents and information, V. Shah and N. Shah shall be subject to the same obligations that they would have were they producing documents to an adversary in a civil action pending in the United States District Court for the Southern District of New York (the "S.D.N.Y."). Mandel Bhandari shall supervise, manage and conduct the production of documents with the same degree of professionalism, candor, and ethics as they would supervise, manage, and conduct the production of documents and information in a civil action pending in the S.D.N.Y.

iii. In order to satisfy their obligations to provide all documents in their possession, custody, or control, V. Shah and N. Shah shall conduct the following searches:

- a. Conduct a search of any buildings located at 235 Hillside Avenue, Williston Park, NY 11596 that V. Shah or N. Shah have access to or or can legally obtain access to.
- b. Conduct a search of their home.
- c. A search of all electronic devices owned by V. Shah, N. Shah, 235 Hillside LLC, Jaina, Jaina Infrastructure, Ipsita or Neminath, that are in the possession, custody, or control of V. Shah or N. Shah.
- d. Conduct a search of any premises used by 235 Hillside LLC, Jaina, Jaina Infrastructure, Inc., Ipsita Telecom Services Inc. or Neminath to conduct business.

iv. In searching for ESI on electronic devices, V. Shah and N. Shah shall use the word searches attached as Appendix One to this Agreement. Mandel Bhandari shall keep, and share with GCI on request, a log of all word searches conducted, the devices on which the searches were conducted, the dates on which the searches conducted and number of hits each search yielded.

v. After conducting the searches detailed in paragraphs 1(b)iii and 1(b)iv, above, V. Shah and N. Shah shall produce all responsive documents within 60 days of the Effective Date of this Agreement.

vi. Within 30 days of the final production of documents, V. Shah shall appear for an interview conducted by Govind Vanjani and GCI's attorney to discuss (x) the documents and information requested above; and (y) Jaina's finances (including without limitation the disposition or transfer of any of Jaina's assets by any person). V. Shah will answer questions truthfully and in good faith, but it will not be transcribed by a court reporter or recorded by audio or video. The interview will not last for more than seven hours (exclusive of breaks).

vii. GCI and Govind Vanjani shall not publicly disclose any statements made in the interview by V. Shah except with the express written permission of V. Shah. V. Shah shall not publicly disclose any statements made by GCI  Govind Vanjani without the express written permission of GCI or Govind. Notwithstanding the foregoing, nothing in this agreement shall prohibit disclosure if compelled by legal process or an order of a court of competent jurisdiction. If such a request is made, the parties agree to provide prompt written notice of such request to all other parties to this agreement. GCI and Govind Vanjani, and N. Shah and V. Shah, may use the information obtained from the interview for any lawful purpose, provided they do not publicly reveal the source of that information, and provided that they do not use

the information to assert any claim against V. Shah, N. Shah, GCI, or Govind Vanjani (other than a claim based on a breach of this Agreement). GCI and Govind Vanjani, and N. Shah and V. Shah, may use the documents and information obtained from the production of documents made pursuant to this agreement for any lawful purpose, provided that they do not use those documents or that information to assert any claim against V. Shah, N. Shah, GCI, or Govind Vanjani (other than a claim based on a breach of this Agreement).

2. **GENERAL MUTUAL RELEASES.**

(a) <u>Release by GCI</u>. Effective upon receipt of the Settlement Amount, GCI on its own behalf and on behalf of its predecessors, successors, administrators, shareholders, directors, trustees, officers, agents, employees, representatives, attorneys, parents, affiliates, divisions, subsidiaries and assigns (collectively, the "GCI Releasors") hereby irrevocably and unconditionally releases, covenants not to sue, acquits and forever discharges V. Shah and N. Shah and their agents, employees, representatives, attorneys, children, and assigns (collectively, the "Shah Releasees") from any and all actions, claims, causes of action, suits, debts, dues, costs, expenses, sums of money, accounts, controversies, agreements, promises, injunctive relief, fees, contracts, trespasses, damages, and demands whatsoever, in law and/or in equity, whether known or unknown, matured or unmatured, absolute or contingent, or liquidated or unliquidated, which the GCI Releasors ever had, now have, or hereafter can, shall or may have against the Shah Releasees, for, upon, or by reason of any matter, cause, event, transaction, occurrence, or thing whatsoever from the beginning of the world to the Effective Date, **provided that claims relating to the breach or performance of this agreement are not released and are expressly preserved**. GCI acknowledges that it may hereafter discover facts different from or in addition to those which it now knows or believes to be true, and GCI agrees that, in such event, this Agreement shall nevertheless remain in full force and effect in all respects, notwithstanding such different or additional facts, or the discovery thereof.

(b) <u>Release by Shah Releasees</u>. Effective upon execution of this agreement, the Shah Releasees hereby irrevocably and unconditionally release, covenant not to sue, acquit and forever discharge the GCI Releasors from any and all actions, claims, causes of action, suits, debts, dues, costs, expenses, sums of money, accounts, controversies, agreements, promises, injunctive relief, fees, contracts, trespasses, damages, and demands whatsoever, in law and/or in equity, whether known or unknown, matured or unmatured, absolute or contingent, or liquidated or unliquidated, which the Shah Releasees ever had, now have, or hereafter can, shall or may have against the GCI Releasors, for, upon, or by reason of any matter, cause, event, transaction, occurrence, or thing whatsoever from the beginning of the world to the Effective Date, **provided that claims relating to the breach or performance of this agreement are not released and are expressly preserved**. The Shah Releasees acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true and Shah Releasees agree that, in such event, this Agreement shall nevertheless remain in full force and effect in all respects, notwithstanding such different or additional facts, or the discovery thereof.

3. **PERPETUAL AGREEMENT**. This Agreement shall continue perpetually and shall be binding on and inure to the benefit of the Parties and their respective successors and assigns. The parties respectfully request that the Court and Federal District Court Judge in the Action retain jurisdiction for purposes of enforcing this agreement and any disputes arising from it, and understand that the Court in the Action is retaining jurisdiction for that purpose.

4. **COSTS/FEES.** Each Party shall bear its own costs and attorneys' fees incurred in connection with the Actions and the preparation and execution of this Agreement.

5. **WRITTEN NOTICE**. Any notice required to be given by this Agreement shall be given in writing to the other Party both via email and first-class mail, or by overnight courier, at its addresses shown below, and shall be effective upon delivery. Either Party may change its address by providing written notice to the other Party. Counsel for the parties are authorized to give notice.

**If to V. Shah or N. Shah:**
Mandel Bhandari LLP
c/o Rishi Bhandari
80 Pine Street, 33rd Floor
New York, New York 10005
rb@mandelbhandari.com
Telephone: (212) 269-5600

**If to GCI :**
Philip J. Loree Jr.
The Loree Law Firm
800 Third Avenue
28th Floor
New York, New York 10022
+1 (516) 627-1720 (landline)
PJL1@LoreeLawFirm.com

6. **NO ADMISSIONS**. This Agreement is entered into in order to compromise and settle disputed claims, without any admission or acquiescence on the part of any Party as to the merit of any claim, defense, affirmative defense, counterclaim, liabilities or damages. This Agreement shall not constitute or operate as an acknowledgment or admission of any kind by a Party that it has violated any federal, state, local or municipal law, statute or regulation or breached any common law or other legal obligation or duty.

7. **MODIFICATION**. This Agreement may be modified or amended only by a written instrument signed by the Parties hereto.

8. **GOVERNING LAW; JURISDICTION.** The laws of the State of New York will govern the validity, construction, and performance of this Agreement, without regard to the conflict of law principles thereof. The Parties agree to the exclusive jurisdiction of the United States District Court for the Southern District of New York for the resolution of all disputes arising

under this Agreement.

9. **EQUITABLE RELIEF.**
   (a) <u>Acknowledgment of Irreparable Harm</u>**.** <u>Each party acknowledges that their breach or threatened breach of their obligations under this agreement would result in irreparable harm to the other party that cannot be adequately relieved by money damages alone.</u>

   (b) Intent to Allow for Equitable Remedies. Accordingly, the parties hereby acknowledge their mutual intent that after any breach of the obligations listed in paragraph 1(b), the non-breaching party may request any applicable equitable remedies from a court, including injunctive relief and specific performance, without the need for that party to post any security.

10. **CONSTRUCTION**. Whenever possible, each provision of this Agreement will be interpreted so that it is valid under the applicable law. If any provision of this Agreement is to any extent declared invalid by a court of competent jurisdiction under the applicable law, that provision will remain effective to the extent not declared invalid. The remainder of this Agreement also will continue to be valid, and the entire Agreement will continue to be valid in other jurisdictions.

11. **WAIVERS**. No failure or delay by any Party hereto in exercising any right or remedy under this Agreement will waive any provision of the Agreement. Nor will any single or partial exercise by any Party of any right or remedy under this Agreement preclude either of them from otherwise or further exercising these rights or remedies, or any other rights or remedies granted by any law or any related document.

12. **ENTIRE AGREEMENT**. This Agreement supersedes all previous and contemporaneous oral negotiations, commitments, writings and understandings between the Parties concerning the matters in this Agreement.

13. **REVIEW OF THE AGREEMENT WITH COUNSEL**. All signatories to this Agreement hereby acknowledge, represent and warrant that they have read this Agreement in its entirety and, prior to the execution hereof, have had the opportunity to discuss this Agreement and the mutual releases contained herein, including the effect thereof, with counsel of their own choosing.

14. **AUTHORIZED REPRESENTATIVE**. The undersigned duly warrant that they are authorized to execute this Agreement and bind their respective parties and interests in accordance with the terms set forth herein. The undersigned further warrant that, with the benefit of legal counsel, they have read the foregoing Agreement, voluntarily accept its terms, and understand it fully.

15. **COUNTERPARTS; FACSIMILE SIGNATURES**. The Parties agree that this Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original for all purposes. All such counterparts shall together constitute one and

the same instrument. This Agreement may be executed by electronic or facsimile signatures and such signatures shall be deemed to bind each Party as if they were original signatures.

*[Remainder of Page Intentionally Left Blank - Signature Page to Follow]*

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement and Mutual Release and agree to be bound by its terms and provisions.

**Geo-Group Communications, Inc.**

By: _____
Title:  President

**Vipin Bhogilal Shah**

By:  _____*/s/ VBShah/*_____

**Nayana Vipin Chandra Shah**

By:  _____*/s/ Nayana v shah/*_____

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement and Mutual Release and agree to be bound by its terms and provisions.

**Geo-Group Communications, Inc.**

By: _____/s/_____

Title: President

**Vipin Bhogilal Shah**

By: _____/s/ B Shah_____

**Nayana Vipin Chandra Shah**

By: _____Nayana v Shah_____

**Appendix One to the Agreement Made on July 1, 2021, by and among Vipin Bhogilal Shah and Nayana Vipin Chandra Shah, and Geo-Group Communications, Inc.**

**Search Terms**

Kedis
"JMVD Hillside"
"728 Melville"
"235 Hillside" /s (sell! or sale or sold or purchase! or buy or buyer)
"Williston Park Realty"
Chand
Troy
Ramirez
Bose
"1414 Hillside"
Mariana
(Jaina and receivabl!)
(Jaina and invoice)
(Jaina and Chopra)
(Jaina and "trade note!")
(Ipsita and "35 Smith")
(Jaina and "payable")
(Jaina and 1099)
(Jaina and Quickbooks)
(Jaina and "general ledger")
(Jaina and loan)
(Jaina and "capital contribution")
(Jaina and "paid-in capital")
(loan and ("$1,000,000" or "one million"))
(Jaina and transfer)
(Jaina and ("Geo-Group" or GCI))
(loan and "$600,000")
(Neminath and (Jaina or Ipsita or "235 Hillside"))
(Jaina and ("NYC Telecommunications" or "NYC Telecom"))
(Chopra and (NYC Telecommunications" or "NYC Telecom")
(Chopra and STI)
 (Jaina and (STI or "NYC Telecom" or "NYC Telecommunications")