# THE LOREE LAW FIRM

PHILIP J. LOREE JR

May 3, 2022

**VIA ECF and EMAIL**

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re: Geo-Group Communications, Inc. ("GCI") v. Shah, et. al., No. 15 Civ. 1756 (KPF) | Letter Motion Seeking an Order Directing V. Shah and N. Shah to Comply with the Settlement Agreement

Dear Judge Failla:

We represent plaintiff Geo-Group Communications, Inc. ("GCI") in the referenced matter.

As discussed in Dks. 335 and 340, a dispute has arisen concerning enforcement of the Settlement Agreement (the "Agreement") between Defendant Vipin Shah ("V. Shah") and his spouse, Nayana Shah ("N. Shah") and the parties have engaged in extensive correspondence and negotiations in an effort to resolve the dispute, including an April 4, 2022, proposal that the Shahs have not accepted. (See Exs. A-D, F.) (In a telephone conference earlier today, counsel for the Shahs indicated a willingness to continue to consider GCI's proposal, but presently cannot commit to it.)

GCI respectfully requests that the Court resolve the dispute by granting the relief requested below, or, alternatively, by scheduling a telephonic or in-person conference to discuss GCI filing a formal motion for it according to a briefing schedule to be set by the Court.

## Relief Requested

Pursuant to Section 1(b)(i) of the Agreement (Dk. 338), GCI respectfully requests that the Court direct the Shahs to compile and provide the following lists (the "Lists") to GCI:

1. "A list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021[;]"

2. "A list of all bank accounts (by bank name and last four digits of account number)

May 3, 2022

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York

        used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015[;]" and

3. "A list of the names of any individuals or entities that loaned money to Jaina between 2013 and 2015."

GCI also respectfully requests that the Court direct the Shahs and their counsel to: (a) perform the additional due diligence necessary to determine whether they have produced all documents and information required by the Agreement; (b) produce any additional responsive documents and information; (c) submit, for each Section 1(b)(i) documents and information category a complete and accurate description of the due diligence they have performed to ensure production of all required documents and information; and (d) once the due diligence confirmation, and any additional production is complete, produce Mr. Shah for the interview required by Section 1(b)(vi) and sign the IRS authorization for GCI to obtain Jaina tax returns required by Section 1(b)(i).

## Background

The Agreement requires the Shahs, among other things, to provide certain documents and information to GCI. On November 2, 2021, the Shahs produced 86,814 pages of TIFF images and native files and more than 8,000 text files, a great many of which were not related to any of the Section 1(b)(i) categories of documents and information. As far as we can tell the Shahs produced: (a) no hard-copy document images, suggesting they limited their production to electronically stored information ("ESI"); and (b) no ESI or any other documents in the possession, custody or control of Neminath Inc. ("Neminath"), 235 Hillside LLC ("235 Hillside"), Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure") or Ipsita Telecom Services, Inc. ("Ipsita") (collectively, the "Entities").

## The Shahs Must Produce the Lists

Section 1(b)(i) of the Agreement provides that "V. Shah and N. Shah shall produce all documents and [ESI] (collectively, 'documents') in [thirteen, bullet-pointed] categories in their possession, custody, or control (including documents in the possession, custody, or control of [the Entities].[)]" Seven of these 13 categories are described as "Documents concerning. . . .;" and another two sought either "All invoices concerning. . . ." or "A Quickbooks general ledger. . . ."

One of the remaining four categories is: "Fully cooperate with any good faith effort by GCI to obtain tax records. . .[from the IRS] for Jaina for tax years 2013 through 2020[,] including. . . signing third-party authorizations allowing GCI to obtain the tax records. . . ." The remaining three each seek "A list" of shareholders, bank accounts, or names of lenders, for certain specific periods—"from 2012 until 2021" (shareholders), "during the period 2012 through 2015" (bank accounts), or "between 2013 and 2015" (lenders). These were not requests highly-specific lists believed already to be in existence, but lists the Shahs were required to compile and provide.

2

May 3, 2022

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York

The Shahs erroneously construe Section 1(b)(i) to negate the Agreement's express terms by eliminating the undertakings to provide the Lists and to sign authorizations to the IRS. The Shahs say Section 1(b)(1) was intended to require the production of "documents" (defined as including ESI) only and then only documents that already exist. But Section 1(b)(ii) establishes that Section 1(b)(i) was *not* intended to be limited to "documents" but was intended to encompass both "documents" and "*information*." (Dk. 338, Section 1(b)(ii) (emphasis added)) Section 1(b)(ii) refers to the Agreement requiring the Shah's to produce "information"—such as the Lists—no less than *three* times. (Dk. 338, Section 1(b)(ii)) References to "documents and information" likewise appear in Sections 1(b)(vi), and Section 1(b) is titled "Provision of Documents and Information."

### The Shahs Must Do the Required Due Diligence, Represent in Writing to the Court what Due Diligence they Have Done, and to Produce all Responsive Documents

Section 1(b)(i) says the Shahs "*shall* produce *all* documents" in their possession, custody, or *control* (including documents in the possession, custody, or control of [the Entities]) falling into specified categories. (emphasis added) Section 1(b)(iii) states "[t]o satisfy their obligations to provide all documents in their possession, custody, or control, . . . [the Shahs] shall conduct searches of:  (a) "[A]ny buildings located at 235 Hillside Avenue. . . that V. Shah or N. Shah have [or legally obtain] access to. . .[;] (b) "their home[;]" (c) "all electronic devices owned by V. Shah, N. Shah, [or any of the Entities] that are in the possession, custody or control of V. Shah or N. Shah[;]" and (d) "any premises used by [any of the Entities] to conduct business."

"'[C]ontrol' of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (citation and quotation omitted).) Officers of corporations, like the Shahs, have control over documents that are in the possession or custody of those corporations. *See, e.g., Flag Telecom*, 236 F.R.D. at 181-82

As respects Section 1(b)(iii)(a) & (b), the Shahs claim to have carried out their obligation to perform searches and produce documents, but significant gaps in the production cast serious doubts on the veracity of this claim that only further and more specific representations can resolve. (See Ex. A at 1-10; Ex. C at 4-5.) The Shahs, for example, claim to have searched the 235 Hillside Avenue premises (where V. Shah works and where Jaina maintained its office and data center), but only with respect to "physical documents," and says nothing about what efforts (if any) were made to ascertain whether there were any electronic devices (including, without limitation, Jaina's computer system) existed on those premises, and if so, what effort were undertaken to search those devices for responsive ESI. (See Ex. B at 3.)

The Shahs have also not conducted the due diligence required by Section 1(b)(iii)(c). The log the Shahs provided (Ex. E) reveals that searches were performed only on N. Shah's Gmail account, V. Shah's Gmail account, V. Shah's iPhone and N. Shah's iPhone. No explanation was provided why no searches were performed of electronic devices owned by "[any of the Entities] that are in the possession, custody or control of V. Shah or N. Shah," and what due diligence (including

3

May 3, 2022

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York

questioning of the Shahs) was done to determine whether there are such devices in the possession, custody or control of V. Shah or N. Shah, who serve as officers and shareholders of the Entities. (Nayana Shah is an officer and major shareholder of Jaina, Jaina Infrastructure and Ipsita; and Vipin is an officer and major shareholder of Neminath and 235 Hillside).

Section 1(b)(iii)(d) required the Shah's to conduct a search of "any premises used by [any of the Entities] to conduct business." While the Shahs claim a search of the 235 Hillside premises revealed no *hard copy* documents, they say nothing about what was done to secure ESI on devices on those premises, including, for example, from Jaina's computer system, which, V. Shah represented to the Court during the litigation, was located in those premises (which the Shahs now rent), unless the Shahs have since unlawfully disposed of that evidence.

The emails the Shahs produced show that Jaina used premises not only in the United States, but also in India, Singapore, and Dubai. As an officer and major shareholder of Jaina, N. Shah has control over documents maintained in those premises and must request their production, which she has not done.

Finally, the Shahs' correspondence reveals that they erroneously view their obligation to produce documents and information within their "possession, custody, and control" pursuant to Section 1(b)(1) to be limited by Section 1(b)(iii).  Section 1(b)(i), however, requires the Shahs to produce all documents within their "*control*," and, by definition, that includes documents that are in the possession and custody of *non-parties*, including the Entities

                 Respectfully submitted,

                 Philip J. Loree Jr.

cc:  All Counsel of Record via ECF
   Mr. Govind Vanjani (by email)
   Shomik Ghosh, Esq. (by ECF)
   Pro se Party Mahendra Shah (by email and ECF)