

# THE LOREE LAW FIRM

**PHILIP J. LOREE JR**

December 24, 2021

<u>VIA ELECTRONIC MAIL</u>

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

    Re:    **Geo-Group Communications, Inc. v. Shah, et. al., No. 15 Civ. 1756 (KPF)**

Dear Shomik:

As promised, we are writing concerning the documents produced thus far by Vipin and Nayana Shah (collectively, the "Shahs") pursuant to the settlement agreement (the "Settlement Agreement").

## I.    Introduction

Section 1(b)(i) of the Settlement Agreement provides that "V. Shah and N. Shah shall produce all documents and electronically-stored information (collectively, "documents") in [certain specified] categories in their possession, custody, or control (including documents in the possession, custody, or control of Neminath Inc. ("Neminath"), 235 Hillside LLC ("235 Hillside"); Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure"), and Ipsita Telecom Services, Inc. ("Ipsita")[.]"

Your client has produced more than 100,000 TIFF images and more than 1,000 text and native files. We have reviewed all of these (other than the Quickbook files for which we need a valid password), and based on that extensive review and analysis Geo-Group Communications, Inc. ("GCI") has reached the inescapable conclusions that the Shahs:

1. Have in their possession, custody, or control the documents they agreed in the Settlement Agreement to produce; and

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

    2.   Have, not produced key documents that are within their possession, custody, or control. GCI believes that the Shahs have— contrary to the letter and spirit of the Settlement Agreement—intentionally not produced all responsive documents.

Our client entered the Settlement Agreement to achieve closure of this matter, but after reviewing the documents it is apparent that Vipin, and his former attorney, have intentionally misrepresented material facts to the Court concerning Vipin's possession, custody and control of discoverable documents and Vipin's compliance with the document request served upon him.

That former attorney also represented Mahendra Shah, and the documents show that he and Mahendra likewise misrepresented material facts to the Court concerning Mahendra's possession, custody, and control of discoverable documents and Mahendra's compliance with the document request served on him.

Vipin did not, in response to a broader document request, produce in the original discovery any of the tens of thousands of documents he now produces in response to the narrower request set forth in the Settlement Agreement. Vipin and his prior counsel represented to the Court that they did not have access to those documents and that if anyone did, it was Surajit Bose, who, we were told, had returned to India.

The documents Vipin and Nayana now produce demonstrate the falsity of misrepresentations Vipin made to the Court. Those documents show, among other things, that Vipin, Mahendra, and Nayana controlled Jaina's operation and data at the 235 Hillside Avenue location (then owned by Neminath) and selected and supervised the CPAs for Jaina and its related entities. Vipin was intensely and personally involved in formulating and executing strategies on behalf of Jaina including in conjunction with Mahendra, Ravi Chopra, and Mr. Chopra's attorney. Vipin and Mahendra controlled all Jaina-related financial transactions, including foreign bank accounts and investments held in Jaina.

There are documents which show Vipin and Mahendra planned their strategy with their attorney to blame everything on Surajit Bose ("Surajit"). Swearing under oath that: (a) Surajit, and Surajit alone, conducted Jaina's business; (b) Vipin, Mahendra, and Nayana were not actively involved and had no meaningful knowledge of Jaina's business; (c) Surajit had exclusive possession, custody, and control over all documents; and (d) Vipin, Mahendra, and Nayana had suffered because of Surajit's Jaina-related actions.  Vipin and Mahendra even requested Surajit's resignation, Surajit tendered on October 28, 2021. (See SHAH 61015-16.) Despite testifying to the contrary, Vipin and Mahendra were in constant communication with Surajit, including at least as late as October 27, 2017 (see SHAH 25712-14), two years after Surajit's resignation. Also contrary to their testimony, Jaina continued to conduct business with the knowledge and consent of Vipin, even after Surajit's purported resignation.

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

We request that you personally review (or re-review) the documents your clients have produced thus far, and all documents that were not produced, and produce all responsive documents and information that to date has not been produced. We discuss below, including on a category-by-category basis, documentation that is missing from the production.

In some cases, none of the required information has been produced. For example, your clients have not provided "[a] list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021." In others, the information is simply missing without explanation.

Mr. Vanjani, an astute and experienced small and large business professional, is rather astounded as to how Vipin or Nayana could somehow not know, among many other things:

1. Who contributed to additional paid in capital, in what amounts and on what dates;

2. That Ravi Chopra was paid money in India;

3. Where, or to whom, the money held by Ipsita SITA and Jaina Infrastructure went during the period 2012 through 2015; and

4. What happened to the cash that Jaina did not pay its suppliers in 2013 and 2014?

But the documents that have been produced—in conjunction with the gaps in that production—suggest just that.

The next section of this letter reproduces each of the categories of documents demanded by the Settlement Agreement, sets forth our comments concerning each and demands prompt production of all requested documents.

**II.   Categories of Documents and Questions and Comments Concerning Each**

- **Category:** Documents concerning the 2013 loan of $600,000 from Kedis LLC ("Kedis") to Neminath.

    **Comments:** While the Shahs have produced certain documents concerning the $600,000 loan, there are no emails or other documents concerning the negotiation of the transaction; the agreements comprising the transaction or the drafting of those agreements; or what transpired when Neminath did not timely repay the $600,000 as required by those agreements. Nor are there any emails from Kedis Enterprises, LLC, Sanjiv Chand, or anyone else purporting to negotiate the transaction on behalf of Kedis. These gaps in the production are surprising given the dollar amount of the

3

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

> transaction and the security for it, 235 Hillside Avenue, which represented Neminath's largest asset, and which was, in turn owned and controlled by the Vipin, Nayana, Mahendra Shah, and Mahendra's spouse Pooja.
>
> For example, there is correspondence dated January 2, 2013, between Surajit Bose and Mr. Krisha, copied to Vipin Shah (SHAH 64008), concerning the need for Jaina to have a $600,000 bridge loan. One would expect there to be much other correspondence in January 2013, when the $600,000 Kedis-Neminath loan was negotiated, but there is nothing until January 17, 2013, when there was email correspondence attaching final drafts of the contract documents. (See SHAH 6465002-SHAH 65051.)
>
> There is no correspondence concerning the $600,000 loan until November 5 and November 6, 2015, when there was an email exchange between Sanjiv Chand and Vipin concerning information about payments Neminath made to Jaina. (See SHAH 32206, SHAH 32209, SHAH 332215) There was a follow-up exchange of correspondence concerning back-up for such payments in February 2016, but the trail ends there. (See SHAH 32206.)
>
> Please produce promptly all "[d]ocuments concerning the 2013 loan of $600,000 from Kedis LLC ("Kedis") to Neminath."
>
> - **Category:** Documents concerning the sale of 235 Hillside Avenue by Neminath.
>
>   **Comments:** While the Shahs have produced certain documents concerning the sale of 235 Hillside Avenue by Neminath, there are few or no emails or other documents concerning: (a) the negotiation of the transaction, including the sale price and who negotiated the sale price; (b) the agreements (draft, final, and executed) comprising the transaction or the drafting of those agreements (other than an email attaching a draft contract of sale agreement, see SHAH 22526 to SHAH 22528); (c) communications between Neminath, and the buyer, Williston Park Realty LLC; (d) communications between Sanjiv Chand and Neminath (or anyone else) concerning the transaction; (e) communications between Mariana Ramirez, and Neminath (or anyone else) concerning the transaction (Ms. Ramirez has testified that she is and at all relevant times was the sole person who owns and controls Williston Park Realty LLC); and (f) communications between Neminath and Kedis Enterprises LLC, or any person purporting to act on behalf of Kedis.
>
>   These gaps in the production are astounding given the dollar amount of the transaction, which was reported on Neminath's income tax return as $1,025,000, and of which $425,000 was paid to Neminath by Williston Park Realty LLC, and $600,000 of which was Neminath's repayment to Kedis Enterprises LLC of the

4

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

$600,000 loan Kedis made to Neminath. It was the sale of Neminath's largest asset by far.

Please produce promptly all "[d]ocuments concerning the sale of 235 Hillside Avenue by Neminath."

- **Category:** Documents concerning the $1,000,000 Citibank loan, which is reflected in PX 45.

- **Comments:** While the Shahs have produced certain documents concerning the $1,000,000 Citibank loan, there are few, if any: (a) documents concerning the actions Citibank took when Jaina failed to pay the loan; and (b) email communications between Jaina (and/or the Shahs) and Citibank concerning the loan. Given the size of this transaction, for which V. Shah signed a personal guarantee, the absence of such documents is surprising, to say the least.

    Please produce promptly all "[d]ocuments concerning the $1,000,000 Citibank loan, which is reflected in PX 45."

- **Category:** A list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021.

- **Comments:** The Shahs have not provided a list of Jaina's shareholders, and their percentage ownership interests as of January 1 of each year from 2012 to 2021. Please provide the list immediately.

- **Category:** Documents concerning the $6,740,198 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2013 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $6,740,198.

    **Comments:** The Shahs have produced one document (SHAH 30145-47), which appears to be responsive to this category. It is a three-page summation of all accounts payable and receivable, but all it provides is an opening balance for 2014 of $6,746,412.03 and a closing balance of $ 2,219,430.61. There are no documents listing out the $6,746,412.03 amount on a customer-per customer basis. There is no reason to think that the Shahs somehow do not have this information, given all the other Jaina-related information to which they were and are privy.[1]

---

[1] Native File SHAH 49547 contains summaries of supplier and customer data but does not provide the details of accounts receivable at year end. SHAH 23373-95 shows purchases from Jaina's suppliers in 2014 (by month and supplier), which represents "cost of goods sold," not accounts receivable.

5

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

>Please produce promptly all "[d]ocuments concerning the $6,740,198 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2013 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $6,740,198."

- **Category:** Documents concerning the $2,213,217 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2015 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $2,213,217.

    **Comments:** The Shah's have produced one document (SHAH 33170-73), which appears to be responsive to this category. It is an email dated September 6, 2015, that shows a "Customer Telecom Services USA Inc" balance of $ 1,199,957.88 as of 31st Dec 2014." That document does not fully answer the question because it purports to show only the amount owed by Telecom Services USA Inc. as of 12/31/2014 and (presumably) 1/1/2015. There must be other documents listing on a customer-by-customer basis the other two-hundred-thousand-dollars-plus balances owed by Jaina's other customers.[2] There is no reason to think that the Shahs do not have this information given all the other Jaina-related information to which they are and were privy.

    Please produce promptly all "[d]ocuments concerning the $2,213,217 in Trade Notes and Accounts Receivable shown on Line 2a of Jaina's 2015 tax return (Form 1120 Schedule L), including the names of any entities that owed any portion of the $2,213,217."

- **Category:** All invoices concerning the 2014 sales of $39,044,012 shown on Line 1c of Jaina's 2014 tax return (Form 1120).

    **Comments:** The Shahs have not produced all documents responsive to this category. Vipin and Mahendra hired the CPA Brij Aggarwal or Alliance Accounting to do Jaina's 2014 income tax returns. They provided the CPA GCI invoices dating 2006-2008 and a chart listing Jaina purchases totaling $40,975,924.71 for 2014. (See SHAH 23373-95.) But no invoices from Jaina's customers have been produced evidencing these 2014 sales.

    Please produce "[a]ll invoices concerning the 2014 sales of $39,044,012 shown on Line 1c of Jaina's 2014 tax return (Form 1120)."

---

[2] See footnote 1, *supra*.

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

- **Category:** A list of all bank accounts (by bank name and last four digits of account number) used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015.

  **Comments:** The Shahs have not produced a list of all bank accounts (by bank name and last four digits of account number) used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015. Please produce the list immediately, which should, of course, include not only all U.S. and U.S. territory banks, but also bank accounts in India, Singapore, the U.K., or any other non-U.S. jurisdiction.

- **Category:** Documents concerning payables to Jaina's creditors, between 2013 and 2015.

  **Comments:** The Shahs have produced only a few documents responsive to this category. The dearth of responsive documents is extremely surprising because the evidence adduced in the litigation showed that Jaina claimed to have borrowed a great deal of money from third parties. And the documents show that all loans were arranged by or through Vipin and/or Mahendra, all contracts were signed by Mahendra and/or Vipin, and the CPAs reported directly or indirectly to Vipin and/or Mahendra. (See SHAH 66738-40)

  Please produce promptly all "[d]ocuments concerning payables to Jaina's creditors between 2013 and 2015."

- **Category:** Fully cooperate with any good faith effort by GCI to obtain tax records (including tax returns and all schedules and any 1099 forms filed by Jaina) for Jaina for tax years 2013 through 2020, including to the maximum extent allowed by law, signing third-party authorizations allowing GCI to obtain the tax records directly from the IRS.

- **Comments:** GCI is preparing a request to the IRS on Form 4506, which we'll send r to you for your clients' signature under separate cover.

- **Category:** A QuickBooks general ledger for Jaina for the periods 2013 through 2015.

- **Comments:** GCI has been unable to access the QuickBooks-related files you have provided because the passwords that appear in the files produced do not work. Please provide us with a password that works.

- **Category:** A list of the Names of any individuals or entities that loaned money to Jaina between 2013 and 2015.

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

>    **Comments:** The Shahs have not produced a list of the names of any individuals or entities that loaned money to Jaina between 2013 and 2015. Please produce a list immediately.
>
> - **Category:** Documents concerning paid-in capital by individuals or entities (additions and withdrawals) as reflected in line item 23 of Schedule L form 1120 for the period between 2011 and 2015.
>
>    **Comments:** The Shahs have not produced any documents responsive to this category. Paid in capital becomes the cost basis for shareholders, and accordingly, not only Jaina, but each shareholder would know what their paid-in capital was for each year.
>
>    Please produce promptly all "[d]ocuments concerning paid-in capital by individuals or entities (additions and withdrawals) as reflected in line item 23 of Schedule L form 1120 for the period between 2011 and 2015."

## III.   Other Issues Concerning the Production

### A.   Hard Copy Documents

The Settlement Agreement requires the Shahs to produce not only electronically stored information ("ESI") but also hard copy documents. The Shahs' obligations to conduct searches for such documents are set forth in the Settlement Agreement.

The Shahs, however, have thus far produced only electronic documents, and most of those documents are not in pdf, which suggests that few, if any, scanned versions of hard copies were produced.

If the Shahs are withholding any copies of documents (including any copies the Shahs maintain in hard copy) that are: (a) responsive to any of the categories of documents specified in the Settlement Agreement; and (b) are not identical to documents that the Shahs have already produced pursuant to the Settlement Agreement, then please produce them promptly. Thus, for example, if the Shahs have produced an unsigned copy of a contract but not a signed version (or signature page), then a copy of the signed version must be produced.

### B.   Lease Agreements Between Neminath and NYC Telecom

Document SHAH 63807 is an unsigned copy of a Lease Agreement dated January 5, 2014, between Neminath and NYC Telecom, Inc., pursuant to which Neminath leases to NYC Telecom the office space in which Jaina conducted its operations. Document SHAH 52491-96 is an

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

unsigned copy of a Lease Agreement dated January 5, 2015 between Neminath and NYC Telecom, Inc. The production, however, does not contain signed copies of either of these agreements.

Please produce copies of any leases or other agreements between Neminath and NYC Telecom, including any copies of the lease executed by or on behalf of NYC Telecom or Neminath.

    **C.**    **Andrew Bose Auditing of Jaina Financials**

Document SHAH 53101 is a September 18, 2014, email from Andrew Bose, CPA, who agreed to conduct of an audit of Jaina's 2010, 2011, 2012, and 2013 financials. The email requests Jaina to provide him with several categories of documents and information that Andrew Bose, CPA requested to enable him to conduct the audit. The documents the Shahs produced, however, do not contain: (a) any audit reports or letters memorializing the results of Andrew Bose, CPA's audit of Jaina; (b) any other correspondence between Jaina (or anyone purporting to act on Jaina's behalf) and Andrew Bose, CPA concerning the audit; (c) the documents and information that Jaina presumably provided to Andrew Bose, CPA for purposes of conducting the audit; (d) any engagement letter or agreement between Jaina (or any person acting on its behalf) and Andrew Bose, CPA concerning the audit; or (e) any documents or information concerning any other audits of Jaina.

Please produce promptly the Andrew Bose, CPA audit-related documents described above.

    **D.**    **Shashi Goyal Correspondence and Documents Requested and Provided**

In an email (SHAH66384) one Shashi Goyal refers to a "list of documents" he has requested from Jaina and refers to having "collected" from Jaina "60-70% of the documents out of that list." The Shahs, however, have not produced a copy of the list and copies of any documents provided to Shashi Goyal in response to the list.

Please produce promptly copies of the list and copies of the documents provided to Mr. Goyal in response to the list.

    **E.**    **33 pages of Surajit Bose's Conversation with Rajiv & Dishnet**

In an email to Vipin and another dated August 17, 2016 (SHAH 31123), Mahendra Shah says that he "faxed. . . 33 pages of Tony's conversation with Rajiv & Dish net wireless limited (OWL)." "Tony" is Surajit Bose's nickname.

Please produce promptly the "33 pages of. . . conversation" referred to in SHAH 31123.

December 24, 2021

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

### F. Document Referred to in SHAH 31489

By email dated June 3, 2016 to Vipin and others (SHAH 31489), Mahendra "sen[t] one more interesting document which Ravi Chopra (one of the investor in Jaina & I believe did lot of manipulation) made Surajit sign this document." Please produce promptly the "interesting document" referred to in SHAH 31489.

Sincerely,

Philip J. Loree Jr.

cc: Govind Vanjani (via email)
Rishi Bhandari, Esq. (via email)

10