

**MB MANDEL BHANDARI LLP**

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

January 10, 2022

**By Electronic Mail**

Phillip J. Loree Jr.
800 Third Avenue, 28th Floor
New York, NY 10022

Re: <u>Geo-Group Communications, Inc. v. Shah, et. al., No. 15 Civ. 1756 (KPF)</u>

Dear Phil:

I am writing in response to your December 24, 2021 letter (the "Letter"). Regrettably, we disagree with almost all of the contentions and allegations raised in the Letter. As explained below in greater detail, the Shahs faithfully and completely conducted the discovery exactly as required by the settlement agreement entered into on July 1, 2021 (the "Agreement"). The result of this robust, and costly, discovery process was the production of *over* 10,000 files and 90,000 pages of documentary evidence.

1. **<u>The Agreement's Discovery Requirements Are Crystal Clear</u>**

The Agreement entered into between GCI and the Shahs calls for the Shahs to produce all documents in their possession, custody, and control related to certain categories outlined in the Agreement. Agreement at 2. Paragraph 1(b)(iii) explicitly identifies how the Shahs must satisfy this obligation, stating:

> In order to satisfy their obligations to provide all documents in their possession, custody, or control, V. Shah and N. Shah shall conduct the following searches:
>
> 1. Conduct a search of any buildings located at 235 Hillside Avenue, Williston Park, NY 11596 that V. Shah or N. Shah have access to or or can legally obtain access to.
>
> 2. Conduct a search of their home.
>
> 3. A search of all electronic devices owned by V. Shah, N. Shah, 235 Hillside LLC, Jaina, Jaina Infrastructure, Ipsita or Neminath, that are in the possession, custody, or control of V. Shah or N. Shah.

        4. Conduct a search of any premises used by 235 Hillside LLC, Jaina, Jaina Infrastructure, Inc., Ipsita Telecom Services Inc. or Neminath to conduct business.

With regards to the third search category (*i.e.*, electronic devices), the Agreement also outlines how the Shahs must conduct that search, stating in 1(b)(iv) that "in searching for ESI on electronic devices, V. Shah and N. Shah shall use the word searches attached as Appendix One to this Agreement." Thus, the Shahs' responsibilities under the Agreement were crystal clear—they were required to conduct physical searches as described by the first, second, and fourth categories, and conduct a search of electronic devices using the search terms GCI provided and produce all responsive documents.[1]

### 1. The Shahs Strictly Adhered To The Agreement

Based on the clear language of the Agreement, upon approval of the Agreement by the bankruptcy court, all messages on the Shahs's iPhones were promptly imaged and both of their emails accounts were fully extracted with all messages imported. The search terms provided by GCI were then run on all documents. While in traditional discovery litigants will usually produce only a subset of documents that are identified after the application of search terms, in this instance, and again—in a sign of good faith—additional review was not performed and ***all documents that were created before June 1, 2021 and were responsive to the search terms that GCI itself proposed were produced to GCI***.

Thus, the near-entirety of GCI's Letter is demonstrably false. While GCI repeatedly (and wrongfully) accuses the Shahs of "intentionally not produc[ing] all responsive documents," the Shahs's discovery process was intentionally designed to avoid this exact possibility from occurring. All of the Shahs' emails were collected, the search terms that GCI *itself* provided were applied, and then *all* documents created before June 1, 2021 that were responsive to those terms were produced. As there was no subsequent manual review of the emails, there could not have been "intentional" withholding of documents as you incorrectly suggest. Thus, GCI's request that the Shahs re-review "all documents that were not produced" has no practical meaning because all responsive documents were produced.

---

[1] We note that, by its plain text, the Agreement *does not* require the Shahs to search their emails, only their "electronic devices." Emails, of course, are not traditionally stored on personal devices but instead are stored on the email providers's server. *See, e.g.*, *Imbruce v. Buhl*, 2016 WL 2733097, at *6 (D. Conn. May 10, 2016) (noting that "[t]hus, for web-based email services—such as Gmail, Hotmail, and Yahoo mail—a user does not "receive" email to her personal computing device; instead, she uses her personal device to access email that is stored and reviewed in the first instance on a remote computer server."). Thus, the Agreement does *not* require the Shahs to review or produce their email messages. However, in the spirit of good faith, the Shahs voluntarily reviewed all of their email accounts and produced them to GCI. GCI's allegations that the Shahs somehow acted in bad-faith thus merely reveals GCI's bad faith—if anything, the Shahs have voluntarily produced over ten thousand documents that they were not required to under the Agreement.

Regarding physical documents, searches were conducted of the Shahs's residence as well as at 235 Hillside Avenue, Suite B, Williston Park, NY 11596, which the Shahs received access to by expressly requesting access from the property's landlord. No documents that were responsive to the list of categories of documents listed on page 2 of the Agreement were identified.

## 2. GCI Has Still Not Provided The Shahs With Information Regarding The Quickbooks File

In its Letter, GCI also accuses the Shahs of not providing it with passwords for Quickbooks files that were produced. In raising this allegation, GCI extraordinarily fails to mention that on December 3, 2021, counsel for the Shahs emailed you asking for you to identify the Bates numbers for the Quickbooks files so the Shahs could try to identify the passwords. On December 6, 2021, you responded that you "would get back to [counsel] on the QB file shortly." Since then, you have not further communication regarding the files nor provided the Bates numbers that we requested. Your presentation of the Quickbooks issue in the Letter is thus misleading. Please send us the Bates numbers of the Quickbooks file and we will promptly attempt to identify the relevant passwords.

## 3. GCI Cannot Threaten To Bring Claims That Have Been Released

A key component of the Agreement is obviously the release provisions that GCI and the Shahs agreed to in Section 2 of the Agreement. As relevant here, as part of the Agreement, GCI:

> irrevocably and unconditionally releases, covenants not to sue, acquits and forever discharges V. Shah and N. Shah and their agents, employees, representatives, attorneys, children, and assigns (collectively, the "Shah Releasees") from any and all actions, *claims*, causes of action, suits, debts, dues, costs, expenses, sums of money, accounts, *controversies*, agreements, promises, injunctive relief, fees, contracts, trespasses, damages, and *demands* whatsoever, in law and/or in equity, whether known or unknown, matured or unmatured, absolute or contingent, or liquidated or unliquidated, which the GCI Releasors **ever had, now have, or hereafter can, shall or may have** against the Shah Releasees, for, upon, or by reason of any matter, cause, event, transaction, occurrence, or thing whatsoever from the beginning of the world to the Effective Date.

Moreover, GCI explicitly acknowledged "that it may hereafter discover facts different from or in addition to those which it now knows or believes to be true, and GCI agrees that, in such event, **this Agreement shall nevertheless remain in full force and effect in all respects, notwithstanding such different or additional facts, or the discovery thereof**." Thus, the *only* claims not released by GCI are those that pertain to breaches of the Agreement.

Phillip J. Loree Jr.
January 10, 2022
Page 4

Nonetheless, in its Letter, GCI repeatedly makes allegations regarding the Shahs alleged conduct during the release period. *See generally* Letter at 1-2. These allegations are, of course, wholly incorrect. But, equally important, GCI has released the Shahs from all actions, claims, causes of action, suits, debts, dues, costs, expenses, sums of money, accounts, controversies, agreements, promises, injunctive relief, fees, contracts, trespasses, damages, and demands regarding any of these allegations. To the extent GCI is threatening any claim based on conduct prior to the effective date of the release, that would constitute a clearcut breach of the Agreement. Any such claim would be frivolous to say the least.

### 4. Conclusion

We trust that this letter satisfies the misgivings raised in your Letter. Please provide us with the Bates Stamp number of the Quickbooks file that you cannot open so that we can get you any information that is necessary to access the file.

Sincerely,

Shomik Ghosh

cc: Rishi Bhandari