

# THE LOREE LAW FIRM

**PHILIP J. LOREE JR**

February 3, 2022

<u>VIA ELECTRONIC MAIL</u>

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

    Re:    Geo-Group Communications, Inc. ("GCI") v. Shah, et. al., No. 15 Civ. 1756 (KPF)

Dear Shomik:

We write to respond to the Shahs' January 10, 2022, letter, which responded to GCI's December 24, 2021 letter concerning the documents produced thus far by Vipin and Nayana Shah (collectively, the "Shahs") pursuant to the settlement agreement (the "Settlement Agreement").

    **I.**    **The Shahs' Obligation to Produce Documents and Information is Clear But Not as Purported in the Shahs' January 10, 2022 Letter**

While we believe the settlement agreement is clear as respects the Shahs' obligation to produce documents and information within their possession, custody, and control, it is not susceptible to the interpretation to which the Shahs now accord it. Specifically, the Shahs seem to interpret Section 1(b)(iii) as a limiting the scope of Sections 1(b)(i) and (ii). That interpretation is not only incorrect but negates the plain language of Section 1(b)(i) and (ii).

Section 1(b)(i) of the Settlement Agreement provides that "V. Shah and N. Shah shall produce all documents and electronically-stored information (collectively, "documents") in [certain specified] categories in their possession, custody, or control (including documents in the possession, custody, or control of Neminath Inc. ("Neminath"), 235 Hillside LLC ("235 Hillside"); Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure"), and Ipsita Telecom Services, Inc. ("Ipsita")[).]" Section 1(b)(ii), among other things, explains that the production obligation consists of "documents and information." (See Settlement Agreement § 1(b)(ii) (using the term "documents and information" three times).)

The Shahs' letter acknowledges the existence of this substantive commitment in a conclusory fashion—"The Agreement. . . calls for the Shahs to produce all documents in their possession,

February 3, 2022

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

custody, and control related to certain categories outlined in the Agreement[]"—but then shifts the focus exclusively to Section 1(b)(iii), which states that "to satisfy their obligations to provide all documents in their possession, custody, or control, V. Shah and N. Shah shall conduct the following searches[]," which are itemized in 1(b)(iii)(a)-(d), and reproduced in the Shahs' letter. (Shah's January 10, 2022 Ltr. at 1-2) It also notes the word search obligations set forth in Section 1(b)(iv).

The Shahs' letter reveals that the Shahs' viewed their obligation to produce documents and information to be discharged solely by carrying out the search obligations set forth in Section 1(b)(iii) and 1(b)(iv) without regard to whether, as required by Section 1(b)(i), they produced all documents and information within their possession, custody and control specified by Section 1(b)(i).

We think that is so not only based on how the Shahs' letter characterizes the Settlement Agreement but on how the Shahs have inexplicably not provided any of the following lists (the "Lists") expressly requested by the Settlement Agreement:

- **Category:** A list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021.

- **Category:** A list of all bank accounts (by bank name and last four digits of account number) used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015.

- **Category:** A list of the Names of any individuals or entities that loaned money to Jaina between 2013 and 2015.

(Settlement Agreement, Section 1(b)(i))

The Shahs agreed to prepare these Lists and provide them to Geo-Group, just as it also agreed in Section 1(b)(i) to "[f]ully cooperate with any good faith effort by GCI to obtain tax records (including tax returns and all schedules and any 1099 forms filed by Jaina) for Jaina for tax years 2013 through 2020, including. . . signing third-party authorizations allowing GCI to obtain the tax records directly from the IRS." But the Shahs did not produce any of the Lists and to date has offered no explanation for that failure.

GCI's December 24, 2021, letter demanded production of these Lists but the Shahs' January 10, 2022, letter did not agree to provide the Lists, and failed to provide any meaningful excuse for that refusal. We therefore must assume that the Shahs, contrary to the Settlement Agreement, refused to produce the Lists because the Lists did not magically appear in a search of the Shahs' premises or electronic devices.

February 3, 2022

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

Footnote 1 of your letter further reinforces that the Shahs mistakenly view the search obligations of Section 1(b)(iii) of the Settlement Agreement to justify the withholding of documents unquestionably in the Shahs' custody and control, and within the scope of Section 1(b)(i) but not necessarily technically within the scope of the search obligations of Section 1(b)(iii). There you contend that the "Agreement does *not* require the Shahs to review or produce their email messages[,]" even though those email messages are unquestionably within the Shahs' possession, custody and control, and even though technically they are not—at least in the case of certain types of email accounts—stored on the Shahs' electronic devices.

According to footnote 1, the Shahs wisely decided to "review[] all of their email accounts and produce[] them to GCI." (Shahs' January 10, 2022 Ltr. at 2 n.1) While your letter mischaracterizes that obligation as "voluntary" it was anything but.

Section 1(b)(i) unequivocally states that the Shahs "*shall* produce *all* documents" and information in their possession, custody or *control* (including documents in the possession, custody, or control of Neminath, Jaina, Jaina Infrastructure, and Ipsita) falling into those specified categories. (emphasis added) Under Fed. R. Civ. P. 34(a)(1) "'control' of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (citing cases; citation and quotations omitted). Provided "the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (citation and quotation omitted). For example, principals are deemed to have control of documents held by their agents. *Mazzei v. Money Store*, No. 01-cv-5694 (JGK) (RLE), slip op. at *8 (S.D.N.Y. July 18, 2014). And officers of corporations, like Nayana and Vipin, for example, have control over documents that are in the possession or custody of those corporations, including Jaina, Jaina Infrastructure, Neminath, 235 Hillside, and Ipsita. *See, e.g., In re Flag Telecom Holdings*, 236 F.R.D. at 181-82.

The search obligations set forth in Section 1(b)(iii) do not limit the scope of documents that must be produced pursuant to Section 1(b)(i). Section 1(b)(iii) was designed to ensure that thorough searches of all devices and premises were carried out, principally to capture documents within the possession and custody of the Shahs. Section 1(b)(i), however, requires the Shahs to produce all documents within their "*control*," and, by definition, that includes documents that are in the possession and custody of *non-parties*. In fact, Section 1(b)(i) expressly includes within its scope documents in the "control" of Jaina, Jaina Infrastructure, Neminath, 235 Hillside, and Ipsita. Nayana Shah is an officer and major shareholder of Jaina, Jaina Infrastructure and Ipsita; Nayana is the corporate secretary of Jaina; and Vipin is an officer and major shareholder of Neminath and 235 Hillside.

February 3, 2022

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

Section 1(b)(iii) was not intended to excuse the Shahs, or their counsel, from conducting the due diligence required to ensure that all documents within the possession, custody or control of the Shahs were produced, and it certainly was not intended to excuse production of documents and information within the scope of Section 1(b)(i). But under the Shahs' interpretation, that provision would, among other things, and contrary to contract interpretation rules, render nugatory Section 1(b)(i)'s express command that the Shahs produce "*all*" requested documents and information in the "control" of the Shahs.

**II.     The Shahs Must Perform their Remaining Obligations under the Settlement Agreement**

To comply with the document-production obligations of the Settlement Agreement the Shahs must, as set forth more fully below: (a) provide the Lists set forth in Section 1(b)(i) of the Settlement agreement; (b) carry out the additional due diligence necessary to confirm whether or not they have produced all documents within the scope of the Settlement Agreement, including those within the possession, custody or control of the Shahs; (c) produce any additional documents within the scope of Section 1(b)(i) that are within the Shahs' possession, custody or control but which have not yet been produced; and (d) produce the log described in Section 1(b)(iv) of the Settlement Agreement.

    **A.     Producing the Lists**

The Lists, and the Shah's failure or refusal to produce them, are described in Section I., above. Please produce the Lists immediately.

    **B.     Ensuring that the Shahs have Produced the Other Documents Required by Section 1(b)(i)**

The Shahs' January 10, 2022 letter admits that you have not—apart from apparently performing the searches described in Section 1(b)(iii) and imaging email accounts—determined whether the Shahs have produced all documents and information in their possession, custody, and control described in each of the bullet-pointed categories of Section 1(b)(i) (apart from the three categories seeking the Lists and the category relating to cooperation with Geo-Group in making a request to the IRS).

Even apart from your letter's admission, the Shah's failure, among other things, to produce *any* documents falling into the following two Section 1(b)(i) categories of documents demonstrates that the Shahs have utterly failed to produce documents within their control:

> **Category:** All invoices concerning the 2014 sales of $39,044,012 shown on Line

4

February 3, 2022

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

> 1c of Jaina's 2014 tax return (Form 1120).
>
> **Category:** Documents concerning paid-in capital by individuals or entities (additions and withdrawals) as reflected in line item 23 of Schedule L, Form 1120 for the period between 2011 and 2015.

Even assuming that these documents are not in the Shah's possession and custody they are in Nayana Shah's control. Nayana is an officer of Jaina and, as a matter of law, is deemed to have control over documents that are in Jaina's possession and custody, wherever they may be located. Even those documents are in the possession of another officer or shareholder of Jaina, she has the legal right to obtain them. (See cases cited in Section I. of this letter.)

Please do the due diligence necessary to determine whether the Shahs have produced all of the requested documents, including, without limitation, thoroughly interviewing the Shahs about whether there are any such documents that exist and are within their possession, custody and control, including any documents in the hands of other persons over which they have "control" within the meaning of the cases cited in Section I of this letter. Once you have done that due diligence, please: (a) produce any additional, not previously-produced documents (including the Lists); and, once all additional documents have been produced, (b) confirm that all documents and information described in the bullet-pointed categories of Section 1(b)(i), and within the Shah's possession, custody and control, have been produced. Please also describe, for each Section 1(b)(i) category of documents, the due diligence undertaken to ensure that all documents within the control of the Shahs have been produced, including without limitations the efforts made to ensure production of all documents within the control of the Shahs.

### C.   Producing the Word Search Log

Settlement Agreement Section 1(b)(iv) provides that "Mandel Bhandari shall keep, and share with GCI on request, a log of all word searches conducted, the devices on which the searches were conducted, the dates on which the searches [were] conducted and [the] number of hits each search yielded." Please produce the log required by Section 1(b)(iv).

Sincerely,

Philip J. Loree Jr.

cc:   Mr. Govind Vanjani (by email)

5

February 3, 2022

Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

    Rishi Bhandari, Esq. (by email)

6