

# THE LOREE LAW FIRM

PHILIP J. LOREE JR

April 4, 2022

**VIA EMAIL**

Rishi Bhandari, Esq.
Shomik Ghosh, Esq.
Mandel Bhandari LLP
80 Pine Street, 33rd Floor
New York, NY 10005

Re:   Geo-Group Communications, Inc. ("GCI") v. Shah, et. al., No. 15 Civ. 1756 (KPF) | Post Meet and Confer Proposal to Resolve Settlement Agreement Dispute

Dear Rishi and Shomik:

As promised, I'm writing to follow-up on the meet and confer we had on March 31, 2022, concerning the Settlement Agreement (the "Agreement"), which Govind and I thought was productive.

As discussed in more detail below, our proposal to resolve the dispute over the performance of the Settlement Agreement requires the Shahs to: (a) produce the lists; (b) perform and document the due diligence necessary to ensure that the Shahs have discharged their obligations under the Agreement and to fulfil any obligations not fulfilled; and (c) once the obligations to produce any additional documents are discharged, produce V. Shah for the required interview and have N. Shah sign the IRS authorization we shall prepare to obtain Jaina tax returns. If the Shahs accept the proposal and carry it out, then there should be no need to involve Judge Failla.[1]

## Production of the Lists

First, V. Shah and N. Shah (collectively, the "Shahs") compile and provide the following lists

---

[1] The full text of the definitions and rules of construction set forth in S.D.N.Y. Local Civil Rule 26.3(c) and (d) is deemed incorporated by reference into this proposal.

April 4, 2022

Rishi Bhandari, Esq.
Shomik Ghosh, Esq.
Mandel Bhandari LLP

(the "Lists") to Geo-Group Communications, Inc. ("GCI"):

    1. "A list of Jaina's shareholders and their percentage ownership interests as of January 1 of each year from 2012 until 2021[;]"

    2. "A list of all bank accounts (by bank name and last four digits of account number) used by Jaina, Neminath, Jaina Infrastructure or Ipsita during the period 2012 through 2015[;]" and

    3. "A list of the names of any individuals or entities that loaned money to Jaina between 2013 and 2015.

### Perform and Document Due Diligence

The due diligence and performance aspect of the proposal requires the Shahs to:

1. Perform the due diligence necessary to ensure that the Shahs have discharged their obligations to produce the documents (including ESI) required to be produced by Section 1(b)(i) of the Settlement Agreement;

2. Set forth in writing fully and in detail the specific searches, and any other due diligence performed, to ensure that all documents described in Section 1(b)(i) are produced;

3. To the extent that the due diligence reveals (or has revealed) that there are additional documents, or sources of documents, that have not been produced or searched, then disclose in writing the existence of those documents and sources, perform the searches, and produce the documents.

4. To the extent the Shahs are taking the position that they are not obligated to produce any of the documents referred to in 3., above, or are not obligated to search any of the sources of documents referred to in 3., above, then they shall describe those documents and sources and state the reasons why, pursuant to the Agreement they believe those documents need not be produced or those sources need not be searched;

5. If there are disputes between the parties concerning any documents the Shahs believe need not be produced or any sources of documents the Shahs contend need not be produced, then the parties shall meet and confer to attempt to resolve those disputes, and if they are unable to resolve those disputes, they shall be submitted to Judge Failla for resolution;

6. Once the due diligence confirmation and any additional production is complete, then the Shahs shall produce V. Shah for an interview and have N. Shah sign the IRS authorization we shall prepare to obtain Jaina tax returns.

April 4, 2022

Rishi Bhandari, Esq.
Shomik Ghosh, Esq.
Mandel Bhandari LLP


At the meet and confer we had a discussion of what the Agreement provides, what the Shahs have thus far represented in writing, and some of the reasons why GCI is not satisfied that all has been done that must be done to ensure the Shahs comply with the Settlement Agreement. We touch on some of those points below.

Section 1(b)(i) says the Shahs "*shall* produce *all* documents" in their possession, custody, or *control* (including documents in the possession, custody, or control of Neminath, Inc. ("Neminath), 235 Hillside LLC ("235 Hillside"); Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure"), and Ipsita Telecom Services, Inc. ("Ipsita") [the "Entities"][)] falling into specified categories. (emphasis added) Section 1(b)(iii) states "[t]o satisfy their obligations to provide all documents in their possession, custody, or control, . . . [the Shahs] shall conduct searches of:  (a) "[A]ny buildings located at 235 Hillside Avenue. . . that V. Shah or N. Shah have access to or can legally obtain access to[;] (b) "their home[;]" (c) "all electronic devices owned by V. Shah, N. Shah, [or any of the Entities] that are in the possession, custody or control of V. Shah or N. Shah[;]" and (d) "any premises used by [any of the Entities] to conduct business."

"'[C]ontrol' of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (citation and quotation omitted).) Officers of corporations, like the Shahs, have control over documents that are in the possession or custody of those corporations. *See, e.g., Flag Telecom*, 236 F.R.D. at 181-82.

As respects Section 1(b)(iii)(a) & (b), the Shahs claim to have carried out their obligation to perform searches and produce documents, but significant gaps in the production cast doubts on the accuracy of this claim, which only further and more specific representations can resolve. (See Loree 12/24/2021 Ltr. at 1-10; Loree 2/3/2022 Ltr. at 4-5.) Loree The Shahs, for example, claim to have searched the 235 Hillside Avenue premises (where V. Shah works and where Jaina maintained its office and data center), but only with respect to "physical documents," and says nothing about what efforts (if any) were made to ascertain whether there were any electronic devices (including, without limitation, Jaina's computer system) existed on those premises, and if so, what effort were undertaken to search those devices for responsive ESI. (See Ghosh 1/10/2022 Ltr. at 3.)

As respects 1(b)(iii)(c) the log the Shahs provided reveals that searches were performed only on N. Shah's Gmail account, V. Shah's Gmail account, V. Shah's iPhone and N. Shah's iPhone. No explanation was provided why no searches were performed of electronic devices owned by "[any of the Entities] that in the possession, custody or control of V. Shah or N. Shah," and what due diligence (including questioning of the Shahs) was done to determine whether there are such devices in the possession, custody or control of V. Shah or N. Shah, who between them serve as officers for the Entities.

3

April 4, 2022

Rishi Bhandari, Esq.
Shomik Ghosh, Esq.
Mandel Bhandari LLP


Equally important, the Shahs appear to be taking the position that "searching" a "device" in the context of this Agreement is effectively limited to what exists on the device's hard drive and does not include email accounts, WhatsApp messages, or any other source of responsive documents that are accessible through the device but which are stored on the Cloud. While the Shahs claim they have searched their email accounts, we are left to wonder what email accounts were *not* searched, including email accounts used for the Entities, whether any responsive WhatsApp messages have been produced, and whether all responsive SMS messages have been produced.

The Agreement requires the Shahs to produce *all* documents with their possession, custody or control that fall within the seven specified categories of documents described in Section 1(b)(i). Section 1(b)(iii) says that "[t]o satisfy their obligations to provide all documents in their possession, custody, or control. . ." the Shahs must perform certain searches, including searches of devices. A search of a device that is designed to determine whether there are responsive documents within the "control" of the Shahs obviously includes a search of email accounts accessible through the device, even though the accessible documents are maintained on a server located in the cloud or elsewhere. Indeed, a proper "search" of a device would include asking each of the Shahs whether there are any documents accessible through the device that fall into any of the specified categories. That is especially so here, where the categories of documents sought are specific.

Section 1(b)(iii)(d) required the Shah's to conduct a search of "any premises used by [any of the Entities] to conduct business." While the Shahs claim a search of the 235 Hillside premises revealed no *hard copy* documents, they say nothing about what was done to secure ESI on devices on those premises, including, for example, from Jaina's computer system, which, we know from V. Shah has been, and should be still, located in those premises (which the Shahs now rent) (unless the Shahs have unlawfully disposed of that evidence). In fact, as far as we can tell, no ESI or even hard copy documents maintained by the Entities were produced.

The emails the Shahs produced show that Jaina used premises not only in the United States, but also in India, Singapore, and Dubai. As an officer and major shareholder of Jaina, N. Shah has control over documents maintained in those premises and must request their production.

Finally, the Shahs' correspondence reveals that they erroneously view their obligation to produce documents and information within their "possession, custody, and control" pursuant to Section 1(b)(1) to be limited by Section 1(b)(iii). Section 1(b)(i), and even Section 1(b)(iii)(c), requires the Shahs to produce all documents within their "*control*," and, by definition, that includes documents that are in the possession and custody of *non-parties*, including the Entities (Nayana Shah is an officer and major shareholder of Jaina, Jaina Infrastructure and Ipsita; Nayana was an officer of Jaina; and

April 4, 2022

Rishi Bhandari, Esq.
Shomik Ghosh, Esq.
Mandel Bhandari LLP

Vipin is an officer and major shareholder of Neminath and 235 Hillside).

Sincerely,

Philip J. Loree Jr.

cc:      Mr. Govind Vanjani (by email)