UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEO-GROUP COMMUNICATIONS, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　　　-v.-<br><br>RAVI CHOPRA; MAHENDRA SHAH; VIPIN SHAH; 728 MELVILLE PETRO LLC; KEDIS ENTERPRISES LLC; JMVD HILLSIDE LLC; NYC TELECOMMUNICATIONS CORP.; and SHALU SURI,<br><br>　　　　　　　　　Defendants. | 15 Civ. 1756 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

On July 1, 2021, less than two weeks before trial was set to begin in this matter, Plaintiff Geo-Group Communications, Inc. and Defendants Vipin Shah and Nayana Shah (together, "Defendants") executed a settlement agreement (the "Agreement") that resolved the remaining claims in this action. (*See* Dkt. #338 ("Settlement Agreement")). As part of the Agreement, the parties entered into a broad release of any claims they had against each other in exchange for, among other things, Defendants' production of certain post-settlement discovery. (*Id.*, § 2). The parties proceeded under the Agreement for the better part of the last year, until, on May 2, 2022, Plaintiff advised the Court of an emergent dispute relating to Defendants' alleged failure to comply with their obligations to produce certain materials and to conduct due diligence as outlined in the Agreement. (Dkt. #335).

Now before the Court are the parties' letter briefs summarizing their respective positions on the scope of Defendants' production and diligence

obligations under the Agreement. (Dkt. #346 ("Def. Br."); Dkt. #349 ("Pl. Br.")). Both sides have asked the Court to resolve their disputed interpretations of the Agreement. Defendants seek a ruling from the Court declaring that their productions up to this point fully satisfy their responsibilities under the Agreement, while Plaintiff asks the Court to direct Defendants to comply with the Agreement according to its preferred reading of the relevant provisions. (*See* Def. Br. 1; Pl. Br. 13-16). As the Court will explain, Defendants have proffered too narrow a construction of the Agreement and, in consequence, have several remaining diligence and production obligations. At the same time, the Agreement does not entitle Plaintiff to all of the relief it demands.

## DISCUSSION

### A. The Terms of the Settlement Agreement

Section 1(b) of the Agreement, entitled "Provision of Documents and Information," outlines Defendants' post-settlement production and diligence obligations. To begin, Section 1(b)(i) addresses the "what" of the Agreement, outlining thirteen categories of documents and information that Defendants "shall produce," to the extent such materials are in the possession, custody, or control of Defendants or certain related entities. (Settlement Agreement § 1(b)(i)).[1] This provision expressly defines the term "documents" to include electronically stored information ("ESI"). (*Id.*). Among these enumerated

---

[1] These entities are Neminath Inc. ("Neminath"), 235 Hillside LLC ("235 Hillside"), Jaina Systems Network, Inc. ("Jaina"), Jaina Infrastructure, Inc. ("Jaina Infrastructure"), and Ipsita Telecom Services, Inc. ("Ipsita," and collectively, the "Entities"). (Settlement Agreement § 1(b)(i)).

categories are three lists, which seek information from specified periods regarding: (i) Jaina's shareholders and their percentage ownership interests; (ii) bank accounts used by Neminath, Jaina, Jaina Infrastructure, and Ipsita; and (iii) individuals who lent money to Jaina (together, the "Lists"). (*Id.*). Also included as a category is a "Quickbooks general ledger for Jaina for the periods 2013 through 2015." (*Id.*).

Section 1(b)(iii) addresses the "where" of the Agreement, outlining the locations Defendants must search for the categories of documents and information in Section 1(b)(i). This section recites in full:

> In order to satisfy their obligations to provide all documents in their possession, custody or control, [Defendants] shall conduct the following searches:
>
> a. Conduct a search of any buildings located at 235 Hillside Avenue, Williston Park, NY 11596 that [Defendants] have access to or … can legally obtain access to.
>
> b. Conduct a search of their home.
>
> c. A search of all electronic devices owned by [Defendants], 235 Hillside LLC, Jaina, Jaina Infrastructure, Ipsita or Neminath, that are in the possession, custody, or control of [Defendants].
>
> d. Conduct a search of any premises used by 235 Hillside LLC, Jaina, Jaina Infrastructure, Inc., Ipsita Telecom Services Inc. or Neminath to conduct business.

(Settlement Agreement § 1(b)(iii)).

Section 1(b)(iv) addresses the "how" of the Agreement, discussing the manner in which Defendants are to conduct searches of electronic devices that fall within the scope of Section 1(b)(iii). This provision provides that "[i]n searching for ESI on electronic devices, [Defendants] shall use the word

3

searches attached as Appendix One to this Agreement." (Settlement Agreement § 1(b)(iv)). Section 1(b)(v) states that "[a]fter conducting the searches detailed in paragraphs 1(b)(iii) and 1(b)(iv), above, [Defendants] shall produce all responsive documents within 60 days of the Effective Date of this Agreement." (*Id.*, § 1(b)(v)).

Finally, the parties agreed in Section 1(b)(ii) that "[i]n producing documents and information, [Defendants] shall be subject to the same obligations that they would have were they producing documents to an adversary in a civil action pending in the United States District Court for the Southern District of New York." (Settlement Agreement § 1(b)(ii)).

### B. Defendants Have Not Fully Complied with Their Obligations Under the Agreement

Defendants contend that Plaintiff has already received everything to which it is entitled under the Agreement. (Def. Br. 1). Plaintiff strenuously disagrees and argues that Defendants are relying on a stilted reading of the Agreement to justify their deficient compliance efforts. (Pl. Br. 3-4). Plaintiff distills the parties' disagreements to three primary issues: (i) whether the Agreement imposes a free-standing obligation on Defendants to produce all categories of documents and information listed in Section 1(b)(i), irrespective of whether Defendants locate such materials after performing the searches listed in Section 1(b)(iii); (ii) whether Defendants have misconstrued their diligence obligations under Section 1(b)(iii); and (iii) whether the Agreement requires Defendants to produce the Lists, regardless of whether they currently exist. (*Id.* at 2-4). In answering these interrelated inquires, the Court concludes that

while Defendants' search obligations are circumscribed by Section 1(b)(iii), they have taken an overly restrictive view of the demands imposed by this provision. Further, the Court finds that the Agreement requires Defendants to compile the Lists, to the extent Defendants can acquire the necessary information from the searches outlined in Section 1(b)(iii).

### 1. The Agreement Does Not Impose a Free-Standing Obligation on Defendants to Produce All Materials in Section 1(b)(i)

Plaintiff contends that the Agreement unequivocally commands Defendants to produce all documents and information contained in the thirteen bullet-pointed categories in Section 1(b)(i). (Pl. Br. 3, 6). Plaintiff locates this unequivocal directive in the language of Section 1(b)(i), which provides that Defendants "*shall produce* all documents and electronically-stored information (collectively, 'documents') in the following categories in their possession, custody, or control[,] including documents in the possession, custody, or control of [the Entities.]" (Settlement Agreement § 1(b)(i) (emphasis added)). The Court disagrees with Plaintiff, as the requirements outlined in Section 1(b)(i) and interrelated provisions are hardly unequivocal.

As an initial limitation on Defendants' production obligations, Section 1(b)(i) expressly limits the materials that Defendants must produce to those that are in Defendants' or the Entities' "possession, custody, or control." (Settlement Agreement § 1(b)(i)). Thus, to the extent Plaintiff is arguing that Defendants must produce documents or information irrespective of the efforts it might take Defendants to get them, this reading is belied by the very provision Plaintiff relies upon. As the Agreement makes clear, if responsive

documents or information are not within Defendants' "possession, custody, or control," they need not produce them.[2]

As another significant limitation, the Agreement circumscribes the efforts that Defendants must take to comply with their obligations to search for documents in their "possession, custody, or control." In this respect, the prefatory clause of Section 1(b)(iii) states that "[i]n order to satisfy their obligations to provide all documents in their possession, custody, or control, [Defendants] shall conduct the following searches[.]" (Settlement Agreement § 1(b)(iii)). The Court understands the import of this provision to be that if Defendants effectuate good-faith searches of the locations enumerated in Section 1(b)(iii), they will have satisfied their production obligations under Section 1(b)(i). As further indication of the bounded scope of Defendants' diligence obligations, Section 1(b)(v) of the Agreement states that Defendants' production obligations go into effect only "[a]*fter* conducting the searches detailed in paragraphs 1(b)(iii) and 1(b)(iv)[.]" (*Id.*, § 1(b)(v) (emphasis added)). The parties' decision to trigger Defendants' production obligations upon completion of the searches enumerated in Section 1(b)(iii) is a strong indication of the parties' intent to tie Defendants' diligence obligations to this provision.

Therefore, the Court concludes that Defendants' obligation to produce materials listed in Section 1(b)(i) is restricted to the searches set forth in Section 1(b)(iii). Put differently, if Defendants adequately complete their search

---

[2] As described *infra* at Section B.2, Defendants have taken a constricted view of the phrase "possession, custody, or control," especially in interpreting the term "control."

obligations under Section 1(b)(iii), they will have satisfied their obligations to "provide all documents in their possession, custody, or control." Thus, the next question is whether Defendants have, in fact, fulfilled their responsibilities pursuant to Section 1(b)(iii).

### 2. Defendants Have Misconstrued Their Diligence Obligations

Defendants assert that the searches they have conducted bring them in full compliance with their diligence obligations under the Agreement. As the Court understands them, Defendants' investigative efforts comprise: (i) canvassing both their homes and the portions of 235 Hillside Avenue that they rent for any electronic devices that they actually own or use (Def. Br. 7; *see also* Pl. Br. 4 (noting that Defendants have searched only their two personal email accounts and two personal iPhones)); and (ii) looking for physical documents in the portions of 235 Hillside Avenue to which they either have access to or legally can obtain access (Def. Br. 7-8). As discussed herein, Defendants' approach to their diligence obligations under the Agreement is predicated on at least three erroneous presumptions.

*First*, Defendants wrongfully presume that Section 1(b)(iii)(c) is the only provision that requires them to search for ESI and sources of ESI. (*See* Def. Br. 3 (asserting that "during negotiations both parties repeatedly expressed understanding that [Defendants'] obligations to search electronic devices were intended to be entirely and solely contained in [Section 1(b)(iii)(c)]")). To the contrary, nothing in Section 1(b)(iii) restricts the ambit of Defendants' mandated searches of 235 Hillside Avenue, their home, or any premises used

by the Entities to physical documents.  (*See* Settlement Agreement § 1(b)(iii)(a), (b), (d)).  Evincing this understanding, Section 1(b)(i) defines "documents" to include both physical documents and ESI.  (*Id.*, § 1(b)(i)).  Thus, Section 1(b)(iii)'s directive that Defendants effectuate certain searches for the purpose of "satisfy[ing] their obligations to provide *all documents*," includes searches for both physical documents and ESI, including electronic devices.  (*Id.*, § 1(b)(iii) (emphasis added)).

Therefore, to the extent Defendants have construed their search obligations under Sections 1(b)(iii)(a), (b), and (d) as limited only to searches for physical documents, they have not satisfied their obligations.  To put it clearly, Defendants must search for physical documents *as well as electronic devices and ESI* in the following locations: (i) any buildings located at 235 Hillside Avenue that Defendants have access to or can legally obtain access to (*id.*, § 1(b)(iii)(a)); (ii) their home (*id.*, § 1(b)(iii)(b)); and (iii) any premises used by the Entities to conduct business (*id.*, § 1(b)(iii)(d)).[3]

*Second*, Defendants adopt too restrictive a view of the electronic devices that are in their "possession, custody, or control" under Section 1(b)(iii)(c).  As an initial matter, the parties have agreed that Defendants' production

---

[3] Defendants have represented that they "have searched all the electronic devices that they can access." (Def. Br. 7).  However, in discussing the physical search they conducted at 235 Hillside Avenue, Defendants explain that they found a handful of disassembled computers and servers located in the garage that was used as a storage unit after flooding at the premises. (*Id.* at 8).  Assuming these devices are or were used to conduct the business of one or more of the Entities, to the extent these computers or servers have not been rendered fully inoperable by flooding, these are precisely the types of electronic devices that Defendants must search under Section 1(b)(iii).

obligations are coextensive with those imposed by the Federal Rules of Civil Procedure as they operate in this District. (*See* Settlement Agreement § 1(b)(ii)). Thus, in understanding the scope of the phrase "possession, custody, or control," the Court turns to cases interpreting this phrase in the context of discovery disputes governed by the Federal Rules of Civil Procedure. On this score, the Court agrees with Plaintiff that, in the context of this Agreement, the term "control" "does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." *Gruss* v. *Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (quoting *Asset Value Fund Ltd. P'ship* v. *Care Grp., Inc.*, No. 97 Civ. 1487 (DLC) (JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997)). (*See* Pl. Br. 6-7).

While three of the subprovisions of Section 1(b)(iii) specify precise locations that Defendants must search, Section 1(b)(iii)(c) is broader in that it directs Defendants to search *all* electronic devices owned by Defendants or the Entities that are in Defendants' possession, custody, or control. (*See* Section 1(b)(iii)). For the reasons just discussed, Section 1(b)(iii)(c) imposes an obligation on Defendants to search all qualifying electronic devices that they can practically obtain, which includes those they can access by making requests of counsel or accountants. *See, e.g., Gruss*, 296 F.R.D. at 230 ("[C]ourts in this district have held that documents held by outside counsel are in the possession, custody, and control of their clients."); *De Vos* v. *Lee*, No. 07 Civ. 804 (JBW), 2008 WL 2946010, at *1 (E.D.N.Y. July 29, 2008) (collecting

9

cases for the proposition that "documents in the possession of a party's accountant are deemed within that party's control for purposes of Rule 34 discovery"). Up to this point, Defendants have searched only their personal email accounts and iPhones, which does not appear to be sufficient for complete performance under Section 1(b)(iii)(c). Although the record before the Court does not permit it to assess with precision which of the Entities' electronic devices Defendants have the "practical ability to obtain," Plaintiff has provided documentation supporting its contention that Defendants either held senior executive roles or were in positions to control the Entities. (*See* Pl. Br. 8-9). Given these materials, the Court agrees with Plaintiff that Defendants likely have the "practical ability to obtain" at least some of the Entities' electronic devices and access at least some of their documents. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-82 (S.D.N.Y. 2006) (noting that "[t]he concept of 'control' has been construed broadly" and finding that a senior executive "certainly has the prac[ ]tical ability to obtain the documents sought by plaintiffs").

The Court understands that Defendants may not have the practical ability to access and produce all of the documents and information enumerated in Section 1(b)(i). In any event, Section 1(b)(iii)(c) compels Defendants to search a broader universe of devices than they appear to have searched at this juncture. The Court will not hold it against Plaintiff that it is not in a position to identify specific electronic devices that Defendants must search. Indeed, it is incumbent upon Defendants to perform their diligence obligations in good

faith, which includes engaging in a legitimate effort to identify the devices that they can practically obtain. (*See* Settlement Agreement § 1(b)(ii) ("[Defendants' counsel] shall supervise, manage and conduct the production of documents with the same degree of professionalism, candor, and ethics as they would supervise, manage, and conduct the production of documents and information in a civil action pending in the S.D.N.Y.")).

*Third*, Defendants erroneously assert that the Agreement mandates them to search electronic devices that are "consumer facing," ostensibly relieving them of any responsibility to search potentially existing IT architecture or cloud networks. (Def. Br. 4). Plaintiff interprets Defendants' position as refusing to search any business computers or servers. (*See* Pl. Br. 11). To the extent Defendants assert such a narrow construction of the electronic devices they must search, this interpretation flatly contradicts the terms of the Agreement. The Agreement is clear that Defendants must search "*all* electronic devices" owned by them or the Entities that are in Defendants' possession, custody, or control. (*See* Settlement Agreement § 1(b)(iii)(c)). Nowhere does the Agreement limit Defendants search obligations to "consumer facing" electronic devices.

The Court also sees no basis for Defendants' disclaiming the responsibility to search "IT architecture or cloud networks" that are accessible from electronic devices that fall within the scope of Section 1(b)(iii). The Agreement does not restrict Defendants' obligations to search electronic devices for locally saved files. Thus, to the extent Defendants have the practical ability

11

to access potentially relevant documents on any device to which they have practical access, the Agreement obligates them to do so.

In sum, Defendants' diligence obligations under the Settlement Agreement extend to all electronic devices that are owned either by them or the Entities and that Defendants can practically access. The Court understands this to mean that if Defendants know where certain of their or the Entities' electronic devices are located, they must search them if they have the practical ability to do so.

### 3. The Agreement Obligates Defendants to Produce the Lists

The final issue concerns Defendants' obligations to prepare and produce the Lists. The Court concludes that if the Lists are not currently in existence, Defendants must compile the necessary information to the extent such information is acquirable by means of their good-faith compliance with Defendants' diligence obligations under Section 1(b)(iii), as discussed above.

The Court finds the Agreement to be ambiguous as to whether Section 1(b)(i) creates an affirmative obligation for Defendants to compile the information necessary to prepare the Lists, as opposed to merely search for existing versions of the Lists. In resolving this ambiguity, the Court draws upon its over seven years of experience with this matter and its understanding that the information contemplated by the Lists is (and has been since the inception of this case) of critical importance to Plaintiff. The Court is convinced that Plaintiff would not have entered into the Agreement on the understanding that Defendants only had to search for the Lists they had reason to believe did

12

not exist. (*See* Pl. Br. 5). Therefore, to the extent Defendants are able to glean the information necessary to prepare the Lists by performing the searches set forth in Section 1(b)(iii), they must compile and produce that information.

## CONCLUSION

To summarize, the Court finds that Defendants' obligations to search for the documents and information in the categorized list set forth in Section 1(b)(i) are circumscribed by Section 1(b)(iii). Defendants, however, have thus far asserted too narrow an interpretation of their diligence obligations and are not currently in full compliance with their obligations under the Agreement. To help the parties chart a path forward, the Court articulates the following steps that Defendants must take pursuant to the Agreement:

- Compile the Lists, to the extent the information necessary to do so is obtainable via good-faith compliance with their diligence obligations as set forth in Section 1(b)(iii) (including by seeking such information from counsel or accountants);

- Conduct searches for both physical documents and ESI at any premises used by the Entities to conduct business pursuant to Section 1(b)(iii)(d);

- Expand their searches of electronic devices to servers and computer equipment that Defendants have the practical ability to obtain and either know or have reason to know contain responsive documents (including by seeking such material from counsel or accountants);

- Ascertain, to the extent practicable, the location of all Entities' servers and email accounts, and extract and produce from them all responsive documents (including, without limitation, by searching for ESI at the locations specified in Sections 1(b)(iii)); and

- Expand their searches of electronic devices to include cloud networks or other IT infrastructure that have been used by Defendants or the entities, to the extent Defendants have the practical ability to access such networks.

As the Court previously stated, the Agreement does not impose upon Defendants a free-standing obligation to produce all of the documents and information enumerated in Section 1(b)(i).  Rather, the Agreement meaningfully limits what Defendants must produce to those materials that are within their possession, custody, or control, which the Court has interpreted to include materials that can be acquired by seeking them from counsel or accountants.  The Court recognizes that many (if not all) of the Entities ceased operating as ongoing concerns some years ago.  For this reason, the Court will not necessarily infer bad faith or an intent to obstruct in the event Defendants are unable to produce all of the materials contemplated by the Agreement.  Thus, to some extent, Plaintiff must rely on Defendants' integrity and good faith in ascertaining the scope of the documents, information, and electronic devices that they can practically access.  The Court cannot guarantee that Plaintiff will receive all of the information enumerated in the Agreement, but Defendants must expand their efforts beyond the searches they have performed so far.

The Court GRANTS Defendants a period of 60 days within which to comply with the provisions of this Order.  The parties are directed to submit a joint letter to the Court addressing any remaining disputes regarding Defendants' compliance with the Agreement (and, to be clear, the Court hopes that there are none) on or before **September 23, 2022.**

SO ORDERED.

Dated: July 18, 2022
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge