UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEO-GROUP COMMUNICATIONS, INC.,

                              Plaintiff,

                    -v.-

VIPIN SHAH,

                              Defendant.

15 Civ. 1756 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge[1]:

The Court is in receipt of the parties' letters outlining (i) disputes concerning the server searches (Dkt. #353, 356), and (ii) the compliance *vel non* of Vipin and Nayana Shah with the Settlement Agreement and prior Court Orders regarding the same (Dkt. #357, 360). The Court is also in receipt of an additional letter from the Shahs, dated October 31, 2022, requesting leave to file a reply letter and noting recent productions of responsive documents from hard drives recently recovered from 235 Hillside Avenue, Williston Park, New York ("235 Hillside"). At the outset, the Court denies the Shahs' request for leave to file a reply letter. It addresses the parties' other issues in the remainder of this Order.

**A.    The Servers**

Beginning with the servers, the Court is dismayed to learn that they have suffered extensive environmental damage, and that there are risks attendant to attempting to recover data from them. (Dkt. #356 at 5, 353-1 at 2-3). In this

---

[1]      The Clerk of Court is directed to amend the caption as set forth above.

regard, and in contrast to certain intimations in Plaintiff's submissions, the Court sees no reason to doubt the forensic memorandum written by Contact Discovery Services, LLC ("Contact"), which memorandum notes in relevant part that conducting online or offline server discovery may irreparably damage the servers, and, separately, that sending the drives to a specialized outside vendor for mitigation techniques comes at a significant price.  (Dkt. #353-1 at 3-5 (noting the options for recovering data from the servers, and further noting that mitigation measures may cost $200,000-$570,000)).  The Court further notes that James O. Whitehead III, Associate Director of Digital Forensics at Contact, submitted a declaration in line with the Court's prior Orders, certifying that his contacts with Shomik Ghosh and Nishant Shah have been limited to logistics for the forensic examination.  (Dkt. #357-1 at ¶¶ 6-8).  Whitehead has also declared, under penalty of perjury, that Contact does not employ any Shah family members; that Contact has no conflicts of interest; and that Contact has no financial interest in this matter.  (*Id.*).  In the absence of any evidence to the contrary, the Court takes Whitehead's representations to be true, just as it does the forensic memorandum.

As to how to proceed with the servers, the Court believes that the fairest way forward — which takes into account what was contemplated by the parties and the Court at the time the Settlement Agreement was signed *and* the interests in proportionality at this stage — is for the Shahs to turn over the physical servers to Plaintiff in satisfaction of their obligations to search the servers.  (Dkt. #353 at 10).  The Shahs must also turn over any passwords or

2

authorizations of which they are aware in order to permit Plaintiff to search the servers.  At this stage, after years of pre- and post-settlement litigation, this resolution of the server issue is equitable to both parties.  Indeed, the Court agrees with the Shahs that, given the burdens of the searches, the changes to the Shahs' financial situation between settlement and now, and the limited potential benefits of further searches, they should not be required to perform an additional, multi-hundred-thousand-dollar undertaking.  (*Id.* at 11).  To be clear, however, the Court's resolution of the server issue does not alter the Shahs' other obligations under the Settlement Agreement and this Court's Orders.

### B.     The Hard Drives

In their letter of October 18, 2022, the Shahs for the first time disclosed the existence of four computer hard drives located at 235 Hillside.  (Dkt. #357 at 16).  These drives have suffered less damage than the servers, and the Shahs have authorized Contact to forensically image the drives and extract data from them.  (*Id.*).  On October 31, 2022, the Shahs noted that they have made productions of responsive documents from these drives, and intend to make one final production by November 4, 2022.  (Dkt. #361).  Plaintiff claims that the Shahs' failure to disclose when and how the drives were found — as well as their failure to disclose the drives' existence for some seven years — constitute a "serious breach not only of [the Shahs'] obligations to [Plaintiff], but also to the Court."  (Dkt. #360 at 3).  The Court agrees that the Shahs should have disclosed the hard drives' existence earlier, and that further

productions will create delay beyond the Court's previously-ordered deadline for compliance with its Orders.  However, on the theory that late-produced information is preferable to never-produced information (particularly given the status of the servers), the Court will order the Shahs to make a final production from the hard drives by **November 11, 2022**, and to take certain steps based on the documents retrieved from those drives as detailed in the remainder of this Order.

### C.   The Shahs' Compliance with Remaining Obligations Under the Settlement Agreement

Turning to the parties' letters regarding further compliance with the Settlement Agreement, the Court is not prepared to grant the Shahs the relief requested in their letter of October 18, 2022 — namely, a declaration that they have satisfied all of their settlement obligations.  (Dkt. #357 at 1).  Instead, the Court now addresses the parties' dueling views on the Shahs' compliance with other provisions of the Settlement Agreement.

*First*, the Court agrees in part with Plaintiff that there remain accountants and attorneys who may have responsive documents and information.  (Dkt. #360 at 4).  These individuals include:

- CPA Braj Aggarwal, and his firm Braj Aggarwal CPA, P.C.  (Dkt. #360 at 4).  Plaintiff points to documentary evidence that suggests that Mr. Aggarwal assisted with Jaina-related matters in 2015.  (*Id.*; *see also* Dkt. #360-1, 360-2).

- Humayan Siddiqi.  (Dkt. #360 at 5).  Although the Shahs disclaim any obligation to contact Mr. Siddiqi because he did not represent the Shahs in a formal capacity (Dkt. #357 at 14), Plaintiff has submitted documentary evidence that Mr. Siddiqi provided Vipin

4

Shah with legal advice related to this case (Dkt. #360 at 5; Dkt. #360-3, 360-4).

- Anil Arora.  (Dkt. #360 at 5-6).  Mr. Arora was formerly counsel of record to the Shahs in this case, and thus may be in possession of responsive documents.  (*Id.*).

The Court directs the Shahs to contact Mr. Aggarwal and Mr. Siddiqi, and to determine whether either has responsive documents or information.  As to Mr. Arora, the Shahs represent that they have reached out to him by phone and email numerous times, and that he has refused to engage with them. (Dkt. #357 at 13-14).  As such, the Court grants Plaintiff's request to serve a subpoena on Mr. Arora and his firm, directing production of responsive documents.  (Dkt. #360 at 5-6).

Plaintiff further disputes whether the Shahs' outreach to other attorneys and accountants was sufficient.  (Dkt. #360 at 4-5).  In essence, Plaintiff claims that the Shahs' counsel must personally supervise and manage potential document production from certain accountants and attorneys, and requests that this Court order the Shahs to "obtain from each accountant and attorney all documents (including ESI) received from the Shahs, Jaina, or any representative of Jaina[.]" (Dkt. #360 at 4-5).  The Court disagrees.  The Shahs' counsel represents that he has undertaken significant outreach efforts to various attorneys and accountants, and has communicated to them the obligations imposed by the Settlement Agreement and this Court's prior Orders.  (Dkt. #357 at 13-14).  Those attorneys and accountants, in turn, have reviewed their files to determine whether they have responsive information. (*Id.*).  As the Court noted in its interpretation of the Settlement Agreement, "to

some extent, Plaintiff must rely on Defendants' integrity and good faith in ascertaining the scope of the documents, information, and electronic devices that they can practically access." (Dkt. #350 at 14). The Court does not believe that the Shahs have eschewed their obligations to reach out to these individuals to ascertain whether there are responsive documents and information.

*Second*, Plaintiff argues that the Shahs have not produced all of the Category Two and Three documents within their possession, custody, and control. (Dkt. #360 at 6-7). In particular, Plaintiff highlights that the Shahs have produced no documents related to five subcategories of Category Two documents concerning various financial information, and have produced only a few documents related to two subcategories of Category Three documents. (*Id.*). The Shahs, for their part, detail the searches that they have undertaken of their residence, 235 Hillside, and electronic devices, and claim to have produced all responsive documents. (Dkt. #357 at 15-18). The Shahs further argue that they have satisfied their obligations to search any "premises used by 235 Hillside LLC, Jaina, Jaina Infrastructure, Inc., Ipsita Telecom Services Inc. or Neminath to conduct business" (Dkt. #338 at 3), because the premises used for all of the relevant settlement entities was 235 Hillside (Dkt. #357 at 18). The Settlement Agreement defines "Jaina" to mean "Jaina Systems Network, Inc." (Dkt. #338 at 1). Thus, premises used by other entities like Jaina Systems Network (Pvt) Ltd. — which the Shahs claim is a wholly separate

company owned by Surajit Bose in India — are outside the scope of the Settlement Agreement.  (Dkt. #357 at 18).

As an initial matter, this dispute may be premature, given the Shahs' stated intent to make further productions of documents from the hard drives they have recovered.  Further, Plaintiff may discover additional information from searches of the servers.  But beyond this, the Court directs the Shahs to certify in writing that they have produced to Plaintiff all responsive Category Two and Three documents covered by the Settlement Agreement and this Court's prior Orders following the completion of productions from the hard drives and the outreach to Mr. Aggarwal and Mr. Siddiqi.  Again, it bears repeating that the Settlement Agreement "meaningfully limits what Defendants must produce to those materials that are within their possession, custody, or control[.]"  (Dkt. #350 at 14).  This means that the Court "cannot guarantee that Plaintiff will receive all of the information enumerated in the Agreement"; instead, the Shahs must comply in good faith with what the Settlement Agreement requires.  (*Id.*).

*Third*, Plaintiff disputes the accuracy of the lists submitted by the Shahs. (Dkt. #360 at 8).  To start, Plaintiff argues that the lists cannot possibly be considered complete, because the Shahs have not completed the searches of the hard drives and servers, and because of the identified issues with outreach to certain attorneys and accountants.  (*Id.*).  To the extent that the Shahs' outreach to Mr. Aggarwal and Mr. Siddiqi, or their searches of the hard drives,

reveal additional information bearing on the accuracy of the lists, the Shahs are of course obligated to submit revised lists to Plaintiff.

As to the shareholder list, Plaintiff has put before the Court documentary evidence suggesting that (i) Frank Vella may have alienated his shares in Jaina in 2011 and (ii) Jaina may have had more than six shareholders from 2013 through 2016.  (Dkt. #360 at 9).  In particular, Plaintiff argues that documents related to Jaina's Citibank Commercial Credit application and tax returns, communications with Jaina's CPA, and communications with attorneys and outside investors show that Mahendra Shah, Vipin Shah, Nayana Shah, and Surajit Bose were likely shareholders through 2012, and that this same group and two additional individuals were likely shareholders from 2013 forward.  (*Id.* at 9-16).

For their part, the Shahs attest that from 2012 through 2021, Jaina had "four consistent shareholders" all owning 25% of the company: Surajit Bose, Frank Vella, Mahendra Shah, and Nayana Shah.  (Dkt. #357 at 9-10).  The Shahs note that they reviewed documents, including board minutes and tax returns, spoke with Nayana and Mahendra Shah to confirm their ownership, and also spoke with Frank Vella, who confirmed his continuing ownership of 25% of Jaina.  (*Id.*).  They also spoke to accountants and attorneys.  (*Id.*). Although the Shahs were not able to speak with Surajit Bose, who remains missing, they have proffered documentary evidence that Bose viewed himself as a 25% shareholder in 2014 and 2015.  (*Id.*; *see also* Dkt. #357-3, 357-6).  The Shahs also contend that the documentary record contradicts assertions

Plaintiff makes about Ketan Shah and Gauvrav Sharma and their potential ownership interest in Jaina.  (Dkt. #357 at 10).  Finally, the Shahs have submitted a declaration from Nayana Shah; under the penalty of perjury, Mrs. Shah declared that she remains a 25% shareholder in Jaina, and that she has "not received any notice that any of the other initial shareholders" of the company have "given up, sold, or alienated any of their shares" and remain "25% shareholders" of the company."  (Dkt. #357-2).

The Court will not resolve this largely factual dispute regarding the shareholder list via Court order, as Plaintiff requests.  As the Court's interpretation of the Settlement Agreement makes clear, the Shahs are directed to make the lists contemplated by the Settlement Agreement "to the extent the information necessary to do so is obtainable via good-faith compliance with [the Shahs'] diligence obligations[.]"  (Dkt. #350 at 13).  The parties may continue to disagree over what the documentary record reflects.  (*See* Dkt. #357 at 10).  That being said, and in light of the declaration that Nayana Shah has already submitted, the Court directs the Shahs to submit a declaration, under penalty of perjury, from an affiant with knowledge of this dispute, confirming that Vipin Shah is not and at no time during the relevant timeframe was a shareholder of Jaina.  Further, the affiant shall declare that he or she has reviewed the documents submitted by Plaintiff in support of its contention that the shareholder list is inaccurate, and that no revisions to the shareholder list are required based on such review.  (*See* Dkt. #360 at 8-15).  If, in reviewing such

documents, the Shahs find reason to revise the shareholder list, they shall do so promptly.

Plaintiff further contends that the loan list submitted by the Shahs is inaccurate.  (Dkt. #360 at 16).  In particular, Plaintiff argues that certain payments from Vision Impex LTD and Nexvoiz were not in fact loans, but instead were payments of customer invoices, and that the loan list is missing potential loans from TD Time.  (*Id.* at 16-17).  The Shahs have not yet engaged with these new arguments, but have stated that they have satisfied their obligations to compile the loan list, based on review of financial, accounting, and tax records.  (Dkt. #357 at 11-12).  Again, this issue presents a factual dispute regarding whether the loan list is accurate based on dueling reviews of the documentary record.  Accordingly, the Shahs are directed to review the documents submitted by Plaintiff in support of its contentions regarding the loan list (Dkt. #360 at 16-17); after conducting the review, the Shahs will either submit a revised list or a sworn statement that the prior list was accurate.

## D.    References to Vishal Shah and Threats of Contempt Sanctions

In their final request for relief, the Shahs request that the Court order Plaintiff to refile its letter of October 17, 2022, which letter refers to Vishal Shah.  (Dkt. #357 at 20).  In the letter, Plaintiff claims that Contact's forensic memorandum is deficient because it did not note whether the Shahs, their family members, or their attorneys "have any business, professional, or personal relationships with [Contact] that predated the engagement[.]"  (Dkt. #356 at 7).  Plaintiff then proceeds to claim that this "is a very significant

omission, given that the Shahs' second son, Vishal Shah, is a highly experienced and skilled information technology professional." (*Id.*).  Since that letter, Plaintiff has walked back from his statements; he notes, for example, that the Declaration of James O. Whitehead III (Dkt. #357-1) submitted with the Shahs' letter of October 19, 2022, "now makes more robust disclosures[.]" (Dkt. #360 at 17 n.2).

The Court will not order Plaintiff to refile its prior letter.  That said, the Court is alarmed by Plaintiff's rank speculation, and its implication that Vishal Shah — a non-party — was somehow improperly involved in preparation of the forensic memorandum.  In the same vein, the Court will not now order that Plaintiff cease raising the prospect of contempt sanctions.  (Dkt. #357 at 20). That said, the Court urges the parties to conduct themselves professionally, with a minimum of performative motion practice and with due regard for the personal dignity of the litigants and their families.

## CONCLUSION

To summarize, the Court believes that the Shahs must still take certain steps in order to satisfy their obligations under the Settlement Agreement, and to address certain concerns raised by Plaintiff.  As noted, the Shahs are ordered to complete their review of production from the recently-located hard drives by **November 11, 2022.**  In addition, by **December 2, 2022**, the Shahs are **ORDERED** to:

- Turn over the physical servers recovered from 235 Hillside to Plaintiff, including any passwords or authorizations they have or know of in order to permit Plaintiff to search the servers;

11

- Contact Mr. Aggarwal and Mr. Siddiqi to determine whether these individuals have responsive documents or information;

- Certify in writing that they have produced to Plaintiff all responsive Category Two and Three documents covered by the Settlement Agreement and this Court's prior Orders following completion of productions from the hard drives and outreach to Mr. Aggarwal and Mr. Siddiqi;

- Submit a declaration, under penalty of perjury, from an affiant with knowledge of this dispute, confirming that Vipin Shah is not and at no time during the relevant timeframe was a shareholder of Jaina. Further, the affiant shall declare that he or she has reviewed the documents submitted by Plaintiff in support of its contention that the shareholder list is inaccurate, and that no revisions to the list are required based on such review; and

- Review the documents submitted by Plaintiff in support of its contentions regarding the loan list, and to submit a revised list based on such review if necessary or a declaration under penalty of perjury that no revisions are necessary.

Additionally, as noted in this Order, the Court **GRANTS** Plaintiff's request to serve a subpoena on Mr. Arora and his firm, directing production of responsive documents.

SO ORDERED.

Dated:  November 4, 2022
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge