UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEO-GROUP COMMUNICATIONS, INC. | Case No. 15-cv-01756 (KPF) |
| Plaintiff, | |
| v. | |
| RAVI CHOPRA, MAHENDRA SHAH, VIPIN SHAH, 728 MELVILLE PETRO LLC, KEDIS ENTERPRISES LLC, JMVD HILLSIDE LLC, NYC TELECOMMUNICATIONS CORP., and SHALU SURI, | |
| Defendants. | |

**RAVI CHOPRA'S AND NYC TELECOMMUNICATION CORP.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S RULE 60(B) MOTION**

Humayun Siddiqi, Esq.
11 Broadway, Suite 615
New York, NY 10004
(646) 688-3553
*Attorney for Defendants Ravi Chopra and
NYC Telecommunications Corp.*

TABLE OF CONTENTS

Preliminary Statement ................................................................................................1

Procedural History .....................................................................................................4

Standard of Review ...................................................................................................5

Argument ...................................................................................................................6

POINT I - GCI LACKS CAPACITY TO REQUEST RELIEF ................................6

POINT II - GCI LACKS STANDING TO REQUEST RELIEF ..............................8

POINT III - GCI HAS NOT SOUGHT RELIEF WITHIN A YEAR OF JUDGMENT ...........9

POINT IV - GCI'S DELAY IN SEEKING RELIEF IS NOT 'REASONABLE' .......................10

POINT V - NEITHER CHOPRA NOR NYC TELECOMMUNICATIONS WITHHELD
DOCUMENTS OR ALTERED COMMUNICATIONS ............................................14

POINT VI. NEITHER CHOPRA NOR NEW YORK TELECOMMUNICATIONS OFFERED
PERJURED TESTIMONY WITH RESPECT TO EITHER THE ROBINSON BROG
TRANSFERS OR THE LLC TRANSFERS ...........................................................17

    A. The Robinson Brog Transfers ........................................................................18
      1. Chopra Did Not Receive Funds in India ....................................................18
      2. No "Hawala" Spreadsheet Exists ...............................................................18
      3. The Spreadsheet Does Not Represent "Hawala" Transactions ..................19
      4. The Spreadsheet Does Not Show the Receipt of Cash From Jaina's Customers in India
        ....................................................................................................................20
      5. The alleged $60,000 'Hawala' Payment ....................................................21
      6. TD Time Payments Were Not "Hawala" Payments from TS USA ............21
      7. Mahendra Shah's Communications ............................................................22
      8. The Vision Impex Transactions Reflected Loans .......................................22
      9. Vision Impex's Status as a Lender Has Been Confirmed and Corroborated Subsequent
        to Chopra's and NYC Telecommunications' Motion for Summary Judgment ...............23
      10. Payments to Vision Impex Align with the Payments to Robinson Brog ........................24

    B. The LLC Transfers .........................................................................................25
      1. Jaina's Accounting Entries Don't Correspond to Actual Cash Flows ............................25
      2. WPR's Alleged Fraud and Misconduct ....................................................28

POINT VII – GCI WAS NOT PREVENTED FROM FULLY AND FAIRLY PRESENTING
ITS CASE ................................................................................................................29

POINT VIII – GRANTING RELIEF FROM JUDGMENT WOULD CAUSE UNDUE
PREJUDICE TO CHOPRA AND NYC TELECOMMUNICATIONS .......................33

POINT IX - NEITHER THE LLC TRANSFERS NOR THE ROBINSON BROG TRANSFERS
IMPLICATED NYC TELECOMMUNICATIONS ...............................................34

POINT X – GCI CANNOT SEEK RELIEF PURSUANT TO Fed. R. Civ. P. 60(b)(6) ............35

Conclusion ...............................................................................................................35

TABLE OF AUTHORITIES

**Cases**

*Am. Metals Serv. Exp. Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 721 (1st Cir. 1981) ..............11

*Amoco Overseas Oil Co. v. Compagnie Nationale Algeriennes de Navigation*, 605 F.2d 648, 656 (2nd Cir.1979)........................................................................................................................10

*Andrulonis v. United States*, 26 F.3d 1224, 1235 (2nd Cir. 1994); ....................................................5

*Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506, 126 S. Ct. 1235, 1240, 163 L. Ed. 2d 1097 (2006) ...7

*Canini v. U.S. DOJ Fed. Bureau of Prisons*, 2008 WL 818696, at *2 (S.D.N.Y. 2008) ..........6, 34

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003)....14

*Clarkson Co. v. Shaheen*, 544 F.2d 624, at 631 (2nd Cir.1976) ........................................................6

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2nd Cir. 2015)..........................................................................................................................................5

*Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *9 (S.D.N.Y. 2018) ....21, 23, 24, 31, 32, 33

*Gonzales v. Nat'l Westminster Bank, Plc*, WL 6978874, at *7 (S.D.N.Y. Nov. 18, 2013)..........31

*Gould Entm't Corp. v. Bodo*, 107 F.R.D. 308, 311 (S.D.N.Y.1985)............................................11

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 (2nd Cir. 2006) ................................10

*Henriquez v. Astrue*, 499 F.Supp.2d 55, 57 (D.Mass.2007)........................................................11

*In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *1 (N.D. Cal. 2014) ....................8

*In re Lawrence*, 293 F.3d 615, 623 (2d Cir. 2002)..........................................................................5

*Juma Technology Corp. v. Anthony Servidio et al.*, Sup Ct, New York County, May 24, 2017, Singh, A., index No. 151483/2016 ...............................................................................................8

*Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir.1986)..........................................11

*Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)....................................................................................9

*Limon v. Double Eagle Marine, L.L.C.*, 771 F.Supp.2d 672, 677–79 (S.D.Tex. 2011)................11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) .5, 7

*M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2nd Cir. 2013)................................................................5

*Makarova v. United States*, 201 F.3d 110, 113 (2nd Cir. 2000)......................................................5

*Mather Const. Co. v. United States*, 475 F.2d 1152, 1155 (Ct. Cl. 1973 .......................................6

*New Asia Enterprises Ltd. v. Fabrique, Ltd.*, 2017 WL 384687, at *1 (S.D.N.Y. 2017)...........6, 7

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361, 372 (S.D.N.Y. 1997) ........................................................................................................................................................6

*Reese v. McGraw-Hill Companies, Inc.*, 293 F.R.D. 617, 624 (S.D.N.Y. 2013)........................10

*Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 188 (E.D.N.Y.1992)..................................11

*Securities and Exch. Comm'n v. McNulty*, 137 F.3d 732, 739 (2nd Cir.1998)..............................13

*Sonberg v. Niagara Cnty. Jail*, 2013 WL 2468691, at *4 (W.D.N.Y. June 7, 2013)...................31

*Transpolymer Industries, Inc. v. Chapel Main Group.*, 582 A.2d 936 (Del. 1990) ...................7, 8

*U.S. v. Cirami*, 535 F.2d 736 (1976) (2nd Cir.)..............................................................................13

*United States v. $350,000*, 1996 WL 706821, at *2 (E .D.N.Y. Dec. 6, 1996)............................11

*United States v. Banki*, 685 F.3d 99, 109 (2nd Cir. 2012)...............................................................5

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391(2nd Cir. 2001)....................................5

*United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021)..................................................................18

*Warren v. Garvin*, 219 F.3d 111, 114–15 (2nd Cir. 2000) ............................................................35

*Warth v. Seldin*, 422 U.S. 490, 498 (1975)..............................................................................5, 9

*Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109 (S.D.N.Y. 2019, Hon. K.F. Failla)......10

**Statutes**

New York Debtor and Creditor Law §273 ............................................................................3, 17
New York Debtor and Creditor Law §274 ............................................................................3, 17
New York Debtor and Creditor Law §276 ............................................................................3, 17
8 Del. C. § 122 ..................................................................................................................6
8 Del. C. § 278 ..................................................................................................................8
8 Del. C. § 510 ..........................................................................................................6, 7, 8

**Rules**

Fed. R. Civ. P.  56............................................................................................................16
Fed. R. Civ. P. 12............................................................................................................9, 36
Fed. R. Civ. P. 60............................................................................2, 3, 4, 9, 10, 35
Fed. R. Civ. P. 79............................................................................................................10

**Treatises**

11 Wright, Miller & Kane ................................................................................................6

## PRELIMINARY STATEMENT

Nearly eight years after filing its complaint and four and a half years after Ravinder Chopra ("Chopra") and NYC Telecommunications Corp. (NYC Telecommunications") obtained summary judgment dismissing that same complaint, Geo-Group Communications, Inc. ("GCI") returns to this Court seeking relief from judgment on the basis of fraud. There is, however, no fraud. No documents were withheld from GCI, no perjurious testimony was offered. GCI's motion amounts to little more than a last-ditch transparent attempt to extract funds from Chopra and NYC Telecommunications to defray the costs associated with an ill-advised lawsuit that from its very commencement has been based on a failed understanding of New York's Debtor and Creditor Law. GCI offers a fantastical tale of exotic financial trading systems and interpretations of various financial ledgers that transcend any credible notion of accounting. To credit the allegations in GCI's motion would be to credit the existence of a disparate network of individuals and companies undertaking financial transactions that not only run counter to common sense but that are inimical to the financial interests of the participants and that exist solely for the benefit of Chopra and NYC Telecommunications. Further, it would require the Court to discard a judgment that was obtained on the basis of independent bank statements and testimony from individuals and entities with first-hand knowledge of the transfers in question who have willingly placed themselves in legal jeopardy by freely admitting under oath that they are the recipients of funds that GCI alleges are the proceeds of fraudulent transfers.

GCI's motion should be denied for the following procedural and substantive reasons.

First, the corporate charter of GCI, a company incorporated under the laws of the State of Delaware, was voided by the State of Delaware in 2016, rendering its power to sue inoperative and thereby depriving it of the capacity to appear before this Court and seek relief.

Second, under Delaware law the voiding of GCI's corporate charter has caused GCI to cease to exist and concomitantly deprived it of legal standing. It is axiomatic that the absence of standing precludes a grant of relief and necessitates dismissal of the complaint, even post-judgment.

Third, the motion was not brought within one year of the Court's final judgment as required by Fed. R. Civ. P. 60(c)(1).

Fourth, even were the Court to have deemed GCI to have filed its motion within the one-year period prescribed by Fed. R. Civ. P. 60(c)(1), GCI's filing was nonetheless not accomplished within a "reasonable" period. GCI has been in possession of the entirety of the documents it has produced in support of its motion since November 11, 2021 and completed its review of the same by mid-December, 2021. GCI offers no credible justification for delaying the filing of its motion for nearly a year.

Fifth, neither Chopra nor NYC Telecommunications have withheld any documents. GCI does not point to a specific instance of either Chopra or NYC Telecommunications having withheld documents. GCI attempts to conflate Chopra and NYC Telecommunications with non-party Jaina Systems Network, Inc. ("Jaina") and the officers, directors and shareholders of the same. Further, the email that GCI purports to have been "altered" was not in fact altered.

Sixth, neither Chopra nor NYC Telecommunications offered any perjured or misleading testimony with respect to the Robinson Brog Transfers or the LLC Transfers. With respect to the Robinson Brog Transfers, GCI's allegation as to the existence of a "hawala" spreadsheet is fantastical, contradicted by the actual record before the Court and inconsistent with the mechanism of "hawala" as described by GCI itself. GCI's characterization of Vision Impex as being a customer and not a lender is simply false. A review of the unexpurgated documents

produced by GCI itself as well as post-judgment corroboration confirms that Vision Impex was a lender and not a customer. With respect to the LLC Transfers, GCI's reliance on a flimsy textual journal entry is contradicted by the actual flow of funds as documented by wire transfers, uncontradicted testimony and representations made by GCI itself throughout this litigation.

Seventh, the alleged perjurious testimony and alleged withheld documents did not prevent GCI from fully and fairly presenting its case. The Court's decision was soundly grounded in an understanding that New York Debtor and Creditor Law ("NYDCL") §§ 273, 274 and 276[1] are aimed at tracing the recipients of improperly transferred funds. The Court determined that neither Chopra nor NYC Telecommunications received the funds in question and accordingly granted summary judgment.

Eighth, GCI has entirely glossed over the issue of hardship that would accrue to Chopra and NYC Telecommunications should GCI be relieved of judgment.  The pendency of this action for nearly eight years – in part due to the dilatory conduct of GCI – has deprived Chopra and NYC Telecommunications of evidence and testimony necessary for an effective defense.

Ninth, GCI cannot be relieved of judgment with respect to NYC Telecommunications as GCI has never alleged the participation of NYC Telecommunications with any of the disputed transfers and, further, none of the alleged perjurious testimony or allegedly withheld documents show any participation on the part of NYC Telecommunications.

Tenth, GCI cannot obtain relief pursuant to Fed. R. Civ. P. 60(b)(6) as Courts have consistently and uniformly held that Fed. R. Civ. P. 60(b)(6) only applies if the reasons offered

---

[1] On December 6, 2019, Article 10 of New York's Debtor & Creditor Law was replaced with provisions from the Uniform Voidable Transactions Act (UVTA). The new law became effective on April 4, 2020 but only applies to transfers made or obligations incurred on or after that effective date. As all the disputed transactions arose prior to April 4, 2020 the new provisions are inapplicable.

for relief from judgment are not covered under the more specific provisions of Fed. R. Civ. P. 60(b)(1)-(5).

## PROCEDURAL HISTORY[2]

GCI filed its original complaint against various defendants on March 9, 2015. (Dkt. No. 1). Subsequent to various motions to dismiss, on February 22, 2016  GCI filed its Third Amended Complaint ("TAC") which alleged, inter alia, that  (i)  transfers amounting to $1,350,000 ("Robinson Brog Transfers") were made by Jaina to the law firm Robinson Brog to satisfy Chopra's debt to the firm and (ii) transfers amounting to $660,000 ("the LLC Transfers") were made to 728 Melville Petroleum LLC, JMVD Hillside LLC, and Kedis Enterprises LLC (collectively "the LLC Defendants") at the direction of Chopra. GCI alleged that the various transfers violated NYDCL §§ 273, 273-a, 274 and 276. (TAC ¶¶ 23, 24, 37, 41, 44, 51, 52 , Dkt. No. 105). In December, 2017 the remaining defendants Chopra, NYC Telecommunications, Vipin Shah ("V. Shah") and Mahendra Shah ("M. Shah") moved for summary judgment dismissing the complaint. (Dkt. Nos. 193, 200, 208).  On July 30, 2018 the Court granted the motions for summary judgment of Chopra, NYC Telecommunications as well as M. Shah and denied the motion for summary judgment of V. Shah. (Dkt. No. 236). On or about July 1, 2021 GCI, V. Shah and his non-party spouse Nayana Shah entered into a settlement agreement ("Settlement Agreement"). (Dkt. Nos. 330, 338).

---

[2] This case has a lengthy procedural history extending over 8 years. Chopra and NYC Telecommunications restrict their discussion to facts that are relevant to their Opposition to GCI's motion. An extensive "Statement of Relevant Facts" was provided by the LLC Defendants in an earlier filed motion (Memorandum of Law in Opposition, 3-8, Dkt. No. 283)

## STANDARD OF REVIEW

Whether a Plaintiff has Article III standing is a threshold question in every federal case that "determine[s] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III standing requires plaintiffs to show, at an "irreducible constitutional minimum": (1) that they have suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a favorable decision on the merits likely will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). A district court may dismiss an action for lack of subject matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2nd Cir. 2015). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova v. United States*, 201 F.3d 110, 113 (2nd Cir. 2000). Additionally, a court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2nd Cir. 2013).

Fed. R. Civ. P. 60(b) motions are reserved for exceptional circumstances. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391(2nd Cir. 2001). They are generally disfavored and granted only in "extraordinary circumstances" when it is necessary to "override the finality of judgments in the interest of justice." *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2nd Cir. 1994); see also *Int'l Bhd. of Teamsters*, 247 F.3d at 391 ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."). Such motions are left to the "sound discretion" of the district court. *In re Lawrence*, 293 F.3d 615, 623 (2d Cir. 2002).

The proponent of a Fed. R. Civ. P. 60(b) motion bears the burden of proof. *Int'l Bhd. of Teamsters*, 247 F.3d at 391. That party must "(1) support its motion with 'highly convincing' evidence; (2) show good cause for its failure to act sooner; and (3) prove that granting the motion will not impose any undue hardship on the other parties." *Canini v. U.S. DOJ Fed. Bureau of Prisons*, 2008 WL 818696, at *2 (S.D.N.Y. 2008)(citations omitted).

Furthermore, fraud is not to be presumed but must ordinarily be proven by clear and convincing evidence—in other words, "highly convincing" evidence. See *Clarkson Co. v. Shaheen*, 544 F.2d 624, at 631 (2nd Cir.1976); 11 Wright, Miller & Kane at § 2860.

## ARGUMENT

## POINT I - GCI LACKS CAPACITY TO SEEK RELIEF

The capacity of a corporation is determined by the law under which it is organized. Fed. R. Civ. P. 17(b); *Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361, 372 (S.D.N.Y. 1997). A party must maintain its capacity to sue throughout litigation. *New Asia Enterprises Ltd. v. Fabrique, Ltd.*, 2017 WL 384687, at *1 (S.D.N.Y. 2017); see also *Mather Const. Co. v. United States*, 475 F.2d 1152, 1155 (Ct. Cl. 1973) finding lack of capacity when corporate petitioner's suspension for failure to pay franchise taxes occurred 20 days after filing of its petition.

GCI is a corporation existing under the laws of the State of Delaware and was incorporated on February 9, 1998. (TAC ¶ 11, Dkt. No. 105). Among the powers expressly granted under its incorporating statute are the powers to "sue and be sued in all courts and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, in its corporate name". 8 Del. C. § 122. The grant of powers is subject to a statutory obligation to file an annual franchise tax report and pay franchise taxes and other taxes. When a

corporation fails to meet its statutory obligations "the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative". 8 Del. C. § 510; see also *Transpolymer Industries, Inc. v. Chapel Main Group.*, 582 A.2d 936 (Del. 1990) finding that all the powers conferred upon a corporation declared to be "void" became "inoperative" pursuant to the application of 8 Del. C. § 510.

GCI filed the instant action on March 9, 2015. (Dkt. No. 1).  The records of the Delaware Secretary of State, Division of Corporations disclose that GCI's corporate status as of March 1, 2016 is "Void, AR's or Tax Delinquent". (Declaration of Humayun Siddiqi "Siddiqi Decl.", Exhibit A). The records further disclose that, consistent with the basis for voiding a charter pursuant to 8 Del. C. § 510, GCI has failed to file an annual report since 2013 and has an outstanding balance due with respect to franchise taxes. Id.

Accordingly, in light of GCI's lack of capacity arising from the declaration of the state of its incorporation that GCI's powers are inoperative, GCI cannot proceed with the instant motion. Further, the fact that GCI may have possessed the requisite capacity at the start of this litigation is, per *New Asia*, of no moment as it has failed to maintain its capacity up to this very date.

## POINT II - GCI LACKS STANDING TO SEEK RELIEF

"The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment". *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506, 126 S. Ct. 1235, 1240, 163 L. Ed. 2d 1097 (2006).

GCI's lack of standing is distinct from but tied to its lack of capacity and relates to a lack of a redressable injury, an indispensable component of standing. *Lujan,* at *2136. The Supreme Court of Delaware, Delaware's highest court, has held that a corporation deemed void pursuant

to Del. C. § 510 "has thereby ceased to exist and has lost any standing to appeal and be heard".

*Transpolymer,* at *1.  Applying the determination of *Transpolymer*, the voiding of GCI's charter

pursuant to 8 Del.C. § 510 has caused GCI to cease to exist thereby eliminating any redressable

injury and irremediably depriving GCI of any claim to standing.

In a New York case, *Juma Technology Corp. v. Anthony Servidio et al.*[3], Sup Ct, New

York County, May 24, 2017, Singh, A., index No. 151483/2016, Plaintiff Juma Technology, a

Delaware corporation, filed an action sounding in breach of fiduciary duty. The various

defendants moved to dismiss alleging, inter alia, Juma's lack of standing. The Court, relying on

*Transpolymer*, determined that the voiding of Juma's charter pursuant to 8 Del. C. § 510 caused

a loss of standing and dismissed the complaint. *Juma,* at 7.

*Juma* is particularly instructive as the Court also expressly dealt with the distinction

between a "void" corporation and a "dissolved" corporation. Juma claimed it had standing to sue

pursuant to 8 Del. C. § 278 which relates to "dissolved corporations".

The Court rejected Juma's argument, noting that "§ 278 applies to corporations that

'expire by their own limitation or are otherwise dissolved' and not to corporations that are void.

Moreover, the Delaware Code provides for a procedure for dissolution and the Complaint does

not allege that Juma followed the procedure." *Juma*, at 6-7.

Other Courts have come to a similar determination with respect to the applicability of 8

Del. C. § 510. See *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *1 (N.D. Cal.

2014) where the Court denied plaintiff's motion to add a new class representative that had been

voided as a corporation under Delaware law for failure to pay franchise fees, noting the finding

of the Delaware Supreme Court—that void corporations lose their standing to pursue legal

---

[3] A copy of the decision is annexed as Exhibit B to the Declaration of Humayun Siddiqi

actions. As with *Juma*, nothing indicates that GCI expired by some internal limitation or undertook the procedures described in 8 Del. C. §§ 273 – 278 to dissolve the corporation.

As noted in *Warth*, standing goes to the very power of the Court to "entertain the suit". Accordingly, GCI's lack of standing necessarily implicates not only the denial of the instant motion but dismissal of the action that underlies the basis of the final judgment of this Court. See Fed. R. Civ. P. 12(h)(3) "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action".

### POINT III - GCI HAS NOT SOUGHT RELIEF WITHIN A YEAR OF JUDGMENT

GCI's focus on the "Stipulation and Order of Dismissal of Geo-Group's Claims Against Vipin Shah" (the 'Stipulation') is misplaced. (Geo-Group's Memorandum of Law ("MOL")  at 24). While GCI might term it an appealable order that determined claims, it was not. Rather, in substance it was a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2). GCI cites no authority in support of its proposition that a Voluntary Dismissal constitutes a "judgment" or "order" as contemplated by Fed. R. Civ. P. 60(c)(1).

Fed. R. Civ. P. 60(c)(1) provides, *inter alia*, that a motion under Rule 60(b)(3) must be made no more than a year after the entry of the judgment or order or the date of the proceeding. Relative to finality "Rule 54(b) contains three prerequisites for concluding that a decision or order is a 'final judgment': (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an 'express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment". *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 490 F.3d 99, 109 (2nd Cir. 2007). This Court's Opinion and Order was issued on July 30, 2018 and granted in full the motions for

summary judgment of Chopra, NYC Telecommunications and Mahendra Shah. (Dkt. No. 236).

Further, the Court directed the Clerk of the Court to "terminate Ravi Chopra, NYC

Telecommunications Corp. and M. Shah as parties to this matter". Id.  Accordingly, as the

Opinion and Order finally decided the claims of Chopra and NYC Telecommunications and the

parties were terminated, then July 30, 2018 or, pursuant to Fed. R. Civ. P. 79 (b)(1), 150 days

thereafter,  GCI was obligated to file its motion seeking relief pursuant to Fed. R. Civ. P.

60(b)(3).

### POINT IV - GCI'S DELAY IN SEEKING RELIEF IS NOT 'REASONABLE'

GCI's reliance on the "one year period" within the text of Fed. R. Civ. P. 60(b) is

misplaced. Fed. R. Civ. P. 60(b) provides that a motion seeking relief from a judgment must be

made "within a reasonable time" and "no more than a year after the entry of judgment or order".

Relief typically will not be granted "where the applicant fails to move for relief promptly."

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 (2nd Cir. 2006).  "The one-year period

represents an extreme limit, and the motion may be rejected as untimely if not made within a

'reasonable time' even though the one-year period has not expired."  *Reese v. McGraw-Hill*

*Companies, Inc.*, 293 F.R.D. 617, 624 (S.D.N.Y. 2013) quoting 11 Charles Alan Wright &

Arthur R. Miller, *Federal Practice & Procedure* § 2866 (3d ed. 2013). Further, as the delay in

making the motion approaches one year there should be a corresponding increase in the burden

that must be carried to show that the delay was 'reasonable'. *Amoco Overseas Oil Co. v.*

*Compagnie Nationale Algeriennes de Navigation*, 605 F.2d 648, 656 (2nd Cir.1979).  GCI

contends that its motion has been filed exactly one year after judgment was entered.

Relative to determining both the point in time at which the calculation of the "reasonable

time" commences and the length of what constitutes a "reasonable time" this Court provided

guidance in *Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109 (S.D.N.Y. 2019, Hon. K.P. Failla). In *Wyche*, Plaintiffs sought to vacate a judgment dismissing their complaint in a class action alleging securities fraud. Plaintiffs alleged newly discovered evidence in the form a Securities and Exchange Commission cease and desist order ("SEC Order"). Plaintiff alleged that it had filed its motion within a week of discovering the SEC Order, some 4 ½ months after its actual issuance. However, this Court stated that Plaintiff should have discovered the SEC Order within a reasonable time after its issuance, concluding that the point at which time the "reasonable time" commenced was when the information was available to Plaintiff and not when Plaintiff discovered it. Holding the delay of 4 ½ months to be unreasonable, this Court denied Plaintiff's motion for reconsideration.

This Court's decision in Wyche is wholly consonant with decisions of other Courts with respect to denying untimely motions seeking relief from judgment. See *Am. Metals Serv. Exp. Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 721 (1st Cir. 1981) (five month delay);  see also *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir.1986) (four month delay ) ; see also *Limon v. Double Eagle Marine, L.L.C.*, 771 F.Supp.2d 672, 677–79 (S.D.Tex. 2011) (motion untimely where movant waited four months between discovering new evidence and filing motion);  see also *Henriquez v. Astrue*, 499 F.Supp.2d 55, 57 (D.Mass. 2007) (motion untimely where movant waited approximately three months between discovering new evidence and filing motion); see also *Gould Entm't Corp. v. Bodo*, 107 F.R.D. 308, 311 (S.D.N.Y.1985) (unexplained five-month delay is unreasonable); see also  *Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 188 (E.D.N.Y. 1992) (unexplained nine-month delay is unreasonable);  see also *United States v. $350,000*, 1996 WL 706821, at *2 (E .D.N.Y. 1996) (unexplained eight-month delay is unreasonable).

GCI entered into a settlement agreement with Vipin Shah on or about July 1, 2021.

Pursuant to the settlement agreement Mr. Shah and his spouse were required to produce certain

categories of documents no later than August 30, 2021. (Siddiqi Decl., Exhibit C). GCI alleges

that it received the documents November 2, 2021, approximately two months late. (Declaration

of Govind Vanjani ¶ 13, Dkt. No. 370). Nothing on the record substantiates any efforts on the

part of GCI to obtain production from the Shahs within the specified deadline or any efforts to

spur the Shahs to to comply with the deadline for document production within a shorter

acceptable delay amounting to days or a short number of weeks after the deadline.

GCI's representative states that he completed his review of the production by mid-

December, 2021. (Id. ¶ 14). Notwithstanding the fact that the totality of the instant motion is

based on exhibits from prior motion practice and the Shah's November 2, 2021 production, GCI

elected not to file a motion in mid-December 2021 seeking the relief that it now seeks in the

instant motion that was filed on December 6, 2022 - nearly a year after its review of Shahs'

production.

To explain the delay, GCI relies on the self-serving Declaration of its principal. GCI's

representative states that the production of November 2, 2021 did not comply with the terms of

the settlement agreement and that GCI contacted the Shahs' counsel on December 24, 2021 to

convey their dissatisfaction. (Id. ¶¶ 15-16). Nonetheless, and even in the face of any lack of any

progress with Shahs, GCI concedes that it did not contact the Court until May 11, 2022 to

enforce the terms of the settlement agreement. (Id. ¶¶ 17).

GCI goes on to squarely impute the delay on its desire to buttress its case and the

obstinacy of the Shahs with respect to complying with their obligations under the settlement

agreement.  GCI does this while simultaneously acknowledging that it was full possession of the

documents and knowledge necessary to file the instant motion for some months prior to its actual filing. (Id. ¶¶ 14, 18, 19, 25).

Of note, GCI never conveyed to the Court any urgency with respect to enforcing the settlement agreement to enable it to buttress its case. The Court docket reveals that GCI communicated with the Court on numerous occasions including May 2, 2022, May 6, 2022, May 9, 2022, June 14, 2022, June 22, 2022, September 23, 2022, October 13, 2022, October 17, 2022, October 20, 2022, and October 27, 2022. (Dkt. Nos. 335, 342, 344, 347, 351, 354, 356, 358, 360). Additionally, GCI participated in a telephonic conference with the Court on May 11, 2022. (Dkt. No. 345). On none of those occasions did GCI convey any pressing urgency for the Court to resolve any outstanding disputes arising from the settlement agreement, nor did GCI even hint to the Court that it was contemplating the relief sought in the instant motion and was operating under a time constraint that would necessitate shortening the time for the Shahs to remedy any alleged deficiencies in fulfilling their obligations under the Settlement Agreement.

Finally, GCI's counsel alludes to the size of his firm and other personal factors as contributing factors to the delay. (MOL at 28-29).  One must sympathize. However, GCI's counsel does not detail any efforts, such as retaining co-counsel, to mitigate the delay.  In sum, GCI's allusions to various difficulties amount to a form of special pleading which, if entertained, would place non-movants at the mercy of opposing counsel's office practices and would place the Court in the position of having to evaluate the veracity of such claims. As has been noted with respect to default judgments but is also applicable to all circumstances, "this circuit (Second Circuit) has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his

caseload." *U.S. v. Cirami*, 535 F.2d 736 (1976) (2nd Cir.); see also *Securities and Exch. Comm'n v. McNulty*, 137 F.3d 732, 739 (2nd Cir.1998) (citations omitted) ("The conduct of an attorney is normally imputed to the client; a party may not avoid the consequences of the acts or omissions of a freely-selected agent").

### POINT V - NEITHER CHOPRA NOR NYC TELECOMMUNICATIONS WITHHELD DOCUMENTS OR ALTERED COMMUNICATIONS

GCI's memorandum contains the statement that "Chopra testified that he had not withheld any documents, turning all relevant documents to Siddiqi… Those representations were untruthful." (MOL at 3). This assertion is untrue. Notwithstanding what it claims is access to over 80,000 pages of documents that include the communications of Vipin Shah with his attorney, GCI has not produced any evidence showing that either Chopra or NYC Telecommunications withheld any documents during discovery, induced any party or non-party to withhold documents or solicited perjured testimony. With respect to the production of documents, GCI attempts to conflate the conduct of Chopra and NYC Telecommunications with that of co-defendants Mahendra Shah and Vipin Shah who, respectively, were the Chief Executive Officer and the spouse of a shareholder. The record, however, is unequivocal. Chopra was not an officer, director or shareholder of Jaina. (Geo-Group's Response to Defendant Chopra's and NYC Telecoms Rule 56.1 Statement, ¶¶ 2-4, Dkt. No. 219). GCI has not produced any evidence that Chopra was an officer, director or shareholder. Chopra had no possession, control, or custody over the documents that GCI alleges were not produced. GCI has not produced any evidence showing that Chopra had possession, control or custody of documents other than those which he produced. To the extent that the Shahs' production is deemed to contain relevant discovery documents that should have been produced earlier, such faulty conduct relative to discovery obligations cannot be imputed to Chopra or NYC

Telecommunications and accordingly is of no relevance in determining the instant motion. See

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) "on

a Rule 60(b)(3) motion, the moving party must demonstrate by clear and convincing evidence

that the non-moving party engaged in fraud, misrepresentation or other misconduct which

prevented the moving party from 'fully and fairly presenting' its case".

GCI's allegation that documents were withheld by Jaina is inaccurate and amounts to

little more than an attempt to obfuscate its own failure to effectively undertake discovery. It is

black letter law that a corporation enjoys a separate existence from its shareholders and officers.

GCI itself recognized this when it insisted on deposing Chopra once in his capacity as an

individual and once in his capacity as an officer of the single owner entity NYC

Telecommunications. (Siddiqi Decl., Exhibit D). GCI did not recognize this same principle with

respect to Jaina. From the opening of discovery on September 14, 2016 to this date, GCI appears

to have never served a subpoena upon non-party Jaina, even though Jaina is an active

corporation.  (Siddiqi Decl., Exhibit E).  Rather, GCI demanded production of Jaina records from

various defendants, all of whom objected in various forms. (Siddiqi Decl., Exhibit F). Presented

with these objections, GCI never sought to directly subpoena Jaina or compel production from

the Shahs much less from Chopra.  GCI also overlooks that during a conference held on July 25,

2017 this Court, subsequent to GCI's counsel stating that Mahendra Shah was the CEO, brought

the issue of Jaina's alleged discovery noncompliance front and center. (Transcript of Proceedings

re: Conference held on 7/25/2017 before Judge Katherine Polk Failla at 12, Dkt. No. 172).

> THE COURT: Certainly, sir, you have the ability to file a subpoena on Jaina through
> whomever you deem to be its representative, yes?
>
> MR. LOREE:  Yes, and he would be the representative because he is an officer.

There is no evidence on the record that GCI ever followed up by serving a subpoena explicitly upon Jaina through its representative.

GCI's claim that its opposition to Chopra's and NYC Telecommunication's summary judgment motion was hampered by a failure on the part of the various defendants to produce documentation is also belied by the fact that GCI never sought to make an application under Fed. R. Civ. P.  56(d) whereby, when facts are not available to the non-movant, the non-movant can request that the court issue an order granting the appropriate relief.

GCI also alleges that Chopra altered an email that he produced, removing the date and timestamp for fear of being connected to the TD Time payments. (MOL at 13). GCI does note that it was Chopra that produced the email and the Shahs that failed to produce it. GCI's use of the term "altered" is unsupported by the record. Chopra produced the email in the form in which it was available to him. (Deposition of Ravinder Chopra, p. 327-330, Dkt. 370-18). No evidence exists that supports any inference that the email was altered. Other emails were produced in a similar format. Additionally, it begs the question as to why Chopra produced the email at all if he was so fearful. Further, nothing precluded GCI from demanding during Chopra's deposition that he conduct a search of his records and produce the "complete" email. As to what GCI characterizes as "evasive' testimony, a reading of the transcript discloses that Chopra's testimony was not evasive but rather reflects GCI's frustration that Chopra's responses were not what GCI had hoped for. (Deposition of Ravinder Chopra, p. 327-331, Dkt. 370-18).

### POINT VI. NEITHER CHOPRA NOR NEW YORK TELECOMMUNICATIONS OFFERED PERJURED TESTIMONY WITH RESPECT TO EITHER THE ROBINSON BROG TRANSFERS OR THE LLC TRANSFERS

Chopra's and NYC Telecommunication's motion for summary judgment was based on the analysis and presentation of bank statements that detailed actual cash flows and focused on

16

the identity of the recipient of funds, a method that is wholly consistent with the determination of claims made pursuant NYDCL §§ 273, 274 and 276. GCI has taken the opposite approach, disregarding actual cash flows in favor of trumpeting a particular document or extract of testimony and thereupon constructing the flimsiest of narratives.  In the instant motion, GCI relies on various journal and ledger entries from Jaina. These journal and ledger entries were not created in the US by Jaina but by a third-party company in India owned by Surajit Bose, the vanished and disputed CEO of Jaina. (Affidavit of Mahendra Shah, ¶ 11, Dkt. No. 208). As will be shown, these documents are not reliable.

A.      The Robinson Brog Transfers

GCI alleges that the Robinson Brog Transfers were underpinned by so-called "hawala" payments and, further, that Vision Impex was not a lender but a customer. Factually, this is not borne out.

1)  Chopra Did Not Receive Funds in India

GCI has alleged that either Chopra or representative of Chopra received cash payments in India. GCI never discloses the identity of any India-based Chopra representative. As for Chopra himself, he has never received money in India either directly or indirectly from Jaina or representatives of Jaina. (Declaration of Ravinder Chopra, ¶ 3). Further, Chopra did not maintain a bank account in India at the time of the transfers and, other than a brief vacation in November, 2013, was not in India at the time when the bulk of the purported transfers occurred. Id., ¶¶ 4-5.

2) No "Hawala" Spreadsheet Exists

GCI refers to the spreadsheet attached as Exhibit "A" to the Declaration of Govind Vanajani as the "hawala Spreadsheet". (MOL 10). The term "hawala" or any variation thereof does not appear in the file name or the actual contents of the file. It is a term used by GCI in an incendiary manner and calculated solely to inflame the Court. Relative to the spreadsheet itself, it is an email attachment that was not contemporaneous to any of the transfers but appears to have been created, in some cases, more than a year after the transactions it purports to document. The email itself includes no explanatory text. GCI makes no representation as to the date that the spreadsheet was created, the identity of the author of the spreadsheet, the relationship of the author of the spreadsheet to Jaina, Chopra or NYC Telecommunications or the basis for its content. On the foregoing basis alone, it has no evidentiary value.

GCI also purports to educate the Court relative to the practice of "hawala" and references two cases, *United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021), cert. denied, 212 L. Ed. 2d 407, 142 S. Ct. 1422 (2022) and *United States v. Banki*, 685 F.3d 99, 109 (2nd Cir. 2012), as amended (Feb. 22, 2012). Both cases are instructive in that they provide a background as to the circumstances under which the "hawala" mechanism would be used. *Singh* involved the use of 'hawala' for the purposes of recycling drug monies – no such allegation or evidence as to the use of 'hawala' for recycling in the context of illegal activities exists here. *Banki* involved money transfers from the US to Iran in violation of Iranian Transaction Regulations (ITR). Again, no allegation or evidence exists that the funds were being transferred to avoid laws regulating the transfer of funds between India and the United States.

3)   The Spreadsheet Does Not Represent Hawala Transactions

GCI alleges that the spreadsheet describes "hawala transactions" and states that the funds listed on the right-hand side of the sheet represent funds that were transferred to parties on left hand side of the sheet (i.e. transferring money from India to the US), less transaction fees. (MOL at 11). Reading the spreadsheet, GCI is alleging that $1,165,810.29 was collected by Chopra or someone on his behalf in India, fees were deducted and thereafter Chopra remitted $1,405,571.00 in the US. (Exhibit 13, Dkt. No. 370-14). This is entirely at odds with GCI's stated definition of "hawala" where, presumably, the amount remitted would be less or at most equal to the amount collected. (MOL at 10).

4)   The Spreadsheet Does Not Show the Receipt of Cash From Jaina's Customers in India

GCI also states that taken together "the left- and right-hand column sets show that Jaina transferred from India cash from by (*sic*) paying that cash in India to Chopra or persons whom he designated, who in turn would arrange to have other persons (e.g. TD Time) to make payments to Jaina". (MOL at 11). The spreadsheet shows no such thing. *Arguendo,* the spreadsheet does have some grounding in actual transactions, GCI fails to explain the basis for the assumption that the monies belonged to Jaina and not to the individuals themselves. Additionally, amidst the various accounting records that GCI has obtained there should be some record of cash outflows to the individuals listed on the "India" side of the spreadsheet or, minimally, some basis for identifying the individuals. That GCI has failed to produce these documents is because no cash transfers were made by Jaina to these alleged individuals. Even more bizarrely, GCI fails to explain why a company chronically short of cash and operating at a loss would maintain cash reserves in India when its US operation was failing and constantly on the precipice of having its connections terminated. Further, GCI's explanation of the spreadsheet begs the obvious question

of why Jaina would attempt to transfer its own revenues from one country to another using a "hawala" mechanism. GCI has not shown that Jaina was subject to any restrictions vis à vis currency transfers, Jaina's bank statements and ledgers detail numerous wire transfers from Indian based companies to the US and Jaina was informally associated with an Indian company, Jaina Systems Pvt. that it could also easily have used as a vehicle to transfer of funds.

    5) The alleged $60,000 'Hawala' Payment

    GCI discusses at length an email relating to a request for funds by Jaina. (MOL at 10-12). GCI purports that on the India side of the transaction a cash payment from funds belonging to Jaina Systems Network (India) Private Limited ("Jaina India") was converted from rupees to $60,000, the cash was then picked up by a local representative of Chopra and thereafter on the US side Chopra arranged for TD Time to make a payment to Jaina. (MOL at 13).  Aside from being unduly complicated given that the funds could simply have been wired directly to the US, the transaction is marked by a number of inconsistencies. Jaina India is a separate entity from Jaina so GCI's ongoing thesis that Jaina was sending its own client funds cannot be correct. Conveniently for GCI, the bank statements and other financial documents of Jaina India that could document such cash transfers are not available leaving Chopra and NYC Telecommunications attempting to prove a negative in the face of GCI's speculative hypothesis. Relative to the email from the Indian contact (HariOm Bhai) it requests delivery of the funds to "Mahendra Bhai Shah" – not Chopra.  (Dkt. 370-20). As to the email addressed to Chopra he testified that he understood the email to state that Jaina had an outstanding bill of $500,000 to a carrier, had obtained $60,000 and was inquiring whether Chopra could obtain loans to cover the entire or part of the balance of $440,000. (Deposition of Ravinder Chopra, p. 327-331, Dkt. 370-18). Chopra's testimony is entirely consistent with the timeline of the emails that GCI presents,

the email to "HariOm Bhai" going out at October 22, 2013 at 6:26 AM EDT requesting $60,000

and then the second email being sent to Chopra on October 22, 2013 at 6:29 AM EDT indicating

that Jaina had gotten or would be receiving $60,000 and required an additional $440,000.

Relative to the TD Time loan, it was not brokered by Chopra but as the Court noted Singh (the

principal of TD Time) was approached by Jaina's accountant, Jagdish Alwani for a short-term

loan. *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *2 (S.D.N.Y.).  As neither

Chopra nor NYC Telecommunications brokered the TD Time loan they can only speculate that

some relationship existed between the Singh (the principal of TD Time), Jagdish Alwani and

"HariOm Bhai" and Vision Impex whereby TD Time consented to loan the funds and that no

loans were transmitted through GCI postulated and ungrounded  "hawala" mechanism.

 6) TD Time Payments Were Not Hawala Payments from TS USA

 GCI notes that the TD Time payments are recorded in Jaina's ledger as having been

collected from its customer TS USA. (MOL at 14). Jaina's bank statements generated by a US-

based bank – Citibank - clearly show that the payments originated from TD Time. (Exhibit 21,

Shah Ds-0000145 (10/23/2013, 10/24/2013), Shah Ds_000149 (12/04/2013), ShahDs_000152

(12/30/2013) Dkt. 370-22; Exhibit 23, Shah Ds_000155 (01/22/2014), ShahDs_000156

(01/29/2014). A review of Jaina's ledger, however, reveals its fundamental unreliability.

Filtering the entirety of the ledger for only entries relating to TS USA shows that Jaina

indiscriminately would book a wide variety of disparate transactions using "TS USA" in the title

and "Carrier" as the header. (Siddiqi Decl., Exhibit G). Many these transactions include no

description and a small sampling of some that do include descriptions such as "Himanshu Patel",

"Incoming wire from YOUR HERBAL CARE RETAIL SERVICES", "Incoming wire from

SHANNAH F WARNECK".  *Id*. Jaina appears to have used "TS USA" as a catchall for a variety

of transactions that involved carriers and other parties.  As speculated *infra,* for Jaina, booking a loan such as that obtained from TD Time as revenue would have the net positive effect on its income statement without increasing its liabilities, thereby making it appear more economically attractive to investors and lenders.

      7) Mahendra Shah's Communications

      GCI intersperses in its Memorandum of Law portions of various communications that it purports show malfeasance on the part of Chopra. A complete reading of the various email shows no such conduct.

      GCI refers to an email where M. Shah states that Chopra made Surajit Bose sign a particular document. (MOL at 17).  Even accepting the truth of this statement, M. Shah does not say that the contents are in any way false and GCI hasn't produced any evidence showing that M. Shah believed the contents to be false.

      GCI also refers to a message containing the following text "I requested the following companies to loan Jaina $1,349,960.00 on my [i.e. Chopra's] behalf". (MOL 18). Initially, it should be noted that this document appears to be a draft that was to be presented to Chopra but never was. A plain text commonsensical reading of the document is that it is stating that Chopra requested that certain parties extend loans to Jaina and then requested that those loans be repaid to Robinson Brog. While the record shows that Chopra did not broker all the loans or request that payment be made to Robinson Brog, the message is nonetheless instructive in that it confirms that loans were obtained from TD Time and Vision Impex and that the loans were repaid to Robinson Brog, on behalf of the lenders – in this case Vision Impex.

      GCI also refers to an email sent by M. Shah to his then counsel stating "[d]o we need to tell them that who was coming with how much money to compensate Ravi's money (which was

given under [B]rog's law firm". (MOL at 17-18).  GCI, which in its draft has heavily italicized parts of the text, appears to assume this is some manner of "smoking gun". Viewed in the context of the record, it is not. The email, in somewhat broken English, seems to inquiring as to whether the Shahs would have to disclose the identity of the lenders that M. Shah believed Chopra had secured and for which payment had been made to Robinson Brog. M. Shah, on the basis of calls that Chopra made to Jaina on behalf of Vision Impex requesting repayment had a good faith belief that Chopra had negotiated the loans. *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *3 n.4. (S.D.N.Y.  2018).

Finally, it should be noted that Mahendra Shah submitted a sworn declaration that corroborates the identities of various lenders and the amounts they loaned. (Dkt. No. 208).

8) The Vision Impex Transactions Reflected Loans

GCI alleges that Vision Impex was not a lender but a customer and does so on the basis of Vision Impex's inclusion in a Jaina Customer spreadsheet. (MOL at 15).  GCI further alleges that $1,036,000 of the Robinson Brog Transfers were not loans but represented the payment of invoices. Id.  GCI relies on two lengthy exhibits containing accounting data and, purportedly to aid the Court, GCI offers up a single page table that summarizes the various transfers. (MOL at 15; Dkt. No. 370-5). Unsurprisingly, GCI's table does not reflect that while Vision Impex was listed as a customer, a review of the source entries contained in Jaina's bank statements shows that each of the descriptors that accompany the cash inflows from Vision Impex is clearly noted as "Sundry Borrowing". (Bank Statement, Dkt. No. 370-28). A summary of the transactions with the appropriate individual entry for each wire payment received is reproduced below.

Table 1. Summary of Bank Statement (Dkt. No. 370-28)

| Date | Description | Amount | Entry | Source Reference |
|------|-------------|--------|-------|------------------|

| 04/25/2014 | Vision Impex | $249,100 | Foreign Cash Injected – Sundry Borrowing | SHAH27889 |
| 05/09/2014 | Vision Impex | $201,450 | Foreign Cash Injected – Sundry Borrowing | SHAH27891 |
| 05/22/2014 | Vision Impex | $198,500 | Foreign Cash Injected – Sundry Borrowing | SHAH27892 |
| 08/22/2014 | Vision Impex | $49,220 | Foreign Cash Injected – Sundry Borrowing | SHAH27897 |
| 09/23/2014 | Vision Impex | $190,200 | Foreign Cash Injected – Sundry Borrowing | SHAH27899 |
| 10/16/2014 | Vision Impex | $102,500 | Foreign Cash Injected – Sundry Borrowing | SHAH27901 |
| 11/03/2014 | Vision Impex | $105,600 | Foreign Cash Injected – Sundry Borrowing | SHAH27902 |

Chopra and NYC Telecommunications did not have access to Jaina's accounting and are not responsible for the manner in which Jaina booked loans – including why Jaina entries were accompanied with the title "Ravi Chopra". However, the Court may note that Chopra was at times a contact for Vision Impex when the loans were unpaid.  *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *3 n.4. (S.D.N.Y.  2018). Further, the Court may note that the accounting impact of booking the wired funds as a loan would be to increase corporate liabilities whereas booking those same funds as transfer from a "customer" would result over the short-term in increased revenues with a correspondingly improved income statement, a favorable outcome for a company looking to raise capital and secure additional lending.

9)    Vision Impex's Status as a Lender Has Been Confirmed and Corroborated Subsequent to Chopra's and NYC Telecommunications' Motion For Summary Judgment

Relative to confirmation, Dalip Kumar, the principal of Vision Impex, offered testimony stating that the funds were loans. Additionally, he testified that the activities of Vision Impex related solely to the wholesale purchase and sale of goods. To eliminate any doubt, Mr. Kumar has now supplemented his testimony, confirming that Vision Impex was a purchaser and reseller of goods and was never a client or customer of Jaina. (Declaration of Dalip Kumar).

Relative to corroboration, GCI entered into a settlement agreement with Vipin Shah and Narendrah Shah that was effective on July 1, 2021. Under the terms of the settlement agreement the parties executed a mutual release and provided that any information or documents obtained from the Shahs could not be used to assert a claim against either of them. (Siddiqi Decl., Exhibit C, Settlement Agreement Section 1(b)(vii)). Accordingly, the Shahs are now sheltered from any litigation with respect to information they disclose. Among the information that the Shahs were required to provide was a list of lenders, which list they provided and which explicitly lists Vision Impex, the entity that directed TD Time to transfer funds to Jaina and which transferred its own funds. (Exhibit J, List 1, Dkt. No. 360-6). GCI never provided this list to Chopra or NYC Telecommunications despite GCI having represented to this Court that it was consenting to Chopra's and NYC Telecommunications' request for an order to produce all documents received pursuant to GCI's settlement agreement with the Shahs. Were it not for the unsealing of the settlement agreement, Chopra and NYC Telecommunications would have been wholly unaware of its existence. (Dkt. No. 375)

10) Payments to Vision Impex Align With the Payments to Robinson Brog

GCI alleges that the payments to Robinson Brog could not have discharged antecedent debt of Jaina. (MOL at 16). GCI's calculation is wholly dependent upon accepting that the TD Time payments were not loans. However, both Singh, the principal of TD Time, and Kumar, the principal of Vision Impex, testified that the funds were sent to Jaina by TD Time on behalf of Vision Impex. See *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *10 (S.D.N.Y. 2018) "Jaina received a total of $1,252,450 from Kumar or from Singh on Kumar's behalf". As detailed *supra,* GCI has failed to adduce any evidence that the funds associated with TD Time were obtained from Jaina's customers. Accepting that the funds were loans, then the payments to

Vision Impex align perfectly with the payments to Robinson Brog.  As detailed in the table below, there was no period in time where Jaina was forwarding funds to Robinson Brog prior to having incurred a loan. All payments made to Robinson Brog on behalf of Vision Impex were made to discharge antecedent debt.

Table 2. Summary of Funds Received by Jaina and Disbursed to Robinson Brog

| Date | Recipient | Amount | Balance Outstanding |
|------|-----------|--------|---------------------|
| 10/23/2013 | Jaina | $60,000 | $60,000 |
| 10/24/2013 | Jaina | $41,000 | $101,000 |
| 12/14/2013 | Jaina | $50,150 | $151,150 |
| 12/30/2013 | Jaina | $100,250 | $251,400 |
| 01/22/2014 | Jaina | $102,500 | $353,900 |
| 01/29/2014 | Jaina | $211,500 | $565,400 |
| 02/26/2014 | Robinson Brog | ($200,000) | $365,400 |
| 03/26/2014 | Robinson Brog | ($100,000) | $265,400 |
| 04/25/2014 | Jaina | $249,100 | $514,500 |
| 05/09/2014 | Jaina | $201,450 | $715,950 |
| 05/09/2014 | Robinson Brog | ($200,000) | $515,950 |
| 05/21/2014 | Robinson Brog | ($250,000) | $265,950 |
| 05/22/2014 | Jaina | $198,500 | $464,450 |
| 06/04/2014 | Robinson Brog | ($110,000) | $354,450 |
| 07/03/2014 | Robinson Brog | ($200,000) | $154,450 |
| 08/13/2014 | Jaina | $50,000 | $204,450 |
| 08/22/2014 | Jaina | $49,220 | $253,670 |
| 09/23/2014 | Jaina | $190,200 | $443,870 |
| 09/25/2014 | Robinson Brog | ($90,000) | $353,870 |
| 09/29/2014 | Robinson Brog | ($100,000) | $253,870 |
| 10/01/2014 | Robinson Brog | ($100,000) | $153,870 |
| 10/16/2014 | Robinson Brog | ($102,500) | $256,370 |
| 11/03/2014 | Robinson Brog | ($105,600) | $361,970 |

B.     The LLC Transfers

GCI, realizing that its original, and false, contention that Chopra directed various payments to the various LLCs defendants was an insufficient basis to assert liability has transformed that claim into Chopra having been the actual beneficiary and now asserts that, in part due to the fraudulent conduct of non-party Williston Park Realty LLC ("WPR Realty"), GCI

26

should be relieved from judgment. The record, however, clearly shows that Chopra was not the beneficiary and that allegations of WPR's fraudulent conduct are without any basis.

      1)     Jaina's Accounting Entries Don't Correspond to Actual Cash Flows

GCI previously pursued the LLC's and their owner, Sanjiv Chand, with a monomaniacal intensity, consistently alleging that they were the actual beneficiaries of various transfers.

GCI's Second Amended Complaint alleged that the LLC defendants were the beneficiaries of 660K transfer. (Second Amended Verified Complaint ¶¶ 42, 53, 55, 58, 60, Dkt No. 24). On July 16, 2015, the LLCs moved to dismiss the Second Amended Complaint and on February 1, 2016 this Court granted the LLCs motion to dismiss. Thereafter on February 22, 2016 GCI filed a third amended complaint, again naming the various LLC Defendants as the beneficiaries of the 660K transfer. (Dkt. No. 105). On April 5, 2016, the LLC defendants moved to dismiss the Third Amended Complaint against them and on July 27, 2016 the Court granted the LLCs motion to dismiss. (Dkt. Nos. 122, 134). Undeterred by two dismissals, on October 4, 2019 GCI filed a motion to reopen the case against the LLC Defendants and, additionally, sought to add Sanjiv Chand, the principal of the various LLCs, as a defendant. (Dkt. No. 274). GCI's Memorandum of Law in support of its motion was 26 pages long and was supported by the Declaration of Govind Vanjani, which declaration extended to 60 pages, was comprised of no fewer than 206 averments and included 58 exhibits. (Dkt. No. 273). Neither GCI's motion nor the declaration of Mr. Vanjani alleged that either Chopra or NYC Telecommunications engineered, participated, or received any benefit from the transfer. In fact, other than appearing in the caption of the Declaration of Mr. Vanjani and a passing reference to Chopra with respect to production of a document, there is no mention of Chopra. The ineluctable conclusion of Mr. Vanjani was "Jaina therefore transferred $660,000 to the LLC Defendants in exchange for

nothing whatsoever, a classic fraudulent transfer that Geo-Group should permitted to recover from the three LLC Defendants, Mr. Chand himself, and Mahendra Shah". (Declaration of Govind Vanjani ¶ 45, Dkt. No. 273). On September 25, 2020 in an extensive decision this Court denied GCI's motion to reopen. (Dkt. 295). On October 9, 2020 GCI filed a motion for reconsideration of this Court's decision of September 25, 2020 which motion was denied. (Dkt. Nos. 298, 305).

Notwithstanding GCI's unequivocal past position that the LLC Defendants and Sanjiv Chand were the actual beneficiaries, GCI on the basis of practically the same evidence now contends that Chopra and NYC Telecommunications were the beneficiaries. However, GCI's argument relies on a contortion of journal headings that is wholly inconsistent with undisputed cash flows, prior deposition testimony and a previously filed declaration by the actual recipient, as all recounted in Mr. Vanjani's Declaration.

Relative to its actual argument, GCI offers the flimsiest of textual interpretations. GCI states that Jaina repaid loans totaling $200,000 to Kedis and booked the repayment internally as "Kedis Enterprises – Foreign Cash Injected – Sundry Borrowing".  Accordingly, Kedis was the beneficiary. GCI then argues that the repayment of loans to LLC Defendants totaling $660,000 was booked as "Ravi Chopra – Foreign Cash Refund – Loan Refund" and on the same basis it can be inferred that Ravi Chopra was the beneficiary and that his deposition testimony to the effect that he was not the actual beneficiary was untrue. GCI itself notes and simultaneously discounts the fact that the bank statements and wires evidencing the actual transfer of $660,000 from Jaina clearly establishes that the actual funds were not sent to Chopra but were sent to "Hillside", "Melville" and "Kedis".  (MOL at 19).

GCI's assertion that Chopra was the beneficiary is contradicted by GCI's responses to Chopra's and NYC Telecommunications' Statement of Material Facts relative to the ownership of the LLC Defendants which are undisputed by all parties to this litigation to have been the recipients of the funds at issue. Geo-Group consistently responded that it had no knowledge of any interest that Chopra or NYC Telecommunications had in any of the LLC Defendants. (Geo-Group's Response to Defendants Chopra's and NYC Telecom's Rule 56.1 Statement ¶¶ 84-89, Dkt. No. 219). GCI does not furnish an explanation as how Chopra or NYC Telecommunications could, in the absence of any evidence, be deemed to be beneficiaries when the uncontradicted documentary trail shows that the funds went to entities in which they have no interest.

GCI also overlooks the most obvious explanation as to why the transactions were recorded as "Ravi Chopra – Foreign Cash Refund – Loan Refund"; namely that, as he testified upon questioning by GCI and as this Court itself noted, Chopra brokered the underlying loan of funds. *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *12, n.11 (S.D.N.Y. 2018). Accordingly, it would be entirely appropriate that the entry "Ravi Chopra – Foreign Cash Refund – Loan Refund" can be understood to mean "repayment of loans brokered by Ravi Chopra" a notation that would not appear with respect to the repayment of loans from "Kedis Enterprises", with which he had no involvement.

2)    WPR's Alleged Fraud and Misconduct

GCI details what it purports to be fraud on the part of a third-party, WPR, in the form of allegedly false testimony and withheld documents. (MOL at 19-23).

Preliminarily, it should be noted that GCI does not claim that either Chopra or NYC Telecommunications procured what is alleged to be the false testimony on the part of WPR's representative nor does GCI allege that Chopra urged WPR to withhold relevant documents. On

that basis alone, GCI's invocation of WPR's alleged fraudulent conduct is irrelevant to this Court's determination as to whether relief from judgment – which decision is predicated on the conduct of Chopra and NYC Telecommunications – is merited.

Nonetheless, to dispose completely of the issue of the LLC transfers in all respects, Chopra and NYC Telecommunications will briefly address GCI's claim. The essence of the GCI's argument is that the sale price of $425,000 of the building owned by Neminath was well below the actual value which GCI posits to be above $1,000,000. During the 8-year pendency of this case, GCI has had numerous opportunities to obtain an independent valuation of the building. GCI has never done so.  Rather, GCI has preferred to serve up a blizzard of paper. However, an independent valuation does exist and was disclosed by the LLC defendants who have shown that the building was assessed by the Nassau County Department of Assessment in 2015, 2016 and 2017 as having a value of either $300,500.00 or $321,000.00. (Dkt. No. 178-2).

## POINT VII – GCI WAS NOT PREVENTED FROM FULLY AND FAIRLY PRESENTING ITS CASE

GCI's emphasis on the nature of the transfers obscures that the Court's decision was based on its determination that, with respect to the Robinson Brog Transfer, neither Chopra nor NYC Telecommunications were indebted to Robinson Brog and, with respect to the LLC transfers, neither Chopra nor NYC Telecommunications had any ownership interest in the entities that received the disputed funds. GCI continually harps that "Accounting records show Chopra was the Beneficiary or Recipient". (MOL at 18). Actual cash flow, however, is the coin of the realm with respect to NYDCL §§273, 274, 276 analysis and clearly shows that neither Chopra nor NYC Telecommunications were beneficiaries or transferees – something this Court immediately seized upon.

GCI has continually bandied about the word "beneficiary". In each instance where GCI does use the word "beneficiary", it does not explain how an entity can be termed a beneficiary when the actual funds were acknowledged to have been transferred to another party. Here, GCI is consistently silent – a fatal flaw to GCI's case which this Court immediately noted in its Order granting Chopra and NYC Telecommunications summary judgment:

> Once again, fraudulent conveyance statutes are aimed at the improperly-transferred funds, not at the alleged malefactors who made the transfer. Amusement Indus., 820 F. Supp. 2d at 527 ("[T]he transferor of the property — that is, the debtor — is not the proper defendant in a fraudulent conveyance claim."). Moreover, it is not enough that Chopra had a generalized interest in Jaina's financial stability or that he stood to benefit, even handsomely, from potential future business he could do with Jaina if it could remain a going concern. See Roselink Invrs., L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 227 (S.D.N.Y. 2004) (holding that third party to a challenged transaction was not a beneficiary simply because he would have suffered damage from the debtor's further financial woes). *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *9 (S.D.N.Y. 2018)

GCI's motion highlights that it has still failed to understand that "fraudulent conveyance states are aimed at the improperly-transferred funds".

GCI purports that the Court would not have decided in favor of Chopra and NYC Telecommunication had GCI the opportunity to present the documents that it now has in its possession and had various witnesses, including Chopra, not offered perjured testimony. Disregarding  Chopra and NYC Telecommunications explanation that no documents were withheld and no perjurious testimony offered GCI fails to show how the documents now produced or the testimony cited by GCI as being perjurious would be material to this case. Where testimony or fraudulent declarations are not material to a case, a party cannot be said to have been deprived of the opportunity to fully and fairly present their case.  See *Gonzales v. Nat'l Westminster Bank, Plc*, WL 6978874, at *7 (S.D.N.Y. Nov. 18, 2013) (denying Rule 60(b)(3) motion because allegedly perjurious testimony was not material to outcome of case and therefore did not prevent movant from fully and fairly presenting his case); see also *Sonberg v.*

*Niagara Cnty. Jail*, 2013 WL 2468691, at *4 (W.D.N.Y. 2013) noting that the alleged fraudulent declarations of two witnesses did not contain material misrepresentations that would have altered the conclusion of the court and thus did not prevent plaintiff from fully and fairly presenting his case.

GCI fixates on various statements contained in Chopra's and NYC Telecommunication's Statement of Material Facts relating to the issue of fair consideration and asserts that they formed the basis of the Court's decision.  They did not. As has been consistently noted, New York's Debtor & Creditor Law is essentially a claw back statute, the goal of which is to undo improper transfers and restore assets.

GCI has not sought to amend its Third Amended Complaint and the Court is left again with the same allegation it dealt with previously with respect to the Robinson Brog Transfers, namely that "These transfers were made at the direction or request of Mr. Chopra to, if anything, satisfy Mr. Chopra's debt to Robinson Brog, not to satisfy any antecedent loan or other debt or obligation that Jaina had to Robinson Brog or to Chopra". (TAC ¶ 24). The Court in that portion of its decision relative to the Robinson Brog Transfers focused primarily on the identity of the transferee and noted that

> "Chopra's testimony, corroborated by A. Mitchell Greene, a shareholder at Robinson Brog, establishes that Chopra never had any relationship or indebtedness to Robinson Brog. Plaintiff admits that it has no knowledge of a relationship between either Chopra or NYC Telecom and Robinson Brog, and that it does not have any information showing that Chopra or NYC Telecom has ever been indebted to Robinson Brog. … and since Plaintiff admits that it has no information to suggest that Chopra has any ownership interest in TD Time or Vision Impex, there is no evidence in the record suggesting that Chopra received the funds transferred to Robinson Brog". *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *9 (S.D.N.Y. 2018)

GCI's moving papers are entirely silent with respect to how the allegedly withheld documents or the perjurious testimony are in any way substantively relevant to that portion of Chopra's and NYC Telecommunications Statement of Material Facts that pertained to Chopra's

alleged indebtedness to Robinson Brog and any ownership interest on the part of Chopra or NYC Telecommunications in Vision Impex or TD Time -  which facts underpinned this Court's decision to grant summary judgment to Chopra and NYC Telecommunications. *Arguendo*, and accepting in the extreme that the transactions involved no consideration, Chopra and NYC Telecommunications would still prevail because GCI cannot establish how Chopra and NYC Telecommunications were the beneficiaries of the allegedly fraudulent transfers when the funds in question were indisputably transferred to Robinson Brog on behalf of Vision Impex.

Similarly, this Court's decision with respect to the LLC Transfers focused on the identity of the actual transferee, with the Court stating that:

"the record does not indicate that Chopra or NYC Telecom benefitted from the transfers from Jaina, Melville, or Hillside. … Because Plaintiff cannot show that Chopra or NYC telecom participated in the transfers to Kedis, Melville, or Hillside as a transferee or beneficiary, and because this is an essential element of Plaintiff's case on which it will bear the burden of proof at trial, Chopra and NYC Telecom are entitled to summary judgment on Plaintiff's claims based on these transfers" 2018 WL 3632498, *Geo-Grp. Commc'ns, Inc. v. Chopra*, No. 15 CIV. 1756 (KPF), 2018 WL 3632498, at *12, n.11 (S.D.N.Y. 2018)

With respect to the LLC Transfers GCI fails  to demonstrate  in a manner that would meet the clear and convincing burden imposed upon it that the documents allegedly withheld and the allegedly perjurious testimony are any way material to the Court's earlier determination that Chopra and NYC Telecommunications were neither transferees or beneficiaries.

## POINT VIII - GRANTING RELIEF FROM JUDGMENT WOULD CAUSE UNDUE HARDSHIP TO CHOPRA AND NYC TELECOMMUNICATIONS

GCI entirely glosses over the issue of the undue hardship that would accrue to Chopra and NYC Telecommunications, stating that the prejudice is the result of Chopra's and NYC Telecommunication's perjurious testimony and withholding of documents. (MOL at 31 "he has only himself to blame"). In light of GCI's blatant failure to address this issue, GCI's motion

should be denied as the movant is required to prove that granting the motion will not impose any undue hardship on the other parties. *Canini* at *2.

GCI filed this case on March 9, 2015. (Dkt. No. 1). The claims relate to transfers that occurred 2014. (TAC ¶¶ 23, 37, 44). That more than eight years has elapsed from the filing is due in part to GCI itself. GCI took nearly a year and four iterations to draft a complaint that would allow the start of discovery. (Dkt. Nos. 1, 105). On November 5, 2018 the Court set a trial date for January 14, 2019. (Dkt No. 249). Notwithstanding the imminent trial date, on November 9, 2018, GCI sought leave to undertake discovery nearly two years after the close of fact discovery necessitating the adjournment of the trial *sine die*. (Dkt. 255). On October 4, 2019 GCI filed an ultimately futile motion to reopen the case against the LLC Defendants and add Sanjiv Chand as a defendant. (Dkt. No. 273). The cumulative effect of GCI's various delays has been to add years to the duration of this litigation. As a result of the delays, Chopra and NYC Telecommunications will have been deprived of valuable testimony and documents as partially documented below.

- Jagdish Alwani, the accountant who negotiated the loans with TD Time and Vision Impex died in 2014. *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *2 (S.D.N.Y. 2018)
- As confirmed by a firm specializing in data recovery, the computer systems of Jaina appear to be unsalvageable. (Exhibit A – Vendor Forensic Memorandum, Dkt. No. 353). These systems are likely repositories of communications and files relating to the disputed transfers.
- The bulk of Jaina's backroom operations were undertaken in India and have apparently been shut down for several years. (Affidavit of Mahendra Shah, ¶ 11, Dkt. 208; Letter dated October 18, 2022 from Shomik Ghosh 'Status Report' at 18, Dkt. No. 357). The ability to identify and obtain the testimony of individuals in Jaina's India offices is essential to dispelling GCI's allegations regarding alleged "hawala" transactions.
- Mahendra Shah, a key individual in this litigation, has been dismissed from this action, no longer resides in the State of New York and has apparently moved to Florida rendering his presence at trial unlikely. (Dkt., "Attorneys")

## POINT IX - NEITHER THE LLC TRANSFERS NOR THE ROBINSON BROG TRANSFERS IMPLICATED NYC TELECOMMUNICATIONS

GCI's complaint does not allege participation by NYC Telecom with either the Robinson Brog transfers or the LLC transfers. Rather, GCI's complaint with respect to NYC Telecom was restricted with to a series of payments totaling $412,000.00. (TAC ¶ 31, Dkt.  No. 105). This is confirmed by GCI's prayer for relief with respect to NYC Telecommunications which solely seeks damages with respect to payments made to NYC Telecommunications. (TAC at ¶¶ 24, 25). GCI's instant motion is utterly silent relative to the involvement of NYC Telecommunications with either the Robinson Brog or the LLC transfers and accordingly GCI cannot be relieved of that part of the judgment dismissing NYC Telecommunications as a defendant.

## POINT X – GCI CANNOT SEEK RELIEF PURSUANT TO Fed. R. Civ. P. 60(b)(6)

GCI in its letter seeking to file excess pages indicated that it was seeking relief, in part, pursuant to Fed. R. Civ. P. 60(b)(6). (Dkt No. 364). The Court in its Order granting GCI's letter motion requested that the parties addressed why GCI's motion complies with the time limits set forth in Fed. R. Civ. P. 60. (Dkt. No. 366).

Relief pursuant to Fed. R. Civ. P. 60(b)(6) is only available if the reasons offered for relief from judgment are not covered under the more specific provisions of Rule 60(b)(1)-(5) *Warren v. Garvin*, 219 F.3d 111, 114–15 (2nd Cir. 2000).  As GCI is explicitly seeking relief under Fed. R. Civ. P. 60(b)(3), it is precluded from seeking relief under Fed. R. Civ. P. 60(b)(6) and is subject to the explicit timing requirements contained in Fed. R. Civ. P. 60(c)(1).

## CONCLUSION

For the reasons set forth above, defendants Ravi Chopra and NYC Telecommunications respectfully request that this Court deny GCI's motion and, pursuant to this Court's inherent authority and Fed. R. Civ. P. 12(h)(3), dismiss GCI's complaint.

Dated: February 15, 2023
      New York, NY

                                 /s/ Humayun Siddiqi
                                 ---------------------------------
                                 Humayun Siddiqi, Esq.
                                 11 Broadway, Suite 615
                                 New York, NY 10004
                                 Tel. 646-688-3553
                                 *Attorney for Ravi Chopra and NYC*
                                 *Telecommunications Corp.*