# THE LOREE LAW FIRM

PHILIP J. LOREE JR

February 16, 2023

**VIA ECF and EMAIL**

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re:   Geo-Group Communications, Inc. ("GCI") v. Shah, et. al., No. 15 Civ. 1756 (KPF) | GCI's Letter Motion Concerning GCI's Motion to Amend its Rule 60(b) Motion to Assert a Fed. R. Civ. P. 60(d)(3) Claim

Dear Judge Failla:

We are counsel for Plaintiff GCI, which respectfully requests the Court to set the briefing schedule proposed below for GCI to move to amend its pending Fed. R. Civ. P. 60(b)(3) motion to assert a Fed. R. Civ. P. 60(d)(3) claim for fraud on the court. That claim is based on documents produced for the first time on January 20, 2023, by attorney Anil Arora ("Arora"). The relief requested will be to overturn the judgment in favor of Ravi Chopra ("Chopra") concerning the Robinson Brog and LLC Defendant transfers, as stated in the notice of motion for GCI's pending Rule 60(b)(3) motion.  (Dk. 368)

**Introduction:** GCI filed on December 6, 2022, its Fed. R. Civ. P. 60(b)(3) motion for relief from the judgment entered in favor of Defendant Ravi Chopra ("Chopra"). (See Dks. 368, 369, 370.) On January 20, 2023, Arora made a supplemental production, which followed extensive correspondence and several phone conferences (the "supplemental production"). On the same day GCI shared that production with Chopra's attorney, Humayun Siddiqi ("Siddiqi"), and M. Shah's and V. Shah's attorney, Shomik Ghosh.

The supplemental production contains numerous documents bearing on the issues raised by GCI's Rule 60(b)(3) motion, which will be discussed in GCI's reply papers on the Rule 60(b)(3) motion.  But the supplemental production supports not only GCI's 60(b)(3) motion—it further establishes a wider scheme involving efforts by Mahendra Shah ("M. Shah"); Vipin Shah ("V. Shah")'s; V. and M. Shah's brother-in-law, Dilip Mehta ("D. Mehta") (M. Shah, V. Shah, and D. Mehta are collectively referred to as the "Shahs"); Chopra; Chopra's attorney, Siddiqi; and the V. and M. Shah's former attorney, Arora, to collude to misrepresent knowingly to the Court and GCI the true nature of the $1,350,000 transferred to Robinson Brog (the "Brog Transfers"), the $660,000 transferred to JMVD Hillside LLC ("Hillside") and 728 Melville Petro LLC

February 16, 2023

Hon. Katherine Polk Failla
United States District Judge

("Melville") (the "LLC Transfers"), and other transfers. This scheme *involved officers of the Court* and has thus far succeeded.

**Summary of Grounds for Motion:**  Fraud on the court is established by, among other things:

   1.  **The Shahs' and Arora's Knowledge that the Brog and LLC Transfers were Sham Transactions.** M. Shah, V. Shah, and Arora were well aware in 2016 that the Brog and LLC transfers were sham transactions, something the Shahs admitted in their supplemental production correspondence with Arora. For example, on June 6, 2016, M. Shah advised Arora that Chopra, allegedly with Surajit Bose ("S. Bose")'s help, "did something like *money laundering* so instead of showing incoming entry Ravi made Tony to sign the letter [to Vision Impex, see Dk. 369 at 22-23 of 42] & invoices which wasn't actual transaction." "All these *made up transactions*[,]" M. Shah explained, adding, "[w]e never did these phone card business through Jaina [which was the subject of the phony invoices]." (emphasis added)

   2.  **Attorney and Client Knowledge of the Hawala Spreadsheet and What it Showed.** The supplemental production contains documents, including what GCI's Rule 60(b)(3) motion calls the "Hawala Spreadsheet," which show that the Shahs and their attorney was aware that the TD Time payments and other transactions were hawala payments. (See Dk. 369 at 16-24 of 42.) In email correspondence dated January 7, 2017, M. Shah explained to Arora how the hawala scheme operated: "What [S. Bose] did," said M. Shah, "he made payments to Ravi [Chopra] through TSN in [I]ndia against the traffic run on [J]aina network by TSN." "[I]nstead of paying [J]aina in US into Jaina's bank account [,] Tony told TSN to pay Ravi or his people & entities without my & Vipin's knowledge. . . ." (TSN is another moniker for the entity we refer to in our Moving Br. as T.S. USA Inc, see Dk. 369 at 16-21 of 42.) These hawala payments included the payments made to TD Time. (Dk. 369 at 16-23 of 42)

   3.  **M. Shah's and V. Shah's Reverse Engineering Exercise Designed to Portray Falsely the Brog Transfers to be Payments to Discharge Antecedent Debt was Known by Arora.** Settlement Agreement documents produced by V. Shah and N. Shah show that prior to meeting with Chopra on November 8, 2016, the Shahs engaged in a reverse engineering exercise designed to support an argument that payments from TD Time and other entities were loans, not hawala payments. The spreadsheets created featured various permutations of how Vision Impex and TD Time payments and other payments might be misrepresented to be loan payments. The supplemental production contains an October 10, 2016, email in which M. Shah advised Arora that, "I sent you the details of $1,350,000 paid to law firm. Jaina got money on behalf of Ravi Chopra & [J]aina made payments to law firm on behalf of Ravi Chopra. I sent you the details from who received." The "details" of persons who had allegedly made "loans" to Jaina reimbursed by the Brog Transfers consisted not only of TD Time and Vision Impex, but also: "NY Main Street Consultants"; Sun World Trading (HK) Ltd.; and Nexvoiz Communications, Inc.

   4.  **The November 8, 2016, Meeting with the Shahs, Chopra and the Attorneys at Chopra's Offices.** Knowing the Brog and LLC Transfers were not made in discharge of antecedent debt, M. Shah, V. Shah, D. Mehta, Arora, Chopra, and Siddiqi worked together to

February 16, 2023

Hon. Katherine Polk Failla
United States District Judge

falsely portray to the Court that the Brog and LLC Defendant transfers were payments in discharge of antecedent debt. This cooperation included a meeting held at Chopra's office on November 8, 2016, at which all were present.

5. **Discussion of the Brog Transfers.** Supplemental production correspondence after the November 8, 2016, meeting shows that the parties discussed, among other things, whether the parties could represent to the Court that two of the TD Time payments—which GCI has established were not loans, see Dk. 369 at 16-23 of 42—were loans to Jaina that were supposedly discharged by the Brog Transfers. After the meeting, Chopra was supposed to "confirm" whether Chopra and the Shahs, and their attorneys, could represent that the two TD Time payments were somehow loans. The parties and their attorneys needed to find, and mischaracterize as loans, payments made to Jaina that predated the first two Brog Transfers, or else the story that the Brog payments were made to discharge antecedent debt would collapse, because the Vision Impex payments post-dated the first two Brog Transfers. (See Dk. 369 at 22 of 42; Dk. 370-6.)

6. **Chopra's Proposal that the Parties Use Falsified Evidence and Counsel's Knowledge of that Proposal.** That correspondence also shows that, at the meeting and in the presence of counsel, Chopra proposed using certain falsified invoices to justify certain payments made to one of Chopra's STI entities. Mehta subsequently instructed Arora to advise Siddiqi that the Shahs were not "comfortable" with that proposal. What is amazing is not that Mehta rejected a proposal to submit false evidence to the Court, but how an officer of the court like Chopra's counsel could suggest, on behalf of his client, that approach to a co-litigant or co-counsel, or even continue to represent a client who insisted on making such a proposal to a co-litigant or co-counsel. (The false invoices appear in the supplemental production, and in documents produced by the V. Shah and N. Shah in November 2021, and were discussed in M. Shah's June 6, 2016 email (see ¶ 1., above).)

7. **Arora's Subsequent Misrepresentation to the Court that Surajit Bose Absconded to India with All of Jaina's Documents.** As GCI has previously advised the Court, when GCI complained about the paucity of document production at the July 25, 2017, conference, Arora told Your Honor that S. Bose had fled to India with Jaina's business records and, accordingly, neither V. Shah or M. Shah could produce them. (Dk. 369 at 9 of 42 (citing Dk 370-10)). The supplemental production is, however, loaded with documents that should have been produced back in 2016 or 2017, including an extensive financial analysis that CPA Maitri Patel prepared for Jaina for the period 2005 through part of 2015. The financial analysis included Jaina General Ledgers, Balance Sheets and Profit and Loss statements, all part of Jaina's books and records. Other documents contained in the supplemental production included the Hawala Spreadsheet and other documents concerning the Brog Transfers, the LLC Transfers, and other transfers made to or for the benefit of Chopra. Had those documents been produced, and available to GCI during discovery, GCI would, we believe, have defeated summary judgment against Chopra, and had its day in court with him.

8. **M. Shah's Summary Judgment Submission.** In his summary judgment affidavit and submission (Dks. 208, 209), M. Shah made several statements that are contradicted by his admissions in the supplemental production correspondence, including statements about the Brog and Transfers designed to exculpate Chopra.

February 16, 2023

Hon. Katherine Polk Failla
United States District Judge

GCI intends to establish that the fraud revealed by the supplemental production, construed in conjunction with the 60(b)(3) evidence already before the Court, involved officers of the Court, and "seriously affect[ed] the integrity of the normal process of adjudication[]" so that the Court could not "perform in the usual manner" its adjudicative function. *See King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (citations omitted). The motion is timely. *See* 287 F.3d at 95.

**Proposed Briefing Schedule:** GCI's reply brief on the 60(b)(3) motion is due on February 27, 2023. GCI respectfully requests the Court to adopt the following briefing schedule: (a) on March 6, 2023 GCI to file its moving papers, including a brief not to exceed 15 pages; (b) on March 27, 2023, Chopra to file his opposition papers (including a brief not to exceed 15 pages); (c) on April 3, 2023, GCI to file its reply papers (including a brief not to exceed 10 pages); and (d) on April 6, 2023, GCI to comply with Individual Rule 4(d) by dispatching to the Court courtesy copies of the papers filed by the parties on the motion. The motion will be limited to the request to supplement the motion and the reasons why a supplemented motion should be granted or denied.

Respectfully submitted,

Philip J. Loree Jr.

cc: Humayun Z. Siddiqi, Esq. (by CM/ECF and email)
Shomik Ghosh, Esq. (by CM/ECF and email)
Mr. Govind Vanjani (by email)
Pro Se Dismissed Defendant Mahendra Shah (by email)
All other parties and counsel of record (via CM/ECF)