UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEO-GROUP COMMUNICATIONS, INC. | Case No. 15-cv-01756 (KPF) |
| Plaintiff, | |
| v. | |
| RAVI CHOPRA, MAHENDRA SHAH, VIPIN SHAH, 728 MELVILLE PETRO LLC, KEDIS ENTERPRISES LLC, JMVD HILLSIDE LLC, NYC TELECOMMUNICATIONS CORP., and SHALU SURI, | |
| Defendants. | |

**RAVI CHOPRA'S AND NYC TELECOMMUNICATION CORP.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S COMBINED RULE
60(B)(3) AND RULE 60(D)(3) MOTION**

Humayun Siddiqi, Esq.
11 Broadway, Suite 615
New York, NY 10004
(646) 688-3553
*Attorney for Defendants Ravi Chopra and
NYC Telecommunications Corp.*

TABLE OF CONTENTS

Standard of Review ....................................................................................................... 1

POINT XI – RELIEF UNDER RULE 60(D)(3) SHOULD BE DENIED AS GCI HAS FAILED TO CLEARLY AND CONVINCINGLY ESTABLISH FRAUD ON THE COURT ..................... 1

    1.    Accurately Setting the Stage ................................................................................ 1

    2.    There Was No Credible Belief that Transactions Were a Sham ......................... 2

    3.    Chopra Made No Threats to Any Party ............................................................... 3

    4.    No Reverse Engineering Exercise Took Place ..................................................... 4

    5.    The Meeting of November 8, 2016 Was Not a Conspiracy and Was Discoverable by GGI ............................................................................................................................. 5

    6.    Chopra's Evidence Was Genuine ........................................................................ 6

    7.    The "Hawala Spreadsheet" Was Never Afforded Any Credibility ..................... 7

    8.    Arora's Alleged Misrepresentation to the Court Was Moot and Did Not Implicate Either Chopra or NYC Telecommunications ............................................................. 8

    9.    The Email Referenced By GCI Was Not Altered ................................................ 9

POINT XII - THE COMPLAINED OF CONDUCT DID NOT IMPEDE GCI FROM FULLY AND FAIRLY PRESENTING ITS CASE ................................................................................ 9

Conclusion ................................................................................................................. 11

TABLE OF AUTHORITIES

Cases

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655 (2nd Cir.1997) ........................5
*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309 (S.D.N.Y. 2003)..............9
*Denny v. Ford Motor Co.*, 959 F. Supp. 2d 262 (N.D.N.Y. 2013)..............................................1, 9
*Geren* v. *Quantum Chem. Corp.*, 832 F. Supp. 728 (S.D.N.Y. 1993)............................................10
*Gleason v. Jandrucko*, 860 F.2d 556 (2nd Cir. 1988).......................................................................1
*Intelli–Check,* 2005 WL 3533153  (E.D.N.Y 2005)........................................................................1
*King v. First Am. Investigations, Inc.*, 287 F.3d 91  (2nd Cir. 2002) ................................................1
*Kupferman v. Consol. Research & Mfg. Corp.,* 459 F.2d 1072 (2nd Cir. 1972)..............................1
*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158  (2nd Cir. 2004).......9

TABLE OF CONTENTS

Standard of Review ..........................................................................................................1

POINT XI – RELIEF UNDER RULE 60(D)(3) SHOULD BE DENIED AS GCI HAS FAILED TO CLEARLY AND CONVINCINGLY ESTABLISH FRAUD ON THE COURT .....................1

   1.   Accurately Setting the Stage..........................................................................1

   2.   There Was No Credible Belief that Transactions Were a Sham ..........................................2

   3.   Chopra Made No Threats to Any Party ...............................................................3

   4.   No Reverse Engineering Exercise Took Place ......................................................4

   5.   The Meeting of November 8, 2016 Was Not a Conspiracy and Was Discoverable by GGI .................................................................................................................5

   6.   Chopra's Evidence Was Genuine ..................................................................6

   7.   The "Hawala Spreadsheet" Was Never Afforded Any Credibility  ..................................7

   8.   Arora's Alleged Misrepresentation to the Court Was Moot and Did Not Implicate Either Chopra or NYC Telecommunications  ..............................................................8

   9.   The Email Referenced By GCI Was Not Altered ................................................9

POINT XII - THE COMPLAINED OF CONDUCT DID NOT IMPEDE GCI FROM FULLY AND FAIRLY PRESENTING ITS CASE ......................................................................9

Conclusion .....................................................................................................................11

# TABLE OF AUTHORITIES

Cases

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655 (2nd Cir.1997) ......................... 5
*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309 (S.D.N.Y. 2003) .............. 9
*Denny v. Ford Motor Co.*, 959 F. Supp. 2d 262 (N.D.N.Y. 2013) .............................................. 1, 9
*Geren* v. *Quantum Chem. Corp.*, 832 F. Supp. 728 (S.D.N.Y. 1993) ............................................ 10
*Gleason v. Jandrucko*, 860 F.2d 556 (2nd Cir. 1988) ....................................................................... 1
*Intelli–Check,* 2005 WL 3533153  (E.D.N.Y 2005) ......................................................................... 1
*King v. First Am. Investigations, Inc.*, 287 F.3d 91  (2nd Cir. 2002) .............................................. 1
*Kupferman v. Consol. Research & Mfg. Corp.,* 459 F.2d 1072 (2nd Cir. 1972) ............................. 1
*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158  (2nd Cir. 2004). ...... 9

STANDARD OF REVIEW

Fraud upon the court must be established by clear and convincing evidence. *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2nd Cir. 2002). It is distinguishable from other fraud in that it does not merely "embrace any conduct of an adverse party of which the court disapproves;" rather, it "embrace[s] only that species of fraud which does or attempts to, defile the court itself." *Kupferman v. Consol. Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2nd Cir. 1972). The scope of fraud upon the court is significantly narrower than that of other forms of fraud, "after-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of 'fraud upon the court.' *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2nd Cir. 1988); see also *Denny v. Ford Motor Co.*, 959 F. Supp. 2d 262, 268 (N.D.N.Y. 2013) 'although witness perjury and concealment of responsive documents would hardly merit praise, "even fairly despicable conduct will not qualify as fraud on the court." Fraud on the court will also not lie where the alleged misconduct merely consists of "an advocate's view of the evidence, drawing all inferences favorable to the [client] and against the [adversary]." *Intelli–Check,* 2005 WL 3533153, at *12 (E.D.N.Y 2005).

**POINT XI – RELIEF UNDER RULE 60(D)(3) SHOULD BE DENIED AS GCI HAS FAILED TO CLEARLY AND CONVINCINGLY ESTABLISH FRAUD ON THE COURT**

**1.     Accurately Setting the Stage**

With respect to the Robinson Brog Transfers, bank statements, wire transfers from various parties and deposition testimony of the principals of TD Time and Vision Impex was produced. It was established that funds were sent from Vision Impex and TD Time to Jaina and that Jaina in turn wired that money to Robinson Brog on behalf of Vision Impex. (NYC Telecommunication Corp.'s and Ravi Chopra's Statement of Undisputed Material Facts "SUMF" ¶¶ 18-21, 34-50, 52-54, Dkt. No. 199). The record shows that neither Chopra nor NYC

Telecommunications had any ownership interest in either TD Time or Vision Impex. (Id. ¶¶ 25-26, 28-30). Defendants also produced a declaration from a representative of Robinson Brog confirming that they had no relationship with Chopra or NYC Telecommunications and that the funds were received on behalf of Vision Impex. (Id. ¶¶ 18-21, 50). With respect to LLC Transfers, bank statements established the transfer of funds to the various LLC Defendants. (Id. ¶¶ 83-90).

GCI acknowledges that funds were sent to Robinson Brog and the various LLC Defendants. GCI speculates that, but for fraud on the court, evidence would have demonstrated that the funds sent by TD Time and Vision Impex belonged to Jaina or a distinct separate entity Jaina India, PVT – GCI is unsure.  GCI offers no bank statements or internal business records evidencing the outflow of cash from Jaina's India operations to Chopra or his "operatives". Rather, GCI relies on two email communications, one consisting of a spreadsheet of unknown provenance created *ex nihilo* with no underlying cash flow basis and the other email a hearsay communication merely repeating an allegation of "money laundering".

Finally, while GCI alleges fraud on the Court the bulk of its allegations relate to defendants other than Chopra and NYC Telecommunications. GCI provides no basis in law or equity why such fraud should be imputed to innocent co-defendants.

**2.    There Was No Credible Belief that Transactions Were a Sham**

There is no indication that Arora ever credited M. Shah's explanation with being true or that M. Shah continued to believe that the transactions were a "sham".  M. Shah was both a co-defendant and cross-defendant with respect to both the LLC Transfers and the Robinson Brog Transfers and, accordingly, had an interest in asserting and inventing claims against Chopra. (TAC ¶¶ 96, 108; Answer and Cross-Claim, Dkt. No. 113). Relative to knowledge of the actual

transactions, M. Shah was a virtual figurehead at Jaina, he was not involved in the negotiation of the various loans, orally agreed to, which was the purview of Jagdish Alawani – Jaina's deceased accountant. (Deposition Transcript of Surjit Singh "Singh Tr." p. 8, 12, Dkt. No 370-15; Deposition Transcript of Dalip Kumar "Kumar Tr." p. 18, Dkt. No. 370-16).

Relative to Arora, the entire weight of documentary evidence he had access to substantiated that the various transaction were legitimate loans – which evidence included bank statements and wire transfers. There is no indication that M. Shah ever provided Arora with credible or corroborating evidence relative to the content of his email. The evidence and uncontroverted testimony of third-parties TD Time and Vision Impex also bely the contents of M. Shah's email, a fact that at some point in time clearly became evident to M. Shah considering the declaration he produced in support of his motion for summary judgment. (Dkt. No. 208). Arora also jointly represented V. Shah whose spouse was a Jaina officer and who, sheltered from liability pursuant to a settlement agreement, ultimately produced a declaration substantiating that Vision Impex and the LLC Defendants were Jaina lenders. (Exhibit J, List 1, Dkt. No. 360-6). Thus, Arora was presented with 2 clients, one of whom – Mahendra Shah – had sent a short entirely unsubstantiated email and the other – Vipin Shah and spouse – who continuously asserted that the loans were genuine as confirmed by bank statements and wire transfers.

Relative to M. Shah's claims that Chopra "made" Bose sign the January 15, 2015 communication, that claim does not in any way indicate that the contents of the letter were untrue[1]. As to the claim that the various R. Chopra transactions were "made up", voluminous wire transfer statements and bank statements – to which both M. Shah and Arora would have access to - establish otherwise. (Declaration of Ravi Chopra ¶¶ 23-25, 33-38, Dkt. No. 195).

---

[1] M. Shah also alleged in a communication that Govind Vanjani "made" Surjit Bose 'Surajit Bose' send an email confirming that Jaina Systems owed "Geo" ([GCI]) $1,350,000. (Dkt. No. 402-12).

3

Contrary to M. Shah's assertion that Jaina was never in the phone card business, Jaina was supplied with third-party phone cards. (See *infra*, Section 6).  Relative to email of August 26, 2016, GCI's argument is difficult to parse but of no relevance to the allegation against Chopra that he directed the LLC Transfers.

**3.      Chopra Made No Threats to Any Party**

On an evidentiary level, the email constitutes hearsay. It is also false. (Supplemental Declaration of Ravi Chopra "Supp. Decl. Chopra" ¶ 3).  Bose's incompetence led to the financial implosion of Jaina, an entity which Chopra was a creditor of. That he would create a pretextual threat to avoid meeting Chopra is entirely foreseeable. Further, the purported "threat" in no way involves either M. Shah, V. Shah or Arora, all of whom, GCI itself acknowledges, met with Chopra after the email in question was received.

**4. No Reverse Engineering Exercise Took Place**

GCI's claim of a reverse engineering exercise, in which it does not allege Chopra or NYC Telecommunications' participation, is without merit. GCI sidesteps the context of the transactions at issue which had been negotiated orally several years previously. Two individuals had partial information regarding the loans. Jagdish Alwani, who negotiated the loans on behalf of Jaina and Surjit Bose, Jaina's operating manager-in-fact. (Singh Tr. p. 8, 12, Dkt. No 370-15; Kumar Tr. p. 18, 28, Dkt. No. 370-16).  Alwani passed away in 2014. (Kumar Tr. p. 29, Dkt. No. 370-16). Surjit Bose simply vanished. Several years had elapsed after the date of the transactions at issue and the commencement of discovery. Thus, a post-mortem to determine the nature of the various transaction was both necessary and appropriate.

GCI also ignores that the testimony of the principals of TD Time and Vision Impex as well as the sworn declaration of Mitchell Green, a principal of Robinson Brog, taken together

4

confirm that the transactions were as ultimately described. Of note, GCI is utterly silent with respect to the testimony submitted by various third-parties in this litigation and has presented no substantive evidence showing that their testimony was suborned.

GCI also purports that a particular exhibit shows that Chopra was the beneficiary of the funds. (Plaintiff's Combined Rule 60(B)(3) Memorandum "Reply" at 22). GCI mischaracterizes the document in question. The document describes the funds as being received by Robinson Brog and various LLC entities, all as unequivocally established by bank statements and deposition testimony. Chopra's name is used a category identifier and illustrates the unreliability of Jaina's accounting records. It also highlights an ongoing theme, GCI characterizing Chopra as "beneficiary" in the face of undisputed evidence that he was not the actual transferee.

5. **The Meeting of November 8, 2016 Was Not a Conspiracy and Was Discoverable by GCI**

GCI deposed Chopra, M. Shah and V. Shah. (Deposition Transcript of Ravinder Chopra, Dkt. Nos. 370-17, 370-18); Declaration of Humayun Siddiqi, Exhibit A – Deposition Transcript of Mahendra Shah; Deposition Transcript of Vipin Shah, Dkt. No. 370-11). During these depositions GCI never posed foundational questions including, how the deponents prepared for the deposition, whom they spoke with other than their counsel and what specifically they discussed with other parties. Had GCI done so then GCI would have been aware that the parties had met and been free to pursue lines of questioning. On this basis alone, GCI's motion should be denied as the relief it seeks is equitable in nature and a party must demonstrate that [his] own fault, neglect, or carelessness did not create the situation for which [he] seek[s] equitable relief. *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655, 662 (2nd Cir.1997)

With respect to Mehta's email of 2016 "waiting for Ravi to let us know if we can use TD Time funds for the first two entries of Robinson Brog" GCI continues a pattern of labored

mischaracterization. As noted *supra* all the defendants were in an information deficit. A failure to confirm the accuracy of their determination as to the origins of the loans would have made their defense untenable. Contacting either Vision Impex, on whose behalf TD Time extended loans, or TD Time itself would be necessary to confirm whether the loans were being appropriately classified.  Tellingly, GCI also fails to ask the most obvious question, if the defendants were engaged in committing a conspiracy, why would any confirmation be necessary?  GCI also ignores that defendants' classification was ultimately confirmed by the testimony of the principals of TD Time and Vision Impex. GCI produces no evidence that the testimony of either of the foregoing was suborned by any of the defendants.

GCI also engages in a flight of speculative fancy with respect Mehta's query as to whether GCI's claim would fail if Robinson Brog provided information as to the identity of recipient of the funds. In the extreme, GCI qualifies this query as an invitation to suborn perjury on the part of Robinson Brog. To the contrary, it undermines GCI's own claim that the parties were engaged in a desperate exercise to disguise the origin of the funds as it shows Mehta's understanding that, notwithstanding where the funds originated from, liability would only be incurred by the actual transferee thereby removing any motive to falsify transactions.

**6.    Chopra's Evidence Was Genuine**

GCI's contention that Chopra proposed the use of falsified invoices is incorrect and a cursory review of the email in question reveals that author never alleged that the invoices were false. (Dkt. No. 402-28).  The invoices are genuine and reflect third-party phone cards that had been provided to Jaina. (Supp. Decl. Chopra ¶¶ 4-5). That either the author of the email or either of the Shahs was "uncomfortable" with the proposal reflects more on their lack of knowledge relative to the day-to-day operations of Jaina.

Relative to GCI's allegation that $300,000 was paid from Jaina's accounts payable, no specific reference to an entry in Jaina's accounts payable nor a reference to Jaina's bank statements evidencing an actual transfer of funds has been provided and it must be assumed that GCI allegation is actually speculation. Finally, GCI fails to explain how this particular transaction supports a finding of fraud on the court – the transaction does not relate to either the Robinson Brog Transfers or the LLC Transfers and there's no allegation that this transaction prevented GCI from presenting its case or was considered by the Court.

**7.    The "Hawala Spreadsheet" Was Never Afforded Any Credibility**

Nothing on the record shows that either M. Shah or Arora credited the spreadsheet with being accurate. Assuming the spreadsheet was reviewed, initially it would be noted that it would be inadmissible – M. Shah is not the author. Thereafter it would be noted that the spreadsheet is of uncertain provenance, has no mathematical basis, was not generated contemporaneously with any of the complained of transactions (the accompanying email is dated January 25, 2015), was not substantiated with any documentation that showed the origin of the funds in question, is bereft of any details as to the identity of the various transferees and fails to identify the source of the funds allegedly transferred – which GCI alternatively speculates to be Jaina or Jaina India PVT, a separate company from Jaina. Accepting the content of the spreadsheet would be akin to accepting that Chopra gathered monies in India from Jaina unbeknownst to M. Shah, that the funds were sent to individuals and sources unknown to M. Shah, that Chopra caused that money to be delivered to TD Time and Vision Impex in the US by an unknown mechanism and by unknown persons, that thereafter TD Time and Vision Impex lent that money to Jaina and, finally, that the money was returned to Robinson Brog on behalf of Vision Impex who in turn returned it to Chopra. Additionally, assuming that either M. Shah or Arora performed an

analysis similar to that performed by GCI they would also have observed that even the most strained efforts to correlate the contents of the spreadsheet with the record of deposits and wire transfers would lead to gaps where loans by Vision Impex could not be attributed to any of the so-called "hawala funds" and a "fudge factor" would be required to balance the final accounting. (Dkt. No. 402-13). That the spreadsheet was never taken seriously is attested to by the fact that nothing on the record shows that M. Shah or Arora followed up with the sender of the spreadsheet or that they reviewed Jaina's internal documents to substantiate withdrawals from its accounts or unauthorized use of its network by third-parties. Further, the spreadsheet is directly contradicted both the weight of documentary evidence and the certain knowledge of N. Shah, the spouse of V. Shah, that Vision Impex and the LLC Defendants were lenders.

The Court may also note that GCI consistently presents the "hawala" spreadsheet as being accurate, particularly with respect to the TD Time loans. However, the document was created subsequent to all of the disputed transactions and is lacking entirely in a financial foundation in that it cannot account for where the funds in question originated from. Substantively, any claimed accuracy with respect to the various entries only accrues because it is a retrospective work of fiction. Further, GCI never questions the motivation for Bose sending the spreadsheet. GCI speculates, without any foundation, that it was sent to recap past transactions. However, GCI ignores another line of speculation that, given the entire absence of a financial foundation, is equally valid; namely, that Bose was himself had engaged in some manner of financial fraud and was attempting to place the blame on Chopra.

**8. Arora's Alleged Misrepresentation to the Court Was Moot and Did Not Implicate Either Chopra or NYC Telecommunications**

Fact discovery in this matter ended on January 31, 2017. (Dkt. No. 139). Accordingly, Arora's alleged misrepresentation, which occurred on or about, July 25, 2017 is moot.

(Transcript of Proceedings re: Conference held on 7/25/2017 before Judge Katherine Polk Failla, Dkt No. 172). Additionally, Defendants M. Shah and V. Shah objected to GCI's discovery request with respect to Jaina documentation on or about December 8, 2016 and GCI failed to respond to the objection – belieing any belief on the part of GCI that it was prejudiced by the alleged non-production. (Dkt. No. 388-6). Additionally, concealment of documents does not constitute fraud upon the court. *Denny* at 268. Further, GCI cites no authority to support its implied contention that an allegation of fraud on the Court can be used to sustain a Rule 60(D)(3) motion when the co-defendants themselves did not commit the alleged fraud in question and there is no evidence as to their awareness of any concealment.

**9. The Email Referenced By GCI Was Not Altered**

Preliminarily, the email was apparently never referenced by the Court and formed no part of the Court's decision to grant Chopra and NYC Telecommunications summary judgment. Substantively, GCI furnishes no basis for contention that Chopra and NYC Telecommunications' counsel "should have known" the email was altered. Highlighting the lack of intent to mislead, GCI notes that Chopra and NYC Telecommunications were the only parties to produce the email – conduct that it inconsistent with any intent to commit fraud. (MOL at 13). Further, GCI extensively questioned Chopra during his deposition with respect to the email in question and nothing precluded GCI from requesting that he search his records for a "complete" version of the email. (Deposition of Ravinder Chopra, p. 327-331, Dkt. 370-18).

**POINT XII. The Complained of Conduct Did Not Impede GCI from Fully and Fairly Presenting Its Case**

"[W]hen a movant seeks to set aside a judgment on the basis of fraud on the court, he 'must show that the conduct complained of prevented [him] from fully and fairly presenting his case.' " *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 176 (2nd Cir.

9

2004). GCI's allegations with respect to the disputed transfers are (i) that Chopra was indebted to Robinson Brog and that the transferred funds were used to pay off his debt to the same and (ii) that Chopra directed the LLC Transfers and, possibly, had an interest in the LLC defendants. (TAC ¶¶ 24, 37, 44, 75).

With respect to the Robinson Brog Transfers, GCI does not even assert that the alleged fraud upon the court relates to Chopra's alleged indebtedness to Robinson Brog. Beyond that foundational failure, GCI has not uncovered any substantive evidence that contradicts the contents of the declaration of a principal of Robinson Brog that the funds belonged to Vision Impex and that they had no relationship with Chopra or NYC Telecommunications. (SUMF ¶¶ 18-21, Dkt. No. 199). GCI continually harps on various entities being "Chopra Affiliates" but produces no substantive evidence showing actual ownership or control of the entities in question – preferring to rely on various accounting headers from Jaina's books. More specifically, GCI has not shown that any of the alleged fraud on the court relates to the ownership of Vision Impex – which company was established to belong solely to Dalip Kumar. (Id ¶¶ 28-30). Distilled to its essence, GCI's argument is that liability should be imputed to Chopra not because he received funds but because of various unreliable and contradictory ledger entries contained in Jaina's books.

With respect to LLC Transfers, this Court itself noted that the issue as to the identity of the party that directed the transfers is irrelevant as New York fraudulent conveyance statutes do not provide a cause of action against third parties who aid transfers. *Geren* v. *Quantum Chem. Corp.*, 832 F. Supp. 728, 737 (S.D.N.Y. 1993). Relative to Chopra owning an interest in any of the Defendants LLCs, GCI neither establishes much less alleges that Chopra had a real interest in the entities.

CONCLUSION

For the reasons set forth above, defendants Ravi Chopra and NYC Telecommunications respectfully request that this Court deny GCI's motion.

Dated: March 27, 2023
      New York, NY                     /s/ Humayun Siddiqi
                                     ---------------------------------
                                     Humayun Siddiqi, Esq.
                                     11 Broadway, Suite 615
                                     New York, NY 10004
                                     Tel. 646-688-3553
                                     *Attorney for Ravi Chopra and NYC Telecommunications Corp.*