UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEO-GROUP COMMUNICATIONS, INC.,

                    Plaintiff,

          -v.-

RAVI CHOPRA; MAHENDRA SHAH; VIPIN SHAH; 728
MELVILLE PETRO LLC; KEDIS ENTERPRISES LLC;
JMVD HILLSIDE LLC; NYC TELECOMMUNICATIONS
CORP.,

                    Defendants.

15 Civ. 1756 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Once again, this Court finds itself considering a motion by Plaintiff Geo-Group Communications, Inc. ("Geo-Group") to reopen this eight-year-old case. This time, Plaintiff alleges that previously-dismissed Defendants Ravi Chopra ("Chopra") and NYC Telecommunications, Inc. ("NYC Telecom," and together with Chopra, "Respondents") engaged in misconduct and fraud on the Court in connection with their 2017 motion for summary judgment, thereby entitling Plaintiff to relief pursuant to Federal Rules of Civil Procedure 60(b) and 60(d).

At the heart of Plaintiff's motion is a set of decades-old documents from non-party Jaina, a customer of Geo-Group and the subject of the arbitral award that precipitated the instant litigation. Plaintiff contends that these documents, which Plaintiff first received from Defendant Vipin Shah ("V. Shah") and his wife, non-party Nayana Shah ("N. Shah"), on or about November 2, 2021, prove that Chopra proffered false testimony earlier in the litigation.

Respondents vigorously oppose Plaintiff's motion on two broad bases. *First*, Respondents argue that Plaintiff's motion was not brought within a reasonable time, and that Plaintiff must bear the consequences of its tardiness. *Second*, Respondents maintain that Plaintiff mischaracterizes the substance of the documents, which Respondents claim are actually consistent with Chopra's prior testimony, such that Plaintiff cannot establish that Respondents engaged in fraud or misconduct. For the reasons set forth in the remainder of this Opinion, the Court agrees with Respondents, and finds that Plaintiff cannot carry its burden of demonstrating by clear and convincing evidence that it is entitled to the extraordinary relief it seeks under Rule 60.

## BACKGROUND[1]

### A.    The Litigation and Its Antecedents

The instant motion is the latest chapter in an eight-year-old saga to confirm an arbitral award, and the facts associated with the underlying litigation are detailed in the Court's numerous prior opinions, all of which are incorporated by reference. *See Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ.

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with the instant motion. The exhibits attached to Govind Vanjani's ("Vanjani") Declaration in Support of Plaintiff's Motion to Reopen are referred to as "Pl. Decl., Ex. []" (Dkt. #370), and the exhibits attached to Vanjani's Supplemental Declaration in Support of Plaintiff's Motion to Reopen are referred to as "Pl. Reply Decl., Ex. []" (Dkt. #402). The exhibits attached to Humayun Siddiqi's ("Siddiqi") Declaration in Opposition to Plaintiff's Motion to Reopen are referred to as "Resp. Decl., Ex []" (Dkt. #388). Plaintiff's moving brief is referred to as "Pl. Br." (Dkt. #369); Respondents' brief in opposition is referred to as "Resp. Opp." (Dkt. #387); Plaintiff's reply is referred to as "Pl. Reply" (Dkt. #401); and Respondents' reply is referred to as "Resp. Reply" (Dkt. #406). The Court has also considered materials submitted by the parties in connection with prior motions for summary judgment and for reconsideration; references to those materials are made using the citing conventions identified in *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2018 WL 3632498, at *1 n.2 (S.D.N.Y. July 30, 2018) ("*Geo-Group III*").

1756 (KPF), 2016 WL 390089 (S.D.N.Y. Feb. 1, 2016) ("*Geo-Group I*"); *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2016 WL 4098552 (S.D.N.Y. July 27, 2016) ("*Geo-Group II*"); *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2018 WL 3632498 (S.D.N.Y. July 30, 2018) ("*Geo-Group III*"); *Geo-Grp. Commc'ns, Inc.* v. *Shah*, No. 15 Civ. 1756 (KPF), 2020 WL 5743516 (S.D.N.Y. Sept. 25, 2020) ("*Geo-Group IV*"); *Geo-Grp. Commc'ns, Inc.* v. *Shah*, No. 15 Civ. 1756 (KPF), 2020 WL 6729181 (S.D.N.Y. Nov. 16, 2020) ("*Geo-Group V*"); *Geo-Grp. Commc'ns, Inc.* v. *Shah*, No. 15 Civ. 1756 (KPF), 2021 WL 2822564 (S.D.N.Y. June 15, 2021) ("*Geo-Group VI*").  Because Plaintiff's Rule 60(b) and Rule 60(d) requests are grounded in alleged misconduct during this litigation, the Court here summarizes the relevant factual and procedural histories necessary to resolve the motion.

    **1.    The Parties**

    Geo-Group "is a telecommunications company that was in the business of buying minutes from carriers and reselling those minutes to an array of customers." *Geo-Group III*, 2018 WL 3632498, at *2.  Chopra is the president of NYC Telecom, a company that sells phone cards and phone card subscriber identification modules (or SIMs).  *Id.*  Non-party Jaina was a customer of Geo-Group.  *Id.*  Previously-dismissed Defendant Mahendra Shah ("M. Shah") was both a shareholder and the President of Jaina; previously-dismissed Defendant Vipin Shah (together with M. Shah, the "Shah Defendants") is Mahendra Shah's brother; and non-party Nayana Shah is Vipin Shah's wife and a Jaina shareholder.  *Id.*  Both Vipin and Nayana Shah often transferred money to

Jaina.  *Id.*  During the relevant time period, Surajit Bose ("Bose") was the CEO of Jaina, and Jagdish Alwani ("Alwani") was Jaina's accountant.  *Id.*  Bose is believed to be living abroad, while Alwani passed away before this litigation was filed.  *Id.*  Also relevant to the current motion are several previously-dismissed corporate Defendants, including 728 Melville Petro LLC ("Melville"), Kedis Enterprises LLC ("Kedis"), and JMVD Hillside LLC ("JMVD," and together with Melville and Kedis, the "LLC Defendants").

### 2.    The 2015 Arbitral Award and the Inception of the *Geo-Group* Litigation

More than ten years ago, on May 30, 2013, Plaintiff commenced an arbitration against Jaina to recover an alleged debt.  *Geo-Group III*, 2018 WL 3632498, at *2.  On July 10, 2014, Plaintiff prevailed in that proceeding, and the award was later confirmed in New York County Supreme Court in a judgment entered on April 3, 2015, in the amount of $2,712,175.51.  *Id.*  When Plaintiff was thwarted in its efforts to collect on this debt, it filed the instant case on March 9, 2015 (Dkt. #1), naming a slew of individuals who Plaintiff alleged had improperly received funds from Jaina while it was subject to the arbitral proceeding and award.  *Geo-Group II*, 2016 WL 4098552, at *1.  As relevant here, Plaintiff originally alleged that between February 2, 2014, and October 1, 2014, Jaina made payments to the law firm then known as Robinson Brog Leninard Green Genovese & Gluck, P.C. ("Robinson Brog"), totaling $1,350,000, in order to satisfy Chopra's personal debt to the law firm. *Id.* at *2.  These payments are referred to herein as the "Robinson Brog Transfers."

4

Plaintiff separately alleged that Jaina made another set of transfers at Chopra's behest, this time to the LLC Defendants. *Geo-Group III*, 2018 WL 3632498, at *4  This set of transactions, herein referred to as the "LLC Transfers," consists of transfers by Jaina totaling $460,000 to Melville in October 2014; $200,000 to Kedis in January 2014; and $200,000 to JMVD on August 13, 2014. *Id.*  As its legal basis for relief, Plaintiff relied on several sections of Article 10 of the New York Debtor and Creditor Law (the "NYDCL"), namely Sections 273, 273-A, 274, and 276, which establish the circumstances in which a conveyance constitutes constructive or actual fraud. *Id.* at *7-8; *see generally* N.Y. Debt. & Cred. Law §§ 273, 273-A, 274, 276.[2]  In broad summary, Plaintiff alleged that the Robinson Brog Transfers and the LLC Transfers (together, the "Disputed Transfers") were constructive or actual fraudulent conveyances, such that Respondents and the LLC Defendants, among others, were liable to Plaintiff for the funds.

On February 1, 2016, the Court denied in part Chopra's motion to dismiss, while granting in full the respective motions to dismiss filed by the Shah and LLC Defendants. *See Geo-Group I*, 2016 WL 390089, at *1. However, the Court granted Plaintiff leave to replead, and Plaintiff exercised this grant by filing its Third Amended Complaint (or "TAC") against Respondents, the Shah Defendants, and the LLC Defendants on February 22,

---

[2]     As Respondents note (Resp. Opp. 3 n.1), New York enacted a version of the Uniform Voidable Transactions Act ("UVTA") on April 4, 2020, which replaced the Debtor and Creditor Law, including the provisions related to fraudulent conveyances. *See* Uniform Voidable Transactions Act, N.Y. Laws 2019, ch. 580, sec. 2, §§ 270-281, eff. April 4, 2020.  The UVTA is not retroactive, and the transactions in this case are still governed by the old Debtor and Creditor Law.

2016.  (Dkt. #105 (TAC)).  The Shah Defendants and the LLC Defendants once again moved to dismiss, on which motions the Court ruled in an Opinion and Order dated July 27, 2016.  *Geo-Group II*, 2016 WL 4098552, at *2.  This time, the Court denied the Shah Defendants' motion to dismiss, but granted the LLC Defendants' motions to dismiss.  *Id.* at *1.  In doing so, the Court found that Plaintiff could not state a claim for constructive or actual fraudulent conveyance against the LLC Defendants because Plaintiff could not plausibly establish either that the LLC Defendants had any connection to M. Shah, Chopra, and/or Jaina such that the LLC Defendants would have been aware of the arbitration and award, or that there was any lack of fair consideration underpinning the LLC Transfers.  *See id.* at *5-7.

The parties that remained in the case commenced discovery on September 14, 2016, but discovery was subsequently stayed on January 27, 2017, in light of the Shah Defendants' bankruptcy filings in the United States Bankruptcy Court for the Eastern District of New York.  *Geo-Group III*, 2018 WL 3632498, at *6. On July 25, 2017, the stay was lifted and discovery resumed. *Id.*  During discovery, Plaintiff took a number of depositions, most notably of Chopra on August 28 and 29, 2017.  (*See* Pl. Decl., Ex. 16-17 (transcripts)). Additionally, Plaintiff deposed the owners of two entities — TD Time and Vision Impex — that were the apparent recipients of the Robinson Brog Transfers. (*See* Pl. Decl., Ex. 14 (Surjeet Singh (TD Time) transcript); *id.*, Ex. 15 (Dalip Kumar (Vision Impex) transcript)).  Plaintiff also deposed V. Shah on August 8,

2017, and M. Shah on August 11, 2017.  (*See* Dkt. #218-3 through #218-10 (transcripts)).

### 3.     The 2018 Summary Judgment Opinion and Order

On December 4, 2017, Respondents filed a motion for summary judgment, which motion is the subject of Plaintiff's current Rule 60 application. *Geo-Group III*, 2018 WL 3632498, at *6.  The Shah Defendants also filed motions for summary judgment on December 11, 2017, and December 14, 2017, respectively.  *Id.*

In essence, Respondents contended that the record established that: (i) Chopra had been involved in facilitating short-term loans provided by TD Time and Vision Impex prior to the arbitration; (ii) the Robinson Brog Transfers were made to pay back those antecedent loans; and (iii) Chopra was not in fact a beneficiary of those transfers.  *Geo-Group III*, 2018 WL 3632498, at *9-11.  As such, Respondents argued, Chopra and NYC Telecom were outside the scope of any NYDCL liability.  *Id.*  Respondents advanced a similar position with regard to the LLC Transfers, arguing that such transfers were made pursuant to antecedent loans brokered by Chopra, and that Chopra was not a beneficiary. *Id.* at *12 n.11.

To support their motion, Respondents provided a lengthy statement of material facts pursuant to Local Rule 56.1 that was supported by extensive evidence, including a declaration from A. Mitchell Greene, a shareholder at Robinson Brog; excerpts from the Chopra, Singh, and Kumar depositions; and copies of bank statements and wire transfer receipts.  *Geo-Group III*, 2018 WL

3632498, at *2-4.  Additionally, M. Shah and V. Shah provided Rule 56.1 Statements in support of their respective motions, to which statements they appended copies of checks and transaction receipts, as well as other materials. *Id.* at *1 n.2.  Plaintiff, for its part, responded to the factual assertions contained in each movant's Rule 56.1 Statement, but was unable to refute, or even to identify a material dispute concerning, certain of those assertions.  *Id.*

On July 30, 2018, the Court granted summary judgment in favor of Respondents.  On the basis of the comprehensive submissions from the parties, the Court made several findings with respect to the Disputed Transfers.  *Geo-Group III*, 2018 WL 3632498, at *1 n.2 (observing that "[t]he parties have submitted numerous deposition transcripts, affidavits, certifications, and declarations, with voluminous exhibits attached thereto"). With regard to the Robinson Brog Transfers, the Court found that Respondents had sufficiently established that no genuine dispute of material fact existed as to the scope of Chopra's involvement in the transfers.  In particular, the Court found that while Chopra had helped to arrange the loans from TD Time and Vision Impex to Jaina, which loans were repaid through transfers to Robinson Brog, Chopra had no ownership interest in either entity, and therefore "there [was] no evidence in the record suggesting that Chopra received the funds transferred to Robinson Brog."  *Id.* at *9.  As to the LLC Transfers, the Court found similarly that the record established that Chopra "brokered the loan from Kedis to Neminath and received a fee for his services," but that "Chopra or

NYC Telecom [did not benefit] from the transfers from Jaina to Kedis, Melville, or Hillside." *Id.* at *12 n.11.

Pertinent to Plaintiff's current motion, in making its findings on the summary judgment motions, the Court observed that, while the alleged loans had not been reduced to a formal writing, the relevant transactions "were substantiated by documents and testimony from third parties who corroborated the timing and amount of certain challenged transfers, and who testified that they were loans or payments made on behalf of others who intended those payments to be loans." *Geo-Group III*, 2018 WL 3632498, at *14. The Court further found that "the other transactions were supported by circumstantial evidence, insofar as the amounts of the payments from Jaina to the third parties roughly matched the amounts alleged to be loans, and where the amounts did not match, witness testimony was often available to explain the discrepancies." *Id.*

These findings dictated summary judgment in Respondents' favor on the constructive fraudulent conveyance claims, as they precluded the necessary finding under the NYDCL that Chopra or NYC Telecom was "a transferee of the assets or a beneficiary of the conveyance." *Geo-Group III*, 2018 WL 3632498, at *8; *see also id.* at *9 ("[A] party may not be held liable in constructive or intentional fraud for a transfer in which he did not participate as either a transferee or a beneficiary." (citing *Amusement Indus., Inc.* v. *Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011))). Additionally, the Court found "no basis to hold Chopra liable under section 276 for actual

fraud," as the record did not suggest that Jaina acted with any fraudulent purpose in transferring funds to Robinson Brog or the LLC Defendants that could be imputed to Chopra. *Id.* at *11. Consistent with the Court's grant of summary judgment, Respondents were terminated as parties to the matter. The Court also granted summary judgment in M. Shah's favor on a similar basis and terminated him as a party to the matter. *Id.* at *14 (finding no evidence "to elucidate how M. Shah personally benefitted from the transfers at issue in th[e] action").

Importantly, the Court denied V. Shah's motion for summary judgment. *Geo-Group III*, 2018 WL 3632498, at *1. The Court did so on the basis that Jaina's bank records confirmed that V. Shah *had* improperly received transfers of funds from Jaina "during the pendency of the arbitration and after the award was issued." *Id.* at *14. In sharp contrast to the wealth of record evidence substantiating the loans forming the basis of the Disputed Transfers, the Court was "struck by the lack of documentary evidence … , declarations, and/or depositions from disinterested parties" to support V. Shah's characterization of the payments. *Id.*

### 4.   The Shah Settlement

After *Geo-Group III*, the case proceeded against V. Shah alone. The Court set a trial date, after which Plaintiff made late-breaking applications for additional discovery against previously-dismissed parties, requiring the Court to issue a scheduling order adjourning the trial *sine die*. *Geo-Group IV*, 2020 WL 5743516, at *7. Eventually, the Court set a new trial date of July 12, 2021.

(Dkt. #302).  On the eve of trial, however, Plaintiff and V. Shah reported to the Court that they had reached a settlement.  *Geo-Group IV*, 2020 WL 5743516, at *1.  In particular, on July 1, 2021, Plaintiff, V. Shah, and non-party N. Shah entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement"), and on July 9, 2021, they submitted a Conditional Stipulation and Order of Dismissal of Plaintiff's remaining claims against V. Shah (the "Shah Dismissal Order"), which stipulation was endorsed by the Court on the same day.  (Dkt. #330 (Shah Dismissal Order); Dkt. #338 (Settlement Agreement)).  The Settlement Agreement included monetary consideration of $50,000 and the agreement of V. Shah and N. Shah to produce a broad set of documents to Plaintiff in exchange for Plaintiff's release of its claims against the Shahs.  (Settlement Agreement 1-4).  The Shah Dismissal Order was also conditioned on the United States Bankruptcy Court for the Eastern District of New York entering a final, non-appealable order approving the settlement, which order was issued on September 3, 2021.  (*See* Dkt. #331).

A settlement agreement normally signals the end of a matter.  The Settlement Agreement between Plaintiff and the Shahs, however, has proven to be a wellspring of additional litigation.  In particular, while the Shahs made an initial 87,000-page production to Plaintiff on November 21, 2021 (the "Settlement Production"), Plaintiff sought to compel additional productions in the ensuing year; these requests were principally resolved by this Court in two lengthy orders, one issued on July 18, 2022, and the other on November 4, 2022.  *See generally Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF),

2022 WL 2801010 (S.D.N.Y. July 18, 2022) ("*Geo-Group VII*"); *Geo-Grp. Commc'ns, Inc.* v. *Shah*, No. 15 Civ. 1756 (KPF), 2022 WL 16722098 (S.D.N.Y. Nov. 4, 2022) ("*Geo-Group VIII*").  Related proceedings continued through a status update filed by V. Shah on February 17, 2023, in which Plaintiff, V. Shah, and N. Shah represented that they would be able to work through any remaining issues without the Court's involvement.  (Dkt. #396).

**B.    Procedural Background to the Instant Motion**

On November 26, 2022, Plaintiff filed a letter motion "advis[ing] the Court of [Plaintiff's] intention to file, no later than December 6, 2022, a motion … to set aside the portion of the final judgment in this action that was in favor of [Respondents]."  (Dkt. #364).  Respondents filed their response on November 28, 2022, and the Court set a briefing schedule for the motions on the same day.  (Dkt. #365, 366).  Pursuant to that schedule, Plaintiff filed its motion, memorandum of law, and a supporting Declaration of Govind W. Vanjani, to which Vanjani appended 54 exhibits, on December 6, 2022.  (Dkt. #368-370).

On December 15, 2022, Respondents filed a letter motion seeking an order from the Court "compelling [Plaintiff] to produce all documents received [by Plaintiff] pursuant to [the Settlement Agreement]," as well as an extension of time to file its opposition brief.  (Dkt. #373).  One day later, Plaintiff filed its letter response, consenting both to produce the relevant documents and to the proposed extended briefing schedule.  (Dkt. #374).  The Court endorsed the parties' submissions and briefing continued.  (Dkt. #375).

On February 10, 2023, Chopra and NYC Telecom filed their memorandum of law in opposition to Plaintiff's motion, as well as the supporting Declarations of Humayun Siddiqi, Ravi Chopra, and Dalip Kumar. (Dkt. #386-390). On March 6, 2023, Plaintiff filed its reply memorandum of law and a Supplemental Declaration of Govind W. Vanjani, containing an additional 31 exhibits and a new argument under Rule 60(d). (Dkt. #401-402). Finally, on March 27, 2023, Chopra filed his response in opposition to Plaintiff's motion to set aside the judgment pursuant to Rule 60(d). (Dkt. #403-406).[3]

## DISCUSSION

### A.   Applicable Law

#### 1.    Rule 60(b)

Federal Rule of Civil Procedure 60(b)(3) states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … fraud (whether previously called intrinsic

---

[3]     After filing its opening memorandum, Geo-Group filed a pre-motion letter seeking leave to include a claim for relief under Rule 60(d)(3). (Dkt. #391). Respondents not only opposed the request (Dkt. #398), but also filed a separate pre-motion letter seeking leave to file a motion to dismiss under Fed. Civ. P. 12(b)(1), noting among other things, that "the Delaware Division of Corporations of the State of Delaware declared [Plaintiff's] corporate charter 'void' for failure to pay necessary franchise taxes and file an annual report" (Dkt. #393). The same argument is made by Respondents in their opening brief. (Resp. Opp. 6-9). In a subsequent submission to the Court, Plaintiff advised that on "February 17, 2023, [Plaintiff] paid $525 to the State of Delaware, bringing itself up to date on franchise taxes; filed the missing report; paid filing revival, and same day processing fees; and filed on an expedited basis a revival certificate pursuant to 8 Del. Code § 328," which development the Court recognized in its endorsement of Plaintiff's letter. (Dkt. #397 at 1-2; Dkt. #399 at 5 (observing that "Plaintiff has now remedied the issue and is now in good standing in Delaware" such that there is no merit to Defendants' contemplated motion to dismiss)). Respondents did not renew the standing argument in their reply brief. (Resp. Reply).

or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed R.
Civ. P. 60(b)(3).  Any motion pursuant to Rule 60(b) must be made within a
"reasonable time," and in the case of Rule 60(b)(3), must also be made "no
more than a year after the entry of the judgment or order or the date of the
proceeding."  Fed. R. Civ. P. 60(c)(1).  Put differently, while "the one-year period
represents an 'extreme limit' for filing a Rule 60(b)[(3)] motion," such a motion
"may be rejected as untimely if not made within a reasonable time even though
the one-year period has not expired."  *Wyche* v. *Adv. Drainage Sys., Inc.*, 332
F.R.D. 109, 116 (S.D.N.Y. 2019) (quoting *Gonzales* v. *Nat'l Westminster Bank,
PLC*, No. 11 Civ. 1435 (LAP), 2013 WL 6978874, at *5 (S.D.N.Y. Nov. 18, 2013)).
What is reasonable is "based on 'the particular circumstances of the case,'
taking into account the reason for any delay, the possible prejudice to the non-
moving party, and the interests of finality."  *Thai-Lao Lignite Co., Ltd.* v. *Gov't of
Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quoting
*PRC Harris, Inc.*, v. *Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).

After clearing these threshold requirements, the proponent of a Rule
60(b)(3) motion bears the burden of proof and must establish its entitlement to
relief "by clear and convincing evidence that the opposing or adverse party
engaged in fraud or similar misconduct."  *Buxbaum* v. *Deutsche Bank AG*, 216
F.R.D. 72, 81 (S.D.N.Y. 2003) (citing *Fleming* v. *New York Univ.*, 865 F.2d 478,
484 (2d Cir. 1989)); *see also Thai-Lao Lignite*, 864 F.3d at 182 ("The burden is
on the moving party to demonstrate that it is entitled to relief, and courts
'[g]enerally … require that the evidence in support of the motion to vacate a

final judgment be highly convincing.'" (quoting *Kotlicky* v. *U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987))).  Finally, the movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case."  *State St. Bank & Trust Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (citation omitted).  That said, "a Rule 60(b)(3) motion … cannot serve as an attempt to relitigate the merits." *Fleming*, 865 F.2d at 484.

Separately, Rule 60(b)(6) allows a court to relieve a party from a final judgment based on "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  To qualify for relief, however, "'extraordinary circumstances' are required to bring the motion within the 'other reason' language and to prevent clause (6) from being used to circumvent the 1-year limitations period that applies" to the remaining clauses of Rule 60(b)."  *Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988) (citing *Klapprott* v. *United States*, 335 U.S. 601, 613 (1949)).  To that end, "[c]ontrolling cases have held that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)."  *United States* v. *Int'l Bhd. of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001) (citation omitted).  Therefore, relief under Rule 60(b)(6) is available only "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule and there are extraordinary circumstances justifying relief."  *Tapper* v. *Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (internal quotation marks and citation omitted).

Properly applied, "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer* v. *Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citing *House* v. *Sec'y of Health and Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982); *Seven Elves, Inc.* v. *Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)).  "In other words[,] it should be broadly construed to do 'substantial justice,' yet final judgments should not 'be lightly reopened.'" *Id.* (quoting *Seven Elves*, 635 F.2d at 401).  With this guidance in mind, "a motion under [Rule 60(b)] to vacate a judgment of dismissal is addressed to the sound discretion of the trial court." *Altman* v. *Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) (per curiam).

### 2. Rule 60(d)

Rules 60(d)(1) and (3) allow a court, respectively, to "entertain an independent action to relieve a party from a judgment, order, or proceeding" and to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3).  Unlike motions under Rule 60(b), a motion pursuant to Rule 60(d)(3) is not subject to "any time constraint." *United States* v. *Key*, Nos. 12 Cr. 712-1, 18 Civ. 7716 (SHS), 2019 WL 2314693, at *9 (S.D.N.Y. May 31, 2019); *see also, e.g., King* v. *First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).  Still, the moving party must shoulder a heavy burden to demonstrate its entitlement to relief.  In particular, the moving party must show that the other side committed a "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason* v. *Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) (defining "fraud upon the court"); *see also Key*, 2019 WL 2314693, at *9 (noting

16

that Rule 60(d) relief "is only available to prevent a grave miscarriage of justice" (internal quotation marks and citation omitted)).  "The concept of fraud on the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges* v. *Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (internal quotation marks and citation omitted).  Significantly, "neither perjury nor nondisclosure, by itself, amounts" to fraud on the court.  *Gleason*, 860 F.2d at 560.  Finally, the moving party is entitled to relief only if "[f]raud upon the court [is] established by clear and convincing evidence." *King*, 287 F.3d at 95.

## B.  Plaintiff Is Not Entitled to Relief Under Rule 60(b)(3)

Ultimately, the Court finds that Plaintiff fails to establish any of the necessary elements for relief under Rule 60(b)(3).  As elaborated herein, the Court first finds that Plaintiff failed to apply for relief within a reasonable time; then finds that Plaintiff cannot establish by clear and convincing evidence that Respondents proffered false testimony; and finally finds that the significance of the new materials proffered by Plaintiff is limited and did not prevent Plaintiff from fully and fairly presenting its case.  Each one of these findings is an independent basis for denial of Plaintiff's motion; taken together, they make clear that Plaintiff comes up well short of the showing necessary to obtain relief under Rule 60(b)(3).

### 1.   Plaintiff Did Not Apply For Relief in a Reasonable Time

Two related questions about timeliness pursuant to Rule 60(c) must be resolved before the Court may consider the merits of Plaintiff's Rule 60(b)(3) motion.  First, the Court evaluates whether Plaintiff's motion is time-barred, *i.e.*, whether it was filed before or after the one-year cutoff.  Fed. R. Civ. P. 60(c)(1).  Assuming the former, the Court then considers whether Plaintiff's motion is timely, *i.e.*, whether it was "made within a *reasonable* time."  *Id.* (emphasis added); *see Wyche*, 332 F.R.D. at 116 (observing that a Rule 60(b)(3) motion "may be rejected as untimely if not made within a reasonable time even though the one-year period has not expired").

Despite the fact that the relevant grant of summary judgment in *Geo-Group III* was made in 2018, the Court finds that Plaintiff's motion is not technically time-barred.  As is apparent from the lengthy history of this litigation, there have been many intermediate opinions and orders dismissing various parties to this litigation.  Still, "[a] judgment is final for purposes of Rule 60(b) when it is appealable."  *Wyche*, 332 F.R.D. at 112 (citing *In re Shengdatech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2015 WL 342209, at *3 (S.D.N.Y. May 28, 2015) (collecting cases)).  As is well established, for the purposes of an appeal, "[a] final judgment or order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision."  *Petrello* v. *White*, 533 F.3d 110, 113 (2d Cir. 2008).  This requirement is rooted in the text of Rule 54(b), which provides that where there are multiple claims brought against multiple parties,

"the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Plaintiff correctly notes that the Court made no such express determination under Rule 54(b) in its grant of summary judgment in *Geo-Group III*. (Pl. Reply 2). Accordingly, while Respondents were terminated as parties to the litigation, the action continued as to V. Shah, thereby precluding *Geo-Group III* from serving as a final judgment for the purposes of Rule 60(c). *See In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 490 F.3d 99, 109 (2d Cir. 2007) (requiring an "express determination that there is no just reason for delay" and an "express[] direc[tion]" to "the clerk to enter [partial final] judgment"). Rather, it was the conditional entry of the Shah Dismissal Order on July 9, 2021, that resolved the claims as to the remaining party, and the related notice on September 7, 2021, of the Bankruptcy Court's approval of that Order, that precipitated a final judgment in the matter. (*See* Dkt. #330-331). Even then, because the Shah Dismissal Order was not a separate document of judgment, pursuant to Rule 58(c)(2)(B), final judgment was entered on December 6, 2021, which date falls 150 days after the Court's July 9, 2021 approval of the Shah Dismissal Order. *See* Fed. R. Civ. P. 58(c)(2); *see also In re Litas Int'l, Inc.*, 316 F.3d 113, 117-20 (2d Cir. 2003) (discussing the "separate-document requirement"). Therefore, Plaintiff's December 6, 2022 motion technically falls within the one-year limit required by Rule 60(c).

But while Plaintiff clears the first hurdle, it falls at the second, due to Plaintiff's failure to establish that its motion was made within a reasonable time.  As a general matter, a request for relief under Rule 60(b) is unreasonable and will not be granted "where the applicant fails to move for relief promptly." *Grace* v. *Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006).  To establish reasonableness, Plaintiff advances several arguments, none of which is persuasive to the Court.  To begin, Plaintiff argues that because its motion is filed under Rule 60(b)(3) and makes allegations of fraud, it should be held to a more permissive reasonableness standard as compared to other requests for relief under Rule 60(b).  (Pl. Reply 3-4).  Relatedly, Plaintiff argues that caselaw interpreting reasonableness in the context of Rule 60(b)(1) and (b)(2) is inapposite in the context of Rule 60(b)(3).  (*Id.*).  Finally, Plaintiff maintains that personal circumstances and its desire to marshal as much supporting evidence as possible justify the delay.  (Pl. Br. 28-29).

Plaintiff's blanket propositions regarding the reasonableness standard are inconsistent with the case-specific approach prescribed by the Second Circuit:  "What is reasonable is 'based on the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality.'"  *Wyche*, 332 F.R.D. at 116 (quoting *Thai-Lao Lignite Co., Ltd.*, 864 F.3d at 182).  Such an approach, in turn, is consistent with the text of Rule 60(c)(1), which does not differentiate among the different subsections of Rule 60(b) when setting out the reasonableness standard for assessing a motion's timeliness.  *See* Fed. R. Civ.

P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time.").
Nor has Plaintiff provided any caselaw to support its position that cases under
Rule 60(b)(3) should be understood in a categorically different way than cases
brought under other subsections of Rule 60(b).[4]

Indeed, the particular circumstances of Plaintiff's motion, which purports
to be based entirely on "newly discovered evidence that, with reasonable
diligence, could not have been discovered in time to move for a new trial," fall
as neatly under Rule 60(b)(2) as they do under (b)(3).  Fed. R. Civ. P. 60(b)(2).
Plaintiff concedes as much, acknowledging that its proof is based entirely on
Jaina-related documents produced in response to the Settlement Agreement,
documents that Plaintiff claims should have been produced in discovery.  (Pl.
Br. 2-3).  Try as it might, Plaintiff cannot simply proclaim that the body of
caselaw on Rule 60(b)(2) is irrelevant as a consequence of Plaintiff's conscious
decision to cite one subsection of Rule 60(b) over another.

The Court of course understands why Plaintiff has tried to do so, as an
examination of caselaw considering reasonableness under Rule 60(b)(2)
provides significant support for the Court's finding that Plaintiff's motion is

---

[4]     *Bouret-Echevarria* v. *Caribbean Aviation Maint. Corp.*, on which Plaintiff relies in its reply
brief, does not compel a different result.  (*See* Pl. Reply 4-5 (citing *Bouret-Echevarria* v.
*Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 40-41 (1st Cir. 2015))).  There, plaintiffs'
counsel discovered new evidence of an improper disclosure to the jurors some eleven
months after the jurors rendered their verdict in the case, after which counsel took
prompt action in moving for relief under Rule 60(b)(6).  *See Bouret-Echevarria*, 784 F.3d
at 40-41.  Here, and as discussed more extensively *infra*, Plaintiff's motion exclusively
involves old evidence concerning the underlying factual dispute, which evidence was
available during discovery in this matter, had Plaintiff's counsel exercised more
diligence.  This key difference in the timing that evidence became available renders
*Bouret-Echevarria* distinguishable on its facts.

untimely.  In those cases, courts evaluated reasonableness by considering the time period that elapsed from when the materials were able to be discovered, to when the motion was ultimately made.  *See, e.g.*, *Wyche*, 332 F.R.D. at 116-17. Here, Plaintiff received the Settlement Production on November 2, 2021, and represents that it had completed an "initial review" of the Production by mid-December 2021.  (Pl. Decl. ¶ 14).  Plaintiff's decision to wait until December 6, 2022 — almost one year later — to file its motion, without more, represents a presumptively unreasonable delay.  *See, e.g.*, *Wyche*, 332 F.R.D. at 117 (finding movant's unexplained four and one-half month delay was unreasonable); *Barrett* v. *Loc. 804 Union (IBT)*, No. 18 Civ. 2046 (MKB), 2023 WL 4551686, at *5 (E.D.N.Y. July 14, 2023) (finding movant's unexplained ten-month delay was unreasonable); *Simon* v. *United States*, No. 12 Civ. 5209 (ER), 2020 WL 832887, at *4 (S.D.N.Y. Feb. 20, 2020) (finding movant's unexplained one-year-and-eight-month delay was unreasonable).

This conclusion is further buttressed by Plaintiff's deficient explanations for the delay.  First, Plaintiff disclaims the diligence of its initial review of the Settlement Production, done in November and December of 2021, noting that while such review "discover[ed] some potentially useful documents, as well as documents that were interesting," it was not intended as a factfinding exercise. (Pl. Br. 28).  Rather, Plaintiff indicates that such review was done to provide more ammunition for its protracted fight with the Shahs over the Settlement Agreement.  (Pl. Reply 5 ("[Plaintiff] had completed only its '*initial* review,' which was designed principally to determine whether the Shahs had produced the

documents for which [Plaintiff] had bargained.")).  Plaintiff further represents that it did not begin its review of the Settlement Production in earnest until after the May 11, 2022 conference in this matter — a full six months after receiving the Production — when Plaintiff realized it was likely not going to obtain any additional documents from the Shahs.  (Pl. Br. 28-29).  That Plaintiff deliberately chose to focus its resources on attempting to obtain more documents, without simultaneously reviewing the 87,000 documents it already had in its possession, does not suffice as a reasonable explanation for Plaintiff's delay.

Similarly unsatisfying is Plaintiff's representation that it lacked the capacity to review the materials in a timely way, as it was incumbent on Plaintiff and its counsel to arrange for the necessary resources to do so, and Plaintiff's decision to forego arranging such resources should not inure to Respondents' detriment.  *Cf. Securities and Exch. Comm'n* v. *McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his freely selected agent' 'would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of his lawyer-agent.'" (quoting *Link* v. *Wabash R. Co.*, 370 U.S. 626, 633-34 (1962))).  The Court is sympathetic to Plaintiff's counsel's unfortunate family circumstances.  (Pl. Br. 28-29).  Still, such developments do not absolve Plaintiff for its otherwise drawn-out approach to its review of the Settlement Production or its concomitant failure to notify the Court and the parties of the

prospects of a Rule 60(b) motion until the absolute last minute.  To the latter point, Plaintiff failed even to raise the possibility of any such motion in connection with the Settlement Production during its numerous submissions to the Court regarding enforcement of the Settlement Agreement, despite conceding that, as of December 2021, it had already "discover[ed] some potentially useful documents, as well as documents that were interesting."  (Pl. Br. 27; *see also* Resp. Opp. 13 (collecting relevant docket citations)).

It bears mention that the Court has seen analogous behavior by Plaintiff before, notably in connection with Plaintiff's motion for reconsideration.  *See generally Geo-Group IV*, 2020 WL 5743516, *further reconsideration denied*, *Geo-Group V*, 2020 WL 6729181.  In particular, Plaintiff sought reconsideration of the Court's 2018 grant of summary judgment in M. Shah's favor in *Geo-Group III*, and the Court's 2016 grant of the LLC Defendants' motion to dismiss in *Geo-Group II*.  *See Geo-Group IV*, 2020 WL 5743516, at *11.  In support of its motion, Plaintiff proffered a set of after-acquired documents related to the LLC Transfers, which documents Plaintiff maintained established that the LLC Transfers were not made to discharge an antecedent debt.  *See id.*  The Court denied Plaintiff's motion, finding in part that Plaintiff failed to timely file — or even hint at — its motion for reconsideration "for more than a year from the date it first learned of the facts that prompted this motion."  *Id.* at *13.  In particular, the Court observed Plaintiff's "conce[ssion] that its decision to delay raising these issues was a strategic one," tied up in Plaintiff's settlement

24

negotiations with the Shahs, and that such a decision was not a reasonable basis for delay. *Id.* at \*7, 13-14.

Separately, the Court found that "the evidence that Plaintiff did not have in hand at summary judgment was obtainable, if only Plaintiff had exercised 'due diligence,'" which Plaintiff had not. *Geo-Group IV*, 2020 WL 5743516, at \*12. In doing so, the Court chronicled the numerous points at which Plaintiff failed to seek subpoenas despite being prompted to do so by the Court, failed to follow up on subpoenas after they were issued, and simply made the decision to proceed without more discovery, because Plaintiff "felt it had sufficient evidence to survive summary judgment." *Id.* at \*8, 12; *see also id.* at \*13 ("Plaintiff conceded that its decision not to pursue this discovery was a strategic one, grounded in an ultimately mistaken belief that it had obtained sufficient evidence to raise a disputed issue of material fact … at summary judgment."). Ultimately, the Court found that "the interests of finality, coupled with Plaintiff's unreasonable delay in seeking this relief after years of litigation, compel the Court to deny Plaintiff's motions." *Id.* at \*1.

So too here. Having not learned its lesson from its failures in *Geo-Group IV* and *V*, Plaintiff engaged in similar gamesmanship, albeit with its sights now set on Respondents. Once again, Plaintiff is relying on a set of documents that it should have sought (and could have obtained with more diligence) during discovery.[5] Even after eventually obtaining these documents, Plaintiff sat for

---

[5]     For example, and as Respondents note, in a July 25, 2017 Conference, the Court directly put the question to Plaintiff of whether it would file a subpoena on Jaina in light of Jaina's alleged discovery noncompliance. (*See* Resp. Opp. 15-16 (citing Dkt.

almost a year without ever informing the Court or the parties of its intention to move to reopen the judgment, despite conceding that it had already begun to develop theories regarding such a motion.  Plaintiff's *post hoc* justification for this delay as being due to its desire to wait for more documents, which would make its motion "more powerful and likely to succeed," neither tips the scales in its favor nor adequately explains Plaintiff's long radio silence.  *See Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. 2020) (upholding denial of Rule 60(b) motion notwithstanding plaintiffs' assertion that "they received the new evidence in 'drips-and-drabs over an extended period without any organization,' and that they 'needed time to understand and assimilate the information received'").  Moreover, this failure to inform the Court is even more unreasonable given Plaintiff's concession that "[t]he whole point of the [S]ettlement [A]greement was for GCI to obtain certain specific financial documents that it believes will demonstrate … beyond any doubt that the judgment in favor of Chopra should be vacated."  (Pl. Br. 31).  As Plaintiff recognizes in its arguments about whether the current motion is time-barred, the consequence of the Settlement Agreement was to bring about a final judgment in this matter.  That Plaintiff had the secret purpose of using the Settlement Agreement to reopen the final judgment brought about by its very terms is gamesmanship that the Court cannot abide.

---

#172 (transcript))).  In reply, Plaintiff explains that it did not seek such a subpoena, as it was relying on the Shahs' representation, through counsel, that they had no documents to turn over.  (Pl. Reply 16).  Still, Plaintiff's decision to continue to press the Shahs for additional documents belies Plaintiff's position that it trusted the Shahs at the time, and cannot therefore fully justify Plaintiff's failure to seek a subpoena.

Put simply, Plaintiff's explanations for its decision to file its motion on the absolute last day such a motion was permitted are not evidence of reasoned decisionmaking.  If anything, they are the exact opposite.  *Accord Amoco Overseas Oil Co.* v. *Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir. 1979) ("Although the fact that a motion was made barely within the one-year limit gives the court the Power to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'").  And even acknowledging that certain documents may have been improperly withheld from Plaintiff during discovery, the Court finds nonetheless that such relief should lie against the Shahs for their failure to timely produce documents, and not Respondents, who satisfied their discovery obligations in this case.  (*See* Resp. Opp. 14-16).  Plaintiff's unreasonable approach to discovery, compounded by potential misrepresentations by the Shahs, should not prejudice Respondents, who oppose the current motion. *See Thai-Lao Lignite*, 864 F.3d at 187 (observing that the court "must be attentive to the fact that the burden of demonstrating that vacatur is appropriate lies with the party seeking that result").

Considering the particular circumstances of this case, and taking into account the reasons given for the delays, the Court finds that Plaintiff cannot carry its burden to establish that the current motion was made within a reasonable time and therefore that Plaintiff is not entitled to Rule 60(b)(3) relief.

### 2.     Plaintiff Has Not Established That Chopra or NYC Telecom Engaged in Fraud or Misconduct

While the preceding finding forecloses Plaintiff's claim under Rule 60(b)(3), the Court nonetheless considers the merits of that claim for completeness.  As elaborated herein, the Court ultimately finds that Plaintiff cannot establish by clear and convincing evidence that Respondents engaged in fraud or similar misconduct, providing a second, independent basis for denial of Plaintiff's motion.

To prevail on a Rule 60(b)(3) motion, Plaintiff must establish "by clear and convincing evidence that [Respondents] engaged in fraud or similar misconduct." *Buxbaum*, 216 F.R.D. at 81.  Pertinent to the Court's analysis, "[t]he 'clear and convincing' standard is an intermediate one, in that it is more than a 'preponderance' of the evidence but less than 'beyond a reasonable doubt.'" *Stat Med. Servs., Inc.* v. *Daughters of Jacob Geriatric Ctr., Inc.*, 797 F. Supp. 253, 255 (S.D.N.Y. 1992) (citing *Addington* v. *Texas*, 441 U.S. 418, 423-24 (1979)).  As the Supreme Court has explained, a party would achieve the clear and convincing evidentiary standard "only if the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence [its adversary] offered in opposition." *Colorado* v. *New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted).  The Second Circuit has similarly held that "[c]lear and convincing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened and it is evidence that is neither equivocal nor open to opposing presumptions." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir.

2021); *see also Thai-Lao Lignite*, 864 F.3d at 182 (requiring that the "evidence in support of the motion to vacate a final judgment be highly convincing" (quoting *Kotlicky*, 817 F.2d at 9)).  This evidentiary standard is important, and a district court must pay "[c]areful attention to these considerations and to whether the movant is entitled to relief in the particular circumstances of each case [to] ensure[] that Rule 60(b) will 'be broadly construed to do substantial justice,' while respecting that 'final judgments should not be lightly reopened.'" *Id.* at 183 (quoting *Nemaizer*, 793 F.2d at 61).

With those teachings in mind, the Court carefully considers the evidence submitted by Plaintiff as proof that Respondents proffered false testimony.  As to the pertinent testimony, neither party disputes that in 2017 Chopra testified that: (i) TD Time and Vision Impex lent Jaina money on occasions, which loans were repaid through payments to Robinson Brog; (ii) he (Chopra) did nothing other than help to arrange the alleged loans; and (iii) he (Chopra) never received any funds from Robinson Brog, Vision Impex, or TD Time.  *Geo-Group III*, 2018 WL 3632498, at *2-3.

### i.    The TSN Payments Spreadsheet

The Court begins with a spreadsheet titled "TSN Payments."  (Pl. Decl., Ex. 13 (the "TSN Payments Spreadsheet")).  This spreadsheet contains two columns, a left-hand column titled "Receipts[:] USD Paid IN US By Ravi," and a right-hand column titled "Payments[:] Paid."  (*Id.* at 2).  The left-hand Receipts column lists fifteen dollar-denominated payments dated from October 14, 2013, through March 28, 2014, made to Jaina by entities including TD Time,

totaling $1,405,571.00.  (*Id.*).  The right-hand Paid column contains a longer list of individual transactions in Indian Rupees, which entries Plaintiff maintains represent cash payments "in India to Chopra or persons whom he designated," as evidenced by the apparent inclusion of Ravi Chopra's name in parentheticals after each individual's name.  (Pl. Br. 11; *see, e.g.*, TSN Payments Spreadsheet 2 ("Given to Bittu (Ravi)")).  Plaintiff also provides a transmittal email dated January 25, 2015, from S. Bose to V. and M. Shah, that attaches the spreadsheet; it contains the subject line "Payments made to Ravi in India," and no other information.  (TSN Payments Spreadsheet 1).

Relatedly, Plaintiff provides two emails sent on October 22, 2013, that discuss a $60,000 payment made to Jaina.  The first email was sent from S. Bose to an individual named Ram Sarda, who was associated with a foreign exchange service, directing Sarda to "[p]lease deliver to … Mahendra Bhai Shah … Total USD $60K."  (Pl. Decl., Ex. 19).  The next email was sent three minutes later, from S. Bose to Chopra, stating:  "I need a favor URGENTLY today.  Please coordinate with Mahendra Bhai and Collect USD 60K Cash and please wire me the am[oun]t in Jaina TODAY as I need to make $500k payment to Aircel today by hook or crook."  (*Id.*, Ex. 37).

Plaintiff maintains that these documents support a conclusion that payments from TD Time were not actually loan payments, and therefore that Chopra's testimony was false.  (*See* Pl. Br. 12-13).  In particular, Plaintiff contends that the TSN Payments Spreadsheet depicts "hawala transactions," which are informal, trust-based transactions in which money is transferred

internationally via personal exchanges.[6]  Plaintiff suggests that the transactions in fact depict Jaina's attempts to transfer its own funds from India to the United States, and that Chopra was a beneficiary of these transactions. (*See id.* at 10, 18).  Respondents first dispute Plaintiff's characterization of the TSN Payments Spreadsheet, maintaining that it supports neither Plaintiff's inference that the funds actually belonged to Jaina (and therefore were not loans), nor Plaintiff's argument that Chopra was a beneficiary.  (Resp. Opp. 17, 19-20).  Respondents also question the reliability of the spreadsheet, observing that it is an unauthenticated document "created … more than a year after the transactions it purports to document," and therefore "has no evidentiary value."  (Resp. Opp. 18).

On its own review, the Court finds that the TSN Payments Spreadsheet does not establish that Chopra's prior testimony was untruthful.  As an initial matter, the Court credits Respondents' observation that, without disinterested testimony to substantiate the spreadsheet, the conclusions that can be drawn

---

[6]     As the Second Circuit has helpfully explained:

> Though there are many forms of hawala, in the paradigmatic hawala system, funds are transferred from one country to another through a network of hawala brokers (i.e., 'hawaladars'), with one hawaladar located in the transferor's country and one in the transferee's country.  In this form, a hawala works as follows: If Person A in Country A wants to send $1,000 to Person B in Country B, Person A contacts Hawaladar A in Country A and pays him $1,000.  Hawaladar A then contacts Hawaladar B in Country B and asks Hawaladar B to pay $1,000 in Country B currency, minus any fees, to Person B.  The effect of this transaction is that Person A has remitted $1,000 (minus any fees) to Person B, although no money has actually crossed the border between Country A and Country B.

*United States* v. *Banki*, 685 F.3d 99, 103 (2d Cir. 2012), *as amended* (Feb. 22, 2012).

from the various entries are ambiguous.  At best, the spreadsheet depicts transfers of money from TD Time to Jaina that correspond with transfers between TD Time and Jaina that are recorded in Jaina's 2013 Citibank statements.  (*Compare* TSN Payments Spreadsheet, *with* Pl. Decl., Ex. 21 (Jaina's 2013 Citibank Statements)).  Moreover, Plaintiff's conclusory assertion that Chopra was the actual recipient of funds from the transactions depicted in the spreadsheet is noticeably unsupported by any of the actual bank statements, which depict money flowing from TD Time to Jaina on or about the relevant dates in the spreadsheet.  (*See, e.g.*, Pl. Decl., Ex. 21, 23 (Jaina's 2014 Citibank Statements)).

As to the scope of Chopra's involvement, the Court finds Respondents' interpretation to be just as plausible as Plaintiff's.  In particular, the Court agrees that the references to Chopra in the TSN Payments Spreadsheet are consistent with Chopra's coordinating role in these transactions, which is in turn consistent with Chopra's prior testimony about his involvement in the TD Time transfers and the Court's findings in that regard at summary judgment. *See Geo-Group III*, 2018 WL 3632498, at *9 ("Chopra testified that he helped broker [the loans from TD Time and Vision Impex to Jaina]; [and] that those loans were repaid through payments to the law firm Robinson Brog.").  While the spreadsheet may cast some doubt on Chopra's version of the facts, it is far from clear and convincing evidence that Chopra's prior testimony was untruthful.  *Loreley Fin.*, 13 F.4th at 260 (observing that clear and convincing

evidence is "neither equivocal *nor open to opposing presumptions*" (emphasis added)).

Likewise, the Court does not find that the related October 22, 2013 emails establish that Chopra altered documents or proffered false testimony. Plaintiff's conclusory allegations do not provide the Court with any basis to discredit Respondents' representations that the email was produced in a system-generated format; that such format was consistent with other emails across the production; and therefore that the relevant information was not intentionally omitted. (Resp. Opp. 16). Moreover, as Plaintiff acknowledges, Chopra was subjected to extensive questioning about the email at his deposition, indicating that the information contained in the email was itself sufficient to put Plaintiff on notice of its significance. (Pl. Br. 12). Most importantly, the Court finds that the new information does not render Chopra's testimony false or misleading, as Chopra once again offers a reading of both emails that is clearly consistent with Chopra's prior testimony: that Chopra had assisted Jaina with a transaction that Jaina had arranged but was not a beneficiary of the funds transferred. (Resp. Opp. 20-21).

### ii. The Banking Spreadsheet and the Deposit Analysis Spreadsheet

The Court turns next to various accounting spreadsheets and ledgers provided by Plaintiff that purport to depict cashflows in and out of Jaina. First, Plaintiff provides a worksheet "chronicl[ing] in general ledger form" Jaina's bank transactions from roughly January 2010 to February 2015. (Pl. Br. 14 (citing Pl. Decl., Ex. 22 (the "Banking Spreadsheet"))). The spreadsheet

contains entries corresponding to inbound wire transfers from Vision Impex,
recorded under the title "Ravi Chopra" and categorized as "Foreign Cash
Injected[:] Sundry Borrowing."  (Banking Spreadsheet).  The spreadsheet also
contains entries corresponding to each of the outbound Robinson Brog
Transfers, also recorded under the title "Ravi Chopra" and categorized as
"Foreign Cash Refund[:] Loan Refunds."  (*Id.*).  For the TD Time payments, the
spreadsheet contains entries without descriptions, but which correspond in
time and amount.  These payments are recorded under the title "TS USA Inc."
and categorized as "Received From[:] Carrier" and "Payment To[:] Carrier."  (*Id.*).

Next, Plaintiff provides a lengthy spreadsheet titled "Deposit Analysis —
2014," recording various deposits made to Jaina's accounts from a variety of
parties from January 2, 2014, through December 16, 2014.  (Pl. Decl., Ex. 35
(the "Deposit Analysis Spreadsheet")).  Like the Banking Spreadsheet, the
Deposit Analysis Spreadsheet contains entries corresponding to the inbound
wire transfers from Vision Impex, and records these as "STI Loan/Ravinder
Chopra."  (*Id.*).

Finally, Plaintiff provides a spreadsheet "contain[ing] information about
Jaina's 2014 invoices to its customers and from its suppliers, as well as 2014
payment and collection information."  (Pl. Decl., Ex. 24 (the "Customer
Spreadsheet")).  This spreadsheet contains a subsection for Vision Impex LTD,
listing various payments and dates, some of which correspond to entries in the
Banking Spreadsheet and Deposit Analysis Spreadsheet.  (*Id.*).

Plaintiff contends that the Banking Spreadsheet, the Deposit Analysis Spreadsheet, and the Customer Spreadsheet, when read together, indicate that Vision Impex was actually a customer of — and not a lender to — Jaina, thereby rendering Chopra's prior testimony on this point untrue.  (Pl. Br. 14-15).  Once again, however, Respondents advance a competing interpretation of the spreadsheets that is consistent with Chopra's prior testimony and the Court's summary judgment findings.  For example, Respondents note that the line entries for Vision Impex are recorded in the Banking Spreadsheet as "Sundry Borrowing," indicating that the transfers were in fact loans.  (Resp. Opp. 23).

As to the Customer Spreadsheet and invoices, Respondents acknowledge that they cannot explain "the manner in which Jaina booked loans," or why certain materials list Vision Impex as a customer.  (Resp. Opp. 24).  That said, Respondents proffer several bases to explain the references and reaffirm Chopra's prior testimony.  *First*, Respondents provide renewed testimony from Dalip Kumar, the owner of Vision Impex, averring that Vision Impex "was never a client or customer of Jaina," and that the payments were not for the purchase of goods or services, which testimony is consistent with Kumar's deposition testimony that the Court considered at summary judgment.  (*Id.* (citing Dkt. #390); *see also* Dkt. #370-16 (deposition transcript)).  *Second*, to explain why Jaina booked these loans as revenue, Respondents suggest that Jaina may have done so in an attempt to inflate its books in an attempt to be more attractive to investors.  (Resp. Opp. 21-22, 24).  Respondents'

explanation, coupled with Kumar's renewed confirmation that the payments were loans notwithstanding Jaina's internal accounting methods, is once again a plausible, and therefore sufficient, rebuttal of Plaintiff's interpretation of the documents.  *Third and finally*, Respondents note that the references to Chopra throughout both spreadsheets simply reflect "Chopra's name [being] used as a category identifier."  (Resp. Reply 5; *see also* Resp. Opp. 24).  Such an interpretation is also plausible, given that it is consistent with Chopra's prior testimony that he was involved in facilitating or brokering the transactions, though not a beneficiary.

Once again weighing the competing interpretations, the Court finds that the new documents do not establish by clear and convincing evidence that Chopra's prior testimony was false.  To be sure, Jaina's internal bookkeeping documents characterize Vision Impex as a customer.  But as has been established, Jaina's bookkeeping was far from meticulous, and testimony from the principal of Vision Impex reaffirms that the payments were intended as loans.  And while the Court is aware that the proper sources to interpret these spreadsheets are not readily available, the consequences for their absence fall on Plaintiff, who bears the burden on this motion to reopen the judgment.  *See Thai-Lao Lignite*, 864 F.3d at 182 ("The burden is on the moving party to demonstrate that it is entitled to relief, and courts '[g]enerally … require that

the evidence in support of the motion to vacate a final judgment be highly convincing.'" (quoting *Kotlicky*, 817 F.2d at 9)).[7]

### iii.   The LLC Transfers

Finally, the Court considers the LLC Transfers.  As to these transfers, Chopra originally testified that: (i) he was approached by Alwani, who was looking for financing for Neminath to use for the benefit of Jaina; (ii) he was told that Jaina needed money quickly; (iii) he understood that Alwani and Bose decided to use Neminath's building as collateral to seek funding to then transfer to Jaina; and (iv) he helped arrange the loan with Sanjiv Chand, the owner of Kedis, for which he received a broker's fee.  *Geo-Group III*, 2018 WL 3632498, at *4.  As the principal basis for the current motion, Plaintiff again cites the Banking Spreadsheet, which contains similar entries for the LLC Transfers as it does for the Robinson Brog Transfers — namely payments to "JMVD Hillside LLC" and "728 Melville Petro LLC," booked under the title "Ravi Chopra," and categorized as "Foreign Cash Refund[:] Loan Refunds."  (Pl. Br. 19-20 (citing Banking Spreadsheet)).  Plaintiff's conclusory interpretation of the Banking Spreadsheet entries regarding the LLC Transfers is no more

---

[7]    To this end, the Court also agrees with Respondents' position that the references in Jaina's documents to "TS USA," are ambiguous, given the assortment of entries recorded under that header.  (*See* Resp. Opp. 21-22).  Indeed, it could be the case that TS USA was both a customer of Jaina and also a catchall reference in certain Jaina books.  Absent clarifying evidence, the Court cannot find that such references establish by clear and convincing evidence that the TD Time payments were actually made by TS USA, especially given that bank records confirm the transfer originated from TD Time, and that the owner of TD Time testified that such payments were loans.  (*See* Pl. Decl., Ex. 21).  *See Geo-Group III*, 2018 WL 3632498, at *3 ("Singh testified … that [TD Time] loaned Jaina $250,000 through a series of four transfers spanning October to December 2013.").

persuasive than its interpretation of the Robinson Brog Transfers, especially as the "Description" column clearly establishes that the wires, confirmed by the relevant bank records, were sent to Melville and Hillside (and not to Chopra). (*See* Banking Spreadsheet).  The references to Chopra are furthermore consistent with Chopra's prior testimony that he helped broker the transactions.  *See Geo-Group III*, 2018 WL 3632498, at *4.  Nor do the various documents related to the sale of the 235 Hillside Avenue property repudiate Chopra's past testimony that he was not the beneficiary or recipient of any of the funds transferred.  (Pl. Br. 21-22).

Ultimately, and as should be apparent from the Court's findings, Plaintiff cannot carry its burden to establish by clear and convincing evidence that Chopra proffered false testimony.  At best, the documents relied upon by Plaintiff provide a marginal degree of support for Plaintiff's version of the Disputed Transfers.  Still, the documents *also* support, or at least do not foreclose, Respondents' version of the Disputed Transfers, which version is consistent with Chopra's prior testimony and with the broader evidentiary record considered at summary judgment.  As the documents are both "equivocal [and] open to opposing presumptions," they are not clear and convincing evidence of Plaintiff's position, as they do not satisfy the Court "that it is highly probable that what is claimed actually happened."  *Loreley*, 13 F.4th at 260; *cf. Medisim Ltd.* v. *BestMed LLC*, 910 F. Supp. 2d 591, 611 (S.D.N.Y. 2012) ("[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn

from the evidence. …  Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." (quoting *Bristol-Myers Squibb Co.* v. *Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1290-91 (Fed. Cir. 2003))).  Plaintiff therefore is not entitled to relief under Rule 60(b)(3).

### 3.    Plaintiff Was Not Prevented from Fully and Fairly Presenting Its Case

To briefly recap, the Court has found that Plaintiff's Rule 60(b)(3) motion was untimely and that Plaintiff cannot establish by clear and convincing evidence that Respondents engaged in misconduct, both of which findings independently require denial of Plaintiff's motion.  Finally, and again for completeness, the Court considers the remaining element — whether Plaintiff was prevented from fully and fairly presenting its case.  As elaborated herein, the Court finds that Plaintiff was not so prevented, and therefore is conclusively not entitled to Rule 60(b)(3) relief.

At this stage of the analysis, the moving party must establish by clear and convincing evidence that the alleged misconduct "prevented the moving party from fully and fairly presenting its case."  *State St. Bank*, 374 F.3d at 176.  While "the moving party need not show that the outcome would have been different absent the misconduct," the movant cannot establish such interference occurred where the alleged misconduct "turn[s] out to be cumulative, insignificant, or of marginal relevance."  *Thomas* v. *City of New York*, 293 F.R.D. 498, 504 (S.D.N.Y. 2013) (citing *Catskill Dev., L.L.C.* v. *Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 316 (S.D.N.Y. 2003)).  Such is the case here, as the Court finds that the new documents, if anything, are cumulative of

39

the materials that have already been considered by the Court and do not bear on the Court's prior finding that Respondents were not beneficiaries of the transaction.

To review, the NYDCL in effect during the relevant time period did not establish liability for aiding and abetting a fraudulent conveyance, but rather required a finding that a party was a beneficiary to a transaction.  *See Geo-Group III*, 2018 WL 3632498, at *9 ("[T]here is no cause of action for aiding and abetting a fraudulent conveyance against a person … who is alleged merely to have assisted in effecting the transfer, in a professional capacity, and who is not alleged to have been a transferee of the assets or to have benefitted from the transfer." (quoting *BBCN Bank* v. *12th Ave. Rest. Grp. Inc.*, 55 N.Y.S.3d 225, 226 (1st Dep't 2017))).  Put somewhat differently, the NYDCL recognized that "[a] fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance." *Amusement Indus.*, 820 F. Supp. 2d at 527.  In granting summary judgment in Respondents' favor, the Court observed that while it was undisputed that Chopra was implicated in the transactions, Plaintiff had failed to raise a genuine dispute of material fact as to whether Chopra was also a beneficiary of the transactions.  *See Geo-Group III*, 2018 WL 3632498, at *9 (finding that, while "Chopra testified that he helped broker the loans from TD Time and Vision Impex to Jaina, and that he understood that those loans were repaid through transfers to Robinson Brog … there is no evidence in the record

suggesting that Chopra received the funds transferred to Robinson Brog"); *id.* at *12 n.11 ("To be sure, Chopra testified that he brokered the loan from Kedis to Neminath and received a fee for his services. But the record does not indicate that Chopra or NYC Telecom benefitted from the [LLC Transfers]." (internal citation omitted)). In making such a finding, the Court considered the substantial record furnished by the parties, including lengthy Rule 56.1 statements that drew from Chopra's two-day-long deposition testimony, sworn testimony from a shareholder of Robinson Brog, additional deposition testimony from the owners of TD Time and Vision Impex, and bank statements and other financial documents. *Id.* at *1 n.2 (acknowledging the parties' evidentiary submissions).

As discussed extensively above, Plaintiff's documents fall far short of providing the clear and convincing evidence necessary to substantiate Plaintiff's conclusory allegations that Respondents, and Chopra in particular, were beneficiaries of these transactions. At best, the spreadsheets are cumulative of the otherwise vast array of evidence and testimony on this topic, and do not support Plaintiff's current allegations any more than they support the Court's prior ruling in *Geo Group III* that Chopra was merely associated with the transactions. *See Thomas*, 293 F.R.D. at 504 (observing that cumulative evidence is insufficient to establish substantial interference). Nor do these spreadsheets establish by clear and convincing evidence that Jaina acted with fraudulent intent in transferring funds. Rather, the spreadsheets indicate what was already known to the Court and the parties, namely that

Jaina engaged in informal lending with a variety of entities.  *Geo-Group III*,
2018 WL 3632498, at *2.  Beyond that, the spreadsheets and documents
merely reference transactions that are consistent with the various bank
statements and related sworn testimony as to the flow of funds, and do not
suggest that the transactions were made with fraudulent intent.  *See Walther* v.
*Maricopa Int'l Inv. Corp.*, No. 97 Civ. 4816 (HB), 2002 WL 31521078, at *4
(S.D.N.Y. Nov. 12, 2002) (denying Rule 60(b)(3) motion because allegedly
perjurious testimony was not material to outcome of case and therefore did not
prevent movant from fully and fairly presenting his case); *see also Gonzales* v.
*Nat'l Westminster Bank, Plc,* No. 11 Civ. 1435 (LAP), 2013 WL 6978874, at *7
(S.D.N.Y. Nov. 18, 2013) (denying Rule 60(b)(3) motion where the "new evidence
of [defendant's] purported fraud could not change the ruling in [the prior
case]," such that plaintiffs were not "prevented from fully and fairly presenting
their case").

At the end of this analysis, the Court is mindful of the Second Circuit's
guidance that "a Rule 60(b)(3) motion cannot be granted absent clear and
convincing evidence of material misrepresentations and cannot serve as an
attempt to relitigate the merits."  *Fleming*, 865 F.2d at 484.  As should be
apparent at this point, Plaintiff's motion is exactly such an improper attempt.
Plaintiff does not advance consequential, newly-discovered evidence that
Respondents had proffered false testimony or withheld necessary documents
during discovery.  Rather, Plaintiff puts forth an untimely motion, rife with
conclusory allegations supported by ambiguous spreadsheets and related

42

materials, obtained pursuant to a strategic Settlement Agreement that Plaintiff admits was designed to provide a vehicle to reopen the very judgment that the Agreement purported to bring about. *Accord Nemaizer*, 793 F.2d at 61 (advising that "final judgments should not be lightly reopened" (internal quotation marks and citation omitted)).

Ultimately, having considered the "balance between serving the ends of justice and preserving the finality of judgments," the Court finds, pursuant to its sound discretion and its history of presiding over this litigation, that Plaintiff has not met their burden to prevail on its Rule 60(b)(3) motion. *Nemaizer*, 793 F.2d at 61; *see Altman*, 456 F.2d at 1116 ("[A] motion under [Rule 60(b)] to vacate a judgment of dismissal is addressed to the sound discretion of the trial court.").

## C. Plaintiff Is Not Entitled to Relief Under Rule 60(b)(6) or Rule 60(d)(3)

Separately, Plaintiff asserts that it is entitled to relief under two additional provisions of Rule 60: Rule 60(b)(6) and Rule 60(d)(3). Plaintiff's sought-after relief under Rule 60(b)(6) fails at the outset. The Second Circuit has clarified that Rule 60(b)(6) applies only "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule and there are extraordinary circumstances justifying relief." *See Tapper*, 833 F.3d at 172 (internal quotation marks and citation omitted). As has been established above, Plaintiff's allegations of misconduct by Respondents and its proffers of newly-obtained evidence supporting its case are squarely within the ambit of

Rules 60(b)(2) and (b)(3), foreclosing Plaintiff's motion under the catch-all provision of Rule 60(b)(6).

As the basis for its entitlement to relief under Rule 60(d)(3), Plaintiff spins a narrative of misconduct perpetrated by Humayun Siddiqi, counsel to Respondents, as well as Anil Arora, former counsel to the Shahs. Plaintiff rewinds the clock to "the latter part of 2016," when Plaintiff alleges that Siddiqi, Arora, the Shah Defendants, and Respondents met to "coordinat[e] a strategy to misrepresent to the Court and [Plaintiff] that the Brog and LLC Transfers were made to discharge antecedent debt[.] Attorneys [] knew those transfers were nothing of the sort, and that R. Chopra was a beneficiary of those transfers." (Pl. Reply 18-19).

As should be apparent at this juncture, however, Plaintiff has not provided sufficient evidence to support its foundational premise that the Robinson Brog and LLC Transfers were sham payments made for Chopra's benefit.[8] The Court understands that Plaintiff's inability to collect on its arbitral award, and its difficulty unraveling the web of informal loans and transfers associated with Jaina's business dealings, must be of some

---

[8]     To this end, and as Respondents maintain, the significance of the slew of additional documents first provided by Plaintiff in its reply brief is markedly different when the Robinson Brog Transfers are credited as loans. (*Compare* Pl. Reply 18-24, *with* Resp. Reply 4-8). In particular, the Court sees no basis to discredit Respondents' assertion that the purpose of the November 8, 2016 meeting, as well as the correspondence related to it, was "to confirm the accuracy of the[] determination as to the origins of the loans." (Resp. Reply 6). And once again, the references to Chopra in the exhibits cited in Plaintiff's reply at best contain the speculation of third parties as to Chopra's involvement in Jaina's business dealings, but are far from clear and convincing evidence that Chopra himself was a beneficiary (rather than a mere affiliate), so as to render his prior testimony untruthful. (*See, e.g.*, Pl. Reply Decl., Ex. 77, 78).

frustration to Plaintiff, who has pursued Jaina-related litigation for the better part of a decade.  But Plaintiff's repeated attempts to pull parties back into this litigation based on conclusory assertions that they are beneficiaries suggest that Plaintiff misunderstands the merits of its NYDCL claims, which do not provide a basis for aiding and abetting a fraudulent conveyance.  And Plaintiff's baseless assertions that Siddiqi's factfinding actions were actually done with ill intent, or that Siddiqi's successful advocacy on behalf of Respondents amounts instead to fraud on the court, fly too wide of the mark.

To the extent that Plaintiff alleges Arora engaged in misrepresentations and other misconduct during discovery, Plaintiff picks the wrong target by going after Siddiqi and Respondents, who have certified that they have produced all of the documents in their possession, control, or custody.  (Resp. Opp. 14).  In any event, misconduct during discovery, without more, does not rise to the extreme level of misconduct that Rule 60(d)(3) exists to remedy.  *See Gleason*, 860 F.2d at 559-60 ("[A]llegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action" under Rule 60(d).); *LinkCo, Inc.* v. *Akikusa*, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) ("After-discovered evidence of alleged perjury by a witness or other fabricated evidence is also not sufficient for a finding of 'fraud upon the court.'" (alteration adopted) (quoting *Gleason*, 860 F.2d at 559)); *see also In re Accent Delight Int'l Ltd.*, No. 16 Misc. 125 (JMF), 2019 WL 6716419, at *3 (S.D.N.Y. Dec. 10, 2019) (noting that plaintiff's arguments were predicated on alleged

45

perjury and nondisclosure, neither of which, without more, "amounts to fraud on the court" (internal quotation marks omitted) (citing *King*, 287 F.3d at 95)).

In sum, Plaintiff's motion provides no basis for the Court to find that any alleged misconduct by any of the parties or their counsel was of such a degree that "the judicial machinery [could not] perform in the usual manner its impartial task of adjudging cases." *Hadges*, 48 F.3d at 1325. Therefore, Plaintiff cannot carry its burden to establish it is entitled to relief under Rule 60(d)(3).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reopen the judgment in this matter is DENIED. The Clerk of Court is directed to terminate the motion at docket number 368.

SO ORDERED.

Dated:      September 26, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge